# CCA Scanning Cover Sheet



2476694

CaseNumber: WR-77,175-01
EventDate: 10/26/2010
Style 1: HALPRIN, RANDY ETHAN
Style 2:
Event code: RR ADD'L VOLUME

EventID: 2476694
Applicant first name: RANDY ETHAN
Applicant last name: HALPRIN
Offense: 19.03
Offense code: Capital Murder
Trial court case number: W01-00327-Y(A)
Trial court name: Criminal District Court 7 of Dallas County
Trial court number: 330570007
County: Dallas
Trial court ID: 1462
Event map code: GENERIC
Event description:
Event description code:
Remarks: VOL. 3 OF 4 VOLUMES OF HEARING HELD
AUGUST 20, 2010--DEFENDANT'S EXHIBITS

☐ *Document Scanned*                                    ☐ Created or
                                                        ☐ Appended

*Scanned by*            *date*            *Image ID*

*Comment*

ORIGINAL

CAUSE NO.   WO1-00327-S(A)

EX PARTE                    )   IN THE 283rd JUDICIAL

                           )

                           )   DISTRICT COURT OF

                           )

RANDY ETHAN HALPRIN        )   DALLAS COUNTY, TEXAS


REPORTER'S RECORD


VOLUME 3 OF 4 VOLUMES


DEFENDANT'S EXHIBITS


On August 20, 2010, came on to be heard before the

HONORABLE RICK MAGNIS, Judge of the 283rd Judicial

District Court of Dallas County, Texas, the above

entitled and numbered cause.


Proceedings reported by computerized stenotype

machine; Reporter's Record produced by computer-assisted

transcription.

1    <u>A P P E A R A N C E S</u>

2

3    MS. LISA SMITH
     State Bar No. 00787131
4    MS. KIM SCHAEFER
     State Bar No. 00784910
5    Assistant District Attorneys
     Frank Crowley Courts Building
6    133 N. Riverfront Blvd.
     Dallas, Texas 75207
7    (214) 653-3600

8                              FOR THE STATE OF TEXAS

9    MR. BRUCE ANTON
     State Bar No. 01274700
10   MR. GARY UDASHEN
     State Bar No. 20369590
11   Attorneys at Law
     Suite 400
12   2301 Cedar Springs Road
     Dallas, Texas 75201
13   (214) 468-8100

14                              FOR THE APPLICANT

15

16

17

18

19

20

21

22

23

24

25



1    CHRONOLOGICAL INDEX

2    VOLUME 3

3    DEFENDANT'S EXHIBITS                    4              3

4    REPORTER'S CERTIFICATE                  6              3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             Defendant's Exhibit No.   1

2

3

4

5

6

7

8

9

10

11

12

13

14

15             (Kelly Goodness report, attached hereto)

16

17

18

19

20

21

22

23

24

25



*Dr. Kelly R. Goodness*
*Clinical and Forensic Psycologist*

121 Olive Street
Keller, Texas 76248

(817) 379-4663
Facsimile (817) 379-0320

May 20, 2003

Mr. George Ashford, III
Attorney At Law
325 North St. Paul Street
Tower II, Suite 2475
Dallas, Texas 75201

Mr. Edwin V. King
Attorney At Law
2305 Cedar Springs, Suite 250
Dallas, Texas 75201

**Re: State of Texas v. Randy Ethan Halprin; Cause No. F01-00327-T**

Dear Mr. Ashford and Mr. King:

I offer the report below in response to the requested evaluation of your client Randy Ethan Halprin.

## PRESENTENCE PSYCHOLOGICAL EVALUATION

**Referral Information:**

Randy Halprin is a 25 year-old single, Caucasian male who was referred for evaluation by his attorney, George Ashford, III. He is currently charged with capital murder. For this report, I was asked to conduct a detailed evaluation of the defendant's psychology, as well as all aspects of his history. The purpose of this evaluation was to assist the triers of fact in better assessing the following:

1. The defendant's background.

2. The defendant's character.

3. The defendant's personal moral culpability.

**Credentials:**

My credentials as they pertain to this case are as follows:

1. I am a psychologist, licensed to practice in the state of Texas.

2. I am in private practice. My practice focuses almost exclusively on forensic cases (evaluation and treatment of individuals who have had, or are having, some interaction with the legal system).

Web site: www.drgoodness.com • Email: goodness@sprintmail.com

DEFENDANT'S EXHIBIT
8-20-10

3. I was the Chief Forensic Psychologist for the Behavior Management Treatment Unit of North Texas State Hospital – Vernon Campus (NTSH-VC) for over three years before recently resigning to focus on my private practice. NTSH-VC is the only maximum-security forensic psychiatric hospital in the state of Texas. There, I treated the 40 - 60 individuals considered the state's most difficult, dangerous and violent psychiatric patients. My position at NTSH-VC required that I evaluate numerous individuals each month.

4. I teach forensic psychology (psychology as it relates to the law) at the University of Texas at Dallas.

5. I have supervised psychology interns in every phase of their training including post doctoral training.

6. I have presented at both State and National conferences for forensic and mental health professionals concerning forensic issues.

7. I have provided psychological evaluation, treatment and programming consultation services to forensic institutions and professionals throughout the state of Texas, as well as in other states.

8. In the course of my training, employment with the State of Texas and my private practice as a Forensic Psychologist, I have evaluated over a thousand individuals.

9. I have had specialized training and experience in child and adolescent development and psychological functioning.

10. A large percentage of my practice involves the psychological evaluation of individuals who have committed, or who are charged with committing, murder. Moreover, the evaluation of capital murder defendants comprises a goodly amount of my forensic practice.

11. My extensive forensic clinical experience provides me with a uniquely applicable knowledge base for forensic cases that is difficult to mimic or surpass in terms of the depth and breadth of my experience with unusual, damaged, heinous, dangerous, challenging or difficult to treat or evaluate individuals.

12. I have worked for the prosecution, for the defense and for the court without concern for which "side" I work, as I am careful to provide my honest, clinical opinion regardless of who hires me.

**Notification:**

Before beginning the evaluation, the defendant was informed of the purpose of this assessment and the confidentiality limitations as defined by law of any information obtained during this assessment. He was informed that an oral report would be provided to his attorney and a written report would be generated from this evaluation if his attorney so requested. He was advised that this examiner would provide any report written only to his attorney who could then dictate further distribution of said report. He was further advised that information from this evaluation could be used in court during the guilt/innocence and sentencing portions of his trial

and could impact, either negatively or positively, any sentence assessed. The defendant indicated that he understood the purpose, nature and the inherent risks of this evaluation and he agreed to participate.

**Evaluation Procedures:**

The interviews, materials and clinical procedures listed below were taken into consideration in the preparation of this report and the opinions contained herein. In order to accurately assess the defendant's background history, behavior patterns, emotional functioning, character and usual mode of interacting with others, a multitude of documents were reviewed and third-party interviews were conducted with a variety of individuals and interviews were attempted with others who either refused to cooperate or could not be located.

A. Documents Reviewed
    Please see Appendix A

B. Third-Parties Contacted
   - Wesley Halprin, defendant's brother
   - Terry Goldberg, the mother of a close childhood friend
   - Jason Goldberg, close childhood (elementary and jr. high school) friend
   - Rabbi Keith Elisabeth Stern, defendant's former Rabbi during his Bar Mitzvah years
   - Rhonda Halprin, defendant's paternal aunt
   - Marian Feldt, long time family friend
   - David Feldt, long time family friend
   - Mindi Sternblitz, long time childhood friend
   - Steve Sternblitz, long time family friend
   - Shelly Sternblitz, long time family friend
   - Bill Wayburne, long time family friend
   - Anna Lester (formerly Anna Marie Hammons), the defendant's birth mother
   - Bud Underwood, former neighbor

C. Third-Party Interviews Attempted
   - Daniel Halprin, the defendant's father — Refused to respond
   - Patrician Halprin, the defendant's mother — Refused to respond
   - Michael Spencer, the defendant's teacher — Requested email questions only
   - Charles and Terry Kernell — Unable to reach
   - Chad Junes — Unable to locate
   - Jeremy Weiner — Unable to locate
   - Travis Duckwall — Unable to locate
   - Courtney Samuels — Unable to locate
   - Jordan Masterson — Unable to locate
   - D Moxley — Unable to locate
   - Kelly Sparks — Unable to locate
   - Edwin King — Unable to locate
   - Amy Hall, the defendant's former girlfriend — Unable to locate
   - Wayne Evans — Unable to locate

- Angie Brown                                              Unable to locate
- Casey Austin                                             Unable to locate

D. Clinical Procedures, Instruments and Measures
- Clinical Interviews with Randy Halprin at Lew Sterrett Jail spanning three days and totaling approximately 16 hours on March 23, 24, and 26 of this year
- Adult Social History Self-Report Survey
- Alcohol and Drug Use History Self-Report Survey
- Birth History Self-Report Survey
- Childhood Social History Self-Report Survey
- Collateral Contact List
- Criminal History – Self-Report Survey
- Educational History – Self Report Survey
- Employment & Military History – Self-Report Survey
- Medical & Mental Health History – Self-Report Survey
- Minnesota Multiphasic Personality Inventory - II (MMPI-II)
- Personal Interest – Self-Report Survey
- Personality Disorder Questionnaire - IV (PDQ-IV)
- Religious History – Self Report Survey
- Repeatable Battery for the Assessment of Neuropsychological Status (R-BANS)
- Rorschach
- Sacks Sentence Completion Test (SSCT)
- Tattoo and Scar Identification Form – Self Report Survey
- Wechsler Adult Intelligence Scale-Third Edition (WAIS-III)
- Wide Range Achievement Test - Revision 3 (WRAT-3)

## Definitions

Mitigating evidence or mitigating factors – mitigating evidence or mitigating factors is any information, factors or evidence that any one or more jurors regard as reducing the defendant's moral blameworthiness and/or that any juror believes militates (argues) against assessing the death penalty. Research suggests that recognizing aggravating factors in murder cases is easy for most people and that they can readily describe what is aggravating. In contrast, recognizing mitigating factors requires more careful and, perhaps, more uncommon processing.[1]

Triers of fact – the judge and/or jury in a legal case.

## Preface

A detailed study of Randy's psychology, the available records, and information garnered through collateral interviews has led me to develop a clinical formulation of the factors that likely contributed to Randy's actions during the acts that ultimately brought him to be before the court today. Please note that the clinical formulation and the information presented in this report

---

[1] Wiener, R.L., Richmond, T.L., Seib, H.M., Rauch, S.M., and Hackney, A.A. (2002). The psychology of telling murder stories: Do we think in scripts, exemplars, or prototypes? Behavioral Sciences and the Law, 20, 119 - 139.

are not intended to excuse, justify or diminish the significance of any act that the defendant may have done, but are meant to assist the triers of fact in understanding who the defendant is and how he became the person he is now. In particular, knowledge of the defendant's history and psychological make-up may assist the triers of fact in understanding where the defendant has come from and how he has come to be the man who is before the court today. When considered in its totality, this evaluation and report provide the triers of fact with detailed information concerning the defendant's background, character and personal moral culpability.

## Current Offense

**Basic Facts:**
    The defendant and six other inmates escaped from the Connally Unit in Karnes City, Texas on December 13, 2000. Officer Aubrey Hawkins was shot and killed when on December, 24, 2000, the seven escapees robbed an Oshman's Super Sports store in Irving, Texas.

## Personal Background

**Early Developmental and Social History:**
    Randy was born in McKinney, Texas on September 13, 1977 to Bob Randall Whitfield and Anna Marie Hammons who were 20 and 18 years of age respectfully. Three years later, Randy's brother Wesley was born. Both of Randy's biological parents abused a variety of substances and were drug addicts. Moreover, Ms. Hammons used drugs, drank alcohol, and smoked cigarettes while pregnant with Randy.

    Once the couple separated, the two boys mostly resided with their mother who had a succession of boyfriends who were very abusive to Randy and Wesley. One boyfriend in particular named Jimbo, was said to be especially abusive of the two young boys. Although Randy was fiercely protective of his brother Wesley, he was unable to really shield him from the emotional and physical harm brought on by the numerous unsavory individuals that his mother's drug steeped lifestyle placed them in contact with.

    Wesley remained with his mother while five year old Randy stayed mostly with his father for about the last five months of 1982. Randy's biological father was neglectful of Randy and by January 1983, his father had abandoned Randy whom he left with an East Texas family. Meanwhile, Wesley was continuing to be physically abused in his mother's care. CPS stepped in around the middle of 1983 and removed Wesley by emergency order and began to search for Randy. CPS soon located Randy and found that he was missing two teeth, one on the top and one on the bottom of his mouth. The teeth were said to have been knocked out. Randy bears a visible scar on his wrist from an incident occurring at that time.

    Randy and Wesley were reunited and placed in foster care. Both of their parent's gave up their parental rights and the boys were adopted in March 1984 (following an almost six month mandatory waiting period) by Daniel and Patricia Halprin. Daniel was said to have owned some sort of electronics store and Patricia was a computer programmer. The Halprins were a nice,

middle class couple with a nice home. Randy was two weeks shy of his sixth birthday and Wesley was two years old when they began residing with the Halprins.

Randy was said to have been quite concerned with death when he was placed with the Halprins, as he was always asking if they were going to die. He also appeared to be concerned that he would not get enough food as he would eat until he vomited if he was not monitored. He was preoccupied with devils and ghosts and was so scared of teenage boys that he would cover his face when in contact with a male teenager. Moreover, he was very protective of his younger brother whom he was said to "parent." Still, all early adoption reports indicate a remarkably smooth initial transition for the Halprin family. Mr. and Mrs. Halprin later also adopted two Korean baby boys.

**Childhood and Adolescent Social History:**
At the age of six, Randy did not know the alphabet and he could not count. Thus, his performance in kindergarten was not great. However, Randy quickly learned basic reading skills and did relatively satisfactory work in first through sixth grades aside from some difficulties with Social Studies and Language Arts in third and fourth grades that resulted in Randy going to tutorials several days a week after school. Randy struggled with math and did not pass standardized testing in this regard in the third grade.

Randy was diagnosed with Attention Deficit Disorder and an array of Learning Disabilities via a private psychological evaluation commissioned by Mr. and Mrs. Halprin when Randy was ten years old and in the fourth grade. Presumably this evaluation was never shared with the school, as school records do not indicate that these problems were in any way acknowledged or addressed and Randy was never placed in Special Education as would be the usual course of action once these diagnoses were identified. What is more, the psychologist's report documenting these diagnoses and recommending (among other things) tutoring, is dated April 6, 1988 while a note found in Randy's school records from Daniel Halprin to the school notifying them that Randy would no longer attend the after school tutoring he had been attending for two school years was dated April 25, 1988.

Randy felt the he was an outcast during elementary school as he was a "geek". In contrast, middle school brought some popularity to Randy who was a football player. Randy admits that he enjoyed being part of the "in crowd" and at age 13, he was more focused on socializing than on academics. This inability to divide his attention resulted in his failing both the seventh grade and his TAAS test. His poor performance was not due to truancy as he was absent only ten days that year.

Interestingly, at the very time he began a serious academic decline, Randy was applying himself and studying quite hard for his Bar Mitzvah. Successfully completing one's Bar Mitzvah is a mentally challenging task for any young person given that some Hebrew must be learned and a good many religious stories must be memorized. According to his Bar Mitzfuh mentor, Steve Sternblitz, and those who knew him then; Randy's motivation for completing this work appeared to be pleasing his father who was Jewish and who Randy looked up to and desperately wanted to please.

Randy began repeating the seventh grade in Arlington, but when he again began failing, he was sent to Oneida Baptist Institute, a boarding school in Kentucky where he would spend the next three and a half years. Randy's behavior at the time is noteworthy, as according to all of the information gathered for this report, Randy was not a behavior problem. In fact, written on the front of his initial Oneida boarding school application are the following statements: Not a trouble maker. Clean cut guy. When going gets tough he backs off. Main problem is school. Always wants to please. Impulsive behavior. Seldom rebellious.

According to Randy, his parents told him that he could come home if he made up the year he failed and pulled his grades up, which he did. He also took on positions of responsibility by being a Hall and Room Monitor and was named the "most outstanding" worker and Hall Monitor on more than one occasion. He began excelling in music and creative writing and enjoyed some success for a change. However, Randy felt rejected by his parents when they refused to allow him to come home.

Randy's inability to divide his attention between having fun and focusing on academics as was the case in seventh grade again became a problem in early 1995 when he began ninth grade and met Theresa Dancy. Theresa and Randy quickly became an inseparable couple, but it was Theresa who introduced Randy to acid and marijuana. Randy's grades again began to slip and tensions between him and his parents again increased, especially when his parents discovered he was smoking marijuana.

Early 1995 was a bad time for Randy. He was suspended for several days for stealing a VCR from a classroom prior to Spring Break and in May of 1995 Randy and his father had a significant argument when Randy took his father's mountain bike without permission. The tensions escalated to the point that Randy cashed one of his father's checks for approximately $200 in the hopes of using the money to return to Kentucky to his girlfriend.

Once back in Kentucky, Randy grew increasingly depressed over his family problems. Moreover, his drug use likely did not help his mood much. In July of 1995, Randy carved a note to Theresa, his girlfriend, in a bench at school. The school interpreted the note to be suicidal and expelled him. Randy's father refused to allow Randy to return to Texas and told the school that he would pay for Randy to go by bus to the city of his choice and for six months of housing, but that he could not come home. Randy again felt rejected by the Halprins. Randy chose to go to Lexington, Kentucky where he quickly grew lonely. He wrote a letter to the president of Oneida asking to be readmitted. His request was granted, but unfortunately, Randy soon stole a credit card and $275 in checks from a teacher and was permanently expelled in January 1996. It is unclear whether Randy took the credit card because he needed money to live on or if his continued drug use was the real motivator. Whatever the reality may be, he lost his place at Oneida, his relationship with Theresa and the relationship with his parents ceased to exist, as did his parent's financial support.

**Adult Social History:**
Now 18 and homeless, Randy began staying at a Kentucky shelter named Hope Center. In a desperate attempt to work his way back into his parents good graces, he told his father that he had enlisted in the Army. Unfortunately this was not true and the lie further separated Randy from his parents. In an attempt to reconcile with his parents, Randy returned to Texas and

showed up on his parent's doorstep, but was met by the Chief of Police of Dalworthington Gardens who informed Randy that he was not allowed on his parent's property. Scared and directionless, Randy began staying mostly at the Arlington Night Shelter, but occasionally with the Sternblitz's who were old family friends.

He was heavily into drugs and alcohol by August 1996, which is the point that he began staying with a couple whom he had met at the Arlington Night Shelter. A woman from the shelter named Charity was also staying with the couple. On a night in September 1996, Randy was on acid when he was left to baby sit the woman's child. Randy reported that he "snapped" and hurt the child when the child would not quit crying. While Randy clearly seriously injured the child, it is possible that the mother of the child believed that she herself was responsible for some of the child's extensive injuries as it is hard to imagine any other reason the child's mother would for several days fail to seek medical attention for her badly injured son. Whatever the case may be, Randy alone was arrested for Injury to a Child and he accepted a 30 year plea bargain. The Halprins were said to have removed all pictures of Randy from their home even before this offense.

**Educational History:**
Randy completed 11th grade. He earned a GED in jail.

**Military and Work History:**
Aside from being a Hall and Room Monitor at his boarding school, Randy held only unskilled, minimum wage jobs during the one year he was available for employment before being incarcerated. He was not allowed to enter the military since he had not graduated high school and had not at that time received his GED.

**Mental Health History:**
In 1988, Dr. William M. Helton, Jr. diagnosed Randy with Attention Deficit Disorder and Learning Disabilities in passage comprehension, math calculation, math reasoning and written expression. No treatments appear to have been sought for these problems.

Randy's biological mother reported that she has a mood disorder (Bipolar Disorder) and is a recovering drug addict. She has other family members who reportedly have mood and substance abuse disorders. Randy's biological father was also a drug addict and alcoholic, but other problems are less clear. The biological father's twin sister was convicted of killing her baby by severe physical abuse. Randy's biological brother is a recovering drug addict and he has been diagnosed with an Attention Deficit Disorder.

**Medical History:**
Aside from being shot in the foot during the process of fleeing the Oshman's store, Randy's medical history is unremarkable.

**Substance Abuse History:**
Randy began using drugs recreationally when he was 16 years-old and at Oneida. Ecstasy and acid were his drugs of choice. He used hallucinogenic drugs approximately once every two to three days and engaged in weekly inhalant use.

**Legal History:**
Randy does not have a juvenile legal record. He was placed on probation at 18 years of age for the fraudulent use of his teacher's credit card ($200). Nine months later, he was charged with Injury to a Child for which he agreed to a 30 year term of incarceration.

**Prison / Jail Behavior:**
Prior to the escape, Randy's disciplinary infractions in TDCJ were minor.

Statements by corrections officers at the Connelly Unit regarding the personality and interaction style of the Texas 7 escapees were quickly collected at the time of their escape. Overall, the statements indicated that Randy was viewed as "easy going," but not very smart. Moreover, TDCJ documents ranked Randy as being the lowest in terms of leadership abilities of the seven escapees.

## Psychological Testing and Interpretation

Note: A brief description of the instruments utilized in this evaluation can be found in Appendix B.

**Behavioral Observations:**
Randy was cooperative and respectful throughout the interviews and testing which were conducted in an interview room at the Lew Sterrett Jail. The testing environment was not ideal in that the security precautions taken by the corrections officers resulted in less privacy and more noise than was desirable. We were required to leave the door half open and one to three guards remained posted directly outside the door throughout each session. While the officers did attempt to keep the hallway quiet, they were not always successful and the noise noticeably distracted Randy. At one point when Randy appeared distracted, he stated that "there were too many distractions," referring to the movements of the guards outside the door.

Randy frequently shook his leg during testing and often made noises (e.g. hummed, repeated nonsense monosyllables) when he was concentrating in an obvious effort to focus his attention. Overall, time pressures degraded his performance significantly and interfered with his already poor concentration ability. Randy's poor functioning under time pressure was especially apparent on the block design subtest of the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). Moreover, he appeared to be very self-conscious when he preformed less than adequately and he appeared to grow nervous as a result. He appeared to be able to take more care with untimed tests and he appeared less nervous when faced with verbal tasks than with non-verbal tasks.

Randy tended to attempt to solve problems without changing his problem solving strategy despite the fact that he observed the strategy's failure. Moreover, he was quick to give up trying to solve problems that he found difficult. He frequently responded with "I don't know" or would resort to wild guessing without attempting to narrow his guessed answer down so as to increase the chances of his being correct. In addition, his behavior strongly suggested that he put forth less effort on subtests that utilized skills he was less adept at than those he could do well.

Randy admitted that he is supposed to wear glasses, but left his glasses elsewhere. While he reported that his eyesight is not "that bad," some (but not all) of his visiospatial performance problems could have been related to problems with his eyesight.

**Neuropsychological Screening:**

Randy's performance on the Repeatable Battery for the Assessment of Neuropsychological Status (R-BANS) is detailed below:

| Subtest | Index Score | Percentile | Classification |
|---|---|---|---|
| Immediate Memory | 76 | 5 | Borderline |
| Visiospatial / Constructional | 92 | 30 | Average |
| Language | 104 | 61 | Average |
| Attention | 88 | 21 | Low Average |
| Delayed Memory | 83 | 13 | Low Average |
| TOTAL SCALE | 84 | 14 | Low Average |

(Average = 100; Standard Deviation = 15)

In general, Randy's performance on the R-BANS was poor as his overall neurocognitive status fell below the 14th percentile for his age group. His most prominent deficient areas were in immediate memory and delayed memory. His memory impairments appeared to be related to a poor processing of information, as his recognition scores were good (20 out of 20 correct). He demonstrated good semantic fluency with no indication of aphasic disturbance. In fact, his best performance (both on the R-BANS and the WAIS-III) was on language subtests showing that naming and retrieving information was a strength for Randy. Lastly, his attention was measured to be below average on the R-BANS.

**Cognitive Functioning:**

Randy appeared to provide good effort during the administration of the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), which is a mentally draining test. Randy's age-corrected scaled scores on the WAIS-III are listed below:

| Verbal Tests | Scaled Scores | Performance Tests | Scaled Scores |
|---|---|---|---|
| Vocabulary | 14 | Picture Completion | 12 |
| Similarities | 12 | Digit Symbol-Coding | 9 |
| Information | 13 | Block Design | 7 |
| Comprehension | 13 | Matrix Reasoning | 11 |
| Arithmetic | 7 | Picture Arrangement | 11 |
| Digit Span | 9 | Symbol Search | 11 |
| Letter-Number Sequencing | 6 | | |

(Average = 10; Standard Deviation = 3)

On the WAIS-III, Randy obtained a verbal IQ (VIQ) score of 107 (68th percentile), a performance IQ (PIQ) score of 99 (47th percentile), and a full scale IQ (FSIQ) score of 104 +/- 4 placing him in the average range and the 61st percentile of measured intellectual functioning as compared to the normative sample. The difference between his verbal reasoning IQ and nonverbal reasoning / performance IQ is statistically insignificant suggesting that, statistically speaking, his nonverbal reasoning skills are approximately as well developed as are his verbal reasoning skills.

Relative to both his own functioning and to the standardization sample, Randy's performance on the various subtests showed two strengths and three weaknesses. Randy's strengths were in his word knowledge and in his range of factual knowledge. His weaknesses were in his ability to perform mathematical calculations in his head, his ability to pay attention to what he hears, and his ability to quickly and accurately size up a visiospatial problem and use motor skills to solve the problem. Compared to the standardization sample, but not his own functioning, Randy also had a strength in his social comprehension.

Deeper analysis of Randy's performance on the WAIS-III indicated that Randy's difficulties holding information in memory appeared to reduce his overall IQ score as well as his verbal IQ score. The ability to focus and regulate attentional resources makes up a large component of working memory and deficits in this regard appear to be at the root of Randy's low scores on a number of WAIS-III subtests. Moreover, his memory problems manifested consistently across the R-BANS and WAIS-III subtests.

**Achievement:**
Randy's scores on the WRAT-3 are listed below:

| Subtests | Standard Score* | Percentile | Grade Score | Classification Level |
|----------|-----------------|------------|-------------|----------------------|
| Reading | 121 | 92 | Post High School | Superior |
| Spelling | 106 | 66 | High School | Average |
| Arithmetic | 80 | 9 | Sixth Grade | Low Average |

*(Average = 100; Standard Deviation = 15)

Randy's overall performance on the Wide Range Achievement Test - Revision 3 (WRAT-3) indicated a significant weakness for his age in arithmetic, but no weaknesses in spelling or reading. His reading ability was his personal strong suit.

**Personality:**
Psychopathology: Randy's test responses indicate that he has long struggled with a depressed mood, feelings of insecurity and low morale. Feelings of worthlessness, hopelessness and resentment may often lead him to be irritable and he has seriously considered suicide. He reported being preoccupied with guilt feelings and feelings of remorse. Regret and unhappiness about life is central to his current psychology. He is currently plagued with anxiety and worry about the future and he is somewhat paranoid and distrustful of others. These feelings may manifest as somatic concern. He may be described as immature and self-absorbed and he may overestimate the value of some of his abilities. He is rather dramatic and high strung and he believes that he feels things more intensely than do others. He is very sensitive to criticism and/or the disapproval of others.

Interpersonal Functioning: Randy's test responses indicate that he very much desires close relationships, but he is unskilled at developing them. Indeed, he may appear socially assertive and may project an initially positive image to others, but in actuality he has limited social skills and he tends to be passive and submissive in interpersonal relationships. He tries to avoid relationships with individuals until he is certain that he will be liked. Once in a relationship, Randy may engage in outrageous behavior to avoid losing the relationship.

Randy appears to feel a great deal of loneliness and he appears to be grieving the loss of his family. He desires to reestablish family relationships as these continue to be important to him. Family relationships aside, Randy is interpersonally needy as he is somewhat more dependent on others than most people are and he tends to over-rely on others for direction and support. Nevertheless, Randy has a great deal of difficulty in his social relationships as others tend to see him as a somewhat distant and guarded person. At least some of his guardedness is due to fear that he may be shamed or ridiculed by those who get to know him. His fears may keep him from speaking up in social situations. In general, Randy likely functions best or most effectively in situations that do not require interpersonal competence.

Problem Solving and Coping Skills: According to his test responses, Randy tends to rationalize his problems and he may often act out impulsively. Randy lacks perseverance. He does not appear to have a consistent problem solving strategy but instead sometimes attempts to "think through" problems and at other times he engages in trial and error experimentation. His problem solving and coping style is generally less effective than a more consistent approach would be. Stressful situations may tend to overwhelm him and make him function even more ineffectively. When given a choice, he has used drugs and alcohol in order to cope with life's difficulties.

**Diagnostic Impressions:**
One question that this evaluation set out to answer was whether or not Randy suffers from a mental illness or mental abnormality. The simple answer is yes. Based upon the data and testing outlined in this report, it is my opinion that the diagnoses listed below apply to Randy.

> Axis I:   Major Depressive Disorder
>           Attention Deficit Hyperactivity Disorder
>           Polysubstance Abuse in Institutional Remission
>           Mathematics Learning Disability
> Axis II:  Avoidant Personality Disorder

1. *Major Depressive Disorder.* Randy has struggled with depression since his adolescence and is doing so now. Feelings of worthlessness, difficulty concentrating, suicidal ideation, loss of energy, anxiety and depressed mood have all periodically been problematic for Randy.

2. *Attention Deficit Hyperactivity Disorder.* Randy has long had Attention Deficit Hyperactivity Disorder (ADHD), which is a disorder that is characterized by *hyperactivity* (e.g. being too active, being fidgety, talking too much, being restless or having one's mind be always racing with thoughts); *inattentiveness* (e.g. difficulty paying attention, mind wandering, forgetting or losing things); and *impulsivity* (e.g. acting first without thinking, interrupting others, not thinking about the consequences of one's words or actions).

Smart or gifted children with ADHD often get by pretty well in the earlier grades when homework is not such a big issue. Frequently, gifted students are not identified as having ADHD until middle school or high school, when the work load increases and they are penalized more for not completing homework. Also, in middle school, children are

expected to work more independently, which can be a substantial problem for a child with ADHD as they have trouble concentrating and staying organized.

People with ADHD are at greater risk for school failure, having other learning disabilities and abusing alcohol or other drugs[2]. In addition, the use of marijuana and other drugs only serve to worsen their attention problems. In general, individuals with ADHD have more difficulty maintaining friendships and getting along with their family. They may be more irritable, have a quicker temper, and are at higher risk for developing depression because of the frustrations that go along with having an attention disorder. Proper treatment is essential as failure to get the appropriate help early on can lead to more problems later on. Likewise, proper treatment can prevent problems from occurring later in life. Unfortunately, Randy's attention disorder was never treated.

3. *Mathematics Learning Disability.* Records indicate that Randy was previously diagnosed with Learning Disorders that spanned reading, arithmetic and written language skills. Current testing confirmed that Randy's academic achievement score in Mathematics is significantly lower than would be expected given his level of intellectual functioning. His other current academic scores indicate that Randy has overcome the additional learning difficulties that were present in his childhood.

4. *Polysubstance abuse in institutional remission.* Before his incarceration, Randy frequently used acid and abused other drugs.

5. *Avoidant Personality Disorder.* Randy qualifies for a diagnosis of Avoidant Personality Disorder as he avoids activities that involve significant interpersonal contact because of fears of criticism, disapproval or rejection and he is unwilling to get involved with people unless he is certain that they will like him. He shows restraint within intimate relationships because of a fear of being shamed or ridiculed and he is preoccupied with being criticized or rejected in social situations. His feelings of inadequacy inhibit him in new interpersonal situations as he views himself as socially inept, personally unappealing and inferior to others.

6. I do not believe that Randy's symptoms of paranoia are the function of a disorder. Rather, it is my opinion that Randy characteristically has some anxious and paranoid tendencies that are greatly exacerbated by his current legal situation. Research has shown that increased paranoia is common in correctional settings.[3] Moreover, a portion of these feelings can be seen as an expected response to his environment rather than symptoms of mental illness since he is facing a punishment that may include death.

**Strengths:**

Simply identifying an individual's problems and weaknesses does not allow for an accurate and complete understanding of the individual as these are but a part of the individual's story. To

---

[2] Kaplan, H. & Sadock, B. (1998). Attention-Deficit Disorders. In Williams & Wilkins (Ed.), <u>Synopsis of psychiatry: Behavioral sciences/Clinical psychiatry (8th Ed.).</u> (pp. 1193-1200). Baltimore.
[3] Megargee, E. I. (1993, March). <u>Using the Megargee offender classification system with MMPI2: An update.</u> Paper presented at the 28th annual symposium on recent developments in the use of the MMPI/MMPI-2/MMPI-A, St. Petersburg Beach, Fl.

be sure, knowledge of the individual's strengths is also important. Thus, Randy's currently identified relevant strengths are listed below:

> ➢ ability to show care and concern for others
> ➢ ability to experience guilt
> ➢ ability to love
> ➢ adequate intelligence

## Clinical Formulation

People are complex beings and the world is a complex place. Rarely is there a simple answer to the question of "why" someone did something or "how" someone got to be the way they are. Most events, whether big or small, are the result of a combination of factors that have all come into play to produce the event. This is especially true of such weighty events as the killing of another person. Likewise, many factors and experiences interact to make a person into the particular individual they are. While certainly a difficult task, careful study of the totality of a person's life can shed light on some of the factors that have combined to produce that person's character.

Outlined below are the various identifiable facets of Randy's psychological make-up and background that in my professional opinion brought Randy to be at an event as tragic as Officer Aubrey's death and to be the man who stands before the court today. These facets have been identified during this extensive forensic evaluation and include psychological characteristics, biological predispositions and critical life events.

> ➢ *Adverse early environment.* Put simply, children who in early childhood were devalued, ignored, beaten, used for adult gratification or treated as pawns in dysfunctional adult relationships suffer deprivation and are left traumatized. These experiences can and do cause disruptions in childhood development and may have profound effects later on in an abused child's adolescent and adult functioning[4]. Areas that may be negatively impacted include intellectual and academic growth, cognitive and perceptual abilities, aggression level and behavioral dysfunction, psychiatric functioning, and social competence in relationships[5]. Children who are old enough to recall their birth parents may especially suffer low self-esteem because they are forced to struggle to understand why their parent(s) rejected and abandoned them. As a result, they may have special difficulties in regards to their ability to relate prosocially to others.
>
>     To be sure, prior traumatization can be a factor affecting the duration or severity of problems in any of these domains. Early abuse by caregivers can result in a child having attachment difficulties that make it difficult to establish and maintain satisfying relationships. The child's self concept can be very adversely affected as they struggle to understand why they were the object of abuse. The child's coping skills may be seen as

---

[4] Myers, J.E., Berliner, L., Briere, J., Hendrix, C.T., Jenny, C., & Reid, T. A. (Eds.). The APSAC Handbook on Child Maltreatment, Second Edition (2002). Thousand Oaks, California: Sage.

[5] U.S. Department of Health and Human Services. (1999). *Mental health: A report of the surgeon general.* Rockville, MD: U.S. Department of Health and Human Services.

negative traits and may not serve him or her well once removed from the abusive situation, but were developed in order for the child to get by in an abusive home. Moreover, regardless of how positive later caregiver experiences may be, a great deal of modeling occurred when the child watched the abusive caregivers. Consequently, it is not a shock that Randy's original offense involved injury to a child given his highly abusive early environment. Likewise, Randy's social difficulties with the Halprins and struggles with a poor self-concept are not surprising.

➢ *Genetic vulnerability for mental disorders and substance abuse.* Research has shown a genetic link between many mental disorders and substance abuse problems. For example, the risk of Alcohol Dependence is three to four times higher in close relatives of people with Alcohol Dependence.[6] Higher risk is associated with a greater number of affected relatives, closer genetic relationships and the severity of the substance abuse related problems in the affected relative. Both of Randy's parents were addicts and mood disorders were prevalent throughout both sides of his family leaving Randy with a biological predisposition to mood and substance abuse disorders. Accordingly, the fact that both Randy and his biological brother Wesley grew up to abuse substances, have attention disorders and struggle with mood problems is not unexpected given their genetic background.

➢ *Untreated Learning Disorders and Attention Deficit Disorder in Childhood.* The fact that Randy had significant learning and attention problems that undermined his academic performance was identified as early as the age of ten when Randy was diagnosed with Attention Deficit Disorder and an array of Learning Disabilities. These disorders place children at a high risk of academic failure and predispose them to social and emotional problems[7]. Yet, Randy's disorders were never addressed or treated. Moreover, it appears that Randy's school was never advised of these diagnoses as Randy did not receive the special educational services that he would have been entitled to. Such services could have assisted Randy in compensating for and ameliorating his deficits which likely would have increased his academic performance, self-esteem and perseverance while decreasing behavioral problems.

It is possible that as was the reported case with Wesley's comparatively more severe ADHD, the Halprins chose to forgo the use of ADHD medication due to Randy's genetic predisposition to drug addiction. This is a reasonable choice considering Randy's biological parents were drug addicts. However, a number of non-medical treatments could have been provided to Randy, but seem to instead have been purposefully avoided. For example, at the same time that they were advised that tutoring was recommended by the psychologist in order to address Randy's disorders, the Halprins pulled Randy out of the after school tutoring that he had been attending for a few years. Without benefit of interviewing the Halprins, it appears that they wanted Randy's problems identified, but then ignored the recommended solutions.

---

[6] Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (2000). American Psychiatric Association, Washington, D.C.
[7] Kaplan, H. & Sadock, B. (1998). Learning Disorders. In Williams & Wilkins (Ed.), Synopsis of psychiatry: Behavioral sciences/Clinical psychiatry (8th Ed.). Baltimore.

Perhaps the Halprins believed that the structure provided by a boarding school such as Oneida, would serve to focus Randy - which it did to an extent. However, Oneida's classroom structure did not serve to focus Randy once his attention was caught up with his girlfriend, as he has little ability to divide his attention. Moreover, simply relying on structure to address learning disabilities is naive.

➢ *Unfulfilled need for acceptance and unconditional love.* By virtue of being abused and given up for adoption, a child has special needs in addition to the basic needs of all children. Adoptive parents must not only meet the normal developmental needs of the child placed in their care, but these other special needs must be met as well if the child is to overcome their beginnings. Indeed, abused and neglected children require tremendous patience, understanding and an abundance of unconditional love in order to rise above their past and in order to develop a sense of security that they will not also be rejected by their new parents. The longer the child has been reared in an aversive environment and the greater the number of caregivers prior to adoption, the more important these parental traits are to the child.

According to Terry Goldberg, the mother of Randy's closest childhood friend, Randy did not seem "to fit in" anywhere and he did not receive unconditional love from the Halprins who clearly favored their younger children. Jason Goldberg, Randy's best childhood friend added that Randy's needs appeared to be a burden to the Halprins in contrast to the other children. Given his history, it is easy to see why sending Randy away to boarding school felt like yet another caregiver rejection to him. Once again, his sense of permanence in a home and trust in caregivers was shook. Even though it was likely done out of concern for his welfare, boarding school could not possibly supplant Randy's need for connectedness with the Halprins.

➢ *Rigid parenting.* Randy had not been a significant behavioral problem prior to his being sent to Oneida. In fact, by all accounts Wesley's behavior was more problematic than was Randy's, yet Randy was sent away. Information elicited from friends who knew the Halprin family at the time suggest that the Halprins were good people, but were not very flexible in their thinking or very warm towards Randy and were rather over-reactive in their parenting. Perhaps the Halprins believed that sacrificing Randy was necessary in order to protect their other children from negative influences or perhaps they simply wanted Randy to do well in life and as a result, they overreacted or reacted rigidly to situations involving Randy. Whatever reality may be, Randy was never provided with the type of unconditional love and flexibility in parenting that he needed and Randy was never made anybody's priority.

➢ *Drug abuse.* Randy was high on acid when he committed the offense of Injury to a Child which put him in prison for a 30 year sentence. Perhaps if it were not for his drug use, he would not have committed that offense. Unlike his brother Wesley, Randy was not given the benefit and chance offered by drug rehab. Instead at the age of 17 he was given a bus ticket and an apartment and told to make something of himself. Perhaps what is most remarkable is that Randy could be at a boarding school and no adult realized or intervened in his frequent use of hallucinogenic drugs and weekly inhalant use. Even

more incredibly, Randy was expelled rather than helped when the school thought that Randy was suicidal.

➤ *Complete absence of guidance.* From the time Randy was expelled from Oneida at the age of 17 (almost 18), he was without any sort of positive social support or adult guidance. His adoptive parents left him in another state and ceased communicating with him. He no longer was affiliated with the school. Extended family to turn to for support was not an option available to him. Randy had never even met or talked to any of Mrs. Halprin's family. For unknown reasons, Mrs. Halprin completely cut ties with her family (just like what would be done with Randy) before Randy was adopted and Mr. Halprin rarely interacted with his family once his sister Rhonda died. In apparent attempts to further ensure his isolation, the Halprins advised acquaintances including Rabbi Keith Elisabeth Stern, who had not seen or spoken with Randy since he was sent to Oneida, that Randy should be ignored should he call. While he made a number of very bad decisions at the time, Randy's acceptance of a 30 year sentence appears to have been particularly hasty and unwise and may have been different had he had any sort of guidance. Interestingly, the Halprins continue a relationship with Wesley today even though he has also been arrested and has required drug rehab.

➤ *Strong, unfulfilled need to belong.* Randy did not receive a single visit from anyone - family or friend - during the five years he was incarcerated before his escape. His loneliness and feelings of isolation throughout his incarceration can be seen in his letters which chronicle his numerous attempts to reach out and reconnect with his family. Moreover, those who have known Randy from adolescence describe him as a follower rather than a leader and he was ranked as being low in leadership qualities when TDCJ conducted their investigation following the escape. Combine his disconnection with the outside world with his Avoidant Personality Disorder and tendency to be a follower and the feeling of belonging provided by Rivas and the others likely helped to position Randy to fall in with Rivas' plan.

**Summary**

In summary, information has been provided in this report concerning the defendant's background, character and personal moral culpability including a multitude of factors that the triers of fact may consider mitigating and therefore may take into account when considering appropriate sentencing. Special care was taken to fully elucidate the identifiable factors that converged to bring about this tragic outcome. However, please feel free to contact me should more explanation be needed or should you have concerns of any nature. I appreciate the opportunity to be of assistance and participate in the legal process with this case.

Respectfully submitted,

Kelly R. Goodness, Ph.D.
Clinical and Forensic Psychologist
License #3-1223

# Appendix A

# Case Material Received

The State of Texas v. Randy Ethan Halprin

| Date | Material |
|---|---|
| | Affidavit for Evidentiary Search Warrant |
| Fall 2001 | Research and Investigation by class of Professor Roark Reed |
| Spring 2002 | Research and Investigation by class of Professor Roark Reed |
| | Various media reports |
| | Various motions |
| Beginning 12/24/2000 | Offense Report – Estimated 700+ pages |
| | Miscellaneous Information regarding Oneida Baptist Institute |
| | Academic records from Oneida Baptist Institute |
| | Academic records from Arlington Public Schools |
| 1982 – 1991 | Medical and Immunization records |
| 1996 | Police Report of Previous Offense (Injury To A Child) – Estimated 2,500+ pages of information |
| 1/23/2001 | Police statement of Jeff Spivey |
| | Autopsy of Aubrey Hawkins |
| 1996 | Medical records of Jared Robert Smith |
| 2001 | FBI Offense Records |
| 2001 | Colorado Springs Police Offense Records |
| 2001 | Texas Department of Public Safety Offense Records |
| 2001 | Texas Department of Criminal Justice Offense Records |
| 2001 | Texas Department of Criminal Justice – Internal Affairs Division Offense Records |
| 2000 & 2001 | Irving Police Department Offense Records |
| 2001 | United Stated Department of Justice Offense Records |
| 12/2000 | Pearland Police Department Offense Records |
| 2001 | Pueblo Police Department Offense Records |
| 2001 | Pasadena Police Department Offense Records |
| 2000 | Texas Department of Justice Institutional Division Offense Records |
| 2001 | Office of the District Attorney Fourth Judicial District Investigative Report |
| 1983 - 1984 | Adoption Records and related documents |
| | Photos and 2 childhood yearbooks |
| | Numerous crime scene photos |
| | Numerous letters from the defendant to friends and family throughout the time of his incarceration |
| 6/3/97 | Substance abuse subtle screening instrument |

# Case Material Received

## Continued

The State of Texas v. Randy Ethan Halprin

| Date | Material |
|------|----------|
| 1998-2000 | Texas Department of Criminal Justice – Medical Records |
| 6/1999 | Texas Department of Criminal Justice – Psychological Records |
| | Texas Department of Criminal Justice – Classification Records |

---

**Appendix B**

# Description of Selected Psychological Instruments

The State of Texas v. Randy Ethan Halprin

---

The Adult Social History Self-Report Survey queries respondents about the details of their adult marital and love relationships, as well as their sexual history. The individual's residential history, religious preferences, and hobby preferences are elicited. Lastly, this self-report instrument requests relevant details concerning the respondent's offspring.

The Alcohol and Drug Use History Self-Report Survey queries the frequency and quantity of an individual's use of a broad range of drugs and alcohol. In addition, respondents are asked about whether or not the have ever experienced a variety of common substance abuse and dependence symptoms.

The Birth History Self-Report Survey is a brief instrument designed to elicit information about an individual's delivery and birth, as well as pertinent family information for that time period.

The Childhood Social History Self-Report Survey is a detailed instrument designed to elicit information about an individual's childhood environmental and economic conditions, as well as pertinent family information for that time period.

The Collateral Contact List identifies contact information and pertinent details of an individual's relationships with immediate and extended family, co-workers, employers, friends, and relevant others.

The Criminal History – Self-Report Survey is a detailed self-reported accounting of an individual's juvenile and adult criminal history. Information about an individual's mental state at the time of an offense is elicited for each offense, be it a misdemeanor or a felony. Offense disposition information and penal disciplinary records are queried.

The Employment and Military History - Self-Report Survey is a self-report instrument used to elicit a detailed accounting of an individual's military and employment history.

The Medical and Mental Health History - Self-Report Survey is a self-report instrument designed to elicit a broad account of an individual's lifelong medical and mental health history. Neurological issues are a particular focus. In addition, respondents are asked about the presence of over 50 symptoms of medical and psychological disorders.

The Minnesota Multiphasic Personality Inventory – II (MMPI-A) is a 478-question self-report objective personality measure that is used to understand an adolescent's personality structure and

# Description of Selected Psychological Instruments Continued

to diagnose mental disorders.  It may also be used to assist with the selection of appropriate treatment methods.  It was developed for use with adolescents ages 14 through 18.

Personal Interests - Self-Report Survey is a self-report instrument used to identify an individual's hobbies, interests, and use of media.

The Personality Disorder Questionnaire IV (PDQ-IV) is a screening instrument for all DSM-IV personality disorders.

The Religious History - Self-Report Survey is a self-report instrument designed to outline an individual's childhood and adult religious experiences and beliefs.

The Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) is an individually administered core test battery measuring attention, language, visiospatial / constructional abilities, and immediate and delayed memory. The R-BANS is comprised of 12 subtests

The Rorschach is a projective test that provides rich data concerning how an individual solves problems, perceives the world, organizes information, copes with the world and stress and how the individual functions emotionally.

The Sacks Sentence Completion Test (SSCT) is a projective instrument in which a respondent is asked to quickly complete unfinished sentences with the first thought that comes to their mind. The SSCT provides information about an individual's attitudes and beliefs about people and the world around them.

The Schedule of Affective Disorders and Schizophrenia (SADS) is a semi-structured diagnostic interview constructed to assess both mood and psychotic disorders for both prior and current episodes.

The Tattoo and Scar Identification Form catalogues an individual's tattoos and scars including where they are located on the body, when and how obtained, meaning of the tattoo and other pertinent details.

The Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) is the most widely used adult intelligence test. It provides both a verbal intelligence score and a performance intelligence score. Aside for intellectual abilities, the WAIS-III provides data regarding psychopathology, neuropsychological functioning and personality structure.

The Wide Range Achievement Test - Revision 3 (WRAT-3) is an academic achievement test that provides information concerning an individual's Reading, Spelling, and Arithmetic abilities. Scores are related to particular grade levels.

1          Defendant's Exhibit No.  2

2

3

4

5

6

7

8

9

10

11

12

13

14

15          (adoption records, attached hereto)

16

17

18

19

20

21

22

23

24

25

BRIDGET BARNHILL, OFFICIAL REPORTER

BIRTH NO. 61-416

| STATE OF TEXAS | CERTIFICATE OF BIRTH | |
|---|---|---|

| 1. PLACE OF BIRTH | | 2. USUAL RESIDENCE OF MOTHER (Where does mother live) | |
|---|---|---|---|
| a. COUNTY Collin | | a. STATE Texas | b. COUNTY Denton |
| b. CITY OR TOWN [If outside city limits, give precinct no.] McKinney | | c. CITY OR TOWN [If outside city limits, give pct. no.] Denton | ZIP CODE 76253 |
| c. NAME OF [If not in hospital, give street address] HOSPITAL OR INSTITUTION Randall Clinic & Maternity Hosp. | | d. STREET ADDRESS [If rural, give location] Box 571 | |
| d. IS PLACE OF BIRTH INSIDE CITY LIMITS? YES ☑ NO ☐ | | e. IS RESIDENCE INSIDE CITY LIMITS? YES ☑ NO ☐ | f. IS RESIDENCE ON A FARM? YES ☐ NO ☒ |

| 3. NAME [Type or Print] | (a) First Randy | (b) Middle Lee | (c) Last Whitfield | 4. DATE OF BIRTH 9-13-77 |
|---|---|---|---|---|
| 5. SEX male | 6a. THIS BIRTH SINGLE ☑ TWIN ☐ TRIPLET ☐ | | 6b. IF TWIN OR TRIPLET, WAS CHILD BORN 1st ☐ 2nd ☐ 3rd ☐ | |

| 7. NAME | (a) First Bob | (b) Middle Randall | (c) Last Whitfield | 8. COLOR OR RACE white |
|---|---|---|---|---|
| 9. AGE [At time of this birth] 20 YEARS | 10. BIRTHPLACE [State or foreign country] Texas | 11a. USUAL OCCUPATION drill pres operator | 11b. KIND OF BUSINESS OR INDUSTRY Booman Corp. | |

| 13. MAIDEN NAME | (a) First Anna | (b) Middle Marie | (c) Last Hammons | 12. COLOR OR RACE white |
|---|---|---|---|---|
| 14. AGE [At time of this birth] 18 YEARS | 15. BIRTHPLACE [State or foreign country] Texas | | | |

| 17. INFORMANT Anna Whitfield | | | |
|---|---|---|---|
| | a. How many OTHER children 0 | b. How many OTHER children were born alive but are now dead? 0 | c. How many children were born dead [fetal deaths after 20 weeks pregnancy]? 0 |

| 18. I hereby certify that this child was born alive on the date stated above | 19a. ATTENDANT'S SIGNATURE Don Mitchell M.D. | 19b. ATTENDANT AT BIRTH M.D. ☒ D.O. ☐ MIDWIFE ☐ OTHER ☐ |
|---|---|---|
| 8:12 P. .M. | 19c. ATTENDANT'S ADDRESS 1413 W.N. Central Expwy McKinney, Texas 75069 | 19d. DATE SIGNED 9-19-77 |
| 20a. REGISTRAR'S FILE NO. 77-526 | 20b. DATE REC'D BY LOCAL REGISTRAR 9-26-77 | 20c. REGISTRAR'S SIGNATURE Irlene Kemp |

FOR MEDICAL AND HEALTH USE ONLY [This Section MUST be filled out]

STATE OF TEXAS
COUNTY OF COLLIN

I hereby certify that the foregoing is a true and correct copy of the
Birth Certificate filed in the Birth Records of Collin County, Texas.

Issued: 5-26-83

Helen Starnes, Clerk
County Court,
Collin County, Texas

DEFENDANT'S
EXHIBIT
2
RO 8-20-10
PENGAD-Bayonne, N. J.

5385

# Texas Department of Human Resources

### DENTON COUNTY CHILDREN'S PROTECTIVE SERVICES

## AUTHORIZATION FOR MEDICAL CARE, SCHOOL ENROLLMENT, TRAVEL



JEROME CHAPMAN
Commissioner

**BOARD MEMBERS**
HILMAR G. MOORE
Chairman, Richmond

RAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

The Denton County Children's Protective Services Unit, granted

conservatorship by the 158th _____ Court, Cause No. 82-3081-A

Viteychuk

_____, hereby authorizes **Billie and/or Hector** to obtain

the following services for **Randy Lee Whitfield**, born **09-13-77** _____

I. EMERGENCY MEDICAL CARE, recommended by a licensed physician or dentist

to include:

    1. Admission to a hospital
    2. Administering anesthetics                    Medicaid  502744880 (pending)
    3. Performing surgery                                    (number)
    4. Giving tests and immunizations
    5. Any necessary dental work
    6. Filling prescriptions
    7. Administering nonprescription drugs

II. SCHOOL ENROLLMENT: The foster parents may enroll child in school and

sign any necessary school forms.

III. TRAVEL: Foster parents are authorized to travel with said child with

notice to agency of trips over 48 hours.

_____
Supervisor

Denton County
Children's Protective Services
P. O. Box 2186
Denton, Texas  76201

STATE OF TEXAS

COUNTY OF DENTON

SWORN TO AND SUBSCRIBED BEFORE ME, This _____ day of _____

A.D., 19___.

_____
Notary Public

MY commission expires_____

An Equal Opportunity Employer

5386

PLACEMENT AND REMOVAL FORM
FOR DENTON COUNTY

Child's Name:    Randy Lee Whitfield              DOB:    9-13-77

Client Number:   502744880

Date of Placement in Foster/Institutional Care:    6-6-83

Date of Removal from Foster/Institutional Care:

Name and Address of Foster Parents      Hector & Billie Viteychuk
    or Caretakers:
                                         17 Shiloh Circle

                                         Roanoke, TX  76262

Facility Number:    080421


*Beverly Basden*                 6-7-83          817-383-2371
Child's Caseworker                Date           Phone Number


*[Signature]*                    6-8-83
Signature of Supervisor           Date


Please route to:

[  ]  Placement/Removal Log

[ ✓ ]  Child's Casefolder

[  ]  Sallie Wagner, Foster Home Worker

[  ]  Yvonne Moore, AFDC Specialist

[  ]  Freda Wise, Placement Supervisor

[  ]  Beverly Dewcher, Community Service Aide


5387

Randy Lee Whitfield
DOB:  09-13-77

Yvonne Moore  128-7
Eligibility for Foster Care
Dept. of Human Resources
N08 W. 4th St.
Ft. Worth, TX  76102

Beverly Basden  347-1
Children's Protective Services
P. O. Box 2186
Denton, TX  76201

June 14, 1983

Attached is a copy of the Application for Foster Care Assistance
on the above child.  Also attached is a copy of his birth certificate,
the Original Petition, Temporary Orders, and the Decree of Termination.

The completed Facts form indicates that he was placed in the foster
home of Hector Viteychuk on June 6, 1983 prior to the Temporary Order
being obtained on June 9, 1983.

An Application for Social Security Number was completed on June 9, 1983,
and this number will be forwarded to you as soon as it is received.


BEVERLY BASDEN

BB/js

Attachments

Texas Department
of Human Resources

**I  FOSTER CARE ASSISTANCE APPLICATION AND REVIEW**

Form 2200
October 1981

☒ APPLICATION   ☐ REVIEW   ☐ REAPPLICATION

| Child's Name | Sex | Unique Client No. | Date of Initial Placement |
|---|---|---|---|
| *Randy Lee Whitfield* | M | 502744480 | 6·6·83 |

| Race | | | | | Soc. Sec. No. (If none, enter date application for SSN was made.) |
|---|---|---|---|---|---|
| ☒ White | ☐ Black | ☐ Hispanic | ☐ Am. Indian or Alaskan Native | ☐ Asian or Pacific Islander | 6·9·83 |

**Mother's Name**
*Anna Marie Whitfield*

**Mother's Address (Street, City, State, ZIP)**
*3918 W. University, Denton*

**Father's Name**
*Bob Randal Whitfield*      ☒ Biological   ☒ Legal

**Father's Address (Street, City, State, ZIP)**
*9015 S. Locust, Denton*

**Stepparent's Name**

**Stepparent's Address (Street, City, State, ZIP)**

---

**A. ELIGIBILITY REQUIREMENTS FOR AFDC FOSTER CARE (Type Program 08); MAO FOSTER CARE (Type Program 09); AND STATE PAID FOSTER CARE (Type Program 10)**

    **1. Managing Conservatorship**

        a. Is the child in the managing conservatorship of DHR? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ No

        If yes, enter the date of court order and attach copy of the petition
        and court order if it has not been previously submitted: . . . . . . . . . . . . . . . . . . . . . . . . . . 6·9·83

> **NOTE:** If the answer to a. above is no, the child is not eligible for Program 08, 09, or 10 benefits.
> **DO NOT COMPLETE THE REMAINDER OF THIS FORM**

        b. Was the child placed in an emergency under the statutory authorization
        of Chapter 17.03, (a) (3) or (4) T.F.C., prior to court hearing? . . . . . . . . . . . . . . . . . . . ☐ Yes  ☒ No

        If yes, enter the date! . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    **2. Child's Age**

| Date of Birth | Method of Verification | | |
|---|---|---|---|
| 9·13·77 | ☒ Birth Certificate | ☐ Baptismal Certificate | ☐ Hospital Certificate |

    **3. Citizenship of Child**

| Place of Birth (City, State, County) |
|---|
| *McKinney, Texas, Collin County* |

    (check one)
    ☒ U.S. Citizen   ☐ Lawfully Admitted Alien   ☐ Of unknown parentage, found in the U.S. under age 5 years.

    **4. Type Foster Care Facility  (check appropriate box)**

        ☒ The child is residing in a licensed or certified foster family or group home.

        ☐ The child is residing in a private non-profit child care institution which is listed in the Appendix II of the SSHB.

        ☐ The child is in a medical facility which accepts Medicaid and a plan has been made to place the child in a foster care facility.

| Name of Foster Care Facility | Address (Street, City, State, ZIP) |
|---|---|
| *Hector & Ellie Uteychek* | *17 Shiloh Circle, Roanoke, Tx 76262* |

| Facility No. | Daily Rate | Date Child Placed in F.C. Facility or Date Child Entered Medical Facility: | Date Child Removed |
|---|---|---|---|
| 080421 | $7 | 6·6·83 | |

5389

Form 2200
Page 2

> NOTE: The child must be placed within the State of Texas to be eligible for Program 08, 09, or 10 benefits. If the child is placed outside of Texas, DO NOT COMPLETE THE REMAINDER OF THIS FORM.

**5. Resources**

Does the child have property and resources in excess of $1000? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

If yes, describe:

Method of Verification

**6. Child's Income and Need**

Enter any regular and predictable monthly income, including child support, that is available to the child.

| SOURCE OF INCOME | EFFECTIVE DATE | AMOUNT |
|---|---|---|
| *Parental rights terminated* | | 0 |
| | | |
| | | |

RSDI, SSI, or RR Ret. Claim No.

Child's Total Monthly Income . . . . . . . . . . . . . . . . . . . . . . . 0

Monthly Cost of Child Care (based on daily rate in item 4) . . . . . @ 210

Who is receiving child's income?   Relationship to Child

**B. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 08 ONLY**

Date Court Proceedings Initiated

**7. Eligibility Status at Time of Removal** . . . . . . . . . . . . . . . . . . . .

☐ The child was a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

| AFDC Case Name | AFDC Case No. | Client No. |
|---|---|---|

Name of Parent or Qualified Relative      Relationship ☐ Father ☐ Mother ☐ Other (explain):

Address

Has the AFDC worker been notified to remove the child from the grant? . ☐ Yes ☐ No   Date   Method

☒ The child was not a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

**8. Domicile and Deprivation of Parental Support**

a. If child was living with parent(s) or relative during the month the petition was filed, check and complete box that applies:

☐ Living With Both Legal Parents:

Was either parent incapacitated? ☐ Yes ☐ No   Method of Verification (Attach Form 33-C if incapacity is based on anything other than SSI or RSDI.)

☐ Living With One Legal Parent: . . . . . . . . ☐ Mother ☐ Father

Reason for Other Parent's Absence ☐ Parents Not Married ☐ Desertion ☐ Separation ☐ Incarceration ☐ Divorce ☐ Death

☐ Living With Relative:

| Name | Relationship |
|---|---|

5390

Form 2200
Page 3

b. If child was not living with parent(s) or relative during the month the petition was filed, was child living with parent(s) or relative at any time during the six months prior to month of filing? ...... ☒ Yes ☐ No

| If yes, NAME OF RELATIVE | RELATIONSHIP | DATES |
|---|---|---|
| Bob Randal Whitfield | father | 8/82 - 12/82 |

c. Redetermination of Deprivation. If the child were again living in the home from which he was removed, would he/she continue to be deprived of parental support? ..................... ☒ Yes ☐ No

Indicate reason for continued deprivation (i.e. parents not married, deceased, parental rights terminated, etc.)

parental rights terminated 6-14-83

9. Verification of Age and Relationship (Verification of relationship applies to both parents and to relatives if the child was living with relatives.)

Method of Verification: ☒ Birth Certificate ☐ Hospital Certificate ☐ Baptismal Certificate

| Name of Hospital or Church | File or Cert. No. | Vol. (Bapt. Cert.) | Page No. (Bapt. Cert.) |
|---|---|---|---|
| Mitchell Clinic & Maternity Hospital | | | |
| City McKinney | County Collin | | State TX |

☐ Evaluative Conclusion (explain): _____

NOTE: If age and relationship of the child cannot be verified by birth certificate, hospital certificate, or baptismal certificate and are determined by evaluative conclusion, this form must be signed by the Protective Services Supervisor.

_____
Signature—Supervisor Approving Above Eval. Concl.    Date

10. Family Need
If the child was NOT receiving AFDC in the home of his/her legal parent(s), the following must be completed to establish financial need of family. (Needs and resources of non-legally responsible relatives are not to be considered.) Needs and resources of the child's legal stepfather are considered if the stepfather resides in the home.

| NUMBER IN FAMILY | GROSS MONTHLY INCOME | SOURCE OF INCOME | FAMILY MEMBERS TO WHOM THE INCOME IS ATTRIBUTED | | | |
|---|---|---|---|---|---|---|
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | Terminated | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |

How was income determined? _____

5391

Case 3:13-cv-01535 Document 20-1 Filed 08/2014 Page 36 of 51 PageID 5389

**11. WIN Status of 16 or 17 Year Old Child**

☐ Exemption Claimed

Basis for Exemption

☐ Illness or Incapacity     ☐ Currently Attending School     ☐ Remoteness from WIN Project

☐ No Exemption Claimed

Child:

☐ Registered for WIN Program     ☐ Refuses to Register

**C. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 10 ONLY (check the box if the statement applies)**

☐ A petition for termination of parental rights of one or both parents under Section 15.02 TFC other than or in addition to 15.02 (I) (J) has been filed by DHR. Date of Petition for Termination: . . . . .

| Date (att. copy of petition) |
| --- |
| 6·9·83 |

☒ The child was placed in foster care after August 31, 1979.

**D. ADDRESS FOR FORM 3087 (Medical Care Identification Card) — If Form 3087 is to be sent to someone other than the facility in which the child is placed, complete the following:**

| Name |
| --- |
| Mailing Address (Street, City, State, ZIP) |

**E. THIRD PARTY RESOURCE INFORMATION**

Is child covered by private health insurance (Blue Cross Blue Shield, CHAMPUS, etc.)? . . . . . . . . . . . . . . . . . . . ☐ Yes    ☐ No

If yes, complete the following for each policy under which the child is covered. If the child is covered by more than two policies, include the following information on an attached sheet of paper for the additional policies.

**POLICY NO. 1**

| Company Name | 1st Line Address | | |
| --- | --- | --- | --- |
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

**POLICY NO. 2**

| Company Name | 1st Line Address | | |
| --- | --- | --- | --- |
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

When eligibility worker and child-placing worker are not the same, the child-placing worker must sign below.

*Beverly H. Basden*     6·14·83

Signature–Social Services Child-placing Worker     Date

| Mail Code | BJN | Unit No. | Telephone No. |
| --- | --- | --- | --- |
| 347·1 | 05135·C02 | 35 | (817) 383-2371 |

5392

Case 2:13-cv-01525-L Document 111-12 filed 08/07/14 Page 36 of 533 PageID 5393

Texas Department
of Human Resources

**MEDICAL HISTORY AND PHYSICAL EXAMINATION**

Dr. Crechner
9/2/83
TCOM

Form 2939
February 1983

| Name | Date of Birth | Examining Physician | Date of Examination |
|---|---|---|---|
| Randy Lee Whitfield | 9-13-77 | | 9-2-83 |
| Address of Physician | | | Telephone No. |
| 3100 S. Riverside  Ft Worth, Tx 76119 | | | 921-2652 |

## MEDICAL HISTORY

| ITEM | YES | NO | Unk. or NA | COMMENTS |
|---|---|---|---|---|
| Gestation Problems | | | | |
| Prematurity | | | | |
| Congenital Defects | | | | |
| Birth Injury | | | | |
| Serious Illnesses | | | | |
| Serious Accidents | | | | |
| Hospitalizations | | | | |
| Surgeries | | | | |
| Seizures | | | | |
| Eye/Ear Infections | | | | |
| Respiratory Infections | | | | |
| Urinary Tract Infections | | | | |
| Vaginal Tract Infections | | | | |
| Venereal Disease | | | | |
| Headaches | | | | |
| Menses/Dysmenorrhea | | | | |
| Enuresis | | | | |
| Measles | | | | |
| Mumps | | | | |
| Rubella | | | | |
| Diphtheria | | | | |
| Tetanus | | | | |
| Pertussis | | | | |
| Polio | | | | |
| Chicken Pox | | | | |
| Scarlet Fever | | | | |
| Rheumatic Fever | | | | |
| Allergies | | | | |
| Constipation/Diarrhea | | | | |
| Worms/Parasites | | | | |
| Digestive Problems | | | | |
| Drug Use | | | | |
| Other | | | | |

5393

Case 2:13-cv-01025-L Document 1-12 Filed 05/21/14 Page 37 of 533 PageID 5394

## FAMILY HISTORY

| DISEASE/CONDITION | YES | NO | Unk. or NA | COMMENTS |
|---|---|---|---|---|
| Diabetes | | | | |
| Cardiovascular Disease | | | | |
| Renal Disease | | | | |
| Cancer or Leukemia | | | | |
| Tuberculosis | | | | |
| Emotional/Mental Disorder | | | | |
| Mental Retardation | | | | |
| Genetic Abnormality | | | | |
| Epilepsy | | | | |
| Abuse/Neglect | | | | |
| Other | | | | |

## IMMUNIZATION/BOOSTER STATUS

| VACCINE | DATE 1ST DOSE | DATE 2ND DOSE | DATE 3RD DOSE | DATE 1ST BOOSTER | DATE 2ND BOOSTER |
|---|---|---|---|---|---|
| DTP/Td | | | | | |
| Polio | | | | | |
| Measles, Vaccine | | | | | |
| Mumps, Vaccine | | | | | |
| Rubella, Vaccine | | | | | |

*N/A see shot record*   *up to date*

| | |
|---|---|
| Measles, Illness(Date) | |
| Mumps, Illness(Date) | |

## TESTS

| TEST | NORMAL | ABNORMAL | NOT TESTED |
|---|---|---|---|
| PKU | | | |
| Urinalysis | ✓ | | |
| CBC | | | |
| Sickle Cell Hemoglobin | | | |
| Lead | | | |
| Tuberculosis | ☐ Negative | ☐ Positive | |
| Other | | | |

Case 2:90-cv-00520-KJM-DB   Document 3513-1   Filed 01/31/10   Page 38 of 533

Form 2939
Page 3

## PHYSICAL EXAMINATION

| Temperature 98⁴ | Pulse 94 | Respiration 20 | Blood Pressure 120 | Weight 48¾ | Height 46 |
|---|---|---|---|---|---|

| Head Circumference (less than 3 yrs.) | Neurological: ☐ Done ☐ Not Done ☒ Normal ☐ Abnormal |
|---|---|

| ITEM | Normal | Ab-normal | Not Done | DESCRIBE ABNORMALITY |
|---|---|---|---|---|
| Vision Screening | ✓ | | | Rt. 20/25          Left 20/25 |
| Hearing Screening | Pass | | | Rt. 15/15          Left 15/15 |
| Developmental Level | ✓ | | | |
| Nutritional Status | ✓ | | | |
| Musculoskeletal | ✓ | | | |
| Extremities | ✓ | | | |
| Skin (rash, old or recent scars) | ✓ | | | Cafe au lait spot LLQ. |
| Head/Scalp/Hair | ✓ | | | |
| Eyes, Ears, Nose, Throat | ✓ | | | |
| Mouth and Teeth | ✓ | | | |
| Neck | ✓ | | | |
| Chest | ✓ | | | |
| Lungs | ✓ | | | |
| Heart | ✓ | | | |
| Abdomen | ✓ | | | |
| Hernia | | | | |
| Genitalia | ✓ | | | |
| Rectum | ✓ | | | |
| Gait | ✓ | | | |
| Coordination | ✓ | | | |
| Development Progress | ✓ | | | |
| Speech/Language Development | ✓ | | | |

Comments: Healthy 5 y/o male.

5395

Is the patient allergic to any drugs or food?  If yes, specify:

*NKA*

Is the patient currently taking any medication?  If yes, specify:

*No*

Does the patient show evidence of child abuse (physical/sexual/psychological)?  If yes, specify:

*None*

Are there any apparent problems in the areas of developmental level, speech, behavior, or emotional difficulties?  If yes, specify:

*No*

Is there anything of medical significance to this patient not included in this form?  If so, please describe:

Diagnostic Impression:

*Healthy 5 y/o white male*

Treatment Recommended, if any:

_____
Signature—Physician

9/2/83
Date

*R Andy*

**BOYS FROM 2 TO 18 YEARS**

STATURE FOR AGE



5397



BOYS FROM 2 TO 18 YEARS
WEIGHT FOR AGE

5398

Case 2:18-cv-01626-L Document 17-4 Filed 03/24/14 Page 42 of 533 PageID 5399

05-7103
October 1981

RECORD OF MEDICAL AND DENTAL TREATMENT

Name of Child _Randy Whitfield_    SSMS Client # _____

Birth Date _9·13·77_    Medicaid # _____

| Date of Appointment | Name and Address of Doctor | Diagnosis | Recommended Treatment | Prescribed Medicine and Dosage |
|---|---|---|---|---|
| 6·17·83 | Dr. Greg Jackson | physical | | none |

5399

Form Co—1365

## CHILD'S MEDICAL RECORD
### Face Sheet

Number _____

Name **Randy Lee Whitfield**   Sex **Male**   Date of Birth **9/13/77**   Nationality Race of: { Father **white** / Mother **white** }

### Family History:

| | Age | Living | If dead, cause of death |
|---|---|---|---|
| Father | | | |
| Mother **Anna Whitfield** | 23 | yes | |
| No. of Children | | | |

2
Randy Whitfield - 5 yrs
Wesley Whitfield - 2 yrs

(Refers to members of family and relatives)
Miscarriages _____
  Month _____ Cause _____
Tuberculosis _____
  TBC Contacts _____
Allergy _____
Mental Disorder _____
Diabetes _____
Convulsive Disease _____

## BIRTH AND DEVELOPMENT

Term _____
Condition at birth _____
Condition first week _____
Cyanosis _____
Convulsions _____
Jaundice _____

Delivery _____
Birth Weight _____
Feeding _____
Sat up _____   Stood _____
Walked _____   Words _____
First tooth _____   Short sentence _____
Bladder _____   Bowel _____

## FEEDING HISTORY

Breast _____
Vitamins _____
Present diet _____
Appetite _____
Vomiting _____
Sensitivity _____

Formula _____
Soft food _____
Feeding habits _____
Likes _____   Dislikes _____
Stools _____
Hives _____   Jay Fever _____   Asthma _____

## HABITS

Sleep adequate **Lokay**
Regular _____
Constipated _____
Nocturnal **Lokay**

Regular _____
Bowel movement regular **Lokay**
Urination normal _____
Diurnal _____

Meals adequate **Lokay**

Enuresis _____

## NERVOUS HABITS

Nail biting? **no**   Tic? **no**   Masturbation? **no**
Other? _____

## BEHAVIOR

Any special problems? _____

## IMMUNIZATIONS AND TESTS

| Vaccine | Dates | | Comments |
|---|---|---|---|
| DPT | 6/10/82 | 6/14/83 | |
| DT | | | |
| Diphtheria | | | |
| Pertussis | | | |
| Tetanus | | | |
| Typhoid | | | |
| Polio | 6/10/82 | 6/14/83 | |
| Smallpox | | | |
| Dick Test | | | |
| Tuberculin | | | |
| Hemoglobin | | | |
| STS | | | |
| Stool | | | |
| X-ray of Chest | | | |

Accidents, Injuries, Operations, or Illnesses other than above

## ILLNESSES

Pertussis _____   Other Operations _____
Measles _____   Glands _____
Rubella **Vaccine**   Rheum. Fever _____
Mumps **6/10/82**   Otitis _____
Chickenpox _____   Colds _____
Scarlet Fever _____   Tonsillitis _____
Diphtheria _____   Convulsions _____
T & A _____   Constipation _____
Appendix _____   Diarrhea _____

completed by foster mother at
time of exam on 6·17·83.

5400

Case 3:04-cv-01351 Document 92-10 Filed 04/21/6 Page 44 of 533 PageID 5385

# CHILD'S MEDICAL RECORD
## I EXAMINATIONS AND RECOMMENDATIONS

Form Ca

Name __Randy whitfield__     Birth Date __9-13-77__

| | | | | |
|---|---|---|---|---|
| Any Complaint? | | | | |
| Height | 43½ | | | |
| Weight | 48½ | | | |
| Temperature | | | | |
| Head Measurement on Infant | | | | |
| Skin | OK | | | |
| Scalp | | | | |
| Eyes – Pupillary Reaction | Rt. 20/20  Lft. 20/20 | Rt.  Lft. | Rt.  Lft. | |
| Vision Without Glasses | | | | |
| Vision With Glasses | | | | |
| Eyegrounds | | | | |
| Other | wax @ canal | | | |
| Ears – Otoscopic | Rt.  Lft. | Rt.  Lft. | Rt.  Lft. | |
| Hearing | | | | |
| Other | | | | |
| Nose | OK | | | |
| Teeth – Number | | | | |
| Condition | | | | |
| Occlusion | Rare caries | | | |
| Other | | | | |
| Throat-Pharynx | | | | |
| Tonsils | | | | |
| Adenoids | | | | |
| Glands | | | | |
| Thyroid | Clear | | | |
| Chest | | | | |
| Heart | 2/6 SEm well | | | |
| Lungs | OK  localyd @ LSB (innocent) | | | |
| Abdomen | | | | |
| Secondary Sex Characteristics | | | | |
| Genitals | OK | | | |
| Deep Reflexes | | | | |
| Superficial Reflexes | | | | |
| Extremities | | | | |
| Feet | | | | |
| Spine | | | | |
| Posture | | | | |
| Nutrition | | | | |
| Menstrual History since last visit on adolescent girl | | | | |
| Signs of Endocrine Imbalance | no | | | |
| Signs of Vasomotor Instability | | | | |
| Other | | | | |
| Urinalysis-Color, Reaction, Sp.G. | | | | |
| Sugar, Albumin, Micros. | | | | |
| Blood Pressure | 112/52 | | | |
| Blood Hemoglobin, Count, etc. | | | | |
| Other Tests | | | | |
| Impression and Advice | | | | |
| Examining Physician | Dr.  Date 6-17-83 | Dr.  Date | Dr.  Date | |

ISSUED BY CHILD WELFARE LEAGUE OF AMERICA — 100M-6/66

For recording subsequent medical examinations, another Form (C5) may be secured from the Child Welfare League of America.

5401

*Information obtained from Anna Whitfield on 5-20-83*
*Mother has not seen Randy in approximately 6 mos.*

# CHILD'S MEDICAL RECORD
## Face Sheet

Form C.... ........................................... Number 6 mos.

**Name** Randy Whitfield   **Sex** M   **Date of Birth** 9-13-77

**Nationality / Race of:** { Father Caucasian  Mother _____ }

**Family History:** — Mother's parents
Diana

|  | Age | Living | If dead, cause of death |
|---|---|---|---|
| Father |  |  | cancer — malignant melanoma |
| Mother |  |  |  |
| No. of Children |  |  |  |

(Refers to members of family and relatives)
Miscarriages — 0
Month _____ Cause _____
Tuberculosis — no
TBC Contacts — no
Allergy — no
Mental Disorder — no
Diabetes — no
Convulsive Disease — no

## BIRTH AND DEVELOPMENT

**Term** full
**Condition at birth** good
**Condition first week** _____
**Cyanosis** _____
**Convulsions** no
**Jaundice** no

**Delivery** anesthesia & forceps
**Birth Weight** 7 lb.
**Feeding** bottle — similac, SMA, soybean
**Sat up** 7 mo.
**Walked** 14 mo.
**First tooth** 5 mo.
**Bladder** no

**Stood** 11 mo.
**Words** 7 mo.
**Short sentences** 18 mo.
**Bowel** no

## FEEDING HISTORY

**Breast** _____
**Vitamins** yes – drops
**Present diet** good
**Appetite** good
**Vomiting** _____
**Sensitivity** _____

**Formula** 2mo. – whole milk & Karo
**Soft food** 6 mo. – Table food
**Feeding habits** _____
Likes _____   Dislikes _____
Stools _____
Hives _____   Hay Fever _____   Asthma _____

## HABITS

**Sleep adequate** reluctant to go to sleep   Regular _____   Meals adequate _____
**Regular** _____   Bowel movement regular _____
**Constipated** _____   Urination normal _____   Enuresis gets up at night
**Nocturnal** _____   Diurnal _____

## NERVOUS HABITS

**Nail biting?** no   **Tic?** no   **Masturbation?** no
**Other?** _____

## BEHAVIOR

Any special problems? _____

## IMMUNIZATIONS AND TESTS

| | Dates | | Comments |
|---|---|---|---|
| Vaccine | | | |
| DPT | | | |
| DT | | | |
| Diphtheria | | | |
| Pertussis | | | |
| Tetanus | | | |
| Typhoid | | | |
| Polio | | | |
| Smallpox | | | |
| Dick Test | | | |
| Tuberculin | | | |
| Hemoglobin | | | |
| STS | | | |
| Stool | | | |
| X-ray of Chest | | | |

Accidents, Injuries, Operations, or illnesses other than above

## ILLNESSES

Pertussis _____
Measles — no
Rubella — "
Mumps — "
Chickenpox — 4-78
Scarlet Fever — no
Diphtheria — "
T & A — _____
Appendix — _____

Other Operations _____
Glands — _____
Rheum. Fever — no
Otitis — no
Colds — few
Tonsillitis — no
Convulsions — no
Constipation — reg.
Diarrhea — no

no operations

5402

Case 4:17-cv-00579 Document 7-1 Filed 05/10/16 Page 46 of 533 PageID 5403

| Texas Department of Human Resources | CHILD PROTECTIVE SERVICES LEGAL RECORD | Form 2222 August 1980 |
|---|---|---|

| Child's Name | Cause No. | County |
|---|---|---|
| Randy Lee Whitfield | 82-3081-A | Denton |

| Child's Attorney Ad Litem | | Telephone No. |
|---|---|---|
| John Lawhon | | (817) 382-6762 |

Address of Attorney Ad Litem
P.O. Box 44, Denton, Tx

### REQUESTS FOR COURT ACTION AND LEGAL ACTIONS TAKEN

| DATE OF REQUEST or ACTION COURT NO. JUDGE'S NAME | SUMMARY OF REQUESTS FOR COURT ACTION (Include person or office to whom request made or brief statement of legal action requested. Reference copy of written request filed in the case folder. | SUMMARY OF LEGAL ACTIONS TAKEN (Brief and concise statement of the petition, judgement, or court order, including to whom conservatorship of the child was awarded.) |
|---|---|---|
| 6-9-83 | Temp. M.C. Father's Voluntary Relinquishment Mother's " " Petition | Judge Boyd |
| 6-14-83    1 | Decree of Termination | Judge Gray |

5403

Form 05-2100
Page 4

**VIII. CHILD'S INDIVIDUAL NEEDS IN PLACEMENT:** Randy will benefit from placement with his younger brother. He will require structure and consistent discipline from both male & female caretakers. The need for therapy can

**IX. GOALS FOR CHILD:** be determined after his initial adjustment to the foster home.

  **A. Short Term Goals:**

  1) provide secure environment with brother in same foster home

  2) enroll in kindergarten in fall

  **B. Long Term Goals:**

  Adoption of Randy and his younger brother, Wesley.

**X. FAMILY MEMBER OR MANAGING CONSERVATOR PRIMARILY RESPONSIBLE FOR RELATIONSHIP WITH AGENCY AND CHILD:**

Name Beverly Basden    Address P.O. Box 2186, Denton

Phone Number (817) 383-2371

**XI. PLACEMENT DATA:**

  **A. Discussion of placement with parents (individualized in reference to each child in placement):**

  1. **Reason for placement (explained to parents):**

  parents signed voluntary relinquishments of rights

  2. **Type of placement (explained to parents):**

  foster care prior to adoptive placement

  3. **Anticipated length of placement (explained to parents):** 6 mos.

  4. **Parents told that parent-child visits, gifts, mail, phone calls are to be arranged on an individual basis with the workers:**
  ____ yes  ____ no. Father requested visit but has not

  5. **Parents' expectations of placement:** Mother had last visits with children on 6·20·83.

  Randy and his brother, Wesley, will be placed with adoptive parents.

contacted worker since Randy has been in custody.

5404

Form 05-2100
Page 5

B. Discussion of placement with child:

   1. Reason for placement explained to child: ✓ yes   no_____

   2. Type of placement explained to child: ✓ yes   no_____
     If no, why not?

   3. Anticipated length of placement explained to child: ✓ yes   no_____
     If no, why not?

   4. Child told that parent-child visits, gifts, mail, phone calls are
     to be arranged on an individual basis with the worker?

     _____ yes   _____ no *Randy was told he had visited for the last time with his mother.*

   5. Child's understanding of and reaction to placement:

C. Substitute Care Placement:

   1. Foster families/facilities reviewed for placement: (list names)
     *Hester & Billie Viteychuk were the only family contacted since they had his brother in their home.*

   2. Verbal presentation of child to family/facility selected _6-6-83_
                                              Date

   3. Pre-placement visits/dates: (if no pre-placement visit done, explain)
     *Younger brother was in foster care and foster parents were willing to take Randy so brothers could be together.*

   4. Date of placement: _6-6-83_

   5. Reason for selection of type of substitute care: *unite Randy & his younger brother in same foster home.*

_Beverly Basden_          _Cindy Wragth MSW, CSW_
Worker                              Supervisor, M.S.S.W.

_6-27-83_                 _7-5-83_
Date                                  Date

Form 05-2100
Page 6

For emergency placement, the following information must be shared with
the foster parents <u>after</u> the date of completion of the Intake Study:

Social          Yes ✓

Medical         Yes ✓

Psychological   Yes____      N/A____    *to be assessed*

School History  Yes____      N/A ✓

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield

*Randy " - see p. 2.*

TO:

Beverly Basden

FROM:

Beverly Deweber
PPT Recorder

DATE: June 3, 1983

This was the review of the above named case which was staffed by the Permanent Planning Team on May 18, 1983. The Permanent Planning Team members present at the staffing were Allene Margowski, Sara Ham, John Ramfield, and Melody Rockwall. Also present were Dr. May Connell, psychologist from Fort Worth, and foster parents Mr. and Mrs. Hector Viteychuk. The discussion held on that date and the case plan developed are as follows:

MATERIAL PRESENTED AND DISCUSSED:

Legal Status

Wesley was removed under an Emergency Order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior side. This was the third such bruising incident since July of that year.

On November 4, 1982, the father signed an Affidavit of Voluntary Relinquishment of Parental Rights; the mother signed such an Affidavit on April 29, 1983.

A Decree of Termination was signed by Judge Boyd on May 11, 1983. The Department was appointed managing conservator of the child and authorized to place him for adoption.

Medical

Wesley had surgery on March 30th to insert tubes in both ears and elevate the eyeball and shorten the muscle in the eyelid of his right eye. The eye surgery was to correct a congenital defect. No evidence of neurofibromatosis was reflected in a neurological exam performed prior to the surgery.

Only slight swelling is noted on the right eyelid. The surgical scar has healed nicely. Wesley has been treated once by a doctor for infection of the right ear and a sore throat since the surgery. He does occasionally complain of his ears hurting when he lays down.

AN EQUAL OPPORTUNITY EMPLOYER

5407

Wesley Whitfield
Page 2

## Foster Care

At the time of the emergency removal, Wesley was placed in the foster home of Billie and Hector Viteychuk. He continues to reside there at the present time.

Wesley made an immediate adjustment into this foster home. He experienced no problems with eating or sleeping disturbances; however, he did have numerous ear infections and has been on antibiotics most of the time while he has been in placement.

The foster mother has been very supportive of the ear and eye surgery. The surgery was postponed on two occasions: once because the child had been exposed to chicken pox, and the second time because of an ear infection. Since the hospital was located in Dallas, numerous trips were made before the actual surgery was performed. The natural mother participated in two of the visits to the hospital, along with the foster mother.

When the natural mother, Anna Whitfield, signed relinquishments, she indicated that she would like Wesley and his five year old brother Randy to be placed together in adoption. Randy has been placed by his father with some people in East Texas.

Mr. and Mrs. Viteychuk said they are very interested in adopting Wesley but do not feel capable of adopting both Wesley and Randy.

## GENERAL CASE PLANS:

1. Try and locate five year old Randy.

2. Secure possibility of adoptive placement with Randy.

3. Secure adoptive studies from PPU for Wesley. Share these with the Viteychuks to determine committment to adoption.


Beverly Deweber
PPT Recorder

Sara Ham
Child Placement Supervisor

ew

cc: Allene Margowski
    John Ramfield
    Barney Hisanaga
    Jeanie Perullo
    Melody Rockwall
    file

5408

Case 9:13-cv-01585 Document 7-11 Filed 09/10/14 Page 52 of 533 PageID 5409

CASE FACE SHEET

05-2852
Nov. 1981

NAME _Whitfield, Randy_____ HOME PHONE (214) 769-2465

HOME ADDRESS _Harris Mobile Home Park, Rt 1, Hwy 14_ (Betty Fair)
_Hawkins, Tex._____

DIRECTIONS _____

_Father placed son with this family in January, 1983._

## FAMILY COMPOSITION IN HOME AT TIME OF REFERRAL

Father, Stepfather, (Parent Substitute) (circle one)
FULL NAME _Brown_____ _Marvin_____
         Last          First          Middle

Mother, Stepmother, (Parent Substitute) (circle one)
FULL NAME _Brown____ _Jeannette_____
         Last       First         Middle

Birthdate _____ Birthplace _____

Birthdate _____ Birthplace _____

Race _C_ Primary Language _English_ Education ____

Race _C_ Primary Language _English_ Education ____

Occupation _____ Religion _____

Occupation _____ Religion _____

Work Address _____ Phone _____

Work Address _____ Phone _____

Marital Status _married_

Marital Status _married_

## CHILDREN IN HOME

| FULL NAME | DOB | SEX | RACE | BIRTHPLACE | GRADE | RELATIONSHIP TO CASE NAME |
|-----------|-----|-----|------|-----------|-------|----------------------------|
| Katrina Brown | 13 | F | C | | | (natural children of caretakers) |
| Carl Brown | 7 | m | C | | | |
| Jerry Brown | 10 | m | C | | | none |
| Randy Lee Whitfield | 9-13-77 | m | C | McKinney | | |

## CHILDREN OUT OF HOME

| NAME OF CHILD | WITH WHOM LIVING/RELATIONSHIP | ADDRESS/PHONE |
|---------------|-------------------------------|----------------|
| Wesley Whitfield | foster home - rights terminated | |

5409

05-2862
Page 2

| DATE | LATEST HOME ADDRESS | PHONE |
|---|---|---|
| | | |
| | | |
| | | |

### INTERESTED RELATIVES AND INDIVIDUALS

| NAME | RELATIONSHIP | ADDRESS | PHONE |
|---|---|---|---|
| Bob & Shirley Whitfield | paternal GF & GM | Hwy 1830, Denton | 566033 |
| Steve & Mary Hammons | maternal uncle | Denton | 3823764 |
| James & Faye Barnett | " aunt | Rt 2, Argyle | 464-7776 |

### OTHER AGENCIES, ORGANIZATIONS INVOLVED

| AGENCY | CONTACT PERSON | PHONE |
|---|---|---|
| | | |
| | | |

### OTHER PERSONS IN HOME

| NAME | DOB | SEX | RELATIONSHIP TO CASE NAME |
|---|---|---|---|
| | | | |
| | | | |

### NATURAL PARENT IF DIFFERENT FROM ABOVE

FULL NAME Whitfield (Last)   Bob (First)   Randal (Middle)   Relation to which Child(ren) father of Randy

Caucasian RACE

BIRTHDATE 7-27-57   BIRTHPLACE

HOME ADDRESS 901 S. Locust, Denton   none PHONE

PHONE

WORK ADDRESS

FULL NAME Whitfield (Last)   Anna (First)   (Middle)   Relation to which Child(ren)

Caucasian RACE

BIRTHDATE 1-9-59   BIRTHPLACE Denton

James Barnett (lives with sister   464-7776 PHONE
Rt. 2, Argyle, Tx (Faye Barnett) ADDRESS

How Hospital, Denton   PHONE ADDRESS

5410

Form 05-2100
March 1983

## INTAKE STUDY FOR CHILD IN SUBSTITUTE CARE

NAME OF CHILD: _Randy Whitfield_     Date Initiated: _6-6-83_
SS# _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_                    (must be initiated within
                                     five days if emergency
Religion _UK_                        placement)

I. DESCRIPTION OF FAMILY CIRCUMSTANCES NECESSITATING PLACEMENT:
   (If emergency placement, why was this necessary?)
   _Mother and father both signed voluntary relinquish-_
   _ments of parental rights. Caretaker of child stated_
   _the family could no longer provide care for Randy_
   _because of financial stress of medical problems_
   _of family._

II. CHILD'S DEVELOPMENT HISTORY:

   A. Prenatal and Birth History:
      _This was first pregnancy of mother. She had_
      _prenatal care and full term delivery was under anesthesia_
      _and with forceps. Birth weight: 7 lbs._

   B. Physical Development: _Mother reports child developed at_
      _normal pace._

   C. Age at which child:

      Sat alone _7 mo._  Crawled _—_     Stood alone _11 mo._

      Walked _14 mo._  Said first word _—_  Spoke in phrase or
                                            sentence _13 mo._

CR

5411

Form 05-2100
Page 2

III. CHILD'S MEDICAL HISTORY:

A. Description of illnesses, operations, fractures, etc.
None were reported by the mother - Randy was missing 2 front center teeth (one up; one down) when taken into foster care. These were reported to have been knocked out.

B. Immunization record: ___ yes      Date requested _____

C. Birth certificate or other birth record: ✓ yes  Date requested _____

D. Tuberculosis test: ____ yes    ____ no    ____ not applicable

E. Physical description of child: Height: 43½"   Weight: 48½ lbs. Hair: dark brown. Eyes: brown. Skin: fair. Medium bone structure. (See photo)

F. Date of child's last physical examination: 6·17·83 _____

G. Date of appointment for next physical: _____
(If above is not within the last 30 days)

H. Date child's last dental examination: _____

I. Date of appointment for next dental exam: dental card requested
(If child is three years or older and last exam not within one year an before placement)

IV. CHILD'S PERSONALITY, BEHAVIOR AND INTERESTS:

A. Intellectual Development: Randy is verbal and most observant. He is quick to pick up with routines and schedules.

B. Emotional Development: Previous caretaker noted obsession with monsters and supernatural. Foster mother feels he is normal five year old, reporting no unusual problems.

C. How does child relate to adults? Randy relates especially to males. While he relates well to females, he often test their limits.

D. How does child relate to children? Randy makes friends easily. He is talkative and friendly. He is particularly protective of his 2 yr old brother.

E. Describe any special problems, interests or abilities: Randy has expressed an interest in attending daycare. For the brief period of time he was enrolled, he was reported to be bright and anxious to learn.

5412

Form 05-2100
Page 3

    F.  Give date and state the location in the folder of any psychological
        or psychiatric test results:

V.  CHILD'S SCHOOL HISTORY (if applicable):

    A.  Child's adjustments to school:
        *He was enrolled in daycare for approximately a mo. in fall '82. His adjustment was excellent.*

    B.  Relationships with peers:

    C.  Relationships with teachers:

    D.  Level of achievement:

        Grade or special class child is placed in:_____

        Grade or level of child's performance:_____

        Child's grades are usually:  Above Average_____  Average_____
                                     Below Average_____  Failing_____

VI.  PREVIOUS PLACEMENTS
     (dates and descriptions)
     *none*

VII.  CHILD'S LEGAL RECORD:

| Description of Court Order or Petition | District Cause Court Number | Dates of Orders | Approved by P. D. and Supv. |
|---|---|---|---|
| *Decree of termination* | | 6·14·83 | |

Child Support Ordered:  Yes____  Amount $_____    No  ✗_____

5413

ADOPTION TRANSFER SHEET

Child's Original Name *Randy Lee Whitfield*

Child's Date of Birth *9-13-77*

Adoptive Parents Name *Dan & Patricia Halpren*

Date Consummated *3-2-84*

Natural Mother's Name *Anna Whitfield (Hammons* *(maiden none)*

D.O.B. *1-9-59*

Natural Father's Name *Bob Randall Whitfield*

D.O.B. *7-27-57*

Siblings *Wesley Allen Whitfield* D.O.B. *11-17-80*

_____ D.O.B. _____

_____ D.O.B. _____


Adoption Decree Date *3-2-84*

Included in folder ____✓____
                    (Please check)

5414

PROGRESS REPORT

FAMILY:         Dan and Pat Halprin
CHILDREN:       Randy and Wesley
CONTACT:        1/17/84          Face to Face

The Halprins related during the home visit that they have made a
decision as to the legal name that both children will assume.  Randy will be known
as Randy Ethan Halprin.  Wesley's legal name is Wesley Doran Halprin.  Both have
assumed family middle names.  Their court date has been scheduled for the 1st
week in March.  Since placement, the youngsters continue to make positive progress
in adjusting into their new home.  The children are given responsibilities and
chores, with each being given new responsibilities since the last visit.  The
Halprins feel that it is important that their responsibilities increase as they
become more responsible.  Randy is now asked to pour the milk for both boys and
to clear the table.  Wesley is asked to assist Randy in clearing the table.  They
related that the holiday season was a wonderful experience for them as a family.
They visited relatives on the East Coast, relating many wonderful and fond ex-
periences they had with their respective families.  Dan has had a job change
and is currently enrolled full-time in school.  He is in business for himself,
listing an estimated income as $24,000.00 annually.  Pat has had an increase in
her salary, listing her income as $35,000.00 per year.

The children have had no major physical problems other than a persistant
ear infection that Wesley has had on numerous occasions.  They are continuing to
have a growth spurt, adding growth and weight.  Both boys are in school with Randy
doing very well.  Wesley is attending day care where he remains all day.  Both
children love the school setting and association with other children.  Their
relationship with their peers is described as being excellent.  Wesley is learning
to skate, with Dan and Pat describing his abilities as being very humorous.  They
related at this time that they are not experiencing any unusual fears, although
they have noticed that Randy appears to be somewhat pre-occupied with death.  He
is constantly asking them if they are going to die, or if some other family member
or friend is going to die.  They do not view this as being a major problem, but
simply curiousity on his part as to the real meaning of death.  He is described as
still being one who gets extremely upset when he is around teenage boys.  He continues
to relate that, "teenagers beat me up".  He will cover his face with his hands and
cry out when he sees any teenagers or violence.  They continue to have a young teenage
boy babysit with him, which is helping to eliminate this fear.    Both youngesters

5415

Case 2:12-cv-01595 Document 24-1 Filed 08/13/14 Page 59 of 533 PageID #: 1413

Progress
Family: Halprin
Page 2  1/17/84

appear to have no problems sleeping, with a set routine each night being followed
by Dan and Pat, reading books before the lights are turned out. The boys are
relatively easily disciplined by taking away of privileges or through isolation.
The children are sent to their room to sit on their beds to think about the mistake
that they made. Randy recently loss the privilges of watching the video movies
on TV for a week due to misbehavior. Randy is involved in gymnastics, finding great
enjoyment in this activity. He did need a great deal of encouragement to become
involved in this activity. He still is a child that hesitates before experiencing
anything  new. Randy is reading, enjoying the Dr. Suess books. The problems that
were discussed in the December visit seemed to have disappeared, other than Randy's
fear of teenagers. They related that the boys have asked questions about their past,
with Dan and Pat going through the life book with them. Randy recently told Dan
and Pat that Bob Randall loved him and was going to come and get him. When Dan
and Pat told him "no", that he could never come and get them, they found that Randy
was very relieved. The two boys are getting along well with minimal sibling rivalry
reported. They have not been involved in hitting each other.  Lately they have
noticed that tantrums have decreased to almost nil on the part of Randy. They
continue to have very minimal contact with the foster parents. They did receive
a Christmas card for the children, which both boys reaction being they were un-
familar with who the individual was. The Halprins do feel that the boys have
bonded to them and show only signs of being secure in their new home environment.

<div align="right">
Linda Allen<br>
Adoption Worker
</div>

cc: Jeannie Perullo

5416

PROGRESS REPORT

FAMILY:          Dan and Pat Halprin
CHILDREN:      Randy and Wesley
CONTACT:       2/20/84        Home Visit

       The Halprins again related that the boys are adjusting well into their home. They do feel that both children are typical for their age groups. They have not observed any major problem that is related to their adoption. The children continue to get along well, with few episodes of sibling rivalry to report. The Halprins feel that they are secure in their home and have bonded to them and to their family. They stated that Randy seems to be very self-confident, although he does need to hear that they are proud of him when he completes any task. They continue to give both boys praise over positive accomplishments and continue to be firm in the disciplinary measures they use with both children. From all appearances, the Halprins are concerned about the youngsters and love them a great deal.

                                    Linda Allen
                                    Adoption Worker

cc: Jeannie Berullo 3/13

PROGRESS REPORT

FAMILY:        Dan and Pat Halprin
CHILDREN:      Randy and Wesley
CONTACT:       3/1/84        Face to face

The Halprins continue to report a positive adjustment being made
into their home with the two boys.  They are extremely pleased with Randy and
Wesley and are eager to consummate the adoption..  They feel certain that this
is the decision that they want to make.  They are committed to the boys, feeling
that their parental bond is extremely close to both children.  The boys are
very happy with Dan and Pat displaying a close and affectionate relationship
toward them.

                                        Linda Allen
                                        Adoption Worker

cc:  Jeannie Perullo  5/1?

5418

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document

## WORKER INFORMATION

WORKER    MAIL CODE  128-9
PERULLO, JEANNIE&MARIE
JN        05155CO4    EMP. E890
SUPERVISOR MAIL CODE 128-9

| 1. Worker Name (Last) | (First) |
|---|---|
| PERULLO | JEANNIE M |
| 2. Emp. No. 18 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
| E890 | 05155CO4 | 128-9 | 030284 |

6. Worker Responsibility 29
☑ 1-Primary Responsibility   ☐ 2-Courtesy Supervision

## CLIENT INFORMATION

PROCESS DATE
10-21-83
ACTIVE

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744880L | ☐ 1-Initiate Tracking  ☐ 2-Update  ☐ 3-Terminate Tracking  ☑ 4-Close | 030284 |

| 10. Client Name (Last) 50 | (First) 65 | (MI) 77 | 11. Social Security No. 78 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | RANDY | L | 466613011 | 091878 |

| 13. Ethnic Group 94 | | | | | | 14. Sex 96 | |
|---|---|---|---|---|---|---|---|
| ☐ 1-Anglo | ☐ 2-Black | ☐ 3-Hispanic | ☐ 4-American Indian | ☐ 5-Oriental | ☐ 6-Other | ☐ 1-Female | ☐ 2-Male |

## 15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic)

| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11 - Entrant |
|---|---|---|---|
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | |
| 04 - Physically Handicapped | 07 - Sibling Group | 10 - None | |

15.a. Certification Worker BJN

16. Family Identifier Name (enter last name first)

17. Family ID Client No. (must be registered on SSMS)

## CLIENT TYPE

| 31 - Abuse/Neglect | 37 - Non-adjudicated CHINS |
|---|---|
| 32 - Abuse | 38 - Adj. Delinquent-Court Ordered |
| 33 - Neglect | 42 - Protective Placement (Non-Abuse/Neglect) |
| 34 - Truant | |
| 35 - Runaway | 43 - Interstate Compact for Placement of Children |
| 36 - Adj. CHINS- Court Ordered | |

## 19. ELIGIBILITY STATUS

| 01 - SSI | 09 - MAO Foster Care |
|---|---|
| 02 - AFDC Recip | 10 - State Paid Foster Care |
| 03 - MAO/IE | 11 - AFDC/MAO/BP FC Application Pending |
| 04 - Inc. Elig. | |
| 05 - Without Regard | 14 - Cat. 5 R/E |
| 06 - AFDC Foster Care | |

20. Certification/Eligibility Date

20.a. Denial Date

21. Review Date

| 22. Priority |
|---|
| 0 |

## 23. STATUS—Initiate/Update   Terminate/Close

| 01 - Man. Conservatorship/Parental Rts. Not Term. | 06 - Adoption Consummated |
|---|---|
| 02 - Man. Conservatorship/Parental Rts. Term. | 07 - Child Emancipated |
| 03 - Voluntary Relinquishment | 08 - Child Died |
| 04 - Voluntary Placement Agreement | 09 - DHR Resp. Terminated |
| 05 - Other Legal Basis for DHR Responsibility | |

## LEGAL INFORMATION

| 24. Legal Status Date | 25. County |
|---|---|
| 030284 | 061 |

## 26. PERMANENCY PLAN

| 01 - Return Home/Dismiss Conserv. | 06 - Emancipation |
|---|---|
| 02 - Adoption | 07 - Other |
| 03 - Permanent Foster Care | 08 - Pending |
| 04 - Transfer Cons. to Other | |
| 05 - Permanent Custodial Care | |

## 27. ARE/OTHER EXCHANGE

| 1 - NA |
|---|
| 2 - ARE |
| 3 - ARE & Other Exchange |
| 4 - No |

## PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 3 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | 34. Residence Street Address 61 | | | | 35. City | 36. St | 37. ZIP | 38. County |

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | 35. City | 36. St | 37. ZIP | 38. County |

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | 35. City | 36. St | 37. ZIP | 38. County |

MEDICAID CARD ADDRESS If different from current placement

| 42. NAME-LAST | FIRST | MI |
|---|---|---|
| 43. STREET | | |
| 44. CITY | 45. 46. ZIP TX | |

| 6 | 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. |
|---|---|---|---|

Form 2001-B/2-83

5419

WORKER    MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN    05155C04  EMP. E890
SUPERVISOR MAIL CODE 128-9

Texas Department of Human Resources

## FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document  ☒

### WORKER INFORMATION

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| PERULLO | | JEANNIE M |

| 2. Emp. No. 15 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| E890 | 05155C04 | 1289 | |

6. Worker Responsibility 29  ☒ 1-Primary Responsibility  ☐ 2-Courtesy Supervision

### CLIENT INFORMATION

PROCESS DATE
10-21-83
ACTIVE

| Client No. 31 | | 8. Action Code 41 | | | 9. Effective Date 43 |
|---|---|---|---|---|---|
| 502744880 | | ☐ 1-Initiate Tracking  ☐ 2-Update  ☐ 3-Terminate Tracking  ☐ 4-Close | | | 08-30-83 |

| 10. Client Name (Last) 50 | (First) 68 | (MI) 77 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | RANDY | L | 466613011 | 09-13-77 |

| 13. Ethnic Group 94 | | | | | | 14. Sex 95 |
|---|---|---|---|---|---|---|
| ☒ 1-Anglo  ☐ 2-Black  ☐ 3-Hispanic  ☐ 4-American Indian  ☐ 5-Oriental  ☐ 6-Other | | | | | | ☐ 1-Female  ☒ 2-Male |

15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic)

| | | | 15.a. Certification Worker BJN |
|---|---|---|---|
| ☐ 02 - Blind | ☐ 05 - Mentally Retarded | ☐ 08 - Refugee | ☐ 11 - Entrant | |
| ☐ 03 - Deaf | ☐ 06 - Emotionally Disturbed | ☐ 09 - Migrant | | |
| ☐ 04 - Physically Handicapped | ☐ 07 - Sibling Group | ☒ 10 - None | | |

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| 2  WHITFIELD, RANDY | 502744880 |

### 18. CLIENT TYPE

| ☒ 31 - Abuse/Neglect | ☐ 37 - Non-adjudicated CHINS |
|---|---|
| ☐ 32 - Abuse | ☐ 38 - Adj. Delinquent- Court Ordered |
| ☐ 33 - Neglect | ☐ 42 - Protective Placement (Non-Abuse/Neglect) |
| ☐ 34 - Truant | ☐ 43 - Interstate Compact for Placement of Children |
| ☐ 35 - Runaway | |
| ☐ 36 - Adj. CHINS- Court Ordered | |

### 19. ELIGIBILITY STATUS

| ☐ 01 - SSI | ☐ 00 - MAO Foster Care |
|---|---|
| ☐ 02 - AFDC Recei | ☐ 10 - State Paid Foster Care |
| ☐ 03 - MAO/IE | ☐ 1 1 - AFDC/MAO/SP FC Application Pending |
| ☐ 04 - Inc. Elig. | |
| ☒ 05 - Without Regard | ☐ 14 - Cat. 5 R/E |
| ☐ 08 - AFDC Foster Care | |

| 20. Certification/ Eligibility Date | 20.a. Denial Date | 21. Review Date | 22. Priority |
|---|---|---|---|
| 08-31-83 | | 12-14-83 | 1 0 |

### 23. STATUS—Initiate/Update  Terminate/Close

| ☐ 01 - Man. Conservatorship/ Parental Rts. Not Term. | ☐ 06 - Adoption Consummated |
|---|---|
| ☐ 02 - Man. Conservatorship/ Parental Rts. Term. | ☐ 07 - Child Emancipated |
| ☒ 03 - Voluntary Relinquishment | ☐ 08 - Child Died |
| ☐ 04 - Voluntary Placement Agreement | ☐ 09 - DHR Resp. Terminated |
| ☐ 05 - Other Legal Basis for DHR Responsibility | |

| LEGAL INFORMATION | 24. Legal Status Date | 25. County |
|---|---|---|
| | 06-14-83 | 061 |

### 26. PERMANENCY PLAN

| ☐ 01 - Return Home/ Dismiss Conserv. | ☐ 06 - Eman- cipation |
|---|---|
| ☒ 02 - Adoption | ☐ 07 - Other |
| ☐ 03 - Permanent Foster Care | ☐ 08 - Pending |
| ☐ 04 - Transfer Cons. to Other | |
| ☐ 05 - Permanent Custodial Care | |

### 27. ARE/ OTHER EXCHANGE

| ☐ 1 - NA |
|---|
| ☐ 2 - ARE |
| ☐ 3 - ARE & Other Exchange |
| ☒ 4 - No |

### PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| 3 | 01 | 08-06-83 | 05 | 10 | 080821 | VITEYCHUK HECTOR |

| 34. Residence Street Address 61 | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| 17 SHILOH CIRCLE | ROANOKE | TX | 76262 | 061 |

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| 4 | 02 | 08-30-83 | 04 | 03 | 00003P | HALPRIN DANIEL |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| 4015 GLENBROOK DR | ARLINGTON | TX | 76015 | 220 |

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| 5 | | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41 |
|---|---|---|
| 6 | | |

Form 2001-8/2-83     DCN  E3293004

5420

Case 3:1 9cv 01555 · Document 17-115 Filed 09/21/11 · Page 64 of 533 · Page ID 13418

Texas Department of Human Resources

## SSMS CLIENT REGISTRATION
Turnaround Document

| | |
|---|---|
| WORKER MAIL CODE 347-1 | 1. Today's Date |
| BASDEN, BEVERLY H | |
| BJN 05135C02 EMP C610 | |
| SUPERVISOR MAIL CODE 347-1 | |

**2. WORKER INFORMATION**

| a. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| b. Emp. No. 17 | c. BJN 22 | d. Mail Code |
|---|---|---|
| C610 | 05135C02 | 3471 |

**3. PROVIDER INFORMATION**

| a. Provider No. 33 | b. Provider Name | c. Site No. | d. List ID | e. Billing Eff. Date |
|---|---|---|---|---|
| | | | | |
| f. Provider Mailing Address (Street or P.O. Box) | | (City) | | (ZIP) |

**CLIENT INFORMATION  PROCESS DATE 05-01-83 ACTIVE**

| 4. Client No. 84 | 5. Action Code 64 | 6. Effective Date 88 |
|---|---|---|
| 5027948AD | 1-Open  2-Update  3-Open/Close  4-Close | 09-22-82 |

| 7. Client Name (Last) 74 | (First) 86 | (MI) 88 | 8. Social Security No. 101 | 9. Date of Birth 111 |
|---|---|---|---|---|
| WHITFIELD | RANDY | | 000000000 | 09-13-77 |

| 10. Street Address 16 | 11. City 37 | 12. State 131 |
|---|---|---|
| TWIN LAKES MHP #179 | DENTON | TX |

| ZIP 76201 | 14. Co. 063 | 15. Case Name WHITFIELD BOB | 16. Client No. of Case Name 5027948781 |
|---|---|---|---|

**17. MARITAL STATUS**

| | | |
|---|---|---|
| 1-Married | 3-Separated | 5-Single X |
| 2-Widowed | 4-Divorced | 6-Unknown | 7-NA/Child |

**18. ETHNIC GROUP**

| | |
|---|---|
| 1-Anglo X | 3-Hispanic | 5-Oriental |
| 2-Black | 4-Am.Indian | 6-Other |

**19. SEX**

| |
|---|
| 1-Female |
| 2-Male |

**20. CLIENT CHARACTERISTICS — Check all that apply (Enter an • to delete a characteristic)**

| 01-Aged | 04-Physically Handicapped | 08-Refugee | 11-Entrant |
|---|---|---|---|
| 02-Blind | 05-Mentally Retarded | 09-Migrant | |
| 03-Deaf | 06-Emotionally Disturbed X | 10-None | |

**21. CLIENT TYPE — Check only one Direct Delivery (D) and/or one Purchase (P).**

| D P Family Self-Support Services | D P | D P CCAD | D P | D P Child Protective |
|---|---|---|---|---|
| 01-Emp./Fam. Serv. | 15-Prot. Day Care | 21-Case Mgmt. | 31-Abuse/Neglect | 38-Adj. Delinquent-Court Ordered |
| 06-EPSDT | 16-Fam. Violence | 24-CCAD Purchase | 32-Abuse | 39-Unmarried Parent |
| 07-EPSDT/Fam./Emp. | 17-R/E Specific Contracts | 25-Prot. Case Mgmt. | 33-Neglect | 40-Soc. Study-Ct. Ord. |
| 09-EPSDT/Day Care | | 26-CCAD Abuse | 34-Truant | 41-OTI |
| 12-Emp. Day Care | | 27-CCAD Neglect | 35-Runaway | 42-Protective Placement (Non-Abuse/Neglect) |
| | | 28-Exploitation | 36-Adj. CHINS-Court Ordered | |
| | | 29-Crisis Intervention | 37-Non-adjudicated CHINS | |

**22. ELIGIBILITY STATUS**

| 01-SSI | 05-W/O Regard X | 10-St. Pd. Fos. Care |
|---|---|---|
| 02-AFDC Recip. | 07-Waiver V (CCAD only) | 12-Food Stamp (FSS only) |
| 03-MAO/IE | 08-AFDC Fos. Care | 13-AFDC App. (FSS only) |
| 04-Income Elig. | 09-MAO Fos. Care | 14-Cat. 5 R/E |

| 23. ELIG. DATE | 24. REVIEW DATE | 25. PRIORITY |
|---|---|---|
| 09-08-81 | NA | 02 |

**26. PURCHASED SERVICES**

| a. 2060 SCORE | b. SERVICE 1 Service | Units | c. SERVICE 2 Service | Units |
|---|---|---|---|---|
| | | | | |

| 27. Correct/Transfer to this BJN/Contract No. | 28. FOR S.O. USE | 28.a. | 29. REA/CLO |
|---|---|---|---|

Form 2000-B/2-83

5421

FC
5

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS)**

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| Basden | Beverly |

| 2. Emp. No. 15 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C6,10 | 05,135,C02 | 3,471 | 06V41P3 |

6. Worker Responsibility 29
☒ 1 - Primary Responsibility  ☐ 2 - Courtesy Supervision

**CLIENT INFORMATION**   Temporary No.  T0 0322546

| 7. Client No. 31 OR | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502,744,870 | ☒ 1 - Initiate Tracking  ☐ 2 - Update  ☐ 3 - Terminate Tracking  ☐ 4 - Close | 060603 |

| 10. Client Name (Last) 50 | (First) | (MI) 75 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| Whitfield | Randy | L | N/A | 09V3199 |

| 13. Ethnic Group 94 | 14. Sex 94 |
|---|---|
| ☒ 1 - Anglo  ☐ 2 - Black  ☐ 3 - Hispanic  ☐ 4 - American Indian  ☐ 5 - Oriental  ☐ 6 - Other | ☐ 1 - Female  ☒ 2 - Male |

| 15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic) | | 15.a. Certification Worker BJN |
|---|---|---|
| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11 - Entrant | |
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | | |
| 04 - Physically Handicapped | 07 - Sibling Group | ☒ 10 - None | | |

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| Whitfield, Randy | 502,744,870 |

| 18. CLIENT TYPE | 19. ELIGIBILITY STATUS | 20. Certification/Eligibility Date |
|---|---|---|
| ☒ 31 - Abuse/Neglect | 37 - Non-adjudicated CHINS | 01 - SSI | 09 - MAO Foster Care | |
| 32 - Abuse | 38 - Adj. Delinquent-Court Ordered | 02 - AFDC Recip | 10 - State Paid Foster Care | 092282 |
| 33 - Neglect | | 03 - MAO/IE | 11 - AFDC/MAO/SP FC Application Pending | |
| 34 - Truant | 42 - Protective Placement (Non-Abuse/Neglect) | 04 - Inc. Elig. | | 20.a. Denial Date |
| 35 - Runaway | 43 - Interstate Compact for Placement of Children | 05 - Without Regard | 14 - Cat. 5 R/E | |
| 36 - Adj. CHINS - Court Ordered | | 08 - AFDC Foster Care | | 21. Review Date  V2V4183 | 22. Priority  02 |

**LEGAL INFORMATION**

| 23. STATUS - Initiate/Update  Terminate/Close | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | 27. ARE/OTHER EXCHANGE |
|---|---|---|---|---|
| ☒ 01 - Man. Conservatorship Parental Rts. Not Term. | 06 - Adoption Consummated | 060783 | 061 | 01 - Return Home/Dismiss Conserv.  06 - Emancipation | ☒ 1 - NA |
| 02 - Man. Conservatorship Parental Rts. Term. | 07 - Child Emancipated | | | ☒ 02 - Adoption  07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | 08 - Child Died | | | 03 - Permanent Foster Care  08 - Pending | 3 - ARE & Other Exchange |
| 04 - Voluntary Placement Agreement | 09 - DHR Resp. Terminated | | | 04 - Transfer Cons. to Other | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | |

**PLACEMENT INFORMATION** - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 3 | 060683 | 0.5 | 13 | 080421 | Hector Ustechuk |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| 17 Shiloh Circle | Pleamita | Tx | 76262 | 061 |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 4 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 5 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

**MEDICAID CARD ADDRESS** if different from current placement

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. | 42. NAME - LAST | FIRST | MI |
|---|---|---|---|---|---|
| 6 | | | 43. STREET | | |
| | | | 44. CITY | 45. ST.  TX | 46. ZIP |

Form 2001-A/2-83

Case 2:13-cv-01505 Document 17-115 Filed 02/30/14 Page 66 of 533 PageID 12120

**Speed Letter.**

To  _Ly___  _Wren_
1341

From  _Security (Barden)_
347-1

Subject
— No. 9 & 10 FOLD  _Bentley Whitfield_

Message
        _Social Security # 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 has been assigned_
_to the above child._

                    Date _1-8-9_ Signed _Security_

Reply

— No. 9 FOLD
— No. 10 FOLD

WilsonJones

SNAP-A-WAY AND RETAIN YELLOW COPY. SEND WHITE AND PINK COPIES WITH CARBON INTACT.

5423

Texas Department
of Human Resources

**CHILD PROTECTIVE SERVICES**
**PLACEMENT RECORD**

Form 2223
August 1980

| Child's Name | Date of Birth | Family Case Name |
|---|---|---|
| Randy Lee Whitfield | 9·13·77 | Whitfield |

| PERMANENT PLACEMENT PLAN | DATE | PERMANENT PLACEMENT PLAN | DATE |
|---|---|---|---|
| ☐ Return to own home or relative's home | | ☐ Emancipation (for older adolescents) | |
| ☒ Adoption, including adoption by foster parents | 6-15-83 | ☐ Permanent custodial care of disabled children | |
| ☐ Transfer of managing conservatorship to substitute parents | | Other (specify): | |
| ☐ Permanent foster care by formalized agreement | | | |

**RECORD OF PLACEMENTS**

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| 6-6 | Weston & Billie Witeychuk | foster home |
| Address | 17 Shiloh Circle, Roanoke, TX | Telephone No. (817) 490-0843 |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

SEE INSTRUCTIONS ON REVERSE SIDE                    Page _____ of _____

5424



Texas Department
of Human Resources

Form 2610
September 1978

## NOTIFICATION OF DAY CARE ELIGIBILITY

TO: TOMORROWS GENERATION
707 CARROLL
DENTON TX 76201

FROM: DAVID LEVISA V
DENTON CO. CPS
P.O BX ~~2164~~ 2186
DENTON TX 76201

Please ☑ provide ☐ discontinue day care, according to the terms of our agreement, to the children of the following family:

| Case Name | ANN WHITFIELD | Case No. 502744-879 |
|---|---|---|
| Address | 1100 COIT    DENTON TX 76201 | |

The children are:

| Child's Full Name | Recipient or Client No. | Date of Birth | Care Authorized | Beginning Rate |
|---|---|---|---|---|
| RANDY WHITFIELD JR | 502744880 | 9-13-77 | FULL DAY | $9.03 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Status:  ☑ PROTECTIVE
☐ Current DHR-VR   ☐ Former DHR-VR   ☐ Current WIN   ☐ Former WIN   ☐ AFDC Work Related

Eligibility:
☐ AFDC Recipient   ☐ MAO Income Eligible   ☑ Income Eligible   ☐ Ineligible

Elig. Deter. Needed By (date): ☐

Effective Date (Month, Day, Year)
6-21-82

_David Levisay_
Signature—Social Services Worker

6-21-82
Date

817-383-2371
Telephone No.

State of Texas
Department of Public Welfare

Form 2054
July 1976

## ELIGIBILITY FOR SERVICES WITHOUT REGARD TO INCOME

### SECTION A — CLIENT IDENTIFICATION

1. Name of Client: PANDU WHITFIELD JR

2. Permanent Client No. (If known): 3527-F880

3. Texas Residence Address (Street, City, State, Zip Code): HOB COIT

4. Phone No.: 382-2764
5. Date of Birth: 9-13-77
6. Social Security Account No.: NONE

* This information is voluntary. It is used for identification or verification purposes only.

### SECTION B — CERTIFICATION OF ELIGIBILITY

7. This is to certify that the client is in need of service(s) directed at the goal of preventing or remedying neglect, abuse, or exploitation, based on the following circumstances:

8. Signature of DPW or Contract Staff Certifying Eligibility

9. Date of Certification

10. BJN or Contract No.
11. Name of Contract Services Provider

12. Contract Provider Site Address (Street, City, Zip Code)

### SECTION C — AUTHORIZATION TO PROVIDE SERVICE

13. Name of Contract Services Provider: TOMORROWS GENERATION

14. Contract Provider Site Address (Street, City, State, Zip Code): HOB C 707 N. CARROLL   DENTON   76201

15. Service Authorized Without Regard to Income — Service Code: SS B
16. Client Status: 57
17. Service Initiation Date: 6-21-82
18. Service Termination Date

19. Signature of DPW Employee Making Authorization: David Ramsay
20. BJN: 051-35-C-03

21. DPW Office Address: P.O. BX 2186   DENTON
22. Phone No.: 383-2371

5426

FC

[8] WORKER          MAIL CODE  128-9
    PERULLO, JEANNIE MARIE
    BJN       05155-08    EMP.  E890
    SUPERVISOR MAIL CODE 128-9

[1]
13

**Texas Department of Human Resources**
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP**
**TRACKING SYSTEM (FACTS) — Turnaround Document**

WORKER INFORMATION

| 1. Worker Name (Last) | (First) |
|---|---|
| PERUL 0 | JEANNIE M |

| 2. Emp. No. 18 | 3. BJN 20 | 4. Mail Code 88 | 5. Today's Date |
|---|---|---|---|
| E890 | 05155C08 | 128-9 | 083183 |

6. Worker Responsibility 39
[X] 1-Primary Responsibility     [ ] 2-Courtesy Supervision

CLIENT INFORMATION     PROCESS DATE
                       08-23-83

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744880 | [ ] 1-Initiate Tracking  [X] 2-Update  [ ] 3-Terminate Tracking  [ ] 4-Close | |

ACTIVE

| 10. Client Name (Last) 50 | (First) | (MI) | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | RANDY | | 9668 3931 | 109-09-77 |

| 13. Ethnic Group 94 | | | | | | 14. Sex 96 |
|---|---|---|---|---|---|---|
| [ ] 1-Anglo  [ ] 2-Black  [ ] 3-Hispanic  [ ] 4-American Indian  [ ] 5-Oriental  [ ] 6-Other | | | | | | [ ] 1-Female  [ ] 2-Male |

15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic)

| 02 – Blind | 05 – Mentally Retarded | 08 – Refugee | 11 – Entrant | 15.a. Certification Worker BJN |
|---|---|---|---|---|
| 03 – Deaf | 06 – Emotionally Disturbed | 09 – Migrant | | |
| 04 – Physically Handicapped | 07 – Sibling Group | 10 – None | | |

[2]
13

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| | |

| 18. CLIENT TYPE | 19. ELIGIBILITY STATUS | 20. Certification/Eligibility Date |
|---|---|---|
| 31 – Abuse/Neglect  37 – Non-adjudicated CHINS | 01 – SSI  09 – MAO Foster Care | |
| 32 – Abuse  38 – Adj. Delinquent-Court Ordered | 02 – AFDC Recip  10 – State Paid Foster Care | |
| 33 – Neglect  42 – Protective Placement (Non-Abuse/Neglect) | 03 – MAO/IE  11 – AFDC/MAO/SP FC Application Pending | 20.a. Denial Date |
| 34 – Truant  43 – Interstate Compact for Placement of Children | 04 – Inc. Elig.  14 – Cat. 5 R/E | 21. Review Date |
| 35 – Runaway | 05 – MAO w/o Regard | 22. Priority |
| 36 – Adj. CHINS-Court Ordered | 06 – AFDC Foster Care | 0 |

LEGAL INFORMATION

| 23. STATUS–Initiate/Update                Terminate/Close | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | 27. ARE/OTHER EXCHANGE |
|---|---|---|---|---|
| 01 – Man. Conservatorship/Parental Rts. Not Term.  06 – Adoption Consummated | | | 01 – Return Home/Dismiss Conserv.  05 – Eman-cipation | 1 – NA |
| 02 – Man. Conservatorship/Parental Rts. Term.  07 – Child Emancipated | | | 02 – Adoption  07 – Other | 2 – ARE |
| 03 – Voluntary Relinquishment  08 – Child Died | | | 03 – Permanent Foster Care  08 – Pending | 3 – ARE & Other Exchange |
| 04 – Voluntary Placement Agreement  09 – DHR Resp. Terminated | | | 04 – Transfer Cons. to Other | 4 – No |
| 05 – Other Legal Basis for DHR Responsibility | | | 05 – Permanent Custodial Care | |

PLACEMENT INFORMATION – Do not enter item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 38. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|
| 3 | 020830R | 01.0 | 8 | 60/120 | Halprin, Daniel | | | | |
| | 34. Residence Street Address: 2015 Glenbrook Dr | | | | 35. City: Arlington | | TX | 76015 | 220 |
| 4 | | | | | | | | | |
| | 34. Residence Street Address | | | | 35. City | | | | |
| 5 | | | | | | | | | |
| | 34. Residence Street Address | | | | 35. City | | | | |

MEDICAID CARD ADDRESS If different from current placement

| 42. NAME–LAST | FIRST |
|---|---|
| 43. STREET | |
| 44. CITY | 45. ST  46. ZIP |
| | TX |

| 39. CORRECT/TRANSFER TO THIS BJN | 40. | FOR S.O. USE | 41. |
|---|---|---|---|
| 6 | | | |
| 13 | 34 | 34 | 34 |

Form 2001-0/2-83

5427

FC [6]

WORKER          MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN     05155-04   EMP. E890
SUPERVISOR MAIL CODE 128-9

[13]

**Texas Department of Human Resources**
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP**
**TRACKING SYSTEM (FACTS) — Turnaround Document**                 [X]

## WORKER INFORMATION

| 1. Worker Name (Last) | (First) |
|---|---|
| PERUL, O | JEANNIE M |

| 2. Emp. No. 18 | 3. BJN 30 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| E890 | 05155C04 | 1289 | |

| 6. Worker Responsibility 39 |
|---|
| [X] 1–Primary Responsibility    [ ] 2–Courtesy Supervision |

## CLIENT INFORMATION

PROCESS DATE
08-23-83
ACTIVE

| 7. Client No. 31 |
|---|
| 502749880 |

| 8. Action Code 41 | 9. Effective Date |
|---|---|
| 1–Initiate Tracking   [ ] 2–Update   [ ] 3–Terminate Tracking   [ ] 4–Close | 06-08-83 |

| 10. Client Name (Last) 50 | (First) 65 | (MI) | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | RANDY | | 466 63 3011 | 09-03-77 |

| 13. Ethnic Group 84 | 14. Sex 90 |
|---|---|
| [X] 1–Anglo   [ ] 2–Black   [ ] 3–Hispanic   [ ] 4–American Indian   [ ] 5–Oriental   [ ] 6–Other | [ ] 1–Female   [X] 2–Male |

### 15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic)

| | | | |
|---|---|---|---|
| 02 – Blind | 05 – Mentally Retarded | 08 – Refugee | 11 – Entrant |
| 03 – Deaf | 06 – Emotionally Disturbed | 09 – Migrant | |
| 04 – Physically Handicapped | 07 – Sibling Group | [X] 10 – None | |

15.a. Certification Worker BJN

[2] [13]

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| WHITFIELD   RANDY | 502749880 |

### 18. CLIENT TYPE

| | |
|---|---|
| [X] 31 – Abuse/Neglect | 37 – Non-adjudicated CHINS |
| 32 – Abuse | 38 – Adj. Delinquent–Court Ordered |
| 33 – Neglect | 42 – Protective Placement (Non-Abuse/Neglect) |
| 34 – Truant | 43 – Interstate Compact for Placement of Children |
| 35 – Runaway | |
| 36 – Adj. CHINS–Court Ordered | |

### 19. ELIGIBILITY STATUS

| | |
|---|---|
| 01 – SSI | 09 – MAO Foster Care |
| 02 – AFDC Reao | 10 – State Paid Foster Care |
| [X] 03 – MAO/IE | 1 – AFDC/MAO/SP FC Application Pending |
| 04 – Inc. Elig. | |
| 05 – Without Regard | 14 – Cat. 5 R/E |
| 08 – AFDC Foster Care | |

20. Certification/Eligibility Date
06-08-83

20.a. Denial Date

21. Review Date
12-14-83

22. Priority
1 0

## LEGAL INFORMATION

### 23. STATUS—Initiate/Update Terminate/Close

| | |
|---|---|
| [X] 01 – Man. Conservatorship/Parental Rts. Not Term. | 06 – Adoption Consummated |
| 02 – Man. Conservatorship/Parental Rts. Term. | 07 – Child Emancipated |
| 03 – Voluntary Relinquishment | 08 – Child Died |
| 04 – Voluntary Placement Agreement | 09 – DHR Resp. Terminated |
| 05 – Other Legal Basis for DHR Responsibility | |

| 24. Legal Status Date | 25. County |
|---|---|
| 06-14-83 | 061 |

### 26. PERMANENCY PLAN

| | |
|---|---|
| 01 – Return Home/Dismiss Conserv. | 06 – Emancipation |
| [X] 02 – Adoption | 07 – Other |
| 03 – Permanent Foster Care | 08 – Pending |
| 04 – Transfer Cons. to Other | |
| 05 – Permanent Custodial Care | |

### 27. ARE/OTHER EXCHANGE

| |
|---|
| 1 – NA |
| 2 – ARE |
| 3 – ARE & Other Exchange |
| [X] 4 – No |

## PLACEMENT INFORMATION – Do not enter Item 28 (Line) except on corrections.

[3] [13]

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Faclaty No. | 33. Residence Name |
|---|---|---|---|---|---|
| 01 | 06-06-83 | 05 | 10 | 080421 | HECTOR VITEYCHUK |

| 34. Residence Street Address 61 | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| 17, SHILOH CIRCLE | ROANOKE | TX | 76262 | 061 |

[4]

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Faclaty No. | 33. Residence Name |
|---|---|---|---|---|---|
| | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

[5]

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Faclaty No. | 33. Residence Name |
|---|---|---|---|---|---|
| | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. |
|---|---|---|
| | | |

[6] [13]

Form 2001-B/2-83

DCN  P3234003

5428

PLACEMENT AGREEMENT

FORM

TO BE SIGNED BY APPLICANT ON PLACEMENT OF A CHILD FROM:

THE EDNA GLADNEY HOME/NEW HOPE PROGRAM
FORT WORTH, TEXAS

On this day, the DEPARTMENT OF HUMAN RESOURCES and THE EDNA GLADNEY HOME/NEW
HOPE PROGRAM placed in our home, for the purpose of adoption, the child
_____Randy_____ as __He__
                Name of Child                              he/she
is known to us, born on the __13SD__ day of __September__, 19 77
at _____Denton_____, Texas_____.

In consideration of this child being placed with us with a view to adoption,
we represent and agree as follows:

1.    That the information contained in our formal Application filed with The
Edna Gladney Home/New Hope Program was at that time true and correct.

2.    That any material changes that have taken place between the date of our
Application and this date, if any, have been duly divulged to The Edna Gladney Home/New
Hope Program; and that between now and the time the adoption is completed will will
fully and promptly report to The Edna Gladney Home/New Hope Program any changes that
take place having to do with any representations in our Application and any other
happenings or occurrences that could relate to the stability of our marriage, the
state of our health, the occupants of our household, our family, our suitability as
parents, the welfare of the child involved, or any other matters that our obligations
of good faith to The Edna Gladney Home/New Hope Program and our obligation of full
and complete disclosure would indicate be imparted to The Edna Gladney Home/New Hope
Program.

3.    That the Juvenile Court of __Denton County, Texas__
has taken jurisdiction over this child, and its exclusive jurisdiction continues
until such time as it is transferred to The Edna Gladney Home/New Hope Program.

4.    That under the jurisdiction of said Juvenile Court, legal custody of
the child is in the Department of Human Resources and will remain there until
such time that the adoption is consummated.

5.    That The Edna Gladney Home/New Hope Program will supervise the child and
we will participate in such supervision by The Edna Gladney Home/New Hope Program
until the child is adopted.

5429

6.    That we will not change our residence and/or remove the child from the State of _____TEXAS_____ before the adoption is finalized without the permission of The Edna Gladney Home/New Hope Program.

7.    That in the event The Edna Gladney Home/New Hope Program or we determine that the placement should not continue, prior to legal consummation of the adoption, we agree to return the child to the Department of Human Resources or The Edna Gladney Home/New Hope Program.

8.    That we understand that we accept and are responsible for the care and maintenance, including medical care of :

_____RANDY_____
Name of Child

We further agree to notify The Edna Gladney Home/New Hope Program of any serious illness or injury of this child.

9.    That if the Department of Human Resources or The Edna Gladney Home/New Hope Program has not required us to return the child, nor have we elected to return the child on our own, that we will then petition for the completion of the adoption and will return to Fort Worth and complete the adoption upon the recommendation of The Edna Gladney Home/New Hope Program at the time set by the Court of its completion, unless the Home shall consent to an extension of time for adopting the child.  In this connection, the attorneys for the Home will advise us in advance of the date and time for filing the petition and completing the adoption.

10.    That the adoption reimbursement fee shall be $ _-O-_ . Schedule of payment is as follows:


EXECUTED at _FortWorth_ , _Texas_ and dated this _12th_ day of _September_ , 19_83_ .


THE EDNA GLADNEY HOME/NEW HOPE PROGRAM

_Daniel Nathan Halprin_
Husband's Full Name

BY _Charlotte Yancey_
Authorized Representative

_Patricia Anne Brannick Halprin_
Wife's Full Name


SUBSCRIBED AND SWORN TO BEFORE ME, the Undersigned Notary Public, in and for The State of Texas, by the above named husband and wife, on this, the _12th_ day of _September_ , 19_83_, to certify witness my hand and seal of office.

My Commission Expires:

_November 19_, 19_86_

LINDA G. ALLEN, NOTARY PUBLIC
IN AND FOR THE STATE OF TEXAS
MY COMMISSION EXPIRES NOVEMBER 19, 1986

_Linda G. Allen_
Notary Public in and for
The State of Texas


5430

Case 3:11-cv-00355 Document 1-55 Filed 08/22/16 Page 74 of 533 PageID 13428

# MEMORANDUM
## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield
Randy Whitfield

TO: Beverly Basden

FROM: Beverly Deweber
PPT Recorder

DATE:

General Case Plans from June 15, 1983
PPT Staffing:

1. Both children are free for adoption.
Randy has been located & is in
placement with Wesley.
2. Transfer case to PPU.

AN EQUAL OPPORTUNITY EMPLOYER

5431

NO. 7-A-84

| | | |
|---|---|---|
| IN THE INTEREST | § | IN THE DISTRICT COURT |
| OF | § | DENTON COUNTY, TEXAS |
| TWO CHILDREN | § | 16th JUDICIAL DISTRICT |

## FINAL ADOPTION DECREE

On the 2nd day of March, 1984, a final hearing on the merits was held in the above numbered and styled cause. Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN (hereinafter called "Petitioners") appeared in person and by attorney and announced ready for trial. The Texas Department of Human Resources, Managing Conservator of the children who are the subjects of this suit, having filed with the Court a written consent to adoption containing a waiver of citation and process in this suit, did not appear. All issues of fact and of law were submitted to the Court.

The Court, having considered the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this suit and over all parties to the suit; that all persons entitled to citation were duly and properly served with citation or have waived citation in the manner provided by law; that this cause has been set for hearing and a social study filed as required by law; that the children who are the subjects of this suit (hereinafter called "the children") are a male child born on September 13, 1977, in McKinney, Collin County, Texas, and a male child born on November 17, 1980, in Denton, Denton County, Texas; that the parent-child relationships formerly existing between the children and each living parent of the children have been terminated in prior judicial proceedings; and that this Court has acquired continuing, exclusive jurisdiction over the children and of this suit affecting the parent-child relationship with respect to the children.

The Court further finds that the children have lived for a period in excess of six months in the home of Petitioners; that the children's Managing Conservator has given written consent to the adoption, such written consent having been filed in the record

5432

of this suit; that the material allegations contained in Petitioners' pleadings are true; that all requirements and prerequisites of law have been satisfied; that the children are proper subjects for adoption and suited to the home of Petitioners; that the home of Petitioners is suitable for the children; that the children were residents of the State of Texas at the time this suit for adoption was filed and are citizens, by birth, of the United States of America; that it is in the best interest of each child that the children be adopted by Petitioners; that it is in the best interest of the older child that his name be changed to RANDY ETHAN HALPRIN; and that it is in the best interest of the younger child that his name be changed to WESLEY DORAN HALPRIN.

It is, therefore, ORDERED, ADJUDGED and DECREED that Petitioners' request to adopt the children be and it hereby is granted; that the name of the older child be and it hereby is changed to RANDY ETHAN HALPRIN; that RANDY ETHAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; that the parent-child relationship now exists between the child RANDY ETHAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage; that the name of the younger child be and it hereby is changed to WESLEY DORAN HALPRIN; that WESLEY DORAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; and that the parent-child relationship now exists between the child WESLEY DORAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage.

It is further ORDERED that the Clerk of this Court transmit to the Texas Department of Human Resources certified copies of the petition and Final Adoption Decree in this cause, and the Texas Department of Human Resources is hereby ORDERED to close the records concerning the children and, except for statistical purposes, not to disclose to anyone any information concerning proceedings affecting the children.

5433

It is ORDERED that the State Registrar of the Bureau of Vital Statistics at Austin, Texas, issue a new birth certificate for each child as provided for by the laws of the State of Texas.

It is further ORDERED that the Clerk of this Court seal the minutes of the Court and the complete file in this case, including all pleadings, papers, studies and records, so that no person shall have access to such minutes, to such file, or to any information contained therein.

It is further ORDERED that all costs of Court be and they hereby are taxed to Petitioners.

It is further ORDERED that all relief requested in this cause and not expressly granted herein is hereby denied.

SIGNED this 2nd day of March, 1984.

JUDGE PRESIDING

CAUSE NO. 82-3081-A

IN THE INTEREST OF          X      IN THE DISTRICT COURT

RANDY LEE WHITFIELD       X,    16TH JUDICIAL DISTRICT

A CHILD                     X      DENTON COUNTY, TEXAS

*FILED 1983 JUN 9 AM 9 52 DISTRICT CLYS WRITTEN DENTON CO. TEX. BY_____ DEPUTY*

MOTHER'S VOLUNTARY AFFIDAVIT OF
RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS     )
                    )
COUNTY OF DENTON      )

**5435**

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is Y Motel, 901 S. Locust, #15, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized Agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas to terminate forever the parent-child relationship between me and the above named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED

IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Notwishing to appear or be cited in the termination suit, I hereby waive the rights to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 20th day of May, 1983

_Anna W. Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature
Courthouse on the Square
Denton, Texas
Address

_Evelyn Williams_
Signature
3408 Sunnydale
Denton, Tx 76201
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 20th day of May, 1983 to certify which witness my hand and seal of office.

_Joan E. Schmit_
Notary Public, in and for the State of Texas

My commission expires:

_2-16-84_

5436

MOTHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS
Page 2 of 2

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

### TEMPORARY ORDERS

On the 9 day of June, 1983, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, waived the issuance, service and return of citation upon her by a Waiver of Citation on file herein.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
PLACE OF BIRTH: McKinney, Texas
DATE OF BIRTH: September 13, 1977
PRESENT RESIDENCE: Denton County, Texas

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

John Lawhon is hereby appointed Attorney Ad Litem to represent the interest of the Child.

5437

- 2 -

No Order for child support is made at this time.

Signed this ___9___ day of June, 1983.

JUDGE PRESIDING

NO. 82-3081-A

FILED _____

1983 JUN -9 AM 9:52
GLADYS WHITTEN
DISTRICT CLERK, DENTON CO. TEX.

D ~~DENTON COUNTY~~ DEPUTY

IN THE MATTER OF THE MARRIAGE OF    X

ANNA WHITFIELD AND BOB R. WHITFIELD

AND                     X

IN THE INTEREST OF

RANDY LEE WHITFIELD         X

A CHILD

IN THE DISTRICT COURT OF

~~DENTON COUNTY~~, TEXAS

16TH JUDICIAL DISTRICT

- - -

### ORIGINAL PETITION IN A SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP — TERMINATION PETITION AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this suit. Petitioner maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

#### I.

This Court has continuing exclusive jurisdiction of this suit affecting the parent-child relationship.

#### II.

The following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
DATE OF BIRTH: September 13, 1977
PLACE OF BIRTH: McKinney, Texas
RESIDENCE: Denton County, Texas

Randy Lee Whitfield will hereinafter be known as the Child.

#### III.

That the mother of the Child is Anna Marie Whitfield, date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

#### IV.

Other than the orders entered in this suit, there are no other than the temporary ordered court-ordered conservatorships, guardianships, or other court-ordered relationships affecting the Child in this suit.

#### V.

The Child neither owns nor possesses any property.

**5439**

#### VI.

Pursuant to Chapter 14, Texas Family Code, Petitioner says that it is in

- 2 -

Managing Conservator of the Child.  In support of this request, Petitioner says

that the Mother and Father of the Child have each voluntarily relinquished

their rights to the Child.

### VII.

Petitioner alleges that termination of the parent-child relationship bet-

ween each of the parents and the Child would be in the best interest of the

Child, as provided by Section 15.02, Texas Family Code.  As grounds for termina-

tion, Petitioner alleges that each of these parents have voluntarily left the

Child in the possession of another not the parent and expressed an intent not

to return and each of these parents have executed an irrevocable affidavit of

relinquishment of parental rights as provided by Section 15.03, Texas Family

Code.

In addition to the above grounds, termination of the parent-child relation-

ship between each of the parents and the Child is in the best interest of the

Child.

Petitioner alleges that its appointment as temporary managing conservator

and as managing conservator upon final hearing would be in the best interest of

the Child and requests the Court make these appointments as provided by the

Texas Family Code.

Petitioner requests the Court grant authorization for petitioner to con-

sent to such medical or surgical care as may be required by this Child pending

a hearing on this petition.

Petitioner requests the Court appoint John Lawhon as Attorney Ad Litem to

represent the interest of the Child as provided by Section 11.10 (d), Texas

Family Code.  The said John Lawhon was previously appointed by the Court in

this suit.

### VIII.

Petitioner prays that citation and notice be issued to all persons above

who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the

foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

5440

Respectfully submitted

*Beverley Fisher*

- 3 -

STATE OF TEXAS      )
                    )
COUNTY OF DENTON    )

The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

*Beverly Basden*
Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 9th day of June, 1983

*Sandy Neal*
Notary Public, in and for Texas

My Commission Expires: _____

SANDY NEAL, Notary Public
State of Texas
Commission expires 4/29/85

5441

NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT |
| RANDY LEE WHITFIELD | X | 16TH JUDICIAL DISTRICT |
| A CHILD | X | DENTON COUNTY, TEXAS |

FATHER"S VOLUNTARY AFFIDAVIT
OF RELINQUISHMENT OF PARENTAL
RIGHTS

THE STATE OF TEXAS )
                    )
COUNTY OF DENTON    )

BEFORE ME, the undersigned authority, on this day personally appeared Bob R. Whitfield, who, being by me duly sworn, in the presence of the under-signed credible witnesses upon oath stated:

"My name is Bob R. Whitfield. My age is 25 years. My address is Y Motel, 901 S. Locust, #5, Denton, Texas. I am the father of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977 in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows:     None

"The mother of the child is Anna Whitfield, who address is 3818 W. University, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of the child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

5442

Case 2:18-cv-01057-Z Document 1-14 Filed 05/07/18 Page 86 of 533 PageID 5443

- 2 -

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in this termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this _19__ day of May, 1983.

_Bob R Whitfield_
AFFIANT

WITNESSES:

_Beverly N. Basden_
Signature
P.O. Box 2196
Denton, Texas
Address

_Evelyn Williams_
Signature
3408 Sunnydale
Denton, TX
Address

SUBSCRIBED AND SWORN TO before me by the said _Bob R Whitfield_ , Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this _19__ day of May, 1983, to certify which witness my hand and seal of office.

_Jan E. Schmitz_
Notary Public in and for the State of Texas

My Commission Expires:

5443

Case 3:13-cv-01535-L Document 17-115 Filed 08/27/14 Page 87 of 533 PageID 1456

CAUSE NO. 82-3081-A

FILED

1983 JUN 9 AM 8 52

IN THE INTEREST OF ⊥ IN THE DISTRICT COURT

RANDY LEE WHITFIELD ⊥ 16TH JUDICIAL DISTRICT

A CHILD ⊥ DENTON COUNTY, TEXAS

DISTRICT CLK. WRITTEN
BY
DENTON CO. TEX.
DEPUTY

MOTHER'S VOLUNTARY AFFIDAVIT OF
RELINQUISHMENT OF PARENTAL RIGHTS

**5444**

THE STATE OF TEXAS )
COUNTY OF DENTON )

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is Y Motel, 901 S. Locust, #15, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized Agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas to terminate forever the parent-child relationship between me and the above named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED

IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Notwishing to appear or be cited in the termination suit, I hereby waive the rights to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 20th day of May, 1983

Anna W Whitfield
_____
AFFIANT

WITNESSES:

Beverly Basden
_____
Signature
Courthouse on the Square
Denton, Texas
_____
Address

Evelyn Williams
_____
Signature
3408 Sunnydale
Denton, Tx 76201
_____
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 20th day of May, 1983 to certify which witness my hand and seal of office.

Jean E. Schmit
_____
Notary Public, in and for the State of Texas

My commission expires:

8-16-84
_____

5445

MOTHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

— — —

TEMPORARY ORDERS

On the _9_ day of June, 1983, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, waived the issuance, service and return of citation upon her by a Waiver of Citation on file herein.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
PLACE OF BIRTH: McKinney, Texas
DATE OF BIRTH: September 13, 1977
PRESENT RESIDENCE: Denton County, Texas

5446

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

John Lawhon is hereby appointed Attorney Ad Litem to represent the interest of the Child.

No Order for child support is made at this time.

Signed this _____ day of June, 1983.

JUDGE PRESIDING

5447

NO. 82-3081-A

FILED _____

IN THE MATTER OF THE MARRIAGE OF    I

ANNA WHITFIELD AND BOB R. WHITFIELD

AND                                I

IN THE INTEREST OF

RANDY LEE WHITFIELD              I

A CHILD

1983 JUN -9 AM 9 52
IN THE DISTRICT COURT OF
GLADYS WHITTEN
DISTRICT CLERK, DENTON CO., TEX.

DENTON COUNTY, TEXAS
DEPUTY

16TH JUDICIAL DISTRICT

– – –

## ORIGINAL PETITION IN A SUIT AFFECTING
## THE PARENT-CHILD RELATIONSHIP --
## TERMINATION PETITION AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this suit. Petitioner maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

### I.

This Court has continuing exclusive jurisdiction of this suit affecting the parent-child relationship.

### II.

The following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
DATE OF BIRTH: September 13, 1977
PLACE OF BIRTH: McKinney, Texas
RESIDENCE: Denton County, Texas

Randy Lee Whitfield will hereinafter be known as the Child.

### III.

That the mother of the Child is Anna Marie Whitfield, date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

### IV.

Other than the orders entered in this suit, there are no other than the temporary ordered court-ordered conservatorships, guardianships, or other court-ordered relationships affecting the Child in this suit.

### V.

The Child neither owns nor possesses any property.

5448

### VI.

Pursuant to Chapter 14, Texas Family Code, Petitioner says that it is in the best interest of this Child for the Petitioner to be appointed Temporary

Managing Conservator of the Child. In support of this request, Petitioner says that the Mother and Father of the Child have each voluntarily relinquished their rights to the Child.

### VII.

Petitioner alleges that termination of the parent-child relationship between each of the parents and the Child would be in the best interest of the Child, as provided by Section 15.02, Texas Family Code. As grounds for termination, Petitioner alleges that each of these parents have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return and each of these parents have executed an irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03, Texas Family Code.

In addition to the above grounds, termination of the parent-child relationship between each of the parents and the Child is in the best interest of the Child.

Petitioner alleges that its appointment as temporary managing conservator and as managing conservator upon final hearing would be in the best interest of the Child and requests the Court make these appointments as provided by the Texas Family Code.

Petitioner requests the Court grant authorization for petitioner to consent to such medical or surgical care as may be required by this Child pending a hearing on this petition.

Petitioner requests the Court appoint John Lawhon as Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10 (d), Texas Family Code. The said John Lawhon was previously appointed by the Court in this suit.

### VIII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

**5449**

Respectfully submitted

*Beverly Fisher*

Assistant Criminal District Attorney

- 3 -

STATE OF TEXAS        )
                      )
COUNTY OF DENTON      )

The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

_Beverly Basden_
Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 9th day of June, 1983

_Sandy Neal_
Notary Public, in and for Texas

My Commission Expires: _____

SANDY NEAL, Notary Public
State of Texas
Commission expires 4/29/85

5450

Case 3:13-cv-01535-L Document 17-15 Filed 09/24/13 Page 94 of 533 PageID 1490

NO. 82-3081-A

FILED
'83 JAN -9 AM 9:52
IN THE DISTRICT COURT
DENTON CO., Tex.
BY _____
DEPUTY

| | | |
|---|---|---|
| IN THE INTEREST OF | X | |
| RANDY LEE WHITFIELD | X | IN THE DISTRICT COURT |
| A CHILD | X | 16TH JUDICIAL DISTRICT |
| | | DENTON COUNTY, TEXAS |

## FATHER"S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS )
)
COUNTY OF DENTON )

BEFORE ME, the undersigned authority, on this day personally appeared Bob R. Whitfield, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Bob R. Whitfield. My age is 25 years. My address is Y Motel, 901 S. Locust, #5, Denton, Texas. I am the father of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977 in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: None

"The mother of the child is Anna Whitfield, who address is 3818 W. University, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of the child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

5451

- 2 -

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in this termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this _19th_ day of May, 1983.

_Bob R. Whitfield_
AFFIANT

WITNESSES:

_Beverly H. Basden_
Signature
P.O. Box 2196
Denton, Texas
Address

_Evelyn Williams_
Signature
3908 Sunnydale
Denton, Tx
Address

SUBSCRIBED AND SWORN TO before me by the said _Bob R. Whitfield_ _____, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this _19th_ day of May, 1983, to certify which witness my hand and seal of office.

_Ross E. Schmitz_
Notary Public in and for the State of Texas

My Commission Expires:
_9-11-81_

5452

CAUSE NO. 82-3081-A

IN THE MATTER OF THE MARRIAGE OF    I       IN THE DISTRICT COURT

ANNA MARIE WHITFIELD AND

BOB RANDAL WHITFIELD, AND       I       DENTON COUNTY, TEXAS

IN THE INTEREST OF

RANDY WHITFIELD,

A CHILD                  I       16TH JUDICIAL DISTRICT

### DECREE OF TERMINATION

On the ___19th___ day of June, 1983, Petitioner, the Texas Department of Human Resources, appeared by its representative and its attorney of record and announced ready for trial.

The Respondent Father, Bob Randal Whitfield, waived the issuance, service and return of citation and did not appear.

The Respondent Mother, Anna Marie Whitfield, waived the issuance, service and return of citation and did not appear. Michael J. Whitten, the attorney of record for Anna Marie Whitfield, has approved and agreed to the terms of this decree.

Also appearing was John Lawhon, appointed by the Court as attorney ad litem for the Child, the subject of this suit.

The Court having examined the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other Court has continuing exclusive jurisdiction of this cause. No party having demanded a jury trial, a jury was waived and all issues of fact and of law, were submitted to the Court for decision. All persons entitled to service of citation upon commencement of this suit have been duly served with citation or have waived citation in the manner provided by law. All findings of facts made herein are based upon clear and convincing evidence. A record of testimony was made.

The Court finds that the following Child is the subject of this decree:

NAME:          RANDY LEE WHITFIELD
SEX:           Male
BIRTHDATE:      9-13-77
BIRTHPLACE:     McKinney, Texas
PRESENT RESIDENCE:   Denton County, Texas

**5453**

The Court further finds that the Child neither owns nor possesses any property; that no person has qualified as guardian of the person or estate of

the Child; and that no possessory conservator or other person has access to the Child under an order of this Court or any other Court.

The Court finds that Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return, and that each of said parents have executed irrevocable affidavits of relinquishment of parental rights as provided by Section 15.03 of the Texas Family Code.

The Court also finds that termination of the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child is in the best interest of the Child.

IT IS THEREFORE DECREED that the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child, the subject of this suit, be and are hereby terminated.

The Court finds that it is in the best interest of the Child that the Texas Department of Human Resources be appointed managing conservator of the Child and that the managing conservator be authorized to place the Child for adoption in a suitable home.

IT IS THEREFORE DECREED that the Texas Department of Human Resources be and is hereby appointed managing conservator of the Child who is the subject of this suit, and that the managing conservator be and is hereby authorized to place the Child for adoption.

All relief requested and not granted herein is expressly denied.

SIGNED this 14th day of June, 1983.

_____
W. C. BOYD, JUDGE PRESIDING

APPROVED AND AGREED TO:

_____
JOHN LAWHON, Attorney Ad Litem for Child, Attorney at Law
State Bar No. 12036,000

5454

_(signature)_

MICHAEL J. WHITTEN
Attorney for Anna Marie Whitfield
Attorney at Law
State Bar No. _____

_(signature)_

Assistant Criminal District Attorney
Denton County, Texas
Attorney for Petitioner
State Bar No. 20496000

DECREE OF TERMINATION
Page 3 of 3

No. 82-3081-A

| | |
|---|---|
| IN THE INTEREST OF | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | DENTON COUNTY, TEXAS |
| A CHILD | 16TH JUDICIAL DISTRICT |

ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now RANDY LEE WHITFIELD, a Child and the subject of this suit by and through his Attorney Ad Litem, John Lawhon, and files this his Answer as follows:

I.

Randy Lee Whitfield denies, each and singular, the allegations of the Petition to terminate herein, and demands proof thereof; and he further requests such further relief in law or in equity to which he may be entitled.

Respectfully Submitted,

John Lawhon
Attorney at Law
P. O. Box 44
Denton, Texas 76202

Ph. 817-382-6762
ATTORNEY AD LITEM FOR CHILD
Bar Card No. 12036000

Certificate of Service

I certify that a true copy of this Answer was delivered in person to Ron Vanzura, Assistant Criminal District Attorney of Denton County, Texas, who is the Attorney for Petitioner, on this 14th day of June, 1983.

John Lawhon

5456

NO. 82-3081-A

IN THE MATTER OF THE MARRIAGE OF

ANNA MARIE WHITFIELD AND       X       IN THE DISTRICT COURT

BOB RANDAL WHITFIELD

AND IN THE INTEREST OF       X       DENTON COUNTY, TEXAS

WESLEY ALLEN WHITFIELD

AND       X       16TH JUDICIAL DISTRICT

RANDY WHITFIELD

- - -

### DECREE OF TERMINATION

On the 11th day of May, 1983, Petitioner, the Texas Department of Human Resources, appeared by its representative and its attorney of record and announced ready for trial.

The Respondent Father, Bob Randal Whitfield, waived the issuance, service and return of citation and did not appear.

The Respondent Mother, Anna Marie Whitfield, waived the issuance, service and return of citation and did not appear. Michael J. Whitten, the attorney of record for Anna Marie Whitfield, has approved and agreed to the terms of this decree.

Also appearing was John Lawhon, appointed by the Court as attorney ad litem of the Child the subject of this suit.

The Court having examined the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other Court has continuing exclusive jurisdiction of this cause. No party having demanded a jury trial, a jury was waived and all issues of fact and of law, were submitted to the Court for decision. All persons entitled to service of citation upon commencement of this suit have been duly served with citation or have waived citation in the manner provided by law. All findings of facts made herein are based upon clear and convincing evidence. A record of the testimony was made.

The Court finds that the following Child is the subject of this decree:

NAME: Wesley Allen Whitfield
SEX: Male
BIRTHDATE: 11-17-80, BIRTHPLACE: Denton, Texas
PRESENT RESIDENCE: Denton County, Texas

**5457**

The Court further finds that the Child neither owns nor possesses any

Page 2 of 3

of the Child; and that no possessory conservator or other person has access to the Child under an order of this Court or any other Court.

The Court finds that Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return, and that each of said parents have executed irrevocable affidavits of relinquishment of parental rights as provided by Section 15.03 of the Texas Family Code.

The Court also finds that termination of the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child is in the best interest of the Child.

IT IS THEREFORE DECREED that the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child the subject of this suit be and are hereby terminated.

The Court finds that it is in the best interest of the Child that the Texas Department of Human Resources be appointed managing conservator of the Child and that the managing conservator be authorized to place the Child for adoption in a suitable home.

IT IS THEREFORE DECREED that the Texas Department of Human Resources be and is hereby appointed managing conservator of the Child who is the subject of this suit, and that the managing conservator be and it is hereby authorized to place the Child for adoption.

All relief requested and not granted herein is expressly denied.

SIGNED this 11th day of May, 1983.

_____
W. C. BOYD
Judge Presiding

APPROVED AND AGREED TO:

_____
JOHN LAWTON, Attorney
Ad Litem for Child
Attorney at Law
State Bar No.

5458

MICHAEL J. WHITTEN
Attorney for Anna Marie Whitfield
Attorney at Law
State Bar No.

Assistant Criminal District Attorney
Denton County, Texas
Attorney for Petitioner
State Bar No. 01049150

5459

## WYNN, BROWN, MACK, RENFRO & THOMPSON

ATTORNEYS AT LAW

1200 OIL AND GAS BUILDING

309 W. SEVENTH STREET

FORT WORTH, TEXAS 76102-6976

AC 817 335-6261

METRO 429-0551

C. HAROLD BROWN
THEODORE MACK
TOM B. RENFRO
JOHN RANDOLPH THOMPSON, JR.
DARRELL W. WOOD
WILLIAM M. SCHUR
H. E. DICKEY, JR.
ROBERT R. BODOIN
PAUL C. ISHAM
JOSEPH LEE HALEY III
JOHN F. GILLESPIE
J. GEARY GRIMES
SAM LIVELY
SUSAN I. PAQUET

SPROESSER WYNN (1913 - 1980)

OF COUNSEL
THOMAS J. RENFRO
ELMO IREY

February 24, 1984

Ms. Helen Grape
Texas Department of Human Resources
308 East 4th Street
Fort Worth, Texas  76102

Re:  Cause No. 7-A-84
In the Interest of Two Children
In the District Court, Denton County
Texas, 16th Judicial District Court

Dear Helen:

The children, Randy Lee Whitfield and Wesley Allen Whitfield,
are subject to the managing conservatorship of the Texas Depart-
ment of Human Resources.  My clients, Mr. and Mrs. Daniel Nathan
Halprin, seek to adopt the children.  The children were placed
with my clients through the New Hope program of The Edna Gladney
Home.  The children were actually placed with Mr. and Mrs. Halprin
on August 30, 1983, although formal placement papers were not
signed until September 12, 1983.  The adoption hearing has been
scheduled by the Denton Court for March 2, 1984.  If the six
months residency requirement was calculated from the date of the
formal placement agreement was signed, the six months residency
requirement would not be met by the March 2nd date.  However, the
Judge in Denton has told me he is willing to waive the requirement
and my reading of the statute is that the six month residency re-
quirement is met as long as the children have lived with the
adoptive family for six months.  If you have any questions or con-
cerns about this matter, please telephone me.

I have enclosed, with respect to the above referenced suit,
one copy of Petitioners' Original Petition for Adoption.  That
copy should be retained in the legal file for the children main-
tained by the Department.

Ms. Helen Grape           February 24, 1984           Page Two


     I have also enclosed the original and two copies of a pro-
posed Consent to Adoption and Waiver of Citation to be executed
by you.  If this instrument meets with your approval, please
execute the original and one copy and return these with the
"Runner" from our office.  The remaining copy should be retained
in the children's file maintained by the Department.

                    Very truly yours,

                    *Susan*

                    Susan I. Paquet

SIP/ct
Enclosures

bcc:  Marilyn Anderson, New Hope


5461

NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | I | IN THE DISTRICT COURT  FILED 1982 OCT PM 2:12 |
| WESLEY A. WHITFIELD | I | 16TH JUDICIAL DISTRICT  ITEN  DISTRICT CLERK, DENTON CO., TEX. |
| A CHILD | I | DENTON COUNTY, TEXAS      DEPUTY  BY |

EMERGENCY ORDERS FOR PROTECTION OF CHILDREN

On the 19 day of Oct , 19 82 , at
2 o'clock P.M. the Petition of Intervention which was duly
verified was presented to me without notice or adversary hearing.

The Court finds that it has jurisdiction of this cause under Chapter
17 of the Texas Family Code.

The Court finds, based upon such petition, that an immediate danger to
the health and/or physical safety of the subject child existed on October 28,
1982 when Intervenor took possession of said Child. The Court finds that the
child should be placed under the temporary managing conservatorship of the
Texas Department of Human Resources and an adversary hearing should be held
to determine if the Intervenor should remain as Temporary Managing Conservator
of the Child.

IT IS THEREFORE ORDERED that the child, Wesley A. Whitfield, be and is
hereby immediately placed under the temporary managing conservatorship of the
Texas Department of Human Resources, Intervenor. IT IS FURTHER ORDERED that
the temporary managing conservator have the power to consent to diagnostic
and/or emergency medical treatment of the child.

IT IS FURTHER ORDERED that John Lawhon be
appointed guardian ad litem for the child in question, that notice issued to
the parents of the said child at the addresses stated in the Petition of Inter-
vention, and that an adversary hearing on the instant cause be held in the
16th Judicial District Court located in the Carroll Courts Building, at Hickory
St., and Carroll Drive, Denton, Denton County, Texas, 10 A.M, on October
5 , 1982. Said date being within ten (10) days of the date the child
was removed from respondent's custody.

_____
JUDGE PRESIDING

5462

FILED

CAUSE NO. 82-3081-A          1982 OCT 29 PM 1: 34

IN THE MATTER OF THE MARRIAGE OF     §     IN THE DISTRICT COURT DEN CO. TEX.

ANNA WHITFIELD AND BOB R. WHITFIELD

    AND                   BY _____ DEPUTY

IN THE INTEREST OF          §     DENTON COUNTY, TEXAS

WESLEY A. WHITFIELD AND RANDY
WHITFIELD,

CHILDREN              §     16TH JUDICIAL DISTRICT

---

## PETITION IN INTERVENTION IN A SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP---MANAGING CONSERVATORSHIP

This Petition in Intervention is filed by the Texas Department of Human Resources, an authorized agency, located at the Denton County Courthouse on the Square, Denton, Texas.

I.

This Court has continuing jurisdiction of this suit affecting the parent-child relationship.

II.

The following child is the subject of this suit:

NAME: WESLEY A. WHITFIELD
SEX: Male
DATE OF BIRTH: 11-17-80
PLACE OF BIRTH: Unknown
RESIDENCE: Clayton House Motel, Room 206, 1111 West University Drive, Denton, Texas

WESLEY A. WHITFIELD will hereinafter be known as the Child.

III.

That the mother of the Child is ANNA WHITFIELD; date of birth 01-09-59; place of birth unknown; address Clayton House Motel, Room 206, 1111 West University Drive, Denton, Texas.

That the father of the Child is BOB R. WHITFIELD; date of birth 07-27-57; place of birth unknown; address Clayton House Motel, Room 206, 1111 West University Drive, Denton, Texas.

Process should be served at the above address.

IV.

There are no court-ordered conservatorships, guardianships, or other court-ordered relationships affecting the Child in this suit.

5463

V.

Intervenor lacks information regarding property owned or possessed by the Child.

VI.

Pursuant to Chapter 17, Texas Family Code, Intervenor alleged that there was an immediate danger to the physical health or safety of the Child on October 28, 1982, when Intervenor took possession of the Child and there was no time, consistent with the physical health of safety of the Child, for an adversary hearing. Intervenor alleges the following facts which require that the Child be afforded protection under the provisions of Section 17, Texas Family Code: The Child, WESLEY A. WHITFIELD, currently has bruises on both legs as a result of a whipping by ANNA WHITFIELD or her paramour JIMMY WILLINGHAM received on or about 10-26-82. The Child previously had bruises on the legs, buttocks, upper thigh and lower back on 9-16-82. On 7-12-82, the Child had bruises on his upper thighs and lower back. Thus during the period July 1982 to October 1982, the Child is known to have been injured on at least three occasions while in the care of his mother. It is feared that escalation in the severity of these incidents will lead eventually to serious bodily injury to the Child if not corrected. The mother has consistently denied responsibility for the repeated harm that has come to her Child.

Intervenor alleges that its appointment as temporary managing conservator would be in the best interest of the Child and requests the Court to make this appointment as provided by the Texas Family Code.

Intervenor represents to the Court that the parents of the Child should be ordered to make payments for the support of the Child pending a final hearing of this case.

Intervenor requests authorization from the Court to consent to such medical or surgical care as may be required by this Child pending a final hearing of this case.

Intervenor requests the Court to appoint an Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10(d), Texas Family Code.

VII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

5464

PETITION IN INTERVENTION

Intervenor prays that the Court enter its orders in accordance with the foregoing allegations.

Respectfully submitted,

_(signature)_
Assistant Criminal District Attorney for Petitioner

STATE OF TEXAS }
COUNTY OF DENTON }

The undersigned states under oath that I am an authorized representative of the Intervenor in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

_Beverly Basden_
Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 29th day of October, 1982.

_Sandy Neal_
Notary Public, in and for Denton County, Texas

My commission expires: _____

BANDY NEAL, Notary Public
State of Texas
Commission expires 4/29/85

**5465**

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD | § | 16TH JUDICIAL DISTRICT |
| A CHILD | § | DENTON COUNTY, TEXAS |

## ORDER CONTINUING EX PARTE ORDER

On this, the 12th day of November, 1982, came on to be heard the Original Petition in this cause. This cause was heard on November 5, 1982 and continued to this date. All existing subpoenas were also continued to this date. The petitioner appeared in person and by attorney. The respondents' attorney did not appear. This cause has been reset for hearing on the 19th day of November, 1982 at 9:30 o'clock a.m.

The Court finds that it has jurisdiction of this cause, and the parties herein under provisions of Section 11.11, Texas Family Code.

The Court finds that there continues to exist an immediate danger of physical or emotional injury to the subject child. The Court finds that the child should continue in the placement under the Temporary Managing Conservatorship of the Texas Department of Human Resources, Denton County, Texas, Child Welfare Unit, until further order of the Court.

IT IS THEREFORE ORDERED that the child, Wesley Whitfield, continue the placement under Temporary Managing Conservatorship of Denton County Child Welfare and his successors until further order of this Court, and that the said Temporary Managing Conservator may place the physical custody of the child with persons or agents of his designation and further the Temporary Managing Conservator is granted the rights, privileges, powers and duties provided by law.

IT IS THEREFORE ORDERED that there shall be held a hearing on the 19th day of November, 1982 at 9:30 o'clock a.m. wherein the respondents shall appear and show cause why the Order of the Court should not be continued.

SIGNED on this the_____ day of November, 1988

_____
JUDGE PRESIDING

5466

NO. 82-3081-A

FILED
1982 NOV -5 AH 9: 52
DISTRICT CLERK DENTON CO. TEX.
DEPUTY

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD | § | 16TH JUDICIAL DISTRICT |
| A CHILD | § | DENTON COUNTY, TEXAS |

## FATHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS }

COUNTY OF DENTON }

BEFORE ME, the undersigned authority, on this day personally appeared Bob R. Whitfield, who, being by me duly sworn, in the presence of the under-signed credible witnesses upon oath stated:

" My name is Bob R. Whitfield. My age is 25 years. My address is Clayton House Motel #206, 1111 W. University, Denton, Texas. I am the father of the following child:

Wesley A. Whitfield, a male child born on November 17, 1980, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: None

"The mother of the child is Anna Whitfield, whose address is Twin Lakes Mobil Home Park #179, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of the child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

5467

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in the termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this _____ day of _November_, 1982

_Bob R Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature

_PO Box 2186, Denton, Tex_
Address

_Geraldine McColley_
_Randy Whitfield_
Signature _PO Box 2136, Denton_
_Clayton House #_
Address _206 Denton_

SUBSCRIBED AND SWORN TO before me by the said _Bob R Whitfield_
_____, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this _____ day of _November_, 1982, to certify which witness my hand and seal of office.

_Marie Schmit_
Notary Public in and for the State of Texas

My Commission Expires:

5468

NO. 82-3081-A

FILED
'33 APR -6 AM 10: 44

DISTRICT CLERK, TEX.
BY_DENTON COUNTY,  DEPUTY

IN THE INTEREST OF    X        IN THE DISTRICT COURT

WESLEY A. WHITFIELD    X        DENTON COUNTY,  TEXAS

A CHILD    X        16TH JUDICIAL DISTRICT

<u>MOTION PURSUANT TO TITLE 2, CHAPTER 18 OF THE</u>

<u>TEXAS FAMILY CODE - - SECTION 18.01</u>

TO THE HONORABLE JUDGE OF SAID COURT.

Now come the Texas Department of Human Resources, movant herein, and files this motion requesting the Court to review the conservatorship appointment of movant and the placement of the Child in Foster Care.

I.

Movant was appointed managing conservator of Wesley Whitfield, the Child who is subject of this suit by an order of this Court entered on 11-30-82.

II.

Movant says that the following persons are entitled to notice of the hearing requested herein:

(1).  PARENTS - The father has executed a voluntary relinquishment of parental rights which contains a waiver of citation.  The mother, Anna Whitfield, 3818 West University, Denton, Texas  76201.

(2).  FOSTER PARENTS - The foster parents are not named herein as movant believes that the foster parents want to remain anonymous.  Movant will provide the foster parents notice of the hearing as required by law and will show the Court proof of such notice at the  time of hearing.

(3)  ATTORNEY AD LITEM FOR THE CHILD:  John Lawhon, Attorney Ad Litem, P. O. Box 44, Denton, Texas  76201.

(4).  OTHER PERSONS - None

III.

The movant says that the present placement of the Child is in the best interests of the Child  in that the placement is meeting the needs of the Child.

IV.

Movant requests that the attendance of the Child not be required at the hearing.

**5469**

V.

Movant further says that the plan  is to continue foster care until the home situation can stabilize to return the Child.

Wherefore, premises considered, movant prays that the Court set a time and place for a hearing to review the conservatorship appointment of movant and the placement of the Child and that notice of the hearing requested herein be served on the person identified above who are entitled to notice and that after such hearing the Court order such relief as is in the best interest of the Child who is subject of the suit.

Respectfully Submitted,

_____
Assistant Criminal District Attorney
Denton County, Texas
Attorney for Movant
State Bar No. 04443600

## NOTICE OF HEARING

A hearing  on the above and foregoing motion filed pursuant to Chapter 18, Texas Family Code is set for ~~nine~~ 9:00 o'clock A.M. on April 26, 1983, in the courtroom of the Court located  in the Carroll Courts Building, 401 W. Hickory, Denton, Texas.

The attendance of the Child is waived by the Court.

SIGNED this 6TH day of ~~March~~ APRIL, 1983.

_____
JUDGE PRESIDING
District Court, Denton County, Texas

5470

NO. 82-3081-A

| IN THE INTEREST OF | X | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

## ORDER PURSUANT TO CHAPTER 18, TEXAS FAMILY CODE

On this 26 th day of ___April___, 1983, came on to be heard the motion filed by the Texas Department of Human Resources pursuant to Chapter 18, Section 18.01, Texas Family Code.

The Court having heard the pleadings, evidence and argument of counsel is of the opinion and finds:

1.  That it has jurisdiction over the subject matter of this suit under the Texas Family Code.

2.  That all persons entitled to notice of this hearing have been mailed notices of this hearing as required by law when such person's addresses were known to Movant.

3.  That the appointment of the Texas Department of Human Resources as managing conservator of the Child is proper.

4.  That the current placement of the Child is a suitable placement.

It is therefore the Order of the Court that the appointment of the Texas Department of Human Resources as managing conservator of the Child shall continue and the current placement of the Child is approved.

SIGNED this 26th day of April , 1983.

_Jack Gray_
JUDGE PRESIDING

_I have read and understand the approval
of this letter
Anna Whitfield_

5471

Case 4:19-cv-00152   Document 1-1   Filed 02/22/19   Page 115 of 533   PageID 11459

DEC 2 1982

CAUSE NO. 82-3081-A

| IN THE INTEREST OF | X | IN THE DISTRICT COURT OF |
| WESLEY A. WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

- - -

## TEMPORARY ORDERS

On the 19th day of November, 1982, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, did appear and was represented by Michael Whitten, her attorney.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

NAME: Wesley A. Whitfield
SEX: Male
PLACE OF BIRTH: Denton, Texas
DATE OF BIRTH: November 17, 1980
PRESENT RESIDENCE: Denton County, Texas

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that there is a continuing danger to the physical health and safety of the Child if the Child is returned to the mother, and that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

The Intervenor is also ordered to allow the mother to visit with the Child

5472

- 2 -

at reasonable times, all of such visits to be supervised by the Intervenor's representative.

The Court finds that the mother, Anna Whitfield, needs psychological counselling, parental training and drug abuse counselling.

IT IS THEREFORD ORDERED that Intervenor's representative arrange such counselling to the extent that such services may be available without cost to Anna Whitfield.  Anna Whitfield is hereby ordered to attend such counselling as arranged by Intervenor's representative.

John Lawhon is hereby continued as Attorney Ad Litem to represent the interest of the Child.

No Order for child support is made at this time..

Signed this 30 th day of November, 1982.

_____
JUDGE PRESIDING

5473

NO. 82-3081-A

IN THE MATTER OF THE MARRIAGE OF

ANNA WHITFIELD AND BOB R. WHITFIELD X      IN THE DISTRICT COURT

AND

IN THE INTEREST OF

WESLEY ALLEN WHITFIELD
AND                    X      16TH JUDICIAL DISTRICT

RANDY WHITFIELD

THE CHILDREN          X      DENTON COUNTY, TEXAS

- - -

ORIGINAL PETITION IN A FIRST
AMENDED INTERVENTION IN A SUIT
AFFECTING THE PARENT-CHILD RELA-
TIONSHIP -- TERMINATION PETITION
AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this intervention. Intervenor maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

I.

This Court has continuing jurisdiction of this suit affecting the parent-child relationship.

II.

The following Child is the subject of this suit:

NAME: Wesley Allen Whitfield
SEX: Male
DATE OF BIRTH: 11-17-80
PLACE OF BIRTH: Denton, Texas
RESIDENCE: Denton County, Texas

Wesley Allen Whitfield will hereinafter be known as the Child.

III.

That the mother of the Child is Anna Marie Whitfield; date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

IV.

There are no other than the temporary ordered court-ordered conservator-ships, guardianships, or other court-ordered relationships affecting the Child in this suit.

5474

- 2 -

V.

The Child neither owns or possesses any property.

VI.

Pursuant to Chapter 17, Texas Family Code, Petitioner was appointed temporary managing conservator of Wesley Allen Whitfield.  Petitioner says that it is in the best interest of this Child for this appointment to continue.

VII.

Petitioner alleges that termination of the parent-child relationship between each of the parents and the Child would be in the best interest of the Child, as provided by Section 15.02, Texas Family Code.  As grounds for termination, Petitioner alleges that each of these parents have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return and each of these parents have executed an irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03, Texas Family Code.

In addition to the above grounds, termination of the parent-child relationship between each of the parents and the Child is in the best interest of the Child.

Petitioner alleges that its continued appointment as temporary managing conservator and managing conservator would be in the best interest of the Child and requests the Court to continue this appointment as provided by the Texas Family Code.

Petitioner requests the Court continue its authorization for petitioner to consent to such medical or surgical care as may be required by this Child pending a hearing on this petition.

Petitioner requests the Court to continue John Lawhon as Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10 (d), Texas Family Code.

5475

VIII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

Respectfully submitted

- 3 -

STATE OF TEXAS      )
                    )
COUNTY OF DENTON    )

The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

_Beverly Basden_
Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 11th day of May, 1983.

_Jim E. Schmit_
Notary Public, in and for Texas

My Commission Expires: _8-16-84_

5476

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD, | X | 16TH JUDICIAL DISTRICT |
| A CHILD | X | DENTON COUNTY, TEXAS |

### MOTHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS      )
                        )
COUNTY OF DENTON        )

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Wesley A. Whitfield, a male child born on November 17, 1980, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is 304 South Ruddell, Phoenix Apartments #85, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child

5477

relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in the termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 29th day of April, 1983.

_Anna Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature

_Geraldine Polley_
Signature

_Courthouse on the Square_
_Denton, Texas_
Address

_Courthouse on the Square_
_Denton, Texas_
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 29th day of April, 1983, to certify which witness my hand and seal of office.

_Joan E. Schmidt_
Notary Public, in and for the State of Texas

My commission expires:

_8-16-84_

5478

AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

NO. 7-A-84

IN THE INTEREST      S      IN THE DISTRICT COURT

OF      S      DENTON COUNTY, TEXAS

TWO CHILDREN      S      16th JUDICIAL DISTRICT

## FINAL ADOPTION DECREE

On the 2nd day of March, 1984, a final hearing on the merits was held in the above numbered and styled cause. Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN (hereinafter called "Petitioners") appeared in person and by attorney and announced ready for trial. The Texas Department of Human Resources, Managing Conservator of the children who are the subjects of this suit, having filed with the Court a written consent to adoption containing a waiver of citation and process in this suit, did not appear. All issues of fact and of law were submitted to the Court.

The Court, having considered the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this suit and over all parties to the suit; that all persons entitled to citation were duly and properly served with citation or have waived citation in the manner provided by law; that this cause has been set for hearing and a social study filed as required by law; that the children who are the subjects of this suit (hereinafter called "the children") are a male child born on September 13, 1977, in McKinney, Collin County, Texas, and a male child born on November 17, 1980, in Denton, Denton County, Texas; that the parent-child relationships formerly existing between the children and each living parent of the children have been terminated in prior judicial proceedings; and that this Court has acquired continuing, exclusive jurisdiction over the children and of this suit affecting the parent-child relationship with respect to the children.

The Court further finds that the children have lived for a period in excess of six months in the home of Petitioners; that the children's Managing Conservator has given written consent to the adoption, such written consent having been filed in the record

of this suit; that the material allegations contained in Petitioners' pleadings are true; that all requirements and prerequisites of law have been satisfied; that the children are proper subjects for adoption and suited to the home of Petitioners; that the home of Petitioners is suitable for the children; that the children were residents of the State of Texas at the time this suit for adoption was filed and are citizens, by birth, of the United States of America; that it is in the best interest of each child that the children be adopted by Petitioners; that it is in the best interest of the older child that his name be changed to RANDY ETHAN HALPRIN; and that it is in the best interest of the younger child that his name be changed to WESLEY DORAN HALPRIN.

It is, therefore, ORDERED, ADJUDGED and DECREED that Petitioners' request to adopt the children be and it hereby is granted; that the name of the older child be and it hereby is changed to RANDY ETHAN HALPRIN; that RANDY ETHAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; that the parent-child relationship now exists between the child RANDY ETHAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage; that the name of the younger child be and it hereby is changed to WESLEY DORAN HALPRIN; that WESLEY DORAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; and that the parent-child relationship now exists between the child WESLEY DORAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage.

It is further ORDERED that the Clerk of this Court transmit to the Texas Department of Human Resources certified copies of the petition and Final Adoption Decree in this cause, and the Texas Department of Human Resources is hereby ORDERED to close the records concerning the children and, except for statistical purposes, not to disclose to anyone any information concerning proceedings affecting the children.

It is ORDERED that the State Registrar of the Bureau of Vital Statistics at Austin, Texas, issue a new birth certificate for each child as provided for by the laws of the State of Texas.

It is further ORDERED that the Clerk of this Court seal the minutes of the Court and the complete file in this case, including all pleadings, papers, studies and records, so that no person shall have access to such minutes, to such file, or to any information contained therein.

It is further ORDERED that all costs of Court be and they hereby are taxed to Petitioners.

It is further ORDERED that all relief requested in this cause and not expressly granted herein is hereby denied.

SIGNED this 2nd day of March, 1984.

JUDGE PRESIDING

5481

No. 7-A-84

| IN THE INTEREST | § | IN THE DISTRICT COURT |
| OF | § | DENTON COUNTY, TEXAS |
| TWO CHILDREN | § | 16th JUDICIAL DISTRICT |

## CONSENT TO ADOPTION AND WAIVER OF CITATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the undersigned, Managing Conservator of the children who are the subjects of this suit, and hereinafter called "your Managing Conservator," and would show the Court as follows:

1.

Your Managing Conservator is the Texas Department of Human Resources, whose mailing address is 308 E. 4th Street, Fort Worth, Texas 76102.

2.

Your Managing Conservator acknowledges receipt of a copy of Petitioners' Original Petition for Adoption filed in the above numbered and styled cause on behalf of Petitioners Daniel Nathan Halprin and Patricia Anne Brannick Halprin. Your Managing Conservator waives the right to issuance, service, and return of citation and all other process in the above numbered and styled adoption suit, agrees that Petitioners may amend their pleadings at any time without notice to your Managing Conservator, agrees that hearings may be held in the above numbered and styled adoption suit at any time without notice to your Managing Conservator, specifically agrees that a final hearing on the merits may be held at any time without notice to your Managing Conservator, waives the making of a record of the testimony and proceedings at all hearings in the above numbered and styled adoption suit, and requests that The Edna Gladney Home, an authorized agency licensed by the Texas Department of Human Resources to place children for adoption, prepare the required social study in the above numbered and styled adoption suit.

3.

The children who are the subjects of the above numbered and styled suit are Randy Lee Whitfield, a male child born in McKinney, Collin County, Texas, on September 13, 1977, and Wesley Allen

5482

Whitfield, a male child born in Denton, Denton County, Texas, on
November 17, 1980. The maiden name of the children's mother by
birth is Anna Marie Hammons. Petitioners Daniel Nathan Halprin and
Patricia Ann Brannick Halprin desire to adopt the children. It is
in the best interest of each of the children that the children be
adopted by Petitioners. Your managing conservator consents to
adoption of the children by Petitioners.

4.

Your Managing Conservator certifies that the children who are
the subjects of this suit were subjects of Cause No. 82-3081-A, In
the District Court, Denton County, Texas, 16th Judicial District, in
which cause the parent-child relationships between the children and
each living parent of the children were judicially terminated.

SIGNED this _____ day of _____, 1984.

THE TEXAS DEPARTMENT OF HUMAN RESOURCES
308 E. 4th Street
Fort Worth, Texas 76102
(817) 335-5171

By: _____
Helen Grape, Program Director,
Tarrant County Child Welfare Unit

THE STATE OF TEXAS          §

COUNTY OF TARRANT           §

BEFORE ME, the undersigned authority, on this day personally
appeared the undersigned affiant who, having been by me first duly
sworn, upon oath stated:

"My name is Helen Grape. I am Program Director of the Texas
Department of Human Resources, and am authorized to execute the
above and foregoing instrument entitled 'Consent to Adoption and
Waiver of Citation' in that capacity. The facts stated in the above
and foregoing instrument are true and correct. I have executed the
above and foregoing instrument for the purposes and consideration
expressed therein and in the capacity stated therein."

_____
Helen Grape, Affiant

SWORN TO, SUBSCRIBED, AND ACKNOWLEDGED BEFORE ME on the ____
day of _____, 1984, by Helen Grape, Program Director, the
Texas Department of Human Resources.

[ S E A L ]                    _____
                               Notary Public in and for the State of Texas

                               Notary's name printed or typed:
                               _____

My commission expires:
____-____, 1984.

5483

NO. 7-A-84                    1984 JAN 25 AM 9: 14

| | | |
|---|---|---|
| IN THE INTEREST | S | IN THE DISTRICT COURT |
| OF | S | DENTON COUNTY, TEXAS |
| TWO CHILDREN | S | 16th JUDICIAL DISTRICT |

## ORIGINAL PETITION FOR ADOPTION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN, Petitioners, and file this, their Original Petition for Adoption, and would respectfully show the Court as follows:

1.

This Court has acquired continuing jurisdiction of this suit and of the children who are the subjects of this suit.

2.

The children who are the subjects of this suit are a male child born in McKinney, Collin County, Texas, on September 13, 1977, tentatively named Randy Lee Halprin by Petitioners, and a male child born in Denton, Denton County, Texas, on November 17, 1980, tentatively named Wesley Allen Halprin. The children will have lived in the home of Petitioners for more than six months on the date of the final hearing of this suit.

3.

Petitioner DANIEL NATHAN HALPRIN is 35 years of age. Petitioner PATRICIA ANNE BRANNICK HALPRIN is 31 years of age. Petitioners are married and reside together in Tarrant County, Texas. Petitioners' mailing address is 4015 Glenbrook Drive, Arlington, Texas 76015. Petitioners are not related to the children by birth.

4.

Petitioners have been informed by the children's managing conservator that no legal parent-child relationships exist between the children and any person.

5.

The children were placed in Petitioners' home for adoption pursuant to an agreement between Petitioners and the children's

5484

managing conservator, acting with assistance from The Edna Gladney Home, a non-profit, charitable corporation organized under the laws of the State of Texas and licensed by the Texas Department of Human Resources to place children for adoption. The children's managing conservator is the Texas Department of Human Resources. The main office and legal residence of The Edna Gladney Home is situated in Tarrant County, Texas, and its mailing address is 2300 Hemphill Street, Fort Worth, Texas 76110.

6.

To the best of Petitioners' information and belief, no guardians of the children's persons or estates have been appointed, no possessory conservator or other person has access to the children under an order of any court, and the children do not own or possess any substantial property.

7.

Since the children have been in their home, Petitioners have treated the children with the same love and affection as if the children had been their own by birth. Petitioners desire to adopt the children. Adoption of the children by Petitioners is in the best interest of each child. It is in the children's best interest that their names be changed to RANDY ~~LEE~~ HALPRIN and WESLEY ~~ALLEN~~ HALPRIN.

*ETHAN POH ~~DH~~      DORAN POH ~~DH~~*

8.

**5485**

Petitioners expect the children's managing conservator to execute and file with the Court a written consent to this adoption prior to the final hearing in this suit.

WHEREFORE, premises considered, Petitioners pray that all parties entitled to service of citation, if any, be duly cited to appear and answer herein; that, on final hearing, the Court render a final adoption decree granting Petitioners' request for adoption, declaring the children to have been duly adopted by Petitioners so that the parent-child relationship will exist between Petitioners and the children as if the children had been born to Petitioners and changing the children's names to RANDY ~~LEE~~ HALPRIN and WESLEY ~~ALLEN~~ HALPRIN, and for such other and further relief, at law or in

*ETHAN POH ~~DH~~*

*DORAN POH ~~DH~~*

equity, to which Petitioners may be justly entitled.

WYNN, BROWN, MACK, RENFRO & THOMPSON
1200 Oil & Gas Building
Fort Worth, Texas 76102-6976
(817) 335-6261 Metro: 429-0551

By: _____
Susan I. Paquet, State Bar of
Texas Id. No. 15455600

ATTORNEYS FOR PETITIONERS

THE STATE OF TEXAS      §

COUNTY OF TARRANT      §

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiants, who, having been by me first duly sworn, upon oath stated:

"We have read the above and foregoing pleading to be filed on our behalf. The facts stated therein are true and correct. We authorize the filing of such petition on our behalf by the law firm of Wynn, Brown, Mack, Renfro & Thompson, Fort Worth, Tarrant County, Texas.

"During the time the children we have tentatively named RANDY LEE HALPRIN and WESLEY ALLEN HALPRIN have been in our home, we have had the children examined by a physician or pediatrician of our choice. We are well satisfied with the children's physical, mental, and emotional development and with their adjustment to our home. We desire to adopt the children."

_____
DANIEL NATHAN HALPRIN, Affiant

_____
PATRICIA ANNE BRANNICK HALPRIN, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME by the Affiants on this _11_ day of _January_, 1984, to certify which witness my hand and seal of office.

_____
Notary Public in and for the State
of Texas

[S E A L]

My Commission Expires:
_____, 19___

5486

| HAMILTON, | Richmond | Lee | Adoption Control Card |
|---|---|---|---|
| Last Name | Given Name | Man | Dept. of Public Welfare |
| | | | Child Welfare Division |
| | Karen | Ruth | Form #209 |
| Maiden Name | Given Name | Woman | |

Address    514 Sparks, Grand Prairie, TX. 75051   Dallas      264-4015
           Street   Route & P.O. Box No.   Town      County      Phone

Race-Nationality   Anglo          Anglo      Birthdate: 9-16-43   3-10-46
                   Man            Woman                  Man      Woman

Date of Inquiry _____          Date of Application 3-18-83

| Children | Male | 5-25-70 |
|---|---|---|
| Own or | Sex | Birthdate |
| Adoptive | Male | 4-10-73 |
| | Sex | Birthdate |

MAY 05 1983

| | Sex | Birthdate | |
|---|---|---|---|
| Chn. Requested | 01 | 7-10 yrs. | Female |
| | Number | Age Range | Sex |

Screened _____          Decision _____

Remarks:

5487

STUDY PROCESS

Joint Interview
Individual Interviews
Home Visit
Decision
                    Approved          Rejected

Profile Submitted
Placement Date                        215 Submitted
Children
Placed          Yes                   For Cahic        No


Supervisory Visits

Petition Filed                        Court Report
Adoption Granted                      215 Submitted
Corrected Birth Certificate
Obtained by Atty.
                                      Case Closed

5488



NHP

A
Waiting Family
Dan and Pat Halprin

For: Weseley and Randy

The New Hope Program
2110 Hemphill
Fort Worth, Texas
(817) 926·3304

5489

DATA ON ...
7-52-83

PAT. HALPRIN. SALARY                                       34,500

INVESTMENTS:
    BELMONT STOCK                                          15,000
    BOWMAR STOCK                                            5,000
    WCNA STOCK                                              3,000
    TEXAS INSTR STOCK                                       1,000
    U.S. SAVINGS BONDS                                        500
    OTHER BONDS                                             7,000
    IRA (INDIVIDUAL RETIREMENT)                            12,000
    SAVINGS PLAN AT WESTERN                                 5,000
    SAVINGS ACCOUNT                                         5,000
                                                           53,500

LAND:
    EQUITY IN OUR HOUSE                                    35,000
    EQUITY IN RENTAL HOUSE                                 25,000
    LAND IN WEST VIRGINIA                                  25,000
    RENTAL BUILDING IN PENNSYLVANNIA                       35,000
                                                          120,000

AVERAGE YEARLY INCOME FROM DIVIDENDS +                      3,500
    INTEREST
AVERAGE INCOME FROM PA. BUILDING                            2,400

5490

ADOPTIVE HOME STUDY

DANIEL AND PATRICIA HALPRIN
4015 Glenbrook Drive
Arlington, Texas 76015
817-467-5221 (Home)
214-233-9990 (Him)
817-232-7422 (Her)

| September 27, 1982 | New Hope Orientation Meeting |
| August 22, 1982 | Joint Interview-<br>Dan & Pat |
| January 18, 1983 | Group Study Session I |
| January 25, 1983 | Group Study Session II |
| January 31, 1983 | Joint Interview-<br>Dan & Pat |
| January 31, 1983 | Individual Interview-<br>Pat |
| January 31, 1983 | Individual Interview-<br>Dan |
| February 1, 1983 | Home Visit |
| February 1, 1983 | Group Study Session III |
| February 8, 1983 | Group Study Session IV |

Linda Allen
Adoption Worker

5491



Dan & Pat Halprin

ADOPTIVE HOME STUDY                                                Page 1
FAMILY:  Dan and Pat Halprin

## INTRODUCTION

Dan and Pat have been discussing adoption for the last few years.  Both enjoy children, feeling that at this time in their lives they are ready for parenthood. They feel that they have accomplished those financial goals that they had established before beginning their family, as well as feeling that their independent and implusive lifestyle concerning their wants and desires have been settled.  Both feel that they have always maintained a semblance of family living  due to their interests, but are  eager to share their environment with children.  Pat and Dan contacted the agency in August 1982, concerning their desires to adopt.  They scheduled a joint interview with the New Hope Program to discuss various aspects of adopting an older child.  They feel that at their first introduction both were apprehensive and hesitant due to their fears as to whether or not they could handle children who had been exposed to abusive and neglectful backgrounds.  They felt that those fears were eliminated. From their first interview through the entire adoption home study,  Pat and Dan were enthusiastic, open and honest in sharing their hopes, fears and honest feelings toward the various aspects of adopting special needs children.  Their application was completed and returned on September 5, 1982.  They completed thorough autobiographies that shared their honest opinions of themselves and their past experiences.  They attended the Orientation meeting on September 27, 1982.

Dan and Pat feel the adoption home study to be very enlightening, giving them tremendous food for thought in parenting philosophies in general.   They do feel they have been adequately prepared to pursue their adoption.

Dan and Pat are residing in a new subdivision in a semi-rural area.  They have a large traditional brick home that is ideally located near schools, community resources, parks and recreational centers.  Their neighborhood has numerous children ranging in age from one year to teenagers.  Within their home they have a master bedroom with dressing area and a full bath.  They have three additional bedrooms with one bedroom being used at this time as Dan's office.  They have one additional full bath that would be used by the children and any guest that they might have. Their home is tastefully furnished in contemporary decor, displaying many beautiful pieces of art work and Dan's photography.  They have a large fenced-in back yard that does have a swimming pool.  Their home is within walking distance to an elementary school.  The upper grade level schools are within one to five miles from their home. They are in an area that the children do attend schools in their neighborhood and are

ADOPTIVE HOME STUDY
FAMILY: Dan and Pat Halprin

not bussed to other areas of Arlington.  Dan and Pat stated that there are playgrounds near them that are located at the elementary school.  They both stated that one of the favorite playground equipment in the neighborhood is located at their neighborhood McDonalds.  They have adequate shopping areas near them with plans to complete a shopping mall within the next two years.  Pat described excellent day care centers in their neighborhood, feeling that any pre-schooler they might adopt would attend "Homemade Happiness".  This is a particular day care center where several of their friend's children are attending.  They feel that this particular school sounds inviting to them due to the fact that their friends' children recommend this school highly because they enjoy spending their day with the staff and participating in the activities available to them.

The Halprins attended the Group Study process which dealt with various aspects of adopting children with special needs.  The sessions were held on four consecutive Tuesdays, from 7:00 in the evening to 9:00 in the evening. The first session dealt with a panel of adoptive families.  The panel consisted of a good cross section of adoptive families who had adopted children with special needs. The children were bi-racial, severely handicapped and emotionally disturbed.  The panel shared their experiences concerning the adoption home study experience, explaining the fears that they had surrounding adoption.  They discussed their formulating their feelings to determine the child that they envisioned being placed in their home. They shared their child or children's placement with the group.  The majority of the time, the families spoke of their adjustment as well as the adjustment of the child or children had in their new environment.  The families emphasized that during the first three or so months that "no matter what behavior a child displays, the child wants a permanent home".  They stated that the child really wants to be loved and wants to be accepted by his new parents.  They spoke of the negative attitudes that may be encountered in their respective families, in their community, neighborhood and within their own church home.  The panel did cite several positive experiences as well, particularly concerning how helpful and supportive they had found some people to be.  The panel stressed using the agency as a support system, or enlisting the use of a therapist if the family deemed treatment as being necessary.  The panel discussed their encounters with school personnel, the community resources available to adoptive parents and how to prepare a life book.  Discipline and parenting philosophies were discussed in the second group session.  The type of discipline that is most effective in handling an abused child was the main focus of this session.  The third session was surrounding the sexually abused child and understanding those who abuse their children.  The child that has been physically abused and

ADOPTIVE HOME STUDY                                             Page 3
FAMILY:  Dan and Pat Halprin

neglected was also discussed.  During the group study process, discussion surrounded
breakdowns, with a great amount of feedback coming from the group.  The group study
process was taken from the philosophies and guidelines established in the TEAM
Training.  Pat and Dan Halprin seemed eager to learn and were active in their
participation in the group study process.

ADOPTIVE FATHER

    Dan Halprin is a sensitive and warm individual who at first leads you to believe
that he is reserved.  He soon becomes outgoing, talkative and never hesitates in
stating his honest feelings.  He is an open individual who is said to be impulsive at
times by his wife.  She feels that he gets enthusiastic and sometimes impatient, which
does not allow him enough thought to the consequences concerning a decision he makes.
He is described by Pat as an organized person who is persistant and assertive.  Dan
is stocky, over weight, but it is surprising to learn that he weighs 270 pounds from
his overall appearance.  He is 6' tall with a large bone structure.  Dan is an interesting
man who is well read.  He is intelligent, creative and said to be very talented in
his employment.  Dan has progressed at a steady pace in his employment, stating that
he worked hard for five years only to find that he did not enjoy management after
being promoted to this position.  He describes himself as a salesman who finds great
satisfaction in his current position.  Dan is a collector of things, particularly if
there is any sentimental meaning attached to the object.  As a youngster he collected
and saved a Science magazine thinking that his children might enjoy them.  Dan still
has those magazines today.

    Dan felt that he had a normal childhood, but like some people, does have
regrets.  He desired a closer relationship with his father.  Dan was closer to his
mother primarily because his father traveled.  As the oldest of three children in
his family, he was given more responsibility than his two younger siblings.  He
described greater expectations placed on him than his two younger siblings.  He
felt that this did contribute to his rebellious nature during his teens.  In retro-
spect, Dan feels that his experience in the military service helped him greatly in
maturing and in eliminating his rebellious nature.  Dan's parents were strict in
the disciplinary measures used on him.  He feels that he would not be as strict
as his parents and knows that he would not place as great an expectation on his
children.  Dan and his brother are close in their relationship.  His brother has asked
several times about their plans for adoption and is thrilled with their decision.
Carol, Dan's sister is aware of the adoption plans but has said nothing.  Dan said
that she is an extremely difficult person who is very negative about anything and

5495

Page 4

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

everything.  They have little contact with one another as does Mike, Dan's brother.
Carol has not accepted Pat into the family because she is not Jewish, but Dan stated
that if Pat were Jewish, she probably would not accept her into the family.  Dan
described her as a bitter woman who is very unhappy.

Dan is described by friends as being hard working and industrious.  He is said
to be a compassionate individual who is helpful and giving to others.  He is well
liked and a respected individual in the community.  Dan is active, enjoying many
hobbies and interests.  He enjoys electronics, photography, reading, swimming and
camping.  He is an avid amature radio operator, having had this hobby since his
teen years.

ADOPTIVE MOTHER

Pat Halprin is a neat, well groomed woman who dresses in a conservative
fashion.  She is a highly intelligent woman who does appear to be very patient and
tolerant of others.  She describes herself as having a reserved and quiet personality
particularly when she is compared to Dan.  Dan feels that Pat has changed since they
first met because she is much more outgoing in personality.  Dan obviously loves and
respects Pat and is very complimentary toward the excellent judgement she demonstrates.
She is described as an individual who is very analytical and logical in nature.
Pat was reared on the East Coast in what she refers to as a "typical Irish Catholic
family".  She recalls a great deal of drinking, feeling this was they way it was
supposed to be.  The amount of alcohol consumption certainly seemed accepted in the
neighborhood.  It was only until her teen years that she realized the amount of
drinking that she was observing was alcoholism.  Her father, at this stage of her
life began drinking to the point of passing out.  She felt very uneasy, finding
that she felt such discomfort that she was unable to bring her friends to their
home.  She stated that her father is not drinking as much since his retirement.  She
has found that his drinking and the drinking of others in her family has made her
very cautious about  her own consumption of alcohol.  She is fearful that her older
brother Bill has a drinking problem.  Pat's relationship with her parents is
healthy, with no problems reported.  They have relatively frequent phone contact,
but due to the distance away from one another, their visits are few and far between.
Pat does not describe their relationship as being close and confiding.  She does
feel that she has a close and confiding relationship with Dan, who "is a fantastic
listener".  Pat is closest to her younger brother, speaking very fondly of him
several times throughout the home study.  Pat and Dan have offered their home to
him if he chooses to attend the University of Texas at Arlington.  Dan is used by
Patrick for adivce and a sounding board for his problems.  Other than the time

5496

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

during her teens surrounding Pat's father's drinking, she has had very positive
live experiences.  She had close friends, was well above average in academic performance
and was respected by most who knew her.  Pat seems to view herself in a very positive
way and seems to be one who has a good self-image.  Pat has excelled as a computer
programmer, enjoying her current position with Western.  In a casual manner she mentioned her
talent in programming being sought after by other companies.

Pat describes only two major hobbies that she does without being in the
company of Dan.  She enjoys reading and sewing, although her work and activities with
Dan limit her participation.

COURTSHIP AND MARRIAGE

Dan and Pat were first introduced to one another during Pat's second day
on the job at Westinghouse in Tampa, Florida.  She had just graduated from college
accepting her first job in a city where she knew no one.  Their introduction to
one another occurred on March 5, 1974 which was the beginning of a lengthy four
year courtship.  Pat was first attracted to Dan because he was nice, friendly and
very gentle in nature.  She joked about his occasional informal dating pattern of
dropping by her apartment because he "was in the neighborhood".  Pat stated that the
location of her apartment was such that it was impossible to simply "drop by".  She
stated that a concentrated effort had to be made to drive to her apartment, knowing
full well that Dan wanted to visit her, and was not just in the area.  Dan stated
that he knows he was attracted to Pat but can only think of her eyes as something
of specific attraction.  The Halprins feel that courtship definitely prepared them
for marriage.  The delay in their marriage was due to their respective religious
faiths being different.  Dan is Jewish and Pat is Catholic.  Dan realized that this
was truly not a major issue with him, choosing to marry.  They were married on
May 21, 1978 in New Brunswick, New Jersey.  They stated that dealing with this issue
of their differing religious backgrounds has been the largest hurdle that they have
faced in the eight years that they have known each other.  Both feel that they had
the usual adjustments that needed to be worked through as does anyone when you
live together.  Dan found that Pat could be really stubborn, while Pat found Dan to
be set in his ways.  After discussion surrounding a conflict a resolution that is
acceptable by both is made.  Both described themselves as being ones who do not
harbor grudges or allow a situation that bothers them to go very long without discussion.
Both found that thus far in their relationship that the reason for their conflicts
surround minor and insignificant matters.  They feel their relationship is based on
love and respect for each other.  Both are giving individuals which eliminates some

Page 6

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

conflicts due to their easy-going personalities.  The Halprins definitely feel that they compliment one another in their individual personality make-up.  Dan appreciates Pat's special quality of logic and analytical nature.  Pat loves Dan's sense of humor. They do feel that if they could change something about the other that Dan would want Pat to not be as stubborn while Pat would want Dan to think through, particularly surrounding the consequences before making a decision.  They feel that because of their respective personality traits that they offset one another.  In making decisions Pat will complete the research, exercising logic and using her analytical nature while Dan will proceed with the action that is necessary.  The Halprins gave an example of the process they used in deciding on adoption - she spoke of the research on adoption with agencies, private sources, etc.  After discussion, they decided to pursue several agencies.  Dan wrote the letters and placed the phone calls.  Afterward they discussed the results of the action that Dan took.  During the adoption home study and the group study process, they have had discussion in depth surrounding all they have learned.  Both described the happiest time in their marriage thus far being when they moved to Texas.  Since moving here, they have found satisfaction in their new home and neighborhood.  Both stated that while living in Minnesota that they had a lot of stress they had been subjected to and was eliminated when they moved.  Dan and Pat had both physically not felt well with both learning later that they were suffering from formaldehyde poisoning.  When their home was sold, it was described as having the insulation that caused their formaldehyde poisoning. The harsh winters and Pat being in school added stress on them.  They do view that period of time as the most difficult and unhappiest time in their marriage.  The Halprins have definite goals in their marriage that they are working toward as a couple other than always striving for perfection in their marriage.  Currently they are working toward adopting children, greater financial security, the completion of remodeling their home and Dan completing his Bachelor's Degree in Engineering from UTA.  Dan and Pat feel that there is nothing specific that needs improvement in their marriage.  They do feel that it is important to them to work through difficulties as they are encountered which eliminates the possibility of major problems occurring.  As mentioned earlier, Dan and Pat had a lengthy courtship due to their religious upbringings being so different.  Since their decision to marry, the only problem of any significance that they can recall that was somewhat stressful was the marriage ceremony itself.  The Halprins encountered great difficulty in finding someone who would complete the marriage ceremony itself.  Both felt strongly that they were married by an individual who was affiliated with a religious

5498

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

institution rather than a Justice of the Peace.  They jokingly referred to their
marriage ceremony being relatively different and not particularly traditional.
They immediately encountered the Catholic Priest refusing to marry them due to
Dan being of the Jewish faith.  They found the Rabbi to refuse the ceremony due to
Pat's Catholic faith.  Dan contacted a close friend that he refers to as being
the "radical Rabbi" who eagerly accepted the commitment of the marriage ceremony.
Dan stated that the friend who acted as best man in the ceremony was Quaker in
his religious faith and the bridesmaid was Presbyterian.  They were married at
Rutgers University  in the alumna building.  They also stated that their marriage
license was particularly interesting in that those who signed the license had
to learn their signature in Hebrew.  The Halprins feel that due to their lengthy
courtship they knew one another well enough that this did assist them in eliminating
problems that many other young couples find.  The Halprins have been accepted
by their respective families with only one relative not accepting Pat into the
family.  As mentioned earlier in the study, she apparently is an extremely difficult
person that does not get along well with any of the family members.  The Halprins
at no time in their marriage have sought marriage counseling.  They do feel that
in the event a conflict would arise that required the help of an objective outsider
that they would not hesitate in contacting a therapist.

FINANCIAL INFORMATION
     Dan has an annual income from his employment with John Fluke Manufacturing
Company of $22,000.00.  As a Programmer and Analyst for the Western Company,
Pat's annual income is $34,500.00.  Through other income due to their investments,
they list $22,500.00 as additional income.  Their total annual income is $79,000.00.
The Halprins are very comfortable financially, feeling that they will not need
a subsidy.  They have adequate hospitalization through their group policies at
their respective companies.  Their outstanding debts are on their home mortgage,
the mortgage on rental property and their car payment.  They are relatively
conservative in their spending, finding that they do not need to follow a budget,
but hold discussion surrounding investments that are made on a monthly basis.

RELIGIOUS INFORMATION
     The Halprins plan to expose their child or children to both of their
respective religious faiths.  They will participate as a family in weekly attendance
at the Synagogue or Pat's church home.  They gave an example of their flexibility

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

in celebrating both Hanukkah and Christmas.  Dan has been active in the Synagogue
teaching Sunday School with Pat participating in other activities in the Synagogue.
They feel that their main concern is not with the specific religious faith that
the children have, but that he or she reach adulthood practicing high moral standards.
They also want the child to have a strong belief in a higher being.  They do feel
that they would take a child to his particular religious faith if the child had
strong feelings, but would also expose the child to activities within the Synagogue.

MOTIVATION TO ADOPT

        Dan and Pat's thoughts turned to the idea of adoption several years ago.
Both had a strong desire to experience parenthood, wanting a family very badly.
They found it relatively easy to accept their inability to have children with
neither having great difficulty.  Both felt that they individually had a great
deal to offer a child, accepting the idea of adoption within a short length of time.
They desired a child over a year old due to both of their working schedules,
seeking an agency that dealt with older children.  Dan and Pat are aware that older
children would have special needs with this not being a great concern of theirs.
Both have confidence that they can deal with a special needs child and any problem
that might arise.  They do feel that they would not hesitate in seeking professional
help in the event they felt it was necessary.  Since their thoughts turned to
adopting a special needs child, both have read several books to help them be more
aware of the problems surrounding the adoption of an older child.

FEELINGS ABOUT A CHILD'S PAST/TALKING WITH THE CHILD

        Dan and Pat feel that because they are hoping to adopt a child under the
age of five, that they have given some thought to how they would tell the child
of his adoption.   Both feel that with the younger child who cannot verbalize his
thoughts, that it will be necessary to use the word "adoption" as a household word.
They do feel that they will answer the child's questions in an honest and open
fashion.  They are aware that there are several childrens books available that
can be read to the child as a bedtime story.  They feel that this is definitely
a useful tool that they would use in helping the child to understand his adoption.
Pat and Dan feel that they have no major fears of adoption, although they do
have some fear concerning their adoption.  They feel that this is primarily brought
about due to a slight fear of the unknown.  Realizing that the child has been
exposed to a neglectful or abusive background does leave them with some fear.  They
do have the confidence to handle a problematic situation in the event it does arise.

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

The Halprins are not aware of any family member other than Dan's sister who holds a negative view toward their adopting children.  Dan and Pat consider adoption a very positive and normal way to have a child or children become part of their family.  Neither Pat or Dan feel that they have to have biological children to experience parenthood, feeling strongly that they have a great deal to offer a child as parents whether the child is biologically born to them or adopted. Dan and Pat are open to visitation with the foster parents of their adopted children as well as contact with members of the child's biological family.  They would certainly ask for advice as to the amount of visitation and how the continued contact should be arranged.

PARENTING PHILOSOPHIES

Dan and Pat have discussed their individual ideas on raising children prior to their contacting New Hope.  Both felt that at the time they decided to begin their family, that they also began picking and choosing those ideas that both were in agreement in raising children.  In formulating their ideas, they have chosen from some of the ways that their respective families handled discipline and from some of the family traditions that left them with fond memories of their upbringing.  Both feel they learned a great deal from the group study process in valuable techniques to use with their children.  They both feel that they will need to strive for consistancy in handling discipline with their children.  Both realize that consistancy is extremely important, feeling that they can, through practice, become consistant in handling the correction misbehavior that their children might do.  They feel that they will exercise isolation and restriction in handling the correction of their children.  Neither believe in spanking a child.  Both expressed understanding of the situation that would cause biological parents to abuse and neglect their children.  They do feel that it is difficult for them to understand as they personally could not strike a child.  They feel that with some of the abusive parents that they are emotionally ill.  They feel that this helps them to  understand the situation better.  In dealing with the child or children's feelings about his past, both feel that the truth must be expressed.  They feel that they will answer the child's questions as briefly as they can.  They do feel that as the child become older, they will be able to furnish more depth and a greater explanation as to the child's questions about his past.  Both feel that it is important for a child to know about his past and to possess an understanding as to why he could not remain in his previous environment.  Individually, Dan and Pat feel that they possess the patience and tolerance necessary in dealing with

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

a child that has experienced physical abuse.  They have confidence in their ability
to deal with the frustrations, stress and strain that is caused on individuals
who adopt children that have some problems.  They do feel that they would seek
professional help if necessary.  Both related that they have found the group study
process to be very enlightening and has helped them tremendously/how to deal with
a child that has been abused.

TYPE OF CHILD REQUESTED

Dan and Pat are accepting of a child or children of either sex.  They have
asked that they be considered for a child five years and younger.  Pat stressed that
she would be able to take a maternity leave in the event an infant or small baby
was placed with them.  Dan and Pat would want to be presented with a baby that
might be high risk due to some major negative in the medical background of the
child.  Both stated that it is their feeling that a baby around four months old would
be ideal for them.  Dan and Pat have asked that we not consider them for an
infant or small baby that is the result of an incestuous relationship.  They are
accepting of a sibling group of two to three children, if they are all around
six years of age or under.  They do feel that they would give consideration to
a child that is handicapped, but would want the opportunity to have discussion before
a final decision would be made.  They find this difficult to formulate their thinking
as to whether they could handle certain problems not knowing of specific situations
that are brought about.  Dan and Pat are very sensitive and understanding toward
a child that has been sexually or physically abused.  They would find no difficulty
in adopting a child or children that have come from neglectful and abusive backgrounds.
They do feel that they would consider a child that was a slow learner or participating
in resource classes in school.  They do not want a child that is retarded or that
would be dependent on them forever.  They did feel that they were again confronted
with questions, citing an example of a next door neighbor who was in special
education classes due to retardation.  They felt that in the event they were confronted
with the possibility/mild retardation, that they would definitely want to have
discussion.  Dan and Pat for several months lived next door to a family who had
adopted a young man named Dave.  He was described as a wonderful young man who was
mildly retarded, participating in special education classes.  They felt that because
of their exprience with Dave that they do feel that as long the child is self-sufficient
and would not be dependent upon them for a lifetime that they would give definite
discussion in accepting the child like Dave.  The Halprins are relatively flexible
concerning behavioral problems that children might have, wanting to again have the

Page 11

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

opportunity to have discussion before serious consideration of the child or children
was given.  They gave examples of their feeling comfortable with a child that is
very demanding, who might be extremely shy and who had a problem with bed wetting.
They are willing to discuss a child that is involved in sexual acting out, extremely
aggressive behavior; one who lies, one with unusual fears and one that might prefer
one parent over the other.  They feel they would have some difficulty in accepting
a child that was destructive or that stole.  They do feel it would be difficult
for them to have a child that was abusive to others or that might be abusive to him-
self.  The Halprins found this part of the interview to be most difficult for them
knowing that with each child their situation varies in degree of severity and
is so totally different.  They both would like the opportunity to give thought
to all children that are available for adoption who are under five to six years
of age that we feel might be accepting to them.

## SUMMARY AND RECOMMENDATION

Pat and Dan shared openly in regard to their relationship and life experiences.
They seemed to be individuals who have grown and matured in their relationship as
well as within themselves individually.  They are stable people who do not have
obvious emotional problems.  They seem to be ones who have given more than adequate
thought to their decision to adopt, showing the deliberate thought process that
was undertaken by them.  They seem committed to the idea of adoption and do not
harbor any negative feelings surrounding adoption or an adopted child or children.
They seem to be a couple who will work with an adopted special needs child with
enthusiasm, patience and love.  Both are understanding and sympathetic people
who are sensitive to all that the special needs child has gone through as well
as what will be gone through with the child in his or her adjustment to the
new permanent home.  They feel that because they are committed to the idea of
adoption, they have the confidence to deal with those problems that might arise.
They are a couple who have a great deal to offer a child and are very eager to
share their lives with children.  They are ones who will offer a child a warm, stable
loving environment.  They are ones who will offer a child a very stimulating
environment and exposure to many and varied types of activities.  From all appearances
the Halprins are excellent candidates for adoption with no apparent problems.

5503

ADOPTIVE HOME STUDY
FAMILY:  Dan and Pat Halprin

Page 12

I highly recommend the Halprins for approval.

Linda Allen
Adoption Worker

APPROVED:

Marilyn Anderson, ACSW
Supervisor

2.28 , 1983

5504

Family:  Daniel and Patricia Halprin

## A D D E N D U M

As a couple, Dan and Pat participate in many varied interests and activities.  Together, they enjoy traveling, vacationing over extended length of time and over a long weekend.  Both spoke of being "kids at heart", stating that since they have moved from Florida, they have been to Disney World four times.  While living in Florida, they visited Disney World on numerous occasions.  Both stated that they would choose going there over night clubs any day.  They feel that one reason they enjoy this type of activity is because of where they stay.  There is a motel not far from the park that is located on the beach.  Those who use this particular beach seem to all be families with young children.  The motel is a "Ma and Pa type of motel" that is made up efficiencies.  Their accomodations are described as slow in pace, restful and family-oriented.  They have traveled to Europe, Ireland and other foreign countries.  They enjoy attending concerts and the theater.  One of their most enjoyable activities is to have a few of their close friends over for a swim and a barbeque.  Overall, Dan and Pat enjoy anything that is family orientated.

Linda Allen
Adoption Worker

APPROVED:

Marilyn Anderson, ACSW
Supervisor

3-24            , 1983

5505

<u>Autobiography of Daniel and Patricia Halprin</u>

There are only two members of our family, Dan, my husband, and me, Pat. Dan and I have no children. We have known each other eight years and have been married four years. Dan is 34 years old, six feet tall, with olive skin and balding, curly, black hair. He is Jewish. His grandparents immigrated from Russia. I am 30 years old, five feet seven inches tall, with fair skin and brown hair. I am Catholic. My grandparents immigrated from Ireland.

Dan has a friendly, outgoing personality. He is an amateur radio operator. He also enjoys photography and swimming. Dan has an Associates Degree in Electronic Technology. He is working on a B.A. in Business at the University of Texas at Arlington. He works for the John Fluke Company in Dallas selling testing and calibration equipment. Dan has worked with electronics for fifteen years, but this is the first time he has sold electronic equipment. He loves his job. He is a born salesman. He must travel out of town one week every two months on his job. Dan is active in his synagogue where he has served on committees and has taught Sunday School.

I have a quieter, more reserved personality. I enjoy swimming and sewing. I have a B.A. in Math and Economics from Rutgers University. I work for the Western Company of North America in Fort Worth as a computer programmer. I have been programming for eight years and I enjoy my work. I never travel out of town on business.

Dan was born in Uniontown, Pa. on May 24, 1948 and lived there until he graduated from high school. He is the oldest of three children. He has a brother, Mike, who is 32 years old, married, and lives in Grand Rapids, Michigan. He has a sister, Carol, who is 29 years old, single, and lives in Washington, D.C. Dan's mother died of cancer 10 years ago. His father is 73 years old, lives in Uniontown, Pa., and is still active in his home remodeling business.

Dan was very close to his mother. His father traveled a great deal and Dan's mother raised the children almost by herself.

5506

He was not a good student and that caused problems with his parents. He was spanked occasionally and threatened with summer school, which he usually attended. Dan's relationship with his parents during his teen years was normal. He became active in amateur radio as a teenager and this hobby kept him out of trouble. Dan would have liked to have been closer to his Dad while he was growing up. He has gotten to know his father as an adult and has a good relationship with him now. Dan and his brother Mike are good friends. They shared a room growing up and keep in touch by phone. Dan and his sister keep in touch, but are not particularly close. Carol has never accepted Dan marrying a non-Jew. We see Dan's family about once a year for a long weekend.

I was born in Jersey City, N.J. on May 5, 1952. I lived in Bayonne, N.J., which is a city outside New York City, until I was eight years old. My parents were born and raised in Bayonne and most of my relatives still live there. From the time I was eight until I graduated from high school, I lived in Matawan, N.J. which is a suburb. When I graduated from high school, my parents moved to Brick Town, N.J. which is a resort area near the Atlantic Ocean. I am a middle child, though I was the youngest for thirteen years. I have a brother, Bill, who is 32 years old, married, and lives in Manasquan, N.J. I also have a brother, Patrick, who is 17 years old and lives with my parents in Brick Town. My father is 60 years old and retired last year after working 40 years for Western Electric. My mother is 56 years old and has been a housewife since my older brother was born.

I was close to my brother Bill while we were growing up, but have drifted apart as adults. My brother Patrick is very special to me. I was 13 years old when he was born and I helped raise him. I talk to my parents about once a month. We see each other about once a year. My father is an alcoholic. He did not drink heavily when I was young, but by the time I was a teenager he was drunk every night and weekend. I didn't like to bring my friends home. I spent a lot of time in my room studying or listening to records. Since he retired he has been drinking less. When he isn't drunk he is a nice person. My mother is a good person but moody. When

she is in a good mood, she is sweet and loving, but when she is in a bad mood she is very hard to live with. My mother disciplined us while we were growing up, usually with a couple of whacks on the bottom. I was a good student, straight A's in elementary school, National Honor Society in high school, Phi Beta Kappa in college.

Dan and I are each other's best friend. He is the most important person in my life. He tells me I am the most important person in his. We love each other and enjoy living together. The strong points in our marriage are our love for each other and our compatability. We like to do many of the same things. We both like to travel, go to museums and movies, and swim. We are comfortable together. We disagree over little things - what clothes to wash in bleach and how to season the cooking. We talk about our differences of opinion and reach a middle ground. The most stressful time in our relationship was our courtship. Dan was not sure he could marry a non-Jew. I loved him and it hurt me that he felt that way. When Dan realized that he could never leave me, he asked me to marry him.

Dan and I met at work. He was the field engineer responsible for the computer at Westinghouse in Tampa, Fl. where I was working as a programmer. The first thing I liked about him was his voice. He tells me it was my eyes. On our first date we went out to eat and talked until one A.M. and the next day was a work day. He was so easy to talk to.

We divide the housework and each have certain chores we always do. He takes care of the yard and cars, and makes household repairs. I mend the clothes, balance the checkbook, and do the taxes. Neither of us has had a prior marriage. We have never had a separation due to marital conflict.

Dan and I have talked about adoption for a few years. We like children and we both want a family. Watching my brother grow up has been one of the greatest joys of my life. We would rather adopt a child 1 - 5 years old than an infant because we both work and will have to put our children in a day care center. A child 1 - 5 years old can enjoy and learn in a good day care center, an infant can't. Dan and I are not sure we would know how to raise a child with emotional or sexual problems. Because

we both work, we probably could not give a child with severe
physical problems the kind of care he would need.  For these
reasons, we would like to adopt either one child with minor
physical or emotional problems, or a sibling group of 2 - 3
children.  We would like young children, 5 years of age or under.
We would like children who are anglo, anglo-iranian, anglo-mexican
american, anglo-oriental, or oriental.

We understand the children we adopt will likely have been
abused and/or neglected by their parents.  We understand how this
can happen when their parents have emotional problems.  We would
try to make the children feel as positive as they can about
their backgrounds.  I'd hope to answer their questions honestly,
but only tell them what they are able to understand and accept.
We will try to make the children feel good about themselves and
if this means hiding some of the details of their past we will.
When they are secure adults, we will tell them anything we know
about their past if they ask.

Dan and I hope to be moderately strict parents.  My experience
with my brother showed me that if you treat a child well, with
respect and love, he will treat you the same way.  Occasionally
a child needs to be disciplined and a light spanking or being
sent to his room should make him aware his behavior was wrong.
We hope to give our children love, a comfortable life, and a
set of skills to help them deal with life - skills such as good
manners, a positive attitude, and an education.  We would accept
children who are slow learners or with average or better intelligence.
We do not want a mentally retarded child.

We live in a four bedroom, two bath house in a nice middle
class neighborhood in Arlington, Texas.  Our neighbors are friendly
and there are lots of children in our area.  A one year old boy
lives next door and a three year old boy lives in the next house.
We have a fenced-in back yard and a swimming pool.  There is a
grammar school and playground, a junior high school, and a high
school all within a couple of miles of our house.  We can financially
afford children.  Our gross income is between $70,000 and $80,000
a year.  We have approximately $20,000 in savings and bonds, and
approximately $130,000 in stocks and property.  We both have life

and health insurance through our employers.  We are both in good
health and neither of us have had any major illnesses or accidents.
Neither of us smoke and we only occasionally drink alcoholic
beverages.

# REFERENCE INFORMATION SHEET

REFERENCE: _____   APPLICANT _DAN AND PAT HALPRIN_
(Name)

ADDRESS: _____   _____   , Phone _____
(Street)              (City, State, Zip)

1. HOW DID YOU MEET THE APPLICANTS? _____
_____

2. HOW LONG HAVE YOU KNOWN THE APPLICANTS? _____

3. HOW WOULD YOU DESCRIBE THEIR FAMILY LIFE? _____
_____
_____
_____
_____

4. HOW OFTEN DO YOU SEE THEM AS A FAMILY? _____

5. DO YOU HAVE CHILDREN?  IF SO, HOW DO THE APPLICANTS RELATE TO THEM? _____
_____
_____
_____

6. HAVE THEY TALKED WITH YOU ABOUT THEIR INTEREST IN ADOPTION? _____
_____

7. IN YOUR OPINION, WOULD THEY BE ABLE TO HELP A CHILD WHO HAS EMOTIONAL PROBLEMS? _____
_____
_____
_____

8. WOULD THE FAMILY LOVE AND ACCEPT AN ADOPTED CHILD? _____
_____
_____

9. WHAT ARE YOUR RESERVATIONS ABOUT THEM AS ADOPTIVE PARENTS? _____
_____

10. WOULD YOU RECOMMEND THAT THEY BE APPROVED FOR ADOPTION? _____
_____

DATE: _____, 19___                       Worker: _LINDA ALLEN_

5511

**champlin**

GREGG R. MASTRIFORTE
Sr. Systems Analyst/Programmer

Exploration & Production · Champlin Petroleum Company
Accounting Systems            P.O. Box 7
(817) 735-1501, Ext. 1477    Fort Worth, Texas 76101-0007

~~FE~~RENCE INFORMATION SHEET

~~TE~~            APPLICANT _DAN AND PAT HALPRIN_

_ARLINGTON, TX   76017_ , Phone _483-0268_
(City, State, Zip)

1. HOW DID YOU MEET THE APPLICANTS? _I met Pat & Dan at Westinghouse Electric Co in Tampa, Florida. — We all worked there in June - Feb 1975-1976._

2. HOW LONG HAVE YOU KNOWN THE APPLICANTS? _7 years 8 months_

3. HOW WOULD YOU DESCRIBE THEIR FAMILY LIFE? _Beautiful — Please see attach letter._

4. HOW OFTEN DO YOU SEE THEM AS A FAMILY? _Approx. Once a week_

5. DO YOU HAVE CHILDREN?  IF SO, HOW DO THE APPLICANTS RELATE TO THEM? _No Children_

6. HAVE THEY TALKED WITH YOU ABOUT THEIR INTEREST IN ADOPTION? _Yes. They are very excited about it and at this same time realizing the responsibility._

7. IN YOUR OPINION, WOULD THEY BE ABLE TO HELP A CHILD WHO HAS EMOTIONAL PROBLEMS? _Yes, they are both very understand and patient._

8. WOULD THE FAMILY LOVE AND ACCEPT AN ADOPTED CHILD? _Yes!!_

9. WHAT ARE YOUR RESERVATIONS ABOUT THEM AS ADOPTIVE PARENTS? _None._

10. WOULD YOU RECOMMEND THAT THEY BE APPROVED FOR ADOPTION? _YES! If I had children & couldn't care for them, I can't think of anyone else I would rather have adopt them Dan & Pat._

DATE: _2/5_, 19_83_                    Worker: _LINDA ALLEN_

I stayed with Dan & Pat last years for 3 months during my relocation to the Dallas / Ft. Worth area. I always felt at home in thier house and very much apart of thier family.

They are both very generous and loving and I highly recommend them for adoptive parents.

The house was always very clean and enjoyable to stay in.

If you have any questions please do not hesitate to call me!

Sincerely
Gregg Mastrofrate

OFFICE - 735-1501  (817)
HOME - 483-0268  (817)

5513

REFERENCE INFORMATION SHEET            FEB 1 7 1983

REFERENCE: Rustom and Meher Jamadar        APPLICANT Dan and Pat Halprin
                    (Name)
ADDRESS: 1723 Overbrook Dr Arlington Tx 76014 , Phone 465-2327
              (Street)              (City, State, Zip)

1. HOW DID YOU MEET THE APPLICANTS? Through work.

2. HOW LONG HAVE YOU KNOWN THE APPLICANTS? One year and 4 months

3. HOW WOULD YOU DESCRIBE THEIR FAMILY LIFE? Dan and Pat are very close — whether it be working around the house or yard, or going out. Their relationship is close and harmonious.

4. HOW OFTEN DO YOU SEE THEM AS A FAMILY? Once every two months. However we keep in touch over the phone — 3 to 4 times a month.

5. DO YOU HAVE CHILDREN? IF SO, HOW DO THE APPLICANTS RELATE TO THEM? Yes. We had a baby girl last July. Dan and Pat were the first ones to visit us after the baby was born. They are very comfortable with the baby and inquire about the baby whenever we talk over the phone.

6. HAVE THEY TALKED WITH YOU ABOUT THEIR INTEREST IN ADOPTION? Yes. They would prefer a child under two years of age, but are willing to accept an older child with some problems.

7. IN YOUR OPINION, WOULD THEY BE ABLE TO HELP A CHILD WHO HAS EMOTIONAL PROBLEMS? Yes. Their stable and harmonious family atmosphere should help calm any anxieties. They also have amiable personalities; and Dan is very jovial and mixes easily, putting people at ease very quickly.

8. WOULD THE FAMILY LOVE AND ACCEPT AN ADOPTED CHILD? Yes. It would give them a sense of fulfilment to be able to care for a child and to give the child a home.

9. WHAT ARE YOUR RESERVATIONS ABOUT THEM AS ADOPTIVE PARENTS? Dan and Pat both have full-time jobs.

10. WOULD YOU RECOMMEND THAT THEY BE APPROVED FOR ADOPTION? We enthusiastically recommend approval.

DATE: Feb. 14 , 1983           Worker: Linda Allen

5514



**NEW HOPE PROGRAM**
**2110 HEMPHILL  FORT WORTH, TEXAS 76110**
**817 926-3304**

## STATEMENT OF GOOD HEALTH

DANIEL  HALPERIN _____ was examined

by me on the ___8TH___ day of ___SEPTEMBER___ , 19_82_ ,

and was found to be in good health.

_____KSuben, MD_____
Signature of Physician

_3330 S  LANCASTER RD_
Street Address
_DALLAS,  TX  75216_
City, State & Zip



NEW HOPE PROGRAM
2110 HEMPHILL  FORT WORTH, TEXAS 76110
817 926-3304


## STATEMENT OF GOOD HEALTH


_Patricia Halperin_ was examined

by me on the ___8TH___ day of ___September___, 19_82_,

and was found to be in good health.


_K. Duilin_, MD
Signature of Physician


3330 S. Lancaster Rd
Street Address

Dallas  Texas 75__
City, State & Zip

5516

NAME: DAN + PAT HALPRIN

# FINANCIAL INFORMATION

The following information is needed to help give us an understanding of how you manage your income as a part of the total picture of your family life. Many of the items listed below may not be on a monthly basis, and for them it may be convenient to divide the yearly amount by 12. Leave blank the items that do not apply to you.

## MONTHLY EXPENSES

RENT OR HOUSE PAYMENT.............................$ 804

GROCERIES........................................$ 400

TRANSPORTATION EXPENSE
   (Car payment, maintenance, bus fare, etc.)......$ 300

UTILITIES
   (Gas, Lights, Water, and Telephone)............$ 200

HOME MAINTENANCE
   (Yard, minor repairs, etc.)....................$ 100

CHILD CARE EXPENSES..............................$ 0

AVERAGE MEDICAL EXPENSES (Including medicines).....$ 20

CLOTHING.........................................$ 150

LAUNDRY AND CLEANING.............................$ 50

ENTERTAINMENT
   (Movies, books, newspapers, sports, clubs)......$ 80

PERSONAL SUPPLIES
   (Tobacco, cosmetics, incidentals, sundries,
   Beauty shop)..................................$ 50

SAVINGS AND INVESTMENTS..........................$ 200

INSURANCE NOT DEDUCTED FROM PAY..................$ 0

OTHER MONTHLY EXPENSES (specify)
   (Loans, child support payments, charge accounts,
   maid service, pets, etc.).....................$ 450

CONTRIBUTIONS
   (Church, charity, relatives out of home, etc.)..$ 100

                           TOTAL.........$ 2904

## MONTHLY INCOME

HUSBAND-TAKE HOME PAY.............................$ 1361.34

WIFE-TAKE HOME PAY...............................$ 1793.26

5517

Page 2

FINANCIAL INFORMATION
NAME: DAN + PAT HALPRIN

OTHER INCOME (Specify)
(Property, pension, temporary employment, insurance,
dividends, etc.)............................................$ 18 41
RENTAL INCOME - 591
DIVIDENDS + INTEREST - 250   TOTAL INCOME.........$ 4995.6
SALES COMMISSIONS - 1000

## LIFE INSURANCE COVERAGE

| | Type coverage | Amount of Coverage |
|---|---|---|
| HUSBAND - Group Policies | TERM | $ 44,000 |
| Individual " | NONE | $ |
| WIFE - Group Policies | TERM | $ 70,000 |
| Individual " | NONE | $ |
| CHILDREN- Group Policies | NONE | $ |
| Individual " | NONE , | $ |

## HEALTH INSURANCE

FAMILY MEMBERS COVERED BY HOSPITALIZATION AND/OR DISABILITY:

HUSBAND

WIFE

Is this group insurance, individual insurance or both? GROUP

Other policies not covered by the above   NONE

## LOANS AND OTHER DEBTS

| ITEM | ORIGINAL AMT. | MONTHLY PMTS. | BALANCE | Estimated date Final payment |
|---|---|---|---|---|
| CAR PAYMENT | $ 7273.44 | $ 151.53 | $4242.84 | 12/29/84 |
| MORTGAGE | $ 70,000 | $ 804 | $69,381 | 07/2010 |
| MORTGAGE ON RENTAL HOUSE | $ 40,842.97 | $ 457.45 | $40,300 | 09/2008 |
| | $ | $ | $ | |
| | $ | $ | $ | |

## RETIREMENT PLAN

If you have a Retirement Program either through your employment or
independently, at what age do you plan to retire? 65 . At what
income? $ 20,000 (IN TODAY'S MONEY)

5518

Page 2

FINANCIAL INFORMATION

NAME: DAN + PAT HALPRIN

OTHER INCOME (Specify)
(Property, pension, temporary employment, insurance, dividends, etc.).................................$ 1841

RENTAL INCOME - 591
DIVIDENDS + INTEREST - 250     TOTAL INCOME........$ 4995.6
SALES COMMISSIONS - 1000

## LIFE INSURANCE COVERAGE

| | | Type coverage | Amount of Coverage |
|---|---|---|---|
| HUSBAND - | Group Policies | TERM | $ 44,000 |
| | Individual " | NONE | $ |
| WIFE - | Group Policies | TERM | $ 70,000 |
| | Individual " | NONE | $ |
| CHILDREN- | Group Policies | NONE | $ |
| | Individual " | NONE , | $ |

## HEALTH INSURANCE

FAMILY MEMBERS COVERED BY HOSPITALIZATION AND/OR DISABILITY:

HUSBAND _____  _____  _____

WIFE _____  _____  _____

Is this group insurance, individual insurance or both?  GROUP

Other policies not covered by the above  NONE

## LOANS AND OTHER DEBTS

| ITEM | ORIGINAL AMT. | MONTHLY PMTS. | BALANCE | Estimated date Final payment |
|---|---|---|---|---|
| CAR PAYMENT | $ 7273.44 | $ 151.53 | $4242.84 | 12/29/84 |
| MORTGAGE | $ 70,000 | $ 804 | $69,381 | 07/2010 |
| MORTGAGE ON RENTAL HOUSE | $ 40,842.97 | $ 457.45 | $40,300 | 09/2008 |
| | $ | $ | $ | |
| | $ | $ | $ | |

## RETIREMENT PLAN

If you have a Retirement Program either through your employment or independently, at what age do you plan to retire? 65 . At what income? $ 20,000 (IN TODAY'S MONEY)

5519

**FINANCIAL INFORMATION**                    Page 3

NAME: *DAN + PAT HALPRIN*

RETIREMENT PLAN (Continued)

PLEASE ITEMIZE YOUR INVESTMENTS:

SAVINGS ACCOUNT: $ _10,000_

GOVERNMENT BONDS $ _1,000_

OTHER BONDS     $ _11,000_

STOCKS            _30,000_

REAL ESTATE       _100,000_ — _10,000 EQUITY IN OUR HOME_

OTHER (Please specify _____ _15,000 EQUITY IN RENTAL HOME_
_25,000 PROPERTY IN W. VIRGINIA_
_50,000 RENTAL PROPERTY IN PA._

Signature _[signature]_            Date: _9/5/82_
_Patricia B. Halprin_            Date: _9/5/82_

5520

NEW HOPE
2110 Hemphill
Fort Worth, Texas 76110
817-926-3304

## PROFILE OF A "SPECIAL NEEDS" CHILD

### Instructions for Completing Form

This form reflects the various kinds of children available through this agency. Many of these children have various negative factors in their background or in relation to their physical, mental, and emotional development. Therefore, please give careful consideration to the kind of child whom you feel that you have the ability to parent.

This form will be used by the adoption worker in selecting a child for your home. Therefore, a complete and accurate report is necessary and required from you in completing the form. (There is space provided at the end of the form for your comments)

Circle the kind of child you are interested in:  (Circle one)

Male         Female         (Either)                    Both

Please check (✓) the block that best describes the kind of child you feel you can accept:

| AGE: | YES | NO | | YES | NO |
|------|-----|----|---|-----|----|
| *3 – 4 months old | — | ✓ | 2 – 5 years old | ✓ | |
| *4 –12 months old | — | ✓ | 6 –10 years old | | ✓ |
| *1 – 2 years old | — | ✓ | 10 –12 years old | | ✓ |
| | | | Over 12 years | | ✓ |

Would you be accepting of a sibling group?........................ ✓

| | | | If you could accept a sibling group, what number of children could you accept in a sibling group?  (Check one) |
|---|---|---|---|
| RACE: | YES | NO | |
| White | ✓ | | 2 siblings ✓ |
| Black | — | ✓ | 3 siblings ✓ |
| Mexican/American | — | | 4 siblings ____ |
| | | | 5 siblings ____ |
| RACE MIXTURE OF: | YES | NO | More ____ |
| White/Black | | ✓ | |
| White/Indian | ✓ | | |
| Black/Indian | | ✓ | |
| White/Mexican/American | ✓ | | |
| Black/Mexican/American | | ✓ | |
| Oriental Mixture | ✓ | — | |

**Note:**  Children in this age group would be those who have involved medical problems such as Spina Bifida, Hydrocephalus, Downs Syndrome, or bi-racial children.

5521

Profile of a "Special Needs" Child
Page 2

A child might have been subjected to one or a combination of the conditions listed below. Please check the condition (s) which you could or could not accept in a child.

| | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| NEGLECT | ✓ | | PHYSICAL ABUSE | ✓ | |
| EMOTIONAL ABUSE | ✓ | | SEXUAL ABUSE | | ✓ |

Some of the children we will be placing are in good health while others are not. Some children have medical and physical problems which you will need to consider. Can you accept a child who has:

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| ANEMIA | ✓ | | |
| ALLERGIES | ✓ | | |
| ASTHMA | ✓ | | |
| EPILEPSY (Controlled by medication) | | ✓ | |
| EPILEPSY (Not controlled) | | ✓ | |
| HYPER-ACTIVITY (Controlled by medication) | | ✓ | |
| HYPER-ACTIVITY (requires special classroom setting) | | ✓ | |
| SPINA BIFIDA | | ✓ | |
| CONGENITAL HEART DEFECT | | | ✓ |
| HYDROCEPHALUS | | ✓ | |
| MALNOURISHMENT | ✓ | | |
| BURN SCARS | | | ✓ |
| HEART MURMUR | ✓ | | |
| SICKLE CELL TRAIT | | ✓ | |
| SICKLE CELL DISEASE | | ✓ | |
| HYPOGLYCEMIA (Abnormally low level of sugar (glucose) in the blood) | ✓ | | |
| DIABETES (Controlled) | | | ✓ |
| DIABETES (Not Controlled) | | ✓ | |

5522

Profile of a "Special Needs" Child
Page 3

|  | YES | NO |
|---|---|---|
| Can you accept a child who needs dental work for cavities? | ✓ | |
| Can you accept a child who needs dental work for braces? | ✓ | |

What if the child were in good physical health but had a handicapping condition. Could you accept a child who has:

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| LOSS OF SIGHT (Needs glasses) ...... | ✓ | | |
| BLINDNESS ......................... | | ✓ | |
| LOSS OF HEARING (slight)........... | ✓ | | |
| DEAF .............................. | | ✓ | |
| LOSS OF LIMB (arm or legs)......... | | ✓ | |
| CLEFT PALATE....................... | | | ✓ |
| HARELIP ........................... | | | ✓ |
| BOTH CLEFT PALATE & HARELIP........ | | | ✓ |
| LEG BRACES......................... | | ✓ | |
| MUSCULAR DYSTROPHY ................ | | ✓ | |
| CEREBRAL PALSY .................... | | ✓ | |
| CYSTIC FIBROSIS ................... | | ✓ | |
| DOWNS SYNDROME (Mongolism) ........ | | ✓ | |
| "LAZY EYE"......................... | ✓ | | |
| SPEECH IMPEDIMENT (Stutters, is hard to understand) | | | ✓ |

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| Can you accept a child who needs speech therapy? | | | ✓ |

What if you were asked to accept for placement a child who was born out of an incestuous union. A child born of incest is one whose mother and father were blood relatives such as father and daughter, brother and sister, etc. Can you accept such a child?     YES _____  NO _____

Can you accept a child who was conceived due to rape?  YES ✓  NO _____

Children have different potentials based on life experiences, health and family background. Have you considered what educational potentials you can consider? Can you consider a child who is:

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| A SLOW LEARNER | | | ✓ |
| A CHILD WHO NEEDS SPECIAL EDUCATION | | | ✓ |
| A CHILD WITH POTENTIAL FOR COMPLETING HIGH SCHOOL, VOCATIONAL TRAINING | ✓ | | |
| DEFINITE POTENTIAL FOR COLLEGE | ✓ | | |
| A CHILD WITH LIMITED POTENTIAL | | ✓ | |
| DEVELOPMENTALLY DELAYED | | | ✓ |

5523

Profile of a "Special Needs" Child
Page 4

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| CAN YOU ACCEPT A CHILD WHO IS MODERATELY RETARDED (educatable-trainable) | | ✓ | |
| SEVERELY RETARDED.................... | | ✓ | |

There are negative conditions and experiences found in the biological parents of the children available for adoption. They may have no effect on the child. However, can you accept a child whose biological parents have any of the conditions listed below?

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| PARENT WITH EMOTIONAL ILLNESS ............. | | | ✓ |
| MENTALLY RETARDED PARENT................... | ✓ | | |
| ALCOHOLIC PARENT........................... | | | ✓ |
| PARENT ON HARD DRUGS ...................... | | | ✓ |
| PARENT WITH INHERITABLE DISEASE............ | | | ✓ |
| CHILD EXPOSED TO SEXUAL ACTIVITIES........ | | | ✓ |
| PARENT WITH DOWNS SYNDROME .............. | ✓ | | |
| PARENT WITH CANCER ....................... | ✓ | | |
| PARENT WITH ASTHMA ....................... | | | ✓ |
| PARENT WITH CRIMINAL RECORD............... | | | ✓ |
| PARENT WITH EPILEPSY ..................... | | | ✓ |
| PARENT WITH DIABETES ..................... | ✓ | | |
| PARENT WITH HEART PROBLEM ................ | | ✓ | |
| PROSTITUTION.............................. | | | |
| PARENTS UNKNOWN(No information available regarding child's history) ............. | | | ✓ |

All adoptive children are expected to go through a period of adjustment with their new parents. Indicate which behavior you would be willing to work with:

| | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| CONSTANT DEMANDING OF ATTENTION ......... | ✓ | | ✓ |
| SEXUAL ACTING OUT ...................... | | | ✓ |
| AGGRESSIVENESS ......................... | ✓ | | |
| BED WETTING (and on clothing) | ✓ | | |
| SHYNESS ................................ | | | ✓ |
| WITHDRAWN............................... | | | |
| PHYSICALLY ABUSIVE TO SELF (pulling out hair, pinching themselves, etc) | | ✓ | |
| ABUSIVE TO OTHERS (may be abusive towards animals) | | ✓ | |

5524

Profile of a "Special Needs" Child
Page 5

|  | YES | NO | WILLING TO DISCUSS |
|---|---|---|---|
| DESTRUCTIVE............................ | — | ✓ | ✓ |
| LIES................................... | — | ✓ | ✓ |
| STEALS................................ | — | — | ✓ |
| DISOBEDIENT AT HOME OR SCHOOL......... | — | — | ✓ |
| UNUSUAL FEARS......................... | — | — | ✓ |
| PREFERS ONE PARENT OVER THE OTHER..... | — | — | ✓ |
| NEEDS TO MAINTAIN CONTACT WITH SIBLINGS............................... | ✓ | — | |

COMMENTS  WE WOULD ACCEPT CHILDREN AGES 0-5  IN THE
RACIAL MIXTURES OF:  WHITE / INDIAN ,  WHITE / MEXICAN AMERICAN,
OR  WHITE / ORIENTAL .  WE WOULD CONSIDER A SIBLING GROUP
OF  3 CHILDREN  AGES  0-5.

_____

_____

_____

_____

_____

If you wish to have a New Hope Application
mailed to you, please check here _____

DANIEL AND PATRICIA HALPRIN
Name

4015 GLENBROOK DRIVE
Street Address

ARLINGTON, TX   76015
City, State Zip

(817)  465-7264
Telephone

5525

Fort Worth, Texas 76114
(817) 926-3504, ext. 101

## APPLICATION TO ADOPT A CHILD

| | | | HOME TELEPHONE |
|---|---|---|---|
| | HUSBAND'S NAME (FIRST, MIDDLE) | WIFE'S NAME (FIRST, MIDDLE) Maiden | (817) 465-7264 |
| LAST NAME | DANIEL NATHAN | PATRICIA ANNE BRANNICK | OFFICE TELEPHONE |
| HALPRIN | | | HER (817) 232-7422 |

ADDRESS (STREET/ ROUTE / P.O. BOX, CITY, STATE, ZIP
4015 GLENBROOK DRIVE, ARLINGTON, TX, 76015

The children for whom the New Hope Program is in need of homes are: school age (elementary and second-ary), members of a racial minority, handicapped (physically, mentally or emotionally) and/or part of a family of children who need to be placed together.

Please indicate below the kinds of children your family would consider in adoption

WE WOULD LIKE TO ADOPT A SIBLING GROUP OF 2 OR 3 CHILDREN,

AGES 0-5. WE WOULD ALSO CONSIDER A SINGLE CHILD WITH MINOR

PHYSICAL HANDICAPS.

| AGE RANGE | NUMBER OF CHILDREN | SEX | | |
|---|---|---|---|---|
| 0 - 5 | ☒ ONE ONLY  ☒ GROUP OF BROTHERS & SISTERS | ☐ FEMALE  ☐ MALE  ☒ EITHER | | |
| | RACIAL OR ETHNIC BACKGROUND | HANDICAPS | | |
| ⬤ CAN-AMERICAN  ☐ BLACK  ☒ ANGLO  ☒ OTHER | ☐ MENTAL  ☒ PHYSICAL  ☐ EMOTIONAL | | |

...he space below to describe further: for example, children with handicaps, learning or behavior difficulties, or family groups of children. Attach additional sheets of paper if necessary.

WE WOULD ALSO ACCEPT CHILDREN WITH RACIAL BACKGROUNDS OF:

ORIENTAL, ANGLO/INDIAN, ANGLO/MEXICAN AMERICAN, AND

ANGLO/ORIENTAL. WE WOULD ALSO CONSIDER A CHILD WITH

PHYSICAL HANDICAPS WHICH ARE NOT SEVERE.

Please provide the following personal information about you and your spouse:

| | HUSBAND | WIFE |
|---|---|---|
| DATE OF BIRTH | MAY 24, 1948 | MAY 5, 1952 |
| PLACE OF BIRTH (CITY, STATE) | UNIONTOWN, PA | JERSEY CITY, N.J. |
| RACIAL OR ETHNIC BACKGROUND | ANGLO | ANGLO |
| HIGHEST LEVEL OF EDUCATION COMPLETED | 2 YEARS OF COLLEGE | B.A. |
| RELIGIOUS PREFERENCE | JEWISH | CATHOLIC |
| HEIGHT & WEIGHT | HEIGHT 6'  WEIGHT 270 | HEIGHT 5'7"  WEIGHT 170 |
| HEALTH | ☒ GOOD  ☐ FAIR  ☐ POOR | ☒ GOOD  ☐ FAIR  ☐ POOR |
| LIST ANY HANDICAPS, SERIOUS ILLNESSES, OPERATIONS, OR CHRONIC CONDITIONS YOU HAVE HAD | NONE | NONE |

5526

NONE

Please list other members of your household:

| NAME | SEX | AGE | OCCUPATION OR SCHOOL GRADE | RELATION TO APPLICANTS |
|------|-----|-----|----------------------------|------------------------|
| NONE | | | | |

Give the names of any of your children and/or your spouse's children who live outside your household:

| NAME | SEX | AGE |
|------|-----|-----|
| NONE | | |

Give the following information about your employment and financial status:

| | HUSBAND | WIFE |
|---|---------|------|
| OCCUPATION: | SALES ENGINEER | OCCUPATION: PROGRAMMER / ANALYST |
| EMPLOYER: | JOHN FLUKE MANUFACTURING CO, INC | EMPLOYER: WESTERN COMPANY OF NORTH AMERICA |
| EMPLOYER'S ADDRESS | 14400 MIDWAY RD, DALLAS TX 75234 | EMPLOYER'S ADDRESS 6100 WESTERN PLACE, FORT WORTH, TX |
| BUSINESS PHONE (214) 233-9990 | EMPLOYMENT DATE JULY 15, 1982 | BUSINESS PHONE (817) 232-7422 | EMPLOYMENT DATE JULY 7, 1980 |
| ANNUAL SALARY 22,000 | OTHER INCOME $20,000 PER YEAR | ANNUAL SALARY $34,500 | OTHER INCOME $2,500 PER YEAR |
| OF LIFE INSURANCE 44,000 | HEALTH INSURANCE ☒YES ☐NO | AMOUNT OF LIFE INSURANCE $70,000 | HEALTH INSURANCE ☒YES ☐NO |

Have you ever applied to adopt a child before?   ☐YES   ☒NO     IF YES, WHERE?      WHEN?

Please give the names of three relatives who would be important in the life of an adopted child:

| NAME | ADDRESS | TELEPHONE |
|------|---------|-----------|
| MIKE + RHONDA HALPRIN | 2102 CORONADO S.E., GRAND RAPIDS, MI | (616) 245-3398 |
| WILLIAM + ALNES BRANNICK | 86 PINEHURST ROAD, BRICKTOWN, NJ | (201) 477-3263 |
| CAROL HALPRIN | 2446 GLENGYLE DR, VIENNA, VA. | (703) 281-7655 |

Please give the names of three non-relative references who know you well:

| NAME | ADDRESS | TELEPHONE |
|------|---------|-----------|
| CHARLES AND WENDY BORDO | 4011 GLENBROOK DR., ARLINGTON, TX | (817) 465-0634 |
| ERROL MASTRIFORTE | 5301 VINCENNES ST, ARLINGTON, TX | (817) 483-0268 |
| RUSTOM AND MAHUR JAMADAR | 1723 OVERBROOK DR., ARLINGTON, TX | (817) 465-2327 |

Give directions to your house if it is rural or difficult to find:

**5527**

Please enclose a snapshot of your family and your home. You may send these later if they are not currently available. WE WILL SEND THE SNAPSHOTS LATER.

PROGRESS REPORT

FAMILY:        BARGER, GARY & MARKITA
CHILD:         JOSHUA
CONTACT:       11/7/83              11/9/83

On 11/7/83, Markita Barger called to tell me that Joshua had been hospitalized with the croup. They had admitted him on 11/16/83. Joshua had been very sick when admitted but was doing much better and the doctor said if he continued to improve he would be dismissed on 11/8/83. He was taken out of the croup tent this afternoon.

Markita also told me their subsidy has been approved and they are ready to have their Court date set.

In addition to his regular pedtrician, Joshua is under the care of Neurologist, Dr. Lester Collins III in Tyler. Joshua has been seeing Dr. Collins for his seizures. Markita said it has been several months since Joshua had a seizure, but still has regular checkups with Dr. Collins.

On 11/9/83 I talked with Marilyn Anderson about contacting the law office to start procedures for finalization.

Pam Word
Adoption Worker

cc: Jeannie Perullo

5528

PRESENTATION, PRE-PLACEMENT AND PLACEMENT OF RANDY AND WESLEY

FAMILY: Dan and Pat Halprin
CHILDREN: Randy and Wesley
CONTACTS: Presentation            - August 19, 1983
          Pre-Placement Visit     - August 24, 1983
          Overnight Visitation    - August 26, 1983
          Overnight Visitation    - August 30, 1983
          Placement Papers Signed - September 12, 1983

Dan and Pat Halprin were sent a copy of the Adoption Readiness Summary at the time that they wanted to be submitted to the Child's Worker. They did not feel that during the phone conversation when the Summary was read to them that there was any problem that caused them any hesitancy in accepting the boys or their background.

After a few weeks, the Halprin's were notified that they were selected as the most appropriate family for the boys. The Presentation was held at New Hope on August 19, 1983. The PPU Worker, Jeannie Perullo went over all pertinent information from the children's case folder. The Halprin's had a few questions. A copy of the case folder was given to them.

On August 24, 1983, the first pre-placement visit was scheduled. The visit took place at the Foster Parents home. From the time of the presentation and a copy of the case folder was sent to them, the Halprin's had become concerned about the fact that Wesley had been tested for neurofibromatosis. The medicals had indicated that through extensive testing they could not find evidence that he had neurofibromatosis. The PPU Worker and I talked at length with them before proceeding to the foster parents. At the foster parents, the Halprin's each

5529

PRESENTATION OF RANDY AND WESLEY
FAMILY:  Dan and Pat Halprin
Page 2

had an opportunity to spend a small amount of time with the boys individually.  They were very warm, attentive and genuinely interested in all the boys had to say.  They went over the life book that they had prepared for the boys, explaining what each picture was.  They seemed to/receptive to all that Dan and Pat had to say.  The Halprin's had brought their camera, with each boy taking a turn in learning how to operate the camera.  The foster parents spoke to Dan and Pat about the boys daily schedule and habits.  She spoke of how they got along with the children in the foster home and with each other.  Their overall physical health was discussed with Dan and Pat, allowing them the opportunity to ask questions.  They had few questions.  They spoke to the Halprin's about fears and major topics that were dicussed by the boys.  The visit went smoothly with the foster parents, Randy and Wesley and the Halprin's.

Before the overnight visit was to occur the Halprin's were contacted to be certain that they felt comfortable with the nuerofribromatosis in the medical background of Randy and Wesley.  Dan and Pat had taken the available medical information to a close friend who was a physician to seek his opinion.  After a lengthy discussion with the family friend, the Halprin's felt that their concerns had been complicated by the usual fear that any new adoptive parent encounters.  They definitely wanted to continue with the visitation of the boys.  The first overnight visitation was scheduled only a couple/of days later.  The Halprin's picked the boys up to take them to their home.  They felt that the

PRESENTATION OF RANDY AND WESLEY
FAMILY: Dan and Pat Halprin
Page 3

weekend went very well.  They did not plan a weekend full of activities out of the home.  They felt that it was better to get to know one another on their home turf and they have a typical weekend, rather than have a real busy weekend that would not be typical of the way that the boys will be living.

Before placement papers were signed the Halprin's were contacted to gather their feelings as to whether they wanted to adopt the boys. The Halprin's felt that the visitations had gone unusually well with their wanting to proceed with paperwork.

The Halprin's had been given a copy of the Adoption Readiness Summary as well as a copy of the the case record.  They felt comfortable with the information.  The social and medical background that had been shared with them was given to DHR by the biological family.  Medical Consent was given to them at the time the visit began.

The Halprin's were very pleased with the boys and they way they were adjusting into their home.  They had no questions and expressed their happiness for becoming the parents of the boys.

*Linda Allen*
Linda Allen
Adoption Worker

5531

SUPERVISORY VISIT

FAMILY: Dan and Pat Halprin

CHILD: Randy and Wesely

Contact: Face-to-Face - October 20, 1983

All family members were present in the home during the visit. The children looked very content, happy and healthy. Both seemed very comfortable with Dan and Pat and definitely acted as though they had been with Dan and Pat all of their lives. The bonding process seems to be occurring between all family members. They stated that Randy has had a definite change surrounding the way he initially viewed their home. They stated that he was acting as though he was living in a motel. They confronted/him with the fact that as a family member you ate what everyone else did and that you did/act like you were reading from a menu. They also limited his playtime with a freind because they were not spending enough time with them as a family. He has a playmate that he is now able to play with over the weekend rather than on/seven days of the week. He is also expected to complete certain chores around the house as a member of the family. Randy is very proud of the fact that he must do things to help as a family member, seeking their approval often. They stated that he strives to please and is devastated in the event he doesn't please them. They frequently tell Randy how proud they are of him.

As a family, they have developed games that the boys love to play. They refer to Dan as the "Mad Tickler" and the "Mad Kisser." They have an evening routine that they go through every evening before the boys turn their lights out. After bathtime, Dan will read them a story, play mad tickler and kisser and say their prayers. Pat will then come in an help tuck them in.

Both boys have overcome several problems since placement. Wesely changed from being very independent to very clingy. He is becoming more independent but is still one who need assurance that he going to stay and not be moved somewhere else. He is also described as the diplomat and the peace maker particulary if Randy gets in trouble

5532

Supervisory Visit

Adoptive Family: Dan and Pat Halprin

    Initially, the boy were pinching, having tantrums and experiencing tremendous sibling rivalry. Both had reverted to a baby stage but have overcome this stage with both wanting to hear how grown up and big they are. The problems with yelling and great amount of sibling rivalry was handled by putting them in seperate rooms. They will have a few fights but the pinching, hitting, etc. has subsided to almost nil. Everytime the boys have a trantrum, which is fewer in number at this time, they must go to their room and sit on the bed until they can calm down. Randy will at times be distructive to his toys as well as with Wesely's. They are handling this mis-behavior by having Randy stay in his room, they will replace Wesely's toy and Randy must repay them by complating additional chores. They have found that works very effectively.

    Wesely was getting bored by staying home all day with no other children to play with which day care has solved. They have him in the setting five mornings a week. He throughly enjoys school and the contact with the other children. Recently, at the Day Care setting, the Director came to work with her new infant. When Wes saw the baby he was fasinated. They had Wes touch the baby which seemed to be a new experiance for him. For some reason Dan and Pat decided to buy Wes a doll. They soon overheard him calling the baby names and hitting the doll. He would say, "Bad Baby, stop crying, etc." They then learned that if they would hold Wes and refer to him as being a baby a would become very upset. Both feel that he has ob-served a baby being abused or recalls his own abuse by his biological and father. Pat has gone over Wes' Life Book with him again carefully to see if that will help him.

Linda Allen

PROGRES~ *Discovery Volume 8*
*Box 7*

FAMILY:        Dan and Pat Halprin
CHILDREN:      Randy and Wesley
CONTACT:       December 16, 1983       11

     All family members were present in the home during the visit.
Again, it is found that the Halprin family unit is functioning well, displaying
close family relationships.  They are are happy and fun-loving.  Dan and Pat
are providing an excellent home environment for these two youngsters.  They
related many fond experiences of the children's visit and introduction to
their new grandparents.

     This month has brought new behavior to report.  Pat describes Randy
as talking about his past a great deal, showing signs of being confused.  She
stated that there are times he cannot recall where he was living with particular
past events.  They jokingly stated that Randy seems to be uncertain as to whether
they are aware that Santa Claus is supposed to bring presents to their home.
Dan and Pat have enjoyed their comments, giving them the assurance that Santa
Claus had their address.

     Randy and Wesley physically are doing very well.  Neither have been
troubled by any physical ailments.  Randy has grown two inches and has gained
five pounds.  He is currently wearing a size eight clothing.  Wesley has
grown, but not at the same rate as Randy.  He has grown one inch and has gained
only one pound.  His clothing size has increased from a size three to a size
five top and four bottom.  Pat related that his legs seem to be shorter than
the average child this age.

     From all appearances the placement is progressing smoothly with only
minor problems to report.  Dan and Pat reported that they do feel Randy and
Wesley are typical to other children in their activities and behavior.  They
do feel that Randy is better behaved than the average child.  There does
not appear to be any obvious problems.

                            Linda Allen
                            Adoption Worker

cc:  Jeanie Perullo

5534

PROGRESS REPORT

FAMILY:           Dan and Pat Halprin
CHILDREN:         Randy and Wesley
CONTACT:          November 13, 1983          Home Visit

All family members were present in the home during the visit. The children again appeared content, happy and well adjusted. Both are comfortable with Dan and Pat and seem to be showing signs of bonding to them easily. All family members are excited about their upcoming trip to meet grandparents in the Northeastern area. Both children seemed thrilled about the idea of visiting with their grandparents. They seemed very proud of the fact that they do have "grandpaws and grandmas".

Randy remains in trying please Dan and Pat. He seems to maintain pride in any accomplishment that pleases them. He has asked few questions this month about his past or those individuals in his past life experiences. As a family, they continue to maintain an active family life, sharing many new experiences with Randy and Wesley. They seem to be wonderful parents who are definitely meeting the needs of Randy and Wesley.

Linda Allen
Adoption Worker

cc: Jeanie Perullo

5535

## ADOPTION READINESS SUMMARY

Randy Lee DOB: 9-13-77
Wesley Allen DOB: 11-17-80



Randy, age five is an attractive, active, bright, outgoing child.

Wesley, age two is a little shy and quiet but is also bright and affectionate. His right eyelid is somewhat droopy but is correctable with surgery.

Wesley came into care in October of 1982. He was removed from his mother by an emergency order because of severe bruising. Two previous incidents of less severe bruising have been documented.

Mr. and Mrs. W., Wesley's parents relinquished their right as to him in late 1982. Their rights were terminated on May 11, 1983 in Cause No. 82-3081-A, 16th Judicial District Court, Denton County, TX, Judge W.C. Boyd presiding.

Randy and Wesley were separated until June of this year when Randy came into care. Wesley lived with his mother and a succession of relatives. Randy was usually with his father or paternal relatives. Randy was not physically abused.

Developmental milestones are unknown.

Mr. and Mrs. W. relinquished their rights as to Randy in early 1983. Their parental rights as to this child were terminated on June 14, 1983 in Cause No. 82-3081-A, 16th Judicial District Court, Denton County, TX, Judge Jack Gray, presiding.

The idea and proceedure of adoption has been explained to Randy and Wesley but due to age their level of understanding is not clear. Randy is able to say he will have a forever mother and father but Wesley has not been able to verbalize his understanding of adoption.

Randy has not been formally evaluated as to his level of intellectual functioning. He was given a physical examination upon placement and the pediatrician did not feel testing was necessary as Randy was healthy and functioning at least at age level.

Wesley was last evaluated in November of 1982. He fell somewhat below his developmental age in areas related to stimulation and enviorment. He now appears to be age appropriate and no further testing was recommended.

The children's mother has drug history, primarily during her teenage years but it is unclear as to if she used drugs during either pregnancy.

BIRTH AND MEDICAL HISTORY WILL BE FORWARDED AT PLACEMENT AS WELL AS IMMUNIZATION RECORDS.

Randy and Wesley are early risers. Wesley takes a long nap in the afternoon. Randy does not always sleep, but does rest for at least one hour in the afternoon. Both boys enjoy a bedtime story and sleep with stuffed animals. Wesley goes to bed about 8:30PM and Randy usually by 9:00PM.

Both of the boys are good eaters. The only food Wesley refuses is bread. He likes salad, peanut butter and jelly sandwiches. Wesley feeds himself. Lately he has become somewhat of a picky eater. There are no foods that Randy refuses but he espically likes jelly sandwiches. Both boys would eat nothing but candy if allowed.

The children are accostumed to eating at the table with the family. The amount of food Randy eats need to be monitored. When he came into care he would eat until he vomited and may be concerned about there being enough food when he moves into a new home.

Wesley is not potty trained but he is working on it. The foster mother puts him on the toilet several times a day. He sleeps with a diaper on. Randy is potty trained but  has to be watched or he will take large wads of toilet paper and try to "flush it away".

Both boys like to bathe, alone and together. They like bubbles and toys in the tub.

Randy can dress himself but likes to be dressed. He can also tie his shoes. Wesley tries but cannot quite dress himself. Wesley likes to take his shoes off without haveing them untied.

Wesley is in the midst of the terrible twos. He will pinch and bite. He also does not like to hare his toys at this time.

Randy does not stutter but will sometimes repeat words twice or more.

Wesley does not appear to have any fears and acts very independent.

Randy is afraid of devils and ghosts. The foster mother thinks he was allowed to watch "horror" movies on cable and has since developed these fears.

Both boys "love" to swim, the foster parents have a pool. They need to be closely supervised. They also like to ride their bike and big wheel. They like records and books and"love" Sesame Street.

Randy plays well with children his own age as does Wesley. They also get along well with adults. Randy still likes to parent Wesley but the foster mother has been helping him to enjoy being a brother. Randy also likes to follow the foster father around and is quite attached.

Randy will be ready for kindergarten in the fall, he can count bot does not recognize his numbers and letters yet. Randy also enjoys bible school.

Randy does not have any dangerous habits but Wesley will put almost anything in his mouth.

Both fellows are quiet at first but adjust well.

---

## FAMILY BACKGROUND

### Mother

Anna W.
DOB: 1-9-59
Education and employment unknown

### Father
Bob R. W.
DOB: 7-27-57
Education and employment unknown

Little is known about the family. It has been reported that both parents used drugs. It is not known if drugs were used while the mother was pregnant or to what extent they were used. Wesley lived with his mother and a succession of boyfriends who were physically abusive. Randy lived with his father and various other relatives who were generally neglectful. There are no grandparents or extended family who maintain an interest in these children.

5538

ADOPTION TRANSFER SHEET

Child's Original Name _Wesley Allen Whitfield_ =

Child's Date of Birth _11-17-80_

Adoptive Parent's Name _Dan + Patricia Halpren_

Date Consummated _3-2-84_

Natural Mother's Name _Anna Maria Whitfield (Hammons)_ _maiden name_

D.O.B. _1-8-59_

Natural Father's Name _Bob Randall Whitfield_

D.O.B. _7-27-57_

Siblings _Randy Allen Whitfield_  D.O.B. _9-13-77_

_____  D.O.B. _____

_____  D.O.B. _____

Adoption Decree Date _3-2-84_

Included in folder ___✓___
(Please check)

5539

# Certificate of Birth

THE STATE OF TEXAS
COUNTY OF DENTON §
CITY OF DENTON

Name of Child _Wesley Allen Whitfield_

Sex _Male_ Date of Birth _November 17, 1980_ Birthplace _Denton, Texas_

| | Father | Maiden Name of Mother |
|---|---|---|
| Name | _Bob Randal Whitfield_ | _Anna Marie Hammons_ |
| Birthplace | _Texas_ | _Texas_ |
| Race or Color | _Caucasian_ | _Caucasian_ |
| Age | _23_ Occupation _Painter_ | _21_ Occupation _Cashier_ |

THE STATE OF TEXAS
COUNTY OF DENTON §
CITY OF DENTON

I, Local Registrar of the City of Denton, Denton County, Texas do hereby certify the above and foregoing to be true and correct facts relating to the birth of the above-named child as same appears on record in Volume _40_ Page _1232_, Birth Records of the City of Denton, Denton County, Texas. File Date _2-5-81_

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _3_ day of _November_, A.D., 19 _82_.

By _Connie Sue Regg_ Deputy

CHARLOTTE ALLEN, LOCAL REGISTRAR
CITY OF DENTON, DENTON COUNTY, TEXAS

5540

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP
TRACKING SYSTEM (FACTS) — Turnaround Document**

FC 6

WORKER        MAIL CODE 347-1
BASDEN, BEVERLY H
BJN      05135C02  EMP. C610
SUPERVISOR MAIL CODE 347-1

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| 2. Emp. No. 15 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 347.1 | |

6. Worker Responsibility 26   [X] 1-Primary Responsibility   [ ] 2-Courtesy Supervision

**CLIENT INFORMATION**   PROCESS DATE 06-08-83   ACTIVE

7. Client No. 31  502744881

8. Action Code 41  [ ]1-Initiate Tracking  [ ]2-Update  [ ]3-Terminate Tracking  [ ]4-Close

9. Effective Date 43  09-11-83

10. Client Name (Last) 80  WHITFIELD  (First) 65  WESLEY  (MI) 78  A

11. Social Security No.  449590122  12. Date of Birth 87  11-17-80

13. Ethnic Group  [X]1-Anglo [ ]2-Black [ ]3-Hispanic [ ]4-American Indian [ ]5-Oriental [ ]6-Other

14. Sex  [ ]1-Female [X]2-Male

15. CLIENT CHARACTERISTICS
02-Blind, 03-Deaf, 04-Physically Handicapped, 05-Mentally Retarded, 06-Emotionally Disturbed, 07-Sibling Group, 08-Refugee, 09-Migrant, [X]10-None, 11-Entrant

16. Family Identifier Name  WHITFIELD ANNA
17. Family ID Client No.  502744879

18. ELIGIBILITY STATUS
20. Certification/Eligibility Date 03-14-83

21. Review Date 11-18-83
22. Priority  0

23. STATUS [X]02-Men. Conservatorship/Parental Rts. Term.
24. Legal Status Date 05-11-83  25. County 061

26. PERMANENCY PLAN [X]01-Return Home/Dismiss Conserv.

**PLACEMENT INFORMATION**
| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
| 01 | 10-28-82 | 05 | 08 | 080421 | HECTOR VITEYCHUK |
34. Residence Street Address 17 SHILOH CIRCLE  35. City ROANOKE  36. St TX  37. ZIP 76262  38. County 061

DCN F3158002

5541

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document

| FC | | |
|---|---|---|
| **6** | WORKER        MAIL CODE   347-1 | |
| | BASDEN, BEVERLY H | |
| | BJN        05135C02    EMP.  C610 | |
| | SUPERVISOR MAIL CODE 347-1 | |
| **1** | | |
| 13 | | |

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| 2. Emp. No. 18 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 347-1 | 061683 |

| 6. Worker Responsibility 29 | |
|---|---|
| X  1-Primary Responsibility | 2-Courtesy Supervision |

---

## CLIENT INFORMATION

PROCESS DATE  06-08-83  ACTIVE

| 7. Client No. 81 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 50274N881 | 1-Initiate Tracking  X 2-Update  3-Terminate Tracking  4-Close | 051183 |

| 10. Client Name (Last) 50 | (First) 66 | (MI) 70 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 11-17-80 |

| 13. Ethnic Group 94 | | | | | | 14. Sex 95 | |
|---|---|---|---|---|---|---|---|
| 1-Anglo  2-Black  3-Hispanic  4-American Indian  5-Oriental  6-Other | | | | | | 1-Female | 2-Male |

| 15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic) | | | | 15.a. Certification Worker BJN |
|---|---|---|---|---|
| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11 - Entrant | |
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | | |
| 04 - Physically Handicapped | 07 - Sibling Group | 10 - None | | |

| 2 | | 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|---|---|
| 1 | 15 | | |

| 18. CLIENT TYPE | | 19. ELIGIBILITY STATUS | | 20. Certification/ Eligibility Date |
|---|---|---|---|---|
| 31 - Abuse/Neglect  32 - Abuse  33 - Neglect  34 - Truant  35 - Runaway  36 - Adj. CHINS-Court Ordered | 37 - Non-adjudicated CHINS  38 - Adj. Delinquent-Court Ordered  42 - Protective Placement (Non-Abuse/Neglect)  43 - Interstate Compact for Placement of Children | 01 - SSI  02 - AFDC Recip  03 - MAO/IE  04 - Inc. Elig.  05 - Without Regard  06 - AFDC Foster Care | 09-MAO Foster Care  10-State Paid Foster Care  11-APDC/MAO/SP PC Application Pending  14-Cat. 6 R/C | |

| | 20.a. Denial Date | 21. Review Date | 22. Priority |
|---|---|---|---|
| | | | 0 |

## LEGAL INFORMATION

| 23. STATUS—Initiate/Update  Terminate/Close | | 24. Legal Status Date | 25. County |
|---|---|---|---|
| 01 - Man. Conservatorship/ Parental Rts. Not Term.  02 - Man. Conservatorship/ Parental Rts. Term.  03 - Voluntary Relinquishment  04 - Voluntary Placement Agreement  05 - Other Legal Basis for DHR Responsibility | 06 - Adoption Consummated  07 - Child Emancipated  08 - Child Died  09 - DHR Resp. Terminated | | |

| 26. PERMANENCY PLAN | | 27. ARE/ OTHER EXCHANGE |
|---|---|---|
| 01 - Return Home/ Dismiss Conserv.  X 02 - Adoption  03 - Permanent Foster Care  04 - Transfer-Cons. to Other  05 - Permanent Custodial Care | 06 - Eman-cipation  07 - Other  08 - Pending | 1 - NA  2 - ARE  3 - ARE & Other Exchange  X 4 - No |

## PLACEMENT INFORMATION – Do not enter Item 28 (Line) except on corrections.

| 3 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13 | | | | | | | | | |
| | 34. Residence Street Address 61 | | | | | 35. City | 36. St | 37. ZIP | 38. County |

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | | 35. City | 36. St | 37. ZIP | 38. County |

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | | 35. City | 36. St | 37. ZIP | 38. County |

| MEDICAID CARD ADDRESS if different from current placement | | |
|---|---|---|
| 42. NAME—LAST | | FIRST |
| 43. STREET | | |
| 44. CITY | 45. St  TX | 46. ZIP |

| 6 | 39. CORRECT/TRANSFER TO THIS BJN | 40.  FOR S.O. USE | 41. |
|---|---|---|---|
| 12 | | | |

Form 2001-8/2-83

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document**

FC
6

WORKER MAIL CODE 347-1
BASDEN, BEVERLY H
BJN 05135C02 EMP. C610
SUPERVISOR MAIL CODE 347-1

1
13

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| 2. Emp. No. 19 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | |

6. Worker Responsibility 29
[X] 1-Primary Responsibility    [ ] 2-Courtesy Supervision

**CLIENT INFORMATION**    PROCESS DATE 05-01-83    ACTIVE

7. Client No. 31  502744881

8. Action Code 41
[ ] 1-Initiate Tracking  [ ] 2-Update  [ ] 3-Terminate Tracking  [ ] 4-Close

9. Effective Date  03-14-83

10. Client Name (Last) 80  WHITFIELD   (First) 65 WESLEY  (MI) 76  A

11. Social Security No. 77  449590122

12. Date of Birth 87  11-17-80

13. Ethnic Group 94
[X] 1-Anglo  [ ] 2-Black  [ ] 3-Hispanic  [ ] 4-American Indian  [ ] 5-Oriental  [ ] 6-Other

14. Sex 96  [ ] 1-Female  [X] 2-Male

15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic)
02-Blind  05-Mentally Retarded  08-Refugee  11-Entrant
03-Deaf  06-Emotionally Disturbed  09-Migrant
04-Physically Handicapped  07-Sibling Group  [X] 10-None

15.a. Certification Worker BJN

16. Family Identifier Name (enter last name first)  WHITFIELD  ANNA

17. Family ID Client No. (must be registered on SSMS)  502748679

18. CLIENT TYPE
31-Abuse/Neglect  37-Non-adjudicated CHINS
[X] 32-Abuse  38-Adj. Delinquent-Court Ordered
33-Neglect  42-Protective Placement (Non-Abuse/Neglect)
34-Truant  43-Interstate Compact for Placement of Children
35-Runaway
36-Adj. CHINS-Court Ordered

19. ELIGIBILITY STATUS
01-SSI  09-MAO Foster Care
02-AFDC Recip  10-State Paid Foster Care
03-MAO/IE  11-AFDC/MAO/SP FC Application Pending
04-Inc. Elig.  14-Cat. 5 R/E
05-Without Regard
[X] 06-AFDC Foster Care

20. Certification/Eligibility Date  03-14-83
20.a. Denial Date
21. Review Date  NA
22. Priority 1 0

**LEGAL INFORMATION**

23. STATUS—Initiate/Update Terminate/Close
[X] 01-Man. Conservatorship/Parental Rts. Not Term.
02-Man. Conservatorship/Parental Rts. Term.
03-Voluntary Relinquishment
04-Voluntary Placement Agreement
05-Other Legal Basis for DHR Responsibility
06-Adoption Consummated
07-Child Emancipated
08-Child Died
09-DHR Resp. Terminated

24. Legal Status Date  10-29-82
25. County  061

26. PERMANENCY PLAN
[X] 01-Return Home/Dismiss Conserv.  06-Eman-cipation
02-Adoption  07-Other
03-Permanent Foster Care  08-Pending
04-Transfer Cons. to Other
05-Permanent Custodial Care

27. ARE/OTHER EXCHANGE
[X] 1-NA
2-ARE
3-ARE & Other Exchange
4-No

**PLACEMENT INFORMATION – Do not enter Item 28 (Line) except on corrections.**

| 3 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | 01 | 10-28-82 | 05 | 13 | 080421 | HECTOR VITEYCHUK |

34. Residence Street Address  17 SHILOH CIRCLE  35. City ROANOKE  36. St. TX  37. ZIP 76262  38. County 061

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | | -/- | | | | |

34. Residence Street Address  35. City  36. St.  37. ZIP  38. County

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|---|
| | | -/- | | | | |

34. Residence Street Address  35. City  36. St.  37. ZIP  38. County

39. CORRECT/TRANSFER TO THIS BJN   40. FOR S.O. USE  41.

Form 2001-B/2-83

5543

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document**

FC
6

WORKER    MAIL CODE  347-1
BASDEN, BEVERLY H
BJN    05135C02    EMP.  C610
SUPERVISOR MAIL CODE 347-1

13

### WORKER INFORMATION

1. Worker Name (Last) — BASDEN    (First) — BEVERLY H
2. Emp. No. 18 — C610    3. BJN 20 — 05135C02    4. Mail Code — 3971    5. Today's Date — 0511 83
6. Worker Responsibility 29   [x] 1-Primary Responsibility   [ ] 2-Courtesy Supervision

### CLIENT INFORMATION

PROCESS DATE
05-01-83
ACTIVE

7. Client No. 31 — 60274488I
8. Action Code 41  [ ] 1-Initiate Tracking  [x] 2-Update  [ ] 3-Terminate Tracking  [ ] 4-Close
9. Effective Date — 0511 83
10. Client Name (Last) 50 — WHITEFIELD    (First) 65 — WESLEY    (MI) 76
11. Social Security No. 77 — 469580022
12. Date of Birth 87 — 11-07-80

13. Ethnic Group 94  [ ] 1-Anglo  [ ] 2-Black  [ ] 3-Hispanic  [ ] 4-American Indian  [ ] 5-Oriental  [ ] 6-Other
14. Sex 96  [ ] 1-Female  [ ] 2-Male

### 15. CLIENT CHARACTERISTICS — Check all that apply (enter an * to delete a characteristic)

[ ] 02 - Blind   [ ] 05 - Mentally Retarded   [ ] 08 - Refugee   [ ] 11 - Entrant
[ ] 03 - Deaf   [ ] 06 - Emotionally Disturbed   [ ] 09 - Migrant
[ ] 04 - Physically Handicapped   [ ] 07 - Sibling Group   [ ] 10 - None

16.a. Certification Worker BJN

16. Family Identifier Name (enter last name first)
17. Family ID Client No. (must be registered on SSMS)

### 18. CLIENT TYPE

[ ] 31 - Abuse/Neglect
[ ] 32 - Abuse
[ ] 33 - Neglect
[ ] 34 - Truant
[ ] 35 - Runaway
[ ] 36 - Adj. CHINS - Court Ordered
[ ] 37 - Non-adjudicated CHINS
[ ] 38 - Adj. Delinquent-Court Ordered
[ ] 42 - Protective Placement (Non-Abuse/Neglect)
[ ] 43 - Interstate Compact for Placement of Children

### 19. ELIGIBILITY STATUS

[ ] 01 - SSI
[ ] 02 - AFDC Recip
[ ] 03 - MAO/IE
[ ] 04 - Inc. Elig.
[ ] 05 - Without Regard
[ ] 06 - AFDC Foster Care
[ ] 09 - MAO Foster Care
[ ] 10 - State Paid Foster Care
[ ] 11 - AFDC/MAO/SP FC Application Pending
[ ] 14 - Cat. 5 R/E

20. Certification/Eligibility Date
20.a. Denial Date
21. Review Date
22. Priority — 0

### 23. STATUS — Initiate/Update    Terminate/Close

[x] 01 - Man. Conservatorship/Parental Rts. Not Term.
[ ] 02 - Man. Conservatorship/Parental Rts. Term.
[ ] 03 - Voluntary Relinquishment
[ ] 04 - Voluntary Placement Agreement
[ ] 05 - Other Legal Basis for DHR Responsibility

#### LEGAL INFORMATION

[ ] 06 - Adoption Consummated
[ ] 07 - Child Emancipated
[ ] 08 - Child Died
[ ] 09 - DHR Resp. Terminated

24. Legal Status Date — 0511 83
25. County

### 26. PERMANENCY PLAN

[ ] 01 - Return Home/Dismiss Conserv.
[ ] 02 - Adoption
[ ] 03 - Permanent Foster Care
[ ] 04 - Transfer Cons. to Other
[ ] 05 - Permanent Custodial Care
[ ] 06 - Emancipation
[ ] 07 - Other
[x] 08 - Pending

### 27. ARE/OTHER EXCHANGE

[ ] 1 - NA
[ ] 2 - ARE
[ ] 3 - ARE & Other Exchange
[ ] 4 - No

### PLACEMENT INFORMATION — Do not enter Item 28 (Line) except on corrections.

3
28. Line  29. Date Placed  30. Liv. Arr.  31. How Prov.  32. Facility No.  33. Residence Name
35. City  36. St  37. ZIP  38. County
34. Residence Street Address

4
28. Line  29. Date Placed  30. Liv. Arr.  31. How Prov.  32. Facility No.  33. Residence Name
35. City  36. St  37. ZIP  38. County
34. Residence Street Address

5
28. Line  29. Date Placed  30. Liv. Arr.  31. How Prov.  32. Facility No.  33. Residence Name
35. City  36. St  37. ZIP  38. County
34. Residence Street Address

### MEDICAID CARD ADDRESS If different from current placement

42. NAME—LAST    FIRST
43. STREET
44. CITY    45. ST TX    46. ZIP

6
39. CORRECT/TRANSFER TO THIS BJN
40. FOR S.O. USE
41.

13

Form 2001-B/2-83

5544

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround

| FC | | WORKER INFORMATION | |
|---|---|---|---|

**6**

```
WORKER       MAIL CODE   347-1
BASDEN, BEVERLY H
BJN       05135C02   EMP.  C610
SUPERVISOR MAIL CODE 347-1
```

**1** 13

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| 2. Emp. No. 15 | 3. BJN 20 | 4. Mail Code 28 | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 347 24 | |

| 6. Worker Responsibility 29 | |
|---|---|
| X 1-Primary Responsibility | 2-Courtesy Supervision |

## CLIENT INFORMATION

| PROCESS DATE 03-17-83 ACTIVE | | | |
|---|---|---|---|

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744881 | 1-Initiate Tracking  2-Update  X 3-Terminate Tracking  4-Close | 03-14-83 |

| 10. Client Name (Last) 50 | (First) 65 | (MI) 76 | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 11-17-80 |

| 13. Ethnic Group 94 | 14. Sex 95 |
|---|---|
| X 1-Anglo   2-Black   3-Hispanic   4-American Indian   5-Oriental   6-Other | 1-Female   X 2-Male |

| 15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic) | | | 15. a. ARN 109 |
|---|---|---|---|
| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11-ENTRANT |
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | |
| 04 - Physically Handicapped | 07 - Sibling Group | X 10 - None | |

98

| 16. Family Identifier Name (enter last name first) | 17. Family ID No. |
|---|---|
| WHITFIELD, ANNA | 502744879 |

**2**

| 18. CLIENT TYPE | | 19. ELIGIBILITY STATUS | | 20. Eligibility Date | 21. Review Date | 22. Priority |
|---|---|---|---|---|---|---|
| 31 - Abuse/Neglect | 37 - Non-adjudicated CHINS | 01 - SSI | 09 - MAO Foster Care | 03-14-83 | NA | 0 1 |
| X 32 - Abuse | 38 - Adj. Delinquent-Court Ordered | 02 - AFDC | 10 - State Paid Foster Care | | | |
| 33 - Neglect | 42 - Protective Placement (Non-Abuse/Neglect) | 03 - MAO/IE | 11 - AFDC/MAO/SP FC Application Pending | | | |
| 34 - Truant | | 04 - Inc. Elig. | | | | |
| 35 - Runaway | | 05 - Without Regard | | | | |
| 36 - Adj. CHINS - Court Ordered | | X 06 - AFDC Foster Care | | | | |

48

## LEGAL INFORMATION

| 23. LEGAL STATUS | T | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | | 27. ARE/ARENA |
|---|---|---|---|---|---|---|
| X 01 - Man. Conservatorship/ Parental Rts. Not Term. | T | 06 - Adoption Consummated | | X 01 - Return Home/ Dismiss Conserv. | 06 - Eman- cipation | X 1-NA |
| 02 - Man. Conservatorship/ Parental Rts. Term. | | 07 - Child Emancipated | 10-29-82 | 061 | 02 - Adoption | 07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | | 08 - Child Died | | 03 - Permanent Foster Care | 08 - Pending | 3-ARENA/ARE |
| 04 - Voluntary Placement Agreement | | 09 - DHR Resp. Terminated | | 04 - Transfer Cons. to Other | 09 - NA | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | | |

## PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 3  01 | 10-28-82 | 05 | 13 | 080421 | HECTOR VITEYCHUK |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| 17 SHILOH CIRCLE | ROANOKE | TX | 76262 | 061 |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 4 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 5 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| | | | | |

## SPECIAL CHANGE

| 39. NEW BJN | 40. FOR S.O. USE | 41. |
|---|---|---|

**6**

Form 2001-B/G-80          DCN   F3075003

5545

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround

FC
6

WORKER          MAIL CODE   347-1
BASDEN, BEVERLY H
RJN        05135C02    EMP.  C610
SUPERVISOR MAIL CODE 347-1

1
1

## WORKER INFORMATION

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| BASDEN | | BEVERLY H |

| 2. Emp. No. 18 | 3. BJN 20 | | 4. Mail Code | 5. Today's Date |
|---|---|---|---|---|
| C610 | 05135C02 | | 3471 | |

6. Worker Responsibility 29
[X] 1 - Primary Responsibility      [ ] 2 - Courtesy Supervision

## CLIENT INFORMATION

PROCESS DATE
03-17-83
ACTIVE

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744881 | [ ] 1 - Initiate Tracking   [ ] 2 - Update   [ ] 3 - Terminate Tracking   [ ] 4 - Close | |

2

| 10. Client Name (Last) 80 | (First) 68 | (MI) 75 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 11-17-80 |

| 13. Ethnic Group 94 | | 14. Sex 96 |
|---|---|---|
| [ ] 1 - Anglo   [ ] 2 - Black   [ ] 3 - Hispanic   [ ] 4 - American Indian   [ ] 5 - Oriental   [ ] 6 - Other | | [ ] 1 - Female   [ ] 2 - Male |

| 15. CLIENT CHARACTERISTICS - Check all that apply (enter an ● to delete a characteristic) | | 16. ARN 100 |
|---|---|---|
| [ ] 02 - Blind   [ ] 03 - Deaf   [ ] 04 - Physically Handicapped | [ ] 05 - Mentally Retarded   [ ] 06 - Emotionally Disturbed   [ ] 07 - Sibling Group | [ ] 08 - Refugee 89   [ ] 09 - Migrant   [ ] 10 - None |

| 16. Family Identifier Name (enter last name first) 18 | 17. Family ID No. 17 |
|---|---|

## 18. CLIENT TYPE

| | | 19. ELIGIBILITY STATUS | | 20. Eligibility Date | 21. Review Date | 22. Priority |
|---|---|---|---|---|---|---|
| [ ] 31 - Abuse/Neglect   [ ] 32 - Abuse   [ ] 33 - Neglect   [ ] 34 - Truant   [ ] 35 - Runaway   [ ] 36 - Adj. CHINS - Court Ordered | [ ] 37 - Non-adjudicated CHINS   [ ] 38 - Adj. Delinquent - Court Ordered   [ ] 42 - Protective Placement (Non-Abuse/Neglect) | [ ] 01 - SSI   [ ] 02 - AFDC   [ ] 03 - MAO/IE   [ ] 04 - Inc. Elig.   [ ] 05 - Without Regard   [ ] 08 - AFDC Foster Care | [ ] 09 - MAO Foster Care   [ ] 10 - State Paid Foster Care   [ ] 11 - AFDC/MAO/SP FC Application Pending | | | 0 |

## LEGAL INFORMATION

| 23. LEGAL STATUS (T) | | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | | 27. ARE/ARENA |
|---|---|---|---|---|---|---|
| [ ] 01 - Man. Conservatorship/ Parental Rts. Not Term.   [ ] 02 - Man. Conservatorship/ Parental Rts. Term.   [ ] 03 - Voluntary Relinquishment   [ ] 04 - Voluntary Placement Agreement   [ ] 05 - Other Legal Basis for DHR Responsibility | [ ] 06 - Adoption Consummated   [ ] 07 - Child Emancipated   [ ] 08 - Child Died   [ ] 09 - DHR Resp. Terminated | | | [ ] 01 - Return Home/ Dismiss Conserv.   [ ] 02 - Adoption   [ ] 03 - Permanent Foster Care   [ ] 04 - Transfer Cons. to Other   [ ] 05 - Permanent Custodial Care | [ ] 06 - Eman- cipation   [ ] 07 - Other   [ ] 08 - Pending   [ ] 09 - NA | [ ] 1 - NA   [ ] 2 - ARE   [ ] 3 - ARENA/ARE   [ ] 4 - No |

## PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 3 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | | 35. City | 36. St. | 37. ZIP | 38. County |

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | | 35. City | 36. St. | 37. ZIP | 38. County |

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34. Residence Street Address | | | | | 35. City | 36. St. | 37. ZIP | 38. County |

## SPECIAL CHANGE

| 6 | 39. NEW BJN | 40. FOR S.O. USE | 41. |
|---|---|---|---|

Form 2001-B/8-80

Texas Department of Human Resources

**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround**

```
FC
 6    WORKER        MAIL CODE  347-1
      BASDEN, BEVERLY H
      BJN       05135C02   EMP.  C610
      SUPERVISOR MAIL CODE 347-1
 1
```

## WORKER INFORMATION

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| BASDEN | | BEVERLY H |

| 2. Emp. No. 15 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | |

6. Worker Responsibility 29

☒ 1 - Primary Responsibility   ☐ 2 - Courtesy Supervision

## CLIENT INFORMATION

**PROCESS DATE** 12-03-82 ACTIVE

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744881 | ☐ 1 - Initiate Tracking  ☐ 2 - Update  ☐ 3 - Terminate Tracking  ☐ 4 - Close | 10-28-82 |

| 10. Client Name (Last) 50 | (First) 65 | (MI) 71 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 09-27-80 |

| 13. Ethnic Group 94 | 14. Sex 96 |
|---|---|
| ☒ 1 - Anglo  ☐ 2 - Black  ☐ 3 - Hispanic  ☐ 4 - American Indian  ☐ 5 - Oriental  ☐ 6 - Other | ☐ 1 - Female  ☒ 2 - Male |

## 15. CLIENT CHARACTERISTICS - Check all that apply (enter an ● to delete a characteristic)

| 02 - Blind | 06 - Mentally Retarded | 08 - Refugee | 15.a ARN 109 |
|---|---|---|---|
| 03 - Deaf | 08 - Emotionally Disturbed | 09 - Migrant | ☒ |
| 04 - Physically Handicapped | 07 - Sibling Group  ☒ | 10 - None | 11 - ENTRANT |

| 16. Family Identifier Name (enter last name first) | 17. Family ID No. |
|---|---|
| 2  WHITFIELD     ANNA | 502744879 |

| 18. CLIENT TYPE | 19. ELIGIBILITY STATUS | 20. Eligibility Date | 21. Review Date | 22. Priority |
|---|---|---|---|---|
| 31 - Abuse/Neglect  |  37 - Non-adjudicated CHINS  |  01 - SSI  09 - MAO Foster Care | 10-28-82 | NA | 0 7 |
| ☒ 32 - Abuse  |  38. Adj. Delinquent-Court Ordered  |  02 - AFDC  10 - State Paid Foster Care | | | |
| 33 - Neglect  |  42 - Protective Placement (Non-Abuse/Neglect)  |  03 - MAO/IE  11 - AFDC/MAO/SP FC Application Pending | | | |
| 34 - Truant  |  |  04 - Inc. Elig. | | | |
| 35 - Runaway  |  |  05 - Without Regard | | | |
| 38 - Adj. CHINS - Court Ordered  |  |  08 - AFDC Foster Care ☒ | | | |

## LEGAL INFORMATION

| 23. LEGAL STATUS | T | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | 27. ARE/ARENA |
|---|---|---|---|---|---|
| ☒ 01 - Man. Conservatorship/Parental Rts. Not Term. | | 10-29-82 | 061 | 01 - Return Home/Dismiss Conserv.  06 - Eman-cipation | ☐ 1 - NA |
| 02 - Man. Conservatorship/Parental Rts. Term. | | | | 02 - Adoption  07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | | | | 03 - Permanent Foster Care  08 - Pending | 3 - ARENA/ARE |
| 04 - Voluntary Placement Agreement | | | | 04 - Transfer Cons. to Other  09 - NA | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | |

## PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|
| 3 | 02  10-28-82 | 05 | 03 | 080921 | HECTOR VITEYCHUK | | | 36. County 063 |
| 34. Residence Street Address | | | | 35. City | | 36. St. | 37. ZIP | |
| 17 SHILOH CIRCLE | | | | ROANOKE | | TX | 76262 | |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | 38. County |
|---|---|---|---|---|---|---|---|---|
| 4 | | | | | | | | |
| 34. Residence Street Address | | | | 35. City | | 36. St. | 37. ZIP | |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | 38. County |
|---|---|---|---|---|---|---|---|---|
| 5 | | | | | | | | |
| 34. Residence Street Address | | | | 35. City | | 36. St. | 37. ZIP | |

## SPECIAL CHANGE

| 39. NEW BJN | 40. FOR S.O. USE | 41. |
|---|---|---|
| 6 | | |

Form 2001-B/6-80      DCN  E2336007

**FC**
,6 WORKER     MAIL CODE  347-1
BASDEN, BEVERLY H
BJN      05135C02   EMP.  C610
SUPERVISOR MAIL CODE 347-1

1
13

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround**

**WORKER INFORMATION**

| 1. Worker Name (Last) | | (First) | |
|---|---|---|---|
| BASDEN | | BEVERLY H | |

2. Emp. No. 13: C610   3. BJN 20: 05135C02   4. Mail Code: 3471   5. Today's Date:

6. Worker Responsibility 29: [X] 1 - Primary Responsibility   [ ] 2 - Courtesy Supervision

**CLIENT INFORMATION**   PROCESS DATE 11-15-82  ACTIVE

7. Client No. 31: 502744881

8. Action Code 41: [ ] 1-Initiate Tracking [ ] 2 - Update [ ] 3 - Terminate Tracking [ ] 4 - Close

9. Effective Date: 10-28-82

10. Client Name (Last) 50: WHITFIELD   (First) 65: WESLEY   (MI) 78: A
11. Social Security No.: 000000000   12. Date of Birth 87: 11-17-80

13. Ethnic Group 94: [X] 1-Anglo [ ] 2-Black [ ] 3-Hispanic [ ] 4-American Indian [ ] 5-Oriental [ ] 6-Other
14. Sex 96: [ ] 1 - Female [X] 2 - Male

15. CLIENT CHARACTERISTICS - Check all that apply (enter an ● to delete a characteristic)
02-Blind  03-Deaf  04-Physically Handicapped  05-Mentally Retarded  06-Emotionally Disturbed  07-Sibling Group  08-Refugee  09-Migrant  10-None
15.a. ARN 109: 11-ENTRANT

16. Family Identifier Name (enter last name first): WHITFIELD, ANNA
17. Family ID No.: 502744879

18. CLIENT TYPE
31-Abuse/Neglect  [X] 32-Abuse  33-Neglect  34-Truant  35-Runaway  36-Adj. CHINS-Court Ordered  37-Non-adjudicated CHINS  38-Adj. Delinquent-Court Ordered  42-Protective Placement (Non-Abuse/Neglect)

19. ELIGIBILITY STATUS
01-SSI  02-AFDC  03-MAO/IE  04-Inc. Elig.  05-Without Regard  08-AFDC Foster Care  09-MAO Foster Care  10-State Paid Foster Care  11-AFDC/MAO/SP FC Application Pending

20. Eligibility Date: 10-28-82   21. Review Date: NA   22. Priority: 0 1

**LEGAL INFORMATION**
23. LEGAL STATUS  T
[X] 01-Man. Conservatorship/Parental Rts. Not Term.  02-Man. Conservatorship/Parental Rts. Term.  03-Voluntary Relinquishment  04-Voluntary Placement Agreement  06-Other Legal Basis for DHR Responsibility
06-Adoption Consummated  07-Child Emancipated  08-Child Died  09-DHR Resp. Terminated

24. Legal Status Date: 10-29-82   25. County: 061

26. PERMANENCY PLAN
[X] 01-Return Home/Dismiss Conserv.  02-Adoption  03-Permanent Foster Care  04-Transfer Cons. to Other  05-Permanent Custodial Care  06-Emancipation  07-Other  08-Pending  09-NA

27. ARE/ARENA
1-NA  2-ARE  3-ARENA/ARE  4-No

**PLACEMENT INFORMATION** - Do not enter Item 28 (Line) except on corrections.
3 | 28. Line 01 | 29. Date Placed 10-28-82 | 30. Liv. Arr. 05 | 31. How Prov. 13 | 32. Facility No. 080421 | 33. Residence Name HECTOR VITEYCHUK
34. Residence Street Address: 17 SHILOH CIRCLE   35. City: ROANOKE   36.St: TX   37. ZIP: 76262   38. County: 061

4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name
34. Residence Street Address   35. City   36.St   37. ZIP   38. County

5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name
34. Residence Street Address   35. City   36.St   37. ZIP   38. County

**SPECIAL CHANGE**
6 | 39. NEW BJN | 40. FOR S.O. USE | 41.

Form 2001-0/0-80   DCN F2316001

5548

Texas Department of Human Resources

**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround**

FC
6

WORKER      MAIL CODE  347-1
BASDEN, BEVERLY H
BJN      05135C02    EMP.  C610
SUPERVISOR MAIL CODE 347-1

1
13

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| BASDEN | BEVERLY H |

| 2. Emp. No. 19 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | |

6. Worker Responsibility 29
[X] 1 - Primary Responsibility    [ ] 2 - Courtesy Supervision

---

**CLIENT INFORMATION**   PROCESS DATE 11-15-82   ACTIVE

| 7. Client No. 33 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744881 | [ ] 1 - Initiate Tracking  [ ] 2 - Update  [ ] 3 - Terminate Tracking  [ ] 4 - Close | |

| 10. Client Name (Last) 50 | (First) 65 | (MI) 79 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | | 000000000 | 11-17-80 |

14. Sex 96  [ ] 1 - Female   [X] 2 - Male

13. Ethnic Group 94
[X] 1 - Anglo   [ ] 2 - Black   [ ] 3 - Hispanic   [ ] 4 - American Indian   [ ] 5 - Oriental   [ ] 6 - Other

**15. CLIENT CHARACTERISTICS** - Check all that apply (enter an • to delete a characteristic)

| | | | 15.a. ARN 109 |
|---|---|---|---|
| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | |
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | |
| 04 - Physically Handicapped | 07 - Sibling Group | 10 - None | |

16. Family Identifier Name (enter last name first)     17. Family ID No.

**18. CLIENT TYPE**

| |
|---|
| 31 - Abuse/Neglect |
| 32 - Abuse |
| 33 - Neglect |
| 34 - Truant |
| 35 - Runaway |
| 36 - Adj. CHINS – Court Ordered |

| |
|---|
| 37 - Non-adjudicated CHINS |
| 38 - Adj. Delinquent - Court Ordered |
| 42 - Protective Placement (Non-Abuse/Neglect) |

**19. ELIGIBILITY STATUS**

| | |
|---|---|
| 01 - SSI | 09 - MAO Foster Care |
| 02 - AFDC | 10 - State Paid Foster Care |
| 03 - MAO/IE | 11 - AFDC/MAO/SP FC Application Pending |
| 04 - Inc. Elig. | |
| 05 - Without Regard | |
| 08 - AFDC Foster Care | |

20. Eligibility Date    21. Review Date

22. Priority
O

**23. LEGAL STATUS**   [T]
LEGAL INFORMATION

| |
|---|
| 01 - Man. Conservatorship/ Parental Rts. Not Term. |
| 02 - Man. Conservatorship/ Parental Rts. Term. |
| 03 - Voluntary Relinquishment |
| 04 - Voluntary Placement Agreement |
| 05 - Other Legal Basis for DHR Responsibility |

| |
|---|
| 06 - Adoption Consummated |
| 07 - Child Emancipated |
| 08 - Child Died |
| 09 - DHR Resp. Terminated |

24. Legal Status Date  25. County

**26. PERMANENCY PLAN**

| | |
|---|---|
| 01 - Return Home/ Dismiss Conserv. | 06 - Emancipation |
| 02 - Adoption | 07 - Other |
| 03 - Permanent Foster Care | 08 - Pending |
| 04 - Transfer Cons. to Other | 09 - NA |
| 05 - Permanent Custodial Care | |

**27. ARE/ARENA**

| |
|---|
| 1 - NA |
| 2 - ARE |
| 3 - ARENA/ARE |
| 4 - No |

---

**PLACEMENT INFORMATION** - Do not enter Item 28 (Line) except on corrections.

3

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

34. Residence Street Address      35. City

4

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

34. Residence Street Address      35. City

5

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

34. Residence Street Address      35. City

---

**SPECIAL CHANGE**

6

| 39. NEW BJN | 40. FOR S.O. USE | 41. |
|---|---|---|
| | | |

Form 2001-B/6-80

5549

**Texas Department of Human Resources**
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP**
**TRACKING SYSTEM (FACTS)**

FC [5]   [1]

WORKER INFORMATION

| 1. Worker Name (Last) | (First) |
|---|---|
| Basden | Beverly |

2. Emp. No. 18  C,6,1,0  Q5,1,3,5,C,0,2  3. BJN 20  4. Mail Code 3,4,7,1  5. Today's Date 1,1,0,9,8,2

6. Worker Responsibility 29  [X] 1 - Primary Responsibility  [ ] 2 - Courtesy Supervision

CLIENT INFORMATION   Temporary No.

A. Client No. 34  [ ] OR [ ] TO  0,1,1,4,2,9,9

8. Action Code 41  [X] 1 - Initiate Tracking  [ ] 2 - Update  [ ] 3 - Terminate Tracking  [ ] 4 - Close   9. Effective Date 1,0,2,8,8,2

10. Control Name (Last)  Whitfield (First) Wesley (MI) 11. Social Security No. N/A  12. Date of Birth 1,1,7,8,0

13. Ethnic Group 84  [X] 1 - Anglo  [ ] 2 - Black  [ ] 3 - Hispanic  [ ] 4 - American Indian  [ ] 5 - Oriental  [ ] 6 - Other   14. Sex 96  [ ] 1 - Female  [X] 2 - Male

15. CLIENT CHARACTERISTICS - Check all that apply (enter an ● to delete a characteristic)

| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 15a. ARN 109 |
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | |
| 04 - Physically Handicapped | 07 - Sibling Group | [X] 10 - None | |

16. Family Identifier Name (enter last name first)  Whitfield, Anna   17. Family ID No. 5,0,2,7,4,4,8,7,9

| 18. CLIENT TYPE | 19. ELIGIBILITY STATUS | 20. Eligibility Date | 21. Review Date | 22. Priority |
|---|---|---|---|---|
| 31 - Abuse/Neglect [X] | 37 - Non-adjudicated CHINS | 01 - SSI | | |
| 32 - Abuse | 38 - Adj. Delinquent-Court Ordered | 02 - AFDC | 03 - MAO/IE | |
| 33 - Neglect | 42 - Protective Placement (Non-Abuse/Neglect) | 04 - Inc. Elig. | 05 - Without Regard | 09 - MAO Foster Care | 10 - State Paid Foster Care | 11 - AFDC/MAO/SP FC Application Pending [X] |
| 34 - Truant | | 06 - AFDC Foster Care | |
| 35 - Runaway | | | |
| 36 - Adj. CHINS - Court Ordered | | | 1,0,2,8,8,2 | N/A | 0,1 |

LEGAL INFORMATION

| 23. LEGAL STATUS | | 24. Legal Status Date | 25. County | 26. PERMANENCY PLAN | 27. ARE/ARENA |
|---|---|---|---|---|---|
| 01 - Man. Conservatorship/Parental Rts. Not Term. [X] | 06 - Adoption Consummated | 1,0,2,8,8,2 | 0,6,1 | 01 - Return Home/Dismiss Conserv. | 06 - Emancipation | [X] 1 - NA |
| 02 - Man. Conservatorship/Parental Rts. Term. | 07 - Child Emancipated | | | 02 - Adoption | 07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | 08 - Child Died | | | 03 - Permanent Foster Care | 08 - Pending | 3 - ARENA/ARE |
| 04 - Voluntary Placement Agreement | 09 - DHR Resp. Terminated | | | 04 - Transfer Cons. to Other | 09 - NA | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | | |

PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|
| 3 | 1,0,2,8,8,2 | 0,5 | 3 | 0,8,0,4,2,1 | Hector Votewshek | | | |
| | 34. Residence Street Address  17, Shiloh Circle | | | 35. City  Roanoke | TX | 7,6,2,6,2 | 0,6,1 |
| 4 | | | | | | | | |
| | 34. Residence Street Address | | | 35. City | | | |
| 5 | | | | | | | | |
| | 34. Residence Street Address | | | 35. City | | | |

SPECIAL CHANGE

6  39. New BJN  40. For D.C. Use  41.

Form 2001-A/6-80

FC | 6

Texas Department of Human Resources

**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document**

WORKER | MAIL CODE 347-1
BASDEN, BEVERLY H
BJN       05135C02   EMP.  C610
SUPERVISOR MAIL CODE 347-1

**WORKER INFORMATION**

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| BASDEN | | BEVERLY H |

| 2.Emp. No.-10 | 3. BJN 30 | 4. Mail Code 36 | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | 083183 |

6.Worker Responsibility 39
☒ 1-Primary Responsibility   ☐ 2-Courtesy Supervision

| **CLIENT INFORMATION** | PROCESS DATE 07-01-83 | 8. Action Code 41 ☐ 1-Initiate Tracking  ☒ 2-Update | ☐ 3-Terminate Tracking | ☐ 4-Close 43 | 9. Effective Date |
|---|---|---|---|---|---|

| 7. Client No. 31 | | | | |
|---|---|---|---|---|
| 592745581 | ACTIVE | | | |

| 10. Client Name (Last) 80 | | (First) 65 | (MI) 77 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|---|
| WHITFIELD | | WESLEY | a | 449590122 | 11-17-80 |

| 13. Ethnic Group 84 | | | | | 14. Sex 86 |
|---|---|---|---|---|---|
| ☐ 1-Anglo  ☒ 2-Black  ☐ 3-Hispanic  ☐ 4-American Indian  ☐ 5-Oriental  ☐ 6-Other | | | | | ☐ 1-Female  ☒ 2-Male |

**15. CLIENT CHARACTERISTICS** - Check all that apply (enter an * to delete a characteristic)

| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11 - Entrant | 15.a. Certification Worker BJN |
|---|---|---|---|---|
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | | |
| 04 - Physically Handicapped | 07 - Sibling Group | 10 - None | | |

16. Family Identifier Name (enter last name first)

17. Family ID Client No. (must be registered on SSMS)

| **18. CLIENT TYPE** | | **19. ELIGIBILITY STATUS** | | **20.** Certification/ Eligibility Date |
|---|---|---|---|---|
| 31 - Abuse/Neglect | 37 - Non-adjudicated CHINS | 01 - SSI | 09 - MAO Foster Care | |
| 32 - Abuse | 38 - Adj. Delinquent-Court Ordered | 02 - AFDC Recip | 10 - State Paid Foster Care | **20.a** Denial Date |
| 33 - Neglect | 42 - Protective Placement (Non-Abuse/Neglect) | 03 - MAO/IE | 11 - AFDC/MAO/SP FC Application Pending | |
| 34 - Truant | 43 - Interstate Compact for Placement of Children | 04 - Inc. Elig. | | **21.** Review Date |
| 35 - Runaway | | 05 - Without Regard | 14 - Cat. 5 R/E | |
| 36 - Adj. CHINS-Court Ordered | | 08 - AFDC Foster Care | | **22.** Priority  0 |

**LEGAL INFORMATION**

| **23. STATUS**—Initiate/Update     Terminate/Close | | **24.** Legal Status Date | **25.** County | **26. PERMANENCY PLAN** | | **27. ARE/ OTHER EXCHANGE** |
|---|---|---|---|---|---|---|
| 01 - Man. Conservatorship/ Parental Rts. Not Term. | 06 - Adoption Consummated | | | 01 - Return Home/ Dismiss Conserv. | 06 - Eman- cipation | 1 - NA |
| 02 - Man. Conservatorship/ Parental Rts. Term. | 07 - Child Emancipated | | | 02 - Adoption | 07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | 08 - Child Died | | | 03 - Permanent Foster Care | 08 - Pending | 3 - ARE & Other Exchange |
| 04 - Voluntary Placement Agreement | 09 - DHR Resp. Terminated | | | 04 - Transfer Cons. to Other | | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | | |

**PLACEMENT INFORMATION** - Do not enter Item 28 (Line) except on corrections.

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 3 | 0208 | 80830 | 4 | 03 | 007121 | Halpin, Daniel | | | |
| | 34. Residence Street Address | | | | | 35. City | | | | |
| | 4015 Brookfield Ln | | | | | Arlington | | TX | 76016 | |

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | | | | | | | | | |
| | 34. Residence Street Address | | | | | 35. City | | | | |

| | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 36. St | 37. ZIP | 39. County |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | | | | | | | | | | |
| | 34. Residence Street Address | | | | | 39. City | | | | |

**MEDICAID CARD ADDRESS if different from current placement**

| 42. NAME—LAST | | FIRST |
|---|---|---|
| 43. STREET | | |
| 44. CITY | | TX |  45. ZIP |

| **39. CORRECT/TRANSFER TO THIS BJN** | 40. | **FOR B.O. USE** | 41. |
|---|---|---|---|
| 8 05135C02 | | | |

Form 2001-B/2-83

FC
6

| | | |
|---|---|---|
| WORKER | MAIL CODE | 347-1 |
| BASDEN, BEVERLY H | | |
| BJN | 05135C02 | EMP. C610 |
| SUPERVISOR MAIL CODE 347-1 | | |

1
91

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document

**WORKER INFORMATION**

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| BASDEN | | BEVERLY H |

| 2.Emp. No. 15 | 3. BJN 20 | 4. Mail Code 25 | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | |

**6.Worker Responsibility 29**
[X] 1-Primary Responsibility   [ ] 2-Courtesy Supervision

**CLIENT INFORMATION**

| PROCESS DATE | |
|---|---|
| 07-01-83 | |
| ACTIVE | |

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 502744881 | [ ] 1-Initiate Tracking  [ ] 2-Update  [X] 3-Terminate Tracking  [ ] 4-Close | 05-11-83 |

| 10. Client Name (Last) 80 | (First) 65 | (MI) 76 | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 11-17-80 |

| 13. Ethnic Group 94 | 14. Sex 95 |
|---|---|
| [X] 1-Anglo  [ ] 2-Black  [ ] 3-Hispanic  [ ] 4-American Indian  [ ] 5-Oriental  [ ] 6-Other | [ ] 1-Female  [X] 2-Male |

**15. CLIENT CHARACTERISTICS — Check all that apply (enter an * to delete a characteristic)**

| | | | 15.a. Certification Worker BJN |
|---|---|---|---|
| [ ] 02 - Blind | [ ] 05 - Mentally Retarded | [ ] 08 - Refugee | [ ] 11 - Entrant | |
| [ ] 03 - Deaf | [ ] 06 - Emotionally Disturbed | [ ] 09 - Migrant | | |
| [ ] 04 - Physically Handicapped | [ ] 07 - Sibling Group | [X] 10 - None | | |

2
16. Family Identifier Name (enter last name first)
WHITFIELD, ANNA

17. Family ID Client No. (must be registered on SSMS)
502744879

**18. CLIENT TYPE**

| | |
|---|---|
| [ ] 31 - Abuse/Neglect | [ ] 37 - Non-adjudicated CHINS |
| [X] 32 - Abuse | [ ] 38 - Adj. Delinquent-Court Ordered |
| [ ] 33 - Abuse | |
| [ ] 34 - Truant | [ ] 42 - Protective Placement (Non-Abuse/Neglect) |
| [ ] 35 - Runaway | [ ] 43 - Interstate Compact for Placement of Children |
| [ ] 36 - Adj. CHINS-Court Ordered | |

**19. ELIGIBILITY STATUS**

| | |
|---|---|
| [ ] 01 - SSI | [ ] 09 - MAO Foster Care |
| [ ] 02 - AFDC Recip | [ ] 10 - State Paid Foster Care |
| [ ] 03 - MAO/IE | [ ] 11 - FC/AFDC/MAO/SP AFDC Application Pending |
| [ ] 04 - Inc. Elig. | |
| [ ] 05 - Without Regard | [ ] 14 - Cat. 5 R/E |
| [ ] 08 - AFDC Foster Care | |

**20. Certification/ Eligibility Date**
03-19-83

**20.a. Denial Date**

**21. Review Date**
11-18-83

**22. Priority**
0

**LEGAL INFORMATION**

**23. STATUS—Initiate/Update**   **Terminate/Close**

| | |
|---|---|
| [ ] 01 - Man. Conservatorship/ Parental Rts. Not Term. | [ ] 06 - Adoption Consummated |
| [ ] 02 - Man. Conservatorship/ Parental Rts. Term. | [ ] 07 - Child Emancipated |
| [ ] 03 - Voluntary Relinquishment | [ ] 08 - Child Died |
| [ ] 04 - Voluntary Placement Agreement | [ ] 09 - DHR Resp. Terminated |
| [ ] 05 - Other Legal Basis for DHR Responsibility | |

| 24. Legal Status Date | 25. County |
|---|---|
| 05-11-83 | 061 |

**26. PERMANENCY PLAN**

| | |
|---|---|
| [ ] 01 - Return Home/ Dismiss Conserv. | [ ] 06 - Eman-cipation |
| [X] 02 - Adoption | [ ] 07 - Other |
| [ ] 03 - Permanent Foster-Care | [ ] 08 - Pending |
| [ ] 04 - Transfer Cons. to Other | |
| [ ] 05 - Permanent Custodial Care | |

**27. ARE/ OTHER EXCHANGE**

| |
|---|
| [ ] 1 - NA |
| [ ] 2 - ARE |
| [ ] 3 - ARE & Other Exchange |
| [X] 4 - No |

**PLACEMENT INFORMATION — Do not enter Item 28 (Line) except on corrections.**

| 3 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|---|
| | 01 | 10-28-82 | 05 | 08 | 080421 | HECTOR VITEYCHUK | | | | |
| | **34. Residence Street Address** | | | | | **35. City** | | | | |
| | 17 SHILOH CIRCLE | | | | | ROANOKE | | TX | 76262 | 061 |

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | **34. Residence Street Address** | | | | | **35. City** | | | |

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | **34. Residence Street Address** | | | | | **35. City** | | | |

| 6 | 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. |
|---|---|---|---|
| | | | |

Form 2001-0/2-83   DCN F3181002

5552

COMPLETE IMMEDIATELY ANY TIME A CHILD IS REMOVED OR PLACED    05-7102
PLACEMENT-REMOVAL FORM    April 1982

Child's Full Name: _Wesley Allen Whitfield_ DOB: _11-17-80_
_Randy Lee Whitfield_ DOB: _9-13-77_

Removed From: _Hector Ukeychuck_ Date: _8-30-83_ Time: _10_ AM/(PM)
(name)

Placed in: _Dan Halprin Adoptive Home_ Date: _8-30-83_ Time: _10:_ AM/(PM)
(name)

Address_____

Income: Type_____ Amount_____

Type Care: ___Regular Foster Home ___Institution ___Own Home ___Relative
___Emergency Foster Home ___Emergency Shelter _✓_Adoption ___Visit Only

Legal Status: ___DHR Conservatorship ___ Voluntary Placement Agreement

_Jeannie Bulls_ 55 _8/3/83_    _Andy Hipple_ _8/28/83_
Signature of Worker  Unit  Date    Signature of Supervisor  Date

Send original to Betty Briley and keep a copy for your records. (If placement or
removal is made during the last week of the month, call the Bookkeeper at 335-5171
to notify her. Then follow up immediately by completing the Placement-Removal Form).

5553

# MEMORANDUM

TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Transfer Case Records: _Randy & Wesley Whitfield_ _____ (Child/ren's name)

TO:

Beverly Basden
Child Placement Worker
Old County Courthouse
Denton, TX 76201

FROM:

Jeannie Perullo
Child Placement Worker
3114 S. Riverside Dr.
Fort Worth, TX 76119

DATE: June 28, 1983

We understand that parental rights were terminated on __6-14-83__ (date)
on behalf of the above-named child(ren). We are anxious to help
placement as soon as possible. To accomplish this objective, we need
_Randy & Wesley_ (Child's name) to become ready for an adoptive
you to transfer your case records within the next 10 working days to
the Permanency Planning Unit. These records must have a completed
intake study and the narrative and other pertinent information must be
current, according to standards, up to the time of transfer. A transfer
summary must be in the record and CANRIS should be finalized.

Thank you for your usual cooperation.

_Jeannie Perullo_
Jeannie Perullo

prh

cc: Cindy Wingate, Child Placement Supervisor, 128-9
    Helen H. Grape, Program Director, 128-9
    Sara Ham, Child Placement Supervisor, 347-1
    Allene Margowski, Program Director, 128-3

5554

# MEMORANDUM

### TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield

TO:                                          FROM:
  Beverly Basden                               Beverly Deweber
                                               PPT Recorder

DATE: June 3, 1983

This was the review of the above named case which was staffed by the Permanent Planning Team on May 18, 1983. The Permanent Planning Team members present at the staffing were Allene Margowski, Sara Ham, John Ramfield, and Melody Rockwall. Also present were Dr. May Connell, psychologist from Fort Worth, and foster parents Mr. and Mrs. Hector Viteychuk. The discussion held on that date and the case plan developed are as follows:

MATERIAL PRESENTED AND DISCUSSED:

## Legal Status

Wesley was removed under an Emergency Order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior side. This was the third such bruising incident since July of that year.

On November 4, 1982, the father signed an Affidavit of Voluntary Relinquishment of Parental Rights; the mother signed such an Affidavit on April 29, 1983.

A Decree of Termination was signed by Judge Boyd on May 11, 1983. The Department was appointed managing conservator of the child and authorized to place him for adoption.

## Medical

Wesley had surgery on March 30th to insert tubes in both ears and elevate the eyeball and shorten the muscle in the eyelid of his right eye. The eye surgery was to correct a congenital defect. No evidence of neurofibromatosis was reflected in a neurological exam performed prior to the surgery.

Only slight swelling is noted on the right eyelid. The surgical scar has healed nicely. Wesley has been treated once by a doctor for infection of the right ear and a sore throat since the surgery. He does occasionally complain of his ears hurting when he lays down.

AN EQUAL OPPORTUNITY EMPLOYER

5555

Wesley Whitfield
Page 2

## Foster Care

At the time of the emergency removal, Wesley was placed in the foster home of Billie and Hector Viteychuk. He continues to reside there at the present time.

Wesley made an immediate adjustment into this foster home. He experienced no problems with eating or sleeping disturbances; however, he did have numerous ear infections and has been on antibiotics most of the time while he has been in placement.

The foster mother has been very supportive of the ear and eye surgery. The surgery was postponed on two occasions: once because the child had been exposed to chicken pox, and the second time because of an ear infection. Since the hospital was located in Dallas, numerous trips were made before the actual surgery was performed. The natural mother participated in two of the visits to the hospital, along with the foster mother.

When the natural mother, Anna Whitfield, signed relinquishments, she indicated that she would like Wesley and his five year old brother Randy to be placed together in adoption. Randy has been placed by his father with some people in East Texas.

Mr. and Mrs. Viteychuk said they are very interested in adopting Wesley but do not feel capable of adopting both Wesley and Randy.

GENERAL CASE PLANS:

1. Try and locate five year old Randy.

2. Secure possibility of adoptive placement with Randy.

3. Secure adoptive studies from PPU for Wesley. Share these with the Viteychuks to determine committment to adoption.


Beverly Deweber
PPT Recorder

Sara Ham
Child Placement Supervisor

ew

cc: Allene Margowski
    John Ramfield
    Barney Hisanaga
    Jeanie Perullo
    Melody Rockwall
    file

5556

Dr. Czechner
9/2/83

TCOM

Form 2939
February 1983

Texas Department
of Human Resources

# MEDICAL HISTORY AND PHYSICAL EXAMINATION

| Name | Date of Birth | Examining Physician | Date of Examination |
|------|---------------|---------------------|---------------------|
| Wesley Allen Whitfield | 11-17-80 | | 9-2-83 |

| Address of Physician | Telephone No. |
|----------------------|---------------|
| 3100 S. Riverside Dr., Ft. Worth, Tx 76119 | 921-2652 |

## MEDICAL HISTORY

| ITEM | YES | NO | Unk. or NA | COMMENTS |
|------|-----|-----|-----------|----------|
| Gestation Problems | | | | |
| Prematurity | | | | |
| Congenital Defects | | | | |
| Birth Injury | | | | |
| Serious Illnesses | | | | |
| Serious Accidents | | | | |
| Hospitalizations | | | | |
| Surgeries | | | | |
| Seizures | | | | |
| Eye/Ear Infections | | | | |
| Respiratory Infections | | | | |
| Urinary Tract Infections | | | | |
| Vaginal Tract Infections | | | | |
| Venereal Disease | | | | |
| Headaches | | | | |
| Menses/Dysmenorrhea | | | | |
| Enuresis | | | | |
| Measles | | | | |
| Mumps | | | | |
| Rubella | | | | |
| Diphtheria | | | | |
| Tetanus | | | | |
| Pertussis | | | | |
| Polio | | | | |
| Chicken Pox | | | | |
| Scarlet Fever | | | | |
| Rheumatic Fever | | | | |
| Allergies | | | | |
| Constipation/Diarrhea | | | | |
| Worms/Parasites | | | | |
| Digestive Problems | | | | |
| Drug Use | | | | |
| Other | | | | |

5557

Form 2939
Page 2

## FAMILY HISTORY

| DISEASE/CONDITION | YES | NO | Unk. or NA | COMMENTS |
|---|---|---|---|---|
| Diabetes | | | | |
| Cardiovascular Disease | | | | |
| Renal Disease | | | | |
| Cancer or Leukemia | | | | |
| Tuberculosis | | | | |
| Emotional/Mental Disorder | | | | |
| Mental Retardation | | | | |
| Genetic Abnormality | | | | |
| Epilepsy | | | | |
| Abuse/Neglect | | | | |
| Other | | | | |

## IMMUNIZATION/BOOSTER STATUS

| VACCINE | DATE 1ST DOSE | DATE 2ND DOSE | DATE 3RD DOSE | DATE 1ST BOOSTER | DATE 2ND BOOSTER |
|---|---|---|---|---|---|
| DTP/Td | | | | | |
| Polio | | | | | |
| Measles, Vaccine | | | | Measles, Illness(Date) | |
| Mumps, Vaccine | | | | Mumps, Illness(Date) | |
| Rubella, Vaccine | | | | | |

*No Shot record* (handwritten across Immunization table)

## TESTS

| TEST | NORMAL | ABNORMAL | NOT TESTED |
|---|---|---|---|
| PKU | | | |
| Urinalysis | | | |
| CBC | | | |
| Sickle Cell Hemoglobin | | | |
| Lead | | | |
| Tuberculosis | ☐ Negative | ☐ Positive | |
| Other | | | |

Form 2939
Page 3

**PHYSICAL EXAMINATION**

| Temperature 98% AX. | Pulse 88 | Respiration 20 | Blood Pressure 96/46 | Weight 32½ | Height 37½ |
|---|---|---|---|---|---|

Head Circumference (less than 3 yrs.)

Neurological: ☐ Done ☑ Not Done ☐ Normal ☐ Abnormal

| ITEM | Normal | Abnormal | Not Done | DESCRIBE ABNORMALITY |
|---|---|---|---|---|
| Vision Screening | | | ✓ | Rt. UNRESP. Left |
| Hearing Screening | | | | Rt. 15/15 Left 15/15 |
| Developmental Level | ✓ | | | |
| Nutritional Status | ✓ | | | |
| Musculoskeletal | ✓ | | | |
| Extremities | ✓ | | | |
| Skin (rash, old or recent scars) | ✓ | | | |
| Head/Scalp/Hair | ✓ | | | |
| Eyes, Ears, Nose, Throat | ✓ | | | ptosis of (R) eyelid corrected by surgery |
| Mouth and Teeth | ✓ | | | |
| Neck | ✓ | | | |
| Chest | ✓ | | | |
| Lungs | ✓ | | | |
| Heart | ✓ | | | |
| Abdomen | ✓ | | | |
| Hernia | ✓ | | | |
| Genitalia | ✓ | | | |
| Rectum | ✓ | | | |
| Gait | ✓ | | | |
| Coordination | ✓ | | | |
| Development Progress | ✓ | | | |
| Speech/Language Development | ✓ | | | Difficult to assess as pt doesn't verbalize much |

Comments: Slight URI x1 day, otherwise healthy.
2½ Y/O

5559

Form 2939
Page 3

## PHYSICAL EXAMINATION

| Temperature | Pulse | | Respiration | Blood Pressure | Weight | Height |
|---|---|---|---|---|---|---|

| Head Circumference (less than 3 yrs.) | | | Neurological: ☐ Done  ☐ Not Done  ☐ Normal  ☐ Abnormal | | | |

| ITEM | Normal | Ab-normal | Not Done | DESCRIBE ABNORMALITY |
|---|---|---|---|---|
| Vision Screening | | | | Rt.            Left |
| Hearing Screening | | | | Rt.            Left |
| Developmental Level | | | | |
| Nutritional Status | | | | |
| Musculoskeletal | | | | |
| Extremities | | | | |
| Skin (rash, old or recent scars) | | | | |
| Head/Scalp/Hair | | | | |
| Eyes, Ears, Nose, Throat | | | | |
| Mouth and Teeth | | | | |
| Neck | | | | |
| Chest | | | | |
| Lungs | | | | |
| Heart | | | | |
| Abdomen | | | | |
| Hernia | | | | |
| Genitalia | | | | |
| Rectum | | | | |
| Gait | | | | |
| Coordination | | | | |
| Development Progress | | | | |
| Speech/Language Development | | | | |

Comments: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

5560

Form 2939
Page 4

Is the patient allergic to any drugs or food?   If yes, specify:

N KA

Is the patient currently taking any medication?   If yes, specify:

No.

Does the patient show evidence of child abuse (physical/sexual/psychological)?   If yes, specify:

None

Are there any apparent problems in the areas of developmental level, speech, behavior, or emotional difficulties?   If yes, specify:

Is there anything of medical significance to this patient not included in this form?   If so, please describe:

Diagnostic Impression:

Healthy 2 1/2 Y/O white male

Treatment Recommended, if any:

_____   9/2/83
Signature–Physician            Date

5561

*Wesley Whitfield*



BOYS FROM 2 TO 18 YEARS

STATURE FOR AGE



BOYS FROM 2 TO 18 YEARS
WEIGHT FOR AGE

5563

# Texas Department of Human Resources

3114 S. Riverside Dr.
Ft. Worth, Tx 76119
(817) 921-3411

COMMISSIONER
Marlin W. Johnston

BOARD MEMBERS
FREDERICK C. REHFELDT, M.D.
Chairman, Millsap
RAUL JIMENEZ
San Antonio
Wm. TERRY BRAY
Austin

CONSENT FOR MEDICAL TREATMENT

TO WHOM IT MAY CONCERN:

DAN and PAT HALPRIN, Adoptive parents, who reside at 4501 Glenbrook Dr., Arlington, Tx 76015, have had placed in their home, by the TEXAS DEPARTMENT OF HUMAN RESOURCES, REGIONAL ADOPTION UNIT OF FORT WORTH, TEXAS, for the purpose of Adoption RANDY LEE WHITFIELD, D.O.B.: 9-13-77 and WESLEY ALLEN WHITFIELD, D.O.B.: 11-17-80.

DAN and PAT HALPRIN are given permission to secure any and all medical care and/or treatment for said children.

Jeannie M. Perullo
Jeannie M. Perullo, SWA
Child Placement Worker

Cindy Wingate CSW
Cindy Wingate, MSSW
Child Placement Supervisor

SWORN TO AND SUBSCRIBED BEFORE ME, THIS 2nd DAY OF Sept.,
19 83

Helen S. Parrott
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS.

My Commission Expires: 2-20-85.

An Equal Opportunity Employer

# Texas Department of Human Resources

3114 S. Riverside Dr.
Ft. Worth, Tx 76119
(817) 921-3411

COMMISSIONER
Marlin W. Johnston

BOARD MEMBERS
FREDERICK C. REHFELDT, M.D.
Chairman, Midlsap
RAUL JIMENEZ
San Antonio
Wm. TERRY BRAY
Austin

CONSENT FOR MEDICAL TREATMENT

TO WHOM IT MAY CONCERN:

DAN and PAT HALPRIN, Adoptive parents, who reside at 4501 Glenbrook Dr.,
Arlington, Tx 76015, have had placed in their home, by the TEXAS DEPARTMENT
OF HUMAN RESOURCES, REGIONAL ADOPTION UNIT OF FORT WORTH, TEXAS, for the
purpose of Adoption RANDY LEE WHITFIELD, D.O.B.: 9-13-77 and WESLEY ALLEN
WHITFIELD, D.O.B.: 11-17-80.

DAN and PAT HALPRIN are given permission to secure any and all medical care
and/or treatment for said children.


Jeannie M. Perullo, SWA
Child Placement Worker

Cindy Wingate, MSSW
Child Placement Supervisor

SWORN TO AND SUBSCRIBED BEFORE ME, THIS 2nd DAY OF Sept.
19 83

Helen S Parrott          NOTARY PUBLIC IN AND FOR THE STATE
OF TEXAS.

My Commission Expires: 2-20-85 .

An Equal Opportunity Employer

5565

Case 3:97-cv-00230- Document 23-128 Filed 02/09/01 Page 212 of 533 PageID 42508

PLACEMENT AGREEMENT

FORM

TO BE SIGNED BY APPLICANT ON PLACEMENT OF A CHILD FROM:

THE EDNA GLADNEY HOME/NEW HOPE PROGRAM
FORT WORTH, TEXAS

On this day, the DEPARTMENT OF HUMAN RESOURCES and THE EDNA GLADNEY HOME/NEW HOPE PROGRAM placed in our home, for the purpose of adoption, the child _____Wesley_____ as _____

Name of Child                                                                he/she

is known to us, born on the ___17th___ day of ___November___, 19 80

at _____Denton_____, ___Texas___.

In consideration of this child being placed with us with a view to adoption, we represent and agree as follows:

1.    That the information contained in our formal Application filed with The Edna Gladney Home/New Hope Program was at that time true and correct.

2.    That any material changes that have taken place between the date of our Application and this date, if any, have been duly divulged to The Edna Gladney Home/New Hope Program; and that between now and the time the adoption is completed will will fully and promptly report to The Edna Gladney Home/New Hope Program any changes that take place having to do with any representations in our Application and any other happenings or occurrences that could relate to the stability of our marriage, the state of our health, the occupants of our household, our family, our suitability as parents, the welfare of the child involved, or any other matters that our obligations of good faith to The Edna Gladney Home/New Hope Program and our obligation of full and complete disclosure would indicate be imparted to The Edna Gladney Home/New Hope Program.

3.    That the Juvenile Court of ___Denton County, Texas___ has taken jurisdiction over this child, and its exclusive jurisdiction continues until such time as it is transferred to The Edna Gladney Home/New Hope Program.

4.    That under the jurisdiction of said Juvenile Court, legal custody of the child is in the Department of Human Resources and will remain there until such time that the adoption is consummated.

5.    That The Edna Gladney Home/New Hope Program will supervise the child and we will participate in such supervision by The Edna Gladney Home/New Hope Program until the child is adopted.

5566

6. That we will not change our residence and/or remove the child from the State of _TEXAS_ before the adoption is finalized without the permission of The Edna Gladney Home/New Hope Program.

7. That in the event The Edna Gladney Home/New Hope Program or we determine that the placement should not continue, prior to legal consummation of the adoption, we agree to return the child to the Department of Human Resources or The Edna Gladney Home/New Hope Program.

8. That we understand that we accept and are responsible for the care and maintenance, including medical care of :

_____ WESLEY _____
Name of Child

We further agree to notify The Edna Gladney Home/New Hope Program of any serious illness or injury of this child.

9. That if the Department of Human Resources or The Edna Gladney Home/New Hope Program has not required us to return the child, nor have we elected to return the child on our own, that we will then petition for the completion of the adoption and will return to Fort Worth and complete the adoption upon the recommendation of The Edna Gladney Home/New Hope Program at the time set by the Court of its completion, unless the Home shall consent to an extension of time for adopting the child. In this connection, the attorneys for the Home will advise us in advance of the date and time for filing the petition and completing the adoption.

10. That the adoption reimbursement fee shall be $ _-O-_
Schedule of payment is as follows:

---

EXECUTED at _FortWorth_, _Texas_ and dated this _12th_ day of _September_, 19_83_.

THE EDNA GLADNEY HOME/NEW HOPE PROGRAM

BY _Charlotte Yancey_
   Authorized Representative

_Ernest Nathan Halprin_
Husband's Full Name

_Patricia Anne Bronnick Halprin_
Wife's Full Name

SUBSCRIBED AND SWORN TO BEFORE ME, the Undersigned Notary Public, in and for The State of Texas, by the above named husband and wife, on this, the _12th_ day of _September_, 19_83_, to certify witness my hand and seal of office.

My Commission Expires:

_____ November 19 _____, 19_85_
LINDA G. ALLEN, Notary Public
IN AND FOR THE STATE OF TEXAS

_Linda G. Allen_
Notary Public in and for
The State of Texas

5567

05-7103
October 1981

## RECORD OF MEDICAL AND DENTAL TREATMENT

Name of Child _Wesley Whitfield_          SSMS Client # _____

Birth Date _11·17·80_          Medicaid # _____

| Date of Appointment | Name and Address of Doctor | Diagnosis | Recommended Treatment | Prescribed Medicine and Dosage |
|---|---|---|---|---|
| 12·1·82 | Dr. Grubb | cold & drainage | | Entex |
| 12·6·82 | Dr. Cushia | ear infection pos. virus | | |
| 12·29·82 | " | follow-up | | |
| 1·22·83 | Dr. Alvarez | ears infected | | |
| 1·24·83 | Dr. Keele, TWU | neurology exam | | no evidence of neurofibromatosis |
| 2·1·83 | Dr. Berry, Dallas | eye exam | possible surgery | — |
| 2·7·83 | Dr. Chibertson, CMC, Dallas | fluid behind ears | ear tube surgery | — |
| 3·1·83 | Dr. Berry CMC | pre-surgery check | | postponed - exposed to chicken pox |
| 3·8·83 | CMC | ear infection | | |
| 3·8·83 | Dr. Alvarez | " " | | antibiotic |
| 3·29·83 | Dr. Berry & CMC | pre surgery check | | |
| 3·30·83 | Dr. Culbertson | myringotomy | | |
| | Dr. Berry | eye muscle surgery | | |
| 4·1·83 | Dr. Berry | stitch removed from eye lid | | |
| 4·7·83 | CMC & Dr. Berry | surgery check | | |
| 5·5·83 | Dr. Alvarez | infection - ear & throat | | Amoxil Susp. 1 tsp x3 for 6 days |

5568



# CHILDREN'S MEDICAL CENTER OF DALLAS
### 1935 AMELIA ST.
### DALLAS, TEXAS 75235
### 214-637-3820

383

TAX ID 75-0800-628

| PATIENT NAME | PATIENT NUMBER | ROOM NUMBER | | | PAGE |
|---|---|---|---|---|---|
| SUITFIELD WESLEY A        1 | 00000174955 | | 05/02/05 | 05/02/05 | 1 |

| STATEMENT TYPE | STATEMENT DATE | BILL TO | INSURANCE COMPANY · GROUP NO. · POLICY NO. |
|---|---|---|---|
| ******<br>FINAL<br>PAT. | 05/10/05 | HUMAN RES. TX. DEPT.<br>P.O.BOX 2100 DENTON<br>DENTON TX 76201 | UNINSURED PLAN |

| DATE | DESCRIPTION | TOTAL CHARGES | ESTIMATED COVERAGE | | | ESTIMATED PATIENT AMOUNT |
|---|---|---|---|---|---|---|
| | | | 1ST COVERAGE | 2ND COVERAGE | 3RD COVERAGE | |
| | DETAIL OF CURRENT CHARGES - PAYMENTS | | | | | |
| 03/01 | SURGERY CANCELLED | -305003 | | | | |
| 03/01 | PRE-ADMIT | 20.90 | | | | 20.90 |
| | SUMMARY OF CHARGES | 20.90 | | | | 20.90 |
| | LABORATORY | | | | | |
| | SUB-TOTAL OF CHARGES | 20.90 | | | | |
| | | | | | | |

CHILDREN'S MEDICAL CENTER HOLDS AN ASSIGNMENT
FOR THIS CLAIM

| | T O T A L S | 20.90 | | | | 20.90 |
|---|---|---|---|---|---|---|

PLEASE NOTE   ALL AMOUNTS OF INSURANCE COVERAGE ARE ESTIMATED   20.90

REMARKS: *Mailed Paid to Janet*

PLEASE PAY THIS AMOUNT

PATIENT

5569



Case 3:05-cv-01828 Document 57-216 Filed 06/xx/xx Page 216 of 533 PageID 5570

# CHILDREN'S MEDICAL CENTER OF DALLAS
### 1935 AMELIA ST.
### DALLAS, TEXAS 75235
### 214-637-3820

TAX ID 75-0800-628

351

| PATIENT NAME | PATIENT NUMBER | ROOM NUMBER | | | PAGE |
|---|---|---|---|---|---|
| WHITEFIELD WESLEY A | 0c00197520 | | 03/08/05 | 03/08/05 | 1 *** |

| STATEMENT TYPE | STATEMENT DATE | BILL TO | INSURANCE COMPANY - GROUP NO. - POLICY NO. |
|---|---|---|---|
| ***** FINAL PAT. | 03/15/05 | WHSON, etc., Tx. M.Pt. P.O.BOX 2180 DALLAS DALLAS TX 75201 | CRESTFIELD PLAN |

| DATE | DESCRIPTION | TOTAL CHARGES | 1ST COVERAGE | 2ND COVERAGE | 3RD COVERAGE | PATIENT AMOUNT |
|---|---|---|---|---|---|---|
| | DETAIL OF CURRENT CHARGES & PAYMENTS | | | | | |
| 03/08 | PRE-ADMIT | 3652005 | | | | 20.90 |
| 03/08 | CANCELLATION CREDIT | 8050308 | 20.90 | | | 20.90 |
| 03/08 | HEMOGRAM & DIFF-CBC | 8050049 | | | | |
| 03/08 | ORBITS 3 VIEWS | 8210008 | 48.40 | | | 48.40 |

| TOTALS | | | | | | |
|---|---|---|---|---|---|---|

REMARKS: Mailed Bill to parent

PLEASE PAY THIS AMOUNT .00

PATIENT

5570



5571

Case 3:05-cv-04844-N   Document 11-116   Filed 06/02/14   Page 218 of 533   PageID 13572



CHILDREN'S MEDICAL CENTER
OF DALLAS

PHYSICIAN'S ORDERS - DAY SURGERY SERVICE

NAME: _Wesley Whitfield_

1.  Admit to Day-Surgery Unit for _____

    _Lenate resection RVL_
    _____(operative procedure)_____
    _possible PFS RSR_
    _c̄ tubes in ears - ENT._

2.  C.B.C. and Urinalysis.

3.  History and Physical by P.N.P.

4.  Contact Anesthesia Service for preoperative
    medication orders.

5.  X-Ray Exams: _XRay of Orbits with_
    _Optic Foramina Views_

6.  Misc: _1) Neurofibromatosis in family_
    _2) Ptosis Right upper lid_
    _3) Limited ability to rotate left eye_
    _upward_

    _____
    _____

7.  May go home overnight.

    _Priscilla R. Berry_ M.D.
    (Physician's Signature) _cN._

Preoperative work-up on _March 1st at 10:30c_ for
                          (date)
Surgery on _March 2nd_
             (date)

CMC 22014

5573

*Call when ready*

83-2371

**AUTHORIZATION FOR RELEASE OF INFORMATION**

Texas Department of Human Resources
Children's Protective Services Division
Courthouse on the Square
P. O. Box 2186
Denton, Texas 76201

I hereby authorize and request any physician, hospital, institution, or agency having, or who may hereafter have medical, psychological, or social records pertaining to _Wesley Whitfield_ to disclose such records and information to the Children's Protective Services Division of the Texas Department of Human Resources.

I, on behalf of myself or any other person who may have an interest in the matter, hereby release you from all legal responsibility and liability that may arise from the act I have authorized above.

_Emma W Whitfield_      _Feb. 3, 1983_
Signature of Client or Guardian      Date

_Beverly Barden_      2-3-83
Children's Protective Services Worker Date

5574

Case 3:12-cv-01579   Document 17-15   Filed 09/07/12   Page 221 of 533   PageID 5575

*call when ready*

83-2371

AUTHORIZATION FOR RELEASE OF INFORMATION

Texas Department of Human Resources
Children's Protective Services Division
Courthouse on the Square
P. O. Box 2186
Denton, Texas  76201

I hereby authorize and request any physician, hospital, institution, or agency having, or who may hereafter have medical, psychological, or social records pertaining to *Wesley Whitfield* to disclose such records and information to the Children's Protective Services Division of the Texas Department of Human Resources.

I, on behalf of myself or any other person who may have an interest in the matter, hereby release you from all legal responsibility and liability that may arise from the act I have authorized above.

_____    Feb. 3, 1983
Signature of Client or Guardian      Date

_____    2-3-83
Children's Protective Services Worker Date

5575



**MEDICAL SURGICAL CLINIC**

2509 SCRIPTURE    PHO. (817) 382-2521
DENTON, TEXAS 76201

<table>
<tr><td valign="top">

**ALLERGY**
Bedlola Badle, M.D.

**EAR, NOSE, THROAT**
J.R. Williams II, M.D.

**FAMILY PRACTICE**
L.R. Byrd III, M.D.
Douglas Hagen, M.D.
H.L. McBrayer, M.D.
Terry Moore, M.D.

**GASTROENTEROLOGY**
Barry Sanders, M.D.

**GENERAL PRACTICE**
Thomas O. Blucker, M.D.
James H. Jones, M.D.
Eugene M. Taylor, M.D.

**GENERAL SURGERY**
H.M. Burgess, M.D.
James V. Palermo, M.D.
Arvin D. Short, M.D.

**OBSTETRICS
& GYNECOLOGY**
Robert J. Lee, M.D.
Suhas Mantri, M.D.

**PATHOLOGY**
Rick Burgess, M.D.

**PEDIATRICS**
John F. Cuchia, M.D.
Gregory L. Jackson, M.D.
David O. Johnson, M.D.
Frank McGehee, M.D.

**RADIOLOGY**
Jules P. Brown, M.D.
Albert Thibeaux, M.D.

**RHEUMATOLOGY**
Edward E. Velayos, M.D.

**UROLOGY**
Kenneth Goldberg, M.D.

**INTERNAL MEDICINE**
Jitendra Bhatt, M.D.
Charles Wahlert, M.D.

**ASSOCIATION NURSING
COORDINATOR**
Sue Cogdell, L.V.N.

**OFFICE MANAGER**
Jan Jones

**VICE PRESIDENT
MANAGER OF OUT-
PATIENT OPERATIONS**
Darlene Moore

</td><td valign="top">

February 4, 1983

Texas Dept. of Human Resources
Child Protective Services
P. O. Box 2186
Denton, Texas 76201

           Re: Wesley Whitfield

To Whom It May Concern:

Wesley was first seen here on 11/13/81 at age 5 months for right otitis media and wheezing episode, for which he was admitted to Flow Memorial Hospital. He was in the hospital from 4/13/81 to 4/16/81 for bronchiolitis and otitis media. He was seen again on 11/23/81 for evaluation of wheezing. At that time he was noted to have only minimal wheezes, bilateral otitis media, contact dermatitis, and ptosis of the right eyelid. At that time he was referred to Dr. David Stager, Pediatric Ophthalmologist, and treated as an outpatient with a bronchodilator and antibiotic.

He was not seen again until 6/2/82 and at that time he had bilateral otitis media and mild wheezes; the parents had not sought ophthalmologic follow-up and were referred again to Dr. Stager.

On 9/16/82 he was seen in follow-up from the Health Clinic where he was found to have multiple bruising and enlarged spleen. A white count was 13,800 with 51 polys, 47 lymphs, 2 eosins. Hematocrit was 32%. The mono spot test was negative and platelets were 280,000. The etiology of the bruising was uncertain. He was seen again on 11/2/82, brought in by the Child Protective Services. At that time a skeletal survey was performed and showed no old or new fractures of any of the long bones. He was again seen on 12/1/82 for upper respiratory viral infection. He was seen again on 12/6/82 with bilateral otitis media, treated with an antibiotic; in follow-up on 12/29/82 he had residual fluid behind the left tympanic membrane.

If you have any questions, please give us a call.

Sincerely,

*Greg Jackson, M. D. (for)*

Greg Jackson, M. D.

GLJ/ld

</td></tr>
</table>

## PEDIATRICS

| | | | | | |
|---|---|---|---|---|---|
| Wesley A. Whitfield | BIRTH DATE 11/17/80 | | | SEX M | RACE White |
| ...RESS 17 Shiloh Circle Roanoke, Tx | PHONE 430-0543 | | | DATE 1/4/83 | |
| ...ANCE Medicaid # 502744881 | | | | | |
| ...OR Child Protective Services | ADDRESS Denton Court House Denton, Tx | | | | |
| ...OYED BY | REF. BY | | | | |
| ...NT RELATIVE Foster Parents - Billie + Hector Viteychuk | | | | | |

...HISTORY

DELIVERY

...LBS WT.          LENGTH          NEONATAL

...DING

...LOPMENT - ROLLED OVER          SAT          WALKED          FIRST WORDS

...HOOD DISEASES - VARICELLA          MUMPS          RUBELLA          RUBEOLA

...HER ILLNESSES _2 ear infections in last 2 months - Has finished_
_2 doses of antibiotic as of Jan. 11, 1983._

...PITALIZATIONS -

...NG ALLERGIES _none_

...ILY HISTORY    F          M          SIBS

...LERGY  _Had some_ (ASTHMA)          DIABETES          TDC
_attacks at one time_  RENAL          BLEEDERS

| IMMUNIZATION | 1 | 2 | 3 | B | B | B | | |
|---|---|---|---|---|---|---|---|---|
| ...O... | | | | | | | SMALLPOX | |
| (ADULT) | | | | | | | MEASLES | |
| ...TANUS | | | | | | | MUMPS | |
| ...RM | | | | | | | RUBELLA | |
| ... | | | | | | | | |

_Has drooping right eye lid - Currently plans_
_are set for him to see an eye specialist_
_1/19/83  Ill... sick off...on for the past two → agent_
_fine ...ft..._
_Wt. Tot  Oct. 28-53     Ht. 34½      Bam- Rx: Amoxil_
_...g tsn x 10 d - Ornacter  ½ss ½ ... x 10 d -_

# CHILD HEALTH RECORD

**Texas Department of Health**

(See Interpretation and Guide For Use of
Child Health Record, Form M-9)

| | |
|---|---|
| Medicaid No. | W.I.C. No. |
| Soc. Sec. No. | Date Admitted |
| Birth Date _11-12-80_ | Ref. By |
| Sex: (M) F Race: (W) B O | Case No. (s) |
| Sibling Position _2_ | |

Name _Whitfield Wesley_ Address (1) _Rt-1 Box 179_ Teleph. No. _566-5570_
(Last name first)

Father's Name _Whitfield Bob Randal_ Address (2) _twin lakes MHP_ (3)
(Last name first)

Mother's Maiden Name _Anna Hammons_
(Last name first)

Source(s) of Medical Care _CHC_

(Physicians and/or Agencies providing care. Keep current.)

## MOTHER'S PREGNANCY & DELIVERY HISTORY

With This Child: Month Prenatal Care Began _20_ Weeks Gestation Completed at Birth _40_
Previous To This Child: No. Pregnancies _1_ No. Fetal Deaths ___ No. Premature Deliveries ___

Additional Information:

(Pertinent information during this pregnancy)

## NEONATAL HISTORY

Birthplace _Flow Hospital Denton, Ty_ Birth Weight _8 lb 10z_ Birth Length ___

Delivered By _Doctor Miller_ Birth Head Circumference _?_

Was infant retained in hospital after mother's discharge? Yes (No) Additional Information:

(Include Apgar score)

_Hx asthma_

## FAMILY'S SIGNIFICANT HEALTH HISTORY

_Hx asthma, + chronic ear infections_

_MGP- Breast ca._

Form No. M-9
Rev. Aug. 1978

5578

# AUTHORIZATION FOR IMMUNIZATIONS AND SCREENING PROCEDURES

I HEREBY AUTHORIZE THE HEALTH DEPARTMENT TO GIVE ANY IMMUNIZATION, VACCINATION, TEST OR SCREENING PROCEDURE WHEN RECOMMENDED. MY CHILD HAS NO KNOWN ALLERGY TO VACCINES.

Date _____   Signed _____   Relationship _____   Witness _____

## IMMUNIZATIONS

| VACCINES | DATE | DATE | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|---|
| DTP or Td | 6-10-82 | 10-18-82 | | | | |
| Oral Polio | 6-10-82 | 10-18-82 | | | | |
| Measles* | VACCINE ▷ | 10-11-82 | | | | |
| Mumps* | VACCINE ▷ | 6-10-82 | | | | |
| Rubella* | VACCINE ▷ | 6-10-82 | | | | |
| TBC Test | | | | | | |
| ILLNESS ▷ ILLNESS ▷ | | | | | | |

*When combined dose of Measles and Rubella or Measles, Mumps and Rubella is administered, record date given by each individual vaccine.

| Hgb/HCT Date | Results | | | | | |
|---|---|---|---|---|---|---|
| 10-18-82 | 34% | | | | | |

## SCREENING PROCEDURES

### NEWBORN SCREENING

| Date | Phenylketonuria Results | Homocystinuria Results | Galactosemia Results | Hypothyroidism Results |
|---|---|---|---|---|
| | | | | |

### URINALYSIS

| Date | Results |
|---|---|
| | |

### HEARING

| Date | Result | | 
|---|---|---|
| | R | L |
| | R | L |
| | R | L |
| | R | L |
| | R | L |
| | R | L |

### VISION

| Date | Result | |
|---|---|---|
| | R | L |
| | R | L |
| | R | L |
| | R | L |
| | R | L |
| | R | L |

### SICKLE CELL

| Date | Result |
|---|---|
| | |

### LEAD

| Date | Result |
|---|---|
| | |

### OTHER (Specify)

| Date | Type | Result | Date | Type | Result |
|---|---|---|---|---|---|
| | | | | | |

5579

FOOD INFORMATION FOR NUTRITIONAL ASSESSMENT
BIRTH TO ONE YEAR

See Instructions at Bottom of Page

Name of Infant _____
Birth Date _____

| DATE _____ | AGE OF INFANT _____ | | DATE _____ | AGE OF INFANT _____ | |
|---|---|---|---|---|---|
| USUAL DIETARY INTAKE | 24 HOUR RECALL | | USUAL DIETARY INTAKE | 24 HOUR RECALL | |
| | Food & Beverages | Amounts | | Food & Beverages | Amount |

1. Type of Milk
_____ Breast
_____ Formula
_____ Iron Fortified
Non Iron Fortified
None ✓ Other
_____ Specify
_____ Length of Feeding (time)
_____ Number of Feedings in
24 Hours
_____ oz. per 24 hours

2. Vitamin-Mineral Supplement?
_____ Specify

3. Juice introduced at age _3mo_
4. Solids introduced at age _Two_
5. ___Specify___ WIC _____ Food Stamps

1. Type of Milk
_____ Breast
_____ Formula
_____ Iron Fortified
_____ Non Iron Fortified
_____ Other
_____ Specify
_____ Length of Feeding (time)
_____ Number of Feedings in
24 Hours
_____ oz. per 24 hours

2. Vitamin-Mineral Supplement?
_____ Specify

3. Juice introduced at age _____
4. Solids introduced at age _____
5. _____ WIC _____ Food Stamps

INSTRUCTIONS: It is essential to evaluate the infant's diet after obtaining food information.
GENERAL RECOMMENDATIONS: Breast fed infants should receive Vitamin D at birth, iron supplementation at 4-6 months and fluor
at 6 months. If not breast-fed, iron fortified formula is recommended for the first year of life. Introduce solid food and
diluted fruit juice at 4 months or 13-15 pounds.
1Supplement forms for infants (H-10b) or children (H-10a) are available from Texas Dept. of Health.   See Forms Order Blank.

## DEVELOPMENTAL MILESTONES

| Behaviors | *Age Achieved |
|---|---|
| **1 - 3 MONTHS** | |
| Lifts head | |
| Eyes follow moving object | |
| Coos and chuckles | |
| Social smile | |
| **4 - 6 MONTHS** | |
| No head lag | |
| Palmar grasp | |
| Turns head to sound | |
| Knows stranger from family | |
| **7 - 11 MONTHS** | |
| Pulls self to stand | |
| Pincer grasp | |
| Says ma-ma or da-da | |
| Plays pat-a-cake | |

| Behaviors | *Age Achieved |
|---|---|
| **12 - 17 MONTHS** | |
| Walks without support | |
| Imitates two cube tower | |
| Expressive jargon | |
| Helps in dressing | |
| **18 - 23 MONTHS** | |
| Climbs avidly | |
| Scribbles spontaneously | |
| Combines two or more words | R 2/mos |
| Bowel control | R 2/mos |
| **2 YEARS** | |
| Jumps with both feet | |
| Copies circle | |
| Verbalizes about toileting | |
| Puts on simple clothing | |

| Behaviors | *Age Achieved |
|---|---|
| **3 YEARS** | |
| Balances on one foot | |
| Copies cross | |
| Says first and last name | |
| Separates easily from mother | |
| **4 YEARS** | |
| Tandem walk | R 18 mos |
| Draws three-part man | |
| Names three colors | |
| Toilet Independence | not trained |
| **5 YEARS** | |
| Backward tandem walk | |
| Draws six-part man | |
| Counts to ten | |
| Describes favorite TV program | |

* 0 - Observed by worker, R - Reported by parent or guardian, H - History obtained from valid record
If a behavior is not achieved at oldest appropriate age, referral for further evaluation should be considered.

### DENVER DEVELOPMENTAL SCREENING TEST

| DEVELOPMENTAL AREAS | Date | Age | Results Normal | Delayed | Date | Age | Results Normal | Delayed | Date | Age | Results Normal | Delayed | Date | Age | Results Normal | Delayed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Motor | | | | | | | | | | | | | | | | |
| Fine Motor-Adaptive | | | | | | | | | | | | | | | | |
| Language | | | | | | | | | | | | | | | | |
| Personal-Social | | | | | | | | | | | | | | | | |

COMMENTS:

5581

# FOOD INFORMATION FOR NUTRITIONAL ASSESSMENT

## BIRTH TO ONE YEAR

See Instructions at Bottom of Page

Name of Infant _____

Birth Date _____

| DATE | AGE OF INFANT | | DATE | AGE OF INFANT |
|---|---|---|---|---|
| USUAL DIETARY INTAKE | 24 HOUR RECALL | | USUAL DIETARY INTAKE | 24 HOUR RECALL |

| | Food & Beverages | Amounts | | Food & Beverages | Amount |
|---|---|---|---|---|---|

1. Type of Milk
   - _____ Breast
   - _____ Formula
   - _____ Iron Fortified
   - _____ Non Iron Fortified
   - _____ Other Avril
     Specify
   - _____ Length of Feeding (time)
   - _____ Number of Feedings in 24 Hours
   - _____ oz. per 24 hours

2. Vitamin-Mineral Supplements?
   - _____ Specify

3. Juice introduced at age 3mo

4. Solids introduced at age Two
   - Ayudinvc _____ WIC _____ Food Stamps

1. Type of Milk
   - _____ Breast
   - _____ Formula
   - _____ Iron Fortified
   - _____ Non Iron Fortified
   - _____ Other
     Specify
   - _____ Length of Feeding (time)
   - _____ Number of Feedings in 24 Hours
   - _____ oz. per 24 hours

2. Vitamin-Mineral Supplements?
   - _____ Specify

3. Juice introduced at age _____

4. Solids introduced at age _____

5. _____ WIC _____ Food Stamps

**INSTRUCTIONS:** It is essential to evaluate the infant's diet after obtaining food information.

**GENERAL RECOMMENDATIONS:** Breast fed infants should receive Vitamin D at birth, iron supplementation at 4-6 months and fluor at 6 months. If not breast-fed, iron fortified formula is recommended for the first year of life. Introduce solid food and diluted fruit juice at 4 months or 13-15 pounds.

Supplement forms for infants (X-10B) or children (X-10a) are available from Texas Dept. of Health. See Forms Order Blank.

5582

| (1) DATE: 9-16-71 | WT 24#1 | HT 34 | HC |
|---|---|---|---|

HISTORY: 22 month old

I lx see prev sheet

P.E.: poor-
Enlarged Spleen
Bruised buttocks (reportedly fell down swing)
old healed position
mother, no black eye
Inguinal Ptosis @ ear

DISP.: (1) To have CBC, diff & platelets
(2) U/mic test
(3) consult CPS

Scas
(383-2371) Debbie Larsen

| (4) DATE: 8/11/71 | WT | HT | HC |
|---|---|---|---|

HISTORY: Flu, etc

P.E.: This a big clear
noninfluppelditive

DISP.: Stop: UTI
—Dist off +12/19 1/3

[signature]

| (2) DATE: | WT 25 — 25 3 1/4 | HT 3 4/1/2 | HC |
|---|---|---|---|

HISTORY: wk 25 — 25 3 1/4 1/2 [0126]

DISP.:

| (5) DATE: | WT | HT | HC |
|---|---|---|---|

HISTORY:

P.E.:

DISP.:

| (3) DATE: 10-23-71 | WT 25 | HT 3 1/2 |
|---|---|---|

HISTORY: Flu by social service - Called for mother's appointment referred, called, 830
PE: Bruises over past loss just
—L arm, over L4 area hospitalized x-rxs (1, 5 7/10)
@ ptosis
Bruise red/pink, dull)
@ Brit red/pink, dull)
(1) to Priscilla 1830 hr
DISP.: (1) xray by soc worker
(2) Death 185 TU
(3) Death 185 TU
(7) EPC 2-3 mo.

| (6) DATE: | WT | HT |
|---|---|---|

HISTORY:

P.E.:

DISP.:

5583

Case 3:13-cv-01535-L Document 17-115 Filed 08/21/14 Page 230 of 533 PageID 13584

## ASSESSMENT AND CARE PLAN

### CHILD'S SIGNIFICANT HEALTH PROBLEMS (physical, mental, emotional or social)

| DATE | Child's Age / Specify Problem | Child's Age / Specify Problem | Child's Age / Specify Problem | Signature and Date of Next Visit |
|------|---|---|---|---|
| 9-16-82 | Referred from Kidsense and seen in adoption in CHC by Dr. Johnson. Pleasant healthy multiple birth on ultrasound, born enlarged spleen and congenital ... CBS came ... to R pr ... the physician notes ... to table Chem, bene to rule out patients. Mom denies hitting child. RTC 10-11-82 for 6 mo health and dev appt. appropriate for age. Immunizations held until tomp. RTC 10-14-82 mom to go to med also the pm to cover lab work. Kidsense pending child to plan for half-week day for what spec dev Referred CHC 2 month RTC 10-28-82 | | | Immunizations B Howell rn Pleased rn B Howell rn B Howell rn |

5584

TEXAS DEPARTMENT OF HEALTH

ASSESSMENT AND CARE PLAN (Cont.)

Name _____  Birth Date _____  Soc. Sec. No. _____

| Date | | Signature And Date Of Next Visit |
|------|--|----------------------------------|
| 4-15-92 | CPS field worker Mr. Hartman will √ Dr. appt c Dr Berg | R. Hartman |
| | | |

Form No. M-10
Revised 1-1-69

5585

BOYS: BIRTH TO 36 MONTHS
PHYSICAL GROWTH
NCHS PERCENTILES*

**BOYS: BIRTH TO 36 MONTHS**
**PHYSICAL GROWTH**
**NCHS PERCENTILES***

NAME _____

RECORD # _____



| DATE | AGE | LENGTH | WEIGHT | HEAD C. |
|------|-----|--------|--------|---------|
|      | BIRTH |      |        |         |
|      |     |        |        |         |
|      |     |        |        |         |
|      |     |        |        |         |

| DATE | AGE | LENGTH | WEIGHT | HEAD C |
|------|-----|--------|--------|--------|
|      |     |        |        |        |
|      |     |        |        |        |
|      |     |        |        |        |
|      |     |        |        |        |

SIMILAC  WITH IRON    ADVANCE

For milk-sensitivity
ISOMIL

ROSS LABORATORIES

M & M PRINTING - DENTON, TEXAS          21053

| DATE | TIME | TECHNICIAN |
|------|------|------------|
| 9/16/82 | | 7:45 |

| ☐ CBC | ☐ Hgb & Hct | ☐ WBC & Diff |

REMARK; CLINICAL DX:

☐ OR in AM    ☐ EMERGENCY

| TEST | NORMALS | |
|------|---------|---|
| | MALE | FEMALE |
| 3,800 | WBC X 10³ | 4.8–10.8 | 4.8–10.8 |
| 3.9 | RBC X 10⁶ | 4.6–6.2 | 4.2–5.4 |
| 9.0 | Hgb gm | 14–18 | 12–16 |
| 32% | Hct. % | 42–52 | 37–47 |
| | MCV μ³ | 80–94 | 79–97 |
| | MCH μμg | 27–31 | 27–31 |
| | MCHC | 32–36 | 32–36 |

| ☐ DIFFERENTIAL | ☑ Platelet | 280,000 |
|----------------|-----------|---------|
| 51 | Poly | ☐ Retic |
| | Stab. | ☐ Lee White |
| 47 | Lymph. | ☐ Sed. Rate |
| 1 | Mono. | ☐ Pro-Time |
| 1 | Eos. | Cont. |
| | Baso. | % ACT |
| | Blast Cells | |
| | Myelocytes | ☐ PTT. |
| | Metamyelocytes | Cont. |
| | NRBC/100 WBC | |
| | Anisocytosis | ☐ RPR |
| | Poikilocytosis | |

Notes: *There are few band forms showing mild left shift. No reactive atypical lymphocytes are seen.*

☐ Reviewed by

**HEMATOLOGY**

Patient name: William Westfield
Doctors name: Johnson (Carol)
Hosp No. 007

5588

# DENTON CITY-COUNTY HEALTH DEPARTMENT
COURTHOUSE ON THE SQUARE          PHONE 387-8559          DENTON, TEXAS

For .................. Wesley Whitfield ..................

Address .................................... Date 10/28/82

℞

TO Beverly Bashon —
Wesley Whitfield was seen today
for brusses over lower posterior
legs — also he has middle ear
infections

............................................ M.D.          ............................................ M.D.
Product Selection Permitted                           Dispense as Written

[                    ]                    Reg. No. ....................
Refill

COURTHOUSE ON THE SQUARE          PHONE 387-8559          DENTON, TEXAS

For .......... Wesley Whitfield ..........

Address .................................... Date 9-16-82

℞

CBC c̄ diff
platelet Count
Mono Test —
(Ask pathologist to review
smear for WBC
morphology)
Call Results to # medical Surgical

............................................ M.D.          ............................................ M.D.
Product Selection Permitted                           Dispense as Written

Reg. No.

5589

# DENTON CITY-COUNTY HEALTH DEPARTMENT
COURTHOUSE ON THE SQUARE          PHONE 387-8559          DENTON, TEXAS

For ...... *Wesley Whitfield*

Address .............................. Date *18 Nov 82*

℞   *Dimetapp Elixir*
        *— ))ispi. 4oz*
        *Sig: 1/2 to 3/4 Tsp q2d*
        *prn*

_____ M.D.          _____ M.D.
Product Selection Permitted                  Dispense as Written

[ X2U ]
Refill                          Reg. No. _____

# DENTON CITY-COUNTY HEALTH DEPARTMENT
COURTHOUSE ON THE SQUARE          PHONE 387-8559          DENTON, TEXAS

For ...... *Wesley Whitfield*

Address .............................. Date *10/26/02*

℞   *Ceclor 125/5ml - 150ml*
        *1 tsp po TID*
        *until all gone*

_____ M.D.          _____ M.D.
Product Selection Permitted                  Dispense as Written

[          ]                     Reg. No. _____

5590

PATIENT/BILLING

# CHILDREN'S MEDICAL CENTER OF DALLAS

1935 AMELIA STREET • DALLAS, TEXAS 75235
PHONE (214) 637-5520

**OUTPATIENT REGISTRATION/BILL**

| NAME & ADDRESS | PHONE/B.S. NO. | PATIENT ACCT.NO. | PRE-NO. | MED. RECORD NO. | ADMIT DATE/TIME |
|---|---|---|---|---|---|
| WHITFIELD, WESLEY A | 817/383-2371 | | | | |
| P.O. BOX 2186 DENTON | 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 | | | | REGISTERED 11/28 |
| DENTON TX 76201 | | O M W 2Y 11/17/80 EW | | | |

| MOTHER'S MAIDEN NAME | HAMMONS | | | | |

| NAME & ADDRESS | REL./PHONE/B.S. NO. | EMPLOYER NAME & ADDRESS | OCCUPATION/EMP. PHONE NO. |
|---|---|---|---|
| TX. DEPT. HUMAN RES. LEGAL GUARDI | | | |
| P.O. BOX 2186 DENTON 817/383-2371 | | | |
| TX 76201 | | | |

| NAME & ADDRESS | REL./PHONE/B.S. NO. | EMPLOYER NAME & ADDRESS | OCCUPATION/EMP. PHONE NO. |
|---|---|---|---|
| | | | |

| NAME & ADDRESS | | RELATIONSHIP | |
|---|---|---|---|
| | | PHONE | |

| FINANCIAL CLASS | 1. MEDICAID | | 2. | |
|---|---|---|---|---|
| EXPIRATION DATE | 000 TX 000 | QRP. NO. | POLICY NO. | QRP. NO. |
| NO. OF PLANS | POLICY NO. 502744881 | | POLICY HOLDER | |
| | POLICY HOLDER | | | |

| ATTENDING PHYS. | REFERRING PHYS. NAME & ADDRESS |
|---|---|
| DIAGNOSIS/COMPLAINT N C LD | |

| DATE | PROCEDURE | CHARGES |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

This itemized statement was prepared at CHILDREN'S MEDICAL CENTER Dallas, Texas, and accurately states the services/procedures rendered and charges incurred. This form is not a substitute for an insurance claim.

**TOTAL CHARGES:**
**DISCOUNT:**
**PAYMENT:**

AS AN EMPLOYEE OF CHILDREN'S MEDICAL CENTER, I VERIFY THAT THE ABOVE IS A TRUE STATEMENT OF CHARGES FOR THOSE SERVICES RENDERED AT CMC.

| SIGNATURE | TITLE/POSITION |
|---|---|

| | | |
|---|---|---|
| WHITFIELD, WESLEY 000359705 SPC: D: T: CRD#: | WHITFIELD, WESLEY 000359705 SPC: D: T: CRD#: | WHITFIELD, WESLEY 000359705 SPC: D: T: CRD#: |
| WHITFIELD, WESLEY 000359705 SPC: D: T: | WHITFIELD, WESLEY 000359705 SPC: D: T: | WHITFIELD, WESLEY 000359705 SPC: D: T: |

**5591**

Downloaded ... December 11, ... Page 238 of 533 (document id: 60c6ee77574a1600)

**CHILDREN'S MEDICAL CENTER
OF DALLAS
DISCLOSURE AND CONSENT
MEDICAL AND SURGICAL PROCEDURES**

**TO THE PARENT:** You have the right as a parent, to be informed ...
medical, or diagnostic procedure to be used so that you may m...
knowing the risks and hazards involved. This disclosure is not me...
informed so you may give or withhold your consent to the proc...

I (we) voluntarily request Dr. _Priscilla B. Berry_
as my child's physician, and such associates, technical assistants ...
treat my child's condition which has been explained to me as:

_eyes out of alignment_

I (we) understand that the following surgical, medical, and/or ...
voluntarily consent and authorize these procedures:

_eye muscle surgery_

I (we) understand that my child's physician may discover othe...
procedures than those planned. I (we) authorize my child's phys...
care providers to perform such other procedures which are adv...

I (we) (do) (do not) consent to the use of blood and blood proc...

I (we) authorize the hospital authorities to dispose of any tissu...
operation(s) or procedure(s).

I (we) understand that no warranty or guarantee has been made t...
in continuing the present condition without treatment, there are a...
medical, and/or diagnostic procedures planned for my child. I (...
procedures there is the risk of infection, blood clots in veins and lu...
realize that the following risks and hazards may occur in connecti...
to determine if further disclosures are required.)

_Decrease in Vision_
_Double vision_

I (we) understand that anesthesia involves additional risks and ha...
protection from pain during the planned and additional proced...
possibly without explanation to me (us).

I (we) understand that certain complications may result from th...
reaction, paralysis, brain damage or even death. Other risks and ...
range from minor discomfort to injury to vocal cords, teeth or eye...
spinal or epidural anesthetics include headache and chronic pai...

I (we) authorize the taking of still photographs or other visual r...
revealed.

I (we) have been given an opportunity to ask questions about my c...
risks of nontreatment, the procedures to be used, and the risks an...
information to give this informed consent.

I (we) certify this form has been fully explained to me, that I (we)...
spaces have been filled in, and that I (we) understand its conten...

The date on which treatment is scheduled to begin, or surgery p...

Date: _February 2, 1983_

Time: _9:07 a.m._

Witness _Beverly Basden_

Address (Street or P.O. Box) _8226 Douglas #805_

_Dallas_    _TX._    _75225_
City        State       Zip Code

CMC 06075/02928

Signature of _Mother_
(Specify relationship)

---

THIS IS A RECEIPT FOR THIS AMOUNT
THIS IS A STATEMENT OF YOUR ACCOUNT TO DATE

DIAGNOSIS

PROCEDURE

A — COMPLETE OPHTHALMOLOGIC EXAM
B — CYCLOPLEGIC EXAM
C — EXAM AND TREATMENT
D — CONTACT LENSES
E — SURGERY

S — STRABISMUS EVALUATION & CONSULTATION
R — REVISIT
O — OTHER
P — INCLUDED IN PRIOR FEE

SCHOOL NOTE
OPTICIAN'S
PICTURE CHART
SULFA
BOOKLETS

STRABISMUS EVALUATION & CONSULTATION

RETAIN FOR YOUR TAX RECORDS & INSURANCE

**1 7273**

**PEDIATRIC OPHTHALMOLOGY, P.A.**
1. DAVID R. STAGER, M.D.
2. PRISCILLA M. BERRY, M.D.
EYE PROBLEM OF CHILDREN
ADULT STRABISMUS
8226 DOUGLAS AVENUE
DALLAS, TEXAS 75225
(214) 369-6434
EMP. ID # 75-1384272

YOUR NEXT VISIT WILL BE _2 mo._ AT

**THANK YOU**

5592

The following treatments and procedures require full disclosure by the physician or health care provider to the patient or person authorized to consent for the patient.

**1. Digestive system treatments and procedures.**
(A) Cholecystectomy with or without common bile duct exploration.
(i) Pancreatitis.
(ii) Injury to the tube between the liver and the bowel.
(iii) Retained stones in the tube between the liver and the bowel.
(iv) Narrowing or obstruction of the tube between the liver and bowel.
(v) Injury to the bowel and/or intestinal obstruction.

**2. Ear treatments and procedures.**
(A) Stapedectomy.
(i) Diminished or bad taste.
(ii) Total or partial loss.
(iii) Brief or long-standing dizziness.
(iv) Eardrum hole requiring more surgery.
(v) Ringing in the ear.
(B) Reconstruction of auricle of ear for congenital deformity or trauma.
(i) Less satisfactory appearance compared to possible alternative artificial ear.
(ii) Exposure of implanted material.
(C) Tympanoplasty with mastoidectomy.
(i) Facial nerve paralysis.
(ii) Altered or loss of taste.
(iii) Recurrence of original disease process.
(iv) Total loss of hearing in operated ear.
(v) Dizziness.
(vi) Ringing in the ear.

**3. Endocrine system treatments and procedures.**
(A) Thyroidectomy.
(i) Injury to nerves resulting in hoarseness or impairment of speech.
(ii) Injury to parathyroid glands resulting in low blood calcium levels that require extensive medication to avoid serious degenerative conditions, such as cataracts, brittle bones, muscle weakness, and muscle irritability.
(iii) Lifelong requirement of thyroid medication.

**4. Eye treatments and procedures.**
(A) Advancement or recession of eye muscles (correction of strabismus).
(i) Decrease in vision.
(ii) Double vision.
(B) Extraction of lens for cataract with or without implantation of intraocular lens.
(i) Partial or total loss of vision.
(ii) Complications requiring additional treatment.
(iii) Need for glasses or contact lenses.
(iv) Complications requiring removal of implanted lens.
(C) Retinal detachment surgery.
(i) Recurrence of detachment.
(ii) Partial or total loss of vision.
(iii) Complications requiring additional treatment.

**5. Integumentary system treatments and procedures.**
(A) Cosmetic surgical operations of face and neck.
(i) Worsening or unsatisfactory appearance.
(ii) Creation of several additional problems, such as:
(i) Poor healing or skin loss.
(ii) Nerve damage.
(iii) Painful or unattractive scarring.
(iv) Impairment of regional organs, such as eye or lip function.
(iii) Recurrence of the original condition.

**6. Musculoskeletal system treatments and procedures.**
(A) Open reduction with internal fixation.
(i) Impaired function such as shortening or deformity of an arm or leg, limp or foot drop.
(ii) Blood vessel or nerve injury.
(iii) Pain or discomfort.
(iv) Fat escaping from bone with possible damage to a vital organ.
(v) Failure of bone to heal.
(vi) Bone infection.
(vii) Removal or replacement of any device or material.
(B) Osteotomy.
(i) Impaired function such as shortening or deformity of an arm or leg, limp or foot drop.
(ii) Blood vessel or nerve injury.
(iii) Pain or discomfort.
(iv) Fat escaping from bone with possible damage to a vital organ.
(v) Failure of bone to heal.
(vi) Bone infection.
(vii) Removal or replacement of any implanted device or material.

(C) Children's orthopedics (bone, joint, ligament or muscle).
(i) Growth deformity.
(D) Ligamentous reconstruction of joints.
(i) Failure of reconstruction to work.
(ii) Continued loosening of the joint.
(iii) Degenerative arthritis.
(iv) Continued pain.
(v) Increased stiffening.
(vi) Blood vessel or nerve injury.
(vii) Cosmetic and/or functional deformity.

**7. Nervous system treatments and procedures.**
(A) Craniotomy (craniectomy) for excision of brain tissue, tumor, vascular malformation and cerebral revascularization.
(i) Additional loss of brain function including memory.
(ii) Recurrence or continuation of the condition that required this operation.
(iii) Stroke.
(iv) Blindness, deafness, inability to smell, double vision, coordination loss, seizures, pain, numbness, and paralysis.
(B) Craniotomy (craniectomy) for cranial nerve operation including neurectomy, avulsion, rhizotomy or neurolysis.
(i) Numbness, impaired muscle function or paralysis.
(ii) Recurrence or continuation of the condition that required this operation.
(iii) Seizures.
(C) Spine operation, including: laminectomy, decompression, fusion, internal fixation or procedures for nerve root or spinal cord compression; diagnosis; pain; deformity; mechanical instability; injury; removal of tumor, abscess or hematoma (Excluding coccygeal operations.)
(i) Pain, numbness or clumsiness.
(ii) Impaired muscle function.
(iii) Incontinence or impotence.
(iv) Unstable spine.
(v) Recurrence or continuation of the condition that required operation.
(vi) Injury to major blood vessels.
(D) Peripheral nerve operation; nerve grafts, decompression, transposition or tumor removal; neurorrhaphy, neurectomy or neurolysis.
(i) Numbness.
(ii) Impaired muscle function.
(iii) Recurrence or persistence of the condition that required the operation.
(iv) Continued, increased or different pain.
(E) Correction of cranial deformity.
(i) Loss of brain function.
(ii) Seizures.
(iii) Recurrence or continuation of the condition that required the operation.
(F) Transsphenoidal hypophysectomy or other pituitary gland operation.
(i) Spinal fluid leak.
(ii) Necessity for hormone replacement.
(iii) Recurrence or continuation that required this operation.
(iv) Nasal septal deformity or perforation.
(G) Cerebral spinal fluid shunting procedures or revision.
(i) Shunt obstruction or infection.
(ii) Seizure disorder.
(iii) Recurrence or continuation of brain dysfunction.
(H) Angiography, aortography, arteriography (arterial injection of contrast material — diagnostic).
(i) Injury to artery.
(ii) Damage to parts of the body supplied by the artery with resulting loss of function or amputation.
(iii) Swelling, pain, tenderness or bleeding at the site of the blood vessel perforation.
(iv) Aggravation of the condition that necessitated the procedure.
(I) Myelography.
(i) Chronic pain.
(ii) Transient headache, nausea, vomiting.
(iii) Numbness.
(iv) Impaired muscle function.

**8. Respiratory system treatments and procedures.**
(A) Rhinoplasty or nasal reconstruction with or without septoplasty.
(i) Deformity of skin, bone, or cartilage.
(ii) Creation of new problems, such as septal perforation or breathing difficulty.
(B) Submucous resection of nasal septum or nasal septoplasty.
(i) Persistence, recurrence or worsening of the obstruction.
(ii) Perforation of nasal septum with dryness and crusting.
(iii) External deformity of the nose.

5593

# PEDIATRIC OPHTHALMOLOGY, P. A.

## CONSENT TO SURGICAL PROCEDURE

PHYSICIAN'S NAME: _D. Priscilla Berry_

PATIENT'S NAME: _Healy Whitfield_

I give my authorization and consent to the physician named above to perform the following surgical procedure on the patient named above: _eye lid surgery - right eye,_ _eye muscle surgery - right eye_ (the "operation").

The physician has explained to me and I fully understand that the purpose of the operation is to correct the following condition: _drooping eye lid right eye and eyes out of_ _alignment_

I have discussed with the physician alternative methods of treatment (including the option of no treatment at all), and I understand that there exist certain risks associated with the operation which include, but are not limited to, eye infection, pain, loss of vision, hemorrhage, retinal detachment, blindness, anesthesia reactions, drug reactions, and, as in cases of all surgery, even death.

I specifically acknowledge that no assurance or guarantee of the result of this operation has been given to me by the physician or any member of his or her staff.

I understand that during the course of this operation, the physician may encounter unforeseen conditions which make it necessary to extend, revise or modify the surgical procedures described above. I therefore consent to the physician performing any other procedure which he deems necessary and desirable in order to achieve correction of the above named condition, or any other unhealthy condition he or she may encounter during the operation.

I realize that an operation by modern methods requires the cooperation of numerous persons including assisting physicians, technicians, assistants, nurses and other personnel. I therefore consent to such ministrations and medical procedures, including the administration of anesthetics and drugs, by all such qualified personnel working under the supervision of the physician, before, during and after the operation.

During the course of the operation, and thereafter, I consent to disposal by hospital personnel and authorities of any and all tissue or bodily parts which may be removed during the operation.

WITNESS:

_____   Patient _____

Date: _2-2-83_   Date: _2-2-83_

Over Please

5594

IF PATIENT IS A MINOR OR OTHERWISE INCOMPETENT TO CONSENT TO THE OPERATION, COMPLETE THE FOLLOWING:

I represent to the physician that the patient is, or may be, unable to consent to the operation for the following reason: _____ minor _____

I represent to the physician, in order to induce him to proceed with the operation, that I am the parent, guardian, or conservator of the patient, and am fully authorized to consent to the operation. I acknowledge that the matters set forth above have been explained to me by the physician and that I understand them fully. I hereby give my authorization and consent to the performance of the operation on the patient.

WITNESS:

_Jean E. Schmitz_                            _Amra Whitfield_
                                             Parent, Guardian or Conservator

Date: _Feb. 2, 1983_            Date: _Feb. 2, 1983_

5595

PEDIATRIC OPHTHALMOLOGY, P. A.

David R. Stager, M.D., F.A.C.S.
Priscilla M. Berry, M.D.

8226 Douglas Avenue
Dallas, Texas 75225
369-6434

_Radiology Department._

Please do orbital
views with optic foramina
views

Dx: Ptosis
r/o Neurofibromatosis

Thanks
Berry

_____     _____ M.D.
Dr. Signature — product selection permitted    Dr. Signature — dispense as written

5596



**TWU** Texas Woman's University

P.O. Box 23029, Denton, Texas 76204 (817) 387-7090

INSTITUTE FOR MENTAL AND PHYSICAL DEVELOPMENT

JAN 26 1982

January 25, 1983

To Whom It May Concern:   Regarding Wesley Whitfield,
                          Birthday 11-17-80

On January 24, 1983, I examined Wesley very carefully for external evidence of Neurofibromatosis and found none. The ptosis of the right eyelid and partial ptosis of the left may have no relationship to Neurofibromatosis, but further intracranial evaluation could possibly reveal such evidence, although Dr. Priscilla Berry's ophthalmologic examination revealed normal optic nerve discs. To date, there is no evidence of hearing loss and Wesley's head circumference, height and weight are above the 50th percentile for normal.

According to the mother's history, Wesley could not open his right eye at birth, but has gradually been able to elevate the lid which certainly does not suggest a growing tumor involving the cranial nerves to the eyelid. Unless further evidence indicates the need for intracranial studies, it would not seem feasible to pursue such studies at this time. The planned surgery for the ptosis is certainly indicated.

Sincerely,

Marjorie Keele

Marjorie Keele, M.D.

MK: tlj

*Form filled out by
Anna Whitfield during
office visit with Wesley
on 11-10-92.*

**Child's Developmental
and
Medical History**

FOR INTAKE STUDY: If any of the information is not known, so state with reason(s).
Do not answer with N/A.

Name of Child: *Wesley Allen Whitfield.*

I.  Family Medical History (specify which family members have illness such as Cancer,
    T. B., sickle cell, hemophilia, diabetes, mental illness or retardation, etc.)

*Mother's parents:*

  A.) Mother - *Emma Alice Hammons - Cancer*
     *died - 5-18-78*

  B.) Father *Johnny J. Hammons - Skin Cancer*

  C.) Siblings
    *Joe David Hammons, Denton
    (John)
    Bobby*                          *Donald (Denton) ay
    Leonard (Plano) Edith Murray
    James (Sanger)
    Larry (Argyle)*

  D.) Grandparents (maternal & paternal)
*maternal GP.* *Lady Stem   Diabetes*
    *James Stem   Heart Trouble*    *Father: parents deceased*

  E.) Any significant illnesses in other extended family
*epilepsy*  *mat Fa Larry*  *Larry- has lazy Reye*
*asthma*

II.  Child's Prenatal, Birth History & Medical Information

  A.) Severe social, financial or emotional problems during pregnancy? (General)
*Financial problem
Anna Whitfield   Jan. 9, 1959
Denton County*

  B.) Did mother have prenatal care?
    Did mother bleed or spot while carrying the baby?  *5 month thru 8½*
    Did mother have any illnesses during pregnancy?  What month of pregnancy?
    (Please circle)
      fever                measles             ~~severe vomiting~~
      asthma              pneumonia         ~~swelling of ankles~~
      high blood pressure   virus illness       injuries
      heart trouble        kidney disease    diarrhea
      VD                 mumps            accidents

    RH blood problem _____ Hard labor _____ Was labor induced by shots
    _____ Caesarean Section _____ Premature birth _____ What month
    _____ Was baby born other than head first _____ Did baby have immediate problems
    breathing _____ Was baby blue a long time after birth _____
    Was baby yellow (jaundiced)? _____ Any other complications of
    pregnancy or birth  *no*

CW-78

-2-

Was baby born after miscarriage(s)? _____ How much did baby weigh at birth? 8 lb
    At six months? _____ At one year ~~X lbs~~  Time of birth 1:00AM
        Were forceps used? NO

**Feeding**
Breast or bottle fed? Bottle  Colic-spit up a great deal? NO
Was baby unusually irritable? NO  Was baby unusually quiet and good? yes
        Difficulties associated with weaning _____
When was baby weaned? 10 months  Any feeding problem at present? NO
Will he/she eat all foods? yes

C.  Developmental Stages
    Give age at which child:

    Sat alone 6 months Walked alone 11 mos Spoke words _____ Spoke
    sentences _____ Buttoned coat or dress _____ First tooth _____
    Read sentences _____ Tied shoe laces _____ Printed words _____

    Is child left or right handed? _____ Did child use either hand for a while?
    yes  At what age? 8 months Did child ever switch from being right handed
    or the other way around? _____ Is child well coordinated? _____
    Is child clumsy? _____ Is child good with hands? yes

    **Toilet Training**
    When was toilet training initiated? _____ Was child punished for accidents?
    training the child? _____
        How? _____

    **Physical disorders**
    Circle and explain any of these which apply:

    (eye problem) right eye drops   hearing problem
    prolonged high fever             seizures
    speech problem                   headaches
    sleeping problems                convulsions

    Has child ever slept continuously for several days? NO
    Has child ever had blank spells? NO  Falling Spells? _____
    Were there any problems concerning menstruation (if applicable)? _____

    **Illness/Hospitalizations**
    Circle any of the following which child has had:

    mumps         prolonged colic    major fractures   (asthma)
    pneumonia     allergies          encephalitis
    measles       chicken pox        other diseases

    Has child ever been in hospital? yes If so give brief details for
    asthma back in May 1981

CW-78  Revised: May, 1981

5599

-3-

Immunizations - Copy of record must be in folder.

Other habits and behavior
Does child sleep well? _yes_ Have nightmares? _____ Talking or walking
in sleep? _____ Jerking movement of body during sleep _____
Bedwetting? _____ Thumb-sucking or finger-sucking? _____
Nail biting? _____ Rocking? _____ Head-banging? _____
Masturbation? _____ Talk to self? _____ Destructive with toys
or household furnishings? _____ Stammering? _____ Nervous tics? ___
Does child climb alot? _yes_ Does child like to be picked
up, or was child content to be alone? _yes_ _like to be pick up_
Did child's attention flit from one thing to another? _____
Was child able to play with one thing for quite awhile? _yes_
Did child have temper tantrums? _____ How often? _____
At what age? _____ Describe _____

At time of Intake:

Child's weight _____ height _____ Hair _Brown_ Eye _Blue_

MEDICAL LOG

| Date | Physician Dentist | Reason for visit | Recommended treatment | Prescribed Medication | Has Parent Consent | Was Report Received |
|------|-------------------|------------------|----------------------|----------------------|-------------------|---------------------|
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |
|      |                   |                  |                      |                      |                   |                     |

CW-78   Revised: May, 1981

5600

-4-

MEDICAL LOG (CONT'D.)

| Date | Physician/ Dentist | Reason for Visit | Recommended Treatment | Recommended Medication | When Provide Treatment | Date Report Received |
|------|--------------------|--------------------|------------------------|------------------------|--------------------------|------------------------|
|      |                    |                    |                        |                        |                          |                        |
|      |                    |                    |                        |                        |                          |                        |
|      |                    |                    |                        |                        |                          |                        |

CW-78 - Revised: May, 1981

PEDIATRIC OPHTHALMOLOGY, P.A.

8226 DOUGLAS AVENUE
DALLAS, TEXAS 75225
(214) 369-8434

PEDIATRIC OPHTHALMOLOGY
AND STRABISMUS

DAVID R. STAGER, M.D., F.A.C.S.
PRISCILLA M. BERRY, M.D.

June 29, 1982

Frank McGehee, M.D.
2509 Scripture
Denton, Texas

re: Wesley Allen Whitfield

Dear Dr. McGehee:

Wesley Whitfield was in the office today. He is a very intersting little boy in that he has the obvious drooping of the right upper lid and in addition seems to have some difficulty elevating the left eye. He did seem to have fairly good vision in each eye and tends to tip his head back in order to look out from under that droopy lid in order to watch TV, etc. He has a little nearsightedness and astigmatism in the right eye which gives it a different focusing power from the left and an additional reason to not use it as much as the left. Dilated exam of the optic nerve and retina appeared symmetrical on both sides.

There is a family history of neurofibromatosis on the mother's side. Three or four of her brothers, her father and her paternal grandmother all have neurofibromatosis.

Wesley has what appears to be a typical ptosis that we see in young children but what is atypical is the decreased elevation apparently present in the opposite eye. This could represent some form of congenital fibrosis syndrome where some of the muscles are replaced by fibrous tissue. There is apparently no history of this, although there is a lazy eye in one of the boys with neurofibromatosis. I would like to have him examined by a neurologist just to make certain there are no other subtle problems with other muscles elsewhere that we are not aware of. The family would be interested in seeing someone there in Denton if possible. If you feel you would like to have him see a Pediatric Neurologist, Dr. Steve Linder in Dallas is quite good.

I have recommended patching his left eye for an hour a day to boost the vision on the right and would like to see him in two or three months. I would suggest going ahead with correction of the lid somewhere between the ages of two and four years.

Page 2
expresses thanks
s/ Dr. Berry.

5602

**DENTON CITY-COUNTY HEALTH DEPARTMENT**
COURTHOUSE ON THE SQUARE        PHONE 387-8559        DENTON, TEXAS

For ..............................................

To Dear Hulsey                    Date 10/28/82

Address ..............................................

Rx

Wesley Whitfield was seen today
for otitis media & congenital
right ptosis (droopy eyelid) —
He has been seen by Dr Priscilla
Berry (Ped. Ophthalmologist) in the
past —
        Thanks

                                        M.D.                    M.D.
Product Selection Permitted                    Dispense as Written

---

**DENTON CITY-COUNTY HEALTH DEPARTMENT**
COURTHOUSE ON THE SQUARE        PHONE 387-8559        DENTON, TEXAS

For ........ Wesley Whitfield ........

Address ..............................................     Date 10/28/82

Rx

To: Beverly Easton —
Wesley Whitfield was seen today
for bruises over lower posterior
legs — also, he has middle ear
infections

                                        M.D.                    M.D.
Product Selection Permitted                    Dispense as Written

Refill                                Reg. No. ..............................................

5603

# CHILD'S MEDICAL RECORD
## EXAMINATIONS AND RECOMMENDATIONS

Form Cb

Name ... *Wesley Whitfield*          Birth Date ___ *11-12-80* ___

| | Rt. | Lft. | Rt. | Lft. | Rt. | Lft. |
|---|---|---|---|---|---|---|
| Any Complaint? | | | | | | |
| Height __ *32"* | | | | | | |
| Weight __ *24#* | | | | | | |
| Temperature __ *99* | | | | | | |
| Head Measurement on Infant | | | | | | |
| Skin | *Healing myers over* | | | | | |
| Scalp | *both thighs above* | | | | | |
| | *knees* | | | | | |
| Eyes – Pupillary Reaction | | | | | | |
| Vision Without Glasses | | | | | | |
| Vision With Glasses | *OK* | | | | | |
| Eyegrounds | | | | | | |
| Other | | | | | | |
| Ears – Otoscopic | | | | | | |
| Hearing | | | | | | |
| Other | *OK* | | | | | |
| Nose | *OK* | | | | | |
| Teeth – Number | | | | | | |
| Condition | | | | | | |
| Occlusion | | | | | | |
| Other | *OK* | | | | | |
| Throat–Pharynx | | | | | | |
| Tonsils | | | | | | |
| Adenoids | | | | | | |
| Glands | | | | | | |
| Thyroid | *Clear* | | | | | |
| Chest | *No in* | | | | | |
| Heart | | | | | | |
| Lungs | | | | | | |
| Abdomen | | | | | | |
| Secondary Sex Characteristics | *OK* | | | | | |
| Genitals | | | | | | |
| Deep Reflexes | | | | | | |
| Superficial Reflexes | | | | | | |
| Extremities | | | | | | |
| Feet | | | | | | |
| Spine | | | | | | |
| Posture | *OK* | | | | | |
| Nutrition | | | | | | |
| Menstrual History since last | | | | | | |
| visit on adolescent girl | | | | | | |
| Signs of Endocrine Imbalance | | | | | | |
| Signs of Vasomotor Instability | *X-rays of long bones* | | | | | |
| Other | | | | | | |
| Urinalysis-Color, Reaction, Sp.G. | | | | | | |
| Sugar, Albumin, Micros. | | | | | | |
| Blood Pressure | | | | | | |
| Blood Hemoglobin, Count, etc. | | | | | | |
| Other Tests | | | | | | |
| Impression and Advice | | | | | | |

| | | |
|---|---|---|
| Examining Physician | Dr. *J.R. Barber* | Dr. |
| | Date *11/1/82* | Date |
| | | Dr. |
| | | Date |

ISSUED BY CHILD WELFARE LEAGUE OF AMERICA — 100M-4/66

For recording subsequent medical examinations, another form (Cb) may be secured from the Child Welfare League of America.

5604

FLOW MEMORIAL HOSPITAL
1310 Scripture
Denton, Texas 76201

Patient Name: Whitfield, Wesley

Hospital Number: 102 239947

History

| | Admission 4-13-81 | Discharge |

Patient is a 5 month old white male who was born at Flow Hospital and was normal at birth. The first time I saw the patient was today. He came in the office Kiwanis program because of wheezing, vomiting, and fever. The mother states he has had a cold for the past 3 days and developed expiratory wheezing on Friday. She gave the child no medicines, but observed him closely. When he began vomiting liquids this AM she sought medical attention.

SOCIAL AND FAMILY HISTORY: Negative except for strong family history of asthma and allergic disease. Patient has had no exposures other than to a child with respiratory virus the past week. The child has had no immunizations.

PHYSICAL EXAMINATION

HEENT: Left otitis media and clear rhinorrhea.

CHEST: Child has a heart rate of 44 with deep expiratory wheezes and grunting with nasal flaring. Heart rate 144, regular rate and rhythm, no murmur.

ABDOMEN: Soft and non-tender with no masses.

SKIN: Clear.

NEUROLOGIC: Normal.

EXTREMITIES: Good with full ROM.

GENITALIA: Normal circumcised pre-pubital male.

Patient is admitted to the hospital because of status asthmaticus. Admission chest x-ray showed hyperexpansion and no acute infiltrates. Patient will be treated with IV fluids at twice maintenance, IV Aminophyllin, Isoprel by aerosal, $O_2$ via mist tent and Ampicillin 125mg IV q 6 hrs.

4-13-81
4-14-81
FM/ca

CHART COPY

Frank McGehee, M.D.

4/74                              Medical Record

History & Physical

1310 Scripture
Denton, Texas 76201

Hospital Number:    3947

DISCHARGE SUMMARY

Admission 4-13-81   Discharge 4-16-81

Patient is a five month old white male who I saw for the first time on the day of admission 4-13-81. Patient was brought to the office because of difficult breathing, fever, and vomiting. The mother states that he had a clear nasal discharge from Thursday prior to admission until the time I saw the child. He developed expiratory wheezing on Saturday, two days prior to admission and vomiting one day prior to admission. No one else in the family has been ill and the patient appeared to be a normal infant otherwise. The mother states that he was born at Flow Hospital and was normal at birth.

Physical examination at the time of admission showed the patient weighed 14 lbs. 12 oz. Temperature was 102.6 rectally. His respiratory rate was 24. Heart rate was 128. On general physical exam he appeared to be a mildly dehydrated white male in moderate respiratory distress. HEENT exam revealed bilateral otitis media and a clear nasal discharge. Mucous membranes were moist. Neck was supple. Chest revealed coarse expiratory wheezing and inspiratory rhonchi in all lung fields. Abdomen was soft and nontender with no masses. Cardiac exam was normal. Genitalia were those of a normal circumcised prepubertal male.

He was admitted to the hospital, placed on IV fluids, IV Aminophyllin at 5.8 mg. per kilogram and placed on Isuprel by aerosol every four hours. Had rapid response to the Aminophyllin with decrease in wheezing within 12 hours after admission. His Isuprel was changed to four times a day and his Aminophyllin was made oral and his IV was discontinued. He continued to show improvement and his mother was taught by Teresa Villarreal the basic facts about asthma. The nurses instructed the mother how to give the discharge medications. He will be seen in my office in follow up in one week.

Discharge medications: Theolaire 7.5 cc's by mouth every six hours for five days. Mother will do CPT three times a day. The child also had otitis media which was treated with IV Ampicillin for a total of two days and the child was switched to oral Pediazol .5 cc's by mouth four times a day and responded to this medicine well with defervescence in 24 hours. At the time of discharge his ears looked much better. His ears will be followed in one week to make sure that infection has resolved. The patient also had diarrhea and vomiting at the time of admission and this was treated conservatively with NPO for six hours and clear liquids for 24 hours and then half-strength Isomil and full strength Isomil. At the time of discharge this problem had resolved completely. I advised the mother to keep the child on full strength Isomil at home. Patient will be seen in the office in one week for follow up of his respiratory and ear infection status.

FINAL DIAGNOSIS:

CHART COPY

FRANK McGEHEE, M.D./nh 4-17-81

D:  4-16-81

4/74

Medical Record

DISCHARGE SUMMARY

PLACEMENT AND REMOVAL FORM
FOR DENTON COUNTY

Child's Name: WESLEY A. WHITFIELD          DOB: 11-17-80

Client Number: 502744881

Date of Placement in Foster/Institutional Care: 10-28-82

Date of Removal from Foster/Institutional Care: _____

Name and Address of Foster Parents          Hector and Billie Viteychuk
  or Caretakers:                            17 Shiloh Circle, Roanoke

Facility Number: 80421


Beverly Basden, CPW II          10-29-82          817-383-2371
Child's Worker                  Date              Phone Number

*Rita Blanchard* (signature)   10-29-82
Signature of Supervisor         Date


Please complete five copies of this form for all placements or removals.
If it is an emergency foster home placement, an additional copy should
be prepared for Melodye Fleming.

Please route to:

( )  Placement/Removal Log

( )  Child's Casefolder

( )  Eva Hunter, Foster Home Developer

( )  Katie Nealeigh, AFDC Specialist

( )  Freda Wise, Placement Supervisor

( )  Melodye Fleming, Administrative Assistant

5607

# MEMORANDUM

### TEXAS DEPARTMENT OF HUMAN RESOURCES

**SUBJECT:**   Wesley Whitfield

**TO:**
Yvonne Moore  128-7
Eligibility for Foster Care
Dept. of Human Resources
308 E. 4th St.
Ft. Worth, TX  76102

**FROM:**
Beverly Basden     347-1
Child Placement Worker III
Children's Protective Services
P. O. Box 2186
Denton, TX  76201

**DATE:**   May 11, 1983

Attached is a copy of the Decree of Termination dated May 11, 1983
on the above child.  Wesley continues to reside in the foster home
of Billie and Hector Viteychuk.

*Beverly Basden*
BEVERLY BASDEN

BB/js

attachment

5608

**Speed Letter.**

Yvonne Manos
4th St, Ft Worth

From Barbara Pardon
Westland

Subject
No. 9 & 10 FOLD   Wasley (Whitfield)

Message   Attached is a completed form 2260 for
review on the abuse

Date 5-13   Signed B. Pardon

Reply

____No. 9 FOLD
____No. 10 FOLD

Date_____ Signed_____

Wilson Jones
[illegible]

Texas Department
of Human Resources

**FOSTER CARE ASSISTANCE APPLICATION AND REVIEW**

Form 2200
October 1981

☐ APPLICATION    ☒ REVIEW    ☐ REAPPLICATION

| Child's Name | Sex | Unique Client No. | Date of Initial Placement |
|---|---|---|---|
| Wesley A. Whitfield | M | 502744881 | 10-28-82 |

Race: ☒ White  ☐ Black  ☐ Hispanic  ☐ Am. Indian or Alaskan Native  ☐ Asian or Pacific Islander

Soc. Sec. No. (If none, enter date application for SSN was made.) 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

Mother's Name: Anna Whitfield
Mother's Address (Street, City, State, ZIP): 3818 W. University, Denton, Texas 76201

Father's Name: Robert Whitfield    ☐ Biological  ☒ Legal
Father's Address (Street, City, State, ZIP): UK

Stepparent's Name: NA
Stepparent's Address (Street, City, State, ZIP):

**A. ELIGIBILITY REQUIREMENTS FOR AFDC FOSTER CARE (Type Program 08); MAO FOSTER CARE (Type Program 09); AND STATE PAID FOSTER CARE (Type Program 10)**

1. Managing Conservatorship

a. Is the child in the managing conservatorship of DHR? . . . . . . . . . . . . . . . . . . . . . . . ☐ No

If yes, enter the date of court order and attach copy of the petition and court order if it has not been previously submitted: **10-29-82**

NOTE: If the answer to a. above is no, the child is not eligible for Program 08, 09, or 10 benefits.
DO NOT COMPLETE THE REMAINDER OF THIS FORM

b. Was the child placed in an emergency under the statutory authorization of Chapter 17.03, (a)(3) or (4) T.F.C., prior to court hearing? . . . . . . . . . . . . . ☒ Yes  ☐ No

If yes, enter the date: . . . . . . . . . . . . . . . . . . . . . . . . **10-28-82**

2. Child's Age

Date of Birth: 11-17-80    Method of Verification: ☒ Birth Certificate  ☐ Baptismal Certificate  ☐ Hospital Certificate

3. Citizenship of Child

Place of Birth (City, State, County):

(check one) ☒ U.S. Citizen  ☐ Lawfully Admitted Alien  ☐ Of unknown parentage, found in the U.S. under age 5 years.

4. Type Foster Care Facility (check appropriate box)

☒ The child is residing in a licensed or certified foster family or group home.

☐ The child is residing in a private non-profit child care institution which is listed in the Appendix II of the SSHB.

☐ The child is in a medical facility which accepts Medicaid and a plan has been made to place the child in a foster care facility.

Name of Foster Care Facility: Hector & Billie Vittaychelk    Address (Street, City, ZIP): 17 Shiloh Circle, Roanoke, Texas
Facility No.: 080421    Daily Rate: $7    Date Child Placed in F.C. Facility or Date Child Entered Medical Facility: 
Date Child Removed:

5610

Form 2200
Page 2

**.NOTE:** The child must be placed within the State of Texas to be eligible for Program 08, 09, or 10 benefits. If the child is placed outside of Texas, DO NOT COMPLETE THE REMAINDER OF THIS FORM.

**5. Resources**
Does the child have property and resources in excess of $1000?...................................... ☐ Yes  ☒ No

If yes, describe:

Method of Verification

**6. Child's Income and Need**
Enter any regular and predictable monthly income, including child support, that is available to the child.

| SOURCE OF INCOME | EFFECTIVE DATE | AMOUNT |
|---|---|---|
| *Mother is unemployed.* | | 0 |
| *Father signed, Voluntary Relinquishment* | | |
| *on 11.4.82* | | |
| RSDI, SSI, or RR Ret. Claim No. | | 0 |

Child's Total Monthly Income ...................... 0

Monthly Cost of Child Care (based on daily rate in Item 4) ..... $ 290

Who is receiving child's income? | Relationship to Child

**B. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 08 ONLY**

Date Court Proceedings Initiated
10·29·82

**7. Eligibility Status at Time of Removal** ....................................

☐ The child was a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

| AFDC Case Name | AFDC Case No. | Client No. |
|---|---|---|

Name of Parent or Qualified Relative | Relationship ☐ Father ☐ Mother ☐ Other (explain):

Address

Has the AFDC worker been notified to remove the child from the grant? . ☐ Yes ☐ No | Date | Method

☒ The child was not a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

**8. Domicile and Deprivation of Parental Support**

a. If child was living with parent(s) or relative during the month the petition was filed, check and complete box that applies:

☐ Living With Both Legal Parents:
Was either parent incapacitated? ☐ Yes ☐ No | Method of Verification (Attach Form 33-C if incapacity is based on anything other than SSI or RSDI.)

☒ Living With One Legal Parent: ................ ☒ Mother ☐ Father
Reason for Other Parent's Absence
☐ Parents Not Married ☐ Desertion ☒ Separation ☐ Incarceration ☐ Divorce ☐ Death

☐ Living With Relative:
Name | Relationship

5611

Form 2200
Page 3

b. If child was not living with parent(s) or relative during the month the petition was filed, was child living with parent(s) or relative at any time during the six months prior to month of filing? . . . . . . . ☐ Yes  ☐ No

| If yes, NAME OF RELATIVE | RELATIONSHIP | DATES |
|---|---|---|
| | | |

c. Redetermination of Deprivation. If the child were again living in the home from which he was removed, would he/she continue to be deprived of parental support? . . . . . . . . . . . . . . . . . . . . . ☒ Yes  ☐ No

Indicate reason for continued deprivation (i.e. parents not married, deceased, parental rights terminated, etc.)

*Mother is unemployed, Father has signed relinquishment*

9. Verification of Age and Relationship (Verification of relationship applies to both parents and to relatives if the child was living with relatives.)

Method of Verification:  ☒ Birth Certificate   ☐ Hospital Certificate   ☐ Baptismal Certificate

| Name of Hospital or Church | File or Cert. No. | Vol. (Bapt. Cert.) | Page No. (Bapt. Cert.) |
|---|---|---|---|
| City | County | | State |

☐ Evaluative Conclusion (explain): _____

NOTE: If age and relationship of the child cannot be verified by birth certificate, hospital certificate, or baptismal certificate and are determined by evaluative conclusion, this form must be signed by the Protective Services Supervisor.

Signature—Supervisor Approving Above Eval. Concl.                    Date

10. Family Need
If the child was NOT receiving AFDC in the home of his/her legal parent(s), the following must be completed to establish financial need of family. (Needs and resources of non-legally responsible relatives are not to be considered.) Needs and resources of the child's legal stepfather are considered if the stepfather resides in the home.

| NUMBER IN FAMILY | GROSS MONTHLY INCOME | SOURCE OF INCOME | FAMILY MEMBERS TO WHOM THE INCOME IS ATTRIBUTED | | | |
|---|---|---|---|---|---|---|
| 2 | 0 | — | ☒ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
| | | | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |

How was income determined? *Mother unemployed.*

5612

Form 2200
Page 4; Rev. 4-81

**11. WIN Status of 16 or 17 Year Old Child**

☐ Exemption Claimed
Basis for Exemption:
  ☐ Illness or Incapacity    ☐ Currently Attending School    ☐ Remoteness from WIN Project

☐ No Exemption Claimed
Child:
  ☐ Registered for WIN Program    ☐ Refuses to Register

**C. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 10 ONLY (check the box if the statement applies)**

Date (att. copy of petition)

☐ A petition for termination of parental rights of one or both parents under Section 15.02 TFC other than or in addition to 15.02 (I) (J) has been filed by DHR. Date of Petition for Termination.

☑ The child was placed in foster care after August 31, 1979.

**D. ADDRESS FOR FORM 3087 (Medical Care Identification Card) — If Form 3087 is to be sent to someone other than the facility in which the child is placed, complete the following.**

Name

Mailing Address (Street, City, State, ZIP)

**E. THIRD PARTY RESOURCE INFORMATION**

Is child covered by private health insurance (Blue Cross Blue Shield, CHAMPUS, etc.)? . . . . . . . . . . . ☐ Yes   ☑ No

If yes, complete the following for each policy under which the child is covered. If the child is covered by more than two policies, include the following information on an attached sheet of paper for the additional policies.

**POLICY NO. 1**

| Company Name | 1st Line Address | | |
|---|---|---|---|
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

**POLICY NO. 2**

| Company Name | 1st Line Address | | |
|---|---|---|---|
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

When eligibility worker and child-placing worker are not the same, the child-placing worker must sign below.

Signature — Beverly Basden    Date 5-7-85
Signature—Social Services Child-placing Worker

| Mail Code | BJN | Unit No. | Telephone No. |
|---|---|---|---|
| 347-1 | 051-35C-02 | 35 | (817) 383-2371 |

Form 2223
August 1980

Texas Department
of Human Resources

**CHILD PROTECTIVE SERVICES**
**PLACEMENT RECORD**

| Child's Name | Date of Birth | Family Case Name |
|---|---|---|
| | | |

| PERMANENT PLACEMENT PLAN | DATE |
|---|---|
| ☐ Return to own home or relative's home | |
| ☐ Adoption, including adoption by foster parents | |
| ☐ Transfer of managing conservatorship to substitute parents | |
| ☐ Permanent foster care by formalized agreement | |

| PERMANENT PLACEMENT PLAN | DATE |
|---|---|
| ☐ Emancipation (for older adolescents) | |
| ☐ Permanent custodial care of disabled children | |
| Other (specify): | |

**RECORD OF PLACEMENTS**

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| 10-28-82 | Billie & Doctor Viteychuk | foster home |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| Address | | Telephone No. |
| Date Removed | Reason for Removal | |

SEE INSTRUCTIONS ON REVERSE SIDE

Page _____ of _____

5614

I have read the information contained in the "Important Information" form(s) about the disease(s) and the vaccine(s). I have had a chance to ask questions which were answered to my satisfaction. I believe I understand the benefits and risks of the vaccine(s) and request that the vaccine(s) indicated below be given to me or to the person named below for whom I am authorized to make this request.

| DTP | Td | Oral Polio | Measles | Mumps | Rubella | Polio-IPV | CHECK VACCINES TO BE GIVEN, THEN ENTER DATE, SIGN, AND COMPLETE THE SECTION BELOW. | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | DATE | SIGNATURE |
| ✓ | | ✓ | ✓ | ✓ | ✓ | | JUN 10 '82 | Anna W. Whitfield |
| ✓ | | ✓ | | | | | 7-28-82 | ✓ Anna Whitfield |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

### INFORMATION ON PERSON TO RECEIVE VACCINE
(Please Print)

Whitfield Wesley Allen        Nov. 12, 1980    1½
Name (last)   (first)   (middle)        Birthdate        Age

1100 Coit Street        392-2764
Address        Telephone No.

Denton   Texas 76201   Denton
City        State        Zip Code        County



THIS FORM TO BE RETAINED AT CLINIC

5615

FOR CLINIC USE ONLY

Clinic Identification: _____

| FORM DATE | CLINIC DATE | VACCINE | MFR. | LOT NO. | VAC. ADMINISTRATION | |
|---|---|---|---|---|---|---|
| | | | | | SITE. | GIVEN BY |
| JN 10 '82 | JN 10 '82 | DTP | L | 664-492 | ① R.thigh | B.Hamilton |
| | JN 10 '82 | OPV | L | 658-503 | oral | B.Hamilton |
| | JN 10 '82 | MMR | m | 2841E | ① arm | B.Hamilton |
| 10-23-82 | 10-23-82 | DTP | L | 612-457 | ② R.thigh | B.Hamilton |
| 10-28-82 | 10-28-82 | OPV | L | 616-343 | oral | B.Hamilton |
| 6-16-83 | 6-16-83 | DTP | | | | |
| 6-16-83 | 6-16-83 | OPV | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**VACCINE INFORMATION FORM DOCUMENTATION**

Texas Department of Health
Bureau of Communicable Disease Services

Form No. C-100
Jan. 1982

5616

TO: Yvonne Moore
128.7

FROM: Beverly Basden
Benton

SUBJECT: Wesley Whitfield

DATE: 11-3-82

MESSAGE:

Attached is a copy of Form 2200 and a copy of birth certificate and Emergency Order dated October 29. The 10 day hearing is scheduled for 11-5.

signed Beverly

Originator - Do Not Write Below This Line

**To REPLY** - Write reply, snap out carbon, retain white copy for your files and send pink copy to originator.

| dept.-location | signed | date / / |

Originator - Detach Part 2 and Send Parts 1 and 3 With Carbon Intact - Part 3 Will Be Returned With Reply

2      ORIGINATOR DETACH AND FILE FOR FOLLOW-UP      WRITER'S COPY

Form 2200
October 1981

Texas Department
of Human Resources

# FOSTER CARE ASSISTANCE APPLICATION AND REVIEW

☒ APPLICATION   ☐ REVIEW   ☐ REAPPLICATION

| Child's Name Wesley A. Whitfield | Sex M | Unique Client No. 502744881 | Date of Initial Placement 10-28-82 |
|---|---|---|---|

| Race ☒ White ☐ Black ☐ Hispanic ☐ Am. Indian or Alaskan Native ☐ Asian or Pacific Islander | Soc. Sec. No. (if none, enter date application for SSN was made.) pending |
|---|---|

Mother's Name Anna Whitfield

Mother's Address (Street, City, State, ZIP) Twin Lakes MHP #179, Rt 5, Denton, Texas 76201    ☐ Biological ☒ Legal

Father's Name Robert Whitfield

Father's Address (Street, City, State, ZIP) Clayter House, Motel #206, 1111 W. University Blvd, Denton, Texas

Stepparent's Name NA

Stepparent's Address (Street, City, State, ZIP)

## A. ELIGIBILITY REQUIREMENTS FOR AFDC FOSTER CARE (Type Program 08); MAO FOSTER CARE (Type Program 09); AND STATE PAID FOSTER CARE (Type Program 10)

### 1. Managing Conservatorship

a. Is the child in the managing conservatorship of DHR? ............................................. ☐ No

If yes, enter the date of court order and attach copy of the petition and court order if it has not been previously submitted: **10-29-82**

NOTE: If the answer to a. above is no, the child is not eligible for Program 08, 09, or 10 benefits.
DO NOT COMPLETE THE REMAINDER OF THIS FORM

b. Was the child placed in an emergency under the statutory authorization of Chapter 17.03, (a) (3) or (4) T.F.C., prior to court hearing? ................... ☒ Yes   ☐ No

If yes, enter the date: ........................................... **10-28-82**

### 2. Child's Age

| Date of Birth 11-17-80 | Method of Verification ☒ Birth Certificate ☐ Baptismal Certificate ☐ Hospital Certificate |
|---|---|

### 3. Citizenship of Child

Place of Birth (City, State, County)

(check one) ☒ U.S. Citizen   ☐ Lawfully Admitted Alien   ☐ Of unknown parentage, found in the U.S. under age 5 years.

### 4. Type Foster Care Facility (check appropriate box)

☒ The child is residing in a licensed or certified foster family or group home.

☐ The child is residing in a private non-profit child care institution which is listed in the Appendix 11 of the SSHB.

☐ The child is in a medical facility which accepts Medicaid and a plan has been made to place the child in a foster care facility.

| Name of Foster Care Facility Hector & Billie Viteychuk | Address (Street, City, State, ZIP) 17 Shiloh Circle, Roanoke, Texas | |
|---|---|---|
| Facility No. 080421 | Daily Rate $7 | Date Child Placed in F.C. Facility or Date Child Entered Medical Facility: | Date Child Removed |

5618

Form 2200
Page 2

---

**NOTE:** The child must be placed within the State of Texas to be eligible for Program 08, 09, or 10 benefits. If the child is placed outside of Texas, **DO NOT COMPLETE THE REMAINDER OF THIS FORM.**

---

**5. Resources**

Does the child have property and resources in excess of $1000? . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes ☒ No

If yes, describe:

Method of Verification

**6. Child's Income and Need**

Enter any regular and predictable monthly income, including child support, that is available to the child.

| SOURCE OF INCOME | EFFECTIVE DATE | AMOUNT |
|---|---|---|
| *Father & Mother are separated but no child support is paid. Mother is unemployed.* | | 0 |
| RSDI, SSI, or RR Ret. Claim No.: | | 0 |

Child's Total Monthly Income . . . . . . . . . . . . . . . . . . . . . . . . . 0

Monthly Cost of Child Care (based on daily rate in item 4) . . . . . 0

| Who is receiving child's income? | Relationship to Child |
|---|---|

---

**B. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 08 ONLY**

Date Court Proceedings Initiated
10-29-82

**7. Eligibility Status at Time of Removal** . . . . . . . . . . . . . . . . . . . . . . .

□ The child was a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

| AFDC Case Name | AFDC Case No. | Client No. |
|---|---|---|

| Name of Parent or Qualified Relative | Relationship □ Father □ Mother □ Other (explain): |
|---|---|

Address

Has the AFDC worker been notified to remove the child from the grant? . . □ Yes □ No | Date | Method

☒ The child was not a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

**8. Domicile and Deprivation of Parental Support**

a. If child was living with parent(s) or relative during the month the petition was filed, check and complete box that applies:

□ Living With Both Legal Parents:

| Was either parent incapacitated? □ Yes □ No | Method of Verification (Attach Form 33-C if incapacity is based on anything other than SSI or RSDI.) |
|---|---|

☒ Living With One Legal Parent: . . . . . . . . . ☒ Mother □ Father

Reason for Other Parent's Absence
□ Parents Not Married □ Desertion ☒ Separation □ Incarceration □ Divorce □ Death

□ Living With Relative:

| Name | Relationship |
|---|---|

5619

Form 2200
Page 3

b. If child was not living with parent(s) or relative during the month the petition was filed, was child living with parent(s) or relative at any time during the six months prior to month of filing? . . . . . . ☐ Yes   ☐ No

| If yes, NAME OF RELATIVE | RELATIONSHIP | DATES |
|---|---|---|
|  |  |  |

c. Redetermination of Deprivation. If the child were again living in the home from which he was removed, would he/she continue to be deprived of parental support? . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes   ☐ No

Indicate reason for continued deprivation (i.e. parents not married, deceased, parental rights terminated, etc.)

_Parents separated so no child support paid._

9. Verification of Age and Relationship (Verification of relationship applies to both parents and to relatives if the child was living with relatives.)

Method of Verification:   ☒ Birth Certificate   ☐ Hospital Certificate   ☐ Baptismal Certificate

| Name of Hospital or Church | File or Cert. No. | Vol. (Bapt. Cert.) | Page No. (Bapt. Cert.) |
|---|---|---|---|
| _Flow Hospital_ |  |  |  |
| City: _Denton_ | County: _Denton_ | | State: _Texas_ |

☐ Evaluative Conclusion (explain): _____

NOTE: If age and relationship of the child cannot be verified by birth certificate, hospital certificate, or baptismal certificate and are determined by evaluative conclusion, this form must be signed by the Protective Services Supervisor.

_____   _____
Signature—Supervisor Approving Above Eval. Concl.        Date

10. Family Need
If the child was NOT receiving AFDC in the home of his/her legal parent(s), the following must be completed to establish financial need of family. (Needs and resources of non-legally responsible relatives are not to be considered.) Needs and resources of the child's legal stepfather are considered if the stepfather resides in the home.

| NUMBER IN FAMILY | GROSS MONTHLY INCOME | SOURCE OF INCOME | FAMILY MEMBERS TO WHOM THE INCOME IS ATTRIBUTED | | | |
|---|---|---|---|---|---|---|
| 2 | –0– | — | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
|  |  |  | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
|  |  |  | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
|  |  |  | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |
|  |  |  | ☐ Mother | ☐ Father | ☐ Step-father | ☐ Child |

How was income determined? _Mother unemployed._

_____

_____

5620

# Texas Department of Human Resources
### DENTON COUNTY CHILDREN'S PROTECTIVE SERVICES

AUTHORIZATION FOR MEDICAL CARE, SCHOOL ENROLLMENT, TRAVEL



**JEROME CHAPMAN**
Commissioner

**BOARD MEMBERS**
HILMAR G. MOORE
Chairman, Richmond

RAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

The Denton County Children's Protective Services Unit, granted

conservatorship by the __16th Judicial__ Court, Cause No.

__82-3081-A__, hereby authorizes ___Hector and Billie___ to obtain
                                      Vlzsychuk

the following services for __Wesley A. Whitfield__, born __11-17-80__

I.   EMERGENCY MEDICAL CARE, recommended by a licensed physician or dentist

to include:

    1.  Admission to a hospital                    Medicaid __502744881__
    2.  Administering anesthetics                            (number)
    3.  Performing surgery
    4.  Giving tests and immunizations
    5.  Any necessary dental work
    6.  Filling prescriptions
    7.  Administering nonprescription drugs

II.  SCHOOL ENROLLMENT:  The foster parents may enroll child in school and

sign any necessary school forms.

III. TRAVEL:  Foster parents are authorized to travel with said child with

notice to agency of trips over 48 hours.

_____
Supervisor

Denton County
Children's Protective Services
P. O. Box 2186
Denton, Texas  76201

STATE OF TEXAS

COUNTY OF DENTON

SWORN TO AND SUBSCRIBED BEFORE ME, This __29th__ day of __October__

A.D., 19__82__.

_____
Notary Public

MY commission expires __8-16-84__.

An Equal Opportunity Employer

5621

# *Child Success Project*

P. O. Box 22487, TWU Station
Denton, Texas 76204

(817) 387-6063

January 11, 1983

Beverly Basden
c/o T.D.H.R., Children's Protective Services
P.O. Box 2186
Denton, Texas   76201

Dear Beverly,

Enclosed please find information about our program for you to pass on to Wesley's foster parents as well as activities that they can work on with Wesley during their regular daily routine. I have a "Management Plan" for Anna also. No home visits have been scheduled, for I do not know with whom Wesley is living so that I might help with any home programming. Our entire staff will be available to Anna and Wesley during Center Visits (ie; physical therapist, speech and language pathologist, social worker, and occupational therapist). If home visits with the foster parents is a need, we will gladly provide them.

When Anna comes for Center Visits, it would be helpful if she would bring her "Management Plan" with her.

Also, please find enclosed a sticker for the back window of your car so you can legally park anywhere you can find a place near our building (unless it is reserved for a specific person).

Please feel free to contact me or any one of our staff members at any time.

Sincerely,

Judy Spalding

Judy Spalding, C.S.W.

Enclosure

JS/cl

──────── TEXAS WOMAN'S UNIVERSITY ────────

5622

# *Child Success Project*

P. O. Box 22487, TWU Station
Denton, Texas 76204

JAN 20 1982    (817) 387-6063

CLIENT: Wesley Whitfield (M)          MOTHER: Anna Whitfield
TEST DATE: 12-9-82                    PROGRAM INSTR: Judy Spalding, C.S.W.
BIRTHDATE: 11-17-80
CHRONOLOGICAL AGE: 25 Months

### Initial Report to Dr. McGehee

## REFERRAL

On November 19, 1982, at the age of 24 months, Wesley Whitfield was re-
ferred to the Child Success Program by Beverly Basden of the Texas Department
of Human Resources (Children's Protective Services) due to suspected develop-
mental delay and vision problems.

## FAMILY AND MEDICAL BACKGROUND

Wesley is the son of Anna Whitfield and Bob Randall Whitfield the two of
whom according to Anna, are separated and in the process of divorcing. They
have been separated 8 to 9 months. Wesley has an older brother, Randy - 5 years
old, who is presently living with his father. Wesley has been under the
supervision of the Texas Department of Human Resources-Children's Protective
Services since sometime in 1981. He is presently living with foster parents.

Our medical information is sketchy as we are awaiting the arrival of
records, however the pediatric opthamologist reported a family (maternal
side) history of neurofibromotosis, though the mother is not involved. Anna
(Wesley's mother) confirmed the fact that her father and three brothers have
a "disease with mole-like patches on their skin, and they were slow learners."

Wesley has had numerous ear infections according to his mother. He also
has an obvious droop of the right eye lid.

## ASSESSMENT

Wesley was assessed on 12-9-82 using Developmental Programming for Infants
and Young Children. This tool examines a child's development in six areas:
Perceptual/Fine Motor, Cognition, Language, Social/Emotional, Self-Care
(dressing, feeding, toileting) and Gross Motor. The ranges in which his
performance fell are shown on the attached graph.

## SUMMARY

As can be seen on the accompanying graph, Wesley fell within his age
range in the areas of social/emotional, dressing skills, and gross motor skills.
The score in the area of social/emotional development is somewhat unexpected
to me (as a social worker) and Wesley's caseworker as well. However, I would
like to make note of the fact that the Developmental Programming for Infants
and Young Children assesses social/emotional development based largely on

---

TEXAS WOMAN'S UNIVERSITY

5623

Wesley Whitfield Report
Page 2

evidences of independent behavior and interactions with objects (toys, etc.).
This may or may not allow for accurate representation of maladaptive behaviors
based on emotional trauma. We (the CSP team) did not note such behavior during
the assessment, however we are aware of the possibility of his having been
through a good deal of emotional trauma in his short two years. These are things
of which I merely make note at this time.

Wesley fell below his age range in the areas of perceptual/fine motor,
cognition, language, feeding, and toileting. As far as his perceptual/fine
motor skills are concerned, Wesley is holding crayons and folding paper but
is not yet marking on the paper, even after our demonstrating how. He is not
placing puzzle pieces in their proper places though this skill is emerging.
His stacking skills appear to be good. The CSP team was not able to elicit
any imitative behaviors in either this section of the assessment or in the
cognition section. Wesley was able to deduce the location of a hidden object
on numerous occasions. However, he was not able to anticipate the path of a
rolling ball. Both of these cognitive skills usually appear by 20 to 23 months.

As far as Wesley's expressive language is concerned, he is naming a very
few isolated black and white pictures as well as using some two-word sentences.
He is not talking well enough to name objects in the room or body parts. Re-
ceptively, Wesley is not yet pointing to body parts that someone else names
which is common around 16-19 months.

In the area of feeding, Wesley is beginning to try to use a spoon and cup
though not yet successfully. He is just now beginning to discriminate between
edibles and non-edibles which usually happens around 18 or 19 months.

Toilet training is just beginning now that he is in the foster home. He
is staying dry for long periods of time, yet at the time of this assessment,
he was not fussing or indicating in any other way a desire to be changed to
clean diapers.

RECOMMENDATIONS

Wesley has been referred to Marjorie Keele, M.D., a neurologist at the
Institute for Mental and Physical Development, for a neurological exam at the
recommendation of his pediatric opthamologist and at the request of his T.D.H.R.
caseworker.

An individual development plan has already been put together and given to
both Anna and the foster parents. Anna and Wesley will use our Wednesday morn-
ing center activity time as a time to visit with one another as well as receive
instructions in activities beneficial to Wesley's development.

Our toy and book lending library will be available to both mother and foster
family. CSP has offered to make home visits wherever Wesley is if this is suitable
to all concerned.

DATE _Jan. 17, 1983_          PROGRAM INSTRUCTOR _Judy Spalding_
                                          JUDY SPALDING, C.S.W.

cc: Beverly Basden ✓

# Child Success Project

P. O. Box 22487, TWU Station
Denton, Texas 76204

(817) 387-6063

PARENT CONFERENCE SUMMARY

DATE: _12-9-82_

DPIYC ASSESSMENT:
  Child's Name _Wesley Whitfield_
  Date Given _Pat Deligans Judy Spalding_
  By Whom _12-9-82_

  Family members present _____
  CSP staff present _Pat, Judy_
  RESULTS: (See attached graph)
  Child's strengths: _spatial awareness, eye-hand coordination, cooperation_

  Areas for improvement:
  _language, cognition, self-care_

Eligibility: (Circle one)  (Yes)   No
If no, list possible resources available for this child
_____
_____

If yes, list additional assessments recommended
_Hearing assessment, speech + lang. assessment, Neurological assessment_

Your program instructor will be _Judy Spalding_
Your next home visit will be _____
The next center visit is scheduled for _Jan. 5, 1983_ — _9:30-11:00am._
Tentative areas for management will be:
_Cognition, Language, Self-Care_
_____
_____

Original: to parent/guardian
  cc: to child's records

──── TEXAS WOMAN'S UNIVERSITY ────

10/82

5625

## Profile Graph

Name: *Wesley Whitfield*  Birth Date: 11-17-80

Evaluation Dates: 12-9-82
(25 mos.)

| Developmental Level in Months | Perceptual/ Fine Motor | Cognition | Language | Social/ Emotional | Self-care Feeding | Self-care Toileting | Self-care Dressing | Gross Motor |
|---|---|---|---|---|---|---|---|---|
| 32–35 | 48*↑46 | 94↑91 | 135 | 173↑171 | 202 | 210 | 223↑221 | 299↑294 |
| 28–31 | 45↑43 | 90↑88 | 134↑132 | 170↑168 | 201 | 209↑208 | 220 | 293↑290 |
| 24–27 | 42↑38 | 87↑84 | 131↑129 | 167↑16 | 200 | 207 |  | 289↑286 |
| 20–23 | 37↑32 | 83↑79 | 128↑124 | 164↑161 | 199↑198 | 206 | 218↑216 | 285↑284 |
| 16–19 | 31↑28 | 78↑73 | 12↑117 | 160↑158 | 197↑1 | 205 | 215↑214 | 283↑276 |
| 12–15 | 27↑22 | 72↑69 | 116↑111 | 157↑154 | 194↑192 | 203 | 213↑211 | 275↑269 |
| 9–11 | 21↑17 | 68↑62 | 110↑105 | 153↑150 | 191↑185 |  |  | 268↑259 |
| 6–8 | 16↑13 | 61↑56 | 104↑101 | 149↑146 | 184↑180 |  |  | 258↑241 |
| 3–5 | 12↑5 | 55↑52 | 100↑97 | 145↑140 | 179↑176 |  |  | 240↑230 |
| 0–2 | 4↑1 | 51↑49 | 96↑95 | 139↑136 | 175↑174 |  |  | 229↑224 |

25 mos. C.A.

*Profile item numbers

Developmental Programming for Infants and Young Children
Volume 2: Early Intervention Developmental Profile

5626

CLIENT: __WESLEY WHITFIELD   (M)__          PROGRAM INSTRUCTOR: __JUDY SPALDING, C.S.W.__

TESTDATE: __12-9-82__

BIRTHDATE: __11-17-80__

C.A. __25 months__

## M A N A G E M E N T   P L A N

Wesley's test results indicate no programming is needed in the areas of social skills, dressing and gross motor at this time, for he scored within his chronological age range in these areas. A need was indicated for program-ming in the areas of perceptual/fine motor, cognition, language, feeding and toileting. Initially, priority will be placed on language development and cognition.

### PLAN

| | SOURCE |
|---|---|
| GOAL I: Wesley will increase his receptive language capabilities. | |
| Objective 1: Wesley will show or point to body parts, toys and objects upon request. (see handouts pp. 66-67) | Developmental Programming for Infants and Young Children Stimulation Activities |
| Objective 2: Wesley will increase his ability to name objects in pictures. (see handouts pp. 68-69) | Developmental Programming for Infants and Young Children Stimulation Activities |
| GOAL II: Wesley will increase his expressive language activity. | |
| Objective 1: Wesley will increase his expressive vocabulary and begin imitating words heard in a familiar song, story or nursery rhyme. (see handout #2,55 and handouts pp. 70-71) | " " |
| Objective 2: Wesley will use his own name when referring to himself. (see handout 2,52) | Hawaii Early Learning Profile Activity Guide |
| GOAL III. Wesley will improve his problem solving skills. | |
| Objective 1: Wesley will match pairs of like objects from a group of several different objects. (see handout p. 51) | Developmental Programming for Infants and Young Children Stimulation Activities |

The CSP will provide:

1. Center Visits on a weekly basis (except for the last week of each month).

Management Plan
Wesley Whitfield
Page 2

2. Toy and Book lending libraries.

3. Specific activities and suggestions for movement toward achieving the above stated goals.

4. Parent support group beginning January 27, 1983.

The parent will attend Center Visits.

PARENT: _____

PROGRAM INSTRUCTOR: _____
JUDY SPALDING, C.S.W.

DATE: _____

5628

<u>AUTHORIZATION TO RELEASE/OBTAIN INFORMATION</u>

CHILD SUCCESS PROJECT
TEXAS WOMAN'S UNIVERSITY
P.O. BOX 22487, TWU STATION
DENTON, TX 76204

JAN 20 1982

Authorization for release of clinical information to/and or from the U.S. Office
of Education Demonstration Project: <u>Child Success Through Parent Training.</u>

I hereby authorize the Child Success Through Parent Training Project to release
and/or obtain confidential information concerning *Wesley Whitfield,*
to assist in evaluation, planning and implementation of his/her management pro-
gram. Would you please send a summary of your evaluations, diagnoses, recommen-
dations and treatment?

Thank you for your cooperation.

AUTHORIZATION TO:
(use initials)
Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

1. AGENCY/PHYSICIAN: *Frank McVeyhee, MD*
   ADDRESS: *2509 Scripture*
   *Denton, Tx. 76201*
   Zip Code

2. AGENCY/PHYSICIAN: *Priscilla Berry*
   ADDRESS: *8226 Douglas Ave.*
   *Dallas, Tx.*
   Zip Code

3. AGENCY/PHYSICIAN: *Beverly Baaden, DHR*
   *Protective Services*
   ADDRESS: *3rd floor - Courthouse on the Sq.*
   *Denton, Tx. 76201*
   Zip Code

4. AGENCY/PHYSICIAN: *Institute for Mental + Phy. Dev.*
   ADDRESS: *TWU*
   *Denton, Tx. 76204*
   Zip Code

SIGNATURE *Anna W Whitfield*
DATE: 12-3-82

5629

AUTHORIZATION TO RELEASE/OBTAIN INFORMATION

CHILD SUCCESS PROJECT
TEXAS WOMAN'S UNIVERSITY
P.O. BOX 22487, TWU STATION
DENTON, TX 76204

DEC 6 1982

Authorization for release of clinical information to/and or from the U.S. Office of Education Demonstration Project:  Child Success Through Parent Training.

I hereby authorize the Child Success Through Parent Training Project to release and/or obtain confidential information concerning _Wesley Whitfield_ to assist in evaluation, planning and implementation of his/her management program.  Would you please send a summary of your evaluations, diagnoses, recommendations and treatment?

Thank you for your cooperation.

AUTHORIZATION TO:
(use initials)
Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

Release: A.W  Obtain: A.W
Date: 12-3-82

1.  AGENCY/PHYSICIAN: _Frank McVeyhee, MD_
    ADDRESS: _2509 Scripture_
    _Denton, Tx. 76201_
    Zip Code

2.  AGENCY/PHYSICIAN: _Priscilla Berry_
    ADDRESS: _8226 Douglas Ave._
    _Dallas, Tx._
    Zip Code

3.  AGENCY/PHYSICIAN: _Beverly Basden, DHR_
    _Protective Services_
    ADDRESS: _3rd floor - Courthouse on the Sq_
    _Denton, Tx. 76201_
    Zip Code

4.  AGENCY/PHYSICIAN: _____
    ADDRESS: _____
    _____
    Zip Code

SIGNATURE _Anna W Whitfield_
DATE: _12-3-82_

5630

## SOCIAL SUMMARY

Wesley Whitfield
DOB: 11-17-80
Denton Country Children's Protective Services

### PRESENTING PROBLEM:

Wesley was removed under an emergency order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior thighs above the knees. This was the third such bruising incident since July, and the family had been warned that such an incident might result in removal.

The first incident was reported on July 11th by a babysitter with whom the mother and her boyfriend had left the children for the first time. The 5-year old brother had told the sitter that the boyfriend, Jimbo Willingham, had whipped his brother with a belt.

The second incident was reported by Dr. Johnson through the Health Clinic. He had examined Wesley for an ear infection. The explanation for the bruises was that the boy had fallen from a swing while in the care of a babysitter. It was the doctor's opinion that the bruises could not have been caused in such a manner.

The third incident was reported by Dr. Jackson through the Health Clinic. The child was being treated for a middle ear infection when the bruises were discovered. At that time, the bruising was attributed to a spanking by the boyfriend.

### BACKGROUND:

Anna Whitfield is the mother of two children: Wesley, 2 years old, and Randy, 5 years old. She is presently separated from her husband and the father of the children. The father has custody of the 5 year old who is enrolled in protective daycare while the father works as a painter. The father signed an Affidavit for Relinquishment of Parental Rights on 11-4-82.

Mrs. Whitfield is presently living with Jimmy Willingham, who is well-known to the local police because he is currently on parole and probation for a robbery which he committed in 1978. His probation officer feels that Jimmy is still involved in drugs and has been very cooperative in hopes of securing information which would enable him to revoke the probation. Mr. Willingham is self-employed as an auto mechanic and does some part-time work for Bill Utter Ford. Since my involvement with this case, Mr. Willingham has been available at different intervals during the day which indicates he is working very little.

Mr. Willingham is divorced and has two daughters, ages 5 and 8. By self-report he does not like children because they make him nervous. He indicated that the most effective means of disciplining a child was to stand them in a corner. He denies ever physically punishing either of the Whitfield boys.

His ex-wife verifies that he has abused drugs.

Anna Whitfield has admitted in the past to being involved with drugs. For a brief period of time she was in counselling with Jeanie Mason of Mental Health.

Case 3:13-cv-01535-L   Document 17-115   Filed 08/21/14   Page 278 of 533   PageID 13632

SOCIAL SUMMARY
Wesley Whitfield                                          Page 2

She had voluntarily placed both of the children with a brother and his
wife while she attempted to straighten out her life. She could not maintain
the type of social life which she desired and care for the two boys. Because
Anna did not follow through with her proposed reform and reclaimed the children,
the brother and his wife are reluctant to become actively involved at the present
time. Anna admits to being responsible for the bruises on Wesley in July and
September. The most recent incident she states was the result of a beating by
Jimbo; however, Willingham denies this. After the recent incident, Anna and
Wesley left the residence of Willingham. Immediately following the removal
of Wesley, Anna did go back to Willingham.

Wesley has been treated on two occasions for ear infections. No medical treat-
ment was secured until there was intervention by this Department. Wesley has
a physical condition which causes his right eyelid to droop. He was recommended
to and examined by a pediatric opthamologist in Dallas. This doctor recommended
that his left eye be patched for one hour a day and he be rechecked in two to
three months. No medical follow-up was made.

CURRENT PLAN:

The 10 day hearing was scheduled for November 5th; however, due to the fact
that the mother's attorney was tied up in court, the order was continued and
the hearing will be held on November 12th. At the writing of this summary,
the plan is to maintain the child in foster care. It is hoped that the evidence
presented at the November 12th hearing will determine the responsible party for
the bruises.

Since the removal of the child, the father has signed a voluntary relinquishment.
The mother has not contacted this office nor has she requested any visitation
with the child.

*Beverly Basden*
BEVERLY BASDEN
Child Placement Worker II

11-10-82

js

Case 3:13-cv-04535-L  Document 17-115  Filed 08/21/14  Page 279 of 533  PageID 19633

---
### 16–19 Months


*Reception*

*Child will show or point to named body parts.*

*Activities*

1. Use a mirror. Position yourself behind the child with the mirror in front of both of you. Point to your (*nose*) and say, *Here's mommy's* (nose). Point to the child's (*nose*) and say, *Here's Johnny's* (nose). Do this several times with two or three different body parts. Encourage imitation.

2. Ask the child, *Where's mommy's* (eyes)? Use his finger to point to your eyes. Ask him, *Where are Johnny's* (eyes)? Help him point to his own eyes. Repeat for other body parts.

3. During bath times, play the guessing game, *Where is Johnny's foot? Oh! It's under the water! Here it is!* Encourage him to find his body part upon request.

4. Use a doll with real-life features and again ask the child to point to body parts. Guide his fingers to the appropriate place on the doll.

*Note:* Suggested body parts: eyes, nose, mouth, hair, hands, feet, tummy.

**Hearing Impaired:** *MA*

**Motorically Involved:** *MA*

**Visually Impaired:** *Move the child's hands across your face while naming the facial parts, then across his face. Encourage imitation.*

---

*Child will show, point to, or retrieve her toys upon request.*

*Reception*

*Activities*

1. When she is holding a (*ball*), ask the child, *Where is your* (ball)? If she looks at it, raises it, or hands it to you, say, *Good girl!* If not, point to it and say, *Here it is; here is your* (ball).

2. When the toy is nearby, ask the child, *Where is your* (teddy bear)? If she looks or points to it, say, *Good girl!* If she does not, get the toy and say, *Here it is; here is the* (teddy bear).

3. Ask the child to show you one toy from a choice of two or three. Reward her for correct answers.

**Hearing Impaired:** *MA*

**Motorically Involved:** *If the child cannot move on her own, place her where she can reach and/or simply look at the objects. Her looking, or eye pointing, may indicate that she understands what you have asked for.*

**Visually Impaired:** *MA*

---

*Child will name objects or people.*

*Expression*

*Activities*

Ask the child, *What's that?* when pointing or showing him something. Give him a chance to respond without hearing the word first. If he names it, reward him by saying *Good boy!* If he does not, say the word, repeating it several times.

67

5633

2. Turn slowly through a colorful picture book pointing to simple pictures and ask what is in the picture. Provide the label for the child when necessary.

3. Choose somewhat more complicated colored pictures with several on one page. Point to one and ask the child to name the object in the picture.

4. Repeat the activities using black and white pictures. Then use sketches or drawings for a more difficult task.

*Note:* Pictures can be cut from magazines and pasted on construction paper for the child's own scrapbook.

Hearing Impaired: *MA*

Motorically Involved: *NC*

Visually Impaired: *O*

**Child will select a named object.** Reception

*Activities*

1. Place two or three common objects before the child. Ask him to give you one of them. If he looks, points, or touches the object react in a positive manner. If not, guide his hand to the object saying, *Here is the* (cup). Repeat for the other objects. Increase difficulty by changing to new objects and by increasing the number of selections.

2. Ask the child to give you a specific toy from his toy box.

Hearing Impaired: *MA*

Motorically Involved: *MA*

Visually Impaired: *MA. Encourage the child to feel all the objects before making his selection.*

**Child will perform requested actions.** Reception

*Activities*

Using real objects, pretend housekeeping with the child. Ask her to imitate you as you do different actions and name them for her (mop, sweep, wash, stir, mix). Request that she perform the actions on verbal cue.

While using play dough, show the child several different actions. Name the actions for the child (roll, squeeze, pat, poke, pound, pinch). Request that she perform the actions on verbal cue.

During ball play, show the child several actions, naming them (throw, catch, bounce, roll, kick). Request that she perform the actions on verbal cue.

After the child has had many of these experiences, direct her to do the actions. Reward her with praise or by continuing to make a game of the requests.

Hearing Impaired: *MA*

Motorically Involved: *A child who is not mobile can understand words such as shake, wave, hold, give, go, etc.*

Visually Impaired: *Use action words that are applicable to the child's experience, such as touch, hold, feel, give, listen, bang, shake.*

69

5634

Ask the child, *Who's this?* when showing a picture of a relative or friend or when meeting someone. React in a positive manner if he names the person. Supply the name for him if necessary.

*Note:* Many children will use nicknames for relatives. Positively reinforce the child by accepting these names.

> Hearing Impaired: *Continually talk to the child and name objects and people for him. Reward his attempts to verbalize.*
>
> Motorically Involved: *NC*
>
> Visually Impaired: *MA*

**Child will point to black and white pictures.** 

*Activities*

1. Show the child a common object and a colored picture of the object together. Label the object as you point to it. Encourage the child to point to the picture when you name it.

2. Show the child colored picture books or magazines with simple pictures. Point to the picture and label it for her. Encourage the child to point as you label the pictures.

3. Repeat sequence with black and white pictures.

> Hearing Impaired: *MA*
>
> Motorically Involved: *NC*
>
> Visually Impaired: *MA*

**Child will communicate his needs by using single words.** 

*Activities*

When the child fusses or tugs at you, ask him what he wants. If he is unable to say, make a guess and say the word for him. Then ask him to repeat the word. Reward him by immediately giving him what he requested. If that is not possible, say, *No, but you can have* (an apple) *instead.*

When the child points to the toy box or food on the table, encourage him to name the item. If he cannot, name it for him and ask him to repeat the word. If he says the first sound or one of the sounds in the word. smile and say the complete word and give him the toy or food.

> Hearing Impaired: *MA*
>
> Motorically Involved: *NC*
>
> Visually Impaired: *MA*

**Child will name pictures.** *Expression*

*Activities*

1. Use a book with a picture of one large colored object on each page. Name the object in the picture for the child several times before you turn the pages.

Give him a choice, "Do you want this apple or milk?"
3. Be willing to accept an approximation of a word at first; accuracy will come later.
4. Do not make an issue over asking for food.
5. Refer to 6.30 (May refuse foods—appetite decreases).

## 2.47 MAKES SOUNDS IN BABBLING, BUT OFTEN SUBSTITUTES THOSE SOUNDS IN WORDS (15½-21 mo.)

*The child makes sounds in babbling but does not use the sounds correctly yet in words. He may say "sh" in babbling but substitutes "t" for "sh" when he says "shoe." It is easier for him to produce strings of the same sounds than to make the rapid changes required for articulation in words.*

1. Repeat correctly the words the child uses so he hears and sees a good model.
2. Encourage the child to imitate the words you say. Make up nonsense words, e.g., "boo boo" and "goo boo." Repeat them playfully. This should be a fun, enjoyable game.
3. Be patient. "Perfect" articulation takes years to develop.
4. Do not ask the child to repeat the words "correctly" or tell him he is saying them "wrong."
5. Do not encourage the child to repeat the incorrect sounds by commenting on their being "cute" or by asking him to "perform" for friends.
6. Sing songs using sounds instead of words.
7. Imitate environmental sounds, such as "ch ch ch" or "t t t."

## 2.48 JABBERS TUNEFULLY AT PLAY (17-19 mo.)

*The child discovers the value of talking. He begins to talk to get and maintain an adult's attention, to see if speech continues to be useful in controlling his environment, to practice his new skill and to enjoy the sound of his own voice.*

1. Describe what you are doing to provide the child a model.
2. Let the child talk. Encourage him by responding positively. If the child talks to get and maintain your attention, pay attention to him. If he is talking for the pure enjoyment of listening to his own voice, do not interrupt him.
3. Continue to model sentence structure and articulation by talking to the child and by repeating his sentences and word approximations correctly.
4. Continue to play, making environmental sounds. It is a good way to practice new sounds the child can use later in articulation.

## 2.49 ECHOES PROMINENT OR LAST WORD SPOKEN (17-19 mo.)

*The child usually imitates the last spoken word as a clue to help him remember directions. Do not overreact because you do not want to encourage the echoing of all speech so that the child fails to use spontaneous speech. Usually the imitation of the last word spoken is done by a child as a clue to him for remembering directions.*

See Introduction (footnote 2).

## 2.50 USES EXPRESSIVE VOCABULARY OF FIFTEEN—TWENTY WORDS (17½-20½ mo.)

*The child uses fifteen to twenty words spontaneously to express himself.*

1. Refer to 2.45 (Uses ten to fifteen words spontaneously).
2. Name body parts while bathing the child. Play games when the child can identify a few body parts. Wash the places the child can identify, model by naming them, then ask, "Where shall I wash now?" Encourage the child to verbalize as she points. Repeat this activity using a rubber doll.
3. Refer to 1.106 (Enjoys nursery rhymes, nonsense rhymes, fingerplays, poetry).
4. Play with playdough, paints, sand and water and naming the actions and objects used. Squish, pinch, poke and roll the playdough. Smell it. Cut it with a cookie cutter. Splash with water. Wash the dishes together. Blow on the water. Watch a paper towel soak up liquid. Use lots of verbs and adjectives to talk about the activity you are doing together.
5. Use self talk when the child is with you. Self talk is describing your activity as you do something "I'm washing the dishes. First wash a spoon. Here's another spoon. What's this? A glass."
6. Use parallel talk with the child. Describe his activities as he does something. "You are playing with the blocks. Stack them up. Here comes another. Boom. It fell down."

## 2.51 USES JARGON WITH GOOD INFLECTION AND RATE (18-22 mo.)

*The child's use of jargon, the meaningless repetition of consonant sounds using speech inflection patterns, is a natural development. Jargon is most often heard when the child is in solitary play. He is practicing the sounds, inflection and fluency of speech. The child may use a few understandable words within his jargon. Some children do not go through a prolonged jargon stage. Do not worry if he progresses directly to speech. Also, do not imitate jargon. If we imitate or respond as if we understand, the child may begin to think it has meaning to us.*

See Introduction (footnote 2).

## 2.52 USES OWN NAME TO REFER TO SELF (18-24 mo.)



HELP Activity Guide

*The child gives her first name when asked or uses her first name spontaneously.*

1. Use the child's name as you talk to her during daily activities, such as bathing, dressing, eating, playing.
2. Model for the child. When she says "Water" say, "Heather wants water." When she says "Up" say, "Heather wants up."
3. Ask questions and help with the answer by modeling. "Who is my little girl?" "Who wants water?" "Who wants up?" If she does not answer for her "Heather does!"
4. If the child says, "Heather is hungry," you as model can reply, "Are you hungry? So am I," or "I'm hungry too." The child is not expected to use "I" at this time in development, but the receptive exercise is valuable.

## 2.53   IMITATES ENVIRONMENTAL SOUNDS (18-21 mo.)

*The child imitates environmental sounds in play. These may be animal, nature or machine sounds.*

1. Point out environmental sounds to the child. Identify and imitate them. Include, waves at the shore, dogs barking, children playing, a ball bouncing, the toilet flushing.
2. Make a tape of environmental sounds together with the child. Play the tape back and discuss and imitate the sounds.
3. Tape the sounds of dogs, cats, cows, sheep, horses, pigs and birds. Animal sounds are often favorites. Some libraries have children's records of animal sounds.
4. Play "garage" with cars and trucks making engine sounds as well as the sounds of sirens and horns.
5. Talk about the weather on a windy day and make wind sounds. How about the sounds of a rainy day?

## 2.54   IMITATES TWO WORD PHRASES (18-21 mo.)

*The child says simple two word phrases in imitation. This usually begins when the child has an expressive vocabulary of twenty to thirty words.*

1. Encourage the child to imitate by modeling phrases. Encourage and listen for phrases, such as "Big boy," "Go bye bye," "Mommy's car," "My doggie," "Daddy come."
2. Say short phrases playfully for the child to imitate, the same way you said words and inflection patterns earlier. Expand on what the child says. When the child says "Car," say "Yes, a *big* car!" Wait for imitation.
3. Use combinations of single words that the child already uses. If the child says "Me," "Car," and "Go," then "Me go" or "Go car" should be easy for the child to begin two word imitations.
4. Do not expect perfect articulations. Praise all attempts to imitate.

## 2.55   ATTEMPTS TO SING SONGS WITH WORDS (18-23 mo.)

*The child attempts to sing with or without others, using a few words. The child may be off key and use the same words over and over.*

1. Expose the child to simple songs. Sing to him. Play children's records for him. Repeat the words.
2. Simple tunes and lyrics with refrains are learned most quickly.
3. Learn a few finger plays, such as "Pat-a-Cake" or "This Little Piggy," and teach them to the child.
4. Car rides can be made more exciting if the whole family joins in the singing. Let the child fill in words or phrases at times. A fun and easy song to start with is "Old MacDonald had a farm."
5. Refer to 2.43 (Attempts to sing sounds to music), and 1.106 (Enjoys nursery rhymes, nonsense rhymes, finger-plays, poetry).

## 2.56   NAMES TWO PICTURES (19-21½ mo.)

*The child labels two different pictures spontaneously or when asked, "What is this?"*

1. Refer to 1.92 (Recognizes and points to four animal pictures).
2. Refer to 1.60 (Enjoys looking at pictures in books).
3. Look at pictures everywhere in the everyday environment. Take turns asking and answering "What's this?" Look at:
   a. Pictures in magazines, catalogs, junk mail.
   b. Pictures on cereal boxes, clothing, wallpaper, sheets or blankets.
   c. Pictures in family photo albums. Family members and pets are favorites.
   d. Posters and murals in stores, banks, libraries.
   e. Books, commercial and homemade scrapbooks.
4. Think of the words the child uses. Can you find pictures of those words? Make a scrapbook.

## 2.57   USES TWO—WORD SENTENCES (20½-24 mo.)

*The child begins to form short two-word phrases and sentences as she expands her vocabulary of single words to twenty or thirty words.*

1. Expand the child's single words sentences. If the child says "Cookie," say "You want more cookie? More Cookie?" "More" is a good word to encourage here because it can be used meaningfully with many words and is easy to say, e.g., "More cookie," "More juice," "More bubbles," "More play."
2. Model three- and four-word sentences, just as you previously modeled two-word phrases when the child spoke only single words.
3. At this stage, the child is rapidly absorbing and retaining

61

5637

Developmental Programming for Infants and Young Children

## 20–23 Months

*Child will combine two words.* *Expression*

*Activities*

When the child says a noun, such as *ball*, expand his utterance by adding adjectives or verbs (*big, red, throw*).

When the child says a verb, such as *go*, expand his utterance by adding a noun such as *night-night* or *bye-bye*.

When the child says a noun, such as *baby*, change his statement to a question by asking him where the baby is or if the baby is crying.

When the child makes a request for a food item, such as *juice*, expand his utterance by asking him if he wants some juice, naming several juices, or asking if he wants more juice.

    Hearing Impaired: *MA*

    Motorically Involved: *NC*

    Visually Impaired: *NC*

*Child will increase her vocabulary on a weekly basis.* *Expression*

*Activities*

Encourage the child to watch you during housekeeping activities. Describe what you are doing and single out the names of the tools you are using (iron, broom, dust cloth, silverware, screwdriver, hammer). Encourage the child to repeat the words.

Encourage the child to help you do routine chores such as setting the dishes on the table or baking a cake. Again, describe what you are doing and name the objects (spoon, bowl, cake, oven, timer, plates). Encourage child to repeat the words.

Using common household objects, hold one up and ask the child what it is. Provide the name of the object if she does not respond correctly and ask her to repeat the named object.

    Hearing Impaired: *MA*

    Motorically Involved: *NC*

    Visually Impaired: *Constantly describe what the child is doing, the noises and smells of her environment, the objects with which she comes in contact.*

*Child will imitate familiar words while listening to a story or nursery rhyme.*  *Imitation*

*Activities*

1. Read the child a simple story, showing him the pictures and stressing common words each time you read it. Ask the child to point to the named pictures. Encourage him to imitate the words.

2. Repeat nursery rhymes to the child on a daily basis. Involve him in the action when possible. Encourage him to imitate some of the words.

70

5638

3. When the child has heard a rhyme or story many times, leave off expected words at the end of a sentence and encourage him to say them, for example, *Humpty Dumpty sat on a_____*, or *Goldilocks lay down and fell fast_____*

*Note:* Many children are motivated to imitate words they hear on simple records (available in 45 and 33⅓ r.p.m.).

    **Hearing Impaired:** *Child can imitate signs or actions in the stories and rhymes if consistent with the alternative communication system.*

    **Motorically Involved:** *MA*

    **Visually Impaired:** *Unusual sounds, such as animal sounds or cartoon voices will sometimes motivate the child more than familiar sounds for this activity.*

---

*Child will use action word to describe activity in pictures.*                     *Expression*

*Activities*

    Describe the activities as the child goes through them each day. Encourage her to repeat the words.

    Show the child simple pictures of activities, describing the actions for her (sleeping, eating, crying). Encourage imitation.

    Slowly turn through a book or magazine and ask the child what is happening.

    **Hearing Impaired:** *MA*

    **Motorically Involved:** *NC*

    **Visually Impaired:** *O. Alternate activity. Encourage the child to name actions she can hear, such as a moving car, a bouncing ball, a ringing bell, running water.*

---

## 24–27 Months

---

                                        *Expression*

*Child will use his first name.*

*Activities*

    Call the child's name each time you enter the room or want him to come to you. Encourage imitation.

    Using a mirror, point to the child and say, *There's (Bobby).* Point to yourself and say, *There's (daddy).* Then ask, *Where's (Bobby)?* and encourage the child to point to himself.

    Point to the child and ask him what his name is. If he does not respond correctly, say, *Your name is (Bobby).*

    Play hide-and-seek. Hide your own face or hide behind a chair. Say, *Where's (Bobby)?* Peek out and look at the child, saying, *There's (Bobby)!* Encourage imitation.

    Encourage the child to hide and again ask where he is. Show him how to pop out when his name is called.

    **Hearing Impaired:** *MA*

    **Motorically Involved:** *Play hide-and-seek with a towel. Cover the child's face and say, Where's (Bobby)? Encourage the child to shake the towel off and say his name.*

    **Visually Impaired:** *MA*

71

5639

2: Repeat the activity using other pieces of furniture such as a bed, chair, or couch. The child should start to anticipate the ball's path so that he does not have to wait to see where the ball emerges.

**Hearing Impaired:** *Use gestures for All gone, and Where is it? as you say these if consistent with the chosen communication system.*

**Motorically Involved:** *If the child is not mobile, watch his eyes for indication of path of ball.*

**Visually Impaired:** *Substitute with sound-location activity. If the child is mobile, roll a bell-ball away from him and encourage him to go after it.*

---

**Child will match up a pair of like objects from a group of several different objects.**

(Matching)

*Activities*

1. Use a group of eight to ten objects (balls, spoons, blocks, toothbrushes, forks) that contain four to five pairs that are exactly alike. Keep one of each object and give the child the others. After she has had a chance to explore the objects, name each object for her. Show her one of yours and ask her to show you the one of hers that matches it, or looks just like it. If she has difficulty, pick up one object at a time and say, *They do not match* or *They are different.* When she makes a match, set them down as a pair and reemphasize the words *match, goes with,* and *same. I now have two matching blocks, spoons.*

2. Repeat this activity giving the child all the objects and asking her to give you the ones that match. Say the names of the items when she has matched them.

   **Hearing Impaired:** *MA*

   **Motorically Involved:** *MA*

   **Visually Impaired:** *Allow the child to match objects by feeling them. Initially use objects of different textures.*

---

## 24–27 Months

**Child will pretend to be engaged in familiar activities.**

*Representational Thought*

*Activities*

Use props such as toy dishes. Demonstrate to the child how you pretend to have some tea. Offer him some. Explain that you are pretending and that there is no tea. Pretend to enjoy the delicious food. Encourage imitation.

Ask child to bring you some pretend cookies and milk.

Tell child you are sleepy, you are going to sleep. Fold your hands, tip your head, and close your eyes. Ask child to pretend, tell him he really does not have to go to bed. Then, play that it is morning and wake him up.

Give the child a doll. Have him feed the baby and put her to bed.

Use a toy phone and pretend to call and talk on the phone. Encourage his verbal response.

51

5640

Texas Department
of Human Resources

**CHILD PROTECTIVE SERVICES
LEGAL RECORD**

Form 2222
August 1980

| Child's Name | Cause No. | County |
|---|---|---|
| Wesley Whitfield | 82-3081-A | Denton |
| Child's Attorney Ad Litem | | Telephone No. |
| John Lawhon | | |
| Address of Attorney Ad Litem | | |

## REQUESTS FOR COURT ACTION AND LEGAL ACTIONS TAKEN

| DATE OF REQUEST or ACTION COURT NO. JUDGE'S NAME | SUMMARY OF REQUESTS FOR COURT ACTION (Include person or office to whom request made or brief statement of legal action requested. Reference copy of written request filed in the case folder. | SUMMARY OF LEGAL ACTIONS TAKEN (Brief and concise statement of the petition, judgement, or court order, including to whom conservatorship of the child was awarded.) |
|---|---|---|
| 10-29-82 | Petition in Intervention in a suit affecting Parent-Child Relationship - M.C. | Chapter 17, Family Code, bruises to child |
| 10-29-82 | Emergency Order | TDHR - T.M.C. |
| 11-4-82 | Father's Voluntary Relinquishment Order Continuing Ex Parte | Respondent's attorney absent on 11-5 & 11-12. |
| 11-19-82 | Temporary Order | Continued TMC. |
| 4-26-83 | Judicial Review | "        " |
| 4-29-83 | Mother's Voluntary Relinquishment | |
| 5-11-83 | Petition-termination | |
| 5-11-83 | Decree of Termination | M.C. & adoption |

5641

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP
TRACKING SYSTEM (FACTS) — Turnaround Document**

WORKER MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN    05155C04    EMP. E890
SUPERVISOR MAIL CODE 128-9

WORKER INFORMATION

| 1 Worker Name (Last) | | (First) |
|---|---|---|
| PERULLO | | JEANNIE M |

| 2.Emp. No. 19 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| E890 | 05155C04 | 1289# | 030218Y |

6.Worker Responsibility 20
[X] 1-Primary Responsibility   [ ] 2-Courtesy Supervision

CLIENT INFORMATION

PROCESS DATE 11-22-53
ACTIVE

7. Client No. 31  502744081
8. Action Code 41  [ ]1-Initiate Tracking [ ]2-Update [ ]3-Terminate Tracking [ ]4-Close
9. Effective Date  030218Y

10. Client Name (Last) WHITFIELD   (First) WESLEY   (MI) A
11. Social Security No. 449590122
12. Date of Birth 11-17-80
13. Ethnic Group 64  [ ]1-Anglo [ ]2-Black [ ]3-Hispanic [ ]4-American Indian [ ]5-Oriental [ ]6-Other
14. Sex 66  [ ]1-Female [ ]2-Male

15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic)
02-Blind, 03-Deaf, 04-Physically Handicapped, 06-Mentally Retarded, 06-Emotionally Disturbed, 07-Sibling Group, 08-Refugee, 09-Migrant, 10-None, 11-Entrant
15.a. Certification Worker BJN

16. Family Identifier Name (enter last name first)
17. Family ID Client No. (must be registered on SSMS)

18. CLIENT TYPE
31-Abuse/Neglect, 32-Abuse, 33-Neglect, 34-Truant, 35-Runaway, 36-Adj. CHINS-Court Ordered, 37-Non-adjudicated CHINS, 38-Adj. Delinquent-Court Ordered, 42-Protective Placement (Non-Abuse/Neglect), 44-Interstate Compact for Placement of Children

19. ELIGIBILITY STATUS
01-SSI, 02-AFDC Recip, 03-MAO/IE, 04-Inc. Elig, 05-Without Regard, 08-AFDC Foster Care, 09-MAO Foster Care, 10-State Paid Foster Care, 11-AFDC/MAO/SP FC Application Pending, 14-Cat. 6 R/E

20. Certification/Eligibility Date
20.a. Denial Date
21. Review Date
22. Priority 0

23. STATUS—Initiate/Update / Terminate/Close
01-Man. Conservatorship/Parental Rts. Not Term., 02-Man. Conservatorship/Parental Rts. Term., 03-Voluntary Relinquishment, 04-Voluntary Placement Agreement, 05-Other Legal Basis for DHR Responsibility, 06-Adoption Consummated, 07-Child Emancipated, 08-Child Died, 09-DHR Resp. Terminated

LEGAL INFORMATION
24. Legal Status Date 030259Y  25. County (X6)

26. PERMANENCY PLAN
01-Return Home/Dismiss Conserv., 02-Adoption, 03-Permanent Foster Care, 04-Transfer Cons. to Other, 05-Permanent Custodial Care, 06-Emancipation, 07-Other, 08-Pending

27. ARE/OTHER EXCHANGE
1-NA, 2-ARE, 3-ARE & Other Exchange, 4-No

PLACEMENT INFORMATION – Do not enter Item 28 (Line) except on corrections.
(rows 3,4,5 blank: 28.Line 28.Date Placed 30.Liv.Arr. 31.How Prov. 32.Facility No. 33.Residence Name 34.Residence Street Address 35.City 36.St 37.ZIP 38.County)

MEDICAID CARD ADDRESS if different from current placement
42. NAME—LAST, FIRST; 43. STREET; 44. CITY; TX; 45.ZIP

39. CORRECT/TRANSFER TO THIS BJN   40. FOR S.O. USE   41.

6
Form 2001-B/2-83

5642

WORKER        MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN      05155C04   EMP. E890
SUPERVISOR MAIL CODE 128-9

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document**

### WORKER INFORMATION

| 1. Worker Name (Last) | (First) |
|---|---|
| PERULLO | JEANNIE M |

| 2.Emp. No. 18 | 3. BJN 20 | 4. Mail Code | 5.Today's Date |
|---|---|---|---|
| E890 | 05155C04 | 1289 | |

6.Worker Responsibility 29  ☒ 1-Primary Responsibility  ☐ 2-Courtesy Supervision

### CLIENT INFORMATION

PROCESS DATE 11-22-83 ACTIVE

| 7. Client No. 31 | 8. Action Code 41 | 9. Effective Date |
|---|---|---|
| 5Q2744881 | ☐1-Initiate Tracking ☐2-Update ☐3-Terminate Tracking ☐4-Close | 08-30-83 |

| 10. Client Name (Last) 60 | (First) 65 | (MI) 76 | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|
| WHITFIELD | WESLEY | A | 449590122 | 11-17-80 |

13. Ethnic Group 94  ☒1-Anglo ☐2-Black ☐3-Hispanic ☐4-American Indian ☐5-Oriental ☐6-Other
14. Sex 95 ☐1-Female ☒2-Male

15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic)
02-Blind  05-Mentally Retarded  08-Refugee  11-Entrant
03-Deaf  06-Emotionally Disturbed  09-Migrant
04-Physically Handicapped  07-Sibling Group  ☒10-None
15.a. Certification Worker BJN

16. Family Identifier Name (enter last name first)  WHITFIELD ANNA
17. Family ID Client No. (must be registered on SSMS)  5Q2744879

### 18. CLIENT TYPE
31-Abuse/Neglect, ☒32-Abuse, 33-Neglect, 34-Truant, 35-Runaway, 36-Adj. CHINS-Court Ordered, 37-Non-adjudicated CHINS, 38-Adj. Delinquent-Court Ordered, 42-Protective Placement (Non-Abuse/Neglect), 43-Interstate Compact for Placement of Children

### 19. ELIGIBILITY STATUS
01-SSI, 02-AFDC Recip, 03-MAO/IE, 04-Inc. Elig., ☒05-Without Regard, 08-AFDC Foster Care, 09-MAO Foster Care, 10-State Paid Foster Care, 11-AFDC/MAO/SP FC Application Pending, 14-Cat. 5 R/E

20. Certification/Eligibility Date 08-30-83
20.a. Denial Date
21. Review Date 02-28-84
22. Priority 0

### LEGAL INFORMATION
23. STATUS—Initiate/Update Terminate/Close
01-Man. Conservatorship/Parental Rts. Not Term.
☒02-Man. Conservatorship/Parental Rts. Term.
03-Voluntary Relinquishment
04-Voluntary Placement Agreement
05-Other Legal Basis for DHR Responsibility
06-Adoption Consummated
07-Child Emancipated
08-Child Died
09-DHR Resp. Terminated

24. Legal Status Date 05-11-83  26. County 061

### 26. PERMANENCY PLAN
01-Return Home/Dismiss Conserv., 06-Emancipation, ☒02-Adoption, 07-Other, 03-Permanent Foster Care, 08-Pending, 04-Transfer Cons. to Other, 05-Permanent Custodial Care

27. ARE/OTHER EXCHANGE  1-NA  2-ARE  3-ARE & Other Exchange  ☒4-No

### PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | | |
|---|---|---|---|---|---|---|---|---|
| 01 | 10-28-82 | 05 | 08 | 080421 | VITEYCHUK HECTOR | | | |

34. Residence Street Address 61  17 SHILOH CIRCLE  35. City ROANOKE  36. St 37. ZIP TX 76262  38. County 061

| 02 | 08-30-83 | 04 | 03 | 000030 | HALPRIN DAN | | | |

34. Residence Street Address  4015 GLENBROOK DR.  35. City ARLINGTON  36. St 37. ZIP TX 76015  38. County 220

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| | | | | | |

34. Residence Street Address  36. City  38. St 37. ZIP  38. County

39. CORRECT/TRANSFER TO THIS BJN  40. FOR S.O. USE  41.

Form 2001-8/2-83  UCN  F3325008

5643

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield

TO:

☐ Beverly Basden ☐

FROM:

☐ Beverly Deweber
PPT Recorder ☐

DATE: June 3, 1983

This was the review of the above named case which was staffed by the Permanent Planning Team on May 18, 1983. The Permanent Planning Team members present at the staffing were Allene Margowski, Sara Ham, John Ramfield, and Melody Rockwall. Also present were Dr. May Connell, psychologist from Fort Worth, and foster parents Mr. and Mrs. Hector Viteychuk. The discussion held on that date and the case plan developed are as follows:

### MATERIAL PRESENTED AND DISCUSSED:

#### Legal Status

Wesley was removed under an Emergency Order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior side. This was the third such bruising incident since July of that year.

On November 4, 1982, the father signed an Affidavit of Voluntary Relinquishment of Parental Rights; the mother signed such an Affidavit on April 29, 1983.

A Decree of Termination was signed by Judge Boyd on May 11, 1983. The Department was appointed managing conservator of the child and authorized to place him for adoption.

#### Medical

Wesley had surgery on March 30th to insert tubes in both ears and elevate the eyeball and shorten the muscle in the eyelid of his right eye. The eye surgery was to correct a congenital defect. No evidence of neurofibromatosis was reflected in a neurological exam performed prior to the surgery.

Only slight swelling is noted on the right eyelid. The surgical scar has healed nicely. Wesley has been treated once by a doctor for infection of the right ear and a sore throat since the surgery. He does occasionally complain of his ears hurting when he lays down.

AN EQUAL OPPORTUNITY EMPLOYER

5644

Wesley Whitfield
Page 2

Foster Care

At the time of the emergency removal, Wesley was placed in the foster home
of Billie and Hector Viteychuk. He continues to reside there at the present
time.

Wesley made an immediate adjustment into this foster home. He experienced
no problems with eating or sleeping disturbances; however, he did have
numerous ear infections and has been on antibiotics most of the time while
he has been in placement.

The foster mother has been very supportive of the ear and eye surgery.
The surgery was postponed on two occasions: once because the child had
been exposed to chicken pox, and the second time because of an ear infec-
tion. Since the hospital was located in Dallas, numerous trips were made
before the actual surgery was performed. The natural mother participated
in two of the visits to the hospital, along with the foster mother.

When the natural mother, Anna Whitfield, signed relinquishments, she
indicated that she would like Wesley and his five year old brother Randy
to be placed together in adoption. Randy has been placed by his father
with some people in East Texas.

Mr. and Mrs. Viteychuk said they are very interested in adopting Wesley but
do not feel capable of adopting both Wesley and Randy.

GENERAL CASE PLANS:

1. Try and locate five year old Randy.

2. Secure possibility of adoptive placement with Randy.

3. Secure adoptive studies from PPU for Wesley. Share these with the
   Viteychuks to determine committment to adoption.


Beverly Dewaber
PPT Recorder

Sara Ham
Child Placement Supervisor

cw

cc: Allene Margowski
    John Ramfield
    Barney Hisanaga
    Jeanie Perullo
    Melody Rockwall
    file

5645

Form 05-2117
March 1983

PLAN OF SERVICE REVIEW

NAME OF CHILD: _Wesley Whitfield_   DATE: _5-18-83_

I.  ADVANCED NOTIFICATION OF CONFERENCE:

    A.  Parent(s) or managing conservator     Date: _4·27_

    B.  Foster parents or Child Care staff     Date: _4·27_

II.  PROGRESS TOWARDS ACHIEVING OR CHANGING OBJECTIVES:
    (Discussion of child's individual needs and progress made towards achieve-
    ment of objectives.  If a need cannot be met, state reason.)

_Mother signed voluntary relinquishment of
parental rights on 4·29·83. Decree of
termination signed by Judge Boyden 5-11-83._

III.  DOCUMENTATION OF PROFESSIONAL CONSULTATION, TREATMENT, OR EDUCATION:

IV.  GOALS FOR NEXT SIX MONTHS REVIEW:
    (must be specific)

_Adoption_

V.  SERVICES TO BE PROVIDED TO FOSTER PARENTS IN RELATION TO CHILD:

_Support services; i.e. resources, financial help,
transportation._

5646

Form 05-2117
Page 2

VI. JUDICIAL REVIEW:

Hearing date_____Date order issued_____

Date Plan implemented_____

Permanent Plan for Child:_____

_____

_____

VII. PERSONS INCLUDED IN CONFERENCE:

Child ✓ yes _____ no                                Date: *5·18*_____
(If no, date copy of Service Plan Review mailed)

Foster Parent(s) or Child Care Staff ✓ yes _____ no   Date: *5·19*_____
(If no, date copy of Service Plan Review mailed)

Natural Parent(s) _____ yes  ✗ no (if applicable)   Date:_____
(If no, date copy of Service Plan Review mailed)
*rights terminated*                                Date:_____
OTHERS:

VIII. DATE OF NEXT SIX MONTHS' REVIEW OF SERVICE PLAN:_____

*Beverly Basden*_____        _____
Worker                                  Supervisor

*5·18·83*_____                _____
Date                                    Date

CR
cc: Parent or MC, Foster Parents or Child Caring Facility.

5647

Page 15                                          RGW-101-1/79

VI.  SERVICE PLANS

A.  CHILD'S PLAN (individualized)

(CHILD'S) *Wesley Whitfield*          From *10·28·82* TO *4·28·82*

(A permanent plan for child(ren)  (return to parent or home, adoption,

permanent foster care, institution, or independent living arrangement, etc.)

(must be made within one year of placement).

1.  Strengths *Wesley appears to be healthy. He is happy*
*in nature and easily entertained. He is sleeping*
*and eating well in foster care.*

2.  Weaknesses *Wesley has had a history of ear*
*infections and asthma. His right eyelid droops*
*and the lid may require surgery in future to correct.*

3.  Needs *Wesley will need follow up on ear problems*
*and eye exam. He also needs neurological exam.*

4.  Objectives met (omit if this is the first plan made) *NA*

5.  Goal *Provide for and meet Wesley's physical,*
*medical and emotional needs while in placement.*

6.  Objectives of Placement - to be met by DHR:  (time framed, measurable,

specific, include "how to").

a.  Anticipated duration of Placement *6 mo.*

Type of Placement *DHR foster home*

5648

Page 16

RCW-101-1/79

b. Medical _Follow-up exam for ear infection) on 11-18. appt kept on 11-18. Schedule 're-check by pediatric ophthalmologist; evaluation by neurologist._

c. Dental _Child is under 3yrs old._

d. Educational _NA._

e. Emotional Development _Evaluation) by Child Success Project is scheduled for 12-3-82, to determine Wesley's developmental level._

f. Basic Subsistence _Provided) by licensed foster home and caseworker._

7. Needs DHR cannot meet _Visitation with mother will be limited) and supervised._

8. Community Resources to be used _Child Success Project at TWU, local doctors, MNMR._

Case 3:13-cv-01535-L   Document 17-145   Filed 08/22/14   Page 296 of 533   PageID 13950

Page 17                                             RCW-101-1/79

9.  _Wesley Whitfield_ _____ (child) Plan of service
    NAME

    discussed with:

    _Wesley_ _____ child _10·28·82_
                                    Date

    _Billie & Hector_
    _Oteychuk_ _____ foster parents _10·28·82, 11·22·82_
                                                  Date

    _Anna Whitfield_ natural parents _10·28·82, 11·10·82_
    _Bob Whitfield_              _10·28·82_ Date _11·4·82_

B.  PARENTS' PLAN:  FROM _10·28·82_ TO _4·28·82_ (If no plan, state why not)
    _Father signed voluntary relinquishment on 11·4·82._

    State whether worker developed the plan with the family _Plan developed_
    _as result of hearing, and subsequent order of 11·1982._

    1.  Strengths _Anna Whitfield professes a willingness_
    _to work with department so child may be_
    _returned._

    2.  Weaknesses _Anna Whitfield is passive and appears_
    _to allow boyfriend to make decisions. She is un-_
    _employed and is dependent on him for support._

    3.  Needs _Anna needs to become financially_
    _independent. She needs to attend parenting_
    _classes and drug counseling._

    4.  Objectives met (Omit if this is the first plan made)__ N A

    5.  Goal (time framed, measurable, specific_____
    _1) establish independent living arrangement_
    _2) obtain counseling_

Case 2:13-cv-01582-... Document 17-13... Filed 08/07/14... Page 297 of 533... PageID #454

RCW-101-1/79

6. Objectives (minimum, time framed, measurable, specifics (specify "how
to"). Include community resources to be used.

1) a) seek employment through Texas Employment
   b) finalize divorce action

2) a) attend drug counseling at MHMR
   b) attend sessions with Wesley at Child
      Success to learn ways to deal with
      his behaviors
   c) attend parenting group, if available
      resources located

7. Parents Responsibilities including child support; any other specific
   conditions set forth in court order; and if not already included in
   "Placement Data" above (p. 12, A. 4), and if a substitute care case,
   include plans for parents visiting, phoning and writing the child(ren).

1) visitation with child
2) attend sessions with child at Child Success
   if Wesley is eligible
3) attend drug therapy
4) provide child support, if employment obtained

8. Worker's Responsibilities

1) assist with visitation schedule
2) arrange and assist with visits to Child Success
3) locate parenting group

RCW-101-1/79

Page 19

9. Parents' Ability to Carry out Plans _Plan will need to be re-evaluated if employment is obtained since Donna's time schedule will be more restricted._

10. Possible consequences to child(ren) and family if plan <u>not</u> carried out___
1. Child could not return to home.
2. Non-compliance with court order of 11-1982.

11. Possible consequences to child(ren) if plan <u>is</u> carried out (criteria for
    ending DHR intervention, or recommending return of conservatorship).___
    1. Child can return to family home.
    2. Improve situation for all family members.

12. Needs DHR cannot meet _Resource for parenting group has not yet been located._

Beverly Basden
11-24-82

5652

Page 20                                          RCW-101-1/79

VII.   REVIEW OF INTAKE STUDY/SERVICE PLAN (for substitute care cases, review must be
       completed within 30 days of placement).

       A.   REVIEW

            1.  Inatke Study Approved _____✓yes _____no

            2.  Selection of Placement Approved _____✓yes _____no

            3.  Plan of Service Approved _____✓yes _____no

       B.   REVIEWED BY: _Vita Blanchard, A.C.S.W._ _Supv II_
            Name, degree, Title
            _11-24-82_
            Date

       C.   NEXT REVIEW DUE NO LATER THAN: _5-24-82_____
                                              (Date)

5653

# SOCIAL SUMMARY

Wesley Whitfield
DOB: 11-17-80
Denton Country Children's Protective Services

## PRESENTING PROBLEM:

Wesley was removed under an emergency order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior thighs above the knees. This was the third such bruising incident since July, and the family had been warned that such an incident might result in removal.

The first incident was reported on July 11th by a babysitter with whom the mother and her boyfriend had left the children for the first time. The 5-year old brother had told the sitter that the boyfriend, Jimbo Willingham, had whipped his brother with a belt.

The second incident was reported by Dr. Johnson through the Health Clinic. He had examined Wesley for an ear infection. The explanation for the bruises was that the boy had fallen from a swing while in the care of a babysitter. It was the doctor's opinion that the bruises could not have been caused in such a manner.

The third incident was reported by Dr. Jackson through the Health Clinic. The child was being treated for a middle ear infection when the bruises were discovered. At that time, the bruising was attributed to a spanking by the boyfriend.

## BACKGROUND:

Anna Whitfield is the mother of two children: Wesley, 2 years old, and Randy, 5 years old. She is presently separated from her husband and the father of the children. The father has custody of the 5 year old who is enrolled in protective daycare while the father works as a painter. The father signed an Affidavit for Relinquishment of Parental Rights on 11-4-82. on Wesley.

Mrs. Whitfield is presently living with Jimmy Willingham, who is well-known to the local police because he is currently on parole and probation for a robbery which he committed in 1978. His probation officer feels that Jimmy is still involved in drugs and has been very cooperative in hopes of securing information which would enable him to revoke the probation. Mr. Willingham is self-employed as an auto mechanic and does some part-time work for Bill Utter Ford. Since my involvement with this case, Mr. Willingham has been available at different intervals during the day which indicates he is working very little.

Mr. Willingham is divorced and has two daughters, ages 5 and 8. By self-report he does not like children because they make him nervous. He indicated that the most effective means of disciplining a child was to stand them in a corner. He denies ever physically punishing either of the Whitfield boys.

His ex-wife verifies that he has abused drugs.

Anna Whitfield has admitted in the past to being involved with drugs. For a brief period of time she was in counselling with Jeanie Mason of Mental Health.

5654

Case 3:13-cv-01535-L Document 171-19 Filed 02/27/24 Page 301 of 533 PageID 10823

SOCIAL SUMMARY                                              Page 2
Wesley Whitfield

She had voluntarily placed both of the children with a brother and his
wife while she attempted to straighten out her life. She could not maintain
the type of social life which she desired and care for the two boys. Because
Anna did not follow through with her proposed reform and reclaimed the children,
the brother and his wife are reluctant to become actively involved at the present
time. Anna admits to being responsible for the bruises on Wesley in July and
September. The most recent incident she states was the result of a beating by
Jimbo; however, Willingham denies this. After the recent incident, Anna and
Wesley left the residence of Willingham. Immediately following the removal
of Wesley, Anna did go back to Willingham.

Wesley has been treated on two occasions for ear infections. No medical treat-
ment was secured until there was intervention by this Department. Wesley has
a physical condition which causes his right eyelid to droop. He was recommended
to and examined by a pediatric opthamologist in Dallas. This doctor recommended
that his left eye be patched for one hour a day and he be rechecked in two to
three months. No medical follow-up was made.

CURRENT PLAN:

The 10 day hearing was scheduled for November 5th; however, due to the fact
that the mother's attorney was tied up in court, the order was continued and
the hearing will be held on November 12th. At the writing of this summary,
the plan is to maintain the child in foster care. It is hoped that the evidence
presented at the November 12th hearing will determine the responsible party for
the bruises.

Since the removal of the child, the father has signed a voluntary relinquishment.
The mother has not contacted this office nor has she requested any visitation
with the child.

*Beverly Basden*
BEVERLY BASDEN
Child Placement Worker II

11-10-82

js

5655

Case 5:11-cv-00360   Document 4-15   Filed 06/02/14   Page 302 of 533   PageID #: 2880

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

*File Copy*

**SUBJECT:** Whitfield, Wesley Allen
DOB: 11-17-80

**TO:** PPT Staffing

**FROM:** Beverly Basden
Children's Protective Services

**DATE:** May 11, 1983

### LEGAL STATUS:

Wesley was removed under an Emergency Order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior side. This was the third such bruising incident since July of that year.

On November 4, 1982, the father signed an Affidavit of Voluntary Relinquishment of Parental Rights; the mother signed such an Affidavit on April 29, 1983.

A Decree of Termination was signed by Judge Boyd on May 11, 1983. The Department was appointed managing conservator of the child and authorized to place him for adoption.

### MEDICAL:

Wesley had surgery on March 30th to insert tubes in both ears and elevate the eyeball and shorten the muscle in the eyelid of his right eye. The eye surgery was to correct a congenital defect. No evidence of neurofibromatosis was reflected in a neurological exam performed prior to the surgery.

Only slight swelling is noted on the right eyelid. The surgical scar has healed nicely. Wesley has been treated once by a doctor for infection of the right ear and a sore throat since the surgery. He does occasionally complain of his ears hurting when he lays down.

### FOSTER CARE:

At the time of the emergency removal, Wesley was placed in the foster home of Billie and Hector Viteychuk. He continues to reside there at the present time.

Wesley made an immediate adjustment into this foster home. He experienced no problems with eating or sleeping disturbances; however, he did have numerous ear infections and has been on antibiotics most of the time while he has been in placement.

AN EQUAL OPPORTUNITY EMPLOYER

5656

WHITFIELD, Wesley Allen
PPT Staffing                                                    Page 2
May 11, 1983

The foster mother has been very supportive of the ear and eye surgery.
The surgery was postponed on two occasions: once because the child had
been exposed to chicken pox, and the second time because of an ear in-
fection.  Since the hospital was located in Dallas, numerous trips were
made before the actual surgery was performed.  The natural mother parti-
cipated in two of the visits to the hospital, along with the foster mother.

*Beverly Basden*
BEVERLY BASDEN
Child Placement Worker III

BB/js

5657

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

**SUBJECT:** WESLEY WHITFIELD

**TO:** Beverly Basden
Child Placement Worker II

**FROM:** Beverly Deweber
PPT Recorder

**DATE:** December 22, 1982

This was the initial staffing of the above named case which was reviewed by the Permanent Planning Team on November 17, 1982. The Permanent Planning Team members present at the staffing were Allene Margowski, Rita Blanchard, Barney Hisanaga, John Ramfield, Jeanie Perullo, Sallie Wagner and Supervisor Freda Wise. Also present at the staffing was foster parent, Billie Viteychuk. The discussion held on that date and the case plan developed are as follows:

### MATERIAL PRESENTED AND DISCUSSED:

Wesley was removed under an emergency order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior thighs above the knees. This was the third such bruising incident since July, and the family had been warned that such an incident might result in removal.

The first incident was reported on July 11th by a babysitter with whom the mother and her boyfriend had left the children for the first time. The 5 year old brother had told the sitter that the boyfriend, Jimbo Willingham, had whipped his brother with a belt.

The second incident was reported by Dr. Johnson through the Health Clinic. He had examined Wesley for an ear infection. The explanation for the bruises was that the boy had fallen from a swing while in the care of a babysitter. It was the doctor's opinion that the bruises could not have been caused in such a manner.

The third incident was reported by Dr. Jackson through the Health Clinic. The child was being treated for a middle ear infection when the bruises were discovered. At that time, the bruising was attributed to a spanking by the boyfriend.

### BACKGROUND:

Anna Whitfield is the mother of two children: Wesley, 2 years old, and Randy, 5 years old. She is presently separated from her husband and the father of the children. The father has custody of the 5 year old who was enrolled in protective daycare while the father worked as a painter. The 5 year old is now with a private babysitter. The father signed an Affidavit for Relinquishment of Parental Rights on 11-4-82 on Wesley.

AN EQUAL OPPORTUNITY EMPLOYER

Case 3:13-cv-01535-L   Document 17-115   Filed 08/01/14   Page 305 of 533   PageID 10800

WESLEY WHITFIELD
PPT Staffing
November 17, 1982

Mrs. Whitfield is presently living with Jimmy Willingham, who is well-known to the local police because he is currently on parole and probation for a robbery which he committed in 1978. His probation officer feels that Jimmy is still involved with drugs and has been very cooperative in hopes of securing information which would enable him to revoke the probation. Mr. Willingham is self-employed as an auto mechanic and does some part-time work for Bill Utter Ford. Since Beverly Basden's involvement with this case, Mr. Willingham has been available at different intervals during the day which indicates he is working very little.

Mr. Willingham is divorced and has two daughters, ages 5 and 8. By self-report, he does not like children because they make him nervous. He indicated that the most effective means of disciplining a child was to stand them in a corner. He denies ever physically punishing either of the Whitfield boys.

His ex-wife verifies that he has abused drugs.

Anna Whitfield has admitted in the past to being involved with drugs. For a brief period of time, she was in counselling with Jeanie Mason of Mental Health.

She had voluntarily placed both of the children with a brother and his wife while she attempted to straighten out her life. She could not maintain the type of social life which she desired and care for the two boys. Because Anna did not follow through with her proposed reform and reclaimed the children, the brother and his wife are reluctant to become actively involved at the present time. Anna admits to being responsible for the bruises on Wesley in July and September. The most recent incident she states was the result of a beating by Jimbo; however, Willingham denies this. After the recent incident, Anna and Wesley left the residence of Willingham. Immediately following the removal of Wesley, Anna did go back to Willingham.

Wesley has been treated on two occasions for ear infection. No medical treatment was secured until there was intervention by this Department. Wesley has a physical condition which causes his right eyelid to droop. He was recommdned to and examined by a pediatric opthamologist in Dallas. The doctor recommended that his left eye be patched for one hour a day and he be rechecked in two to three months. No medical follow-up was made.

The 10 day hearing was scheduled for November 5th; however, due to the fact that the mother's attorney was tied up in court, the order was continued and the hearing will be held on November 12th. At the writing of this summary, the plan is to maintain the child in foster care. It was hoped that the evidence presented at the November 12th hearing would determine the responsible party for the bruises. However, the November 12th hearing was postponed until November 19, 1982.

Since the removal of the child, the father has signed a voluntary relinquishment. The mother has not contacted this office nor has she requested any visitation with the child.

WESLEY WHITFIELD
PPT Staffing                                                    Page 3
November 17, 1982

GENERAL CASE PLANS:

1.  Show cause hearing is rescheduled for November 19, 1982 after being
    passed two times previously.

2.  Continue foster care for Wesley.

3.  Wesley will be referred to Child Study Center for developmental workup.


_Beverly DeWeber_
BEVERLY DEWEBER

BD/js

cc:  Allene Margowski
     John Ramfield
     Barney Hisanaga
     Sallie Wagner

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield

TO: Beverly Basden

FROM: Beverly Deweber
PPT Recorder

DATE:

General Case Plans From May PPT Staffing:

1. Try and locate Wesley's 5 yr. old brother, Randy.

2. Secure possibility of ~~adoptive~~ adoption for Randy.

3. Share adoptive studies From PPU for Wesley with Viteychuks (Foster parents who are wanting to adopt Wesley).

AN EQUAL OPPORTUNITY EMPLOYER

5661

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield
Randy Whitfield

TO: Beverly Basden

FROM: Beverly Deweber
PPT Recorder

DATE:

General Case Plans from June 15, 1983
PPT Staffing:

1. Both children are free for adoption.
Randy has been located & is in
placement with Wesley.
2. Transfer case to PPU.

AN EQUAL OPPORTUNITY EMPLOYER

5662

Page 1

RCW-100-1/79

Worker Name: *Beverly Basden*
Supervisor: *Rita Blanchard*
Office Address: *P.O. Box 2186, Denton*

INTAKE STUDY - EVALUATION

Phone Number: *(817) 383-2371*
Date Intake Study Initiated ___*11-1-82*___

I. FAMILY INFORMATION

A. Name of client *Whitfield*

Directions to client's home _____

B. Biographical
1. Parent Figures in the Home

| | a. Mother | b. Father |
|---|---|---|
| Name | *Anna Whitfield* | |
| Current Spouse | *Bob Whitfield* | |
| Address | *Rt. 5, Denton* *Twin Lakes MHP #179* | Work: Home: |
| Phone | Work: Home: *566-5570* | |
| D.O.B. | *1-9-59* | |
| Place of Birth | *Denton* | |
| SS# | *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* | |
| Race | *Anglo* | |
| Religion | | |
| Employment | — | |
| Income | — | |
| Military Record | | |

2. Parents Out of the Home

| | a. Mother | b. Father |
|---|---|---|
| Name | | *Bob R. Whitfield* |
| Current Spouse | | *Anna Whitfield* |
| Address | | *Hwy 1830, Denton* |
| Phone | Work: Home: | Work: Home: *560332* |
| D.O.B | | *7-27-57* |
| Place of Birth | | |

5663

RCW-100-1/79

Page 2
2.  Parents out of the Home (continued)

|  | a. Mother | b. Father |
|---|---|---|
| SS# |  | 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 |
| Race |  | Anglo |
| Religion |  |  |
| Employment |  | self employed painter |
| Income |  |  |
| Military Record |  | NA |

3.  Child(ren)

1.  Children in Home

|  | a. | b. | c. |
|---|---|---|---|
| Name | Wesley A | | |
| D.O.B. | 11-17-80 | | |
| Place of Birth | Denton | | |
| Sex | male | | |
| Race | anglo | | |
| Religion | — | | |
| Educational Level | NA | | |

Children in Home (continued)

|  | a. | b. | c. |
|---|---|---|---|
| Name | | | |
| D.O.B. | | | |
| Place of Birth | | | |
| Sex | | | |
| Race | | | |
| Religion | | | |
| Educational Level | | | |

2.  Children out of Home

|  | a. | b. | c. |
|---|---|---|---|
| Name | Randy, Jr. | | |
| Living Arrangements | with father | | |
| D.O.B. | 9-13-77 | | |

5664

RGW-100-1/79

Page 3

## 2. Children out of Home (continued)

| | a. | b. | c. |
|---|---|---|---|
| Place of Birth | Denton | | |
| Sex | male | | |
| Race | anglo | | |
| Religion | — | | |
| Educational Level | NA | | |

## C. Parent Child Relationship

| Parent Name | Related Child(ren) in Family Group | How Related |
|---|---|---|
| Bob | Wesley & Randy | father/son |
| Anna | " " | mother/son |

## D. Significant Others

### 1. Significant Others in Home

| | a. | b. | c. |
|---|---|---|---|
| Name | Jimmy Willinghams | | |
| Relationship/to whom | paramour - Anna | | |

### 2. Significant Others out of Home

| | a. | b. | c. |
|---|---|---|---|
| Name | Joe & May Hammons | Bob & Shirley Whitfield | |
| Address | | Hwy 1830, Denton | |
| Phone  Work-  Home- | 382-2764 | 566-0332 | |
| Relationship/to whom | Brother-Anna | paternal grandparents | |

E. Worker or other Managing Conservator Responsible between Agency and Child: _____

Beverly Basden

F. Nature, Effects, and Probable Cause of Abuse/Neglect and Person(s) Responsible:

Mother stated at the time of removal the child was spanked with a leather belt by her paramour for not eating his supper. She later said she

5665

Page 4                                    RGW-100-1/79

*was responsible.*

G.  Legal Status *JDNR - JMC; order dated 11-19-82.*

H.  NATURE OF CRISIS - INVESTIGATION
(Dated narrative style, including content of contacts with parents, children, and
collaterals, (includes locating information) dates and types of contacts; must
include parents explanation of injuries and each allegation of the referral and
collaterals verification of parents explanation and conditions of all children
in the home.  When the worker examines the child(ren) for signs of abuse or
neglect it should be specified.

*see dated narrative)*

1.

5666

Page 7

RCW-100-1/79

II. **EVALUATION**

1. Was referral validated (yes _X_ no ___) (Substantiate your decision with the facts.)

Mother, originally stated her boyfriend spanked the child, causing the bruises. Boyfriend alleged the mother was responsible. Mother later claimed she had administered the spanking.

2. Family dynamics (degree of isolation, relationships, recent changes, how parents were reared, expectations of children, etc.)

Mother and father are separated. Father has possession of older child. He does not wish to have contact with Wesley. He signed voluntary relinquishment of parental rights of 11·4·82.

5667

Page 8 (EVALUATION)                                    RCW-100-1/79

Mother is living with boyfriend) who is on probation for robbery. He is ex-convict and suspected drug dealer.

Mother is alienated from her family because of the present relationship with boyfriend and her practice of placing the children with relatives when she tires of the responsibility.

Mother does not work and has admitted to drug abuse in the past.

page 1

Page 9                                                          RCW-100-1/79

3.  Are Protective Services needed at this time?  Explain.  (Differentiate
    between facts which can be documented and assessments or impressions
    which are not proven; include type of abuse, neglect; and attempt to
    identify the perpetrator).

    *Services and foster care are needed for Wesley.*
    *Three recent incidents of bruising have been*
    *validated. The mother claims she is responsible*
    *for all 3 incidents.*

4.  Description and adequacy of home and neighborhood (e.g. do the parents
    provide adequate care for the children, is child(ren) in danger, and
    does the home meet minimum standards, explain).

    *While the physical home environment is adequate,*
    *there has been medical neglect and lack of supervision in the*
    *past.*

5.  Action needed to protect the child (i.e. no action needed, services in
    own home that may prevent removal, etc., include assessment of parents
    ability to protect child(ren).  *Wesley was placed in*
    *foster care on 10·28·82. The mother will need*
    *training to learn parenting skills so she can*
    *protect her children from future harm.*

Page 10                                            RCW-100-1/79

6. Complainant Feedback: (date, type of contact, complainant's response:
   If complainant is a professional explain results of investigation, if
   not a professional then tell whether DHR will continue to work with
   the family).

   *On 11·2·82 Wesley was again examined by the doctor who made the referral.*

7. Referrals made to community resources: *Wesley will be evaluated by Child Success Project, TWU, on 12·3·82.*

8. Case disposition interpreted to parents/children ___X___ Yes _____ No
   If yes, when? *10·28·82*

9. Worker's attempt to locate family that moved, or OTI sent which includes
   description of family's problems to work with the family.  Document when
   worker sent case record or copy to the new county, etc. __NA__

5670

Page 11                                                    RCW-100-1/79

10. Comments, recommendations by Worker _continue) to provide)_
_services to child and family._
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

11. Comments, Recommendations by Supervisor_____

_Assigned for ongoing Services_
_____
_____
_____
_____
_____
_____
_____
_____

(If case is to be closed without service delivery, stop here:  Worker and Supervisor
  date and sign).

Worker_____ Date_____ Supervisor_____ Date_____

5671

Page 12                                                            RCW-101-1/79

V.  PLACEMENT DATA  (Omit if own home case)

A.  DISCUSSION OF PLACEMENT WITH PARENTS (individualized in reference to each

child in placement) *Mother 10·28·82    Father. 10·28·82*

1.  Reason for placement (explained to parents) *three recent incidents*
*of bruises caused by spanking.*

2.  Type of placement (explained to parents) *foster care*

3.  Anticipated length of placement (explained to parents) *6 mos.*

4.  Parents told that parent-child visits, gifts, mail, phone calls are to

be arranged on an individual basis with the worker.

    _X_ yes _____ no

5.  Parents' Expectations of Placement *Each parent expects the*
*child to be in a foster home where the family*
*has 2 natural children. Mother expects to*
*be allowed to visit with child. Father indicated*
*declined to visit.*

B.  DISCUSSION OF PLACEMENT WITH CHILD(REN) (Individualized)

1.  Reason for placement explained to child(ren)?  _X_ yes _____ no.

2.  Type of placement explained to all child(ren)?  _X_ yes _____ no.

    If no, why not? *Due to age of child (2 yrs) it is*
*uncertain if he understood.*

3.  Anticipated length of placement explained to all children? _X_ yes ____ no.
    If no, why not?

5672

Case 3:13-cv-00326 Document 33-25 Filed 05/21/14 Page 319 of 533 PageID 10672

4.  Children told that parent-child visits, gifts, mail, phone calls are
    to be arranged on an individual basis with the worker.   _X_ yes  ____ no

5.  Each child's understanding of and reaction to placement.

Due to age of child (2 yrs), it is uncertain
if child understood the explanation. However,
he went willingly and without tears) to the
foster home. No apparent adjustment problems)
have been noted.

Page 14                                          RCW-101-1/79

C.  SUBSTITUTE CARE PLACEMENT

  1.  Foster Families reviewed for placement *Aquilar, Peters, & Viterychuk.*

  2.  Verbal presentation of children to family selected

    *10·28·82*
    Date

  3.  Pre-placement visits (dates).

    *emergency placement 10·28·82.*

  4.  Date of Placement *10·28·82.*

5674

Form 2902-A
June 1980

**Texas Department of Human Resources**
**CANRIS REPORT**

| 1. CANRIS Incident No. |
|---|
| E122300 |

open case's, Basden

E.O. Use Only

| 2. | | 3. |
|---|---|---|

CR Case Bradley

### SECTION I — WORKER INFORMATION

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|
| Basden | Beverly | C 6 1 0 | 0 5 1 3 5 C 0 2 | |

### SECTION II — INCIDENT REPORT

11-9-82

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 1 0 2 6 8 2 | 1 0 2 8 8 2 | | D,O,C | 6 , 1 |

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME | | |
|---|---|---|---|
| 1 - Adjudicated | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 | |
| 2 - Reason to Believe | 2 - $7,000 to 14,000 | 5 - $50,000 or more | |
| 3 - Unfounded | 3 - $14,000 to 26,000 | | |
| 4 - Moved | | | |

| Temporary No. |
|---|
| C 202411 |

### SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield | Anna | | 1 9 5 7 3 | S | F | AMA | U.R. | | |
| 24. Street Address | | | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| Twin Lakes MAP #179 | | | | | Denton | | | TX | | 061 | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 5 0 2 7 4 4 8 7 9 | 4 5 2 2 9 3 7 0 2 | BRU1 | | | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Willingham Jr. | James | | 1 0 2 5 5 8 | U.R. | M | A | PP | A.P | |
| 24. Street Address | | | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| above | | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 5 0 3 8 1 5 3 8 4 | NA | BRU1 | | | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield | Wesley | | 1 1 1 7 8 0 | N.A. | M | A | O.V. | VC | |
| 24. Street Address | | | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| above | | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 5 0 2 7 4 4 8 8 1 | NA | BRU1 | | | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield Sr. | Robert | | 7 2 7 5 7 | S | E,M | A | FA | NO | |
| 24. Street Address | | | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| Clayton House Motel #206 | | | | | Denton | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| RU University | 78 451 1 5588 | | | | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield Jr. | Randy | | 9 1 3 2 7 | N.A. | M | A | BR | N.O. | |
| 24. Street Address | | | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| Clayton House Motel | | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 80 | NA | | | | | | | | | |

37. Page 1 of 1 pages

5675

State of Texas
Department of Public Welfare

Form 2202-A
July 1976
Page 2

**INTAKE SUPPLEMENT**
**(PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)**

10·29·82

PRESENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, out-of-town Inquiry (OTI), etc.

Wesley Whitfield was seen in clinic for middle ear infection. Dr. noted bruises on lower posterior legs. Mother stated boyfriend bruised her son by spanking with belt. She left the boyfriend yesterday.

TC to Dr. Jackson: bruises 5-7 days old. Bruises are 2" x 1" in lateral fashion. Dr's opinion: "not run of mill" whipping. Current location of mother is unknown.

Is the child in danger of being permanently harmed or losing his life?  ☒ Yes  ☐ No  ☐ Possibly

Has a doctor seen the child?  ☒ Yes  ☐ No     Name of Doctor  Greg Jackson

Date seen: 10/28/82   Treatment: middle ear infection & bruises on back of legs at knees

Immediate removal/placement of the child needed?  ☐ Yes  ☐ No  ☒ Possibly

Reasons: 3rd incident of bruises since July, 1982

COMPLAINANT:  Name  Becky Harwell, nurse  Health Dept.   Relationship to Child

Street Address  Basement, Old Courthouse   City   State   Zip   Telephone  087-8559

Present/Previous Case: Local Records  open case: Baden

CANRIS Soundex Information

**ACTION TAKEN**

**WORKER RECOMMENDATION**

Continued protective services needed?  ☒ Yes  ☐ No

Reason  previous incidents of bruises in Mother's care while

11-1-82   Date

**SUPERVISOR DECISION**

Assigned for continued protective services?

Yes ☐  Worker Assigned

No ☐  Reason

Supervisor   Date

5676

Texas Department of Human Resources

**CANRIS REPC**

June 1980

| 1. CANRIS Incident No. |
|---|
| E120164 |

S.O. Use Only

| 2. | 3. |
|---|---|

## SECTION I — WORKER INFORMATION

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BIN | 7. Mail Code |
|---|---|---|---|---|
| Barden | Barden | C610 | 85002002 | 34711 |

## SECTION II — INCIDENT REPORT

| 8. Date Occurred to Child | 9. Date Reported t DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 9.13.82 | 91.16.82 | 10.27 PP | DOC | 0.1 |

### 13. DISPOSITION

| | |
|---|---|
| 1 - Adjudicated | |
| 2 - Reason to Believe | ✓ |
| 3 - Unfounded | |
| 4 - Moved | |

### 14. ANNUAL FAMILY INCOME

| | |
|---|---|
| 1 - $0 to 7,000 | ✓ |
| 2 - $7,000 to 14,000 | |
| 3 - $14,000 to 26,000 | |
| 4 - $26,000 to 50,000 | |
| 5 - $50,000 or more | |

| Temporary No. |
|---|
| c 202408 |

## SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Willingham | Jimmy | R | 10.25.58 | V.K | M | A | P.P | V.K | |
| 24. Street Address | Twin Lakes #179 | | 25. City Denton | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. E120162 | | 36. Line 0.2 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield | Anna | | 1.9.59 | S | F | A | Mo. | V.K | |
| 24. Street Address | Twin Lakes #179 | | 25. City Denton | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line 0.1 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | Whitfield | Wesley | | 11.11.80 | N | A | M | A | 0.V | V.C |
| 24. Street Address | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect BRUI | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line 0.3 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | Whitfield | Randy | | 9.13.77 | N | A | M | A | B.R | N.D |
| 24. Street Address | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line 0.4 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| X | V.K | Debbie | | | | F | A | N.O | A.P | |
| 24. Street Address | 001 Hickory | | 25. City Denton | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect BRUI | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line |

1 of 1 pages

Form 2202-A
July 1976
Page 2

State of Texas
Department of Public Welfare

**INTAKE SUPPLEMENT**

**(PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)**

9-16-82 PS

PRESENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, out-of-town inquiry (OTI), etc.

Mo. brought child to Health Clinic on referral of Kiwanis Club for treatment of cold. Comp. observed numerous bruises on back, buttocks, & legs, which Mo. stated were the result of fall from swing at sitter's house.

---

Is the child in danger of being permanently harmed or losing his life?   ☐ Yes   ☐ No   ☐ Possibly

Has a doctor seen the child?   ☒ Yes   ☐ No          Name of Doctor  Dr. Johnson

Date seen:  9/16/82   Treatment:  prescribed antibiotics - blood count fine

Immediate removal/placement of the child needed?   ☐ Yes   ☐ No   ☐ Possibly

sons:

| COMPLAINANT: | Name Dr. David Johnson | | | Relationship to Child |
|---|---|---|---|---|
| Street Address 2509 Scripture | City Renton | State | Zip | Telephone 382-2521 |

Present/Previous Case: Local Records   open case: Basden

CANRIS Soundex Information _____

**ACTION TAKEN**

| WORKER RECOMMENDATION | SUPERVISOR DECISION |
|---|---|
| Continued protective services needed?  ☐ Yes   ☐ No | Assigned for continued protective services? |
| | Yes ☐  Worker Assigned _____ |
| ason _____ | No ☐  Reason _____ |
| Date | Supervisor          Date |

5678

Form 2202-A
June 1980

Texas Department of Human Resources
CANRIS REPORT

**1. CANRIS Incident No.**
E120162

*Open Case*
*Revised 7/10/82*

**S.O. Use Only**

2. _____  3. _____

## SECTION I – WORKER INFORMATION
| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|

## SECTION II – INCIDENT REPORT
| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 0 7 1 ? 18 2 | 0 7 1 1 18 2 | 1 0 12 7 8 2 | OTHI0 | I |

**13. DISPOSITION**
- 1 - Adjudicated
- ✓ 2 - Reason to Believe
- 3 - Unfounded
- 4 - Moved

**14. ANNUAL FAMILY INCOME**
- 1 - $0 to 7,000
- ✓ 2 - $7,000 to 14,000
- 3 - $14,000 to 26,000
- 4 - $26,000 to 50,000
- 5 - $50,000 or more

**Temporary No.**
C 300734

## SECTION III – INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ANNA | | 0 10969 | S E | F | A | M.O | | |

| 24. Street Address | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|---|
| CAPRICORN MHP (1) #5 | | DENTON | | TX 76201 | C61MC | | |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| | | BRUI | N A M | | E120160 | 01 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WILLINGHAM JR | JAMES | | 10 25 158 | W | M | A | 0.P | | |

| 24. Street Address | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|---|
| | | | | | | N.O | |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| | | P.BUI | | | | 02 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | WESLEY | | 1 11 780 | N A | M | A | 0 N | U.C | |

| 24. Street Address | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|---|
| | | | | | | W.O | |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| | | BRUI | N A | P.NF | | 04 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | RANDY | | 0 9 13 77 | N A | M | A | 0.P | N.0 | |

| 24. Street Address | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|---|
| | | | | | | N.0 | |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| | | N A | W A | N-A | | 03 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 24. Street Address | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| | | | | | | |

37. Page ___ of ___ pages

5679

Form 2202-A
July 1976
Page 2

_B_
of Public Welfare

Log # 119

**INTAKE SUPPLEMENT**
**(PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)**
1/11/82   11:30 P.M.

ENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, f-town inquiry (OTI), etc.

Compl. hasn't met family before tonight - she is registered babysitter & listed in paper for overnight care - About 8:30 P.M. came to Cedar & asked if she could take 5 children tonight as she & boyfriend were going into Dallas to a club until about 3:00 A.M. - Compl. agreed & parents asked for children to stay overnight & pick them up 3-4:00 A.M. Mon. 1/12 - About 10:30 P.M. she changed Wesley's diaper & found his hips covered with bruises - bruised also & not new - 5 yr. old bro. Randy said his father Timbo spanked Wesley - unknown, unknown, & only child spanked unknown - Wesley has bruise of eye but also had other cuts around left eye & is starting black eye on other eye. Randy said Wesley cut eye when he fell on coffee table while father was spanking him - Wesley also has two small swollen knots on forehead - Children happy when ... brought them & ... Randy said they haven't eaten all day -

Is the child in danger of being permanently harmed or losing his life?   ☐ Yes   ☐ No   ☒ Possibly   (over)

Has a doctor seen the child?   ☐ Yes   ☒ No    Name of Doctor _____

Date seen:  / /      Treatment: _____

Immediate removal/placement of the child needed?   ☐ Yes   ☐ No   ☒ Possibly

asons:  bruises on 2 yr. old

COMPLAINANT:  Name  Marie Wright  via Hot Line    Relationship to Child  babysitter

Street Address  Denton MHP - Lot 26 - 26 5 Penn    City  Denton    State  Tx    Zip  76201    Telephone  387-9754

Mailing address: 914 Cross, Denton, Tx

Present/Previous Case: Local Records  often - Lindsay    NO RECORD on 'JIMBO' OR HIS KIDS

CANRIS Soundex Information  on file -

**ACTION TAKEN**

| WORKER RECOMMENDATION | SUPERVISOR DECISION |
|---|---|
| Continued protective services needed?   ☐ Yes   ☐ No | Assigned for continued protective services? |
|  | Yes ☐ Worker Assigned _____ |
| Reason _____ | No ☐ Reason _____ |
| _____ Date | _____ Supervisor _____ Date |

5680

1/11/82 Contact w/ Compliment & Home Visit:

I got children & them went to babysitters home. Wesley still awake taking bottle but _____ was asleep. I examined both children - No bruises on Randy, but verified the following on Wesley & took pictures:

1. upper thigh area on both legs - extensive bruising - one side distinctly shows belt mark - other side not as distinct - bruises appear older in nature - see picture

2. lower Rt of back - kidney area - one bruised area both distinct - no picture

3. eye - cut below left eye which + _____ one on left eyelid - Rt eye black Rt like possibly a fading black eye concerning the eye

4. forehead - two raised knots one about eyebrow in mid forehead + one a bit higher over right eye

I took to Randy as he was asleep (1:30 A.M.) -

I advised Complainant one _____ follow up w/ parents - she was concerned about possible repercussions from parents & I explained agency's position, etc. regarding complaints

1/8/82    Office case Daniel Leming    S.H. 1/11/82
Referred to David Leming who will handle _____

Case 3:13-cv-01535-L Document 172-10 Filed 08/22/14 Page 328 of 533 PageID 14862

Texas Department of Human Resources
June 1980

**CANRIS REPORT**

| 1. CANRIS Incident No. |
|---|
| E120160 |

S.O. Use Only

| 2. | | 3. |

Case Revisal 5/25/82

## SECTION I — WORKER INFORMATION

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. DJN | 7. Mail Code |
|---|---|---|---|---|
| HARE | SANDRA | 9A95 | 05135C05 3471 | |

## SECTION II — INCIDENT REPORT  9:45 P.M.

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 051432 | 052482 | 082782 | REL | 01 |

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME |
|---|---|
| 1 - Adjudicated | 1 - $0 to 7,000     4 - $26,000 to 50,000 |
| ✓ 2 - Reason to Believe | 2 - $7,000 to 14,000     5 - $50,000 or more |
| 3 - Unfounded | 3 - $14,000 to 26,000 |
| 4 - Moved | |

Temporary No.

C 185559

## SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | RANDY | L | 091377 | NA | M | A | SU UE | NO | |

| 24. Street Address | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|
| 513 Cardinal # D.1.1 | AGATON | TX | 76320 | 061140 | |
| 30. DHR Client No. | | | | | 36. Line |
| 502 744800 | WELT | | NE | | 01 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WILLINGHAM | JR JAMES | | 102558 | U | K | M | A | PF AP OP | |

| 24. Street Address | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|
| Silver Dome Trl Park - Lot 9 | Denton Township (Sanders) | Tx | | 061140 | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| NA | NA | WELT | LA | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | WHITFIELD | ANNE | M | 010959 | S | F | A | MO | UK | NO |

| 24. Street Address | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|
| | | Tx | | 061140 | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. |
| 502 744809 | 452293702 | NE ETT | NA | | E021695 02 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | Wesley | | 111180 | NA | M | A | BR | NO | NO |

| 24. Street Address | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|
| | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 36. Line |
| 502 744881 | NA | | | | 04 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| 24. Street Address | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|
| | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | | | | | |

37. Page _1_ of _1_ pages

5682

State of Texas
Department of Public Welfare

Form 2202-A
July 1976
Page 2

# INTAKE SUPPLEMENT
## (PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)

PRESENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, out-of-town inquiry (OTI), etc. 9:45 A.M. 5/28/86 by Kate Blanchard –

Compl. previously talked to Livesay & he told her to call when she had evidence of abuse

Grandson taken over to her father's & mom brought to her – she wants to keep him

4 yr old Randy has welts all over him – arm & legs & up his back – child whipped by Jimbo Willingham (on parole) who lives with Annie Whitfield – Mo. left Mrs. Whitfield's son Randy & moved in with Willingham – Mo. told Mr. Van Pattison (Randy's GGF) she can't handle him –

Mrs. Whitfield works tomorrow but will call DHR tomorrow A.M. so pictures can be taken of [illegible] – she will be home about 4 or 5 P.M. tomorrow – [illegible] DHR [illegible] investigate & take pictures tomorrow A.M.

Is the child in danger of being permanently harmed or losing his life? ☐ Yes ☒ No ☐ Possibly

Has a doctor seen the child? ☐ Yes ☒ No Name of Doctor

Date seen: / /  Treatment:

Is immediate removal/placement of the child needed? ☐ Yes ☒ No ☐ Possibly

Reasons: Child with g/parents at present

COMPLAINANT:

| Name | | | | Relationship to Child |
|---|---|---|---|---|
| Shirley Whitfield | | | | Gt. Grandmother |
| **Street Address** | **City** | **State** | **Zip** | **Telephone** |
| 512 Cardinal #D11 | Denton | Tx | 76201 | 383-2844 |

Present/Previous Case: Local Records Livesay 9/81 Randy 9/13/81 – Mo: Anna Fa: Bob (?)

CANRIS Soundex Information

### ACTION TAKEN

| WORKER RECOMMENDATION | SUPERVISOR DECISION |
|---|---|
| Continued protective services needed? ☐ Yes ☐ No | Assigned for continued protective services? |
| Reason | Yes ☐ Worker Assigned |
| | No ☐ Reason |
| Date | Supervisor Date |

Form 2202-A
June 1980

**Texas Department of Human Resources**
**CANRIS REPORT**

| 1. CANRIS Incident No. | |

*Open - Lewisay*
*2/9/82 (NB*

S.O. Use Only

| 2. | 3. |

## SECTION I — WORKER INFORMATION

| 4. Work. Name (Last) | (First) | 5. Emp No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|
| Basden | Beverly | C.6 1.0 | 0.5 1. 35. C02 | 34 71 |

## SECTION II — INCIDENT REPORT  2:30pm

| 8. Date Occurred to Chd | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| | 3 9 82 | | FRN 0 2 | |

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME | | |
|---|---|---|---|
| 1 - Adjudicated | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 | |
| 2 - Reason to Believe | 2 - $7,000 to 14,000 | 5 - $50,000 or more | |
| 3 - Unfounded | 3 - $14,000 to 26,000 | | |
| 4 - Moved | | | |

Temporary No.

c  202389

## SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | Whitfield | Randy | | | | M | A | M A | FA | A P |
| 24. Street Address | | | | | | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| Phoenix Apts. | | Denton | TX | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | BRU I | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Anna | | | | M | A | F | A | Mo. | A P |
| 24. Street Address | | | | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | BRU I | | 4 yr | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | JOK | | | | M | A | O.V. | V.C. | |
| 24. Street Address | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | BRU I | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 24. Street Address | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 24. Street Address | | | 25. City | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |

37. Page _1_ of _1_ pages

5684

State of Texas
Department of Public Welfare

**INTAKE SUPPLEMENT**
(PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)

Form 2202-A
July 1976
Page 2

BS 2-9-82

PRESENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, out-of-town inquiry (OTI), etc. While in hospital, comp shared a room with Mary Hammons, sister-in-law of Anna Whitfield. Mary told comp she had observed the 4 yr old boy covered with bruises because of beatings from parents. Reason for beating at time was UK. Allegedly, Fa & Mo are on "hard drugs" and Fa only works when he needs $ for drugs.

Comp has not seen family in 3 yrs. At that time she was also on drugs.

Comp is concerned, because Laven, sister of Fa, supposedly beat her 2 yr old baby to death about 3 yrs ago. She was given 10 yrs probation. Her whereabouts in Renton are UK.

Comp is to contact Mary Hammons to check in giving more info to CPS.

Is the child in danger of being permanently harmed or losing his life? ☐ Yes ☐ No ☒ Possibly

Has a doctor seen the child? ☐ Yes ☐ No UK   Name of Doctor _____

Date seen: / /   Treatment: _____

Immediate removal/placement of the child needed? ☐ Yes ☐ No ☒ Possibly

Reasons:

COMPLAINANT: Name Judy Tivis   Relationship to Child _____

Street Address Westgate Hospital, Room 345 B   City Renton   State   Zip   Telephone 566-4205

Present/Previous Case: Local Records Open case - Livisay

CANRIS Soundex Information

**ACTION TAKEN**

| WORKER RECOMMENDATION | SUPERVISOR DECISION |
|---|---|
| Continued protective services needed? ☐ Yes ☐ No | Assigned for continued protective services? |
| Reason _____ | Yes ☐ Worker Assigned _____ |
| _____ Date | No ☐ Reason _____ |
| | Supervisor _____ Date |

5685

Texas Department of Human Resources
**CANRIS REPORT**

June 1980

*Assigned: Levisay*
*9-9-81*

1. CANRIS Incident No. **E071695**

S.O. Use Only

2. _____  3. _____

*Levisa...*

## SECTION I — WORKER INFORMATION

| 8. Worker Name (Last) | (First) | 5. Emp No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|
| Dobbs | Lucinda | C722051 | 35C04 | 34711 |

## SECTION II — INCIDENT REPORT

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Prior |
|---|---|---|---|---|
| 090881 | 090881 | 120781 | REL | 02 |

12. DISPOSITION
- 1 - Adjudicated
- ✓ 2 - Reason to Believe
- 3 - Unfounded
- 4 - Moved

14. ANNUAL FAMILY INCOME
- ✓ 1 - $0 to 7,000
- 2 - $7,000 to 14,000
- 3 - $14,000 to 26,000
- 4 - $26,000 to 50,000
- 5 - $50,000 or more

Temporary No.
C **202144**

## SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar.St. | 19.Sex | 20. Eth. | 21.Rel'ship | 22.Role | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | RANDYBOB *Robert* | R | 072757 | M | A | M | A | FA | AP OP |
| 24. Street Address | | | | 25. City | | | 26.St. | 27. ZIP | 28. Co. | 29. Characteristics |
| PH3RRUPx APTS #125 *RUDDELL* | | | | DENTON | | | TX | 76201 | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33.Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744 | 878451 | | 15588 EMOT BRUI PHYS MEDI | | | | NA | NCF | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar.St. | 19.Sex | 20. Eth. | 21.Rel'ship | 22.Role | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WHITFIELD | ANNIE *ANNA* | | 010959 | M | A | F | A | MO | AP OP |
| 24. Street Address | | | | 25. City | | | 26.St. | 27. ZIP | 28. Co. | 29. Characteristics |
| SAME | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33.Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744 | 878452 | | 293702 EMOT PHYS MEDI | | | | | | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar.St. | 19.Sex | 20. Eth. | 21.Rel'ship | 22.Role | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD JR | RANDY | | 091377 | N | A | M | A | OV | VC OV |
| 24. Street Address | | | | 25. City | | | 26.St. | 27. ZIP | 28. Co. | 29. Characteristics |
| SAME | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33.Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744 | 880 | | EMOT BRUI PHYS | | | | NF | PNF | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar.St. | 19.Sex | 20. Eth. | 21.Rel'ship | 22.Role | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | WESLEY *KENNETH* | | 117180 | N | A | M | A | BR | VC OP |
| 24. Street Address | | | | 25. City | | | 26.St. | 27. ZIP | 28. Co. | 29. Characteristics |
| SAME | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33.Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744 | 881 | | PHYS MEDI | | | | NF | PNF | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar.St. | 19.Sex | 20. Eth. | 21.Rel'ship | 22.Role | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | | | 25. City | | | 26.St. | 27. ZIP | 28. Co. | 29. Characteristics |
| | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33.Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | | | | | | | | | |

37. Page __1__ of __1__ pages

5686

*Apt. is last bldg. back, top floor, 2nd from back end.*

State of Texas
Department of Public Welfare

Form 2202-A
July 1976
Page 2

**INTAKE SUPPLEMENT**
**(PART II, CHILDREN'S PROTECTIVE SERVICES: INTAKE AND CANRIS REPORT)**

PRESENTING PROBLEMS: Describe alleged abuse, neglect, truancy, runaway, unmarried or school age parent, court-ordered social study, out-of-town inquiry (OTI), etc.

*Comp. has seen following: House is "a wreck", chn. are pale, unhealthy-looking, like don't have proper diet. Wesley has round sores on face, about size of a quarter, puffy and scabby around edges — has had them about 2 wks., with no med. treatment. Mo. doesn't change baby's diapers; he lays in dirty diapers for hours. Fa. is "mean" to Randy — he makes him sit & be absolutely silent whenever fa. is around. Pa's send Randy to bed but won't turn on bathrm light for him, so Randy uses the closet or his bed. When fa. finds it, he "whips" Randy & rubs his nose in it. Randy's room smells "like a sewer". If Randy doesn't sit down fast enough, comp. has seen fa. twist Randy's arm, and push him down on the floor. Fa. once had split knuckle from hitting Randy on the head. Once fa. brought Randy to comp's house; shoved him in the door & left without checking if comp. was there or could babysit; comp. found Randy there when she woke up. Fa. works days; mo. not working right now.*

Is the child in danger of being permanently harmed or losing his life? ☐ Yes ☐ No ☒ Possibly

Has a doctor seen the child? ☐ Yes ☒ No    Name of Doctor _____

Date seen: _/_/_    Treatment: _____

Immediate removal/placement of the child needed? ☐ Yes ☒ No ☐ Possibly

Reasons: _____

COMPLAINANT: Name *Cindy Russell*    Relationship to Child *fa's cousin*

Street Address _____ City *Denton* State *Tx* Zip *76201* Telephone *382-1623*

Present/Previous Case: Local Records *no local or CANRIS record*

CANRIS Soundex Information *PA file — denied food stamps 8-31-81*

**ACTION TAKEN**

| WORKER RECOMMENDATION | SUPERVISOR DECISION |
|---|---|
| Continued protective services needed? ☒ Yes ☐ No | Assigned for continued protective services? |
| Reason *poss abuse & neglect.* | Yes ☐ Worker Assigned _____ |
| *9-8-81* Date | No ☐ Reason _____ |
| | Supervisor _____ Date |

5687

CASE FACE SHEET                                    RCW-100-10/80

CASE NAME _____

HOME ADDRESS _Twin Lakes MHP #179_____ HOME PHONE _566-5570_

DIRECTIONS _Non Stuart Rd._____

FAMILY COMPOSITION IN HOME AT TIME OF REFERRAL   _See 2202_

| Father, Stepfather, Parent Substitute (circle one) | Mother, Stepmother, Parent Substitute (circle one) |
|---|---|
| FULL NAME _WHITFIELD_ _"Randy"_ | FULL NAME _W,_ _"annie"_ |
| Last   First   Middle | Last   First   Middle |
| Birthdate _____ Birthplace _____ | Birthdate _____ Birthplace _____ |
| _e_ Primary Language ____ Education ____ | Race ____ Primary Language ____ Education ____ |
| Occupation _____ Religion _____ | Occupation _____ Religion _____ |
| Work Address _____ Phone _____ | Work Address _____ Phone _____ |
| Marital Status _____ | Marital Status _____ |

CHILDREN IN HOME

| FULL NAME | DOB | SEX | RACE | BIRTHPLACE | GRADE | RELATIONSHIP TO CASE NAME |
|---|---|---|---|---|---|---|
| Randy | 9-13-77 | m | A | | | |
| Wesley | 11-17-80 | m | A | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

CHILDREN OUT OF HOME

| NAME OF CHILD | WITH WHOM LIVING/RELATIONSHIP | ADDRESS/PHONE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

5688

RCW-100-10/80

| DATE | LATEST HOME ADDRESS | PHONE |
|---|---|---|
| | 1100 Co1st CAPRICORN #5 | 382-2764 Nort 27256655 |

## INTERESTED RELATIVES AND INDIVIDUALS

| NAME | RELATIONSHIP | ADDRESS | PHONE |
|---|---|---|---|
| JOHN HAMMONDS | M/UNCLE | above | 566-0332 |
| Bob & Shirley Whitfield | pat NF & GM | Hwy 1830, white house w/ yellow trim & mailbox, East side | |

## OTHER AGENCIES, ORGANIZATIONS INVOLVED

| AGENCY | CONTACT PERSON | PHONE |
|---|---|---|
| MH clinic (AA) | Jeannie Mason | |
| MED Surgical clinic (Jackson etc.) | For Wesley's medical needs | |
| Legal Services | Ed Hocker | |

## OTHER PERSONS IN HOME

| NAME | DOB | SEX | RELATIONSHIP TO CASE NAME |
|---|---|---|---|
| JAMES WILLINGHAM | | | paramour |

## NATURAL PARENT IF DIFFERENT FROM ABOVE (As 4 June '82)

FULL NAME  WHITFIELD  ROBERT "RANDY"  Nat. fath
Last  First  Middle  Relation to Which Child(ren)

BIRTHDATE                    BIRTHPLACE                    RACE

HOME ADDRESS                                    PHONE

WORK ADDRESS                                    PHONE

FULL NAME
Last  First  Middle  Relation to Which Child(ren)

BIRTHDATE                    BIRTHPLACE                    RACE

HOME ADDRESS                                    PHONE

WORK ADDRESS                                    PHONE

5689

Texas Department of Human Resources

Form 2202-B
June 1990

**CANRIS REPORT — Turnaround**

| 1. CANRIS Incident No. |
|---|
| E122300 |

BASDEN      BEVERLY

C610   051-35-C-02   347-1

S.O. Use Only

| 2. | 3. |
|---|---|

RUN DATE
11/09/82

## SECTION I — WORKER INFORMATION

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. RJN | 7. Mail Code |
|---|---|---|---|---|
| BASDEN | BEVERLY | C610 | 051-35-C-02 | 347-1 |

## SECTION II — INCIDENT REPORT

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 10-26-82 | 10-28-82 | 11-09-82 | DOC | 0   1 |

### 13. DISPOSITION
| | |
|---|---|
| 1 - Founded | XXXXXX |
| 2 - Not Founded / Reason to Suspect | |
| 3 - Unfounded | |
| 4 - Moved | |

### 14. ANNUAL FAMILY INCOME
| | |
|---|---|
| 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
| 2 - $7,000 to 14,000 | 5 - $50,000 or more |
| 3 - $14,000 to 26,000 | |

\* 1 ADJUDICATED
\* 2 REASON TO BELIEVE

## SECTION III — INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ANNA | | 01 09 59 | SE | F | A | MO | UK | NO |

| 24. Street Address | | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|
| TWIN LAKE MHP #179 | | DENTON | TX | 76201 | 061 | NA |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| 502744879 | 452 29 3702 | NA | NA | NA | NA | NA |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WILLINGHAMJR | JAMES | | 10 25 58 | UK | M | A | PP | AP | NO |

| 24. Street Address | | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|
| TWIN LAKE MHP #179 | | DENTON | TX | 76201 | 061 | NO |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| 503818384 | NA | BRUI | NF | NCF | NA | NA |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | WESLEY | | 11 17 80 | NA | M | A | OV | VC | NO |

| 24. Street Address | | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|
| TWIN LAKE MHP #179 | | DENTON | TX | 76201 | 061 | NO |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| 502744881 | NA | BRUI | NF | DHR | NA | NA |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | ROBERT | | 07 27 57 | SE | M | A | FA | NO | NO |

| 24. Street Address | | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|
| 1111 UNIVERSARY #206 | | DENTON | TX | 76201 | 061 | NO |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| 502744878 | 451 11 5588 | NA | NA | NA | NA | NA |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 05 | WHITFIELDJR | RANDY | | 09 13 77 | NA | M | A | BR | NO | NO |

| 24. Street Address | | 25. City | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
|---|---|---|---|---|---|---|
| 1111 UNIVERSARY #206 | | DENTON | TX | 76201 | 061 | NO |

| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
|---|---|---|---|---|---|---|
| 502744880 | NA | NA | NA | NA | NA | NA |

37. Page 1 of _____ Pages

5690

Form 2202-B
June 1980

**Texas Department Human Resources**
**CANRIS REPORT — Turnaround**

**2**

**1**   BASDEN          BEVERLY

C610   051-35-C-02   347-1

| 1. CANRIS Incident No. |
|---|
| E120164 |

| | S.O. Use Only |
|---|---|
| 2. | 3. |

**RUN DATE**
**10/27/82**

---

### SECTION I — WORKER INFORMATION

**2**

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|
| BASDEN | BEVERLY | C610 | 051-35-C-02 | 347-1 |

---

### SECTION II — INCIDENT REPORT

**3**

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 09-13-82 | 09-16-82 | 10-27-82 | 00C | 1 |
| | | | 0 | |

**13. DISPOSITION**

| | |
|---|---|
| 1 | 1 XXXXXX ＊ |
| 2 | 2 XXXXXXXXX ＊ Reason to Suspect |
| 3 | 3 - Unfounded |
| 4 | 4 - Moved |

**14. ANNUAL FAMILY INCOME**

| 1 | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
|---|---|---|
| | 2 - $7,000 to 14,000 | 5 - $50,000 or more |
| | 3 - $14,000 to 26,000 | |

＊ 1 ADJUDICATED
＊ 2 REASON TO BELIEVE

---

### SECTION III — INDIVIDUAL INFORMATION

**4**

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ANNA | | 01 09 59 | SE | F | A | MO | UK | NO |
| 24. Street Address | | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| TWIN LAKE MPH #179 | | | | | DENTON | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| S02744879 | 452 29 3902 | | NA | | | | NA | NA | E120620 | 01 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WILLINGHAM JR | JAMES | | 10 25 58 | UK | M | A | PP | NO | UK |
| 24. Street Address | | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| TWIN LAKE MPH #179 | | | | | DENTON | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| NA | | | NA | | | | NA | NA | E120620 | 02 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | WESLEY | | 11 17 80 | NA | M | OV | VC | NO | |
| 24. Street Address | | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| TWIN LAKE MPH #179 | | | | | DENTON | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| S02744881 | | | BRUI | | | | NF | PNF | E120620 | 03 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | RANDY | | 09 13 77 | NA | M | A | BR | NO | NO |
| 24. Street Address | | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| TWIN LAKE MPH #179 | | | | | DENTON | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| S02744880 | NA | | NA | | | | NA | NA | E120620 | 04 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics |
| | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | | | | | | | | | |

37. Page ____ of ____ pages

1    1

5691

Form 2202-B
June 1980

Texas Department of Human Resources
CANRIS REPORT — Turnaround

**2**

**1**    BASDEN          BEVERLY

C610  051-35-C-02   347-1

| 1. CANRIS Incident No. |
|---|
| E120162 |

S.O. Use Only
2.                    3.

RUN DATE
10/27/82

**2**

## SECTION I — WORKER INFORMATION

| 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|
| BASDEN | BEVERLY | C610 | 051-35-C-02 | 347-1 |

## SECTION II — INCIDENT REPORT

**3**

| 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|
| 07-11-82 | 07-11-82 | 10-27-82 | OTH | 1 |

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME | |
|---|---|---|
| 1 XXXXXX | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
| 2 XXXXXXXX  Reason to Suspect | 2 - $7,000 to 14,000 | 5 - $50,000 or more |
| 3 - Unfounded | 3 - $14,000 to 26,000 | |
| 4 - Moved | | |

\* 1 ADJUDICATED
\* 2 REASON TO BELIEVE

## SECTION III — INDIVIDUAL INFORMATION

**4**

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ANNA | | 01 09 59 | SE | F | A | MO | AP | N |
| 24. Street Address | | 25. City | | | | | 26. St. | 27. Zip | 28. Co. | 29. Characteristics |
| CAPICORN MHP #5 | | DENTON | | | | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744879 | 452 29 3702 | BRUI | | | | | NA | NCF | E120160 | 01 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WILLINGHAM JR | JAMES | | 10 25 58 | UK | M | PP | UK | NO |  |
| 24. Street Address | | 25. City | | | | | 26. St. | 27. Zip | 28. Co. | 29. Characteristics |
| CAPICORN MHP #5 | | DENTON | | | | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| NA | NA | NA | | | | | NA | NA | E120160 | 02 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | WESLEY | | 11 17 80 | NA | M | A | OV | VC | NO |
| 24. Street Address | | 25. City | | | | | 26. St. | 27. Zip | 28. Co. | 29. Characteristics |
| CAPICORN MHP #5 | | DENTON | | | | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744881 | NA | BRUI | | | | | NF | PNF | E101260 | 04 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | RANDY | | 09 13 77 | NA | M | A | BR | NO |  |
| 24. Street Address | | 25. City | | | | | 26. St. | 27. Zip | 28. Co. | 29. Characteristics |
| CAPICORN MHP #5 | | DENTON | | | | | TX | 76201 | 061 | NO |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| 502744880 | NA | NA | | | | | NA | NA | E101260 | 03 |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | 25. City | | | | | 26. St. | 27. Zip | 28. Co. | 29. Characteristics |
| | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line |
| | | | | | | | | | | |

37. Page    1    1    of    Pages

5692

Texas Department of Human Resources
**CANRIS REPORT — Turnaround**

Form 2202-B
June 1980

2

1   BASDEN                    BEVERLY

| 1. CANRIS Incident No. |
| E120160 |

C610   051-35-c-02   347-1

S.O. Use Only | 2. | 3. |

**RUN DATE**
10/27/82

---

## SECTION I — WORKER INFORMATION

2

| 4. Worker Name (Last) | (First) BEVERLY | 5. Emp. No. C610 | 6. BJN 051-35-C-02 | 7. Mail Code 347-1 |
| BASDEN | | | | |

---

## SECTION II — INCIDENT REPORT

3

| 8. Date Occurred to Child 05-24-82 | 9. Date Reported to DHR 05-24-82 | 10. Date Finalized 10-27-82 | 11. Source REL | 12. Priority 0 | 1 |

### 13. DISPOSITION

| 1 xXXXXX        * |
| 2 XXX XXXXXX  *  Reason to Suspect |
| 3 - Unfounded |
| 4 - Moved |

### 14. ANNUAL FAMILY INCOME

| 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
| 2 - $7,000 to 14,000 | 6 - $50,000 or more |
| 3 - $14,000 to 26,000 | |

* 1 ADJUDICATED
* 2 REASON TO BELIEVE

---

## SECTION III — INDIVIDUAL INFORMATION

4

| 15. Line 01 | 16. Name (Last) WHITFIELD | (First) ANNA | (MI) | 17. Date of Birth 01 09 59 | 18. Mar. St SE | 19. Sex F | 20. Eth. A | 21. Rel'ship MO | 22. Role UK | 23. SSMS OP |
| 24. Street Address 512 CARDINAL #D 11 | | | | 25. City DENTON | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744879 | 31. Social Security No. 452 29 3702 | 32. Type of Abuse/Neglect NA | | | 33. Fatal NA | 34. Leg. Act. NA | 35. Prev. Inc. No. E071695 | 36. Line 02 | | |

| 15. Line 02 | 16. Name (Last) WILLINGHAM JR | (First) JAMES | (MI) | 17. Date of Birth 10 25 58 | 18. Mar. St UK | 19. Sex M | 20. Eth. A | 21. Rel'ship PP | 22. Role AP | 23. SSMS OP |
| 24. Street Address 512 CARDINAL #D 11 | | | | 25. City DENTON | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. NA | 31. Social Security No. NA | 32. Type of Abuse/Neglect VELT | | | 33. Fatal NA | 34. Leg. Act. NCF | 35. Prev. Inc. No. NA | 36. Line | | |

| 15. Line 03 | 16. Name (Last) WHITFIELD | (First) RANDY | (MI) | 17. Date of Birth 09 13 77 | 18. Mar. St NA | 19. Sex M | 20. Eth. A | 21. Rel'ship OV | 22. Role VC | 23. SSMS NO |
| 24. Street Address 512 CARDINAL #D 11 | | | | 25. City DENTON | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744880 | 31. Social Security No. NA | 32. Type of Abuse/Neglect VELT | | | 33. Fatal NF | 34. Leg. Act. PNF | 35. Prev. Inc. No. E071695 | 36. Line 01 | | |

| 15. Line 04 | 16. Name (Last) WHITFIELD | (First) WESLEY | (MI) | 17. Date of Birth 11 17 80 | 18. Mar. St NA | 19. Sex M | 20. Eth. A | 21. Rel'ship BR | 22. Role NO | 23. SSMS |
| 24. Street Address 512 CARDINAL #D 11 | | | | 25. City DENTON | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744881 | 31. Social Security No. NA | 32. Type of Abuse/Neglect NA | | | 33. Fatal NA | 34. Leg. Act. NA | 35. Prev. Inc. No. E071695 | 36. Line 04 | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
| 24. Street Address | | | | 25. City | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line | | |

37. Page _1_ of _1_ pages

5693

Form 2202-B
June 1980

Texas Department of Human Resources
CANRIS REPORT — Turnaround

| 2 | | |
|---|---|---|

| 1 | LEVISAY   DAVID | 1. CANRIS Incident No. E071695 | RUN DATE |
|---|---|---|---|
| | F845  051-35-C-03  347-1 | S.O. Use Only   2.   3. | 12/07/81 |

**SECTION I — WORKER INFORMATION**

| 2 | 4. Worker Name (Last) LEVISAY | (First) DAVID | 5. Emp. No. F845 | 6. BJN 051-35-C-03 | 7. Mail Code 347-1 |
|---|---|---|---|---|---|

**SECTION II — INCIDENT REPORT**

| 3 | 8. Date Occurred to Child 09-08-81 | 9. Date Reported to DHR 09-08-81 | 10. Date Finalized 12-07-81 | 11. Source REL | 12. Priority 0 |
|---|---|---|---|---|---|

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME | |
|---|---|---|
| 1 - Founded | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
| 2 - Not Founded / Reason to Suspect | 2 - $7,000 to 14,000 | 5 - $50,000 or more |
| 3 - Unfounded | 3 - $14,000 to 26,000 | |
| 4 - Moved | | |

* 1 ADJUDICATED
* 2 REASON TO BELIEVE

**SECTION III — INDIVIDUAL INFORMATION**

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ROBERT | | 07 27 57 | MA | M | A | FA | AP | OP |
| 24. Street Address 400 S RUDDELL #125 | | 25. City DENTON | | | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744878 | 31. Social Security No. 451 11 5588 | 32. Type of Abuse/Neglect EMOT BRUI PHYS MEDI | | | | 33. Fatal NA | 34. Leg. Act. NCF | 35. Prev. Inc. No. NA | 36. Line NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WHITFIELD | ANNA | | 01 09 59 | MA | F | A | MO | AP | OP |
| 24. Street Address 400 S RUDDELL #125 | | 25. City DENTON | | | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744879 | 31. Social Security No. 452 29 3702 | 32. Type of Abuse/Neglect EMOT PHYS MEDI | | | | 33. Fatal NA | 34. Leg. Act. NCF | 35. Prev. Inc. No. NA | 36. Line NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | RANDY | | 09 13 77 | NA | M | A | OV | VC | OP |
| 24. Street Address 400 S RUDDELL #125 | | 25. City DENTON | | | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744880 | 31. Social Security No. NA | 32. Type of Abuse/Neglect EMOT BRUI PHYS MEDI | | | | 33. Fatal NF | 34. Leg. Act. PNF | 35. Prev. Inc. No. NA | 36. Line NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | WESLEY | | 11 17 80 | NA | M | A | BR | VC | OP |
| 24. Street Address 400 S RUDDELL #125 | | 25. City DENTON | | | | 26. St. TX | 27. ZIP 76201 | 28. Co. 061 | 29. Characteristics NO | |
| 30. DHR Client No. 502744881 | 31. Social Security No. NA | 32. Type of Abuse/Neglect PHYS MEDI | | | | 33. Fatal NF | 34. Leg. Act. PNF | 35. Prev. Inc. No. NA | 36. Line NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | 25. City | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 36. Line | |

37. Page ___1___ of ___1___ pages

# Texas Department of Human Resources

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201:  Phone  817/383-2371

**COMMISSIONER**
Marlin W. Johnston



**BOARD MEMBERS**
FREDERICK C. REHFELDT, M.D.
Chairman, Millsap
RAUL JIMENEZ
San Antonio
JAMES C. CONNER
Marshall

May 11, 1983

Ms. Anna Whitfield
3818 W. University
Denton, TX 76201

Re:  Wesley Allen Whitfield
     DOB:  11-17-80

Dear Ms. Whitfield:

On May 11, 1983, a hearing was held before Judge Boyd regarding the above child.  He was presented the Mother's Voluntary Affidavit of Parental Rights and the Petition, copies of which are attached.

After hearing the evidence, he signed the Decree of Termination which had been approved by the attorneys involved.  A copy of this Decree is attached.

If there are any questions or comments concerning this legal matter, please do not hesitate to contact this office.

Sincerely,

*Beverly Basden*

Beverly Basden
Child Placement Worker III

BB/js

Attachments

cc:  Michael Whitten, Attorney
     John Lawhon, Attorney

Same Letter sent to Bob R. Whitfield, Natural Father

*An Equal Opportunity Employer*

5695

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Whitfield Adoptive Placement

TO:
Beverly Basden
Child Placement Worker
Old County Courthouse
P.O. Box 2186
Denton, TX 76201

FROM:
Jeannie Perullo
Permanent Planning Worker
3114 S. Riverside Dr.
Ft. Worth, TX 76119

DATE: August 18, 1983

This is to confirm our conversation of this afternoon advising me that you, your supervisor and program director are in agreement with the placement of the Whitfield children with the Halprin family.

I will notify you as soon as possible of the presentation and pre-placement schedule.

Jeannie Perullo

JP:prh

cc: Cindy Wingate, PPU Supervisor, 128-9
Allene Margowski, Program Director, 128-3
Sara Ham, Supervisor, Denton, 347-1

AN EQUAL OPPORTUNITY EMPLOYER

5696

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Adoptive Family for Wesley and Randy Whitfield

TO:
Allene Margowski
Program Director
128-3

FROM:
Jeannie Perullo
Perm. Planning Worker
128-9

DATE: August 2, 1983

Attached please find the Halprin Study I am submitting for Wesley, age 2 1/2 and Randy and 4.

Mr. and Mrs. Halprin, who live in Arlington are an interesting couple. He is Jewish and she is Catholic. They practice both religions. They observe both Jewish and Christian holidays. The boys will be allowed to choose their own faith when they are old enough.

Another interesting fact about the Halprins: he plans to quit work and take care of the boys instead of Mrs. Halprin. Mr. Halprin is looking forward to the role of "stay-at-home" father. He will utilize this opportunity to attend college at night. A factor that was also considered in making this decision is income. Mrs. Halprin's salary is greater. A financial statement that will apply when Mr. Halprin quits work is attached after page three of the regular financial statement and has a red check at the top.

I think you will be able to see the similarities between the children's foster family(with whom they have done so well) and this perspective adoptive family.

Please let me know if you have any questions.

*Jeannie Perullo*
Jeannie Perullo

cc: Cindy Wingate, Permenant Planning Supervisor, 128-9
Sara Ham, Supervisor, Denton, TX
Beverly Basden, Child Placement Worker, Denton, TX

AN EQUAL OPPORTUNITY EMPLOYER

5697



**Jimmie Ray Willingham Jr.**

Jimmy Ray Willingham Jr., 24, of 3818 W. University, died Friday in Gainesville.

Born on Oct. 25, 1958, he attended the Denton Independent School Distict and was employed at Bill Utter Ford. He was a member of the Gribble Springs Baptist Church.

Arrangements are pending with Schmitz-Floyd-Hamlett Funeral Home.

Survivors include his parents, Mrs. and Mrs. Jimmy Ray Willingham of Denton; a daughter, Karen Rene Willingham of Denton; two sisters, Kay Lynn Lynskey of Krum and Judy Ann Griffiths of Denton; and grandparents, Mr. and Mrs. Raymond Willingham of Denton and Mr. and Mrs. T.S. Smith of Denton.

## Denton man found dead in jail cell

**Staff report**

GAINESVILLE — A 24-year-old Denton man died Friday night while in custody in the Cooke County Jail.

Jimmy Ray Willingham, discovered by a jailer, was pronounced dead shortly after 8 a.m. Saturday by Cooke County Precinct 1 Peace Justice Dorothy Smith. The body was taken to Southwestern Institute of Forensic Sciences in Dallas for an autopsy, where a ruling of death by natural causes was made.

Cooke County Sheriff Dan Tiller said Willingham's "blood pressure had gone sky high and several blood vessels broke, causing him to have a (cerebral) hemorrhage."

He said Willingham, who had been incarcerated on burglary charges, was in a cell by himself.

Record - Chronicle
Denton, Texas

Sunday, May 8, 1983

Monday, May 9, 1983

5698



*Denton Record-Chronicle* 1·30·83

# Grand jury returns true bills

**Staff report**

A 16th District Court grand jury, Thursday issued these true bills:

— Frontics Garrett, 17, Antonio Wayne Mims, 17, and Jerry Jackson, 18, all of Denton, charged together with burglary of a building.

— Anna Whitfield Willingham, 24, of Denton, charged with theft over $200.

— James David McKelva, 25, of Denton, charged with forgery.

— Deborah Lynn Pratt, 27, of Denton, charged with tampering with a government record.

— Bobbie Nell Dowdy, 29, of Denton, charged with tampering with a government record.

— James Walter Frazer, 41, of Lewisville, charged with felony driving while intoxicated.

— Stephen Ray Moss, 29, of Little Elm, charged with felony DWI.

— Irma Galvis Olivo, 24, of Denton, charged with tampering

with a government record.

— William C. Emerson, 43, of Irving, charged with theft over $200 and unauthorized use of a vehicle.

— Bradley William Moorhaus, 21, of Lewisville, charged with possession of a controlled substance.

— Cory Eugene Smith, 17, of Lewisville, charged with burglary of a habitation.

— Lillian Buff Leslie, 26, charged with forgery.

— Britt I. Holmstrom of Garland, charged with theft of service over $200.

— Stephen Howard Crabtree, 25, of Mansfield, charged with burglary of a habitation.

— Morris Roberts, 25, of Sanger, charged with burglary of a habitation.

— Tommy Lee Harrison, 49, of Irving, charged with felony DWI.

— Jimmy Don Kelley, 28, charged with burglary of a habita-

5699

*Whitfield*



# Grand jury names 9 people in indictments charging felonies

*Denton Record-Chronicle /-/-93*

Staff report

A Denton County grand jury Thursday named nine people in 12 felony indictments. Named were:

— Johnny Ray Hill Jr., 19, of Highland Village, charged with a Dec. 25 rape.

— William Moreno Fenty, 25, and Beverly Kay Moore, 22, both of Denton, charged together with possession of a controlled substance.

— Galvin Jose Concepcion, 24, of Denton, charged in two indictments with delivery of a controlled substance and

possession of a controlled substance.

— William Stanley Hall, charged with indecency with a child.

— Morris Roberts, 25, of Sanger, charged with burglary of a habitation.

— Jimmy Ray Willingham, 26, of Denton, charged with burglary of a building.

— Verda Coates of Decatur, charged in three indictments with theft over $200.

— Billy Ray Pruitt, charged with theft over $200.



Page 8A   DENTON RECORD-CHRONICLE   Sunday, January 9, 1983

# Grand jury names 13 in indictmen

Staff report

A 16th district court grand jury Thursday named 13 people in indictments. Named in true bills were:

— Billy Earl Dacus, 37, charged with capital murder in the Sept. 22 death of Yvonne Gibson, 59, of Denton. Dacus was also charged with theft over $10,000 in connection with the theft of a 1982 Pontiac.

— Melvin Charles McGraw of Denton, charged with rape of a child.

— Charles Douglas Hollis, 29, of Denton, charged with aggravated assault in the New Year's Eve shooting of Boyce Ann Williams outside Flow Memorial Hospital.

— David Gordon Magu, 19, and Cory Eugene Smith, 17, both of Lewisville, charged together with burglary of a vehicle.

— Morris Roberts, 22, of Lewisville, charged with burglary of a habitation.

— Kevin Dewayne Lee of Carrollton, charged with burglary of a vehicle and forgery.

— Andres Hernandez Carreon, 26, of Richardson, charged with indecency with a child.

— Randal Lee Marty of The Colony, charged with burglary of a habitation.

— Jimmy Ray Willingham Jr., 24, of Denton, charged with burglary of a habitation.

— David Lee Horton and Michael Bishop, both 23 and of Bedford, charged together with burglary of a building.

— Frank Singdahlsen, charged with theft over $200.

— Andrew Williams Sneddon, 22, of The Colony, was named Thursday in a re-issued indictment charging forgery.

Named in recently unsealed indictments were:

— Antonio Robles of Denton, charged with robbery.

— Melvin Eugene Holder, 44, of Lewisville, charged with felony driving while intoxicated.

DEC 15 1982

December 9, 1982

Anna Whitfield
Rt. 5
Twin Lakes Mobile Home Park #179
Denton, Tx. 76201

Dear Anna,

I am sorry you were unable to come in for Wesley's testing. He did well in his po-
social interactions & the dressing area of his self-care skills. He has the po-
tential of doing well in other areas we tested with some help from the adults
in his life. I'd like to send you some activities that you can do with him
during some of your time together. We have center visits here at TWU (Rm. 710
of the Multi-purpose Classroom-Laboratory building) every Wednesday morning ex-
cept the last Wednesday of the month, from 9:30 - 11:00 a.m. Our next Center
Visit will be on Jan. 5, 1983. These times would be excellent opportunities
for you & Wesley to build your skills in working & playing together. There will
be several parents/children here during these center visits. They all say they
benefit from interacting with the other parents as well as the professionals on
our staff. And the children are the ultimate winners. They have fun with their
parents, with other children, & they experience new things that lead to the de-
velopment of more skills.

Please find enclosed information about the Child Success Project and a graph
showing how Wesley scored on his developmental test. The straight, horizontal
line shows how old he is now. The dots show where he scored.

If you have any questions, please call me at 387-6063. I'll be sending you the
activities I mentioned as soon as I have an opportunity to get them together.
I hope to see you on Jan. 5, '83 at 9:30 a.m.

Sincerely,

*Judy Spalding*

Judy Spalding, M.S.S.W.

JS/lj
Enclosures

cc Beverly Basden

5702

Page 1

WHITFIELD

REFERRAL--

Relative alleged that Wesley (9 months) and Randy, Jr. (4) generally abused and neglected. Inadequately fed; youngest has untreated sores, diapers unchanged. Father abusive to eldest who wets pants. Expects child to be still and silent. No current incident (see 2202).

INFORMATION OBTAINED--

(9-11-81: Home visit to residence)

No one home. Neighbor Shelly Fleming whom I knew stated that parents fight a lot. Had not noted problems with kids. Mother gets home by 3 o'clock.

Attempted afternoon visits on 9-17-81, 9-25-81. No one home.

(10-1-81: Visit to residence)

All four family members at home. Father in back bedroom and did not come out until I requested it. Dingy, cluttered Phoenix apartment. Grubbiness prevailed but no excessive filth. A sense of lack of parental order. Mother was nervous and passive. My sense of her mothering capacity was not negative.

The youngest child, Wesley, had no sores at present. The mother attributed those to a food allergy that had been corrected. The pediatrician was McGehee, but he had not seen the kids for a few months. Wesley exhibited that peculiar visual affliction known as "lazy eye," also uncommonly thick lips. Mother stated that she had consulted with pediatrician regarding Wesley's needs. She vaguely admitted to her problems with the father and to her dissatisfaction with his parenting but offered no specific information about concrete incidents of abuse. The mother had also utilized the WIC clinic for the kids. She allowed me to check the older boy. Also, the youngest was changed in my presence. No indications of severe discipline observed, nor unacceptable physical care.

The young father then joined us. He was defensive when I described the details of the referral but did not direct open anger toward me. His response might be described as passive. I observed no indication of healthy interaction between he and the children. Randy Jr. stationed himself in front of the TV. The father denied any mistreatment. We discussed the wetting problem. The boy's room did smell heavily of urine. I spoke of possible emotional sources of the affliction. The child also did not speak as plainly as might be expected.

I explained to the parents that I would need to check some collaterals regarding the general level of their child care. The mother used a Lisa as sitter who lived in an apartment directly opposite her own. Other collaterals noted were relatives (both parents had extended family in the county): Bob and Shirley Whitfield, the father's parents (383-2844); Joe Hammons, maternal uncle (566-8961); Fay Barnett, maternal aunt (Argyle, no phone).

My observation of the parents suggested a tension between them that the mother but not the father had more or less admitted. The interacting of parents with children also suggested that the mother was more involved with them than the father with whom I was surely not impressed. There were no current signs of abuse, yet the emotional climate was suspect. The physical environment was more deficient than it should have been, but marginally adequate.

5703

Page 2

WHITFIELD

(Call to Dr. McGehee)

He had noted no specific concerns on his chart but had not seen the kids since May.

(10-9-81: Call to Complainant)

I spoke with the father's cousin, Cindy Russell, and with his critical sister, Kim Whitfield. Kim had observed the father "whip" Randy Jr. several nights before. The mother had complained about the punishment, and the father "slammed her against the wall." As far as the relative knew, no marks had resulted; the punishment was not described as a beating. The father was much more physically abusive of the mother than he was of the children. He (who goes by Randy) had been reprimanded by his father for spanking Wesley at age 3 months.

I told the pair that I would need to know quickly when they had knowledge that physical mistreatment had left marks on the children.

(Tentative Evaluation)

At this point, I planned only to make a follow-up visit, principally to speak alone with the father regarding his general approach to parenting. I also wanted to broach the possibility of preschool for Randy Jr. with the mother.

(11-20-81: Visit to Residence)

I found the mother alone at the residence. Her husband was working only sporadically now (for a relative). Annie Whitfield worked 20 to 25 hours a week with her mother-in-law cleaning apartments. The economic situation was a source of stress to the mother. She was critical of her husband as provider and as father. I offered my impressions of Randy Jr. which revolved around a sense that the boy was in need of adult nurture. She agreed with this, saying she thought that professional day care for the boy would be a good idea. I would therefore seek approval to so arrange at Fred Moore.

Mrs. Whitfield said that Randy Jr. had stopped wetting at night. His room now only exhibited a faint odor. Of the father, she indicated that he was more physically abusive of her than of the children.

ASSESSMENT AND RECOMMENDATION--

At this point, I decided to open an ongoing case. An open case would be necessary to provide the preschool service for the eldest child. Further evaluation of the father's alleged mishandling of the boys, principally Randy Jr. could be made. The mother had stated that the father had on various occasions denied that the boys were his. No concrete evidence of physical "abuse" had yet been observed. Preschool would provide needed nurture for Randy Jr., while offering an arena for further assessment and systematic monitoring.

-------------

(12-2-81: Call from Annie Whitfield)

She and husband agreed on preschool. I would facilitate the paperwork. Increasing financial pressures. I referred her to emergency services. Pediatrician Dr. Jackson had referred her to Dr. Staggs, a Dallas eye specialist, for assessment

Page 3

WHITFIELD

on Wesley's visual needs. I referred her to Commission for the Blind for possible financial aid.

Arrangements for preschool were made with Fred Moore. The mother failed to follow through on enrolling the child. Although I had opened an ongoing case, mainly to be in a position to provide the preschool, I now left the matter in abeyance. Intentions to follow-up were not fulfilled; nor was the case closed.

(2-9-82: Referral on Whitfield family)

The complainant related information she had heard from Annie Whitfield's sister-in-law, Mary Hammons. The parents were alleged to be on drugs. Both were physically abusive of Randy Jr. The father's sister, LaVonne, was said to have beaten her two-year-old child to death three years ago.

(3-25-82: Call from Shirley Whitfield)

The paternal grandmother was concerned because the family of her son had been evicted from their subsidized housing at the Phoenix Apartments. Neither parent was working. They had been staying at the Holiday Lodge for the past two weeks. On the previous day she had observed Mr. Whitfield to order both of the boys to sit on the floor and not say a word. This had in particular prompted the call. The grandmother had seen bruises on the children previously but knew of no current ones. The diapers of the youngest were not promptly changed. Shirley Whitfield had given money to Randy and Annie frequently but to no avail. The family felt that such assistance ultimately went for drugs.

(Call from Cindy Russell, 387-7788)        HAD TE AD HER THAT RANDY JR

She reported that the aforementioned Kim (Randy's sister) had been whipped within the past couple of days and had stated that bruises were present.

(3-26-82: Visit to Holiday Lodge)

I found the four in the cheap motel room. The kids were not unacceptably dirty. There were no marks on Randy Jr. (who greeted me warmly and seemed to appreciate my attentions). Food was in short supply, although it did not appear that any-one was yet suffering in that area. I referred the father to the Food Room.

Randy Jr. did not appear afraid of his father. The child sought his attention and received it from the currently placid adult. Both parents were passive and nondefensive in a strangely nonchalent sense. I tried to probe this rather inappropriate air with critical comments about their irresponsibility. It had been absurd in the extreme to get evicted from the very inexpensive housing they had had. The parents casually agreed with my assessment. I discussed the allegation that the kids had been ordered to remain silent and still. The father admitted it.

The mother inquired about temporary foster care for the kids. I replied that that might be a possibility as a last resort. However, there were relatives available, and I expected them to assist in this area. I told the mother that I expected her to remain in contact with me.

5705

WHITFIELD                                              Page 4

(Call from Cindy Russell)

I told her that I had observed no evidence of abuse.  She assured me that
relatives would assist the family and would consult with Annie's concerned
brother and sister-in-law, the Hammonds.

(3-30-82:  Call from Annie Whitfield)

After a non-violent argument, she and Randy had separated.  Now they were back
together, and he had promised that he would go with her to a marriage counselor.
They "can't talk to each other."  Because of their economic plight, they had
left the children with Johnny and Mary Hammonds, 1100 Coit, 382-2764.  She and
Randy wanted to become better parents.  They had initiated contact with the MH
Clinic.

(Current Plan)

I verified that the children were residing with the relatives and advised the
mother that a medical authorization should be provided.  I would leave things
as they were and check back on the situation in a month or so in order to decide
if the case should be closed.

(5-24-82:  New Referral on Whitfields)

The paternal grandmother reported that a man with whom the mother was now living
had physically abused Randy Jr.  The matter was investigated by Worker Sandra
Haire (I was on vacation).  The grandmother now had possession of the elder child.
See the 2202 and Haire's narrative which follows.  Photos were made of faint
bruises.

5706

Page 5

WHITFIELD

5-25-82: Contact with Complainant: Mrs. Whitfield hadn't called by mid-morning so I called her and found her at home. I arranged a H/V for this afternoon.

5-25-82: H/V to Whitfield residence. I met with the complainant, saw and interviewed the child, and took pictures. Randy, age 4, is an active, physically healthy verbal child. He didn't mind showing the bruises or talking about the incident. He stated that Jimbo (mother's boyfriend) had spanked him with a paddle because he urinated on the floor. Mrs. Whitfield was told by Randy that he was spanked because he got up and got into the refrigerator during the night and was caught by Jimbo. He hadn't mentioned urinating on the floor previously. He also characterized Jimbo as "mean" and reported that he had to stand in the corner a lot.

Randy had very faint bruises on the left side of his lower back and on the upper rear thigh of his left leg. When I saw them they were quite faded, but information supplied indicates the incident occurred either Saturday or Sunday (5-22 and 5-23).

Mrs. Shirley Whitfield, the complainant, is the child's paternal grandmother. She advised that Sunday evening (5-23) the child's mother brought him to her 74 year old father, Mr. Van Patterson, and left him saying she "couldn't do anything with him". She didn't indicate when or if she would return for him.

Mr. Van Patterson found the bruises on the child later that evening. Mrs. Whitfield went and got Randy and brought him to their home as great grandfather was physically unable to care for him. She has had him since and has had no contact from his mother. In the past, the mother has left Randy with other relatives for weeks at a time and once she stated she was going to give him up permanently.

The child's parents separated about a month ago. The child's father, Bob R. Whitfield, left her because she was involved with Jimbo Willingham, and according to the complainant, the children and mother moved in with Jimbo that same day. The family has heard since that Jimbo had said, "Annie, get rid of him (Randy) or we're through". She told Mr. Van Patterson that they were leaving for Lubbock on Sunday. However, they are reportedly still in Denton living with friends at the Silver Dome Trailer Park, Lot # 9, in a turquoise trailer. Jimbo has an old Chevrolet short-bed pickup (beige) that they have seen there. The youngest child, Wesley - age 1½, is still with the mother and boyfriend as far as they know. Jimbo is out of prison on parole for armed robbery and two other offenses; he has been out about five months.

Mrs. Whitfield characterized the child's mother as lazy and with a history of passing the children around at times during her son's five year marriage. She didn't keep the boys clean and her house was always filthy. She knows of no abuse of the children by the mother in the past.

The child's father is aware of the bruises on him and they don't plan to let him return to the mother's care.

Mrs. Whitfield will contact us if she hears from the mother. She plans on keeping Randy with her at present and his father is agreeable to this plan.

I advised DHR would contact the mother and boyfriend regarding this incident.

5707

Page 6

WHITFIELD

(5-27-82:  Call from Mary Hammonds)

She had possession of Wesley again.  She wished me to pressure the parents into
stabilizing the situation for the children.  She had previously kept the two
kids for three or four weeks.  Neither of the boys were currently in the
possession of either parent.  She did not know where Annie was staying.

(6-9-82:  Visit to Silver Dome Mobile Home Park)

No one at the residence mentioned in the last referral.  Left note for Annie
Whitfield.  Manager of MHP later informed me that tenants had left.

(6-11-82:  Call from Annie Whitfield)

She was divorcing Randy.  She and kids with Hammonds.  She revealed that her
parental problems had largely revolved around addiction to drugs (cocaine and
crystal).  She had not taken anything for a month and was in contact with Jeannie
Mason of MH Clinic.  The mother told me what the current state of things was
with the boys.

Randy Jr. did not wet anymore, but in terms of general behavior he was "out of
control."  She had an appointment with a Dallas eye specialist, Dr. Berry, on
6-29-82.  She had taken the kids to the Health Department doctor's clinic on
the previous day.

The mother was now looking for work.  She said that coming off the drugs has
been very hard.  I told her that she would be eligible for Legal Services, and I
would make a referral call.

Annie was accepted as a client at Legal Services.

(6-14-82:  Call from Annie Whitfield)

She asked if I could arrange preschool for Randy Jr.  He wouldn't mind her
(something she had chronically complained about).  On the previous day, he had
set fire to a couch with matches.  He had also recently become very aggressive
toward Wesley.

(6-18-82)  After obtaining supervisory approval, Randy Jr. was enrolled in
Tomorrow's Generation (707 Carroll, 387-6414, Kaye Conaway, Director).  This
was a DHR funded protective placement anticipated to be for a maximum duration
of six months.

(Brief visit to Hammond Residence)

Annie was not there.  I spoke with Randy Jr. who was happily anticipating pre-
school.  He would begin on 6-21-82.  He is an extremely engaging child who is
literally starved for consistent, warm adult attention.  Without doubt, his
recent behavioral decline must be interpreted as emotional rebellion against
the instability and confusion of his family life.

(6-30-82:  Visit by Annie Whitfield and Wesley to office)

She apparently was seeking friendly counsel.  Wesley had been examined at Scottish
Rite Hospital.  The findings (recommendation to operate, etc.) would be forwarded
to Dr. Jackson.  I instructed her to call Commission for the Blind to inquire
about financial assistance.  A possible job at Denton State School was pending.

WHITFIELD

She did not anticipate her husband seeking custody of the kids. He had made no effort to see them since the last separation. This was something deserving future consideration in terms of formal visitation arrangements. Randy Jr., despite the actual nature of the relationship, was very attached to his father.

Annie also asked my advice regarding a perceived slight she had encountered at AA involving Jeannie Mason. There was no doubt that the young woman (of average intelligence at best) was very defensive. She likely was experiencing much guilt, along with the very real pressures of drug withdrawal. I tried to tactfully suggest that she might be somewhat over-sensitive and advised her to give the AA operation (a socially incestuous group indeed) the benefit of the doubt for the time being. She said that she would do so.

Initial reports from the preschool regarding Randy Jr. were very enthusiastic. He was a "delight," bright, and got along well with peers.


TRANSFER SUMMARY--

Case needs to be maintained as ongoing. Family Choice day care has been secured for four-year-old Randy Jr. at Tomorrow's Generation. Highly unstable marriage of six years appears to be likely ended as mother, who has joined AA because of drug addiction, seeks divorce via Legal Services and to generally stablize her life. Randy Jr. has likely suffered some developmental lag (speech) and surely emotional distress. Care of kids, including 20-month-old Wesley, has been marginal at best. However, despite allegations to the contrary, no specifically significant abuse or neglect has ever been verified. This is probably due to not being in the right place at the right time. The father in particular was very deficient.

In any event, the older boy needs the nurturing preschool environment. The mother seeks and may respond well to supportive counsel. She seems motivated and deserves some preventive assistance. The family is currently residing with the mother's brother and his wife. The mother is seeking employment and residence.

Dictated: 07-07-82/David Levisay, CPW III/ Typed: 07-17-82/1b

Approved for Transfer: _____

Assigned to: _____ Effective: _____

Supervisor Approval: _____

WHITFIELD

I went then to Denton Police Department and asked Juvenile Officer Mike Baker to accompany me back to the residence. He immediately agreed and we quickly departed. I had already showed him the photos, and he had agreed that techni- cally such marks should qualify as Injury to a Child. My purpose in actively involving the officer in my inquiry was to emphasize to Willingham (a police character suspected of drug traffic), and to the mother, that such incidents would not be tolerated.

(Second visit to residence)

The couple had arisen, Annie was busily bathing the boys. The residence was orderly and clean. "Jimbo," a tall, rangy young man, was on his best cooperative behavior. Baker allowed me to handle the inquiry, interjecting occasional, pertinent comments. The paramour interacted attentatively with Randy who emerged from the bathroom first. The little boy, who responds to adult males, appeared to be quite fond of "daddy."

Willingham denied that he ever physically disciplined Annie's kids. At first, he said that they were never whipped. That was later amended; Annie spanks them with her hand. We examined the fading bruises on Wesley (no facial marks) which were attributed to the child's demonstrable clumsiness.

A sullen, possibly hungover Annie joined us. The couple claimed that they had been up late the night before cleaning up the place. I discussed the significance of my morning impressions. I inquired about location of cleaning materials, and the like, emphasizing the potential of such an irresponsible approach to super- vision of Wesley (this child is to be seen by a neurologist; it is possible that he may be brain damaged--and at least possible that his physical problems are related to drug use by the mother when she was pregnant with Wesley).

Annie claimed that she was still abstaining from substances and would be reestab- lishing contact with Mason. She denied that she ever whipped the children, then admitted that she had spanked Wesley on Saturday (the day before the report) for getting into some drawers. This is supposed to have occurred at the residence of James Willingham, Sr. (3818 West University, across from a church at Ranch Estates, 382-6385) where the couple was staying at the time. They did not verbally identify the sitter as being involved in the report. The mother claimed that a belt was never used on the kids. A leather belt, labeled "Jimbo," lay on a nearby bookshelf. I offered a strong statement about the problems that could occur if there was a repetition. I informed the mother that an ongoing case would be maintained and another worker soon assigned. She did not dispute the need. The photos had never been specifically mentioned, as that would have directly identified the complainant. Instead, I had said that I knew beyond question that bruises undoubtedly the result of overly-severe discipline existed. The couple did not dispute the point. Baker had nicely complemented the points I emphasized. There were no grounds for criminal action. The mother never affirmed that she had produced the marks. I had drawn logical conclusions that she did not dispute.

(Current Impressions) Likely that Willingham was the perpetrator and the rather hapless, slow of thought mother feels it necessary to take the rap. "Jimbo" strikes me as of the well-skilled sociopathic type. I anticipate a real potential for further violence. The mother had backslid. Her immaturity and general lack of character are fairly obvious. The family will have to be closely watched. The couple indicated that Randy would be returned to preschool (which the child spoke of with enthusiasm). The assigned worker should insure that the medical

WHITFIELD

evaluation of Wesley continues (the pediatrician is Frank McGehee).


As of this moment, I plan collateral contacts with Willingham, Sr. and with the ex-"wife" of "Jimbo": Joann Sprayberry (566-6522). Their children are Karen (?) Willingham (2-22-77) and Tammy (?) Sprayberry (6-21-74).

(Evening calls to Willingham, Sr.)

No answer.

Dictated: 07-16-82/David Levisay, CPW III/   Typed:  07-17-82/lb

5712

WHITFIELD                                          Page

(7-19-82:  Evening Call to Willingham, Sr.)

He was not there.  I spoke with Mrs. Willingham who was very evasive.  Even
hedged on how long couple had recently stayed with them.  To her knowledge,
no whipping of a child had occurred at their residence.  Jimbo and Annie had been
there on the weekend in question, however,  Encouraged her to have her husband
contact me.

(Call to Joanne Sprayberry)

A fairly comprehensive conversation that revealed nothing alarming beyond what
was already known.  Jimbo had physically abused her (and drugs).  She did not
identify any tangible physical abuse of her kids, although he did a lot of
yelling.  Jimbo didn't see them very often and the kids were afraid of him.

Dictated:  07-20-82/David Levisay, CPW III/  Typed:  07-20-82/lb

*Case received for Transfer to ongoing services 7/26/82.*
*Reassigned to Sally Malut effective 7/28/82*
*Rita Blanchard*

*Reassigned to Beverly Basden effective 8/12/82*
*RJB*

WHITFIELD, Anna

When I returned to the office on August 16th following a week's vacation, this folder was in my mailbox. There was a not.    ation this case had been reassigned to me effective August 12, 1982.

8-18-82:  T/C to Tomorrow's Generation.  I was told that Randy had not been in attendance since the 1st week in July.  There would be room for him to continue in the program if he wishes.

Contact was also made with attorney Ed Hooker, West Texas Legal Aid. He indicated the most current address he had for his clients Capricorn Mobile Home Park.

This research was done because of the extended period of time since the last contact with this family.  At the time of the last H/V on July 15th, Anna and the two boys were living at Capricorn Mobile Home Park, No.5.

8-19-82:  H/V to Capricorn, No. 5.  No one was home at the time of my afternoon visit.  I again came by this trailer at 4:45 p.m.  At that time, no one was at home.

I visited with Manager Lucas in the Mobile Home Park and she told me that she was aware    the people in No. 5 were being asked to move.  Burl Bourland, 387-2279, is the owner of the trailer.  He indicated to the park manager that he was asking the family to move following an incident about two weeks ago when the police had "stormed" the place.  Mrs. Lucas told me that the family drove a white Mustang and probably would be home at anytime I saw the car parked there.

8-20-82:  I visited the trailer at 9:45 a.m. but found no one home.  The outside light was on but there was no noise from the inside and no car was present.  I left my card.

I received a message that at 12:30 on this date, Anna Whitfield had called stating I should return my call after 2:00 p.m. to 382-1482.

8-23-82:  T/C to 382-1482.  I was told by a recording that this number was not in service.  I called various combinations of this number, 387-1482; talked with a Mrs. Hunter and also 383-1482 — which is Millard Heath Company and was told that no Whitfield or Willingham worked there.

Later I attempted to contact Mr. Borland at his home residence.  I was given his work number of 382-1624 where I contacted him.  The trailer is rented by Jimmy Willingham, Jr.  Mr. Borland told me that 2 weeks ago Mr. Willingham had been picked up for possession of dope.  Based on that, he had told them to move.  During this visit he had seen a toddler sitting on the couch, but he had not seen an older boy.

8-26-82:  T/C to Dr. McGehee, 382-2521.  On June 29th, Scottish-Rite Hospital had made a referral of Wesley Whitfield to Dr. Steve Lender, a neurologist in Dallas.  Dr. McGehee did not know if an appointment had been made.  He did state that Scottish-Rite had offered to assist the family with an application for financial assistance.  Wesley had not been seen by Dr. McGehee within the last two months.

5714

WHITFIELD, Anna                                                    Page 2

I also attempted to contact Jeanie Mason at Mental Health but she was out of the office until Monday.

8-27-82:  H/V to Capricorn, No. 5.  On my arrival, I noticed there was a white Mustang parked in the drive with a paper dealer's tag on the license. Mrs. Whitfield invited me into the house and present in the room was Jim Bob Willingham.  Later in the visit, both Randy and Wesley joined us.  They had been in an adjoining bedroom with the door closed.  When the children appeared from the quiet room, they were both dressed neatly and appeared clean.  In general, the living-kitchen area of the trailer was orderly, and Anna periodically went to the oven to turn a piece of meat which she was cooking.

Anna is presently working for the State School on a rotating shift during the hours of 6:00 a.m. to 2:00 p.m.  After 6 months of employment, she will be eligible for medical insurance.  At that time, she will enroll the children so that any future medical expenses will be covered.

Anna indicated that the boys had been staying with a babysitter by the name of Doris; however, she was displeased with the care they were receiving and she intends to interview sitters over the weekend and find a replacement.  On this date, which was a Friday, Jim Bob had kept both boys.  He is employed by Bill Utter Ford as a mechanic; however, he obviously had not worked on Friday, since he was available to babysit.

Anna indicated that while she would like for Randy to be able to attend Tomorrow's Generation, their hours of operation did not coincide with her employment hours. She stated that she is no longer seeing Jeanie Mason at Mental Health; she affirmed that she is off all drugs and does not require Mrs. Mason's services.

Jim Bob asked for an explanation of my presence.  Anna explained to him that the Department had become involved because of a referral concerning bruises on the children.  He asked what right I had to come into their home and ask questions concerning his work and his parole.  He stated that he will be on parole for one more month and his probation will continue.  He was very agitated during this discussion and contributed very little to the rest of the conversation.  Anna, however, attempted to soothe his anger and to assure me that they intended to cooperate with me.

Wesley had been seen by a woman doctor in Dallas concerning his "droopy eye". According to Anna, the doctor intends to monitor this situation, perhaps performing surgery in approximately two years.  She also volunteered that the father of the boys had not seen them since they had separated approximately 3 months ago.

I explained my attempts to contact them at the phone number that she had left at the office.  She stated that that number had been disconnected and they had been given a new number, 566-5570.

When asked about their permanency at the present location, I was told that they did intend to move to a better location; however, at the present time, they had not located another house.  Anna agreed to keep me informed if they did change their residence.

DICTATED 9-7-82/Beverly Basden, CPW II            TYPED 9-14-82/js

WHITFIELD, Anna                                                    Page 3

9-16-82:  On this date we had a call from Dr. Johnson who was working in
the Health Department.  He had seen Wesley Whitfield on this date and ob-
served that he had bruises on his buttocks and thighs.  Dr. Johnson was
told that these bruises were the result of the child falling from a swing
while in the care of a sitter.  It was Dr. Johnson's opinion that the bruises
could not have been caused in such a manner.

The Kiwanis Club had referred the family to the Health Department because of
a cold which Wesley had.  Dr. Johnson explained to me that the child had
infection in both ears and he was checking him for other medical problems.
Wesley was referred to the laboratory to have tests run on his blood and
also for mononucleosis.  Dr. Johnson, based on the results of the test,
will determine whatever treatment is necessary.  However, he did indicate
the possibility that the child might have to enter the hospital if his
medical problems were severe.

On my request, Anna and Wesley accompanied me to my office.  On the way,
Anna stopped by a parked car and asked Jimbo and Randy to join us.  In
the office, the photograph which I filed on the left side of the folder
was taken.  Supervisor Rita Blanchard was present during the session.  It
was her observation that the injuries of a nature to constitute a removal
of the child.

Anna told the story that when she picked up Wesley on Monday, 9-13-82,
a sitter known only as Debbie told her that Wesley had fallen out of a
swing, mainly on his buttocks.  At about 6:00 p.m. that evening, the sitter
called to say that she was going out of town and it would be necessary for
the family to find another babysitter.

Anna said she was unsure about the exact location of the sitter, stating
that Jimbo always drove the car to the house.  Jimbo said he thought the
address was 2001 Hickory.  He stated the house was near Weldon's Western Wear.
I informed the parent figures that it would be necessary for them to furnish
me with the name, address, and phone number of the babysitter.

As stated earlier, Jimbo and Randy had waited in the car while his mother
had taken Wesley in to see the doctor.  When Jimbo came to my office, he
was very anxious to leave, stating that he had to go to work; however,
when asked to stay, he did remain.  During one portion of the interview,
I observed Jimbo pick Wesley up by one arm and lift him into his lap.  I
took this opportunity to advise him of the possible harm that could be
caused by this action.  The stepfather appeared to stiffen and become angry
and attempted to leave.  I followed up the observation by suggesting an
alternate method of lifting the child.

When I left the office to pick up the camera, Jimbo did leave.  Upon my re-
turn, Randy stated that Jimbo had left because he was afraid the police would
come.

Later in the afternoon, I had a conversation with Dr. Johnson.  He advised me
that the blood count done on Wesley had appeared fine.  He had prescribed
antibiotics for his ear infection with a two week re-check advised.  Dr. Johnson

5716

WHITFIELD, Anna                                                    Page 4

said his impression of the bruises was that they probably had been in-
flicted earlier in the week.  This did coincide with the time frame which
the mother had stated.  Other than that, the doctor had no possible ex-
planation for how the bruises might have been sustained.  The right area
on which the bruises were scattered, as well as the variety of shapes and
color, did not suggest any particular explanation for their origin.

9-17-82:  T/C to the Whitfield residence.  At approximately 3:00 p.m. Jimbo
answered the phone.  Anna stated that they had been unable to get any infor-
mation on the name or location of the babysitter.

She stated that Wesley had slept well on the previous night.  The prescrip-
tion that had been given to them was filled that morning.

Because of our concern about Wesley's care, I asked if it would be possible
for Wesley to attend Tomorrow's Generation with Randy, his brother.  I offered
that the Department would be willing to pay for this care for the same length
of time as we had negotiated for Randy.

I contact with Kay Conaway at Tomorrow's Generation.  She indicated that there
would be room for Wesley starting Tuesday, September 21st.

9-20-82:  T/C to Charly Smith, Probation Officer.  I learned that Jimbo Willing-
ham is known to them as Jimmy Ray Willingham, DOB: 10-25-58.  He is presently
on probation until June 1988 for robbery which was committed in 1978.  As
terms of the probation, he is to report to his officer once a month.  They
list his present location as Twin Lakes Mobile Home Park, #179.  This infor-
mation had previously been furnished to me by Anna at the time of the latest
referral.

Mr. Smith did indicate that he thought Jimbo was capable of abusing a child
because he is "a creep".  Also, he stated that/we found Jimbo was responsible
for the bruises, they would like to file criminal charges.

I placed a call to the residence of Anna Whitfield, but no one answered at
5:30 in the evening.

9-21-82:  T/C to Kay Conaway, Tomorrow's Generation.  Randy has not been in
school either 9-20 or 9-21.  Kay told Anna Whitfield on Friday, September 17th,
that Wesley could start the next week which would be September 27th.

At approximately 9:30, I contacted Anna at her home.  She stated that Jimbo
was home but he was going in later.  Anna was off on this date, and the next
day.  When questioned about how she could have this much time off, she stated
that the State School understands because of Wesley's sickness.

Wesley had not been taken to Tomorrow's Generation because they did not have
room for him until the end of the month.  Randy had missed Monday preschool
and Tuesday because of a cold.

I delivered an ultimatum that I was to be provided with the name and address
of the sitter who was responsible for the bruises to Wesley.  I told them
I must have this information by Thursday, September 23rd.  I suggested that

WHITFIELD, Anna

they drive by the location to which they had delivered Wesley and get the house number. If this was not possible, they could accompany me to that location. Anna's response to this deadline was "Why Thursday?"

9-22-82: T/C to Officer Baker, Denton Police Dept. Mr. Baker stated that he was aware of the previous bruises as he had accompanied Dave Levisay on the referral investigation. He stated that he would help if at all possible but that he felt he needed more evidence in order to file criminal charges of injury to a child.

9-24-82: T/C to the Whitfield residence. At 5:10 in the afternoon, Jimbo answered the phone. He stated that Anna was no longer living there; the reason being they had an argument they had about Anna's lying. On Wednesday Anna had asked Jimbo's sister to take her to a residence on Eagle Drive where she left the two boys with their father. Jimbo indicated that Anna did not stay there, but her location at the present time is unknown to him. Jimbo is, not at this time, working. He was not at all cooperating in furnishing me with additional information.

9-27-82: T/C to Kay Conaway, Tomorrow's Generation. Randy has not been in school for approximately 1½ weeks. Wesley never has attended. Kay indicated that the last time she saw Anna at the school, she appeared to have a black eye. On this morning, Anna had called to ask if Randy was attending school, stating that his father was supposed to bring him.

I attempted to contact the paternal grandmother, Shirley Whitfield, at 383-2844. I was informed that this number was not in service. There is no new number listed through directory assistance.

I was able to contact Anna Whitfield at the Twin Lakes Mobile Home, 566-5570. She stated that Randy is with his father and she has Wesley. She could only tell me that Bob Whitfield lives in a trailer in a location that was determined to be the Acorn Mobile Home Park. It is the second trailer on the right on the first street of the park. It has no sign. Anna's reason for taking Randy to his father was that he would not mind her.

During my conference with Supervisor Rita Blanchard on October 1st, this case was reviewed. Ms. Blanchard feels that if another incident of bruising on Wesley occurs, removal of the child from the home should be considered.

10-12-82: T/C to Anna Whitfield. According to the mother, Wesley is scheduled for a follow-up doctor visit on October 14th.

She stated that she had not seen Randy or his father since our last conversation and that the father had moved from Acorn Mobile Home Park. She stated that I might be able to locate the father by contacting his aunt, Cissy Taylor, who lives on Mulkey Street. I called the number listed in the phone book, 387-3064, and talked with the daughter of Cissy Taylor. She did not have any information on the whereabouts of her uncle, Bob Whitfield. Later I talked with Mr. Taylor who also did not have any information. He took my number and stated that his wife would return the call.

Page 6

WHITFIELD, Anna

10-13-82:  T/C to Mr. Taylor. He stated that it was his understanding that Bob Whitfield had moved from the trailer because no children were allowed at the trailer park. He agreed to give the phone number to his sister who he says sees Whitfield occasionally.

10-14-82:  T/C from Shirley Whitfield. The paternal grandmother stated that she had seen Randy on the previous day. According to her, he looks fine, having no bruises. I told her it was necessary for me to get in contact with her son to discuss the spot which is being held for Randy at Tomorrow's Generation. She stated that she didn't know where her son was living, but she thought perhaps it was in Aubrey. He was presently working as a painter in the Aubrey area.

I placed a phone call to Dr. Johnson's office and obtained the information that no appointment had been made for Wesley on this date.

I placed several calls to the residence of Anna Whitfield and got no answer.

10-15-82:  T/C to Anna Whitfield. She stated that she did not take Wesley to the doctor on the previous day because the car was down and the phone was out. She plans to take him to the Health Clinic or secure a doctor's appointment through the Kiwanis Club. I stressed that it was absolutely necessary for Wesley to have a check-up and that I would verify this with Dr. Johnson to see that she followed up on the appointment.

She has not seen Randy. According to her, he and the father worked out the custody issue at the time she placed Randy with him.

10-19-82:  H/V with Jimbo Willingham. When Student Debbie Guttman and I drove to the trailer, Jimbo and a young male companion were getting in his pickup. He stated that Anna and Wesley had left to be with her husband. He professed not to know the location or the date when she left. According to him, Bob Whitfield lives in a trailer in a park which fits the description of Acorn Mobile Home Park. Previous to that, he stated that the father had lived with his grandfather at the Chapparal Apartments on Eagle Drive.

Debbie and I then drove to the Acorn Mobile Home Park and I talked with Manager Bev Dillon. She stated that Bob Whitfield had moved into one of the trailers and within a few days he had moved out, leaving his clothes. She stated when he signed for the trailer, she saw a young male child in the car, but she could not describe him. She agreed to contact this office if Bob Whitfield returns for his belongings.

10-21-82:  T/C to Tomorrow's Generation. It was found that Randy had been in preschool all of this week, Monday through Thursday. I attempted to contact Anna at the trailer, but there was no answer.

Late in the afternoon, I paid a visit to Tomorrow's Generation and spoke with Randy Whitfield. He told me he was "living at the motel", but he does not see his mother or brother. A visual check of Randy indicated that he was in good condition.

WHITFIELD, Anna                                          Page 7

I learned from a worker named Betty that a man had brought Randy to
school on that morning and also picked him up the previous evening.

At about 5:20. Bob Whitfield came to the preschool to pick up his son.
He told me he was living at the Clayton House, No. 203, on University
Blvd. He is presently working for his father, but he would give me no
locating information for his employment. He verified that he plans to
continue to bring Randy to the preschool. If his plans change, he will
notify me of the change.

In regard to Wesley, he told me that he had seen Wesley and Anna for one
night about 3 weeks ago when he was living at the Acorn Mobile Home Park.
He expressed some concerns about Wesley because of the fact that Anna is
on drugs and she is presently living with "an ex-convict".

For the record, Bob Whitfield is about 5'9", 150 lbs, dark hair, which is
at a length over his ears. He impressed me with his gentle manner and soft-
spoken nature. While we talked, I observed him to very casually attend to
Randy by helping with his coat zipper and the typing of his hood.

He was concerned about the bruising on both of his children and the necessity
of us to stay in contact with the family.

10-22-82: T/C to Mary Hammond, 382-2764. After explaining the need to locate
Anna Whitfield, Mrs. Hammond expressed her concern for the safety of both the
children. She stated that on the date of the last referral on Wesley, Anna
had come by to see about the possibility of placing Wesley with her. Anna
stated that "welfare was going to come down on her". Later that afternoon,
Jimbo came by to say that Anna had lied about how Wesley had been bruised.
According to Jimbo, Wesley had fallen off the bed and later had fallen out
of the trailer previous to the time that the steps were positioned.

Ms. Hammond stated that she had no knowledge about the use of drugs in this
household but she took the position that they were in use.

Since she had no knowledge of Bob Whitfield's or Anna Whitfield's location,
she suggested that I contact        Edith Murray, Anna's sister, who works
in housekeeping at Flow. Her residence is in Argyle, but she does not have
a telephone.

10-22-82: T/C to Charlie Smith, Probation. After explaining my dilemma in
locating, he agreed to go to the trailer and see if Anna was, indeed, living
there.

Later he called to say that he had made a field visit at the trailer and had
seen a child with a droopy right eye. He stated that the child apparently
had a cold because he had a runny nose. There were no visible bruises on
this child. Jimbo stated that Anna was there, but Mr. Smith did not see her.

Mr. Smith stated that it was necessary for him to knock and wait a very long
time before he was admitted to the trailer.

I received a telephone call from Mary Hammond stating that she and her husband

Page 8

WHITFIELD, Anna

had been by the trailer and seen Jimbo, Anna and Wesley. She also stated it was necessary for them to wait a long time before their knock on the door was answered. Only when she demanded that Anna answer the door did they receive a response.

My visit was met with the same behavior. Jimbo told me that Anna was not there, denied access to her, threatened me for continuing to interfere, and finally told me I would have to have a search warrant to see Anna. When I told him that if it was necessary to come back I would not be alone, Anna made an appearance.

Wesley was retrieved from the bath tub and examined for bruises. There were none;however, he did have a runny nose and congestion.

I confronted both Anna and Jimbo with their avoidance behaviors, the recent bruising incident, and the lack of cooperation which I was experiencing in determining the responsible party for the injuries. During this time, Jimbo was unusually quiet and Anna glanced at him frequently while responding to my questions. As in almost resignation, Anna admitted to spanking and causing the bruising on Wesley. At this point, Jimbo became more vocal and supportive of the suggestions which I made. They were informed that I would continue to visit with them to assure that no more bruises were inflicted on Wesley. I encouraged Anna to stabilize the placement of Wesley and Randy by pursuing the divorce action which she had previously initiated. I also informed her that it would necessary for her to keep us informed about any moves which they plan.

She is to secure immediate medical treatment for Wesley and provide verification to this office.

It is my feeling that Anna is not responsible for the bruising and is covering up for Jimbo because of his involvement with probation.

DICTATED 10-25-82/Beverly Basden, CFW II        TYPED 10-28-82/js

10-28-82: Student Debbie Guttman who is assisting with this case called the Health Dept. to see if Wesley had an appointment for a check up. She was told there was a 9:00 a.m. appointment scheduled. Later in the afternoon, she checked to see if Wesley had made an appearance. She was informed that he had been in and given a booster DPT shot and oral polio. At that time, Dr. Jackson had discovered that he had bruises on his posterior legs around the knee area and over the lower back. It was Dr. Jackson's opinion that the bruises were approximately 5 to 7 days old. A prescription was given to Wesley for an antiobiotic for treatment of his middle ear infection. A follow-up appointment was scheduled for November 18th.

In a later phone conversation with Dr. Jackson, Debbie Guttman was told that the bruises were approximately 2 inches by 1 inch in a lateral fashion. It was his opinion that these had been administered by a belt and it seemed logical to him that this was "not a run-of-the-mill" whipping. Dr. Jackson was informed by the mother that the boyfriend had caused the bruising. She also indicated that she had left the boyfriend on the previous day. Dr. Jackson had given her a note written to me indicating he had seen the child on this date noting the bruising and the middle ear infection. This note was later retrieved from Anna Whitfield and is filed under the medical section.

5721

Dr. Jackson had also given a note to Anna to be given to Ms. Halsey at the Kiwanis Club in an attempt to get a follow-up for Wesley's droopy eyelid treatment. This note is also filed under the medical section.

Since Anna indicated to Dr. Jackson that she was no longer living with Jimbo Willingham, I attempted to locate her. Calls were placed to Tomorrow's Generation to determine if the father had brought in Randy Whitfield that morning. I placed a call to Anna's sister-in-law Mary Hammond, who told me that Jimbo had contacted her 19 year old son on the previous morning in an attempt to locate Anna. Jimbo stated that Anna and Wesley had left on that morning while he was at work.

I placed a telephone call to Charlie Smith of the Probation Office and after checking with his supervisor, Charlie Cole, he agreed to accompany Debbie Guttman and I to the trailer of Jimbo Willingham. Jimbo responded quickly to the knock on the door and was very cordial and cooperative with us. He stated that Anna had left after noon on Wednesday. He did indicate that she had been at the trailer shortly before our arrival. At that time, she was in the company of Chuck Cowan, a friend who Jimbo told us lived on Mockingbird. The house is just past Pargas, the 2nd house on the right over the railroad tracks. Jimbo never answered our question as to why Anna had stopped by the trailer for such a brief period of time.

He stated that Anna was responsible for the recent bruises on Wesley. He showed me a one inch leather belt which he stated she used to spank Wesley; however, he did not say that he personally witnessed the whipping. He denied that he had ever seen Anna abuse either one of the children. He did state that he had observed her spank Wesley on other occasions, but not leave bruises.

Jimbo thinks that Randy is still with his father and believes that the father is capable of caring for this child. Jimbo believes that the father ~~is abusive to Wesley because he does not believe he fathered Wesley.~~

In answer to a direct question from Mr. Smith, Jimbo stated that he was not involved in drugs nor was Anna. He said that he would not get messed up again, and for that reason, did not want Anna around any longer. He stated that children make him nervous. He presently has a physical condition for which he takes medication and it is aggravated when he becomes nervous. He is recuperating from a recent bout with hepatitis. He pointed out that he did not ever abuse his own children, photographs of whom he showed us, and we could verify this with his ex-wife; however, he cannot be around his children because of his nervous condition.

An interesting observation was that Jimbo was repairing a cut telephone wire when we arrived. He had cut this wire because in his opinion, Anna was abusing the phone. While we were there, he received three phone calls and one personal visit. He cut all of these conversations very short, instructing the callers to contact him later.

Debbie Guttman & I immediately went to the Clayton House Motel where we located Anna, Wesley, Bob and Randy. Photographs were taken of Wesley and Randy. These are filed in the folder. Randy had a few sores which appeared to be

scratched mosquitoe bites. However, Wesley had bruises on his lower buttocks and the backs of his legs from his knees to his buttocks. The bruises on the lower thigh were in a linear fashion and appeared to have been administered by the belt. They appeared to be approximately 2 to 4 days old.

Anna stated that she had been to the Health Clinic that morning and Dr. Jackson had prescribed a medication for Wesley she had not had filled. Although she indicated to him that she intended to come to the welfare office and bring the note which he had given her, she stated that it was lunch time and she elected to go elsewhere to feed Wesley. She confirmed that Jimbo had spanked Wesley on Tuesday evening at approximately 4:30 p.m. because he had not eaten his dinner. She described a leather belt approximately 1½ inches wide as being used for the spanking. She stated it was the type which had a name on the back. However, she confirmed that she was responsible for the bruises on Wesley of approximately 3 weeks ago. She stated that she had used a small leather belt when she bruised Wesley on that occasion.

Anna volunteered that she had messed up by lieing to me on previous occasions. She felt that I had every reason not to trust her. She stated she had to get "her head on straight". She, too, denied any drug usage.

I explained that because of the bruising incident, there was a possibility we would remove Wesley to a foster home. Anna did not protest this, but sobbed softly. While I left the room, to contact Supervisor Rita Blanchard and inform her of the situation, Debbie Guttman stayed with the family.

After informing Supervisor Blanchard of the situation, it was decided that Wesley would be removed under a Chapter 17. The foster homes of Peters and Aguilar and Viteychuk were considered for emergency placement.

I placed a phone call to Billie Viteychuk and informed her of Wesley and his needs. She was agreeable to accept this child for a period of up to 10 days or longer if necessary.

The family was advised of the decision to place Wesley in foster care. Anna cried softly while she gathered together his clothing and a few toys. She gave me the prescription form and the two notes which the doctor had given her. The father and mother were informed that there would be a hearing within 10 days to decide if Wesley would remain in foster care. They were also advised to consult with an attorney and to contact me if they decided to visit the child. I asked that Anna come by my office the following day so that I might gather some medical and background information on Wesley to provide to the foster mother. She told me that to her knowledge, Wesley did not have any allergies and likes almost all foods. At the time of the removal, Wesley was wearing training pants, but it was obvious to both Debbie Guttman and I that he should still be in diapers. When he was undressed for the photograph, he had messed in his pants. He was again wet by the time that we left the motel and got to our car.

WHITFIELD, Anna                                                    Page 11

most
The reaction of Randy, Jr. was the open and visible of the family members.
He questioned where his "baby brother" was going and what a foster home
was like. The conversation quickly turned to monsters, and Debbie Guttman
did an excellent job of assuring this 5 year old that his younger brother
would be entirely safe and well cared for.

While we were preparing to leave, there was very little discussion by the
father or mother. Debbie Guttman did observe the father to come to the
baby and pat him and talk to him softly. As we left, the mother was relatively
calm.

As we were taking the child to the Viteychuk foster home, we stopped and fed
him. At that time, he was given two baby aspirin because he was running fever
due to the immunization shot which he had had earlier in the day. The prescrip-
tion was also filled. These items, as well as his clothing and toys, were given
to the Viteychuk family. The information about his sleeping habits, food likes
and administration of the medicine were shared with the foster family.
Supervisor Blanchard checked with Welfare attorney Ramfield and
on October 29th, Petition to Intervene in the Divorce Suit of Bob and Anna
Whitfield was filed. On that afternoon, Judge Boyd signed the emergency
order, appointing John Lawhon as ad litem and setting a hearing for 10:00 a.m.
on November 5th. I talked by phone with Mr. Lawhon and later sent him a copy
of the order noting the hearing.

The placement form indicating Wesley was with the Viteychuk family was also
filled out on this date. A medical authorization was mailed to the foster
family.

On 11-1-82, I talked with sister-in-law Mary Hammond. She had heard that
Anna was back with Jimbo. This information had come from her son who had
been contacted by Jimbo on Sunday. Mrs. Hammond indicated that they were
interested in providing care for Wesley so I advised her of the hearing to
be held on November 5th and suggested that she consult with an attorney.

I placed a call to the Willingham residence at Twin Lakes and also the
Clayton House but got no answers at either place.

On this date, I also talked with Johnny Guest about the possibility of filing
charges on the bruising of this child. I informed him that Rita had talked
with Mike Baker on Friday, October 29th. He suggested that we attempt to
get the police to get statements from Anna.

On November 2nd during a phone conversation with Mike Baker, he said that
it was actually a matter of the Sheriff's Dept. since the trailer was located
in the county. He did advise he would help us if we could locate Anna and get
her in for a statement. Anna would be considered an accomplice to a felony if
Jimbo was responsible for the bruising. Officer Baker said that this would
certainly have a detrimental affect on Anna getting the child back if she had
knowledge of the injury and protected the abuser.

On this date, Wesley was examined by Dr. Jackson who did a set of X rays on
the long bones. Interpretation of the X rays on the following day revealed
no previous injuries.

WHITFIELD, Anna                                      Page 12

From the doctor's files I was given copies of a letter from Dr. Berry,
pediatric opthamologist, Dallas, and records from Flow Hospital covering
an admission on April 13, 1981.  Dr. Berry had examined Wesley on June 29th
and recommended that he be examined by a neurologist.  She also recommended
that his left eye be patched for one hour per day in hopes of improving the
vision in his drooping right eye.  A follow-up visit was suggested in 2 to 3
months.  No follow-up visit has been made.

At approximately 1:30 p.m. I placed a phone call to the residence of Jimbo
Willingham.  Jimbo stated that he was on the other line talking with Chuck
Cowan who requested that I call him at 382-8645.  I then spoke with Anna
who told me that Charles Beatty, who was visiting at the trailer, wanted to
be a character witness for her.  Much later into the conversation, Anna
asked, "Oh, how is Wesley?"  Jimbo later got on the phone and wanted to
know who Anna said bruised Wesley.  I informed him that this was not the
purpose of my phone call and that I needed information concerning Wesley
so that we might care for his needs.  I asked that Anna come to the office
and supply me with a history and give me a copy of Wesley's birth certificate
and immunization records.  She told me that she did not have transportation
because Jimbo refused to bring her.  She stated that the birth certificate
had been lost and I could get the immunization records from the Health Dept.

Jimbo then took the phone from Anna and told me if I had any other questions
I needed, I should contact his attorney, Mike Whitten.  I suggested that Mr.
Whitten contact me.

Chuck Cowan called the office and informed me that Jimbo had told him that
I said Chuck had reported Jimbo for bruising on three occasions.  Chuck Cowan
indicated that he was not afraid of Jimbo, but thought perhaps Anna was.
According to Mr. Cowan, Anna is mixed up but he does not feel she is responsible
for the bruises to Wesley.

Later Mr. Cowan again called and said that he had talked with Jimbo and Jimbo
again stated that I had told him Cowan had called to report three abusive
incidents by Jimbo.  Also I reportedly accused Jimbo of beating Annie.
Cowan stated that Annie was his only friend and to be sure to tell Annie when
I saw her in court on Friday that I was not responsible for the referral
to welfare.

11-3-82:  Copies of the immunization records and birth certificate were obtained.
Foster care application was completed and sent to Yvonne Moore with the appro-
priate attachments.

Previous babysitter Debbie Miller, 566-3907 (home) 566-2050, Ext. 3266 (work),
called to ask about Wesley.  She wanted to know if she could visit with Wesley
but she had baby sat with him mainly in the evenings on many occasions.  She
had never seen any bruises on Wesley and could offer nothing in regard to
the abuse or possible drug involvement of either Anna or Jimbo.  Her boyfriend,
Sunny, is a very distant friend of Anna and Jimbo.  She had not seen Anna or
Wesley in approximately 3 weeks.

I ruled out the possibility that this was the babysitter who was reportedly
keeping Wesley at the time     bruises/attributed to falling from a swing.
                              were

5725

WHITFIELD, Anna                                    Page 13

Ms. Miller indicated that she only babysat in the evening.

On 11-4-82, I reviewed this case with Assistant District Attorney Fred Marsh who will represent us at the hearing on the following day.

On this date, Bob Whitfield also came by the office and signed an affidavit for Relinquishment of Parental Rights on Wesley. I had contacted him on Tuesday, November 2nd, at Tomorrow's Generation, and he confirmed that Anna left almost immediately after we removed Wesley. He understood that she was again with Jimbo Willingham. He agreed at that time that he would be willing to sign the relinquishment if it was prepared. In response to my question of why Anna continued to return to Willingham, he stated, "he has the stuff". I asked if he meant he some physical attraction; he replied, "No". I asked if he meant that Jimbo possessed some material item or thing which Anna wanted and he replied, "Yes". However, he refused to be more specific than this.

The father indicated that he would be evicted from the Clayton House Motel on Thursday. He also stated that he did not know how much longer that he could continue to care for Randy. The number of jobs for painting is declining and he does not feel he will be employed much longer. He was informed that it would be necessary for Anna to agree to Randy being placed in foster care if that was his option.

The following day, I visited with Bob and Randy at the Clayton House Motel. Also present was his sister, Kim Whitfield. Kim indicated that it would only be necessary to look at Anna's arm to get evidence that she was on drugs.

Mr. Whitfield read the relinquishment and agreed to sign it in our office on the following morning. He stated that he could not give me any further information about Anna or Willingham because he feared for his life.

On November 5th, I checked with the Sheriff's Dept. who informed me that the papers had been served on Anna and the subpoena for Willingham served the previous evening.

Michael Whitten, who had been contacted to represent Anna, was tied up in a trial and it was agreed to continue the hearing until 10:30 a.m. off Friday, November 12th. The judge ordered the continuance of the Temporary Managing Conservatorship of Wesley with the TDHR. He also ordered that the subpoena on Jimmy Willingham would be in effect for the following Friday.

Jimmy Willingham had indicated that he planned to be out of town for 2 weeks, having already cleared this with the probation officer. I informed Anna that she could visit with Wesley if she contacted me and made that request. I again informed her that I was in need of background information on Wesley.

Billie Viteychuk, foster mother, was advised of the rescheduled hearing. Wesley continues to eat well, but it was apparent to Billie that his right eye is almost closed. It is difficult for her to believe that he has any vision at all from his right eye.

WHITFIELD, Anna                                                      Page 14

The original copy of the affidavit for relinquishment of parental rights was filed in the District Clerk's Office.

DICTATED 11-9-82/Beverly Basden, CPW II  *BB*      TIPED 11-10-82/js

11-8-82:  Kay Conaway of Tomorrow's Generation had informed Secretary Lynn Beasley that Randy Whitfield was coughing and wheezing when he was at pre-school.  Ms. Conaway did not have a phone number where she could locate the father.  She intends to tell the father when he picks the child up that he needs to see a doctor.

11-10-82:  Anna Whitfield had called and requested a visit with Wesley. Arrangements were made for Wesley to be in the office at 12:15 on this date and returned at 2:30 p.m.  Anna arrived at 12:00 for this visit and indicated that Jimbo would come later.  He did arrive about 12:30.  Anna and Jimbo were informed that they could visit until 2:30 when it would be necessary for Wesley to be returned to the foster home.  Jimbo explained that he had an appointment and would have to leave at 1:00; Anna said that she also had to leave at 1:00 p.m.  The length of this visit with Wesley was approximately 30 minutes.

When Wesley first saw his mother, he began to cry and stood still.  Anna called for him to come to her.  He did not move in her direction.  After much talking and coaxing, Anna did eventually walk to Wesley, pick him up and carry him into the playroom.

On this date, Anna filled out the medical history form which is filed in the Medical Section.  It should be noted that the maternal father and one brother have epilepsy.  The same brother has a "lazy right eye" which Anna described as similar to the condition that Wesley has.

11-11-82:  Kay Conaway informed Secretary Beasley that Randy had been absent from daycare on November 9, 10, and 11.

11-12-82:  T/C from Chuck Cowan.  He asked about the outcome of the court hearing. Since this call was prior to the hearing, I was unable to give him any information. He did state that Jimbo thinks that there is "something going on between me and Anna".  For this reason, Mr. Cowan is not allowed to talk with Anna and find out any information directly from her.

On this date, Attorney Mike Whitten was sick and the judge ordered that the pre-vious order be continued until November 19th at 9:30 a.m.

11-16-82:  T/C to Fred Marsh.  Beverly Fisher has been assigned to represent us at the hearing on November 19th.  Fred Marsh indicated that the order which had been prepared following the last hearing met with his approval and he would see that it was signed by the Judge.

Supervisor Rita Blanchard contacted Attorney Mike Whitten to ascertain if he, indeed, would represent Anna Whitfield.  He had a meeting scheduled with Ms. Whitfield and planned to be in attendance at the November 19th hearing.

I talked with Kay Conaway at Tomorrow's Generation and determined that Randy had been absent since November 8th.  On that day, she had recommended to

WHITFIELD, Anna                                                    Page 15

the father that Randy be taken to a doctor for his cough.  Since she did not
have locating information for Mr. Whitfield, she at that time obtained the
number of Bob Whitfield at 566-0332.  Also Mr. Whitfield informed her that he
was painting the house of Charlie Betvel, which she assumed to be in Denton.

I placed a call to the paternal grandmother at the 566-0332 number.  She in-
formed me that Randy and her son, Bob, are presently living with them at their
residence on Highway 1830.  They live on the east side of the highway down from
the EZ Chek at the intersection of Highway 1830 and Highway 377.  The house is
white, trimmed in yellow, and has a yellow mailbox.  There is no house number.

Mrs. Whitfield explained that Randy had been removed from the daycare center
because Anna, his mother, had called him at the daycare and told him that she
would get him in about two weeks.  Since the grandparents and father were con-
cerned that Randy might be taken without their knowledge, they chose to place
him with a private babysitter.  Randy is staying with the mother of a sister-
in-law by the name of Deborah.  The house is located on Bernard which is
accessible off of Ft. Worth Drive by turning right on Acme and right on Bernard.
The house is described as being the first small gray house on Bernard off Acme.

Mrs. Whitfield expressed extreme concern for Randy and indicated that she will
monitor the situation to see that he is well cared for.  She agreed to notify
this office if there were any changes in the sitter or housing arrangements for
Randy.

11-17-82:  Beverly Fisher and I met in the D.A.'s office to review the informa-
tion concerning the hearing on November 19th.

This case was staffed at PPT.  If the Department maintains temporary managing
conservatorship, the plan is to continue placement of Wesley with the Viteychuk
family.  It is recommended that he be evaluated by the Child Success Project,
hoping to include he and his mother in weekly sessions.

A call was placed to Kay Conaway at Tomorrow's Generation and the daycare arrange-
ments for Randy were cancelled.

Anna Whitfield called and requested a visit and arrangements were made for one
on the following day from 9:00 until 11:00 a.m.

11-18-82:  Visit by Anna Whitfield with Wesley.  Also present at this visit were
Anna's sister, Fay Barnett and her son, Don.  They had arrived at about the same
time that I got to the office with Wesley.  Anna did not arrive, however, until
approximately 9:40 because she had trouble getting the truck started.  She indi-
cated that it was necessary for her to catch a ride into town.  At this time I
asked her to bring any clothes for Wesley since he has outgrown the jacket which
he is wearing now.  Anna stated that he had a jacket which she would bring.

Student Debbie Guttman and Anna took Wesley to the health clinic in the basement
of the Courthouse on the Square for a follow-up visit regarding his ear infection.
At this time he was given a prescription for Dimetapp.  Also Debbie observed
Wesley to have two temper tantrums while they were in the clinic.

11-19-82:  Hearing in Judge Boyd's courtroom.  Anna testified that she had been
responsible for bruises on Wesley on three occasions.  She stated that Jimmy

WHITFIELD, Anna                                                    Page 16

Willingham had not abused her or Wesley.  Temporary Orders were given naming
the Department as temporary managing conservator, supervised visitations by
the mother, and counseling for the mother.

Arrangements were made with Ms. Spalding of the Child Success Project for Anna
and Wesley to be evaluated in the Protective Services Office at 9:00 a.m. on
December 3rd.

11-22-82:  T/O to Billie Viteyohuk.  The results of the hearing were explained
to the foster mother and the arrangements with Child Success.

Billie intends to contact Anita Atkins to see if she can get some money for
a clothing allowance for Wesley as he needs pajamas and possibly shoes.

11-24-82:  T/O from Anna Whitfield.  Since she requested visitation, arrangements
were made for Monday, November 29th at 10:15 until 11:45 a.m.  At this time
I advised her of the appointment with Child Success for Friday, December 3rd.

I attempted to contact Jeanie Mason of MHMR to make arrangements for an appoint-
ment.  She was out of the office until November 29th.

11-29-82:  Visit with Anna and Wesley.  Because of a mix-up in arrangements con-
cerning the transportation of Wesley to the office, this visit lasted approxi-
mately 30 minutes.  Anna was very understanding about the confusion.  It was
necessary for her to leave at 11:00 a.m. because of a job interview.

Wesley was extremely cranky during this visit, possibly due to a cold.

11-30-82:  T/O with Billie Viteyohuk.  While Wesley does have a cold, Billie
does not see him as being fussy.  If he does not improve, she will make a
doctor's appointment to see if he has an ear infection.

I will pick up Wesley on Friday morning at 8:30 in anticipation of the 9:00 a.m.
Child Success appointment.  An appointment will be made with the doctor at that
time if deemed necessary.

12-1-82:  T/O with Anna Whitfield.  The purpose of the call was to confirm the
appointment for Friday with Child Success.  Anna stated that she had not, at the
present time, located a job.

DICTATED 12-2-82/Beverly Baaden, CPW II                TYPED 12-7-82/js

5729

**Whitfield**
Case Name

## CASE ACTIVITY LOG

| 196_ DATE | WORKER | METHOD-CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 12-3 | BS | HV | Vitachek Billie | Dr. appt 12-1 for cold & drainage. Prescription): Entry |
| " | " | OV | Annie, Vitachek | Whitley evaluated by Child Success. Anna has 12-13 appt. MNMR |
| 12-6 | " | T from | Jeanne Hammond | not OK w. coming for Randy Lee. If. was in bad health. Offered visit with Randy Lee but he is in secure environment. No appeal alone. |
| " | " | T from | Mildred Hammond | Fc placed Randy Lee with GF. No actual alleged. Stated GF never capable of getting good care |
| 12-6 | " | T from | Anna | cancelled visit 12-6. Rescheduled for Th. 9-10-30. |
| " | " | T to | Billie Vitachek | Whitley had diarrhea & fever. Dr appt 12-6. |
| " | " | T to | Allene (Vitachek) | no unsupervised visits at Christmas. |
| 12-7 | " | T to | Mrs. Sterling Child Success | appt 12-9 at 11:30 |
| " | " | T to | Shirley Whitfield | Foster Mother, Randy Lee & Fos. living on St. Worth. Dr. Randy Lee with sitting during day |
| 12-9 | " | T to | Billie V. | Temp 100.2, no diarrhea. Visit with Mo on Th. |
| 12-8 | " | T to | Child Success | confirmed appt. |
| 12-9 | " | M | Anna | Anna not present. Whitley eligible for program |
| 3-15 | " | T to | Anna | MNMR appt 12-13 & 12-20. Visits w/ Whitley for 12-16 & 12-23. Parents divorced |
| " | " | " | Billie | confirmed visits |
| " | " | T from | Anna | changed appt time for 12-20 |
| " | " | T to | Randy Fa. (at parents) | not working & living with grmo. Offered Protective Day Care for Randy |
| 12-30 | " | T to | " | phone disconnected |
| " | " | T to | Anna | No answer. left card to T.C. |
| " | " | NV | " | left no message. |
| 12-31 | " | T from | " | Whitley visited with Mo., aunts, cousins. Lasted approximately 1½ hrs. Anna |
| 12-30 | " | OV | " | left early for MNMR appt. |
| | | | | * (over) |

T to—Telephone call to    HV—Home visit
T from—Telephone call from    OV—Office visit

5730

Case Name

| DATE | WORKER | METHOD-CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 2-22 | DG | TC | Bessie V | set up Dr. appt for recheck on 12-23. |
| " | " | " | Tjrom | Dr. appt 12-27. |
| 2-23 | " | " | (name) | cancelled visit |

WHITFIELD, Anna

12-03-82: I picked up Wesley from Billie Viteychuk's home on this morning.
Billie stated that Wesley had been to the doctor of December 1st for a cold
and subsequent drainage. The doctor had given him a prescription of Entex
liquid for the congestion.

Wesley and Anna were then interviewed by Judy Spalding, the social worker
and Pat Deligans, the physical therapist, of Child Success. Anna signed
a Release of Information allowing us to have the benefit of the findings of
Child Success. A copy of this release is filed under the Miscellenaous section
of Wesley's folder.

In discussing the needed medical appointments for Wesley, Anna indicated that
she would be able to go for a morning appointment to the eye doctor in Dallas.
She had no preference about a neurological appointment. She did call from the
office and make an appointment for December 13th at 2:00 p.m. with Jeanie Mason
with MHMR.

Anna requested visitation with Wesley on Christmas Day from 10:00 a.m. to 6:00 p.m.
She and Jimbo plan to be at the home of his father's, Jimmy Willingham, Sr.,
Ranch Estates, for this period of time. Her second choice would be for the same
hours on Christmas Eve. I explained it would be necessary for me to get approval
from my Supervisor for this unsupervised visit. I explained to her that she
should not get her hopes up because we had not even begun even short periods of
unsupervised visits and this request was perhaps premature.

I told her of the several calls I had had from Chuck Cowan regarding Wesley.
She explained that he was a friend of hers and Randy whom she had known about
a year. She was unable to explain his continued interest in Wesley's welfare.
To the direct question, she denied he was the father of Wesley.

12-06-82: T/C from John J. Hammonds (Joe) 1309 Mingo, 566-8691:

Mr. Hammonds identified himself as the father of Anna Whitfield. Presently
Mr. Hammonds was caring for Randy, Jr., having been contacted by the father
to provide care for the child. Also present in this home is his son, Joe David,
and his wife, Mildred Ann. Mr. Hammonds said that he desired a more stable
environment for Randy, Jr. than his present situation of being shifted to
one adult caretaker to another. He stated that he was 63 years old and occa-
sionally passed out due to a brain concussion he had had in the past.

He had no information concerning neglect or abuse of Randy, Jr. He was only
concerned about the manner in which he was moved from home to home.

Later in the day, I received a call from Mildred Hammonds, daughter-in-law of
Joe Hammonds. She stated that Randy did not have any bruises, but did have
a cold. It was her feeling that they could not provide adequate care for
this child, because she and her husband had a handicapped child themselves.

According to her, her husband had been called on Friday night by Randy, Sr.
and told that Joe David could have and adopt Randy, Jr. She stated on the
following night, her husband came home drunk and she had left the residence.
Because of these circumstances, she did not feel their home was an appropriate
and safe environment for Randy, Jr.

WHITFIELD,Anna

During a conversation with Billie Viteychuk, she informed me that on Sunday
Wesley had 103° temperature, 102° on Monday, and diarrhea.
He had been seen by Dr. Cuchia, Medical and Surgical, on December 6th.  He
was diagnosed as having an ear infection and a possible virus.

Anna Whitfield contacted me and cancelled the visitation for the next day, stating
that she had a cold and did not wish to expose Wesley.  Tentative arrangements
were made for the visit on the following Thursday from 9:00 - 10:30 a.m.

Program Director Allene Margowski stated that no unsupervised visit could be
scheduled during the Christmas holidays.  A supervised visit could be planned
so that the family could visit and deliver Christmas gifts prior to the holi-
days.

12-07-82:  T/C from Judy Spalding, Child Success:

There was an opening for Thursday at 11:30 to do a one-hour assessment of
Wesnley.  She requested that Anna be present.  This time was confirmed with
Judy on the following day.

I talked with paternal grandmother, Shirley Whitfield, who informed me that
Randy, Jr. was with his father living in a little house on Ft. Worth Drive.
She did not know the exact address, but did state that they had no phone.
She claimed that everything was O.K. with both Randy, Sr. and Jr.  Supposedly
Randy, Jr. is with a babysitter other than the one off of Acme Drive.

12-08-82:  T/C with Billie Viteychuk:

Wesley has a low-grade temperature, but no diarrhea; because of the evaluation
to be held on the following date, Wesley will not be given any medication that
morning.  This will allow him to be naturally alert for the testing situation.

12-09-82:  Evaluation of Wesley by Child Success personnel:

Wesley will be eligble for the Child Success Program based on the evaluation.
The graph. showing his development is filed under the Miscellaneous section
of the folder.  Also a copy of a letter addressed to Anna Whitfield.  The iden-
tified areas of latency are cognition, language and self-care.  It is recom-
mended that he have assessments in hearing, speech and language and neurologi-
cal.  The first parent and child session will be on January 5th between 9:30
and 11:00 a.m.  We informed the staff that arrangements could be made for the
mother and child to participate in this program.

Contact was never made with Anna Whitfield prior to this assessment and she
was not involved on this date.

12-15-82:  T/C to Anna Whitfield:

Anna explained to me that she has had a cold and flu; in addition, her phone
has been out of order since last week.  She saw Jeanie Mason, MHMR, for about
35 minutes of December 13th.  She has a scheduled appointment for 12-20-82 at
2:00 p.m. for a regular session.

WHITFIELD, Anna

I informed Anna of Wesley's assessment results. She had received a letter
from Child Success and was aware of the results. She indicated that she
would be available to attend the Wednesday sessions with Wesley at Child
Success.

I informed her that it would not be possible to have an unsupervised visit
with Wesley prior to Christmas. Arrangements were made for her to visit with
Wesley on 12-20-82 from 12:30 until 2:00 p.m. and on December 23 from 10:00
until 12:00 noon.

Anna told me it was her understanding that Randy and his father were living
at the "Y" Motel. She had obtained this information from her sister-in-law,
Mildred. She also stated that her father was an alcoholic and was in no
condition to provide care for Randy, Jr.

I explained to her that the issue of custody of Randy could be settled by
pursuing her divorce. She explained that her attorney was handling it and
she was to call him in 2 or 3 days. Anna stated that Randy, Sr. had expressed
a desire for her to sign relinquishment on Randy, Jr. She has no intention
of accommodating him in this matter.

12-20-82: Supervised visit of Wesley and Anna Whitfield:

Also in attendance for this pre-Christmas party were two of Anna's sisters,
two young girls, and two teen-age boys. The visit lasted from approximately
12:30 until 2:00 p.m. During this time, the entire group played with Wesley
and the numerous toys which they brought for him.

When it was time for Anna to leave for her appointment at MHMR, Wesley cried
very briefly and was easily distracted to one of his new toys.

12-22-82:  T/C to Billie Viteychuk:

Since Wesley was due a recheck for his recent ear infection, we attempted to
set up a doctor's appointment to coordinate with the planned office visit bet-
ween Anna and Wesley on Thursday, 12-23-82; however, the doctor was only seeing
ill patients at this time and it was necessary to schedule a visit for Monday,
12-27-82, at 10: 30 a.m. at Medical/Surgical.

12-23-82:  T/C from Anna:

She stated that, "something has come up and she could not visit with Wesley
on this morning." I asked if she wished to reschedule for later in the after-
noon and she replied, "I don't know if I will be back." I suggested that she
call me when she wished to set up another visit.

12-28-82:  I received a copy of the PPT notes covering the staffing on 11-17-82
of this case. The general case plans indicate that Wesley will be referred to
the Child Study Center for a work-up. I questioned whether this should be the
Child Success Program in Denton; however, in checking Beverly Deweber discovered
that her notes had been destroyed so we were unable to arrive at a consensus of
the case plan.

5734

CASE ACTIVITY LOG

Case Name: Whitfield

| DATE | WORKER CONTACT METHOD | PERSON CONTACTED | INFORMATION |
|---|---|---|---|
| 283 | | | |
| 7-10 | OFS I from | Billie | work came 14 document Tucson 8-11pm. Contact our Tucson reporter 382-65 Divorce settled; phone due to late offer. Visit & Child Subcommit appt 1-11 |
| " | T to | Billie | arrangement for visit |
| " | T to | Emith | Adult Probation dept Jimb in jail - location for picking Traj records - |
| " | T to | Smith | probation |
| " | T from | Chuck | inquired about Jimba & Walai |
| " | T from | Connie | |
| " | DV | Mary | background on 1-10 remind Jim of family pres. Situation in law prac. family |
| " | | Nanette | Randy started on right track here for Jr. In touch. New Fed Cud w/ Jim Ellie Do At Lavon w/ father's (father, mom) |
| " | T to | Judy Ellie | (Data Ellie) w/ ... P081 ... 77 drive Jr I-80 of ranch |
| " | | Wallace | English P0 w/ ... daughter's name: Pikka ranch Tucson |
| 7-11 | | Spallaccro | Reassigned - T Reassessed Santos will contact Dr. Keeler, Tucson |
| 7-9 | T from | Child Subcommit | need psychological appt. |
| 7-8 | | Williingham | Williingham indicated for neglect & habitation |
| 7-11 | Thom | Child Subcommit | neglect & habitation |
| 7-? | nurse pres Recall Chronicle | Dr. Berry | appt 3-1 for eval; need more each report |
| 7-1 | T to | Dana | appt 3-1 for eval; need more each report |
| 7-7 | Wesley & Sandra | (Dana) arranged eval 30 min. Chronicle appt with daughter accepted |
| 7-12 | Tri-child Subcommit | (Dana) appt for pres. to let school... persons accepted |
| " | NV | Billie | Wesley vacation / shut up; dummy. Discipline by sitting in chair in... |
| " | | | no eval; late of transportation. Now living w/ grandparents. Jimb in jail. |
| 7-3 | T from | Dana | She is not allowed in school |
| " | nurse pres | Williingham | Williingham charged with burglary of building |
| 7-8 | Recall Chronicle | | |
| 7-? | Dr. Keeler, | appt 1-24 to check for various abnormalities |
| 7-? | T to | James | Dana arranged evaluation of abnormalities |
| 7-17 | T to | Nurse Mike | Dana signed release of info. According with various sources in drug abuse. |
| " | | NA | |
| 7-19 | Wesley went to program; Dana didn't show up. Grandma could not be reached | | |
| 7-19 | M | Sue/soc | (phone 2nd) surprise disconnected |
| 7-20 | T from | Chris | site on/personal day. Saw Dr. on M&S today, obtained medication |
| 7-21 | T to | Mary & Mike | for "Jr" en "pres"; Experiencing medication, will dose |
| " | | Billie | left a message |
| 35 | T to | v | set up transportation for Dr. appt 1-24 ---------- |

Key: T = Telephone call to   O = ?   HV = Home visit   Office visit

Case Name _(Whitfield)_____

| DATE | WORKER | METHOD-CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| Jan 23 '85 | BK | T to | Anna NA | picked up at 3818 Glenmont for Whitley appt. w/ Dr. Rube |
| " | " | " | " | memo official report of Wesley. No entrance allowed of same.— |
| 24 | " | M | Dr. Rube | Dr. Wesley made appt. to Dr. Coynes, MHMR, prescribed 5mg Xanax 3X daily; |
| 24 | " | OV | Anna | — |
| 25 | " | T to | Anna mom | left # |
| 25 | " | I to | MHMR | No appts are given in pm. Will contact CPS. 4 going to Child Success |
| 4 | " | T here | Anna Ellis | no word from Mo. to go to Child Success |
| Feb 26 | " | T here | Anna | not coming |
| " | " | T to | mom | — |
| " | " | T to | Dr. Barton | — |
| 4 | " | T to | Sheriff | no record of being in jail |
| 4 | " | T to | MHMR | left # (in Wichita Falls) |
| 27 | " | T here | Sarah lines | wants to do TMC & Wesley |
| 30 | " | 0 | relative place | Anna Ellis billed a charge with theft over $200... |
| 30 | " | | | |
| 31 | " | T to | Anna | NA |
| Jan '85 | " | T to | Sally Wellham | has not seen Anna in 3 days |
| " | " | " | V. | scheduled plans for Dr. appt on 2-1 |
| 4 | " | " | mom | left # |
| 4 | " | " | MHMR | Dr. confirmed appt. |
| 4 | " | " | Sarah | — |
| 4 | " | " | Dr. | confirmed — wants her arrest |

WHITFIELD, Anna

12-30-82:  T/C to Randy, Sr.:

I was fortunate today on contacting the home of Bob Whitfield to catch
Randy there.  He indicated that he is not presently working and is living
with friends whom he would not identify.  I approached him about the need
of protective day care for Randy Lee since he obviously is experiencing
some financial problems.  He stated that it would indeed be helpful and
he would consider same and come by the office if he wished to pursue this
plan.

He did indicate that he had not seen Anna, nor did he wish to.

On this same date, I attempted to contact Anna and was informed by a record-
ing that the phone had been disconnected.

Later I went to the mobile home park and noted that the outside light was on
and all the curtains were closed.  There was nothing visible in the yard,
nor was there a truck parked there.  I did leave a card asking that she
contact me on the following day.

I suspected from the appearance of the trailer that possibly they had vacated
same.

12-31-82:  I received a message had attempted to call me.  She left no other
message nor a return phone number.  I was out of the office on this afternoon,
and did not return to the office following my vacation until January 10th.

## SUMMARY OF CASE MOVEMENT FOR JANUARY, 1983:

Anna moved in with the parents of Jimbo Willingham at 3818 Unversity, 382-6385.
She also began to work the 3-11 p.m. shift at the Beaumont Nursing Home on
Carroll Blvd.  She indicated that she was continuing with weekly sessions at
Mental Health, but this fact was never confirmed with Mrs. Mason.  Anna did,
however, see Dr. Clynch, who prescribed 5 mgs. of Xanax 3 times daily because
of her "nerves".  She indicated that she was having severe headaches and her
hair was falling out.  Her nervousness may have been related to the fact that
Jimbo was indicted for robbery of a habitation and robbery of a building.
Also Anna was charged in what was to be a sealed indictment (however, it was
not) with theft over $200.00.

Wesley was evaluated and accepted at the Child Success Project.  He attended
sessions with his mother on January 21th.  Arrangements were made for the
following two Wednesdays for Wesley to attend, but his mother did not show up.
The management plan which had been prepared for Wesley was shared with the
foster mother, and she continued to work with him in the areas where he was
experiencing a developmental delay.

Wesley was examined by Dr. Marjorie Keele of the Institute for Mental and
Physical Development, TWU, to determine if he had neurobifromatosis.  She
indicated she found no external evidence of this problem.  A letter docu-
meting this is filed in the Medical Section.  She recommended the planned
surgery to Wesley's right eye should be pursued.

5737

Case Name: _____

| DATE | WORKER | METHOD- CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 3-8 | BB | T to | Billie V | Wesley has ear infection. Postpone surgery 3-23. Took to Dr. already & got antibiotics |
| " | " | " | Anna | left message re above |
| 3-21 | BB | " | Billie V | Wesley fine. Appt CMC 3-29; surgery 3-30 |
| 3-22 | " | " | Anna | gave info re surgery. Rarely called relative) of Wesley in E. Texas |
| 3-28 | " | " | Billie V | will go to CMC with Wesley. Jumbo in Cook County Jail. |
| 3-29 | " | " | Billie V | surgery 11:15, 3-30 |
| 3-30 | " | " | Anna D. Berry CMC | supervising a op (minist?) |
| 3-31 | " | " | Thom Anna Randy Lee (in Denton) | Will come to CPS to discuss placement |
| " | " | " | Anna | cancelled. Will come 4-1. |

WHITFIELD, Anna

An appointment was set up with Dr. Berry who had initially seen Wesley in June of last year to pursue this surgery.

Contact was made with various relatives on the mother's side. Sister-in-law Mary Hammonds indicated that she had been contacted by Randy, father of Randy Lee, who stated to her he was willing to give this child up. Mrs. Hammonds indicated that Anna's father was an alcoholic and had been particularly abusive to Anna and Joe, husband of Mary Hammonds. Anna's mother had been the primary caretaker and had managed to keep the 10 children together. Mrs. Hammonds and her husband have cared for Randy Lee for approximately 3 months while Randy and Anna had lived with the father's parents. Mrs. Hammonds indicated that Anna was closest to her sister named Faye who lived in Argyle.

Mrs. Hammonds also stated that Randy had a twin sister named Lavon Allred who was out on probation because of her part in the death of her daughter. This daughter, Kalista, DOB 11-11-77, had died of massive injuries to the head on May 1, 1980. This information was confirmed with Judy Ellis of the Protective Services Unit in Dallas. The incident, No. C-084406, is carried under the last name of Pikkarainen. The alleged perpetrator was the boyfriend; however, the mother, Lavon, had been passive in the situation.

Numerous visits were scheduled between Anna and Wesley and also Anna and this worker. Anna visited with Wesley on January 21th at a Child Success meeting and on January 24th at the time of the examination by Dr. Keele. Her primary concern during this period of time was being able to see Jimbo who was in jail in Decatur.

During this period of time, it was reported that Randy Lee was living with either Wayne Pair in Denton or a relative of his in East Texas. No confirmation of this was ever made.

SUMMARY OF CASE MOVEMENT FOR FEBRUARY, 1983:

During this month, plans were made to perform the surgery on Wesley's droopy right eye. Originally, the surgery was scheduled for March 2nd to be coordinated with the insertion of ear tubes. The first postponement was due to the fact that Wesley had been exposed to chicken pox and it was necessary to wait 21 days before rescheduling the surgery. The second postponement came because of a bilateral ear infection. The surgery was finally scheduled for March 2nd. All of the medical records from the doctors in Denton were secured and copies are filed in the Medical Section.

There was concern at not being able to locate the mother during part of January. The 1st of February phone contact was established with her and she came into the office on February 2nd. At that time the surgery on the eye and ears was explained and she was in wholehearted agreement with the scheduling of the operations.

It was at this time that she gave me background information about her drug usage.

WHITFIELD, Anna

She stated she had started while she was in high school by taking diet pills. She indicated that for 2 years she was on hard drugs: speed, about a year and a half and cocaine for six months. She contends that while she was pregnant from both of the boys, she totally abstained for any drug usage. She did state that the father, Randy, did abuse drugs and her while she was pregnant.

Anna stated that she, and she alone, was responsible for the bruises to Wesley. She does not exactly remember how they were inflicted, because she stated that she was on drugs at the time of each of the incidents. She also stated that Jimbo does not have a problem with drugs. The problem they experienced was because Anna was using and while Jimbo was at work, she would take money and go to various dealers to purchase additional drugs.

According to Anna, Jimbo is charged with burglary of a house that was robbed about Christmas. She is charged as an accessory and is presently out on bond of $2,500, having spent two days in jail.

Presently she is uncertain about how she can get her life back together. She feels good about Wesley, because while she is unable to care for him now, he is getting good care through the foster home placement.

Anna requested and cancelled one visit with Wesley during this month.

The doctor at MHMR prescribed Desyrel, 50 mgs. twice daily for Anna's headaches. She indicated she had not seen Jeanie Mason in approximately one month. Sometime during this month, Jimbo was released from jail and was with Anna at his parents' home. Also, Anna's bond was increased to $7,500.

SUMMARY OF CASE MOVEMENT FOR MARCH, 1983:

The surgery was finally performed on March 30th. Tubes were inserted in both ears. Dr. Berry corrected the elevation of the eyeball and shortened the eyelid muscle of Wesley's right eye.

On March 1st prior to one of the visits to Children's Medical Center, Anna visited in my office. She told me that she was cooperating with Howard Kelly of the Denton Police Department and Alex Guerra of the Texas Narcotics Squad, to gain evidence on drug dealers and the location of drug labs in the Denton area. She stated that this information must be kept confidential so as not to jeopardize the investigation. She also indicated that Jimbo was cooperating with the Sheriff's Department to clear up numerous burglaries in the area. For this cooperation, they are being offered immunity.

At the present time, Anna is not working because it is necessary for her to be available in the evenings to work with the officers.

On March 28th, I was informed that Jimbo was again in the Cooke County Jail. Anna stated that she was no longer helping with the drug effort, because they had run out of money to finance the investigations.

## CASE ACTIVITY LOG

Case Name: Whitfield

| 1983 DATE | WORKER | METHOD CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 4-1 | DB | OV | Anna | discussed plans for Wesley. To consider drug use, own needs, etc. |
| " | " | " " | Nestor | Wesley had become removed from sup. Got another; wound reduced |
| " | " | T to | V | abient. All going fine. |
| 4-7 | " | " | Billie V | Eye still swollen at outer edge. Ear fine. Return appt. eye - 1 mo. ear - 3 m |
| " | " | " | " | Dr. appt. the date. |
| " | " | " | Anna | no decision on Wesley's placement |
| 4-26 | " | judicial review | | continued - TMC. Anna did not attend. |
| 4-27 | BB | T to V | Billie | Wesley still swelling gums. Case of lids is higher & recommended |
| " | " | " | V | Anna had pulled so lids will work if Wesley continues eye gtts |
| " | " | OV | Billie & Wesley | Discussed eye lids. Eye somewhat higher. |
| 4-29 | BB | T from | Anna | made decision |
| " | " | HV | " | will sign vol. relinquishment on Wesley; |
| " | " | OV | " | signed |
| " | " | T to | Billie V | ret. visit for 5-3 |
| 5-3 | " | T from | Anna | re och visit for 5-5 |
| " | " | T to | Billie V | " |
| " | " | judicial review - enter | | Judge Gray aborns Annas absolute relinquments of rights |
| 5-3 | " | HV | Gray Kevan | Randy living w/ sisters at 4 mths |
| " | " | HV | Kevan | Randy works barn 7pm. Randy's closest in Denton |
| 5-5 | " | OV | Anna Wesley | last visit |
| " | " | OV | Dr. Alverez | Wesley had Rear & throat infection |
| 5-9 | " | | Michael Whitten | Mans attorney signed termination order |
| " | " | | John Reuben | " " |
| 5-10 | " | | | eh items |

T = Telephone call   TC = ...   OV = ...   HV = Home visit

Case Name

| DATE | WORKER | METHOD-CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 5-10 | GB | | DA Yates Judge Brady | signed order; hearing 5-11 |
| 5-11 | " | | Judge Brady | termination decree signed |
| 5-11 | " | APT | Stephine | ask writ's up for plan? |
| 5-19 | " | T to | Mervin | writ will; no work on Randy or location? |
| 5-11 | " | RV | family Whitfield | Randy Gee with Mervin Brown; Marvina |
| 5-11 | " | OV | " | signed voluntary relinquishment on Randy Gee |
| 5-20 | " | T to | Anna | appt 10:30 |
| " | " | T to | Mervin Whitlock | Miss attorney will file amended divorce petition |
| " | " | OV | Anna | signed vol. relinquishment; gave developmental history |
| " | " | Telos Bd worker | position worker Helen McClure(0;14)743-3275 Wood County. |
| 5-23 | " | T to | Connie | Marvin Brown: no record. Terminate down |
| 5-26 | " | " | " | no record on terminal. |
| " | " | | Helen McClure worker out left # | |
| 5-26 | " | " | called County requested certificate with certificate - Randy Gee | |
| 5-27 | " | " | McClure no info to release to Houston Houston to re-check with Refer Conley | |
| " | " | " | McClure only policy Houston (014) 743-3075 or check anyther | |
| 5-31 | " | | No | |
| 6-11 | " | " | recording | |
| " | " | " | Mary Mamama may want to adopt boy; suggested continue contact with attorney | |

WHITFIELD, Anna

Anna's sister, Faye Barnett, who lives in Argyle, accompanied Anna to Dallas on the day of the surgery. She told me that her father had been abusive to all of the children in the family, but especially to Anna. On questioning, she said that there was no known sexual abuse, but she was aware that her mother insisted that the children be with her at all times and never be left alone with the father, who was an alcoholic. Faye had married at age 16 in order to escape the family situation. According to Faye, her father has an obsessive dislike for Randy, Sr.

SUMMARY OF MOVEMENT FOR APRIL, 1983:

On April 1st, Anna came into the office and we seriously discussed her plans for Wesley. It was pointed out that she would need to be financially, physically and emotionally ready to care for this child. It would be necessary for her to have a job and a place to live so that she could care for his needs. In making the decision, Anna would consider her own needs, her drug usage, her relationship with Jimbo considering the fact that he has openly stated that kids make him nervous, and Wesley's needs.

On April 29th, I received a phone call from Anna stating that she had made a decision which she wished to discuss personally with me. In a home visit she informed me she had decided to sign voluntary relinquishment of parental rights on Wesley. At that time, she stated that she would like for Wesley to be adopted by the foster family if at all possible. It was pointed out that I could not give her any assurance that this would take place, but I would pass along the information.

The relinquishment was prepared and Anna signed it in my office on this afternoon. Anna indicated that she would also be willing to sign relinquishment on her older son, Randy Lee. She believes that the father has placed the child in East Texas with an uncle of Wayne and Cheryl Pair, with whom he has been living at the Phoenix Apartments, #85. She felt that the father would be willing to sign relinquishments on this older child also, because he had recently contacted a relative and asked them to adopt the boy. It was decided that Anna, would not at this time, sign relinquishment on this child until the father was contacted and the child was located.

The mother was asked to furnish any background information and baby pictures which she had on Wesley. She stated that when she had separated from the child's father, she had left all of his baby items in the home. She did feel that possibly the father had some pictures or her sister, Faye Barnett, might be able to furnish some.

Medically, Wesley continued to experience good progress with his eye surgery and the insertion of the ear tubes. The foster mother did explain that at night when Wesley is put to bed is the only time he complains of his ears hurting. She is unable to ascertain if this is a ploy to stay up or if, indeed, there is some pain associated with laying down. The swelling has subsided from his right eye. The edge of the lid still appears to be somewhat higher and the doctor has advised the foster mother to pull on the lashes

WHITFIELD, Anna

in this area, hoping that the lid will stretch.

On April 26th, a Judicial Review was held in Judge Gray's courtroom. Be-
cause the mother was not present at this hearing, Judge Gray asked that
we provide him with proof that she had been notified of its occurrence.
Anna was provided with a copy of the Order and she signed an acknowledge-
ment that she had seen it. This was later furnished to Judge Gray, who
gave his approval for it to be filed with the District Clerk.

DICTATED 4-28-83/Beverly Basden *BS*          TYPED 5-11-83/js

5744

WHITFIELD

SUMMARY OF CASE MOVEMENT FOR MAY 1983:

Anna Whitfield had asked to visit for the last time with Wesley on May 3rd. She called on this date and requested that the visit be rescheduled for May 5th because she would be in court testifying in the trial of Jimbo Willingham on the next two days. Jimbo died on May 6th from an apparent stroke while incarcerated in the Cooke County jail. The writeup from the local paper is included in the miscellaneous section of the folder.

The May 5th visit with Wesley was held and photographs were made of Wesley and his mother which were given to Anna.

During this visit Anna was openly acknowleding that she did not know what would become of her until after the sentencing for Jimbo's trial. The sentencing phase was to be held on May 23rd. Anna did not know if she would/tried for the charges against her.

Anna cried briefly at the time she separated from Wesley. Wesley did not have any overt response and went willingly with the worker back to the foster home.

On this same day, Wesley was taken into Dr. Alvarez and diagnosed as having an infected right ear and throat. He was given a prescription of Amoxil.

On May 3rd, I went to the apartment of Wayne and Cheryl Pair with whom Randy Whitfield supposedly had lived. Cheryl indicated that he had moved about two months ago and it was her understanding that he was living with his sister Lavon at the Y Motel. Ms. Pair stated that Randy Lee was not living with his father.

A trip to the Y Motel found sister Lavon and a younger sister with a male companion about 25 years old drinking beer in front of the small cottage. The two sisters denied that they knew the exact location of Randy Lee, but did state that he was somewhere in East Texas. The father works daily from about 6:00 a.m. until after dark painting houses. He is presently living with Lavon at No. 5, Y Motel.

On May 19th, I again stopped by the Y Motel and discovered Randy home about 1:00 p.m. He told me that he couldn't take care of Randy Lee; he couldn't even take care of himself. He expressed agreement to sign voluntary relinquishment. These were prepared in the office and he signed them that afternoon. After having done that, he expressed relief, stating that it was good to have that taken care of.

He indicated that about 6 months ago, he had placed Randy Lee with the sister of Wayne Pair. The family name is Marvin Brown, approximately 35 to 40 years old, his wife, Jeanette, 26, and their daughter, 13, and two sons - 11 and 7. The father had given the couple a signed, notarized paper for care and medical authorization of his son. He could not give me an exact location for the family, but stated that Marvin Brown could be contacted through M & M Auto Sales, Hawkins, Texas.

When pressed for more exact locating information, the father stated that he had not been driving and it was late at night when he drove to East Texas. He also stated that it was approximately a 7 hour trip to this town in the vicinity of Tyler, Texas.

He was uncertain what reaction the family would have if a worker appeared to remove him

Whitfield
Case Name

CASE ACTIVITY LOG

| DATE | WORKER | METHOD-CONTACT | PERSON CONTACTED | INFORMATION |
|---|---|---|---|---|
| 6-2 | BB | | Welch | immunization record obtained |
| 6-6 | BB | OV | (Anita) | Anita cannot care for Randy Lee because of financial situation. Randy Lee |
| 6-6 | OV | | (Anna) | approved to visit. no prospective adoptive resource identified |
| 6-6 | | NV | Welch | Randy Lee placed in foster home with Mr. Wesley. |
| 6-8 | | T to | (Stephanie) | Anna in New Hospital after decision, a teaching pillow. Stated Anna |
| 6-9 | " | | Mrs. Whitfield | must move. |
| 6-9 | " | | Randy Welch | |
| 8-10 | | OV | Social Security | IMC - Randy |
| " | | | | applied for SS # |
| 8-14 | " | | Randy | |
| | | | Social Security | |
| | | | | Answer of Termination |
| " | | letter | Anna's Att. | sent copy of decree |
| " | | | foster | make OV appt - dad foster authorization. Want to adopt Wesley if |
| " | | T to | foster | mother available. |
| | | | | Mrs. JV applied for dental card. |
| 8-14 | " | T to | worker | applied for dental card. |
| 8-15 | | OV Staffing | | transfer case to permanent planning unit. |
| 6-17 | " | OV | Wilson | physical exam - Randy |
| 6-17 | | T from | Anna | recently released from hospital. Requested visit with Randy on 6-30-9: |
| " | " | | Child Success | closing care of Wesley. |
| " | " | T to | foster | pick up Randy on 6-30 for visit with Mr. |
| 6-30 | " | OV | Anna | |
| " | " | T to | Anita | |

Tto-Telephone call to
Tfrom-Telephone call from

HV-Home visit
OV-Office visit

5746

WHITFIELD

from their custody. He was evasive as to exactly the situation under which he left the child in their care. He alluded to the fact that the family wished to adopt Randy Lee. I explained that it would be difficult for a worker to locate the family with the information he had provided, as well as Randy Lee would be reluctant to leave with someone he did not know. The father then agreed to accompany the worker to Hawkins to give the child permission to leave.

The father indicated that he had "been busted for drugs". He is represented by Attorney Hal Jackson, who will also represent him for the impending divorce.

On May 11th, Judge Boyd signed a Decree of Termination after having been presented with the mother and father's Voluntary Affidavit of Relinquishment of Parental Rights and Termination Petition on Wesley. During the May 18th PPT staffing on Wesley, the foster parents indicated that they would like to adopt Wesley if he was to be placed alone. Since the mother had previously indicated her willingness to relinquish on Randy, it was deemed advisable to pursue the relinquishment from the father. Plans for adoptive placement could then be made according to the need.

The mother signed Voluntary Relinquishments on Randy on May 20th. She gave the information for the completion of the child's medical record. She indicated that Randy Lee had always been close to his father. The mother stated that she had allowed the child to get away with murder, babying him after the father would discipline him by spanking with a belt.

The mother stated that during her pregnancy with Randy, she had not used any drugs. This is the same position she held in regard to her pregnancy with Wesley.

Randy was born at the Mitchell Clinic and Maternity Hospital in McKinney, Texas. The birth certificate was obtained from Collin County. His immunization records from the Health Department in Denton were obtained.

SUMMARY OF CASE MOVEMENT FOR JUNE 1983:

The immunization record for Randy Whitfield was obtained from the Denton County Health Department. He was behind on his shots and was given a DPT series, as well as oral polio on June 16, 1983.

There was no record of having a social security number. The Court Order, as well as a copy of his brith certificate, were furnished to the Social Security Office when application was made on June 6th.

On June 6th, Jeanette Brown from Hawkins, Texas, came in to the CPS Office accompanied by Randy Lee. Mrs. Brown explained that her family was experiencing financial problems due to the fact her husband had back problems and was unable to work. The family consists of Marvin Brown, wife Jeanette Brown (sister of Wayne Pair), daughter Katrina, 13, and sons Carl, 7, and Terry, 10. They live in the Harris Mobile Home Park, Route 1, Highway 14, Hawkins, Texas. While they have no phone, they can be reached through Mrs. Brown's mother, Betty Pair, at 214/769-2465. Mrs. Brown explained that the mother lives in Hawkins and they

5747

WHITFIELD

usually are at her home between 8 and 10:00 a.m. each morning.

On January 12, 1983, the family had visited with Wayne Pair prior to going to Fort Worth for an operation on Mrs. Brown's mother. At that time, Randy Whitfield, who was living with Wayne Pair, approached them about taking Randy Lee to live with them. Mrs. Brown stated she felt very sorry for Randy Lee because of the way that his father talked about him and to him. Mrs. Brown stated that Randy Lee had an upper front and lower front tooth missing and a bald spot on his head. The child explained that his father was responsible for the injuries. The father called his son "a bastard", stating that he might leave him along the roadside.

Mrs. Brown indicated that she was very concerned about Randy's welfare and had come to Denton hoping that she could locate some help. She had been unsuccessful in attempts to locate the father. During this interview, she openly wept and expressed a desire to keep Randy if the family were in a better financial situation.

She also stated that she had provided babysitting for both Wesley and Randy on several short-term periods approximately one year ago. She was aware that Wesley was in foster care.

Mrs. Brown seemed to welcome the information that we had been attempting to determine Randy Lee's whereabouts. She was relieved to know that both the mother and father had signed relinquishments. She indicated that she would mail Randy Lee's clothes and other belongings when she returned to her home in Hawkins.

In the time that Randy Lee has been with the Brown family, he has gained 23 pounds. Mrs. Brown expressed concern about his eating habits because he will eat until he gets so full that he vomits and then immediately begin to eat again. She stated that she has very closely monitored his eating habits.

She reports that he naps occasionally, but has a routine of rest period in the afternoon. While he does not always go to sleep, he must be still and quiet during this hour.

She reports that Randy is not a bedwetter. She does not allow him any liquids after dinner and he empties his bladder shortly before going to bed. During his stay in their family, he wet the bed on two occasions.

There have been no serious illnesses during his stay. He did have an earache on two occasions. No doctor treatment was obtained for these problems. She reported that she simply treated them with oil and the next day they were gone.

In all, Mrs. Brown reported no major problems. She has observed that Randy Lee fantasizes that he is talking to Wesley and to his Aunt Mary and Uncle Joe. During these times, he will face the wall and pretend that these people are present. She also reported that he seems obsessed with witches and monsters.

5748

WHITFIELD

To quell this obcession, she monitored his TV programs so that he did not watch shows involving supernatural or witchcraft.

Shortly before leaving, Marvin Brown joined his wife in the office. There was no explanation during the previous interview of his whereabouts. Randy Lee interacted freely with both Mr. and Mrs. Brown. They explained to him that he would be leaving them. They expressed concern for his well-being and hoped that he would be able to join his brother. Mr. Brown hugged Randy Lee and tears came to his eyes when he told the boy that he loved him and would miss him. Mrs. Brown explained that he could call and talk with her anytime. She, too, cried. There was no observable reaction from Randy Lee.

Randy was placed in the same foster home as Wesley on this date. On the trip to the foster home, Randy stated that he was very anxious to see his brother. On arrival, Randy hugged Wesley and talked with him. He observed, "he can talk", since it had been over 7 months since the boys had been together.

Wesley's reaction to Randy was more subdued. When Randy hugged him, Wesley pushed him away. Wesley stared at Randy from a distance. After about 5 minutes, Wesley was observed to become very rowdy, ran toys into the furniture and made loud noises.

A Petition for Termination of Parental Rights was prepared and presented, along with the Voluntary Relinquishment signed by both the mother and father. Judge Boyd signed a Temporary Order giving the Department TMC of Randy Lee Whitfield on June 9, 1983.

On June 14th, Judge Gray signed a Decree of Termination. Copies of this material were forwarded to both the mother and the father. Since both parents had requested a visit with Randy Lee, it was suggested that they contact the office to set up this visitation.

On June 17th, Anna Whitfield called and requested a visit with Randy. She explained that she was currently living with her sister, Fay Barnett, in Argyle, having just been released from Flow Hospital. We had been told by the mother of Jimbo Willingham, with whom Anna had previously lived, that Anna was in Flow Hospital having "drunk too much and taken too many pills". Anna also stated that she was working the 7:00 to 4:00 shift at Flow, Monday being her day off.

Both of the boys visited with their mother on June 20th. Anna was accompanied by her sister, Fay Barnett, and her sister-in-law, Mary Hammond. When Anna came into the room, Randy immediately hugged her. Though Anna spoke to Wesley, he did not turn around. When she again called him, he ran directly to the worker. By the end of the visit, both boys were interacting with the mother.

The foster mother had told me that Randy Lee had expressed fear of Jimbo Willingham. Because of this, I advised Anna that she should assure Randy that he had nothing to fear from Jimbo. It was left to her discretion whether she told Randy Lee about Jimbo's death. The main concern was that he be assured that he was in no danger from this man.

WHITFIELD

Before Anna left, I explained to the boys that this would be the last visit they would have with their mother – that she loved them very much and wanted them to have a safe and secure home.

Wesley was extremely fussy on the trip back to the foster home. He and Randy fought over toys. Wesley unbuckled his seat belt and insisted on standing up in the car. As we passed a familiar landmark close to the foster home, Wesley turned to Randy and stated, "they were going home". After this, there was no fussing or standing in the carseat.

The foster mother reported that Randy's adjustment to their home has been very good. She views him as a well-behaved child. There has been no problem with bedwetting. She did report that on one occasion when she left the children with a 15 year old babysitter one night, Randy had misbehaved and "went bananas". She has not observed any such behavior with adults. She feels that he was testing the authority of the sitter.

Randy is very protective of Wesley and looks after him; however, Wesley has become louder in his play. While he has, on occasion, bitten the daughter of the foster parents, he is now biting both the daughter and his brother, Randy. This behavior was observed in the car, also, on the day of the last visit with the mother.

The foster mother feels that Wesley now remembers Randy and she is committed to the boys being placed together in an adoptive setting. She does not feel that their family can adopt both boys. However, if for some reason, the boys cannot be placed together in an adoptive home, the foster parents would be interested in adopting Wesley.

The physical exam for Randy was performed by Dr. Greg Jackson on June 17, 1983. A dental card was requested from Ruth O'Gorman's office on June 14th. It will be approximately two weeks before this dental authorization is received. The card will come to this worker.

On June 15th, there was a PPT staffing on Wesley and Randy Whitfield. Since both of these boys are to be placed in adoption, the case will be transferred to the PPU in Fort Worth. Jeanie Perallo of that Department and this worker will make a transfer visit to the home of foster parents Billie and Hector Viteychuk, on Tuesday, June 28th.

5750

WHITFIELD

### TRANSFER SUMMARY:

#### Wesley Whitfield:

The information covering the removal of Wesley is best summarized in the social summary dated 11-10-82 and 6-3-83. The PPT staffings of November 17, 1982 and June 15, 1983 contain additional information, as well as the General Case Plan.

Prior to his removal and following his placement in foster care, Wesley has suffered from numerous ear infections. Tubes were inserted in his ears in March, and since that time, he has had at least one ear infection. There is to be a follow-up visit for the surgery. This appointment should be coordinated with the foster mother, as she has been most punctual in obtaining any needed medical treatment for the child.

A follow-up visit is also needed for the eye surgery performed by Dr. Berry to correct a droopy right eyelid. The foster mother had been instructed by Dr. Berry to pull on the lashes of this eyelid in hopes of stretching the lid so that it would be more in line with the left eye. The foster mother will be an invaluable resource in securing information about the surgery, as well as the post-operative care for the child.

When his older brother was placed in the same foster home, there was some concern that Wesley remembered his sibling. His behavior became more aggressive and presently Wesley is expressing anger by biting Randy. He is exhibiting this same behavior with the foster parent's natural daughter who is of similar age to his brother. Overall, the adjustment seems to have been appropriate, since the boys have not seen each other for approximately 7 months.

Wesley was evaluated by the Child Success Project at TWU on 11-19-82. Wesley fell below his developmental age in the areas of perceptual/fine motor, cognition, language, feeding, and toileting. A program was developed and an outline given to the foster mother. She worked with Wesley on items that would enhance this development. Another assessment might be performed to see if he is more developmentally on target since this program has been initiated.

Wesley was evaluated by Dr. Marjorie Keele, Neurologist at TWU, on 1-24-83, prior to his surgery. Her report dated 1-25-83 indicates that there was no external evidence of neurofibromatosis. In light of the fact that the mother's family has a history of this disease, another evaluation in the future might be appropriate.

For additional medical history information, reference is made to the child's developmental and medical history form filled out by the mother on 11-10-82. The mother did not attach much importance to remembering this medical data, and if in the future more detailed information is required, it is suggested that the sister, Fay Barnett, who lives in Argyle be contacted.

5751

WHITFIELD

The mother had a history of drug involvement in her later teenage years.
She was questioned on several occasions if she was on drugs at the time
of her pregnancy with Wesley.  On all occasions, she emphatically denied
that she used drugs during her pregnancy.  She contended that she gave up
drugs, as well as cigarettes, as soon as she found out that she was expect-
ing a child.  It is appropriate to note at this point that on numerous
occasions the information the mother gave proved to be either false or mis-
leading.

Randy Lee Whitfield:

The background information on this child is covered in detail in the Summary
of Case Movement for May and June 1983.  Previous to this time, there was
very little information since the father had custody of this child and very
little contact was established with him.  It is known that the father periodi-
cally attempted to place Randy with various friends and relatives because
he could not provide adequate care.  The father resisted our attempts to
provide support for his care of the son.  He possibly interpreted our attempted
intervention as somehow connected with the legal system with which he was
periodically experiencing some involvement.

The medical information obtained from the mother is indicated on the Medical
Record Form.  As in the case of Wesley, it is not very detailed.  The infor-
mation obtained from the previous caretaker was that Randy had been very healthy
for the last 6 months.

Emotionally, Randy seems to be very attached to his younger brother.  He ex-
pressed grave concern about his safety on the two occasions that this worker
saw him immediately following the emergency removal of Wesley.  Neither of
the parents who were present at this time inquired about Wesley's condition.
The caretaker for the past 6 months indicated that Randy fantasized that
Wesley was with him and often carried on an imaginary conversation with the
younger brother.  In foster care, Randy is very protective of the child.

Randy is a very bright 5 year old.  He is observed to call his caretaker,
"Mama" in her presence, but refers to that same individual by their given
name in their absence.  He is very observant, as noted by pointing out land-
marks near the houses of friends or relatives as we have driven about the
city.  He is quick to adapt his behavior to the temperament of the individual
with whom he is interacting.  This has also been noted by the foster mother.
She reported that he had acted/with a teenage babysitter on a recent occasion.
This behavior is not observed when he is cared for by an adult.

Randy is in need of a dental check-up.  A dental card has been requested
and will be forwarded to the adoption worker or the foster mother when it
is received.  A social security number has been requested, but as yet not
assigned. SS # 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 received) 6-28-83.

*Beverly Basden*
BEVERLY BASDEN
Child Placement Worker III

June 27, 1983

js

5752

RANDY & WESLY WHITFIELD

SUMMARY OF MOVEMENT

6-28-83 thru 9-2-83

I.  Contacts:

6-28-83, Transfer visit with children
          Interview, foster parents

7-5-83, Case officially transferred
         Adoption Readiness Summary sent to contract agencies

7-14-83, Visit with children
          Contact with foster parents

8-2-83, Study submitted for approval

8-10-83, Worker responded to Ms. Basden's concerns

8-19-83, Meeting with Mr. and Mrs. Halprin

8-22-83, Visit with children

8-23-83, Adoption presentation

8-26 through 8-29 1st preplacement visit and 2nd preplacement visit

8-31 through 9-2-83, 3rd preplacement visit

9-2-83, Placement physical/placement in adoption

9-16-83, Placement agreement signed

II.  Additional Information

On 6-28-83, this worker made a transfer visit with the originating worker Beverly
Basden.  The worker spent the first hour of the visit interviewing the foster
mother Billy Witeychuck.  After spending this time gaining information from the
foster mother the workers spent about a hour with the children.  In addition to
explaining her purpose and that they would be looking for a family together, the
worker asked the children for input.  The worker also involved the children by
taking pictures for their life book.  Randy, the older child seem to understand the
idea of a new mommy and daddy.  Wesly, the younger child, however, did not seem to
grasp the concept.

On 7-14-83, This worker had another visit with the children.  Additional pictures
were taken for the life book.  The worker explained the process once again of
adoption and getting a new mommie and daddy, and made statements in an effort
to  elicit feelings from the children.  The worker feels that Randy is understanding,
and accepting, and excited about the prospect of moving to a permanent placement.
Wesly seems to lessen but is unable to verbalize his feelings regarding a permanent
family.

5753

Whitfield Summary of Movement
Page 2

The foster mother continues to be supportive and encouraging towards this placement. She related an article she read about how an older child tends to parent a younger child when placed together. She also stated that they considered at one time adopting only Wesly, the younger child who has been with them much longer but in reading the article could really understand why both children needed to be placed together. The worker advised the foster mother that she had a study that was pending and that as soon as it was approved by all concern she would be advised of the placement. Worker further advised Ms. Whiteychuck that she would be involved in the placement and that her input was vital.

On 8-19-83, after approval was finally received from all parties involved, the worker met with Mr. and Mrs. Halprin the prospective adoptive parents for these children. The worker and the Halprin's met with Linda Allen, the worker who studied them at the New Hope office. During the visit the worker went over the entire case record with the Halprin's and tried to answer any question that they might have. All medical issues were addressed. The main issue being that there is some suspection that Randy and Wesly have Neurofibromatosis. Mr. and Mrs. Halprin were quite excited and wanted to make plans immediately. The worker notified her that she would get back with them as soon as she had made arrangements with the foster parents.

On 8-22-83, this worker visited the children for the purpose of presenting their new family through the scrap book prepared by the Halprin's. Randy and Wesly sat with the worker as she went over the album page by page explaining the pictures and the caption and etc. Randy, the oldest child was quite excited. After one reading he could go back through and name everyone in the album. Wesly the younger child did not have much to say but was content. The main issue also looked at the book. They were quite excited about the family and commented that the worker had found the perfect family for these children. Mr. and Mrs. Whiteychuck were most encouraging to the children and were very cooperative in preparing these children for adoption.

On 8-23-83, this worker, Linda Allen, the New Hope worker, and Mr. and Mrs. Halprin drove to the Whiteychuck foster home to meet the children. Beverly Basden, the originating worker was also present. When the worker's and the Halprin's arrived, Randy, the oldest child ran immediately and hugged his new father and mother. He took them by the hand and explained how he had been them in the book and could name everything about his new room, new house and new family. Wesly went along also a little more shy and hesitant than Randy. Mr. and Mrs. Halprin spent about an hour in the living room, playing with the children, visiting with them and taking pictures. The children also showed the Halprin's how they could swim in the foster home. The new parents have a pool so it is good that the children learned to swim in the foster home. The foster parents and the adoptive seemed to hit it off trading stories about the children and trying to get all the information possible. This worker left after about an hour but Mr. and Mrs. Halprin planned to remain a little longer and visit with the family.

On 8-26-83, the Halprin's picked up the children for a overnight preplacement visit. They were returned to the foster home on 8-29-83. Both the children, adoptive parents and foster parents reported an excellent visit with no problems.

Whitfield Summary of Movement
Page 3

On 8-31-83, the Halprin's picked up the children for their extended preplacement visit. All reports were that the visit went very well. The Halprin's have enrolled Randy in kindergarten and Wesly in preschool.

On 9-2-83, The parents accompanied the boys for their placement physicals at the TCOM Clinic. Mr. and Mrs. Halprin were the proud adoptive parents. They had nothing but good stories to tell about the children. They went into detail to the point of how cute the children were with spaghetti-o's on their chin. The Halprin's will sign placement agreements with the New Hope worker Linda Allen as soon as possible.

III.  Casework Movement:

The Goal of permanency has been reached for these children. They were officially placed in Adoption on 9-2-83. Formal placement agreements were signed at New Hope on 9-16-83.

*Cindy Wingate CSW 11/1/83*

*Jeannie Perullo dictated 10/6/83*
Jeannie Perullo
Child Placement Specialist II

Cindy Wingate, Supervisor

11-1-82
JP:sb

ALL FORTH COMING DICTATION WILL BE IN THE FORM OF QUARTERLY MONITORING REPORTS FROM THE SUPERVISING AGENCIES EDNA GLADNEY/NEW HOPE.

5755

Whitfield Summary of Movement
Page 3

On 8-31-83, the Halprin's picked up the children for their extended preplacement visit. All reports were that the visit went very well. The Halprin's have enrolled Randy in kindergarten and Wesly in preschool.

On 9-2-83, The parents accompanied the boys for their placement physicals at the TCOM Clinic. Mr. and Mrs. Halprin were the proud adoptive parents. They had nothing but good stories to tell about the children. They went into detail to the point of how cute the children were with spaghetti-o's on their chin. The Halprin's will sign placement agreements with the New Hope worker Linda Allen as soon as possible.

III.  Casework Movement:

The Goal of permanency has been reached for these children. They were officially placed in Adoption on 9-2-83. Formal placement agreements were signed at New Hope on 9-16-83.

Cindy Wingate CSW. 1/16

Cindy Wingate, Supervisor

Jeannie Perullo  Dictated 10/5/83
Child Placement Specialist II

11-1-82
JP:ab

ALL FORTH COMING DICTATION WILL BE IN THE FORM OF QUARTERLY MONITORING REPORTS FROM THE SUPERVISING AGENCIES EDNA GLADNEY/NEW HOPE.

# *Child Success Project*

P. O. Box 22487, TWU Station
Denton, Texas 76204

(817) 387-6063

January 10, 1983

Beverly Basden
T.D.H.R.
Children's Protective Services
P.O. Box 2186
Denton, TX  76201

Re:  Wesley Whitfield

Dear Beverly,

I'm sorry for the delay in getting information to you regarding Wesley's developmental needs.  Our offices were closed for two weeks around Christmas.  Upon returning we were deluged with situations requiring our immediate attention.  I'm sure you understand.

At any rate, I want to assure you that I will be sending you in the very near future suggested activities for helping Wesley in his development.  I will also send you a copy to give to his foster parents.  Anna will also be sent the same information.  She can bring the "Management Plan" (as we call it) with her on Wednesday mornings from 9:30 - 11:00, our parent-child center visit time.  Please remember that we do not have center visits on the last Wednesday of each month.

Sincerely,

*Judy Spalding*

Judy Spalding, C.S.W.
Program Instructor

JS:ap

───────── **TEXAS WOMAN'S UNIVERSITY** ─────────

5757

# Texas Department of Human Resources



CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, Texas  76201
817/383-2371

November 2, 1982

JEROME CHAPMAN
Commissioner

BOARD MEMBERS
HILMAR G. MOORE
Chairman, Richmond

RAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

Mr. and Mrs. Hector Viteychuk
17 Shiloh Circle
Roanoke, TX  76262                        Re:  Whitfield, Wesley

Dear Mr. and Mrs. Viteychuk:

As you may know, Children's Protective Services holds a monthly Permanent
Planning Meeting.  It is at these meetings that conservatorship cases are
reviewed on a six-month basis, and casework movement and future plans are
discussed.  The priorities of these meetings are to (1) facilitate perma-
nency planning for children in substitute care; (2) share some of the res-
ponsibility inherent in this awesome task; and (3) provide support and
guidance to the caseworker in all phases of planning for the child.

The Permanent Planning Team is comprised of a Program Director from
Children's Protective Services, the Unit Supervisor, a legal consultant, a
foster care unit representative, the child's caseworker, and Department of
Human Resources staff and other professionals as available.

This letter is to invite you, as foster parents, to join the Permanent
Planning Team at its next staffing to be held on Wednesday, 11-17-82 .
At this time, the Team will be discussing your foster child's case.  Your
presence would be very beneficial to the Team's decisions as you may have
pertinent information that you may wish to share.  It is also hoped that this
time with the Team will be beneficial to you in your care of this child.

We are looking forward to seeing you on  11-17-82        at  1:15  a.m./p.m.

Sincerely,

Beverly Deweber

Beverly Deweber
Community Service Aide III

cc:  Caseworker   Beverly Basden

An Equal Opportunity Employer

5758

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX  76201
817/383-2371

October 29, 1982


John Lennon
Attorney
P. O. Box 44
Denton, TX  76201

Re:  Wesley Whitfield

Dear Mr. Lennon:

Pursuant to our conversation, attached is a copy of the Emergency Order
in which you are named ad litem for the above child.  Please note the
hearing set for November 5th at 10:00 a.m.

We will advise you on any developments with this family prior to the hearing.

Sincerely,


Beverly Basden
Child Placement Worker II

BB/js


Attachment

cc:  Rita Blanchard, Supervisor
bcc:  File (2)

5759

# Texas Department of Human Resources

### Notification to Law Enforcement Agency of Child Abuse/Neglect Report

Section 34.02 of the Texas Family Code requires the Texas Department of Human Resources (DHR) to notify the appropriate law enforcement agency of all reports of child abuse/neglect received by the Department other than reports received from such agencies. The purpose of this letter is to confirm notification to you of a report of child abuse/neglect received by DHR.

| Date |
|---|
| 05-26-82 |

| | |
|---|---|
| **TO:** David Scott, Juvenile Officer<br>Denton Police Department<br>Municipal Building<br>215 East McKinney<br>Denton, Texas  76201 | **DHR Contact Person** David Levisay, Child Placement Worker III<br>**Address** P. O. Box 2186<br>Denton, Texas  76201<br>**Telephone No.** 817-383-2371 |

**REGARDING:**

| Name | |
|---|---|
| Jimbo Fillingham | **Comments:** |
| **Role in case** | |
| alleged perpetrator | |

## METHOD OF NOTIFICATION to Law Enforcement Agency

☐ Oral report made to _____

of your agency on _____ ; copy of report attached.

☒ This letter serves as initial notification of the report, and a copy of the report is attached.

## ACTION TAKEN by Texas Department of Human Resources

☐ The case investigation is planned.

☒ The case investigation is currently being conducted.

☐ The case investigation has been completed with a disposition of:
   (See definitions of dispositions on the back of this form.)

   ☐ Adjudicated:        Ongoing child protective services
   ☐ Reason to Believe: }  ☐ will   ☐ will not be provided.
   ☐ Unfounded
   ☐ Family Moved (and we are unable to locate)

## ACTION REQUESTED of Law Enforcement Agency

Please notify the above designated DHR contact person of any action planned or taken in this case so that we may better coordinate respective investigations and services provided. If you determine that this case should be reported to another law enforcement agency please forward this information to the appropriate agency.

Please note that by law (Section 34.08, Texas Family Code) and by Attorney General Open Records Decision No. 49, the name of complainant (i.e. reporter or informant) is confidential. Consequently, identifying information about the complainant is not included in this report. If this information is needed to conduct the criminal investigation, the assigned DHR worker or supervisor may orally information about the complainant's identity with the investigating officer.

Form 2230/10-81

5760

# Texas Department of Human Resources



### Notification to Law Enforcement Agency of Child Abuse/Neglect Report

Section 34.02 of the Texas Family Code requires the Texas Department of Human Resources (DHR) to notify the appropriate law enforcement agency of all reports of child abuse/neglect received by the Department other than reports received from such agencies. The purpose of this letter is to confirm notification to you of a report of child abuse/neglect received by DHR.

| Date |
|------|
| 7-12-82 |

TO:  Michael Baker, Juvenile Officer
Denton Police Department
Municipal Building
215 East McKinney
Denton, Texas  76202

| DHR Contact Person |
|--------------------|
| David Levisay, Child Placement Worker III |
| Address |
| P. O. Box 2186 |
| Denton, Texas  76201 |
| Telephone No. |
| 817-383-2371 |

REGARDING:

| |
|--|
| Name |
| Jimbo Willingham |
| Role in case |
| alleged perpetrator |

**METHOD OF NOTIFICATION to Law Enforcement Agency**

☐ Oral report made to _____
of your agency on _____ ; copy of report attached.

☒ This letter serves as initial notification of the report, and a copy of the report is attached.

**ACTION TAKEN by Texas Department of Human Resources**

☐ The case investigation is planned.

☒ The case investigation is currently being conducted.

☐ The case investigation has been completed with a disposition of:
(See definitions of dispositions on the back of this form.)

☐ Adjudicated: ⎫ Ongoing child protective services
☐ Reason to Believe: ⎰ ☐ will ☐ will not be provided.
☐ Unfounded
☐ Family Moved (and we are unable to locate)

Comments: _____

**ACTION REQUESTED of Law Enforcement Agency**

Please notify the above designated DHR contact person of any action planned or taken in this case so that we may better coordinate the respective investigations and services provided. If you determine that this case should be reported to another law enforcement agency, please forward this information to the appropriate agency.

Please note that by law (Section 34.08, Texas Family Code) and by Attorney General Open Records Decision No. 49, the name of the complainant (i.e. reporter or informant) is confidential. Consequently, identifying information about the complainant is not included in this report. If this information is needed to conduct the criminal investigation, the assigned DHR worker or supervisor may orally share information about the complainant's identity with the investigating officer.

Form 2230/10-81

5761

# Texas Department of Human Resources



Children's Protective Services
P. O. Box 2186
Denton, Texas  76201

MARLIN W. JOHNSTON
Commissioner

BOARD MEMBERS

FREDERICK C. REHFELDT, M.D.
Chairman, Millsap

RAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

July 13, 1982

Mr. Charles Self
P. O. Box 998
Lake Dallas, Texas  75065

Dear Mr. Self:

This is my formal request regarding the matter that I discussed with you during our telephone conversation on 7-13-82.  I am attempting to locate a family that may have opened a TP&L account recently, perhaps on 7-12-82. I am required by Texas civil law to investigate reports to our office which allege physical abuse of children.

The account would likely be in one of the following possible names:  Randy Whitfield, Anna Whitfield, James Willingham.  I appreciate your timely assistance with this necessary matter and ask that you forward me the current address of the family if it is available to you.

Sincerely,

David Levisay
Child Placement Worker III

lb

An Equal Opportunity Employer

# Texas Department of Human Resources



Children's Protective Services
P. O. Box 2186
Denton, Texas  76201

MARLIN W. JOHNSTON
Commissioner

BOARD MEMBERS
FREDERICK C. REHFELDT, M.D.
Chairman, Millsap

RAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

January 14, 1983

Mrs. Hector Viteychuk
17 Shiloh Circle
Roanoke, Texas  76262

Dear Billie:

Attached is the Management Plan which Child Success prepared as suggested activities to use with Wesley to aid in developing his language.  Anna will work with Wesley in these areas when they attend the weekly sessions on Wednesday from 9:30 to 11:00 AM.

Either Beverly Deweber or I will pick up Wesley at 8:30 on Wednesdays for this visit.  The time and place for his return will be arranged at that time.

For future planning, he has an eye appointment at 10:20 on Tuesday, 2-1-83, with Dr. Priscilla Berry, Dallas.  The neurologist appointment cannot be made until after January 17.  Hopefully it will be scheduled prior to the eye appointment.

Sincerely,

*Beverly*

Beverly Basden
Child Placement Worker II

1b

5763

# Texas Department of Human Resources

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, Texas 76201
817/383-2371



JEROME CHAPMAN
Commissioner

BOARD MEMBERS
HILMAR G. MOORE
Chairman, Richmond
RAUL JIMENEZ
San Antonio
Wm. TERRY BRAY
Austin

April 27, 1983

Mr. and Mrs. Hector Viteychuk
17 Shiloh Circle
Roanoke, Texas  76262

Re:  Whitfield, Wesley

Dear Mr. and Mrs. Viteychuk,

As you may know, Children's Protective Services holds a monthly Permanent
Planning Meeting. It is at these meetings that conservatorship cases are
reviewed on a six-month basis, and casework movement and future plans are
discussed. The priorities of these meetings are to (1) facilitate perma-
nency planning for children in substitute care; (2) share some of the res-
ponsibility inherent in this awesome task; and (3) provide support and
guidance to the caseworker in all phases of planning for the child.

The Permanent Planning Team is comprised of a Program Director from
Children's Protective Services, the Unit Supervisor, a legal consultant, a
foster care unit representative, the child's caseworker, and Department of
Human Resources staff and other professionals as available.

This letter is to invite you, as foster parents, to join the Permanent
Planning Team at its next staffing to be held on Wednesday, ___5-18-83___.
At this time, the Team will be discussing your foster child's case. Your
presence would be very beneficial to the Team's decisions as you may have
pertinent information that you may wish to share. It is also hoped that this
time with the Team will be beneficial to you in your care of this child.

We are looking forward to seeing you on ___5-18-83___ at ___1:50___ a.m./p.m.

Sincerely,

*Beverly Deweber*

Beverly Deweber
Community Service Aide III

uph

cc:  Caseworker  Beverly Basden

An Equal Opportunity Employer

5764

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX  76201
817/383-2371

February 3, 1983

Mrs. Hector Viteychuk
17 Shiloh Circle
Roanoke, TX  76262

Dear Billie:

Attached are copies of the information from Dr. Berry concerning Wesley's
eye surgery.  The necessary consent forms were signed by his mother during
a visit in our office yesterday morning.

We are now in a position to proceed with the appointment leading to the
operation.  We will plan to meet at our office about noon on Monday, February
7, to go to Dallas for the 1:30 appointment at Children's ENT Clinic.

Sincerely,


Beverly Basden
Child Placement Worker II

BB/js

Attachments
bcc:  File (2)

Wesley

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201
817/383-2371

January 27, 1983

Dr. Marjorie Keele
Institute for Mental & Physical Development
Texas Woman's University
TWU Station
Denton, TX 76204

Re:  Wesley Whitfield

Dear Dr. Keele:

Attached is a copy of Dr. Berry's letter of June 29th which suggests
the above child be examined by a neurologist for signs of possible
neurofibromatosis.

We appreciate your cooperation and prompt attention to this child's needs.
He will be seen on February 1st by Dr. Berry as a follow-up to the drooping
eyelid condition.

Sincerely,


Beverly Basden
Child Placement Worker II

BB/js

Attachment

bcc:  File

5766

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201; Phone 817/383-2371

April 27, 1983

Mr. John Lawhon
Attorney
P. O. Box 44
Denton, TX 76201

Re: Wesley Whitfield

Dear John:

On April 26, 1983, a judicial review of the placement of the above child
was held. Attached is a copy of the order signed by Judge Gray which con-
tinues the appointment of the Texas Department of Human Resources as manag-
ing conservator and current placement of the child.

Sincerely,

Beverly Basden
Child Placement Worker III

BB/js

Attachment

5767

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201: Phone 817/383-2371

April 27, 1983

Mr. Mike Whitten
Attorney
Texas Building
Denton, TX 76201

Re: Wesley Whitfield

Dear Mr. Whitten:

On April 26, 1983, a judicial review of the placement of the above child
was held. Attached is a copy of the order signed by Judge Gray which con-
tinues the appointment of the Texas Department of Human Resources as manag-
ing conservator and current placement of the child.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

Attachment

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201:  Phone 817/383-2371

April 27, 1983

Mrs. Anna Whitfield
3818 W. University
Denton, TX 76801

Re:  Wesley Whitfield

Dear Anna:

On April 26, 1983, a judicial review of the placement of the above child
was held.  Attached is a copy of the order signed by Judge Gray which con-
tinues the appointment of the Texas Department of Human Resources as manag-
ing conservator and current placement of the child.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

Attachment

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX  76201:  Phone 817/383-2371

April 27, 1983

Mr. and Mrs. Hector Viteychuk
17 Shiloh Circle
Roanoke, TX  76262

Re:  Wesley Whitfield

Dear Mr. and Mrs. Viteychuk:

On April 26, 1983, a judicial review of the placement of the above child
was held.  Attached is a copy of the order signed by Judge Gray which con-
tinues the appointment of the Texas Department of Human Resources as manag-
ing conservator and current placement of the child.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

Attachment

5770

# MEMORANDUM

### TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Response to concerns on Halprin Family

TO:

Beverly Basden
Child Placement Worker
Denton, TX

FROM:

Jeannie Perullo
Permanent Planning Worker
Ft. Worth, TX

DATE: August 10, 1982

As per our conversation today regarding the Halprins :

1. The Halprins are actively seeking more than one child. The worker states when she refers to child in the dictation that she did not mean to give the impression that they were only interested in one child.

2. They are more than happy to take a child that is almost six. In a sibling group they are willing to go as high as age eight.

3. The checklist where the Halprins had questions about a parent with drug usage in their background and/or prostitution, they are now accepting and were at the time the study was submitted to you. The Check lists are filled out prior to their classes and they feel they are more "knowledgable" now as to what special needs children are and those "negatives" in the background are not a problem.

4. The "agressive" behavior (may have set a fire in a relatives home), the response was the same more knowledge and understanding on the perspective parents part makes that type of possibility acceptable.

I am glad that you you saw the father as primary caretaker as positive and noted that Randy had a strong relationship with his natural father and both boys have a good relationship with their foster father.

I believe these are all of the concerns you addressed.

Jeannie Perullo

cc: Cindy Wingate, PPU Supervisor
Allene Margowski, Prog. Dir. 128-3
Sara Ham, Supervisor, Denton

AN EQUAL OPPORTUNITY EMPLOYER

5771

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT:  WHITFIELD, Wesley
           WHITFIELD, Randy

TO:

Geannie Perullo
308 East Fourth Street   128-7
Fort Worth, Texas   76102

FROM:

Beverly Basden, CPW III
P.O.Box 2186         347-1
Denton, Texas   76201

DATE:   September 06, 1983

It was such a pleasure to be included in the initial visits between these children and the prospective adoptive parents.  Hopefully this placement will lead to some stability for these two children.

Enclosed is a letter I received from the maternal aunt of these two boys.  She had been very helpful in providing the numerous snapshots which were incorporated in their Life Book.  Mrs. Barnett is requesting that information concerning the boys be passed along to her throughout the various stages of their childhood.  In my dealings with this woman I have found her to be genuinely concerned and cooperative with any of my requests.  Perhaps the adoptive family would be willing to supply information and occasional snapshots to you which could be then forwarded to Mrs. Barnett.

Thank you.

*Beverly Basden*

Beverly Basden
Child Placement Worker

BB:gp

Encl.

AN EQUAL OPPORTUNITY EMPLOYER

5772

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Response to concerns on Halprin Family

TO:

Beverly Basden
Child Placement Worker
Denton, TX

FROM:

Jeannie Perullo
Permanent Planning Worker
Ft. Worth, TX

DATE: August 10, 1982

As per our conversation today regarding the Halprins :

1. The Halprins are actively seeking more than one child. The worker states when she refers to child in the dictation that she did not mean to give the impression that they were only interested in one child.

2. They are more than happy to take a child that is almost six. In a sibling group they are willing to go as high as age eight.

3. The checklist where the Halprins had questions about a parent with drug usage in their background and/or prostitution, they are now accepting and were at the time the study was submitted to you. The Check lists are filled out prior to their classes and they feel they are more "knowledgable" now as to what special needs children are and those "negatives" in the background are not a problem.

4. The "agressive" behavior (may have set a fire in a relatives home), the response was the same more knowledge and understanding on the perspective parents part makes that type of possibility acceptable.

I am glad that you you saw the father as primary caretaker as positive and noted that Randy had a strong relationship with his natural father and both boys have a good relationship with their foster father.

I believe these are all of the concerns you addressed.

Jeannie Perullo

cc: Cindy Wingate, PPU Supervisor
    Allene Margowski, Prog. Dir, 128-3
    Sara Ham, Supervisor, Denton

AN EQUAL OPPORTUNITY EMPLOYER

5773

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Adoptive Family for Wesley and Randy Whitfield

TO:
Allene Margowski
Program Director
128-3

FROM:
Jeannie Perullo
Perm. Planning Worker
128-9

DATE: August 2, 1983

Attached please find the Halprin Study I am submitting for Wesley, age 2 1/2 and Randy and 4.

Mr. and Mrs. Halprin, who live in Arlington are an interesting couple. He is Jewish and she is Catholic. They practice both religions. They observe both Jewish and Christian holidays. The boys will be allowed to choose their own faith when they are old enough.

Another interesting fact about the Halprins:; he plans to quit work and take care of the boys instead of Mrs. Halprin. Mr. Halprin is looking forward to the role of "stay-at-home" father. He will utilize this opportunity to attend college at night. A factor that was also considered in making this decision is income. Mrs. Halprin's salary is greater. A financial statement that will apply when Mr. Halprin quits work is attached after page three of the regular financial statement and has a red check at the top.

I think you will be able to see the similarities between the children's foster family(with whom they have done so well) and this perspective adoptive family.

Please let me know if you have any questions.

Jeannie Perullo

cc: Cindy Wingate, Permanent Planning Supervisor, 128-9
Sara Ham, Supervisor, Denton, TX
Beverly Basden, Child Placement Worker, Denton, TX

AN EQUAL OPPORTUNITY EMPLOYER

5774

**Jimmie Ray Willingham Jr.**

Jimmy Ray Willingham Jr., 24, of 3818 W. University, died Friday in Gainesville.

Born on Oct. 25, 1958, he attended the Denton Independent School Distict and was employed at Bill Utter Ford. He was a member of the Gribble Springs Baptist Church.

Arrangements are pending with Schmitz-Floyd-Hamlett Funeral Home.

Survivors include his parents, Mrs. and Mrs. Jimmy Ray Willingham of Denton; a daughter, Karen Rene Willingham of Denton; two sisters, Kay Lynn Lynskey of Krum and Judy Ann Griffiths of Denton; and grandparents, Mr. and Mrs. Raymond Willingham of Denton and Mr. and Mrs. T.S. Smith of Denton.

---

## Denton man found dead in jail cell

**Staff report**

GAINESVILLE — A 24-year-old Denton man died Friday night while in custody in the Cooke County Jail.

Jimmy Ray Willingham, discovered by a jailer, was pronounced dead shortly after 8 a.m. Saturday by Cooke County Precinct 1 Peace Justice Dorothy Smith. The body was taken to Southwestern Institute of Forensic Sciences in Dallas for an autopsy, where a ruling of death by natural causes was made.

Cooke County Sheriff Dan Tiller said Willingham's "blood pressure had gone sky high and several blood vessels broke, causing him to have a (cerebral) hemorrhage."

He said Willingham, who had been incarcerated on burglary charges, was in a cell by himself.

---

*Record-Chronicle*
*Denton, Texas*

*Sunday, May 8, 1983*

*Monday, May 9, 1983*

5775

Case 3:13-cv-01535-L   Document 17-115   Filed 08/21/14   Page 422 of 533   PageID 13776

Texas Department of Human Resources
**CANRIS REPORT — Turnaround**

Form 2202-B
June 1980

**2**

**1**  LEVISAY        DAVID

| 1. CANRIS Incident No. |
|---|
| E071695 |

F845   051-35-C-03   347-1

| 2. Co. Unit City | | 3. |
|---|---|---|

RUN DATE
12/07/81

## SECTION I — WORKER INFORMATION

| **2** | 4. Worker Name (Last) | (First) | 5. Emp. No. | 6. BJN | 7. Mail Code |
|---|---|---|---|---|---|
| | LEVISAY | DAVID | F845 | 051-35-C-03 | 347-1 |

## SECTION II — INCIDENT REPORT

| **3** | 8. Date Occurred to Child | 9. Date Reported to DHR | 10. Date Finalized | 11. Source | 12. Priority |
|---|---|---|---|---|---|
| | 09-08-81 | 09-08-81 | 12-07-81 | REL | 0   2 |

| 13. DISPOSITION | 14. ANNUAL FAMILY INCOME | |
|---|---|---|
| 1 - Founded | 1 - $0 to 7,000 | 4 - $26,000 to 50,000 |
| 2 - Not Founded/ XXXXXXXXX Subset | 2 - $7,000 to 14,000 | 5 - $50,000 or more |
| 3 - Unfounded | 3 - $14,000 to 26,000 | |
| 4 - Moved | | |

\* 1 ADJUDICATED
\* 2 REASON TO BELIEVE

## SECTION III — INDIVIDUAL INFORMATION

**4**

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Hole | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WHITFIELD | ROBERT | | 07 27 57 | MA | M | A | FA | AP | OP |
| 24. Street Address | | | 26. City | | | 20. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 400 S RUDDELL #125 | | | DENTON | | | TX | 76201 | 061 | NO | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 30. Line | |
| 502744878 | 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 | EMOT BRUI PHYS MEDI | | | | NA | NCF | NA | NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Hole | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | WHITFIELD | ANNA | | 01 09 59 | MA | F | A | MO | AP | OP |
| 24. Street Address | | | 26. City | | | 20. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 400 S RUDDELL #125 | | | DENTON | | | TX | 76201 | 061 | NO | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 30. Line | |
| 502744879 | 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 | EMOT PHYS MEDI | | | | NA | NCF | NA | NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Hole | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 03 | WHITFIELD | RANDY | | 09 13 77 | NA | M | A | OV | VC | OP |
| 24. Street Address | | | 26. City | | | 20. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 400 S RUDDELL #125 | | | DENTON | | | TX | 76201 | 061 | NO | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 30. Line | |
| 502744880 | NA | EMOT BRUI PHYS MEDI | | | | NF | PNF | NA | NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Hole | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 04 | WHITFIELD | WESLEY | | 11 17 80 | NA | M | A | BR | VC | OP |
| 24. Street Address | | | 26. City | | | 20. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 400 S RUDDELL #125 | | | DENTON | | | TX | 76201 | 061 | NO | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 30. Line | |
| 502744881 | NA | PHYS MEDI | | | | NF | PNF | NA | NA | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Hole | 23.SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | | 26. City | | | 20. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| | | | | | | | | | | |
| 30. DHR Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | 30. Line | |
| | | | | | | | | | | |

37. Page _____1_____ of _____1_____ pages

5776

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX  76201   Phone 817/383-2371


June 14, 1983

Michael Whitten
Attorney
Texas Building
Denton, TX  76201

Re:  Randy Lee Whitfield
     DOB:  09-13-77

Dear Mr. Whitten:

On this date a hearing was held before Judge Gray regarding the termination
of parental rights on the above child.  Attached is a copy of the Decree of
Termination and the Answer filed by Attorney Ad Litem John Lawhon.

Randy Lee is presently residing in a foster home and plans will be made to
place him in a suitable adoptive setting.

Sincerely yours,



Beverly Basden
Child Placement Worker III

BB/jm

Attachments

5777

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX  76201:   Phone 817/383-2371


June 14, 1983


Mrs. Anna Whitfield
3818 W. University
Denton, TX  76201

Dear Anna:

On May 20th you signed an Affidavit of Relinquishment of Parental Rights
on Randy Lee Whitfield.  This document was filed with the Court on June 9th
the Department was granted Temporary Managing Conservatorship of the child.
On June 14th the judge signed a Decree of Termination, ordering that Randy
be placed for adoption.

On the day you signed the relinquishments, you indicated that you would like
to visit with Randy Lee when he was placed in foster care.  He is presently
residing in a Denton County Foster Home.  If you will contact this office,
arrangements will be made for a visit.  Our phone number is 817/383-2371, or
you may come by the office on the 3rd floor of the Courthouse on the Square.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

5778

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201:  Phone 817/383-2371

June 14, 1983

Bob R. Whitfield
901 S. Locust, #5
Denton, TX 76201

Dear Mr. Whitfield:

On May 19th you signed an Affidavit of Relinquishment of Parental Rights
on Randy Lee Whitfield.  This document was filed with the Court on June 9th
the Department was granted Temporary Managing Conservatorship of the child.
On June 14th the judge signed a Decree of Termination, ordering that Randy
be placed for adoption.

On the day you signed the relinquishments, you indicated that you would like
to visit with Randy Lee when he was placed in foster care.  He is presently
residing in a Denton County Foster Home.  If you will contact this office, or
arrangements will be made for a visit.  Our phone number is 817/383-2371, or
you may come by the office on the 3rd floor of the Courthouse on the Square.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

5779

CHILDREN'S PROTECTIVE SERVICES
P. O. Box 2186
Denton, TX 76201:  Phone 817/383-2371


June 14, 1983


Bob R. Whitfield
901 S. Locust, #5
Denton, TX 76201

Dear Mr. Whitfield:

On May 19th you signed an Effidavit of Relinquishment of Parental Rights
on Randy Lee Whitfield.  This document was filed with the Court on June 9th
the Department was granted Temporary Managing Conservatorship of the child.
On June 14th the judge signed a Decree of Termination, ordering that Randy
be placed for adoption.

On the day you signed the relinquishments, you indicated that you would like
to visit with Randy Lee when he was placed in foster care.  He is presently
residing in a Denton County Foster Home.  If you will contact this office,
arrangements will be made for a visit.  Our phone number is 817/383-2371, or
you may come by the office on the 3rd floor of the Courthouse on the Square.

Sincerely,


Beverly Basden
Child Placement Worker III

BB/js

5780

Texas Department
of Human Resources

Form 2257
May 1979

## INDEX DATA SHEET
### (Consummated Adoption Records)

| | |
|---|---|
| **Child's Full Adoptive Name** (last, first, middle) *Halperin Randy* | **Ethnic Background** |
| **Previous Legal Name(s)** (last, first, middle) *Whitfield Randy* | |

| | (county) | (state) *Tx* | **Date of Birth** 9-13-77 |
|---|---|---|---|
| **Place of Birth** (city) *Denton* | | | |
| **County of Conservatorship** *Tarrant* | | | **Date of Consummation** 3-2-84 |

Microfilm Roll No(s)........ *DC 8920.18A* ..........

| | **Date of Birth** |
|---|---|
| **Adoptive Mother's Name** (last, first, middle) *Halperin Patricia Anne Fromvick* | *unk* |
| **Adoptive Father's Name** (last, first, middle) *Halperin Daniel Nathan* | *unk* |
| **Biological Mother's Name** (last, first, middle) *Whitfield Anne Marie* | 1-9-59 |
| **Biological Father's Name** (last, first, middle) *Whitfield Bob Randall* | 7-27-57 |
| **Legal Father's Name** (last, first, middle) | |

| Siblings (last, first, middle) | Dates of Birth | Siblings (last, first, middle) | Dates of Birth |
|---|---|---|---|
| | | | |

Original Documents to be Retained (list):

Record Originally Microfilmed on Roll No. .......

NOTE: IF ADDITIONAL SPACE IS NEEDED, USE REVERSE SIDE

5781

ADOPTION READINESS SUMMARY

Randy Lee DOB: 9-13-77
Wesley Allen DOB: 11-17-80



Randy, age five is an attractive, active, bright, outgoing child.

Wesley, age two is a little shy and quiet but is also bright and affectionate. His right eyelid is somewhat droopy but is correctable with surgery.

Wesley came into care in October of 1982. He was removed from his mother by an emergency order because of severe bruising. Two previous incidents of less severe bruising have been documented.

Mr. and Mrs. W., Wesley's parents relinquished their right as to him in late 1982. Their rights were terminated on May 11, 1983 in Cause No. 82-3081-A, 16th Judicial District Court, Denton County, TX, Judge W.C. Boyd presiding.

Randy and Wesley were separated until June of this year when Randy came into care. Wesley lived with his mother and a succession of relatives. Randy was usually with his father or paternal relatives. Randy was not physically abused.

Developmental milestones are unknown.

Mr. and Mrs. W. relinquished their rights as to Randy in early 1983.
Their parental rights as to this child were terminated on June 14, 1983
in Cause No. 82-3081-A, 16th Judicial District Court, Denton County, TX,
Judge Jack Gray, presiding.

The idea and procedure of adoption has been explained to Randy and
Wesley but due to age their level of understanding is not clear.  Randy
is able to say he will have a forever mother and father but Wesley has
not been able to verbalize his understanding of adoption.

Randy has not been formally evaluated as to his level of intellectual
functioning.  He was given a physical examination upon placement
and the pediatrician did not feel testing was necessary as Randy was
healthy and functioning at least at age level.

Wesley was last evaluated in November of 1982.  He fell somewhat below
his devolopmental age in areas related to stimulation and enviorment.
He now appears to be age appropriate and no further testing was
recommended.

The children's mother has drug history, primarily during her teenage
years but it is unclear as to if she used drugs during either pregnancy.

BIRTH AND MEDICAL HISTORY WILL BE FORWARDED AT PLACEMENT AS WELL AS
IMMUNIZATION RECORDS.

Randy and Wesley are early risers.  Wesley takes a long nap in the
afternoon.  Randy does not always sleep, but does rest for at least
one hour in the afternoon.  Both boys enjoy a bedtime story and sleep
with stuffed animals.  Wesley goes to bed about 8:30PM and Randy
usually by 9:00PM.

Both of the boys are good eaters.  The only food Wesley refuses is
bread.  He likes salad, peanut butter and jelly sandwiches.  Wesley
feeds himself.  Lately he has become someshat of a picky eater.  There
are no foods that Randy refuses but he espically likes jelly sandwiches.
Both boys would eat nothing but candy if allowed.

The children are accostumed to eating at the table with the family.
The amount of food Randy eats need to be monitored.  When he came
into care he would eat until he vomited and may be concerned about
there being enough food when he moves into a new home.

Wesley is not potty trained but he is working on it.  The foster mother
puts him on the toilet several times a day.  He sleeps with a diaper on.
Randy is potty trained but has to be watched or he will take large wads
of toilet paper and try to"flush it away".

Both boys like to bathe, alone and together.  They like bubbles and
toys in the tub.

Randy can dress himself but likes to be dressed. He can also tie his shoes. Wesley tries but cannot quite dress himself. Wesley likes to take his shoes off without haveing them untied.

Wesley is in the midst of the terrible twos. He will pinch and bite. He also does not like to hare his toys at this time.

Randy does not stutter but will sometimes repeat words twice or more.

Wesley does not appear to have any fears and acts very independent.

Randy is afraid of devils and ghosts. The foster mother thinks he was allowed to watch "horror" movies on cable and has since developed these fears.

Both boys "love" to swim, the foster parents have a pool. They need to be closely supervised. They also like to ride their bike and big wheel. They like records and books and"love" Sesame Street.

Randy plays well with children his own age as does Wesley. They also get along well with adults. Randy still likes to parent Wesley but the foster mother has been helping him to enjoy being a brother. Randy also likes to follow the foster father around and is quite attached.

Randy will be ready for kindergarten in the fall, he can count bot does not recognize his numbers and letters yet. Randy also enjoys bible school.

Randy does not have any dangerous habits but Wesley will put almost anything in his mouth.

Both fellows are quiet at first but adjust well.


FAMILY BACKGROUND

Mother

Anna W.
DOB: 1-9-59
Education and employment unknown

Father
Bob R. W.
DOB: 7-27-57
Education and employment unknown

Little is known about the family. It has been reported that both parents used drugs. It is not known if drugs were used while the mother was pregnant or to what extent they were used. Wesley lived with his mother and a succession of boyfriends who were physically abusive. Randy lived with his father and various other relatives who were generally neglectful. There are no grandparents or extended family who maintain an interest in these children.

5784

61-416

**CERTIFICATE OF BIRTH**

STATE OF TEXAS                                    BIRTH NO.

| 1. PLACE OF BIRTH a. COUNTY | Collin | 2. USUAL RESIDENCE OF MOTHER a. STATE | Texas | b. COUNTY | Donton |
|---|---|---|---|---|---|

b. CITY OR TOWN: McKinney — c. CITY OR TOWN: Donton — ZIP CODE 76253

c. NAME OF HOSPITAL: Craig Clinic & Maternity Hosp. — STREET ADDRESS: Box 571

IS PLACE OF BIRTH INSIDE CITY LIMITS? YES ☑ NO ☐ — IS RESIDENCE INSIDE CITY LIMITS? YES ☐ NO ☑ — IS RESIDENCE ON A FARM? YES ☐ NO ☑

3. NAME: Randy Lee Whitfield — 4. DATE OF BIRTH 9-13-77

5. SEX: male — THIS BIRTH: SINGLE ☑ TWIN ☐ TRIPLET ☐

7. NAME: Bob Randall Whitfield — 8. COLOR OR RACE white

10. AGE: 20 YEARS — BIRTHPLACE: Texas — USUAL OCCUPATION: drill pres operator — KIND OF BUSINESS: Booman Corp.

13. MAIDEN NAME: Anna Marie Hammons — COLOR OR RACE white

14. AGE: 18 YEARS — BIRTHPLACE: Texas

17. INFORMANT: Anna Whitfield

18. ATTENDANT'S SIGNATURE: Don Mitchell M.D. — ATTENDANT AT BIRTH M.D. ☑
ATTENDANT'S ADDRESS: 1413 W.N. Central Expwy McKinney, Texas 75069 — DATE SIGNED 9-19-77

Time: 8:12 P.

20a. REGISTRAR'S FILE NO. 77-526 — DATE REC'D 9-26-77 — REGISTRAR'S SIGNATURE Melva Kemp

FOR MEDICAL AND HEALTH USE ONLY

STATE OF TEXAS
COUNTY OF COLLIN

I hereby certify that the foregoing is a true and correct copy of the Birth Certificate filed in the Birth Records of Collin County, Texas.

Issued: 5-26-83

Helen Starnes, Clerk
County Court,
Collin County, Texas

5785

# Texas Department of Human Resources

### DENTON COUNTY CHILDREN'S PROTECTIVE SERVICES

## AUTHORIZATION FOR MEDICAL CARE, SCHOOL ENROLLMENT, TRAVEL

JEROME CHAPMAN
Commissioner

BOARD MEMBERS

HILMAR G. MOORE
Chairman, Richmond

PAUL JIMENEZ
San Antonio

Wm. TERRY BRAY
Austin

The Denton County Children's Protective Services Unit, granted conservatorship by the ____ 158th ____ Court, Cause No. 82-3081-A Viteychuk ____, hereby authorizes __Billie and/or Victor__ to obtain the following services for __Randy Lee Whitfield__, born __09-13-77__.

I. EMERGENCY MEDICAL CARE, recommended by a licensed physician or dentist to include:

1. Admission to a hospital
2. Administering anesthetics
3. Performing surgery
4. Giving tests and immunizations
5. Any necessary dental work
6. Filling prescriptions
7. Administering nonprescription drugs

Medicaid __502744880 (pending)__
(number)

II. SCHOOL ENROLLMENT: The foster parents may enroll child in school and sign any necessary school forms.

III. TRAVEL: Foster parents are authorized to travel with said child with notice to agency of trips over 48 hours.

Supervisor

Denton County
Children's Protective Services
P. O. Box 2186
Denton, Texas 76201

STATE OF TEXAS

COUNTY OF DENTON

SWORN TO AND SUBSCRIBED BEFORE ME, This _____ day of _____

A.D., 19___.

_____
Notary Public

MY commission expires_____

5786

PLACEMENT AND REMOVAL FORM
FOR DENTON COUNTY

Child's Name:   Randy Lee Whitfield                    DOB:   9-13-77

Client Number:   502744880

Date of Placement in Foster/Institutional Care:   6-6-83

Date of Removal from Foster/Institutional Care:   _____

Name and Address of Foster Parents   Hector & Billie Viteychuk
   or Caretakers:                      17 Shiloh Circle
                                        ~~Roanoke, TX   76262~~

Facility Number:   080421

*Beverly Baaden*                    6-7-83        817-383-2371
Child's Caseworker                  Date          Phone Number

*Elsa Hen*                          6-8-83
Signature of Supervisor             Date

Please route to:

[  ] Placement/Removal Log

[ ✓ ] Child's Casefolder

[  ] Sallie Wagner, Foster Home Worker

[  ] Yvonne Moore, AFDC Specialist

[  ] Freda Wise, Placement Supervisor

[  ] Beverly Dowcber, Community Service Aide

5787

Randy Lee Whitfield
DOB:  09-13-77

Yvonne Moore  128-7                        Beverly Basden  347-1
Eligibility for Foster Care               Children's Protective Services
Dept. of Human Resources                  P. O. Box 2186
608 #. 4th St.                             Denton, TX  76201
Ft. Worth, TX  76102

June 14, 1983

Attached is a copy of the Application for Foster Care Assistance
on the above child.  Also attached is a copy of his birth certificate,
the Original Petition, Temporary Orders, and the Decree of Termination.

The completed Facts form indicates that he was placed in the foster
home of Hector Viteychuk on June 6, 1983 prior to the Temporary Order
being obtained on June 9, 1983.

An Application for Social Security Number was completed on June 9, 1983,
and this number will be forwarded to you as soon as it is received.


BEVERLY BASDEN
_____

BB/js

Attachments

Texas Department
of Human Resources

**FOSTER CARE ASSISTANCE APPLICATION AND REVIEW**

Form 2200
October 1981

☒ APPLICATION      ☐ REVIEW      ☐ REAPPLICATION

| Child's Name | Sex | Unique Client No. | Date of Initial Placement |
|---|---|---|---|
| Randy Lee Whitfield | M | 502744980 | 6·6·83 |

| Race | | | | | Soc. Sec. No. (If none, enter date application for SSN was made.) |
|---|---|---|---|---|---|
| ☒ White | ☐ Black | ☐ Hispanic | ☐ Am. Indian or Alaskan Native | ☐ Asian or Pacific Islander | 6·9·83 |

Mother's Name
Anna Marie Whitfield

Mother's Address (Street, City, State, ZIP)
3918 W. University, Denton

Father's Name
Bob Randal Whitfield                    ☒ Biological   ☒ Legal

Father's Address (Street, City, State, ZIP)
901 S. Locust, Denton

Stepparent's Name

Stepparent's Address (Street, City, State, ZIP)

**A. ELIGIBILITY REQUIREMENTS FOR AFDC FOSTER CARE (Type Program 08); MAO FOSTER CARE (Type Program 09); AND STATE PAID FOSTER CARE (Type Program 10)**

**1. Managing Conservatorship**

a. Is the child in the managing conservatorship of DHR? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ No

If yes, enter the date of court order and attach copy of the petition
and court order if it has not been previously submitted: . . . . . . . . . . . . . . . . . . . . . . . . . . .   6·9·83

> NOTE: If the answer to a. above is no, the child is not eligible for Program 08, 09, or 10 benefits.
> DO NOT COMPLETE THE REMAINDER OF THIS FORM

b. Was the child placed in an emergency under the statutory authorization
of Chapter 17.03, (a)(3) or (4) T.F.C., prior to court hearing? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☒ No

If yes, enter the date: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**2. Child's Age**

| Date of Birth | Method of Verification | | |
|---|---|---|---|
| 9·13·77 | ☒ Birth Certificate | ☐ Baptismal Certificate | ☐ Hospital Certificate |

**3. Citizenship of Child**

Place of Birth (City, State, County)
McKinney, Texas, Collin County

(check one)  ☒ U.S. Citizen   ☐ Lawfully Admitted Alien   ☐ Of unknown parentage, found in the U.S. under age 5 years.

**4. Type Foster Care Facility (check appropriate box)**

☒ The child is residing in a licensed or certified foster family or group home.

☐ The child is residing in a private non-profit child care institution which is listed in the Appendix II of the SSHB.

☐ The child is in a medical facility which accepts Medicaid and a plan has been made to place the child in a foster care facility.

| Name of Foster Care Facility | Address (Street, City, State, ZIP) | Date Child Removed |
|---|---|---|
| Hector & Ellie Viteychek | 17 Shiloh Circle, Roanoke, Tx 76262 | |

| Facility No. | Daily Rate | Date Child Placed in F.C. Facility or Date Child Entered Medical Facility: | |
|---|---|---|---|
| 080421 | $7 | 6·6·83 | |

5789

Form 2200
Page 2

**NOTE:** The child must be placed within the State of Texas to be eligible for Program 08, 09, or 10 benefits. If the child is placed outside of Texas, DO NOT COMPLETE THE REMAINDER OF THIS FORM.

**5. Resources**

Does the child have property and resources in excess of $1000? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No

If yes, describe:

Method of Verification

**6. Child's Income and Need**

Enter any regular and predictable monthly income, including child support, that is available to the child.

| SOURCE OF INCOME | EFFECTIVE DATE | AMOUNT |
|---|---|---|
| Parental rights terminated | | 0 |
| | | |
| | | |

RSDI, SSI, or RR Ret. Claim No.

Child's Total Monthly Income . . . . . . . . . . . . . . . . . . . . . . .  0

Monthly Cost of Child Care (based on daily rate in item 4) . . . . . $ 210

Who is receiving child's income?         Relationship to Child

**B. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 08 ONLY**

**7. Eligibility Status at Time of Removal** . . . . . . . . . . . . . . . . . . . . . . . . .          Date Court Proceedings Initiated

☐ The child was a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

| AFDC Case Name | AFDC Case No. | Client No. |
|---|---|---|

Name of Parent or Qualified Relative     Relationship ☐ Father ☐ Mother ☐ Other (explain):

Address

Has the AFDC worker been notified to remove the child from the grant? . . ☐ Yes ☐ No     Date          Method

☒ The child was not a recipient of AFDC in the month court proceedings were initiated which resulted in the child's removal.

**8. Domicile and Deprivation of Parental Support**

a. If child was living with parent(s) or relative during the month the petition was filed, check and complete box that applies:

☐ Living With Both Legal Parents:
Was either parent incapacitated? ☐ Yes ☐ No     Method of Verification (Attach Form 33-C if incapacity is based on anything other than SSI or RSDI.)

☐ Living With One Legal Parent: . . . . . . . . . ☐ Mother ☐ Father
Reason for Other Parent's Absence
☐ Parents Not Married ☐ Desertion ☐ Separation ☐ Incarceration ☐ Divorce ☐ Death

☐ Living With Relative:
| Name | Relationship |
|---|---|

5790

Form 2200
Page 3

b. If child was not living with parent(s) or relative during the month the petition was filed, was child living with parent(s) or relative at any time during the six months prior to month of filing? ....... ☒ Yes ☐ No

| If yes, NAME OF RELATIVE | RELATIONSHIP | DATES |
|---|---|---|
| Bob Randal Whitfield | father | 8/82 – 12/82 |

c. Redetermination of Deprivation. If the child were again living in the home from which he was removed, would he/she continue to be deprived of parental support? ....................... ☒ Yes ☐ No

Indicate reason for continued deprivation (i.e. parents not married, deceased, parental rights terminated, etc.)

*parental rights terminated 6-14-83*

9. Verification of Age and Relationship (Verification of relationship applies to both parents and to relatives if the child was living with relatives.)

Method of Verification:  ☒ Birth Certificate  ☐ Hospital Certificate  ☐ Baptismal Certificate

| Name of Hospital or Church Mitchell Clinic & Maternity Hospital | File or Cert. No. | Vol. (Bapt. Cert.) | Page No. (Bapt. Cert.) |
|---|---|---|---|
| City McKinney | County Collin | | State TX |

☐ Evaluative Conclusion (explain):

NOTE: If age and relationship of the child cannot be verified by birth certificate, hospital certificate, or baptismal certificate and are determined by evaluative conclusion, this form must be signed by the Protective Services Supervisor.

Signature—Supervisor Approving Above Eval. Concl.          Date

10. Family Need
If the child was NOT receiving AFDC in the home of his/her legal parent(s), the following must be completed to establish financial need of family. (Needs and resources of non-legally responsible relatives are not to be considered.) Needs and resources of the child's legal stepfather are considered if the stepfather resides in the home.

| NUMBER IN FAMILY | GROSS MONTHLY INCOME | SOURCE OF INCOME | FAMILY MEMBERS TO WHOM THE INCOME IS ATTRIBUTED |
|---|---|---|---|
| | | | ☐ Mother ☐ Father ☐ Step-father ☐ Child |
| | | *Terminated* | ☐ Mother ☐ Father ☐ Step-father ☐ Child |
| | | | ☐ Mother ☐ Father ☐ Step-father ☐ Child |
| | | | ☐ Mother ☐ Father ☐ Step-father ☐ Child |
| | | | ☐ Mother ☐ Father ☐ Step-father ☐ Child |

How was income determined?

5791

Form 2200
Page 4; Rev. 4-81

**11. WIN Status of 16 or 17 Year Old Child**

☐ Exemption Claimed

Basis for Exemption
☐ Illness or Incapacity    ☐ Currently Attending School    ☐ Remoteness from WIN Project

☐ No Exemption Claimed

Child:
☐ Registered for WIN Program    ☐ Refuses to Register

**C. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR PROGRAM 10 ONLY** (check the box if the statement applies)

☐ A petition for termination of parental rights of one or both parents under Section 15.02 TFC other than or in addition to 15.02 (I) (J) has been filed by DHR. Date of Petition for Termination: . . . . .

Date (att. copy of petition)
**6-9-83**

☒ The child was placed in foster care after August 31, 1979.

**D. ADDRESS FOR FORM 3087** (Medical Care Identification Card) — If Form 3087 is to be sent to someone other than the facility in which the child is placed, complete the following:

Name

Mailing Address (Street, City, State, ZIP)

**E. THIRD PARTY RESOURCE INFORMATION**

Is child covered by private health insurance (Blue Cross Blue Shield, CHAMPUS, etc.)? . . . . . . . . . . . . . . . . . . ☐ Yes    ☐ No

If yes, complete the following for each policy under which the child is covered. If the child is covered by more than two policies, include the following information on an attached sheet of paper for the additional policies.

**POLICY NO. 1**

| Company Name | 1st Line Address | | |
|---|---|---|---|
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

**POLICY NO. 2**

| Company Name | 1st Line Address | | |
|---|---|---|---|
| 2nd Line Address | City | State | ZIP |
| Policy Holder | Employer Name | | |
| Policy No. | Group No. | Beginning Date | Ending Date |

When eligibility worker and child-placing worker are not the same, the child-placing worker must sign below.

*Beverly H. Basden*                     **6-14-83**
Signature—Social Services Child-placing Worker          Date

| Mail Code | BJN | Unit No. | Telephone No. |
|---|---|---|---|
| 347-1 | 05135 C02 | 35 | (817) 383-2371 |

Texas Department
of Human Resources

## MEDICAL HISTORY AND PHYSICAL EXAMINATION

Dr. Czohner
8/2/83
TCOM

Form 2939
February 1983

| Name | Date of Birth | Examining Physician | Date of Examination |
|------|---------------|---------------------|---------------------|
| Randy Lee Whitfield | 9-13-77 | | 9-2-83 |

| Address of Physician | Telephone No. |
|----------------------|---------------|
| 3100 S. Riverside   Ft Worth, Tx  76119 | 921-2652 |

## MEDICAL HISTORY

| ITEM | YES | NO | Unk. or NA | COMMENTS |
|------|-----|----|-----------|---------|
| Gestation Problems | | | | |
| Prematurity | | | | |
| Congenital Defects | | | | |
| Birth Injury | | | | |
| Serious Illnesses | | | | |
| Serious Accidents | | | | |
| Hospitalizations | | | | |
| Surgeries | | | | |
| Seizures | | | | |
| Eye/Ear Infections | | | | |
| Respiratory Infections | | | | |
| Urinary Tract Infections | | | | |
| Vaginal Tract Infections | | | | |
| Venereal Disease | | | | |
| Headaches | | | | |
| Menses/Dysmenorrhea | | | | |
| Enuresis | | | | |
| Measles | | | | |
| Mumps | | | | |
| Rubella | | | | |
| Diphtheria | | | | |
| Tetanus | | | | |
| Pertussis | | | | |
| Polio | | | | |
| Chicken Pox | | | | |
| Scarlet Fever | | | | |
| Rheumatic Fever | | | | |
| Allergies | | | | |
| Constipation/Diarrhea | | | | |
| Worms/Parasites | | | | |
| Digestive Problems | | | | |
| Drug Use | | | | |
| Other | | | | |

5793

Form 2939
Page 2

## FAMILY HISTORY

| DISEASE/CONDITION | YES | NO | Unk. or NA | COMMENTS |
|---|---|---|---|---|
| Diabetes | | | | |
| Cardiovascular Disease | | | | |
| Renal Disease | | | | |
| Cancer or Leukemia | | | | |
| Tuberculosis | | | | |
| Emotional/Mental Disorder | | | | |
| Mental Retardation | | | | |
| Genetic Abnormality | | | | |
| Epilepsy | | | | |
| Abuse/Neglect | | | | |
| Other | | | | |

## IMMUNIZATION/BOOSTER STATUS

| VACCINE | DATE 1 ST DOSE | DATE 2 ND DOSE | DATE 3 RD DOSE | DATE 1ST BOOSTER | DATE 2 ND BOOSTER |
|---|---|---|---|---|---|
| DTP/Tr | | | | | |
| Polio | | | | | |
| Measles, Vaccine | | | | Measles, Illness(Date) | |
| Mumps, Vaccine | | | | Mumps, Illness(Date) | |
| Rubella, Vaccine | | | | | |

n/a see shot record   up to date

## TESTS

| TEST | NORMAL | ABNORMAL | NOT TESTED |
|---|---|---|---|
| PKU | | | |
| Urinalysis | ✓ | | |
| CBC | | | |
| Sickle Cell Hemoglobin | | | |
| Lead | | | |
| Tuberculosis | ☐ Negative | ☐ Positive | |
| Other | | | |

5794

Form 2939
Page 3

## PHYSICAL EXAMINATION

| Temperature 98⁴ | Pulse 94 | Respiration 20 | Blood Pressure 1⁰⁰/₆₀ | Weight 48 ¾ | Height 46 |
|---|---|---|---|---|---|
| Head Circumference (less than 3 yrs.) | | Neurological: ☐ Done  ☐ Not Done  ☒ Normal  ☐ Abnormal | | | |

| ITEM | Normal | Ab-normal | Not Done | DESCRIBE ABNORMALITY |
|---|---|---|---|---|
| Vision Screening | ✓ | | | Rt. 2⁰/25          Left 2⁰/25 |
| Hearing Screening | ✓ | | | Rt. 15/15          Left 15/15 |
| Developmental Level | ✓ | | | |
| Nutritional Status | ✓ | | | |
| Musculoskeletal | ✓ | | | |
| Extremities | ✓ | | | |
| Skin (rash, old or recent scars) | ✓ | | | Cafe au lait spot LLQ. |
| Head/Scalp/Hair | ✓ | | | |
| Eyes, Ears, Nose, Throat | ✓ | | | |
| Mouth and Teeth | ✓ | | | |
| Neck | ✓ | | | |
| Chest | ✓ | | | |
| Lungs | ✓ | | | |
| Heart | ✓ | | | |
| Abdomen | ✓ | | | |
| Hernia | ✓ | | | |
| Genitalia | ✓ | | | |
| Rectum | ✓ | | | |
| Gait | ✓ | | | |
| Coordination | ✓ | | | |
| Development Progress | ✓ | | | |
| Speech/Language Development | ✓ | | | |

Comments: Healthy, 5 y/o male.

5795

Form 2839
Page 4

Is the patient allergic to any drugs or food?   If yes, specify:

*NKA*

Is the patient currently taking any medication?   If yes, specify:

*No*

Does the patient show evidence of child abuse (physical/sexual/psychological)?   If yes, specify:

*None*

Are there any apparent problems in the areas of developmental level, speech, behavior, or emotional difficulties?   If yes, specify:

*No*

Is there anything of medical significance to this patient not included in this form?   If so, please describe:

Diagnostic Impression:

*Healthy 5 y/o white male*

Treatment Recommended, if any:

Signature—Physician

9/2/83
Date

5796

R Andy

# BOYS FROM 2 TO 18 YEARS
## STATURE FOR AGE



5797



BOYS FROM 2 TO 18 YEARS
WEIGHT FOR AGE

5798

05-7103
October 1981

## RECORD OF MEDICAL AND DENTAL TREATMENT

Name of Child _Randy Whitfield_          SSMS Client #_____

Birth Date _9-13-77_                       Medicaid #_____

| Date of Appointment | Name and Address of Doctor | Diagnosis | Recommended Treatment | Prescribed Medicine and Dosage |
|---|---|---|---|---|
| 6·17·83 | Dr. Greg Jackson | physical | | none |
| | | | | |
| | | | | |
| | | | | |

5799

Form Cs-1365

# CHILD'S MEDICAL RECORD
## Face Sheet

Number _____

Name: *Randy Lee Whitfield*  Sex *Male*  Date of Birth *9/13/77*

Nationality { Father *white* / Mother *white*
Race of: {

**Family History:**

| | Age | Living | If dead, cause of death |
|---|---|---|---|
| Father | | | |
| Mother *Anna Whitfield* | 23 | yes | |

No. of Children  *2*
*Randy Whitfield - 5 yrs*
*Wesley Whitfield - 2 yrs*

(Refers to members of family and relatives)
Miscarriages ___ Month ___ Cause ___
Tuberculosis ___ TBC Contacts ___
Allergy ___
Mental Disorder ___
Diabetes ___
Convulsive Disease ___

## BIRTH AND DEVELOPMENT

Term ___    Delivery ___
Condition at birth ___    Birth Weight ___
Condition first week ___    Feeding ___    Stood ___
Cyanosis ___    Sat up ___    Words ___
Convulsions ___    Walked ___    Short sentence ___
Jaundice ___    First tooth ___    Bowel ___
    Bladder ___

## FEEDING HISTORY

Breast ___    Formula ___
Vitamins ___    Soft food ___
Present diet ___    Feeding habits ___
Appetite ___    Likes ___    Dislikes ___
Vomiting ___    Stools ___    Asthma ___
Sensitivity ___    Hives ___    Hay Fever ___

## HABITS

Sleep adequate *okay*    Regular ___    Meals adequate *okay*
Regular ___    Bowel movement regular *okay*    Enuresis ___
Constipated ___    Urination normal ___
Nocturnal *okay*    Diurnal ___

## NERVOUS HABITS

Nail biting? *no*    Tic? *no*    Masturbation? *no*
Other? ___

## BEHAVIOR

Any special problems? ___

### IMMUNIZATIONS AND TESTS

| Vaccine | Dates | | Comments |
|---|---|---|---|
| DPT | 6/10/82 | 6/16/83 | |
| DT | | | |
| Diphtheria | | | |
| Pertussis | | | |
| Tetanus | | | |
| Typhoid | | | |
| Polio | 6/10/82 | 6/11/83 | |
| Smallpox | | | |
| Dick Test | | | |
| Tuberculin | | | |
| Hemoglobin | | | |
| STS | | | |
| Stool | | | |
| X-ray of Chest | | | |

Accidents, Injuries, Operations.

### ILLNESSES

Pertussis ___    Other Operations ___
Measles ___    Glands ___
Rubella } *Vaccine* ___    Rheum. Fever ___
Mumps } *6/10/82*    Otitis ___
Chickenpox ___    Colds ___
Scarlet Fever ___    Tonsillitis ___
Diphtheria ___    Convulsions ___
T & A ___    Constipation ___
Appendix ___    Diarrhea ___

*completed by foster mother at time of exam on 6·17·83.*

5800

# CHILD'S MEDICAL RECORD
## EXAMINATIONS AND RECOMMENDATIONS

Form Ca

Name _Randy whitfield_     Birth Date _9-13-77_

| | | | | | | |
|---|---|---|---|---|---|---|
| Any Complaint? | | | | | | |
| Height | 43'/2 | | | | | |
| Weight | 48'/2 | | | | | |
| Temperature | | | | | | |
| Head Measurement on Infant | | | | | | |
| Skin | OK | | | | | |
| Scalp | | | | | | |
| Eyes – Pupillary Reaction | Rt. 20/20  Lft. 20/20 | | Rt.  Lft. | | Rt.  Lft. | |
|    Vision Without Glasses | | | | | | |
|    Vision With Glasses | | | | | | |
|    Eyegrounds | | | | | | |
|    Other | wax (R) canal | | | | | |
| Ears – Otoscopic | Rt.  Lft. | | Rt.  Lft. | | Rt.  Lft. | |
|    Hearing | | | | | | |
|    Other | OK | | | | | |
| Nose | | | | | | |
| Teeth – Number | | | | | | |
|    Condition | | | | | | |
|    Occlusion | Rare caries | | | | | |
|    Other | | | | | | |
| Throat – Pharynx | | | | | | |
|    Tonsils | | | | | | |
| Adenoids | | | | | | |
| Glands | | | | | | |
| Thyroid | clear | | | | | |
| Chest | 2/6 SEM well | | | | | |
| Heart | localized (R) LSB | | | | | |
| Lungs | OK (whole) | | | | | |
| Abdomen | | | | | | |
| Secondary Sex Characteristics | | | | | | |
| Genitals | | | | | | |
| Deep Reflexes | OK | | | | | |
| Superficial Reflexes | | | | | | |
| Extremities | | | | | | |
| Feet | | | | | | |
| Spine | | | | | | |
| Posture | | | | | | |
| Nutrition | | | | | | |
| Menstrual History since last visit on adolescent girl | | | | | | |
| Signs of Endocrine Imbalance | No | | | | | |
| Signs of Vasomotor Instability | | | | | | |
| Other | | | | | | |
| Urinalysis-Color, Reaction, Sp.G. | neg | | | | | |
|    Sugar, Albumin, Micros. | 112/52 | | | | | |
| Blood Pressure | | | | | | |
| Blood Hemoglobin, Count, etc. | | | | | | |
| Other Tests | | | | | | |
| Impression and Advice | | | | | | |
| Examining Physician | Dr. _Garcia_  Date _2-17-83_ | | Dr.  Date | | Dr.  Date | |

ISSUED BY CHILD WELFARE LEAGUE OF AMERICA — 100M-6/66

For recording subsequent medical examinations, another (Cb) may be secured from the Child Welfare League office.

5801

*Information obtained from Anna Whitfield on 5-20-83*
*Mother has not seen Randy in approximately 6 mos.*

Form Co-1361

## CHILD'S MEDICAL RECORD
### Face Sheet

Number *6 mos.*

Name *Randy Whitfield*     Sex *M*     Date of Birth *9-13-77*     Nationality Race of: { Father *Caucasian* Mother

**Family History:** — *Mother's parents*

| | Age | Living | If dead, cause of death |
|---|---|---|---|
| Grand*father* | | | *cancer —* |
| Mother | | | *malignant melanoma* |
| No. of Children | | | |

(Refers to members of family and relatives)
Miscarriages *0*
Month _____ Cause _____
Tuberculosis *no*
TBC Contacts _____
Allergy *no*
Mental Disorder *no*
Diabetes *no*
Convulsive Disease *no*

### BIRTH AND DEVELOPMENT

Term *full*
Condition at birth *good*
Condition first week _____
Cyanosis *no*
Convulsions *no*
Jaundice *no*

Delivery *anesthesia & forceps*
Birth Weight *7 lb.*
Feeding *bottle - similac, SMA, soybean*
Sat up *7 mo.*     Stood *11 mo.*
Walked *14 mo.*     Words *7 mo.*
First tooth *5 mo.*     Short sentence *18 mo.*
Bladder *no*     Bowel *no*

### FEEDING HISTORY

Breast _____
Vitamins *yes - drops*
Present diet *good*
Appetite *good*     Likes _____     Dislikes _____
Vomiting _____     Stools _____
Sensitivity _____     Hives _____     Hay Fever _____     Asthma _____

Formula *2 mo. - whole milk & Karo*
Soft food *6 mo. - table food*
Feeding habits _____

### HABITS

Sleep adequate *reluctant to go to sleep*     Regular _____     Meals adequate _____
Regular _____     Bowel movement regular _____     Enuresis *gets up at night*
Constipated _____     Urination normal _____
Nocturnal _____     Diurnal _____

### NERVOUS HABITS

Nail biting? *no*     Tic? *no*     Masturbation? *no*
Other? _____

### BEHAVIOR

Any special problems? _____

### IMMUNIZATIONS AND TESTS

| Vaccine | Dates | | | Comments |
|---|---|---|---|---|
| DPT | | | | |
| D T | | | | |
| Diphtheria | | | | |
| Pertussis | | | | |
| Tetanus | | | | |
| Typhoid | | | | |
| Polio | | | | |
| Smallpox | | | | |
| Dick Test | | | | |
| Tuberculin | | | | |
| Hemoglobin | | | | |
| STS | | | | |
| Stool | | | | |
| X-ray of Chest | | | | |

### ILLNESSES

Pertussis _____
Measles *no*
Rubella *"*
Mumps _____
Chickenpox *4-78*
Scarlet Fever *no*
Diphtheria *"*
T & A _____
Appendix _____

Other Operations _____
Glands _____
Rheum. Fever *no*
Otitis *no*
Colds *few*
Tonsillitis *no*
Convulsions *no*
Constipation *reg.*
Diarrhea *no*

*no operations*

5302

Texas Department
of Human Resources

**CHILD PROTECTIVE SERVICES**
**LEGAL RECORD**

Form 2222
August 1980

| Child's Name | Cause No. | County |
|---|---|---|
| *Randy Lee Whitfield* | 82-3081-A | *Denton* |

Child's Attorney Ad Litem: *John Lawhon*

Telephone No. (817) 382-6762

Address of Attorney Ad Litem: *P.O. Box 44, Denton, Tx*

**REQUESTS FOR COURT ACTION AND LEGAL ACTIONS TAKEN**

| DATE OF REQUEST or ACTION COURT NO. JUDGE'S NAME | SUMMARY OF REQUESTS FOR COURT ACTION (Include person or office to whom request made or brief statement of legal action requested. Reference copy of written request filed in the case folder.) | SUMMARY OF LEGAL ACTIONS TAKEN (Brief and concise statement of the petition, judgement, or court order, including to whom conservatorship of the child was awarded.) |
|---|---|---|
| 6-9-83 | *Temp. M.C.* *Father's Voluntary Relinquishment* *Mother's  "  "* *Petition* | *Judge Boyd* |
| 6-14-83 | *Decree of Termination* | *Judge Gray* |

5803

Form 05-2100
Page 4

VIII. CHILD'S INDIVIDUAL NEEDS IN PLACEMENT: *Randy will benefit from placement with his younger brother. He will require structure and consistent discipline from both male & female caretakers. The need for therapy can be determined after his initial adjustment to the foster home.*

IX. GOALS FOR CHILD:

A. Short Term Goals:
1) *provide secure environment with brother in same foster home*
2) *enroll in kindergarten in fall*

B. Long Term Goals:
*Adoption of Randy and his younger brother, Wesley.*

X. FAMILY MEMBER OR MANAGING CONSERVATOR PRIMARILY RESPONSIBLE FOR RELATIONSHIP WITH AGENCY AND CHILD:

Name *Beverly Basden*     Address *P.O. Box 2186, Denton*

Phone Number *(817) 383-2371*

XI. PLACEMENT DATA:

A. Discussion of placement with parents (individualized in reference to each child in placement):

1. Reason for placement (explained to parents):
*parents signed voluntary relinquishments of rights*

2. Type of placement (explained to parents):
*foster care prior to adoptive placement*

3. Anticipated length of placement (explained to parents): *6 mos.*

4. Parents told that parent-child visits, gifts, mail, phone calls are to be arranged on an individual basis with the workers:
*yes* ___ no. *Father requested visit but has not contacted worker since Randy has been in custody.*

5. Parents' expectations of placement:
*Mother had last visits with children on 6-20-83.*
*Randy and his brother, Wesley, will be placed with adoptive parents.*

5804

Form 05-2100
Page 5

B. Discussion of placement with child:

1. Reason for placement explained to child: ✓ yes    no_____

2. Type of placement explained to child: ✓ yes    no_____
If no, why not?

3. Anticipated length of placement explained to child: ✓ yes   no___
If no, why not?

4. Child told that parent-child visits, gifts, mail, phone calls are
to be arranged on an individual basis with the worker?

_____yes _____ no _Randy was told he had visited
for the last time with his mother._

5. Child's understanding of and reaction to placement:

C. Substitute Care Placement:

1. Foster families/facilities reviewed for placement: (list names)
_Hester & Billie Viteychuk were the only family
contacted since they had his brother in their home._

2. Verbal presentation of child to family/facility selected _6·6·83_
Date

3. Pre-placement visits/dates: (if no pre-placement visit done, explain)
_Younger brother was in foster care and foster
parents were willing to take Randy so brothers
could be together._

4. Date of placement: _6·6·83_

5. Reason for selection of type of substitute care: _unite Randy & his
younger brother in same foster home._

_Beverly Basden_
Worker

_Cindy Hyatt MSW, CSW_
Supervisor, M.S.S.W.

_6·27·83_
Date

_7-5-83_
Date

5805

Form 05-2100
Page 6

For emergency placement, the following information must be shared with
the foster parents _after_ the date of completion of the Intake Study:

Social          Yes ✔

Medical         Yes ✔

Psychological   Yes_____      N/A_____     _to be assessed_

School History  Yes_____      N/A ✔

5806

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield

Randy " - see p 2.

TO:

Beverly Basden

FROM:

Beverly Deweber
PPT Recorder

DATE: June 3, 1983

This was the review of the above named case which was staffed by the Permanent Planning Team on May 18, 1983. The Permanent Planning Team members present at the staffing were Allene Margowski, Sara Ham, John Ramfield, and Melody Rockwall. Also present were Dr. May Connell, psychologist from Fort Worth, and foster parents Mr. and Mrs. Hector Viteychuk. The discussion held on that date and the case plan developed are as follows:

MATERIAL PRESENTED AND DISCUSSED:

Legal Status

Wesley was removed under an Emergency Order on 10-28-82 following a report from Dr. Jackson that the child had bruises on his posterior side. This was the third such bruising incident since July of that year.

On November 4, 1982, the father signed an Affidavit of Voluntary Relinquishment of Parental Rights; the mother signed such an Affidavit on April 29, 1983.

A Decree of Termination was signed by Judge Boyd on May 11, 1983. The Department was appointed managing conservator of the child and authorized to place him for adoption.

Medical

Wesley had surgery on March 30th to insert tubes in both ears and elevate the eyeball and shorten the muscle in the eyelid of his right eye. The eye surgery was to correct a congenital defect. No evidence of neurofibromatosis was reflected in a neurological exam performed prior to the surgery.

Only slight swelling is noted on the right eyelid. The surgical scar has healed nicely. Wesley has been treated once by a doctor for infection of the right ear and a sore throat since the surgery. He does occasionally complain of his ears hurting when he lays down.

AN EQUAL OPPORTUNITY EMPLOYER

5807

Wesley Whitfield
Page 2

Foster Care

At the time of the emergency removal, Wesley was placed in the foster home
of Billie and Hector Viteychuk.  He continues to reside there at the present
time.

Wesley made an immediate adjustment into this foster home.  He experienced
no problems with eating or sleeping disturbances; however, he did have
numerous ear infections and has been on antibiotics most of the time while
he has been in placement.

The foster mother has been very supportive of the ear and eye surgery.
The surgery was postponed on two occasions:  once because the child had
been exposed to chicken pox, and the second time because of an ear infec-
tion.  Since the hospital was located in Dallas, numerous trips were made
before the actual surgery was performed.  The natural mother participated
in two of the visits to the hospital, along with the foster mother.

When the natural mother, Anna Whitfield, signed relinquishments, she
indicated that she would like Wesley and his five year old brother Randy
to be placed together in adoption.  Randy has been placed by his father
with some people in East Texas.

Mr. and Mrs. Viteychuk said they are very interested in adopting Wesley but
do not feel capable of adopting both Wesley and Randy.

GENERAL CASE PLANS:

1.  Try and locate five year old Randy.

2.  Secure possibility of adoptive placement with Randy.

3.  Secure adoptive studies from PPU for Wesley.  Share these with the
    Viteychuks to determine commitment to adoption.


Beverly Deweber
PPT Recorder

Sara Ham
Child Placement Supervisor

ew

cc:  Allene Margowski
     John Ramfield
     Barney Hisanaga
     Jeanie Perullo
     Melody Rockwall
     file

CASE FACE SHEET

05-2852
Nov. 1981

NAME _Whitfield, Randy_  HOME PHONE _(214) 769-2465_

HOME ADDRESS _Norris Mobile Home Park, Rt 1, Hwy 14,_ (Betty Pair)
_Hawkins, Tex._

DIRECTIONS _____

_Father placed son with this family in January, 1983._

## FAMILY COMPOSITION IN HOME AT TIME OF REFERRAL

Father, Stepfather, (Parent Substitute)
(circle one)
FULL NAME _Brown_  _Marvin_
        Last    First    Middle

Mother, Stepmother, (Parent Substitute)
(circle one)
FULL NAME _Brown_  _Jeannette_
        Last    First    Middle

Date _____ Birthplace _____
Race _English_  Education _____
    Primary Language

Occupation _____ Religion _____

k Address _____ Phone _____

_married_
Marital Status

Birthdate _____ Birthplace _____
Race _English_  Education _____
    Primary Language

Occupation _____ Religion _____

Work Address _____ Phone _____

_married_
Marital Status

## CHILDREN IN HOME

| FULL NAME | DOB | SEX | RACE | BIRTHPLACE | GRADE | RELATIONSHIP TO CASE NAME |
|---|---|---|---|---|---|---|
| Katrina Brown | 13 | F | C | | | natural children of caretaker, none |
| Carl Brown | 7 | m | C | | | |
| Jerry Brown | 10 | m | C | McKinney | | |
| Randy Lee Whitfield | 9-13-77 | m | C | | | |

## CHILDREN OUT OF HOME

| NAME OF CHILD | WITH WHOM LIVING/RELATIONSHIP | ADDRESS/PHONE |
|---|---|---|
| Wesley Whitfield | foster home - rights terminated | |

5809

05-2862
Page 2

| DATE | LATEST HOME ADDRESS | PHONE |
|---|---|---|
| | | |
| | | |
| | | |

## INTERESTED RELATIVES AND INDIVIDUALS

| NAME | RELATIONSHIP | ADDRESS | PHONE |
|---|---|---|---|
| Bob & Shirley Whitfield | paternal GF & GM | Hwy 1830, Denton | 566033? |
| Jerre Mary Hammons | maternal Uncle | Denton | 382-3264 |
| James & Faye Barnett | " aunt | Rt 2. Argyle) | 464-7776 |

## OTHER AGENCIES, ORGANIZATIONS INVOLVED

| AGENCY | CONTACT PERSON | PHONE |
|---|---|---|
| | | |
| | | |

## OTHER PERSONS IN HOME

| NAME | DOB | SEX | RELATIONSHIP TO CASE NAME |
|---|---|---|---|
| | | | |
| | | | |

## NATURAL PARENT IF DIFFERENT FROM ABOVE

FULL NAME  Whitfield  Bob  Randal
Last  First  Middle
Relation to Which Child(ren)  father of Randy

Caucasian
RACE

BIRTHDATE  7-27-57    BIRTHPLACE

HOME ADDRESS  901 S. Locust, Denton        PHONE  none

WORK ADDRESS        PHONE

FULL NAME  Whitfield  Anna
Last  First  Middle
Relation to Which Child(ren)

Caucasian
RACE

BIRTHDATE  1-9-59    BIRTHPLACE  Denton

HOME ADDRESS  James Barnett   (lives with sister   PHONE  #464-7776
Rt 2, Argyle, Tx   (Faye Barnett)

WORK ADDRESS  Flow Hospital, Denton        PHONE

5810

Form 05-2100
March 1983

INTAKE STUDY FOR CHILD IN SUBSTITUTE CARE

NAME OF CHILD: *Randy Whitfield*    Date Initiated: *6-6-83*
SS# *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*    (must be initiated within
    five days if emergency
Religion *UK*    placement)

I. DESCRIPTION OF FAMILY CIRCUMSTANCES NECESSITATING PLACEMENT:
   (If emergency placement, why was this necessary?)
   *Mother and father both signed voluntary relinquishments of parental rights. Caretaker of child stated the family could no longer provide care for Randy because of financial stress of medical problems of family.*

II. CHILD'S DEVELOPMENT HISTORY:

   A. Prenatal and Birth History:
   *This was first pregnancy of mother. She had prenatal care and full term delivery was under anesthesia and with forceps. Birth weight: 7 lbs.*

   B. Physical Development: *Mother reports child developed at normal pace.*

   C. Age at which child:
   Sat alone *7 mo.*   Crawled *—*   Stood alone *11 mo.*
   Walked *14 mo.*   Said first word *—*   Spoke in phrase or sentence *13 mo.*

   CR

Form 05-2100
Page 2

III. CHILD'S MEDICAL HISTORY:

A. Description of illnesses, operations, fractures, etc. *None were reported by the mother - Randy was missing 2 front center teeth (one up; one down) when taken into foster care. These were reported to have been knocked out.*

B. Immunization record: _____ yes   Date requested _____

C. Birth certificate or other birth record: *✓* yes   Date requested _____

D. Tuberculosis test: _____ yes _____ no _____ not applicable

E. Physical description of child: *Height: 43½"   Weight: 48½ lbs. Hair: dark brown. Eyes: brown. Skin: fair. Medium bone structure. (See photo)*

F. Date of child's last physical examination: *6·17·83*

G. Date of appointment for next physical: _____
(If above is not within the last 30 days)

H. Date child's last dental examination: _____

I. Date of appointment for next dental exam: *dental card requested*
(If child is three years or older and last exam not within one year *on* before placement)

IV. CHILD'S PERSONALITY, BEHAVIOR AND INTERESTS:

A. Intellectual Development: *Randy is verbal and most observant. He is quick to pick up with routines and schedules.*

B. Emotional Development: *Previous caretaker noted obsession with monsters and supernatural. Foster mother feels he is normal five year old, reporting no unusual problems.*

C. How does child relate to adults? *Randy relates especially to males. While he relates well to females, he often test their limits.*

D. How does child relate to children? *Randy makes friends easily. He is talkative and friendly. He is particularly protective of his 2 yr old brother.*

E. Describe any special problems, interests or abilities: *Randy has expressed an interest in attending daycare. For the brief period of time he was enrolled, he was reported to be bright and anxious to learn.*

5812

Form 05-2100
Page 3

F. Give date and state the location in the folder of any psychological or psychiatric test results:

V. CHILD'S SCHOOL HISTORY (if applicable):

A. Child's adjustments to school:

*He was enrolled in daycare for approximately a mo. in fall '82. His adjustment was excellent.*

B. Relationships with peers:

C. Relationships with teachers:

D. Level of achievement:

Grade or special class child is placed in:_____

Grade or level of child's performance:_____

Child's grades are usually: Above Average_____ Average_____
Below Average_____ Failing_____

VI. PREVIOUS PLACEMENTS
(dates and descriptions)

*none*

VII. CHILD'S LEGAL RECORD:

| Description of Court Order or Petition | District Cause Court Number | Dates of Orders | Approved by P. D. and Supv. |
|---|---|---|---|
| *Decree of Termination* | | 6·14·83 | |

Child Support Ordered: Yes____ Amount $_____ No__X__

5813

ADOPTION TRANSFER SHEET

Child's Original Name _Randy Lee Whitfield_

Child's Date of Birth _9-13-77_

Adoptive Parents Name _Dan & Patricia Halpren_

Date Consummated _3-2-84_

Natural Mother's Name _Anna Whitfield (Hammons_
_(maiden none)_

D.O.B. _1-9-59_

Natural Father's Name _Bob Randall Whitfield_

D.O.B. _7-27-57_

Siblings _Wesley Allen Whitfield_ D.O.B. _11-17-80_

_____ D.O.B. _____

_____ D.O.B. _____

Adoption Decree Date _3-2-84_

Included in folder _____
(Please check)

5814

PROGRESS REPORT

FAMILY:          Dan and Pat Halprin
CHILDREN:        Randy and Wesley
CONTACT:         1/17/84          Face to Face

     The Halprins related during the home visit that they have made a
decision as to the legal name that both children will assume.  Randy will be known
as Randy Ethan Halprin.  Wesley's legal name is Wesley Doran Halprin.  Both have
assumed family middle names.  Their court date has been scheduled for the 1st
week in March.  Since placement, the youngsters continue to make positive progress
in adjusting into their new home.  The children are given responsibilities and
chores, with each being given new responsibilities since the last visit.  The
Halprins feel that it is important that their responsibilities increase as they
become more responsible. Randy is now asked to pour the milk for both boys and
to clear the table.  Wesley is asked to assist Randy in clearing the table.  They
related that the holiday season was a wonderful experience for them as a family.
They visited relatives on the East Coast, relating many wonderful and fond ex-
periences they had with their respective families.  Dan has had a job change
and is currently enrolled full-time in school.  He is in business for himself,
listing an estimated income as $24,000.00 annually.  Pat has had an increase in
her salary, listing her income as $35,000.00 per year.

     The children have had no major physical problems other than a persistant
ear infection that Wesley has had on numerous occasions.  They are continuing to
have a growth spurt, adding growth and weight.  Both boys are in school with Randy
doing very well.  Wesley is attending day care where he remains all day.  Both
children love the school setting and association with other children.  Their
relationship with their peers is described as being excellent.  Wesley is learning
to skate, with Dan and Pat describing his abilities as being very humorous.  They
related at this time that they are not experiencing any unusual fears, although
they have noticed that Randy appears to be somewhat pre-occupied with death.  He
is constantly asking them if they are going to die, or if some other family member
or friend is going to die.  They do not view this as being a major problem, but
simply curiousity on his part as to the real meaning of death.  He is described as
still being one who gets extremely  upset when he is around teenage boys.  He continues
to relate that, "teenagers beat me up".  He will cover his face with his hands and
cry out when he sees any teenagers or violence.  They continue to have a young teenage
boy babysit with him, which is helping to eliminate this fear.   Both youngesters

5815

Case 2:13-cv-01303    Document 1-10    Filed 08/28/13    Page 462 of 533    PageID #:9248

Progress
Family: Halprin
Page 2   1/17/84

appear to have no problems sleeping, with a set routine each night being followed
by Dan and Pat, reading books before the lights are turned out.  The boys are
relatively easily disciplined by taking away of privileges or through isolation.
The children are sent to their room to sit on their beds to think about the mistake
that they made.  Randy recently loss the privilges of watching the video movies
on TV for a week due to misbehavior.  Randy is involved in gymnastics, finding great
enjoyment in this activity.  He did need a great deal of encouragement to become
involved in this activity.  He still is a child that hesitates before experiencing
anything  new.  Randy is reading, enjoying the Dr. Suess books.  The problems that
were discussed in the December visit seemed to have disappeared, other than Randy's
fear of teenagers.  They related that the boys have asked questions about their past,
with Dan and Pat going through the life book with them.  Randy recently told Dan
and Pat that Bob Randall loved him and was going to come and get him.  When Dan
and Pat told him "no", that he could never come and get them, they found that Randy
was very relieved.  The two boys are getting along well with minimal sibling rivalry
reported.  They have not been involved in hitting each other.  Lately they have
noticed that tantrums have decreased to almost nil on the part of Randy.  They
continue to have very minimal contact with the foster parents.  They did receive
a Christmas card for the children, which both boys reaction being they were un-
familar with who the individual was.  The Halprins do feel that the boys have
bonded to them and show only signs of being secure in their new home environment.

Linda Allen
Adoption Worker


cc:  Jeannie Perullo

5816

PROGRESS REPORT

FAMILY:        Dan and Pat Halprin
CHILDREN:      Randy and Wesley
CONTACT:       2/20/84        Home Visit

The Halprins again related that the boys are adjusting well into
their home. They do feel that both children are typical for their age groups.
They have not observed any major problem that is related to their adoption.
The children continue to get along well, with few episodes of sibling rivalry
to report. The Halprins feel that they are secure in their home and have bonded
to them and to their family. They stated that Randy seems to be very self-
confident, although he does need to hear that they are proud of him when he completes
any task. They continue to give both boys praise over positive accomplishments
and continue to be firm in the disciplinary measures they use with both children.
From all appearances, the Halprins are concerned about the youngsters and love
them a great deal.

                                        Linda Allen
                                        Adoption Worker

cc: Jeannie Perullo 3/13

5817

PROGRESS REPORT

FAMILY:           Dan and Pat Halprin
CHILDREN:         Randy and Wesley
CONTACT:          3/1/84          Face to face

The Halprins continue to report a positive adjustment being made
into their home with the two boys.  They are extremely pleased with Randy and
Wesley and are eager to consummate the adoption..  They feel certain that this
is the decision that they want to make.  They are committed to the boys, feeling
that their parental bond is extremely close to both children.  The boys are
very happy with Dan and Pat displaying a close and affectionate relationship
toward them.

Linda Allen
Adoption Worker

cc: Jeannie Perullo 3/13

5818

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document

RKER          HAIL CODE  128-9
ERULLO, JEANNIE MARIE
JN        05155CO4    EMP.  E890
SUPERVISOR HAIL CODE 178-9

**WORKER INFORMATION**

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| PERULLO | | JEANNIE M |

| 2. Emp. No. 15 | 3. BJN 30 | 4. Mail Code | 5. Today's Date |
|---|---|---|---|
| F890 | 05155CO4 | 1289 | 030284 |

**6. Worker Responsibility 26**
☑ 1-Primary Responsibility   ☐ 2-Courtesy Supervision

**CLIENT INFORMATION**   PROCESS DATE  10-21-83

| 1. Client No. 31 | | 8. Action Code 41 | | | | 9. Effective Date |
|---|---|---|---|---|---|---|
| 502794880 | ACTIVE | ☐ 1-Initiate Tracking  ☐ 2-Update | ☐ 3-Terminate Tracking  ☑ 4-Close | | | 030284 |

| 10. Client Name (Last) 50 | (First) | (MI) | 76 | 11. Social Security No. 77 | 12. Date of Birth 87 |
|---|---|---|---|---|---|
| WHITEFIELD | RANDY | L | | 466613011 | 091877 |

**13. Ethnic Group 94**
☑ 1-Anglo  ☐ 2-Black  ☐ 3-Hispanic  ☐ 4-American Indian  ☐ 5-Oriental  ☐ 6-Other

**14. Sex 95**  ☐ Female  ☑ Male

**15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic)**

| | | | |
|---|---|---|---|
| ☐ 02 - Blind | ☐ 05 - Mentally Retarded | ☐ 08 - Refugee | ☐ 11 - Entrant |
| ☐ 03 - Deaf | ☐ 06 - Emotionally Disturbed | ☐ 09 - Migrant | |
| ☐ 04 - Physically Handicapped | ☐ 07 - Sibling Group | ☐ 10 - None | |

**15.a. Certification Worker BJN**

**16. Family Identifier Name (enter last name first) 16**

**17. Family ID Client No. (must be registered on SSMS) 38**

**18. CLIENT TYPE**

| |
|---|
| 31 - Abuse/Neglect |
| 32 - Abuse |
| 33 - Neglect |
| 34 - Truant |
| 35 - Runaway |
| 36 - Adj. CHINS - Court Ordered |
| 37 - Non-adjudicated CHINS |
| 38 - Adj. Delinquent- Court Ordered |
| 42 - Protective Placement (Non-Abuse/Neglect) |
| 43 - Interstate Compact for Placement of Children |

**19. ELIGIBILITY STATUS**

| |
|---|
| 01 - SSI |
| 02 - AFDC Resp |
| 03 - MAO/IE |
| 04 - Inc. Elig. |
| 05 - Without Regard |
| 08 - AFDC Foster Care |
| 09 - MAO Foster Care |
| 10 - State Paid Foster Care |
| 1 - AFDC/MAO/SP FC Application Pending |
| 14 - Cat. 5 R/E |

**20. Certification/ Eligibility Date**

**20.a. Denial Date**   **21. Review Date**   **22. Priority** 0

**LEGAL INFORMATION** Initiate/Update — Terminate/Close

**23. STATUS**

| |
|---|
| 01 - Man. Conservatorship/ Parental Rts. Not Term. |
| 02 - Man. Conservatorship/ Parental Rts. Term. |
| 03 - Voluntary Relinquishment |
| 04 - Voluntary Placement Agreement |
| 05 - Other Legal Basis for DHR Responsibility |
| 06 - Adoption Consummated |
| 07 - Child Emancipated |
| 08 - Child Died |
| 09 - DHR Resp. Terminated |

**24. Legal Status Date** 030284   **25. County** 061

**26. PERMANENCY PLAN**

| | |
|---|---|
| 01 - Return Home/ Dismiss Conserv. | 06 - Eman- cipation |
| 02 - Adoption | 07 - Other |
| 03 - Permanent Foster Care | 08 - Pending |
| 04 - Transfer Cons. to Other | |
| 05 - Permanent Custodial Care | |

**27. ARE/ OTHER EXCHANGE**

| |
|---|
| 1 - NA |
| 2 - ARE |
| 3 - ARE & Other Exchange |
| 4 - No |

**PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.**

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 3 | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 4 | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 5 | | | | | |

| 34. Residence Street Address | 35. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|

**MEDICAID CARD ADDRESS if different from current placement**

| 42. NAME - LAST | FIRST | MI |
|---|---|---|

| 43. STREET |
|---|

| 44. CITY | 45. ST TX | 46. ZIP |
|---|---|---|

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR B.O. USE | 41. |
|---|---|---|
| 6 | | |

Form 2001-8/2-03

5819

Texas Department of Human Resources

# FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document

WORKER
WORKER MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN    05155C04   EMP. E890
SUPERVISOR MAIL CODE 128-9

## WORKER INFORMATION

| 1. Worker Name (Last) | | | (First) |
|---|---|---|---|
| PERULLO | | | JEANNIE M |

| 2. Emp. No. 16 | 3. BJN 20 | 4. Mail Code 5 | 5. Today's Date |
|---|---|---|---|
| E890 | 05155C04 | 1289 | |

| 6. Worker Responsibility 20 |
|---|
| X 1–Primary Responsibility    ☐ 2–Courtesy Supervision |

## CLIENT INFORMATION

| Client No. 31 | PROCESS DATE 10-21-83 ACTIVE |
|---|---|
| 502744880 | |

| 8. Action Code 41 | | | 9. Effective Date 43 |
|---|---|---|---|
| ☐ 1–Initiate Tracking   ☐ 2–Update | ☐ 3–Terminate Tracking   ☐ 4–Close | | 08-30-83 |

| 10. Client Name (Last) 50 | | (First) 60 | (MI) 78 | 11. Social Security No. | 12. Date of Birth 84 |
|---|---|---|---|---|---|
| WHITFIELD | | RANDY | L | 466613011 | 08-13-77 |

| 13. Ethnic Group 94 | | | | | | 14. Sex 96 |
|---|---|---|---|---|---|---|
| X 1–Anglo   ☐ 2–Black   ☐ 3–Hispanic   ☐ 4–American Indian   ☐ 5–Oriental   ☐ 6–Other | | | | | | ☐ 1–Female   X 2–Male |

| 15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic) | | | 15.a. Certification Worker BJN |
|---|---|---|---|
| ☐ 02 – Blind | ☐ 05 – Mentally Retarded | ☐ 08 – Refugee | |
| ☐ 03 – Deaf | ☐ 06 – Emotionally Disturbed | ☐ 09 – Migrant | |
| ☐ 04 – Physically Handicapped | ☐ 07 – Sibling Group | X 10 – None | 11 – Entrant |

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| 2  WHITFIELD    RANDY | 502744880 |

## 18. CLIENT TYPE

| X 31 – Abuse/Neglect | 37 – Non-adjudicated CHINS |
|---|---|
| 32 – Abuse | 38 – Adj. Delinquent–Court Ordered |
| 33 – Neglect | 42 – Protective Placement (Non-Abuse/Neglect) |
| 34 – Truant | 43 – Interstate Compact for Placement of Children |
| 35 – Runaway | |
| 36 – Adj. CHINS–Court Ordered | |

## 19. ELIGIBILITY STATUS

| ☐ 01 – SSI | 09–MAO Foster Care |
|---|---|
| ☐ 02 – AFDC Recip | 10–State Paid Foster Care |
| ☐ 03 – MAO/IE | 11–AFDC/MAO/SP FC Application Pending |
| ☐ 04 – Inc. Elig. | |
| X 05 – Without Regard | 14–Cat. 5 R/E |
| ☐ 08 – AFDC Foster Care | |

## 20. Certification/Eligibility Date

08-31-83

| 20.a. Denial Date | 21. Review Date | 22. Priority |
|---|---|---|
| | 12-14-83 | 1  0 |

## LEGAL INFORMATION

### 23. STATUS—Initiate–Update    Terminate/Close

| ☐ 01 – Man. Conservatorship/Parental Rts. Not Term. | 06 – Adoption Consummated |
|---|---|
| X 02 – Man. Conservatorship/Parental Rts. Term. | 07 – Child Emancipated |
| ☐ 03 – Voluntary Relinquishment | 08 – Child Died |
| ☐ 04 – Voluntary Placement Agreement | 09 – DHR Resp. Terminated |
| ☐ 05 – Other Legal Basis for DHR Responsibility | |

| 24. Legal Status Date | 25. County |
|---|---|
| 06-14-83 | 061 |

### 26. PERMANENCY PLAN

| ☐ 01 – Return Home/Dismiss Conserv. | 06 – Emancipation |
|---|---|
| X 02 – Adoption | 07 – Other |
| ☐ 03 – Permanent Foster Care | 08 – Pending |
| ☐ 04 – Transfer Cons. to Other | |
| ☐ 05 – Permanent Custodial Care | |

### 27. ARE/OTHER EXCHANGE

| 1 – NA |
|---|
| 2 – ARE |
| 3 – ARE & Other Exchange |
| X 4 – No |

## PLACEMENT INFORMATION - Do not enter item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | | 36. City | 36. St | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|---|---|
| 3  01 | 06-06-83 | 05 | 10 | 080421 | VITEYCHUK | HECTOR | | | | |
| 34. Residence Street Address: 17 SHILOH CIRCLE | | | | | | | ROANOKE | TX | 76262 | 061 |
| 4  02 | 08-30-83 | 04 | 03 | 000030 | HALPRIN, DANIEL | | | | | |
| 34. Residence Street Address: 4015 GLENBROOK DR | | | | | | | ARLINGTON | TX | 76015 | 220 |
| 5 | | | | | | | | | | |
| 34. Residence Street Address: | | | | | 35. City | | | 36. St | 37. ZIP | 38. County |

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. |
|---|---|---|
| 6 | | |

Form 2001-B/2-83

DCN  E3293004

5820

Texas Department of Human Resources

## SSMS CLIENT REGISTRATION
Turnaround Document

| | | | |
|---|---|---|---|
| 1. Today's Date | | | ☒ |

```
WORKER          MAIL CODE  347-1
BASDEN, BEVERLY H
BJN       05135C02  EMP   C610
SUPERVISOR MAIL CODE 347-1
```

**2. WORKER INFORMATION**

| a. Worker Name (Last) | | (First) | |
|---|---|---|---|
| BASDEN | | BEVERLY H | |
| b. Emp. No. 17 | c. BJN 22 | | d. Mail Code |
| C610 | 05135C02 | | 3871 |

## 3. PROVIDER INFORMATION

| a. Provider No. 33 | b. Provider Name | | c. Site No. 42 | d. List ID 45 | e. Billing Eff. Date 47 |
|---|---|---|---|---|---|
| | | | | | |
| f. Provider Mailing Address (Street or P.O. Box) | | (City) | | (ZIP) | |

## CLIENT INFORMATION

PROCESS DATE 05-01-83

| 4. Client No. 54 | | 5. Action Code 64 | | | | 6. Effective Date 66 |
|---|---|---|---|---|---|---|
| 5027A4880 | ACTIVE | ☐ 1-Open | ☐ 2-Update | ☐ 3-Open/Close | ☐ 4-Close | 09-22-82 |

| 7. Client Name (Last) 74 | (First) 89 | (MI) 99 | 8. Social Security No. 101 | 9. Date of Birth 111 |
|---|---|---|---|---|
| WHITFIELD | RANDY | L | 000000000 | 09-13-77 |

| 10. Street Address 15 | | 11. City 37 | | 12. State |
|---|---|---|---|---|
| TWIN LAKES MHP #179 | | DENTON | | TX |

| ZIP. 13 | 14. Co. | 15. Case Name (enter last name first) | | 16. Client No. of Case Name |
|---|---|---|---|---|
| 76201 | 061 | WHITFIELD   BOB | | 5027A8878 |

| 17. MARITAL STATUS | | | | | 18. ETHNIC GROUP | | | | 19. SEX |
|---|---|---|---|---|---|---|---|---|---|
| ☐ 1-Married | ☐ 3-Separated | ☐ 5-Single ☒ | ☐ 7-NA/Child | ☒ 1-Anglo | ☐ 3-Hispanic | ☐ 5-Oriental | | ☐ 1-Female |
| ☐ 2-Widowed | ☐ 4-Divorced | ☐ 6-Unknown | | ☐ 2-Black | ☐ 4-Am.Indian | ☐ 6-Other | | ☒ 2-Male |

## 20. CLIENT CHARACTERISTICS — Check all that apply (Enter an * to delete a characteristic)

| 01-Aged | 04-Physically Handicapped | 08-Refugee | 11-Entrant |
|---|---|---|---|
| 02-Blind | 05-Mentally Retarded | 09-Migrant | |
| 03-Deaf | 06-Emotionally Disturbed | 10-None | |

## 21. CLIENT TYPE — Check only one Direct Delivery (D) and/or one Purchase (P).

| Family Self-Support Services | | | | | | CCAD | | | | | Child Protective | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | P | | D | P | | D | P | | D | P | | | |
| | | 01-Emp./Fam. Serv. | | | 13-Prot. Day Care | | | 21-Case Mgmt. | ☒ | | 31-Abuse/Neglect | | 38-Adj. Delinquent-Court Ordered |
| | | 06-EPSDT | | | 16-Fam. Violence | | | 24-CCAD Purchase | | | 32-Abuse | | 39-Unmarried Parent |
| | | 07-EPSDT/Fam./Emp. | | | 17-R/E Specific Contracts | | | 25-Prot. Case Mgmt. | | | 33-Neglect | | 40-Soc. Study-Ct. Ord. |
| | | 09-EPSDT/Day Care | | | | | | 26-CCAD Abuse | | | 34-Truant | | 41-OTI |
| | | 12-Emp. Day Care | | | | | | 27-CCAD Neglect ☒ | | | 35-Runaway | | 42-Protective Placement (Non-Abuse/Neglect) |
| | | | | | | | | 28-Exploitation | | | 36-Adj. CHINS-Court Ordered | | |
| | | | | | | | | 29-Crisis Intervention | | | 37-Non-adjudicated CHINS | | |

## 22. ELIGIBILITY STATUS

| 01-SSI | ☒ | 05-W/O Regard | | 10-SL Pd. Fos. Care | |
|---|---|---|---|---|---|
| 02-AFDC Recip. | | 07-Waiver V (CCAD only) | | 12-Food Stamp (FSS only) | |
| 03-MAO/IE | | 08-AFDC Fos. Care | | 13-AFDC App. (FSS only) | |
| 04-Income Elig. | | 09-MAO Fos. Care | | 14-Cat. 5 R/E | ☒ |

| 23. ELIG. DATE | 24. REVIEW DATE | 25. PRIORITY |
|---|---|---|
| 09-08-81 | NA | 02 |

## 26. PURCHASED SERVICES

| a. 2080 SCORE | b. SERVICE 1 | | c. SERVICE 2 | |
|---|---|---|---|---|
| | Service | Units | Service | Units |
| | | | | |

| 27. Correct/Transfer to this BJN/Contract No. | 28. FOR S.O. USE | 28.a. | 29. REA/CLO |
|---|---|---|---|
| | | | |

Form 2000-B/2-83

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS)**

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| Basden | Beverly |

| 2. Emp. No. 13 | 3. BJN 20 | 4. Mail Code 37 | 5. Today's Date |
|---|---|---|---|
| C610 | 05135C02 | 3471 | 06V4P3 |

6. Worker Responsibility 29
☒ 1 - Primary Responsibility   ☐ 2 - Courtesy Supervision

**CLIENT INFORMATION**

Temporary No.
7. Client No. 31 ☐ OR ☐ T 0 0322546
502744.8PD

8. Action Code 41
☒ 1 - Initiate Tracking   ☐ 2 - Update   ☐ 3 - Terminate Tracking   ☐ 4 - Close

9. Effective Date
060603

| 10. Client Name (Last) 50 | (First) | (MI) 79 | 11. Social Security No. | 12. Date of Birth 87 |
|---|---|---|---|---|
| Whitfield | Randy | L | N/A | 09V3I22 |

13. Ethnic Group 94
☒ 1 - Anglo   ☐ 2 - Black   ☐ 3 - Hispanic   ☐ 4 - American Indian   ☐ 5 - Oriental   ☐ 6 - Other

14. Sex 96
☐ 1 - Female   ☒ 2 - Male

15. CLIENT CHARACTERISTICS - Check all that apply (enter on * to delete a characteristic)
☐ 02 - Blind   ☐ 05 - Mentally Retarded   ☐ 08 - Refugee   ☐ 11 - Entrant
☐ 03 - Deaf   ☐ 06 - Emotionally Disturbed   ☐ 09 - Migrant
☐ 04 - Physically Handicapped   ☐ 07 - Sibling Group   ☒ 10 - None

15.a. Certification Worker BJN

| 16. Family Identifier (Name last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| Whitfield, Randy | 502744.8PD |

**18. CLIENT TYPE**
☒ 31 - Abuse/Neglect   ☐ 37 - Non-adjudicated CHINS
☐ 32 - Abuse   ☐ 38 - Adj. Delinquent-Court Ordered
☐ 33 - Neglect   ☐ 42 - Protective Placement (Non-Abuse/Neglect)
☐ 34 - Truant   ☐ 43 - Interstate Compact for Placement of Children
☐ 35 - Runaway
☐ 36 - Adj. CHINS - Court Ordered

**19. ELIGIBILITY STATUS**
☐ 01 - SSI   ☐ 09 - MAO Foster Care
☐ 02 - AFDC Rec'p   ☐ 10 - State Paid Foster Care
☐ 03 - MAO/IE   ☐ 11 - AFDC/MAO/SP FC Application Pending
☐ 04 - Inc. Elig.   ☐ 14 - Cat. 5 R/E
☐ 05 - W/out Regard
☐ 06 - AFDC Foster Care

20. Certification/Eligibility Date
09228Z

20.a. Denial Date

21. Review Date
V2V4I83

22. Priority
02

**LEGAL INFORMATION**

23. STATUS - Initiate/Update     Terminate/Close
☒ 01 - Man. Conservatorship/Parental Rts. Not Term.   ☐ 06 - Adoption Consummated
☐ 02 - Man. Conservatorship/Parental Rts. Term.   ☐ 07 - Child Emancipated
☐ 03 - Voluntary Relinquishment   ☐ 08 - Child Died
☐ 04 - Voluntary Placement Agreement   ☐ 09 - DHR Resp. Terminated
☐ 05 - Other Legal Basis for DHR Responsibility

24. Legal Status Date
060153

25. County
061

26. PERMANENCY PLAN
☐ 01 - Return Home/Dismiss Conserv.   ☐ 06 - Emancipation
☐ 02 - Adoption   ☒ 07 - Other
☐ 03 - Permanent Foster Care   ☐ 08 - Pending
☐ 04 - Transfer Cons. to Other
☐ 05 - Permanent Custodial Care

27. ARE/OTHER EXCHANGE
☒ 1-NA
☐ 2-ARE
☐ 3-ARE & Other Exchange
☐ 4-No

**PLACEMENT INFORMATION** - Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 3 | 060683 | 05 | 13 | D80421 | Hector Viteychuk |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|
| 17 Shilah Circle | Roanoke | Vx | 76262 | 061 |

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 4 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 5 | | | | | |

| 34. Residence Street Address | 35. City | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|

MEDICAID CARD ADDRESS If different from current placement
42. NAME - LAST   FIRST   MI
43. STREET
44. CITY   45. TX   46. ZIP

| 39. CORRECT/TRANSFER TO THIS BJN | 40. FOR S.O. USE | 41. |
|---|---|---|
| 6 | | |

Form 2001-A/2-83

5822

**Speed Letter.**

To _Yo____ ____s_
_____

From _Beverly Gardens_
_547-1_

Subject _Randy Whitfield_

Message

_Social Security # 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 has been assigned_
_to H. _____._

Date _1-8-8_   Signed _Beverly_

Reply

Date _____   Signed _____

Wilson Jones

SNAP-A-WAY AND RETAIN YELLOW COPY. SEND WHITE AND PINK COPIES WITH CARBON INTACT.

5823

Texas Department
of Human Resources

**CHILD PROTECTIVE SERVICES
PLACEMENT RECORD**

Form 2223
August 1980

Child's Name: *Randy Lee Whitfield*   Date of Birth: 9·13·77   Family Case Name: *Whitfield*

| PERMANENT PLACEMENT PLAN | DATE |
|---|---|
| ☐ Return to own home or relative's home | |
| ☒ Adoption, including adoption by foster parents | 6-15-83 |
| ☐ Transfer of managing conservatorship to substitute parents | |
| ☐ Permanent foster care by formalized agreement | |

| PERMANENT PLACEMENT PLAN | DATE |
|---|---|
| ☐ Emancipation (for older adolescents) | |
| ☐ Permanent custodial care of disabled children | |
| Other (specify): | |

**RECORD OF PLACEMENTS**

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| 6-6 | *Nexton & Billie Witeychuk* | *foster home* |
| **Address** | *17 Shiloh Circle, Roanoke, TX* | **Telephone No.** (817) 490-0843 |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

| Date Placed | Name of Facility or Living Arrangement | Type |
|---|---|---|
| | | |
| **Address** | | **Telephone No.** |
| **Date Removed** | **Reason for Removal** | |

SEE INSTRUCTIONS ON REVERSE SIDE          Page _____ of _____

5824

Form 2510
September 1978

Texas Department
of Human Resources

**NOTIFICATION OF DAY CARE ELIGIBILITY**

TO: TOMORROWS GENERATION
707 CARROLL
DENTON TX 76201

FROM: DAVID LEVISA V
DENTON CO. CPS
P.O BX ~2164~ 2186
DENTON TX 76201

Please ☑ provide ☐ discontinue day care, according to the terms of our agreement, to the children of the following family:

Case Name: ANN WHITFIELD
Case No.: 502744-879
Address: 1100 COIT DENTON TX 76201

The children are:

| Child's Full Name | Recipient or Client No. | Date of Birth | Care Authorized | Beginning Rate |
|---|---|---|---|---|
| RANDY WHITFIELD JR | 502744880 | 9-13-77 | FULL DAY | $1.03 |

Status: ☑ PROTECTIVE
☐ Current DHR-VR ☐ Former DHR-VR ☐ Current WIN ☐ Former WIN ☐ AFDC Work Related
Eligibility: ☐ APDC Recipient ☐ MAO Income Eligible ☑ Income Eligible ☐ Ineligible
Elig. Detar. Needed By (date):

Effective Date (Month, Day, Year): 6-21-82

_David Levisay_
Signature—Social Services Worker

Date: 6-21-82
Telephone No.: 817-383-2391

5825

State of Texas
Department of Public Welfare

Form 2054
July 1978

## ELIGIBILITY FOR SERVICES WITHOUT REGARD TO INCOME

### SECTION A – CLIENT IDENTIFICATION

| 1. Name of Client | 2. Permanent Client No. (if known) |
|---|---|
| RANDY WHITFIELD JR | 302799488 |

| 3. Texas Residence Address (Street, City, State, Zip Code) |
|---|
| 1100 COIT |

| 4. Phone No. | 5. Date of Birth | 6. Social Security Account No.* |
|---|---|---|
| 382-2764 | 9-13-77 | NONE |

* This information is voluntary.  It is used for identification or verification purposes only.

### SECTION B – CERTIFICATION OF ELIGIBILITY

7. This is to certify that the client is in need of service(s) directed at the goal of preventing or remedying neglect, abuse, or exploitation, based on the following circumstances:

| 8. Signature of DPW or Contract Staff Certifying Eligibility | 9. Date of Certification |
|---|---|
| | |

| 10. BJN or Contract No. | 11. Name of Contract Services Provider |
|---|---|
| | |

| 12. Contract Provider Site Address (Street, City, Zip Code) |
|---|

### SECTION C – AUTHORIZATION TO PROVIDE SERVICE

| 13. Name of Contract Services Provider |
|---|
| TOMORROWS GENERATION |

| 14. Contract Provider Site Address (Street, City, State, Zip Code) |
|---|
| 1100 E   707 N. CARROLL   DENTON   76201 |

| 15. Service Authorized Without Regard to Income | Service Code | 16. Client Status | 17. Service Initiation Date | 18. Service Termination Date |
|---|---|---|---|---|
| | 55 B | 7 | 6-21-82 | |

| 19. Signature of DPW Employee Making Authorization | 20. BJN |
|---|---|
| David Lewisay | 051-35-C-03 |

| 21. DPW Office Address | 22. Phone No. |
|---|---|
| P.O. BX 2186   DENTON | 383-2371 |

5826

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP TRACKING SYSTEM (FACTS) — Turnaround Document**

FC 6

WORKER      MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN     05155C04   EMP  E89D
SUPERVISOR MAIL CODE 128-9

1 13

**WORKER INFORMATION**

| 1. Worker Name (Last) | (First) |
|---|---|
| PERULLO | JEANNIE M |
| 2. Emp. No. 18 | 3. BJN 20 | 4. Mail Code | 5. Today's Date |
| E89D | 05155C04 | 128-9 | 083183 |

6. Worker Responsibility 39
[X] 1–Primary Responsibility   [ ] 2–Courtesy Supervision

**CLIENT INFORMATION**

PROCESS DATE 08-23-83 ACTIVE

7. Client No. 21
502744980

8. Action Code 41
[ ] 1–Initiate Tracking  [X] 2–Update  [ ] 3–Terminate Tracking  [ ] 4–Close

9. Effective Date 43

10. Client Name (Last) 60  (First) 65
WHITFIELD    RANDY

11. Social Security No. 77
466 1031

12. Date of Birth 87
11-01-77

14. Sex 95
[ ] 1–Female  [ ] 2–Male

13. Ethnic Group 94
[ ] 1–Anglo  [ ] 2–Black  [ ] 3–Hispanic  [ ] 4–American Indian  [ ] 5–Oriental  [ ] 6–Other

15. CLIENT CHARACTERISTICS – Check all that apply (enter an * to delete a characteristic)
02–Blind  03–Deaf  04–Physically Handicapped  05–Mentally Retarded  06–Emotionally Disturbed  07–Sibling Group  08–Refugee  09–Migrant  10–None  11–Entrant

15.a. Certification Worker BJN

2 1

16. Family Identifier Name (enter last name first)  17. Family ID Client No. (must be registered on SSMS)

**18. CLIENT TYPE**
31–Abuse/Neglect  32–Abuse  33–Neglect  34–Truant  35–Runaway  36–Adj. CHINS–Court Ordered  37–Non-adjudicated CHINS  38–Adj. Delinquent–Court Ordered  42–Protective Placement (Non-Abuse/Neglect)  43–Interstate Compact for Placement of Children

**19. ELIGIBILITY STATUS**
01–SSI  02–AFDC Reob  03–MAO/IE  04–Inc. Elig.  05–Without Regard  06–AFDC Foster Care  09–MAO Foster Care  10–State Paid Foster Care  11–AFDC/MAO/SP FC Application Pending  14–Col. 5 R/E

20. Certification/Eligibility Date
20.a. Denial Date   21. Review Date   22. Priority 0

**LEGAL INFORMATION**

23. STATUS—Initiate/Update Terminate/Close
01–Man. Conservatorship/Parental Rts. Not Term.  02–Man. Conservatorship/Parental Rts. Term.  03–Voluntary Relinquishment  04–Voluntary Placement Agreement  05–Other Legal Basis for DHR Responsibility  06–Adoption Consummated  07–Child Emancipated  08–Child Died  09–DHR Resp. Terminated

24. Legal Status Date  25. County

**26. PERMANENCY PLAN**
01–Return Home/Dismiss Conserv.  02–Adoption  03–Permanent Foster Care  04–Transfer Cons. to Other  05–Permanent Custodial Care  06–Emancipation  07–Other  08–Pending

**27. ARE/OTHER EXCHANGE**
1–NA  2–ARE  3–ARE & Other Exchange  4–N

**PLACEMENT INFORMATION** – Do not enter Item 28 (Line) except on corrections.

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |
|---|---|---|---|---|---|---|---|---|
| 3 | 620830083 | 04 | 03 | 607120 | Halprin, Daniel | TX | 1601 | 220 |

34. Residence Street Address  4015 Glenbrook Dr.   35. City  Arlington

| 4 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |

34. Residence Street Address   35. City

| 5 | 28. Line | 29. Date Placed | 30. Liv. Arr. | 31. How Prov. | 32. Facility No. | 33. Residence Name | 36. St. | 37. ZIP | 38. County |

34. Residence Street Address   35. City

**MEDICAID CARD ADDRESS If different from current placement**
42. NAME—LAST  FIRST
43. STREET
44. CITY   TX   ZIP

39. CORRECT/TRANSFER TO THIS BJN   40. FOR B.O. USE 41

6

Form 2001-8/2-83

5827

Texas Department of Human Resources
**FOSTER CARE, ADOPTION AND CONSERVATORSHIP
TRACKING SYSTEM (FACTS) — Turnaround Document**

FC 6

WORKER          MAIL CODE 128-9
PERULLO, JEANNIE MARIE
BJN          05155-04   EMP.   E890
SUPERVISOR MAIL CODE 128-9

1 13

**WORKER INFORMATION**

| 1. Worker Name (Last) | | (First) |
|---|---|---|
| PERULLO | | JEANNIE M |
| 2.Emp. No. 18 | 3. BJN 30 | 4. Mail Code 5. Today's Date |
| E890 | 05155C06 | 1289 |
| 6.Worker Responsibility 29 | | |
| X 1-Primary Responsibility | ☐ 2-Courtesy Supervision | |

**CLIENT INFORMATION**          PROCESS DATE
                                08.23.83
                                ACTIVE

| 7. Client No. 31 | | 8. Action Code 41 | | | 9. Effective Date 43 |
|---|---|---|---|---|---|
| 502744880 | | ☐ 1-Initiate Tracking | ☐ 2-Update | ☐ 3-Terminate Tracking  ☐ 4-Close | 06-06-83 |
| 10. Client Name (Last) 50 | | (First) 64 | (MI) 78 | 11. Social Security No. 77 | 12. Date of Birth 87 |
| WHITFIELD | | RANDY | L | 456615011 | 09-03-77 |
| 13. Ethnic Group 94 | | | | 14. Sex. 95 | |
| X 1-Anglo  ☐ 2-Black  ☐ 3-Hispanic.  ☐ 4-American Indian  ☐ 5-Oriental  ☐ 6-Other | | | | ☐ 1-Female  X 2-Male | |

**15. CLIENT CHARACTERISTICS - Check all that apply (enter an * to delete a characteristic)**

| 02 - Blind | 05 - Mentally Retarded | 08 - Refugee | 11 - Entrant | 15.a. Certification Worker BJN |
|---|---|---|---|---|
| 03 - Deaf | 06 - Emotionally Disturbed | 09 - Migrant | | |
| 04 - Physically Handicapped | 07 - Sibling Group | X 10 - None | | |

2 13

| 16. Family Identifier Name (enter last name first) | 17. Family ID Client No. (must be registered on SSMS) |
|---|---|
| WHITFIELD   RANDY | 502744880 |

| **18. CLIENT TYPE** | | **19. ELIGIBILITY STATUS** | | **20. Certification/ Eligibility Date** | |
|---|---|---|---|---|---|
| X 31 - Abuse/Neglect | 37 - Non-adjudicated CHINS | 01 - SSI | 09 - MAO Foster Care | 06-09-83 | |
| 32 - Abuse | 38 - Adj. Delinquent-Court Ordered | 02 - AFDC Recip | 10 - State Paid Foster Care | | |
| 33 - Neglect | 42 - Protective Placement (Non-Abuse/Neglect) | 03 - MAO/IE | 11 - AFDC/MAO/SP FC Application Pending | 20.a. Denial Date | 21. Review Date |
| 34 - Truant | | 04 - Inc. Elig. | | | 12-14-83 |
| 35 - Runaway | 43 - Interstate Compact for Placement of Children | 05 - Without Regard | 14 - Cat. 6 R/E | | 22. Priority |
| 36 - Adj. CHINS-Court Ordered | | 08 - AFDC Foster Care | | | 1 |

**LEGAL INFORMATION**

| **23. STATUS—Initiate/Update          Terminate/Close** | | **24. Legal Status Date** | **25. County** | **26. PERMANENCY PLAN** | | **27. ARE/ OTHER EXCHANGE** |
|---|---|---|---|---|---|---|
| 01 - Man. Conservator/ Parental Rts. Not Term. | 06 - Adoption Consummated | 06-14-83 | 061 | 01 - Return Home/ Dismiss Conserv. | 06 - Eman- cipation | 1 - NA |
| X 02 - Man. Conservator/ Parental Rts. Term. | 07 - Child Emancipated | | | X 02 - Adoption | 07 - Other | 2 - ARE |
| 03 - Voluntary Relinquishment | 08 - Child Died | | | 03 - Permanent Foster Care | 08 - Pending | 3 - ARE & Other Exchange |
| 04 - Voluntary Placement Agreement | 09 - DHR Resp. Terminated | | | 04 - Transfer Cons. to Other | | 4 - No |
| 05 - Other Legal Basis for DHR Responsibility | | | | 05 - Permanent Custodial Care | | |

**PLACEMENT INFORMATION - Do not enter Item 28 (Line) except on corrections.**

3 13

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31 How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| 01 | 06-06-83 | 05 | 10 | 080821 | HECTOR VETEYCHUK |

| 34. Residence Street Address 61 | 35. City | 36. St 37. ZIP | 38. County |
|---|---|---|---|
| 17 SHT PH CIRCLE | ROANOKE | TX 76262 | 061 |

4

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31 How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| | | | | | |

| 34. Residence Street Address | 35. City | 36. St 37. ZIP | 38. County |
|---|---|---|---|
| | | | |

5

| 28. Line | 29. Date Placed | 30. Liv. Arr. | 31 How Prov. | 32. Facility No. | 33. Residence Name |
|---|---|---|---|---|---|
| | | | | | |

| 34. Residence Street Address | 35. City | 36. St 37. ZIP | 38. County |
|---|---|---|---|
| | | | |

6 13

| 39. CORRECT/TRANSFER TO THIS BJN | 40.   FOR B.O. USE   41 |
|---|---|
| | |

Form 2001-8/2-83          DCN   P3234003

5828

PLACEMENT AGREEMENT

FORM

TO BE SIGNED BY APPLICANT ON PLACEMENT OF A CHILD FROM:

THE EDNA GLADNEY HOME/NEW HOPE PROGRAM
FORT WORTH, TEXAS

On this day, the DEPARTMENT OF HUMAN RESOURCES and THE EDNA GLADNEY HOME/NEW HOPE PROGRAM placed in our home, for the purpose of adoption, the child ___Randy___ as __He__

Name of Child                                          he/~~she~~

is known to us, born on the __13th__ day of __September__, 19_77_ at __Denton__, __Texas__.

In consideration of this child being placed with us with a view to adoption, we represent and agree as follows:

1. That the information contained in our formal Application filed with The Edna Gladney Home/New Hope Program was at that time true and correct.

2. That any material changes that have taken place between the date of our Application and this date, if any, have been duly divulged to The Edna Gladney Home/New Hope Program; and that between now and the time the adoption is completed will will fully and promptly report to The Edna Gladney Home/New Hope Program any changes that take place having to do with any representations in our Application and any other happenings or occurrences that could relate to the stability of our marriage, the state of our health, the occupants of our household, our family, our suitability as parents, the welfare of the child involved, or any other matters that our obligations of good faith to The Edna Gladney Home/New Hope Program and our obligation of full and complete disclosure would indicate be imparted to The Edna Gladney Home/New Hope Program.

3. That the Juvenile Court of __Denton County, Texas__ has taken jurisdiction over this child, and its exclusive jurisdiction continues until such time as it is transferred to The Edna Gladney Home/New Hope Program.

4. That under the jurisdiction of said Juvenile Court, legal custody of the child is in the Department of Human Resources and will remain there until such time that the adoption is consummated.

5. That The Edna Gladney Home/New Hope Program will supervise the child and we will participate in such supervision by The Edna Gladney Home/New Hope Program until the child is adopted.

5829

6.    That we will not change our residence and/or remove the child from the State of _TEXAS_ before the adoption is finalized without the permission of The Edna Gladney Home/New Hope Program.

7.    That in the event The Edna Gladney Home/New Hope Program or we determine that the placement should not continue, prior to legal consummation of the adoption, we agree to return the child to the Department of Human Resources or The Edna Gladney Home/New Hope Program.

8.    That we understand that we accept and are responsible for the care and maintenance, including medical care of :

RANDY
Name of Child

We further agree to notify The Edna Gladney Home/New Hope Program of any serious illness or injury of this child.

9.    That if the Department of Human Resources or The Edna Gladney Home/New Hope Program has not required us to return the child, nor have we elected to return the child on our own, that we will then petition for the completion of the adoption and will return to Fort Worth and complete the adoption upon the recommendation of The Edna Gladney Home/New Hope Program at the time set by the Court of its completion, unless the Home shall consent to an extension of time for adopting the child. In this connection, the attorneys for the Home will advise us in advance of the date and time for filing the petition and completing the adoption.

10.    That the adoption reimbursement fee shall be $ _-O-(_
Schedule of payment is as follows:

EXECUTED at _FORT WORTH_, _TEXAS_ and dated this _10th_ day of _SEPTEMBER_, 19_83_.

THE EDNA GLADNEY HOME/NEW HOPE PROGRAM

_James Nathan Halperin_
Husband's Full Name

BY _Charlotte Massey_
Authorized Representative

_Patricia Anne Brannick Halperin_
Wife's Full Name

SUBSCRIBED AND SWORN TO BEFORE ME, the Undersigned Notary Public, in and for The State of Texas, by the above named husband and wife, on this, the _10th_ day of _September_, 19_83_, to certify witness my hand and seal of office.

My Commission Expires:

_November 19_, 19_85_

_Linda J. Allen_
Notary Public in and for
The State of Texas

LINDA J. ALLEN, NOTARY PUBLIC
IN AND FOR THE STATE OF TEXAS
MY COMMISSION EXPIRES NOVEMBER 19, 1985

5830

# MEMORANDUM

## TEXAS DEPARTMENT OF HUMAN RESOURCES

SUBJECT: Wesley Whitfield
Randy Whitfield

TO: Beverly Basden

FROM: Beverly Deweber
PPT Recorder

DATE:

General Case Plans from June 15, 1983
PPT Staffing:

1. Both children are free for adoption. Randy has been located & is in placement with Wesley.
2. Transfer case to PPU.

AN EQUAL OPPORTUNITY EMPLOYER

5831

NO. 7-A-84

| IN THE INTEREST | § | IN THE DISTRICT COURT |
| OF | § | DENTON COUNTY, TEXAS |
| TWO CHILDREN | § | 16th JUDICIAL DISTRICT |

FINAL ADOPTION DECREE

On the 2nd day of March, 1984, a final hearing on the merits was held in the above numbered and styled cause. Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN (hereinafter called "Petitioners") appeared in person and by attorney and announced ready for trial. The Texas Department of Human Resources, Managing Conservator of the children who are the subjects of this suit, having filed with the Court a written consent to adoption containing a waiver of citation and process in this suit, did not appear. All issues of fact and of law were submitted to the Court.

The Court, having considered the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this suit and over all parties to the suit; that all persons entitled to citation were duly and properly served with citation or have waived citation in the manner provided by law; that this cause has been set for hearing and a social study filed as required by law; that the children who are the subjects of this suit (hereinafter called "the children") are a male child born on September 13, 1977, in McKinney, Collin County, Texas, and a male child born on November 17, 1980, in Denton, Denton County, Texas; that the parent-child relationships formerly existing between the children and each living parent of the children have been terminated in prior judicial proceedings; and that this Court has acquired continuing, exclusive jurisdiction over the children and of this suit affecting the parent-child relationship with respect to the children.

The Court further finds that the children have lived for a period in excess of six months in the home of Petitioners; that the children's Managing Conservator has given written consent to the adoption, such written consent having been filed in the record

5832

of this suit; that the material allegations contained in Petitioners' pleadings are true; that all requirements and prerequisites of law have been satisfied; that the children are proper subjects for adoption and suited to the home of Petitioners; that the home of Petitioners is suitable for the children; that the children were residents of the State of Texas at the time this suit for adoption was filed and are citizens, by birth, of the United States of America; that it is in the best interest of each child that the children be adopted by Petitioners; that it is in the best interest of the older child that his name be changed to RANDY ETHAN HALPRIN; and that it is in the best interest of the younger child that his name be changed to WESLEY DORAN HALPRIN.

It is, therefore, ORDERED, ADJUDGED and DECREED that Petitioners' request to adopt the children be and it hereby is granted; that the name of the older child be and it hereby is changed to RANDY ETHAN HALPRIN; that RANDY ETHAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; that the parent-child relationship now exists between the child RANDY ETHAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage; that the name of the younger child be and it hereby is changed to WESLEY DORAN HALPRIN; that WESLEY DORAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; and that the parent-child relationship now exists between the child WESLEY DORAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage.

It is further ORDERED that the Clerk of this Court transmit to the Texas Department of Human Resources certified copies of the petition and Final Adoption Decree in this cause, and the Texas Department of Human Resources is hereby ORDERED to close the records concerning the children and, except for statistical purposes, not to disclose to anyone any information concerning proceedings affecting the children.

5833

It is ORDERED that the State Registrar of the Bureau of Vital Statistics at Austin, Texas, issue a new birth certificate for each child as provided for by the laws of the State of Texas.

It is further ORDERED that the Clerk of this Court seal the minutes of the Court and the complete file in this case, including all pleadings, papers, studies and records, so that no person shall have access to such minutes, to such file, or to any information contained therein.

It is further ORDERED that all costs of Court be and they hereby are taxed to Petitioners.

It is further ORDERED that all relief requested in this cause and not expressly granted herein is hereby denied.

SIGNED this 2nd day of March, 1984.

JUDGE PRESIDING

5834

Case #: ... Document ... Filed ... Page ... of ... PageID 5835

CAUSE NO. 82-3081-A

FILED
1983 JUN -9 AM 9:52
DISTRICT CLERK WRITTEN
DENTON CO., TEX.
BY
DEPUTY

IN THE INTEREST OF      X     IN THE DISTRICT COURT

RANDY LEE WHITFIELD    X    16TH JUDICIAL DISTRICT

A CHILD             X    DENTON COUNTY, TEXAS

## MOTHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

**5835**

THE STATE OF TEXAS    )
                    )
COUNTY OF DENTON    )

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is Y Motel, 901 S. Locust, #15, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized Agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas to terminate forever the parent-child relationship between me and the above named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE

Case 1:16-cv-00846    Document 1-115    Filed 09/26/16    Page 482 of 533    PageID #: 5836

IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Notwishing to appear or be cited in the termination suit, I hereby waive the rights to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 20th day of May, 1983

_Anna Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature
Courthouse on the Square
_Denton, Texas_
Address

_Evelyn Williams_
Signature
3408 Sunnydale
_Denton, Tx 76201_
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 20th day of May, 1983 to certify which witness my hand and seal of office.

_Joan E. Schmidt_
Notary Public, in and for the State of Texas

My commission expires:

_8-16-84_

5836

MOTHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

CAUSE NO. 82-3081-A

| IN THE INTEREST OF | X | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

## TEMPORARY ORDERS

On the 9 day of June, 1983, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, waived the issuance, service and return of citation upon her by a Waiver of Citation on file herein.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
PLACE OF BIRTH: McKinney, Texas
DATE OF BIRTH: September 13, 1977
PRESENT RESIDENCE: Denton County, Texas

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

John Lawhon is hereby appointed Attorney Ad Litem to represent the

5837

- 2 -

No Order for child support is made at this time.

Signed this _____9_____ day of June, 1983.

JUDGE PRESIDING

5838

NO. 82-3081-A

FILED _____
1983 JUN -9 AM 9:52
GLADYS WHITTEN
DISTRICT CLERK, DENTON CO., TEX.
BY _____ DEPUTY

IN THE MATTER OF THE MARRIAGE OF   I

ANNA WHITFIELD AND BOB R. WHITFIELD

AND                               I

IN THE INTEREST OF

RANDY LEE WHITFIELD             I

A CHILD

IN THE DISTRICT COURT OF

DENTON COUNTY, TEXAS

16TH JUDICIAL DISTRICT

ORIGINAL PETITION IN A SUIT AFFECTING
THE PARENT-CHILD RELATIONSHIP ---
TERMINATION PETITION AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this suit. Petitioner maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

I.

This Court has continuing exclusive jurisdiction of this suit affecting the parent-child relationship.

II.

The following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
DATE OF BIRTH: September 13, 1977
PLACE OF BIRTH: McKinney, Texas
RESIDENCE: Denton County, Texas

Randy Lee Whitfield will hereinafter be known as the Child.

III.

That the mother of the Child is Anna Marie Whitfield, date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

IV.

Other than the orders entered in this suit, there are no other than the temporary ordered court-ordered conservatorships, guardianships, or other court-ordered relationships affecting the Child in this suit.

V.

The Child neither owns nor possesses any property.

**5839**

VI.

Pursuant to Chapter 14, Texas Family Code, Petitioner says that it is in

Managing Conservator of the Child. In support of this request, Petitioner says that the Mother and Father of the Child have each voluntarily relinquished their rights to the Child.

### VII.

Petitioner alleges that termination of the parent-child relationship between each of the parents and the Child would be in the best interest of the Child, as provided by Section 15.02, Texas Family Code. As grounds for termination, Petitioner alleges that each of these parents have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return and each of these parents have executed an irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03, Texas Family Code.

In addition to the above grounds, termination of the parent-child relationship between each of the parents and the Child is in the best interest of the Child.

Petitioner alleges that its appointment as temporary managing conservator and as managing conservator upon final hearing would be in the best interest of the Child and requests the Court make these appointments as provided by the Texas Family Code.

Petitioner requests the Court grant authorization for petitioner to consent to such medical or surgical care as may be required by this Child pending a hearing on this petition.

Petitioner requests the Court appoint John Lawhon as Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10 (d), Texas Family Code. The said John Lawhon was previously appointed by the Court in this suit.

### VIII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

Respectfully submitted

5340

- 3 -

STATE OF TEXAS        )
                      )
COUNTY OF DENTON      )

The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

_Beverly Basden_
Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 9th day of June, 1983

_Sandy Neal_
Notary Public, in and for Texas

My Commission Expires:_____

SANDY NEAL, Notary Public
State of Texas
Commission expires 4/29/05

5841

Case 3:18-cv-01512    Document 1-5.11   Filed 06/28/18    Page 489 of 533   PageID 17842

FILED

'83 JAN -9 AM 9:52

NO. 82-3081-A

IN THE INTEREST OF ⟩

RANDY LEE WHITFIELD ⟩

A CHILD ⟩

IN THE DISTRICT COURT

16TH JUDICIAL DISTRICT

DENTON COUNTY, TEXAS

BY_____DEPUTY

FATHER"S VOLUNTARY AFFIDAVIT
OF RELINQUISHMENT OF PARENTAL
RIGHTS

THE STATE OF TEXAS      )
                        )
COUNTY OF DENTON        )

BEFORE ME, the undersigned authority, on this day personally appeared

Bob R. Whitfield, who, being by me duly sworn, in the presence of the under-

signed credible witnesses upon oath stated:

"My name is Bob R. Whitfield.  My age is 25 years.  My address is

Y Motel, 901 S. Locust, #5, Denton, Texas.  I am the father of the following

child:

Randy Lee Whitfield, a male child born on September 13, 1977 in Denton

County, Texas.

"No person has been appointed or has qualified as guardian of the person

or estate of the child.

"I am not presently obligated by court order to make payments for support

of the child.

"A full description, including statement of value, of all property owned

or possessed by the child is as follows:      None

"The mother of the child is Anna Whitfield, who address is 3818 W. Univer-

sity, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized

agency, as managing conservator of the child.  I have been informed of my

parental rights, powers, duties, and privileges, and I freely and voluntarily

give and relinquish to the above-named managing conservator all my parental

rights, powers, duties, and privileges; and I freely and voluntarily give and

relinquish to the above-named managing conservator all my parental rights,

powers, duties, and privileges.

- 2 -

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in this termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this _19th_ day of May, 1983.

_Bob R. Whitfield_
AFFIANT

WITNESSES:

_Beverly N. Basden_
Signature
P.O. Box 2196
Denton, Texas
Address

_Evelyn Williams_
Signature
3408 Sunnydale
Denton, Tx
Address

SUBSCRIBED AND SWORN TO before me by the said _Bob R Whitfield_
_____, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this _19th_ day of May, 1983, to certify which witness my hand and seal of office.

_Ron E. Schmidt_
Notary Public in and for the State of Texas

5843

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | I | IN THE DISTRICT COURT |
| RANDY LEE WHITFIELD | I | 16TH JUDICIAL DISTRICT |
| A CHILD | I | DENTON COUNTY, TEXAS |

FILED
1983 JUN -9 AM 9:52
DISTRICT CLERK
DENTON CO. TEX.
BY
DEPUTY

MOTHER'S VOLUNTARY AFFIDAVIT OF
RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS )
)
COUNTY OF DENTON )

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Randy Lee Whitfield, a male child born on September 13, 1977, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is Y Motel, 901 S. Locust, #15, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized Agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas to terminate forever the parent-child relationship between me and the above named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CON-SERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE

5844


IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Notwishing to appear or be cited in the termination suit, I hereby waive the rights to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 20th day of May, 1983

_Anna W Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature
_Courthouse on the Square_
_Denton, Texas_
Address

_Evelyn Williams_
Signature
_3408 Sunnydale_
_Denton, Tx 76201_
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 20th day of May, 1983 to certify which witness my hand and seal of office.

_Joan E. Schmidt_
Notary Public, in and for the State of Texas

My commission expires:

_8-16-84_

5845

NOTARIAL VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

Case 7:16-cv-01186 Document 1-10 Filed 06/09/16 Page 492 of 533 PageID 5846

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

- - -

## TEMPORARY ORDERS

On the 9 day of June, 1983, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, waived the issuance, service and return of citation upon her by a Waiver of Citation on file herein.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

```
NAME: Randy Lee Whitfield
SEX: Male
PLACE OF BIRTH: McKinney, Texas
DATE OF BIRTH: September 13, 1977
PRESENT RESIDENCE: Denton County, Texas
```

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

John Lawhon is hereby appointed Attorney Ad Litem to represent the

5846

No Order for child support is made at this time.

Signed this ___9___ day of June, 1983.

JUDGE PRESIDING

Case 3:11cv... ... Document ... Filed ... Page ... of ... Page ID ...

NO. 82-3081-A

FILED _____
1983 JUN -9 AM 9:52
GLADYS WHITTEN
DISTRICT CLERK, DENTON CO., TEX.
BY _____ DEPUTY

IN THE MATTER OF THE MARRIAGE OF    X

ANNA WHITFIELD AND BOB R. WHITFIELD

AND                   X

IN THE INTEREST OF

RANDY LEE WHITFIELD        X

A CHILD

IN THE DISTRICT COURT OF

DENTON COUNTY, TEXAS

16TH JUDICIAL DISTRICT

- - -

ORIGINAL PETITION IN A SUIT AFFECTING
THE PARENT-CHILD RELATIONSHIP --
TERMINATION PETITION AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this suit. Petitioner maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

I.

This Court has continuing exclusive jurisdiction of this suit affecting the parent-child relationship.

II.

The following Child is the subject of this suit:

NAME: Randy Lee Whitfield
SEX: Male
DATE OF BIRTH: September 13, 1977
PLACE OF BIRTH: McKinney, Texas
RESIDENCE: Denton County, Texas

Randy Lee Whitfield will hereinafter be known as the Child.

III.

That the mother of the Child is Anna Marie Whitfield, date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

IV.

Other than the orders entered in this suit, there are no other than the temporary ordered court-ordered conservatorships, guardianships, or other court-ordered relationships affecting the Child in this suit.

V.

The Child neither owns nor possesses any property.

VI.

Pursuant to Chapter 14, Texas Family Code, Petitioner says that it is in

5848

- 2 -

Managing Conservator of the Child. In support of this request, Petitioner says that the Mother and Father of the Child have each voluntarily relinquished their rights to the Child.

VII.

Petitioner alleges that termination of the parent-child relationship between each of the parents and the Child would be in the best interest of the Child, as provided by Section 15.02, Texas Family Code. As grounds for termination, Petitioner alleges that each of these parents have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return and each of these parents have executed an irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03, Texas Family Code.

In addition to the above grounds, termination of the parent-child relationship between each of the parents and the Child is in the best interest of the Child.

Petitioner alleges that its appointment as temporary managing conservator and as managing conservator upon final hearing would be in the best interest of the Child and requests the Court make these appointments as provided by the Texas Family Code.

Petitioner requests the Court grant authorization for petitioner to consent to such medical or surgical care as may be required by this Child pending a hearing on this petition.

Petitioner requests the Court appoint John Lawhon as Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10 (d), Texas Family Code. The said John Lawhon was previously appointed by the Court in this suit.

VIII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

Respectfully submitted

5849

*Beverly Fisher*

- 3 -

STATE OF TEXAS  )
       )
COUNTY OF DENTON )

  The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

      _Beverly Basden_
      Authorized Representative

  SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 9th day of June, 1983

      _Sandy Neal_
      Notary Public, in and for Texas

My Commission Expires:_____

    SANDY NEAL, Notary Public
     State of Texas
   Commission expires 4/29/85

5850

NO. 82-3081-A

FILED
1983 JAN -9 AM 9:52
IN THE DISTRICT COURT EN
~~BY~~ STATCH CO, TEX
~~DEPUTY~~

IN THE INTEREST OF                    X
RANDY LEE WHITFIELD                   X     16TH JUDICIAL DISTRICT
A CHILD                               X     DENTON COUNTY, TEXAS

---

FATHER"S VOLUNTARY AFFIDAVIT
OF RELINQUISHMENT OF PARENTAL
RIGHTS

THE STATE OF TEXAS        )
                          )
COUNTY OF DENTON          )

BEFORE ME, the undersigned authority, on this day personally appeared

Bob R. Whitfield, who, being by me duly sworn, in the presence of the under-

signed credible witnesses upon oath stated:

"My name is Bob R. Whitfield.  My age is 25 years.  My address is

Y Motel, 901 S. Locust, #5, Denton, Texas.  I am the father of the following

child:

Randy Lee Whitfield, a male child born on September 13, 1977 in Denton

County, Texas.

"No person has been appointed or has qualified as guardian of the person

or estate of the child.

"I am not presently obligated by court order to make payments for support

of the child.

"A full description, including statement of value, of all property owned

or possessed by the child is as follows:      None

"The mother of the child is Anna Whitfield, who address is 3818 W. Univer-

sity, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized

agency, as managing conservator of the child.  I have been informed of my

parental rights, powers, duties, and privileges, and I freely and voluntarily

give and relinquish to the above-named managing conservator all my parental

rights, powers, duties, and privileges, and I freely and voluntarily give and

relinquish to the above-named managing conservator all my parental rights,

powers, duties, and privileges.

5851

Case 3:11-cv-01803-L   Document 12-25   Filed 09/21/11   Page 498 of 533   PageID 12652

— 2 —

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in this termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this _19th_ day of May, 1983.

_Bob R Whitfield_
AFFIANT

WITNESSES:

_Beverly H. Basden_
Signature
P.O. Box 2196
Denton, Texas
Address

_Evelyn Williams_
Signature
3408 Sunnydale
Denton, Tx
Address

SUBSCRIBED AND SWORN TO before me by the said _Bob R Whitfield_
_____, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this _19th_ day of May, 1983, to certify which witness my hand and seal of office.

_Don E. Schmit_
Notary Public in and for the State of Texas

My Commission Expires:

5852

Case 4:17-cv-01010... Document ... Filed ... Page 499 of 533 PageID 5853

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | X | IN THE DISTRICT COURT |
| ANNA MARIE WHITFIELD AND | | |
| BOB RANDAL WHITFIELD, AND | X | DENTON COUNTY, TEXAS |
| IN THE INTEREST OF | | |
| RANDY WHITFIELD, | | |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

## DECREE OF TERMINATION

On the 19th day of June, 1983, Petitioner, the Texas Department of Human Resources, appeared by its representative and its attorney of record and announced ready for trial.

The Respondent Father, Bob Randal Whitfield, waived the issuance, service and return of citation and did not appear.

The Respondent Mother, Anna Marie Whitfield, waived the issuance, service and return of citation and did not appear. Michael J. Whitten, the attorney of record for Anna Marie Whitfield, has approved and agreed to the terms of this decree.

Also appearing was John Lawhon, appointed by the Court as attorney ad litem for the Child, the subject of this suit.

The Court having examined the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other Court has continuing exclusive jurisdiction of this cause. No party having demanded a jury trial, a jury was waived and all issues of fact and of law, were submitted to the Court for decision. All persons entitled to service of citation upon commencement of this suit have been duly served with citation or have waived citation in the manner provided by law. All findings of facts made herein are based upon clear and convincing evidence. A record of testimony was made.

The Court finds that the following Child is the subject of this decree:

NAME: RANDY LEE WHITFIELD
SEX: Male
BIRTHDATE: 9-13-77
BIRTHPLACE: McKinney, Texas
PRESENT RESIDENCE: Denton County, Texas

5853

The Court further finds that the Child neither owns nor possesses any

the Child; and that no possessory conservator or other person has access to the Child under an order of this Court or any other Court.

The Court finds that Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return, and that each of said parents have executed irrevocable affidavits of relinquishment of parental rights as provided by Section 15.03 of the Texas Family Code.

The Court also finds that termination of the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child is in the best interest of the Child.

IT IS THEREFORE DECREED that the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child, the subject of this suit, be and are hereby terminated.

The Court finds that it is in the best interest of the Child that the Texas Department of Human Resources be appointed managing conservator of the Child and that the managing conservator be authorized to place the Child for adoption in a suitable home.

IT IS THEREFORE DECREED that the Texas Department of Human Resources be and is hereby appointed managing conservator of the Child who is the subject of this suit, and that the managing conservator be and is hereby authorized to place the Child for adoption.

All relief requested and not granted herein is expressly denied.

SIGNED this 14th day of June, 1983.

W. C. BOYD, JUDGE PRESIDING

APPROVED AND AGREED TO:

5854

JOHN LAWHON, Attorney Ad Litem for
Child, Attorney at Law
State Bar No. 12036000

_Michael J. Whitten_ (signature)
MICHAEL J. WHITTEN
Attorney for Anna Marie Whitfield
Attorney at Law
State Bar No. _____

(signature)
Assistant Criminal District Attorney
Denton County, Texas
Attorney for Petitioner
State Bar No. 20496000

DECREE OF TERMINATION
Page 3 of 3

5855

No. 82-3081-A

| | |
|---|---|
| IN THE INTEREST OF | IN THE DISTRICT COURT OF |
| RANDY LEE WHITFIELD | DENTON COUNTY, TEXAS |
| A CHILD | 16TH JUDICIAL DISTRICT |

ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now RANDY LEE WHITFIELD, a Child and the subject of this suit, by and through his Attorney Ad Litem, John Lawhon, and files this his Answer as follows:

I.

Randy Lee Whitfield denies, each and singular, the allegations of the Petition to terminate herein, and demands proof thereof; and he further requests such further relief in law or in equity to which he may be entitled.

Respectfully Submitted,

John Lawhon
Attorney at Law
P. O. Box 44
Denton, Texas 76202

Ph. 817-382-6762
ATTORNEY AD LITEM FOR CHILD
Bar Card No. 12036000

Certificate of Service

I certify that a true copy of this Answer was delivered in person to Ron Vanzura, Assistant Criminal District Attorney of Denton County, Texas, who is the Attorney for Petitioner, on this 14th day of June, 1983.

John Lawhon

5856

NO. 82-3081-A

IN THE MATTER OF THE MARRIAGE OF

ANNA MARIE WHITFIELD AND                    I        IN THE DISTRICT COURT

BOB RANDAL WHITFIELD

AND IN THE INTEREST OF                       I        DENTON COUNTY, TEXAS

WESLEY ALLEN WHITFIELD

AND                                          I        16TH JUDICIAL DISTRICT

RANDY WHITFIELD

- - -

## DECREE OF TERMINATION

On the 11th day of May, 1983, Petitioner, the Texas Department of Human
Resources, appeared by its representative and its attorney of record and
announced ready for trial.

The Respondent Father, Bob Randal Whitfield, waived the issuance, service
and return of citation and did not appear.

The Respondent Mother, Anna Marie Whitfield, waived the issuance, service
and return of citation and did not appear.   Michael J. Whitten, the attorney
of record for Anna Marie Whitfield, has approved and agreed to the terms of
this decree.

Also appearing was John Lawhon, appointed by the Court as attorney ad
litem of the Child the subject of this suit.

The Court having examined the pleadings and heard the evidence and argu-
ment of counsel, finds that it has jurisdiction of this cause and of all the
parties and that no other Court has continuing exclusive jurisdiction of this
cause.  No party having demanded a jury trial, a jury was waived and all issues
of fact and of law, were submitted to the Court for decision.  All persons en-
titled to service of citation upon commencement of this suit have been duly
served with citation or have waived citation in the manner provided by law.
All findings of facts made herein are based upon clear and convincing evidence.
A record of the testimony was made.

The Court finds that the following Child is the subject of this decree:

NAME:  Wesley Allen Whitfield
SEX:  Male
BIRTHDATE:  11-17-80, BIRTHPLACE: Denton, Texas
PRESENT RESIDENCE:  Denton County, Texas

The Court further finds that the Child neither owns nor possesses any

5857

Case 3:11-cv-00084  Document 11-133  Filed 06/29/11  Page 504 of 533  PageID 13858

of the Child; and that no possessory conservator or other person has access to the Child under an order of this Court or any other Court.

The Court finds that Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return, and that each of said parents have executed irrevocable affidavits of relinquishment of parental rights as provided by Section 15.03 of the Texas Family Code.

The Court also finds that termination of the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child is in the best interest of the Child.

IT IS THEREFORE DECREED that the parent-child relationships between Bob Randal Whitfield, the Respondent Father, and Anna Marie Whitfield, the Respondent Mother, and the Child the subject of this suit be and are hereby terminated.

The Court finds that it is in the best interest of the Child that the Texas Department of Human Resources be appointed managing conservator of the Child and that the managing conservator be authorized to place the Child for adoption in a suitable home.

IT IS THEREFORE DECREED that the Texas Department of Human Resources be and is hereby appointed managing conservator of the Child who is the subject of this suit, and that the managing conservator be and it is hereby authorized to place the Child for adoption.

All relief requested and not granted herein is expressly denied.

SIGNED this 11th day of May, 1983.

_____
W. C. BOYD
Judge Presiding

APPROVED AND AGREED TO:

_____
JOHN LAWION, Attorney
Ad Litem for Child
Attorney at Law
State Bar No.

5858

Case 4:17-cv-00893 Document 17-135 Filed 06/22/18 Page 505 of 533 PageID 13859

_Michael J. Whitten_

MICHAEL J. WHITTEN
Attorney for Anna Marie Whitfield
Attorney at Law
State Bar No.


_Beverly Fisher_

Assistant Criminal District Attorney
Denton County, Texas
Attorney for Petitioner
State Bar No. 07049150

5859

# WYNN, BROWN, MACK, RENFRO & THOMPSON

### ATTORNEYS AT LAW

1200 OIL AND GAS BUILDING

309 W. SEVENTH STREET

**FORT WORTH, TEXAS 76102-6976**

AC 817 335-6261

METRO 429-0551

C. HAROLD BROWN
THEODORE MACK
TOM B. RENFRO
JOHN RANDOLPH THOMPSON, JR.
DARRELL W. WOOD
WILLIAM M. SCHUR
H. E. DICKEY, JR.
ROBERT R. BODOIN
PAUL C. ISHAM
JOSEPH LEE HALEY III
JOHN F. GILLESPIE
J. GEARY GRIMES
SAM LIVELY
SUSAN I. PAQUET

SPROESSER WYNN (1913 - 1980)

OF COUNSEL
THOMAS J. RENFRO
ELMO IRBY

February 24, 1984

Ms. Helen Grape
Texas Department of Human Resources
308 East 4th Street
Fort Worth, Texas  76102

Re:  Cause No. 7-A-84
In the Interest of Two Children
In the District Court, Denton County
Texas, 16th Judicial District Court

Dear Helen:

The children, Randy Lee Whitfield and Wesley Allen Whitfield, are subject to the managing conservatorship of the Texas Department of Human Resources.  My clients, Mr. and Mrs. Daniel Nathan Halprin, seek to adopt the children.  The children were placed with my clients through the New Hope program of The Edna Gladney Home.  The children were actually placed with Mr. and Mrs. Halprin on August 30, 1983, although formal placement papers were not signed until September 12, 1983.  The adoption hearing has been scheduled by the Denton Court for March 2, 1984.  If the six months residency requirement was calculated from the date of the formal placement agreement was signed, the six months residency requirement would not be met by the March 2nd date.  However, the Judge in Denton has told me he is willing to waive the requirement and my reading of the statute is that the six month residency requirement is met as long as the children have lived with the adoptive family for six months.  If you have any questions or concerns about this matter, please telephone me.

I have enclosed, with respect to the above referenced suit, one copy of Petitioners' Original Petition for Adoption.  That copy should be retained in the legal file for the children maintained by the Department.

Case 8:13-cv-01526-A Document 17-119 Filed 08/01/01 Page 507 of 533 PageID 12861

I have also enclosed the original and two copies of a pro-
posed Consent to Adoption and Waiver of Citation to be executed
by you.  If this instrument meets with your approval, please
execute the original and one copy and return these with the
"Runner" from our office.  The remaining copy should be retained
in the children's file maintained by the Department.

Very truly yours,

Susan I. Paquet

SIP/ct
Enclosures

bcc:  Marilyn Anderson, New Hope

5861

Case 1:13-cv-00482 Document 1-11 Filed 06/21/13 Page 508 of 533 PageID #:3862

NO. 82-3081-A

IN THE INTEREST OF

WESLEY A. WHITFIELD

A CHILD

§
§
§
§

FILED
IN THE DISTRICT COURT PM 2:12
1982 OCT 28
16TH JUDICIAL DISTRICT LITEN
GENIC CLERK, DENTON CO., TEX.
DENTON COUNTY, TEXAS                DEPUTY
BY

EMERGENCY ORDERS FOR PROTECTION OF CHILDREN

On the 29 day of Oct , 19 82 , at
2 o'clock P.M. the Petition of Intervention which was duly
verified was presented to me without notice or adversary hearing.

The Court finds that it has jurisdiction of this cause under Chapter
17 of the Texas Family Code.

The Court finds; based upon such petition; that an immediate danger to
the health and/or physical safety of the subject child existed on October 28,
1982 when Intervenor took possession of said Child. The Court finds that the
child should be placed under the temporary managing conservatorship of the
Texas Department of Human Resources and an adversary hearing should be held
to determine if the Intervenor should remain as Temporary Managing Conservator
of the Child.

IT IS THEREFORE ORDERED that the child, Wesley A. Whitfield, be and is
hereby immediately placed under the temporary managing conservatorship of the
Texas Department of Human Resources, Intervenor. IT IS FURTHER ORDERED that
the temporary managing conservator have the power to consent to diagnostic
and/or emergency medical treatment of the child.

IT IS FURTHER ORDERED that John Lawhon be
appointed guardian ad litem for the child in question, that notice issued to
the parents of the said child at the addresses stated in the Petition of Inter-
vention, and that an adversary hearing on the instant cause be held in the
16th Judicial District Court located in the Carroll Courts Building, at Hickory
St., and Carroll Drive, Denton, Denton County, Texas, 10 A .M, on October Nov.
5 , 1982. Said date being within ten (10) days of the date the child
was removed from respondent's custody.

_____
JUDGE PRESIDING

5862

Case 3:3 ... Document ... Filed ... Page 509 of 533 ... PageID 5863

CAUSE NO. 82-3081-A

FILED
1982 OCT 29 PM 1: 34

DISTRICT CLERK, DEN CO. TEX.

BY_____DEPUTY

IN THE MATTER OF THE MARRIAGE OF § IN THE DISTRICT COURT

ANNA WHITFIELD AND BOB R. WHITFIELD

AND

IN THE INTEREST OF § DENTON COUNTY, TEXAS

WESLEY A. WHITFIELD AND RANDY
WHITFIELD,

CHILDREN § 16TH JUDICIAL DISTRICT

- - -

PETITION IN INTERVENTION IN A SUIT AFFECTING THE PARENT-CHILD
RELATIONSHIP---MANAGING CONSERVATORSHIP

This Petition in Intervention is filed by the Texas Department of Human
Resources, an authorized agency, located at the Denton County Courthouse on the
Square, Denton, Texas.

I.

This Court has continuing jurisdiction of this suit affecting the parent-
child relationship.

II.

The following child is the subject of this suit:

NAME: WESLEY A. WHITFIELD
SEX: Male
DATE OF BIRTH: 11-17-80
PLACE OF BIRTH: Unknown
RESIDENCE: Clayton House Motel, Room 206, 1111 West University Drive,
Denton, Texas

WESLEY A. WHITFIELD will hereinafter be known as the Child.

III.

That the mother of the Child is ANNA WHITFIELD; date of birth 01-09-59;
place of birth unknown; address Clayton House Motel, Room 206, 1111 West
University Drive, Denton, Texas.

That the father of the Child is BOB R. WHITFIELD; date of birth 07-27-57;
place of birth unknown; address Clayton House Motel, Room 206, 1111 West
University Drive, Denton, Texas.

Process should be served at the above address.

IV.

There are no court-ordered conservatorships, guardianships, or other
court-ordered relationships affecting the Child in this suit.

5863

V.

Intervenor lacks information regarding property owned or possessed by the Child.

VI.

Pursuant to Chapter 17, Texas Family Code, Intervenor alleged that there was an immediate danger to the physical health or safety of the Child on October 28, 1982, when Intervenor took possession of the Child and there was no time, consistent with the physical health of safety of the Child, for an adversary hearing. Intervenor alleges the following facts which require that the Child be afforded protection under the provisions of Section 17, Texas Family Code: The Child, WESLEY A. WHITFIELD, currently has bruises on both legs as a result of a whipping by ANNA WHITFIELD or her paramour JIMMY WILLINGHAM received on or about 10-26-82. The Child previously had bruises on the legs, buttocks, upper thigh and lower back on 9-16-82. On 7-12-82, the Child had bruises on his upper thighs and lower back. Thus during the period July 1982 to October 1982, the Child is known to have been injured on at least three occasions while in the care of his mother. It is feared that escalation in the severity of these incidents will lead eventually to serious bodily injury to the Child if not corrected. The mother has consistently denied responsibility for the repeated harm that has come to her Child.

Intervenor alleges that its appointment as temporary managing conservator would be in the best interest of the Child and requests the Court to make this appointment as provided by the Texas Family Code.

Intervenor represents to the Court that the parents of the Child should be ordered to make payments for the support of the Child pending a final hearing of this case.

Intervenor requests authorization from the Court to consent to such medical or surgical care as may be required by this Child pending a final hearing of this case.

Intervenor requests the Court to appoint an Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10(d), Texas Family Code.

VII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Intervenor prays that the Court enter its orders in accordance with the foregoing allegations.

Respectfully submitted,

_Ronell D. Kern_

Assistant Criminal District Attorney for Petitioner

STATE OF TEXAS    §

COUNTY OF DENTON    §

The undersigned states under oath that I am an authorized representative of the Intervenor in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

_Beverly Basden_

Authorized Representative

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 29th day of October, 1982.

_Sandy Neal_

Notary Public, in and for Denton County, Texas

My commission expires: _____

BANDY NEAL, Notary Public
State of Texas
Commission expires 4/29/85

**5865**

PETITION IN INTERVENTION

CAUSE NO. 82-3081-A

IN THE INTEREST OF

WESLEY A. WHITFIELD

A CHILD

IN THE DISTRICT COURT

16TH JUDICIAL DISTRICT

DENTON COUNTY, TEXAS

## ORDER CONTINUING EX PARTE ORDER

On this, the 12th day of November, 1982, came on to be heard the Original Petition in this cause. This cause was heard on November 5, 1982 and continued to this date. All existing subpoenas were also continued to this date. The petitioner appeared in person and by attorney. The respondents' attorney did not appear. This cause has been reset for hearing on the 19th day of November, 1982 at 9:30 o'clock a.m.

The Court finds that it has jurisdiction of this cause, and the parties herein under provisions of Section 11.11, Texas Family Code.

The Court finds that there continues to exist an immediate danger of physical or emotional injury to the subject child. The Court finds that the child should continue in the placement under the Temporary Managing Conservatorship of the Texas Department of Human Resources, Denton County, Texas, Child Welfare Unit, until further order of the Court.

IT IS THEREFORE ORDERED that the child, Wesley Whitfield, continue the placement under Temporary Managing Conservatorship of Denton County Child Welfare and his successors until further order of this Court, and that the said Temporary Managing Conservator may place the physical custody of the child with persons or agents of his designation and further the Temporary Managing Conservator is granted the rights, privileges, powers and duties provided by law.

IT IS THEREFORE ORDERED that there shall be held a hearing on the 19th day of November, 1982 at 9:30 o'clock a.m. wherein the respondents shall appear and show cause why the Order of the Court should not be continued.

SIGNED on this the_____ day of November, 1988

_____
JUDGE PRESIDING

Case 4: 82-cv-00349-A    Document 1-1    Filed 09/26/13    Page 513 of 533    PageID 5867

NO. 82-3081-A

FILED _____
1982 NOV -5 AM 9: 52
DISTRICT CLERK, DENTON CO., TEX.
_____ DEPUTY

IN THE INTEREST OF      §      IN THE DISTRICT COURT

WESLEY A. WHITFIELD      §      16TH JUDICIAL DISTRICT

A CHILD      §      DENTON COUNTY, TEXAS

## FATHER'S VOLUNTARY AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS    }

COUNTY OF DENTON    }

BEFORE ME, the undersigned authority, on this day personally appeared Bob R. Whitfield, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Bob R. Whitfield. My age is 25 years. My address is Clayton House Motel #206, 1111 W. University, Denton, Texas. I am the father of the following child:

Wesley A. Whitfield, a male child born on November 17, 1980, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: None

"The mother of the child is Anna Whitfield, whose address is Twin Lakes Mobil Home Park #179, Denton, Texas.

"I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of the child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

5867

"I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY. I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER. I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in the termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this ____ day of ___November___, 1982

_Bob R Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature
_PO Box 2186, Denton, Tex_
Address

_Geraldine M Polly_
_Randy W Whitfield_
Signature
_PO Box 2186, Denton_
_Clayton House #_
Address _206 Denton_

SUBSCRIBED AND SWORN TO before me by the said _Bob R Whitfield_
_____, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this____ day of _November_, 1982, to certify which witness my hand and seal of office.

_____
Notary Public in and for the State of Texas

5868

NO. 82-3081-A

FILED
'33 MAR -6 PM 10 44
IN THE DISTRICT COURT
DEPUTY
BY DENTON COUNTY, TEXAS

IN THE INTEREST OF        X

WESLEY A. WHITFIELD        X

A CHILD        X

16TH JUDICIAL DISTRICT

MOTION PURSUANT TO TITLE 2, CHAPTER 18 OF THE

TEXAS FAMILY CODE - - SECTION 18.01

TO THE HONORABLE JUDGE OF SAID COURT.

Now come the Texas Department of Human Resources, movant herein, and files this motion requesting the Court to review the conservatorship appointment of movant and the placement of the Child in Foster Care.

I.

Movant was appointed managing conservator of Wesley Whitfield, the Child who is subject of this suit by an order of this Court entered on 11-30-82.

II.

Movant says that the following persons are entitled to notice of the hearing requested herein:

(1). PARENTS - The father has executed a voluntary relinquishment of parental rights which contains a waiver of citation. The mother, Anna Whitfield, 3818 West University, Denton, Texas 76201.

(2). FOSTER PARENTS - The foster parents are not named herein as movant believes that the foster parents want to remain anonymous. Movant will provide the foster parents notice of the hearing as required by law and will show the Court proof of such notice at the time of hearing.

(3) ATTORNEY AD LITEM FOR THE CHILD: John Lawhon, Attorney Ad Litem, P. O. Box 44, Denton, Texas 76201.

(4). OTHER PERSONS - None

III.

The movant says that the present placement of the Child is in the best interests of the Child in that the placement is meeting the needs of the Child.

IV.

Movant requests that the attendance of the Child not be required at the hearing.

5869

V.

Movant further says that the plan is to continue foster care until the home situation can stabilize to return the Child.

Wherefore, premises considered, movant prays that the Court set a time and place for a hearing to review the conservatorship appointment of movant and the placement of the Child and that notice of the hearing requested herein be served on the person identified above who are entitled to notice and that after such hearing the Court order such relief as is in the best interest of the Child who is subject of the suit.

Respectfully Submitted,

Assistant Criminal District Attorney
Denton County, Texas
Attorney for Movant
State Bar No. 04436 00

NOTICE OF HEARING

A hearing on the above and foregoing motion filed pursuant to Chapter 18, Texas Family Code is set for ~~11:00~~ 9:00 o'clock A.M. on April 26, 1983, in the courtroom of the Court located in the Carroll Courts Building, 401 W. Hickory, Denton, Texas.

The attendance of the Child is waived by the Court.

SIGNED this 6TH day of ~~March~~ APRIL, 1983.

JUDGE PRESIDING
District Court, Denton County, Texas

5870

Case 3:13-mi-04565-1    Document 1-15-19 Filed 03/21/11    Page 517 of 533   PageID 4:6871

NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD | X | DENTON COUNTY, TEXAS |
| A CHILD | X | 16TH JUDICIAL DISTRICT |

## ORDER PURSUANT TO CHAPTER 18, TEXAS FAMILY CODE

On this  26 th day of ___April___,1983, came  on to be heard the motion filed by the Texas Department of Human Resources pursuant to Chapter 18, Section 18.01, Texas Family Code.

The Court having heard the pleadings, evidence and argument of counsel is of the opinion and finds:

1. That it has jurisdiction over the subject matter of this suit under the Texas Family Code.

2. That all persons entitled to notice of this hearing have been mailed notices of this hearing as required by law when such person's addresses were known to Movant.

3. That the appointment of the Texas Department of Human Resources as managing conservator of the Child is proper.

4. That the current placement of the Child is a suitable placement.

It is therefore the Order of the Court that the appointment of the Texas Department of Human Resources as managing conservator of the Child shall continue and the current placement of the Child is approved.

SIGNED this 26th day of April, 1983.

_Jack Gray_
JUDGE PRESIDING

**5871**

I have read and understand the approved of this letter

Anna W. Whitfield

DEC 2 1982

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
| WESLEY A. WHITFIELD | § | DENTON COUNTY, TEXAS |
| A CHILD | § | 16TH JUDICIAL DISTRICT |

- - -

## TEMPORARY ORDERS

On the 19th day of November, 1982, Intervenor, the Texas Department of Human Resources, appeared by its representative and its attorney of record and requested that the Court appoint the Intervenor as Temporary Managing Conservator of the Child.

The mother, Anna Whitfield, did appear and was represented by Michael Whitten, her attorney.

The Respondent father, Bob R. Whitfield, waived the issuance, service and return of citation upon him by a Waiver of Citation on file herein.

The Court, having examined the pleadings, considered the evidence, and statement of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other court has continuing, exclusive jurisdiction of this cause.

The Court finds that the following Child is the subject of this suit:

NAME: Wesley A. Whitfield
SEX: Male
PLACE OF BIRTH: Denton, Texas
DATE OF BIRTH: November 17, 1980
PRESENT RESIDENCE: Denton County, Texas

5872

The Court finds that the Child neither owns nor possesses any property and that no person has qualified as guardian of the person or estate of the Child.

The Court finds that there is a continuing danger to the physical health and safety of the Child if the Child is returned to the mother, and that it is in the best interest of the Child to appoint the Texas Department of Human Resources as Temporary Managing Conservator of the Child.

IT IS ORDERED that the Texas Department of Human Resources be and is hereby appointed Temporary Managing Conservator of the Child the subject of this suit, the Court finding this appointment to be in the best interest of the Child.

IT IS FURTHER ORDERED that the Texas Department of Human Resources is authorized to consent to such medical and surgical care as may be required by the Child during the pendency of this suit.

The Intervenor is also ordered to allow the mother to visit with the Child

- 2 -

at reasonable times, all of such visits to be supervised by the Intervenor's representative.

The Court finds that the mother, Anna Whitfield, needs psychological counselling, parental training and drug abuse counselling.

IT IS THEREFORD ORDERED that Intervenor's representative arrange such counselling to the extent that such services may be available without cost to Anna Whitfield. Anna Whitfield is hereby ordered to attend such counselling as arranged by Intervenor's representative.

John Lawhon is hereby continued as Attorney Ad Litem to represent the interest of the Child.

No Order for child support is made at this time.

Signed this ___30th___ day of November, 1982.

_____
JUDGE PRESIDING

5873

Case 4:16-cv-00123 Document 4-24 Filed 08/22/16 Page 520 of 533 PageID 12874

NO. 82-3081-A

IN THE MATTER OF THE MARRIAGE OF

ANNA WHITFIELD AND BOB R. WHITFIELD  §            IN THE DISTRICT COURT

AND

IN THE INTEREST OF

WESLEY ALLEN WHITFIELD
AND                                     §            16TH JUDICIAL DISTRICT

RANDY WHITFIELD

THE CHILDREN                            §            DENTON COUNTY, TEXAS

- - -

ORIGINAL PETITION IN A FIRST
AMENDED INTERVENTION IN A SUIT
AFFECTING THE PARENT-CHILD RELA-
TIONSHIP -- TERMINATION PETITION
AND/OR MANAGING CONSERVATORSHIP

The Texas Department of Human Resources is an Agency authorized by law to file this intervention. Intervenor maintains an office in the Denton County Courthouse on the Square, Denton, Texas.

I.

This Court has continuing jurisdiction of this suit affecting the parent-child relationship.

II.

The following Child is the subject of this suit:

NAME: Wesley Allen Whitfield
SEX: Male
DATE OF BIRTH: 11-17-80
PLACE OF BIRTH: Denton, Texas
RESIDENCE: Denton County, Texas

Wesley Allen Whitfield will hereinafter be known as the Child.

III.

That the mother of the Child is Anna Marie Whitfield; date of birth 01-09-59; place of birth Texas; address 3818 W. University Dr., Denton, Texas.

That the father of the Child is Bob Randal Whitfield; date of birth 07-27-57; place of birth Texas; address 901 South Locust, Denton, Texas.

IV.

There are no other than the temporary ordered court-ordered conservator-ships, guardianships, or other court-ordered relationships affecting the Child in this suit.

5874

V.

The Child neither owns or possesses any property.

VI.

Pursuant to Chapter 17, Texas Family Code, Petitioner was appointed temporary managing conservator of Wesley Allen Whitfield. Petitioner says that it is in the best interest of this Child for this appointment to continue.

VII.

Petitioner alleges that termination of the parent-child relationship between each of the parents and the Child would be in the best interest of the Child, as provided by Section 15.02, Texas Family Code. As grounds for termination, Petitioner alleges that each of these parents have voluntarily left the Child in the possession of another not the parent and expressed an intent not to return and each of these parents have executed an irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03, Texas Family Code.

In addition to the above grounds, termination of the parent-child relationship between each of the parents and the Child is in the best interest of the Child.

Petitioner alleges that its continued appointment as temporary managing conservator and managing conservator would be in the best interest of the Child and requests the Court to continue this appointment as provided by the Texas Family Code.

Petitioner requests the Court continue its authorization for petitioner to consent to such medical or surgical care as may be required by this Child pending a hearing on this petition.

Petitioner requests the Court to continue John Lawhon as Attorney Ad Litem to represent the interest of the Child as provided by Section 11.10 (d), Texas Family Code.

VIII.

Petitioner prays that citation and notice be issued to all persons above who are entitled to citation and notice under the law.

Petitioner prays that the Court enter its orders in accordance with the foregoing allegations including termination of the parent-child relationship.

Petitioner prays for general relief.

Respectfully submitted

5875

- 3 -

STATE OF TEXAS )
)
COUNTY OF DENTON )

The undersigned states under oath that I am an authorized representative of the Petitioner in the foregoing petition and that the facts and allegations stated in it are to the best of my information and belief true and correct.

*Beverly Basden*
Authorized Representative


SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 11th day of May, 1983.

*Jim E. Schmitt*
Notary Public, in and for Texas


My Commission Expires: *8-16-84*

5876

CAUSE NO. 82-3081-A

| | | |
|---|---|---|
| IN THE INTEREST OF | X | IN THE DISTRICT COURT |
| WESLEY A. WHITFIELD, | X | 16TH JUDICIAL DISTRICT |
| A CHILD | X | DENTON COUNTY, TEXAS |

## MOTHER'S VOLUNTARY AFFIDAVIT OF
## RELINQUISHMENT OF PARENTAL RIGHTS

THE STATE OF TEXAS )
)
COUNTY OF DENTON )

BEFORE ME, the undersigned authority, on this day personally appeared ANNA WHITFIELD, who, being by me duly sworn, in the presence of the undersigned credible witnesses upon oath stated:

"My name is Anna Whitfield. My age is 24 years. My address is 3818 West University Drive, Denton, Texas. I am the mother of the following child:

Wesley A. Whitfield, a male child born on November 17, 1980, in Denton County, Texas.

"No person has been appointed or has qualified as guardian of the person or estate of the child.

"I am not presently obligated by court order to make payments for support of the child.

"A full description, including statement of value, of all property owned or possessed by the child is as follows: NONE

"The father of the child is Bob R. Whitfield, whose address is 304 South Ruddell, Phoenix Apartments #85, Denton, Texas.

I designate the Texas Department of Human Resources, an authorized agency, as managing conservator of this child. I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservator all my parental rights, powers, duties, and privileges.

I understand fully that a lawsuit will be filed in the District Court of Denton County, Texas, to terminate forever the parent-child relationship between me and the above-named child. Termination of the parent-child

5877

relationship is in the best interest of the child.  I understand that I make this termination possible by executing this affidavit.  With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable.  I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY.  I KNOW I HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY IN THIS MATTER.  I WAIVE MY RIGHT TO BE REPRESENTED BY AN ATTORNEY IN CONNECTION WITH THIS MATTER.

"It is in the best interest of my child that this be my last parental act and deed.  Not wishing to appear or be cited in the termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me.  I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT."

SIGNED this 29th day of April, 1983.

_Anna Whitfield_
AFFIANT

WITNESSES:

_Beverly Basden_
Signature

_Courthouse on the Square_
_Denton, Texas_
Address

_Geraldine Polley_
Signature

_Courthouse on the Square_
_Denton, Texas_
Address

SUBSCRIBED AND SWORN TO before me by the said, ANNA WHITFIELD, Affiant, in my presence and in the presence of the foregoing witnesses, and subscribed by the foregoing witnesses in my presence and in the presence of the Affiant, on this 29th day of April, 1983, to certify which witness my hand and seal of office.

_Joan E. Schmidt_
Notary Public, in and for the State of Texas

My commission expires:

8-16-84

5878

NO. 7-A-84

| IN THE INTEREST | S | IN THE DISTRICT COURT |
|---|---|---|
| OF | S | DENTON COUNTY, TEXAS |
| TWO CHILDREN | S | 16th JUDICIAL DISTRICT |

FINAL ADOPTION DECREE

On the 2nd day of March, 1984, a final hearing on the merits was held in the above numbered and styled cause. Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN (hereinafter called "Petitioners") appeared in person and by attorney and announced ready for trial. The Texas Department of Human Resources, Managing Conservator of the children who are the subjects of this suit, having filed with the Court a written consent to adoption containing a waiver of citation and process in this suit, did not appear. All issues of fact and of law were submitted to the Court.

The Court, having considered the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this suit and over all parties to the suit; that all persons entitled to citation were duly and properly served with citation or have waived citation in the manner provided by law; that this cause has been set for hearing and a social study filed as required by law; that the children who are the subjects of this suit (hereinafter called "the children") are a male child born on September 13, 1977, in McKinney, Collin County, Texas, and a male child born on November 17, 1980, in Denton, Denton County, Texas; that the parent-child relationships formerly existing between the children and each living parent of the children have been terminated in prior judicial proceedings; and that this Court has acquired continuing, exclusive jurisdiction over the children and of this suit affecting the parent-child relationship with respect to the children.

The Court further finds that the children have lived for a period in excess of six months in the home of Petitioners; that the children's Managing Conservator has given written consent to the adoption, such written consent having been filed in the record

5879

of this suit; that the material allegations contained in Petitioners' pleadings are true; that all requirements and prerequisites of law have been satisfied; that the children are proper subjects for adoption and suited to the home of Petitioners; that the home of Petitioners is suitable for the children; that the children were residents of the State of Texas at the time this suit for adoption was filed and are citizens, by birth, of the United States of America; that it is in the best interest of each child that the children be adopted by Petitioners; that it is in the best interest of the older child that his name be changed to RANDY ETHAN HALPRIN; and that it is in the best interest of the younger child that his name be changed to WESLEY DORAN HALPRIN.

It is, therefore, ORDERED, ADJUDGED and DECREED that Petitioners' request to adopt the children be and it hereby is granted; that the name of the older child be and it hereby is changed to RANDY ETHAN HALPRIN; that RANDY ETHAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; that the parent-child relationship now exists between the child RANDY ETHAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage; that the name of the younger child be and it hereby is changed to WESLEY DORAN HALPRIN; that WESLEY DORAN HALPRIN is hereby declared adopted by Petitioners in accordance with the laws of the State of Texas; and that the parent-child relationship now exists between the child WESLEY DORAN HALPRIN and Petitioners DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN as if he had been born to Petitioners during marriage.

It is further ORDERED that the Clerk of this Court transmit to the Texas Department of Human Resources certified copies of the petition and Final Adoption Decree in this cause, and the Texas Department of Human Resources is hereby ORDERED to close the records concerning the children and, except for statistical purposes, not to disclose to anyone any information concerning proceedings affecting the children.

5880

It is ORDERED that the State Registrar of the Bureau of Vital Statistics at Austin, Texas, issue a new birth certificate for each child as provided for by the laws of the State of Texas.

It is further ORDERED that the Clerk of this Court seal the minutes of the Court and the complete file in this case, including all pleadings, papers, studies and records, so that no person shall have access to such minutes, to such file, or to any information contained therein.

It is further ORDERED that all costs of Court be and they hereby are taxed to Petitioners.

It is further ORDERED that all relief requested in this cause and not expressly granted herein is hereby denied.

SIGNED this 2nd day of March, 1984.

JUDGE PRESIDING

5881

No. 7-A-84

| IN THE INTEREST | § | IN THE DISTRICT COURT |
| OF | § | DENTON COUNTY, TEXAS |
| TWO CHILDREN | § | 16th JUDICIAL DISTRICT |

## CONSENT TO ADOPTION AND WAIVER OF CITATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the undersigned, Managing Conservator of the children who are the subjects of this suit, and hereinafter called "your Managing Conservator," and would show the Court as follows:

1.

Your Managing Conservator is the Texas Department of Human Resources, whose mailing address is 308 E. 4th Street, Fort Worth, Texas 76102.

**5882**

2.

Your Managing Conservator acknowledges receipt of a copy of Petitioners' Original Petition for Adoption filed in the above numbered and styled cause on behalf of Petitioners Daniel Nathan Halprin and Patricia Anne Brannick Halprin. Your Managing Conservator waives the right to issuance, service, and return of citation and all other process in the above numbered and styled adoption suit, agrees that Petitioners may amend their pleadings at any time without notice to your Managing Conservator, agrees that hearings may be held in the above numbered and styled adoption suit at any time without notice to your Managing Conservator, specifically agrees that a final hearing on the merits may be held at any time without notice to your Managing Conservator, waives the making of a record of the testimony and proceedings at all hearings in the above numbered and styled adoption suit, and requests that The Edna Gladney Home, an authorized agency licensed by the Texas Department of Human Resources to place children for adoption, prepare the required social study in the above numbered and styled adoption suit.

3.

The children who are the subjects of the above numbered and styled suit are Randy Lee Whitfield, a male child born in McKinney, Collin County, Texas, on September 13, 1977, and Wesley Allen

Whitfield, a male child born in Denton, Denton County, Texas, on
November 17, 1980. The maiden name of the children's mother by
birth is Anna Marie Hammons. Petitioners Daniel Nathan Halprin and
Patricia Ann Brannick Halprin desire to adopt the children. It is
in the best interest of each of the children that the children be
adopted by Petitioners. Your managing conservator consents to
adoption of the children by Petitioners.

4.

Your Managing Conservator certifies that the children who are
the subjects of this suit were subjects of Cause No. 82-3081-A, In
the District Court, Denton County, Texas, 16th Judicial District, in
which cause the parent-child relationships between the children and
each living parent of the children were judicially terminated.

SIGNED this _____ day of _____, 1984.

THE TEXAS DEPARTMENT OF HUMAN RESOURCES
308 E. 4th Street
Fort Worth, Texas 76102
(817) 335-5171

By: _____
Helen Grape, Program Director,
Tarrant County Child Welfare Unit

THE STATE OF TEXAS          §

COUNTY OF TARRANT           §                              5883

BEFORE ME, the undersigned authority, on this day personally
appeared the undersigned affiant who, having been by me first duly
sworn, upon oath stated:

"My name is Helen Grape. I am Program Director of the Texas
Department of Human Resources, and am authorized to execute the
above and foregoing instrument entitled 'Consent to Adoption and
Waiver of Citation' in that capacity. The facts stated in the above
and foregoing instrument are true and correct. I have executed the
above and foregoing instrument for the purposes and consideration
expressed therein and in the capacity stated therein."

_____
Helen Grape, Affiant

SWORN TO, SUBSCRIBED, AND ACKNOWLEDGED BEFORE ME on the 21
day of February , 1984, by Helen Grape, Program Director, the
Texas Department of Human Resources.

_____
Notary Public in and for the State of Texas

[ S E A L ]

Notary's name printed or typed:
Mary F. Graves

My commission expires:
9-30 , 1984.

[illegible scanned header bar across top of page]

NO. _7·A·84_                    '984 JAN 25 AM 9: 14

IN THE INTEREST               §          IN THE DISTRICT COURT
                                                    DENTON CO., TEX.
OF                            §          DENTON COUNTY, TEXAS
                                                    DEPUTY
TWO CHILDREN                  §          16th JUDICIAL DISTRICT

### ORIGINAL PETITION FOR ADOPTION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW DANIEL NATHAN HALPRIN and PATRICIA ANNE BRANNICK HALPRIN, Petitioners, and file this, their Original Petition for Adoption, and would respectfully show the Court as follows:

1.

This Court has acquired continuing jurisdiction of this suit and of the children who are the subjects of this suit.

2.

The children who are the subjects of this suit are a male child born in McKinney, Collin County, Texas, on September 13, 1977, tentatively named Randy ~~Lee~~ *ETHAN PBH DWH* Halprin by Petitioners, and a male child born in Denton, Denton County, Texas, on November 17, 1980, tentatively named Wesley ~~Allen~~ *DORAN PBH DNP* Halprin. The children will have lived in the home of Petitioners for more than six months on the date of the final hearing of this suit.

3.

Petitioner DANIEL NATHAN HALPRIN is 35 years of age. Petitioner PATRICIA ANNE BRANNICK HALPRIN is 31 years of age. Petitioners are married and reside together in Tarrant County, Texas. Petitioners' mailing address is 4015 Glenbrook Drive, Arlington, Texas 76015. Petitioners are not related to the children by birth.

4.

Petitioners have been informed by the children's managing conservator that no legal parent-child relationships exist between the children and any person.

5.

The children were placed in Petitioners' home for adoption pursuant to an agreement between Petitioners and the children's

5884

managing conservator, acting with assistance from The Edna Gladney Home, a non-profit, charitable corporation organized under the laws of the State of Texas and licensed by the Texas Department of Human Resources to place children for adoption. The children's managing conservator is the Texas Department of Human Resources. The main office and legal residence of The Edna Gladney Home is situated in Tarrant County, Texas, and its mailing address is 2300 Hemphill Street, Fort Worth, Texas 76110.

6.

To the best of Petitioners' information and belief, no guardians of the children's persons or estates have been appointed, no possessory conservator or other person has access to the children under an order of any court, and the children do not own or possess any substantial property.

7.

Since the children have been in their home, Petitioners have treated the children with the same love and affection as if the children had been their own by birth. Petitioners desire to adopt the children. Adoption of the children by Petitioners is in the best interest of each child. It is in the children's best interest that their names be changed to RANDY ~~LEE~~ *ETHAN POH DOH* HALPRIN and WESLEY ~~ALLEN~~ *DORAN POH DOH* HALPRIN.

8.

Petitioners expect the children's managing conservator to execute and file with the Court a written consent to this adoption prior to the final hearing in this suit.

WHEREFORE, premises considered, Petitioners pray that all parties entitled to service of citation, if any, be duly cited to appear and answer herein; that, on final hearing, the Court render a final adoption decree granting Petitioners' request for adoption, declaring the children to have been duly adopted by Petitioners so that the parent-child relationship will exist between Petitioners and the children as if the children had been born to Petitioners and changing the children's names to RANDY ~~LEE~~ *ETHAN POH DOH* HALPRIN and WESLEY ~~ALLEN~~ HALPRIN, *DORAN POH DOH* and for such other and further relief, at law or in

5885

equity, to which Petitioners may be justly entitled.

WYNN, BROWN, MACK, RENFRO & THOMPSON
1200 Oil & Gas Building
Fort Worth, Texas 76102-6976
(817) 335-6261  Metro: 429-0551

By: _Susan I. Paquet_

Susan I. Paquet, State Bar of
Texas Id. No. 15455600

ATTORNEYS FOR PETITIONERS

THE STATE OF TEXAS          §

COUNTY OF TARRANT           §

BEFORE ME, the undersigned authority, on this day personally
appeared the undersigned Affiants, who, having been by me first
duly sworn, upon oath stated:

"We have read the above and foregoing pleading to be filed
on our behalf.  The facts stated therein are true and correct.  We
authorize the filing of such petition on our behalf by the law firm
of Wynn, Brown, Mack, Renfro & Thompson, Fort Worth, Tarrant
County, Texas.

"During the time the children we have tentatively named
RANDY LEE HALPRIN and WESLEY ALLEN HALPRIN have been in our home,
we have had the children examined by a physician or pediatrician of
our choice.  We are well satisfied with the children's physical,
mental, and emotional development and with their adjustment to our
home.  We desire to adopt the children."

_Daniel Nathan Halprin_
DANIEL NATHAN HALPRIN, Affiant

_Patricia Anne Brannick Halprin_
PATRICIA ANNE BRANNICK HALPRIN, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME by the Affiants on this
_11_ day of _January_, 1984, to certify which witness my hand
and seal of office.

_Notary signature_
Notary Public in and for the State
of Texas

[S E A L]

My Commission Expires:
_____, 19 8 7

```
 1   STATE OF TEXAS     )

 2   COUNTY OF DALLAS  )

 3       I, Bridget Barnhill, Official Court Reporter in and

 4   for the 283rd Judicial District Court of Dallas County,

 5   Texas do hereby certify that the above and foregoing

 6   contains a true and correct transcription of all

 7   portions of evidence and other proceedings requested in

 8   writing by counsel for the parties to be included in the

 9   reporter's record in the above-styled and numbered

10   cause, all of which occurred in open court or in

11   chambers and were reported by me.

12       I further certify that this transcription of the

13   proceedings truly and correctly reflects the exhibits,

14   if any, admitted by the respective parties.

15       I further certify that the total cost for the

16   preparation of this Reporter's Record is included on

17   original certificate in final volume and will be paid by

18   Dallas County.

19       WITNESS MY HAND this the 3rd day of September,

20   2010.

21                         Bridget Barnhill, CSR No. 3199
                           Official Court Reporter
22                         283rd Judicial District Court
                           Dallas County, Texas
23   Date of Expiration of Current
     Certification:   12-31-10
24   Address:   133 N. Riverfront Blvd.
                    Dallas, Texas 75207
25   Telephone Number:  (214) 653-5863
```