IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**RANDY ETHAN HALPRIN**,            §
                                    §
            Petitioner,             §
                                    §
v.                                  §            Civil Action No. **3:13-CV-1535-L**
                                    §
**LORIE DAVIS, Director,**          §            (Death Penalty Case)
**Texas Department of Criminal Justice** §
**Correctional Institutions Division**, §
                                    §
            Respondent.             §

## MEMORANDUM OPINION AND ORDER DENYING RELIEF

Before the court is the application for a writ of habeas corpus ("Application") filed by Randy Ethan Halprin ("Halprin") pursuant to 28 U.S.C. § 2254. Halprin complains that a document ranking him among his co-actors by leadership qualities was not admitted into evidence at trial, that he was convicted and given the death penalty without evidence that he killed or intended to kill the victim, and that his prior counsel provided ineffective assistance. After considering the application, related briefing, the state court record, and applicable law, the court **concludes** that Halprin's complaint that he was convicted and given the death penalty without evidence of intent to kill is **dismissed** as procedurally barred; and, in the alternative, it is **denied** for lack of merit. Halprin's remaining claims are all **denied** for lack of merit. Halprin's Application is **denied**.

## I.    Procedural Background

Halprin is one of seven inmates (known as the "Texas Seven") who escaped from a Texas prison and went on a crime spree that included the murder of police Officer Aubrey Hawkins while they fled after robbing an Oshman's sporting goods store on Christmas Eve in 2000. Halprin's

conviction and death sentence were affirmed on direct appeal on June 29, 2005.  *See Halprin v. State*, 170 S.W.3d 111 (Tex. Crim. App. 2005).  He filed an application for a post-conviction writ of habeas corpus in the state trial court on April 6, 2005, that was denied by the Texas Court of Criminal Appeals ("CCA") on March 20, 2013.  *See Ex parte Halprin,* No. WR-77,175-01, 2013 WL 1150018 (Tex. Crim. App. 2013).  Through appointed counsel, Halprin filed a federal petition for writ of habeas corpus (Doc. 5) on March 20, 2014, and an amended petition (Doc. 15) with brief in support (Doc. 15-1) on June 17, 2014.  Respondent Lorie Davis ("Respondent") has filed an answer (Doc. 23), and Halprin has filed his reply (Doc. 30).

## II.    Grounds for Relief

Halprin presents nine grounds for relief in three groups, as follows:

### Ranking Document

1.  The State violated *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to disclose the identity of the author of the Ranking Document that constituted important mitigating evidence.

2.  The trial court violated Halprin's rights under the Fifth, Eighth and Fourteenth Amendments by preventing him from offering the Ranking Document as important mitigating evidence in the punishment phase of his trial.

3.  Alternatively, trial counsel provided ineffective assistance in failing to discover the identity of the author of the Ranking Document.

### Enmund/Tison

4.  Halprin's death sentence violates the Fifth and Eighth Amendments because of the lack of evidence of his intent to kill.

### Assistance of Counsel

5.  Trial counsel provided ineffective assistance in the guilt phase of trial in failing to request a charge on the lesser included offense of felony murder.

6.  Trial counsel provided ineffective assistance in the guilt phase of trial in failing to object to improper impeachment evidence, request a limiting instruction and object to arguments based on this evidence.

7.  Trial counsel provided ineffective assistance in the guilt phase of trial in failing to object to the prosecutor's argument to the jury that its verdict did not need to be unanimous.

8.  Trial counsel provided ineffective assistance in the punishment phase of trial in failing to request an anti-parties charge.

9.  Appellate counsel provided ineffective assistance in failing to complain on direct appeal that the trial court refused to permit the introduction of certain mitigating evidence.

Halprin also requests an evidentiary hearing. Respondent contends that Halprin's fourth claim is procedurally barred and that each of Halprin's claims lacks merit and was properly denied by the state court.

## III.    Standard of Review

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). This statute sets forth a number of preliminary requirements that must be satisfied before reaching the merits of a claim.

Under the AEDPA, a federal court may not grant habeas relief on any claim that the state prisoner has not first exhausted in the State corrective process available to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A federal court, however, may deny relief on the merits notwithstanding any failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

When the state court denies the claim on state procedural grounds, a federal court will not reach the merits of those claims if it determines that the state-law grounds are independent of the

federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). If the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must resolve the claim without the deference the AEDPA otherwise requires, unless the state court reached the merits in the alternative. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits.") (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997)); *Mercadel v. Cain*, 179 F.3d 271, 274-75 (5th Cir. 1999) ("[T]he AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court.).

When the state court includes an alternative analysis of the merits of the claim, the AEDPA deference applies to the state court alternative merits findings. *See Busby v. Dretke,* 359 F.3d 708, 721 n.14 (5th Cir. 2004) (affording deference to merits finding when state court "invoked a procedural bar as an alternative basis to deny relief"); *accord Rolan v. Coleman,* 680 F.3d 311, 319 (3rd Cir. 2012) (holding that the "AEDPA deference applies when a state court decides a claim on procedural grounds and, alternatively, on the merits"); *Stephens v. Branker,* 570 F.3d 198, 208 (4th Cir. 2009) ("[W]e agree with our sister circuits that an alternative merits determination to a procedural bar ruling is entitled to the AEDPA deference."); *Brooks v. Bagley,* 513 F.3d 618, 624-25 (6th Cir. 2008) (holding that the state "court's alternative merits ruling receives AEDPA deference"); *Zarvela v. Artuz,* 364 F.3d 415, 417 (2d Cir. 2004) (affording deference when state court found "claim to be unpreserved, and, in any event, without merit"); *Johnson v. McKune,* 288 F.3d 1187, 1192 (10th Cir. 2002) (affording deference when "the state court relied on the merits as an alternative basis for its holding"); *Bigby v. Thaler,* No. 4:08-CV-765-Y, 2013 WL 1386667, at *19-

*20 (N.D.Tex. Apr. 5, 2013) (affording deference to state court's "alternative analysis" of claim on the merits"); *Battaglia v. Stephens,* No. 3:09-CV-1904-B, 2013 WL 5570216, at *24 (N.D. Tex. Oct. 9, 2013), *COA denied,* 621 F. App'x 781 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 803 (2016).

If the state court denies the claim on the merits, a federal court may not grant relief unless it first determines that the claim was unreasonably adjudicated, as defined in § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In the context of the § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision restricts a court's power to grant relief to state prisoners by barring claims in federal court that were not first unreasonably denied by the state courts. It limits, rather than expands, the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 562 U.S. at 98. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations

omitted) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from that court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context when it should not so apply, or unreasonably refuses to extend that principle to a new context when it should apply. *Williams*, 529 U.S. at 407. The standard for determining whether a state court's application was unreasonable is an objective one and applies to all federal habeas corpus petitions filed after April 24, 1996, provided that the claims were adjudicated on the merits in state court. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In the event the state court adjudication is deemed unreasonable, the federal court must still determine whether habeas relief would otherwise be appropriate. "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007). In those rare cases when a state prisoner makes the difficult showing required under § 2254(d), the federal court must make its independent determination of whether habeas relief is appropriate and conduct whatever hearings and evidentiary development are necessary to properly make that determination. *See, e.g., Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013) (holding that district court did not err in conducting the evidentiary hearing upon which habeas relief was granted); *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("[W]hen a petitioner makes a prima facie showing of mental retardation, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA.") (citation omitted); *Hayes v. Thaler*, 361 F. App'x 563, 566 (5th Cir. 2010) (applying *Panetti* standard in review of a *Batson* jury selection habeas claim).

## IV.     Ranking Document

In his first three complaints, Halprin focuses on a document from the Texas Department of Criminal Justice that compared and ranked the Texas Seven by their character for leadership, that will be referred to in this order as the "Ranking Document."[*] *See* Am. Pet. at 6-7; Am. Pet. Br. at

---

[*]The parties do not refer to this document in the same way, but the state court referred to it as the "Ranking Document." (6 State Habeas Clerk Record ("SHCR") at 2574.) The state court's title will, therefore, be used.

3-23.  This document ranked Halprin as the lowest in terms of leadership character, stating that he "never exhibited leadership qualities" and "consistently worried about whether his work was acceptable to the civilian workers," one of whom thought Halprin was undergoing some kind of depression.  Am. Pet. at App. "A".  Halprin first complains that the State violated his due process rights set out in *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to identify the author of the Ranking Document so that it could be admitted into evidence at trial.   In connection with this complaint, Halprin's second complaint is that the trial court's exclusion of this evidence violated his rights under the Fifth, Eighth and Fourteenth Amendments to have this mitigating evidence considered in sentencing.  Halprin makes his third complaint in the alternative to assert that his trial counsel was ineffective in failing to discover the author of this report.  Because Halprin's claims of ineffective assistance of trial counsel are addressed in part VI of this opinion, his third claim is more fully addressed there.

### A.    <u>State Court Proceedings</u>

Before trial, the Dallas County District Attorney's Office disclosed the Ranking Document to Halprin's counsel as part of discovery and to his prison expert, S. O. Woods, among many other Texas Department of Criminal Justice ("TDCJ") records.  *See* 53 Reporter's Record ("RR")  at 13-15; Vol. 2 State Habeas Reporter's Record of Evidentiary Hearing on August 20, 2010 ("SHRR") at 66-67; 6 SHCR at 2574, 2577.  At trial, Halprin attempted to introduce this document under the business records exception to the hearsay rule, but the trial court sustained the State's objection because Halprin did not prove that the statements in it were within the personal knowledge of an employee of TDCJ.  *See* 51 RR at 119-20, Def. Ex. 39; 53 RR at 13-16.

In the direct appeal, Halprin presented his second complaint that the trial court violated his rights under the Eighth Amendment by excluding the evidence. The CCA rejected his claim because he had not shown that the evidence came within an exception to the hearsay rule. *See Halprin,* 170 S.W.3d at 113-16. Specifically, the CCA found that there was "no evidence showing who prepared the document or whether it is a record of regularly conducted activity." *Id.* at 116. The CCA also found that the mitigating evidence contained in the document would have been cumulative of other mitigating evidence presented at trial, so that even if the document were shown to come within the exception, any error in refusing to admit it was harmless. *See id.*

During the state habeas proceedings, Halprin discovered that former Department of Public Safety ("DPS") Special Crimes Investigator Hank Whitman authored the report with the assistance of a handful of other law enforcement agents employed by DPS and TDCJ. *See* 6 State Habeas Clerk Record ("SHCR") at 2575. Based on this discovery, Halprin asserted his first and third claims.

The state habeas court found that "S.O. Woods, Applicant[']s prison expert at trial and in these writ proceedings, deduced Whitman's identity from Woods' review of records in possession of TDCJ's Office of Inspector General (OIG)." 6 SHCR at 2576 (citing S.O. Woods's Interrogatory Answers, filed 10/26/10). The state court also found that the State had, in effect, disclosed the information in question prior to Halprin's trial. "Although Woods may not have identified Whitman as the drafter of the ranking document until 2005, the Court finds that TDCJ-OIG first disclosed the documentation from which he gleaned that information, as well as the Rivas transcript and the Dunning interview summary, back in May 2003." 6 SHCR at 2578.

The state habeas court also found that the Ranking Document was inadmissible and, therefore, immaterial for *Brady* purposes. The state court found that the Ranking Document

constituted hearsay, and that Halprin offered the document under the business records exception to the hearsay rule, TEX. R. EVID. 803(6), but failed to show that the records came within that exception. *See* 6 SHCR at 2579. Halprin argued that if he had known Whitman's identity, he would have been able to make the required showing to bring the Ranking Document within the business records exception, but the state court found otherwise.

> (133) On its face the ranking document states that the information it contains was obtained from interviews with "civilian workers correctional officers and several inmates who worked closely with the escapees ..." (Defense Ex. 39; Applicants Ex. B.) Thus, the document is composed largely of the hearsay statements of several unidentified individuals.

> \* \* \*

> (136) The Court finds that Applicant fails to show definitively who contributed to the document much less which individuals provided which information in the ranking document.

> (137) Moreover[,] the Court finds that at least some of that information was received from inmates who had no business duty to report what they knew much less report it accurately.

6 SHCR at 2580.

Further, the state court both on direct appeal and in state habeas review found that the information in the Ranking Document was cumulative of other evidence admitted at trial. *See Halprin,* 170 S.W.3d at 116; 6 SHCR at 2581-83. Specifically, the state court on direct appeal found that

> the record also reflects that appellant presented from other sources a significant amount of mitigating evidence that was cumulative of the mitigating evidence contained in the document. A TDCJ civilian employee (Moczygemba) testified that he would rank appellant's intelligence "at the very bottom" of the Texas Seven. Another TDCJ civilian employee (Burgess) testified that appellant was not "a leader type." Appellant also testified at length that he was a follower and not a leader and that his participation in the victim's murder was minimal. Appellant's counsel also

argued appellant's lack of intelligence and leadership qualities to the jury during closing jury arguments at the punishment phase.

*Halprin,* 170 S.W.3d at 116 (footnotes omitted). On state habeas review, lead trial counsel testified that the defense had received the value of the evidence in this document out of the witnesses who testified. *See* 2 SHRR at 78, 132-35. Subsequently, the state court again found that the evidence in the Ranking Document was cumulative of the evidence presented at trial and that these civilian employees provided more credible evidence than the statements from Halprin's co-defendant and fellow inmates. *See* 6 SHCR at 2581.

The state habeas court also found that the jury was left with an impression of the Ranking Document that was more favorable to Halprin's case than they would have had if it had actually been admitted. "In particular, [Halprin's trial] counsel left the jury with the misimpression that law enforcement had ranked Applicant as the least dangerous, rather than merely the least likely to lead." 6 SHCR at 2582. The state court concluded that the lack of additional evidence of the same character traits and law enforcement's leadership ranking of the escapees was insufficient to undermine confidence in the jury's verdict at guilt or punishment. *See* 6 SHCR at 2583.

**B.** ***Brady***

In his first claim, Halprin asserts that the State suppressed the identity of the author of the Ranking Document and that it was important mitigating evidence that the state trial court improperly excluded from the evidence admitted at the punishment stage of Halprin's trial. *See* Am. Pet. Br. at 4, 6-20. Respondent argues that the information was not suppressed because it was made as available before trial and was not material under *Brady* because knowledge of the identify of the

author of the Ranking Document would not have made it admissible at trial and it was cumulative of the evidence that was admitted.  *See* Ans. at 17-25.

As noted above, the state court on habeas review found that knowledge of the identity of the author of the Ranking Document would not have made it admissible under state law.  *See* 6 SHCR at 2579-80.  Whether the state court correctly applied its own evidentiary rules is not generally a matter of federal habeas review.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris,* 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law).  To the extent, however, that this evidentiary matter is central to the determination of materiality under *Brady,* Halprin has not satisfied the high and difficult standard set out in 28 U.S.C. § 2254(d) for the review of claims adjudicated on the merits by the state court.

The state court's finding that the evidence was not suppressed was reasonable in light of the evidence before the state court.  It is undisputed that the prosecutors did not know the identity of the author of the Ranking Document at the time of trial.  At trial, defense counsel argued that defense expert, S.O. Woods, received the Ranking Document among the several documents that were disclosed by the state prior to trial.  *See Halprin,* 170 S.W.3d at 115.  This same defense expert was able to ascertain the author's identity from those records after the trial.  *See* 6 SHCR at 2577-78.  Since the same defense expert was able to discover the identity of the author from the same records

disclosed prior to trial, the state court's finding that the information had not been suppressed was not unreasonable.

Even if the evidence were suppressed, Halprin has not shown that it was material. The state court's findings that the identity of the author would not have made the Ranking Document admissible at trial and that the defense was able to get the same mitigation information in through other witnesses, supports its finding that the author's identity was not material for *Brady* purposes. This was not an unreasonable application of clearly established federal law. Although suppressed evidence need not be admissible to be material under *Brady,* "it must, somehow, create a reasonable probability that the result of the proceeding would be different." *United States v. Brown,* 650 F.3d 581, 588 (5th Cir. 2011). "Thus, we ask only the general question whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." *Felder v. Johnson,* 180 F.3d 206, 212 (5th Cir. 1999).

Halprin has not shown how earlier knowledge of the identity of the author of the report would have created a reasonable probability that the result of the proceeding would have been different. He argues that it would have made the report admissible, but the state court rejected that argument on the basis of state law. *See* 6 SHCR at 2578. This court cannot overrule the state court's conclusion that the evidence would be inadmissible under state law because "[u]nder § 2254, federal habeas courts sit to review state court misapplications of federal law[;] [they] lack[ ] authority to rule that a state court incorrectly interpreted its own law." *Charles v. Thaler,* 629 F.3d 494, 500-01 (5th Cir. 2011); *see also McCarthy v. Thaler,* 482 F. App'x 898, 903 (5th Cir. 2012) (holding that state court conclusion in habeas review that proffered evidence would have been inadmissible under state law was beyond federal habeas review). Further, the state court's findings that the information in

the Ranking Document was cumulative of other evidence admitted at trial was supported by the evidence. Accordingly, Halprin has not shown that the identity of the author of the Ranking Document was material under *Brady.*

Halprin has not made the showing required by § 2254(d) regarding the state court's adjudication of his *Brady* claim. Accordingly, Halprin's first claim is **denied**.

### C.    Exclusion of Mitigating Evidence

In his second claim, Halprin asserts that the exclusion of the Ranking Document prevented the consideration of important mitigating evidence at trial in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments. *See* Am. Pet. Br. at 3, 17-22. Halprin presents this claim in the alternative to his *Brady* claim and argues that it should not have made any difference who the author of the Ranking Document was because the trial court knew that it was the product of a state agency's investigation, should have been admitted, and its exclusion constituted cruel and unusual punishment and violated his fundamental right to due process and the guarantee of an impartial trial. *See* Am. Pet. at 20-22. Respondent argues that Halprin's claim merely attacks an evidentiary ruling and does not rise to the level of a constitutional challenge that would be cognizable in federal habeas review. *See* Ans. at 26-28. Respondent also argues that, even if it did, Halprin has not shown that the state court's adjudication was incorrect, contrary to, or an unreasonable application of, clearly established federal law. *See* Ans. at 28-31.

As explained in connection with this court's analysis of his *Brady* claim, the state court's finding—that this evidence was inadmissible under state law and would have remained so even if the identity of the author of the Ranking Document had been known—ordinarily precludes a finding by this court that it was improperly excluded from evidence under state law.

**Memorandum Opinion and Order - Page 14**

Due process is implicated only for rulings of such a magnitude or so egregious that they render the trial fundamentally unfair. It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts. Relief will be warranted only when the challenged evidence played a crucial, critical, and highly significant role in the trial.

The due process inquiry must consider the significance of the challenged evidence in the context of the entire trial. We have held that the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not so pronounced and persistent that it permeates the entire atmosphere of the trial. This is a high hurdle, even without AEDPA's added level of deference.

*Gonzales v. Thaler,* 643 F.3d 425, 430–31 (5th Cir. 2011) (footnotes and internal quotations omitted).

Although it is clear that defense counsel sought diligently to get the Ranking Document admitted, it is also clear that counsel got the value of that evidence admitted through the testimony of live witnesses, making it cumulative of the evidence presented at trial. *See* 2 SHRR at 78, 132-35; 6 SHCR at 2581. Further, Halprin has not shown that the evidentiary ruling was incorrect. Therefore, the absence of this evidence did not render the trial fundamentally unfair or violate Halprin's due process rights.

Halprin argues that the exclusion of this evidence also violated his rights under the Eighth and Fourteenth amendments. *See* Am. Pet. Br. at 19-20 (citing *Lockett v. Ohio,* 438 U.S. 586 (1978)). In *Lockett,* the Supreme Court held that these constitutional provisions require that the sentencer "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (footnotes omitted). The United States Court of

Appeals for the Fifth Circuit has construed this language to apply to categories rather than items of evidence.

> The *Lockett/ Eddings* line of cases, however, deals with the exclusion of specific types of evidence rather than specific items in evidence. In *Lockett,* the Supreme Court struck down Ohio's death penalty statute because it permitted the sentencer to consider only three mitigating circumstances. 438 U.S. at 607-08, 98 S. Ct. 2954. Likewise in *Eddings,* the Supreme Court reversed the petitioner's death sentence because the trial judge refused to admit entire areas of mitigating evidence: there, evidence relating to the circumstances of the petitioner's "unhappy upbringing and emotional disturbance." 455 U.S. at 109, 113-15, 102 S. Ct. 869. Here, the trial court did not disallow evidence that Simmons was remorseful for his actions; instead, it excluded a particular item in which Simmons expressed remorse because the court found it unreliable hearsay. Therefore, Simmons cannot accurately claim that the jury was deprived of considering "as a mitigating factor, any aspect of [his] character or record [or] any of the circumstances of the offense." *Lockett,* 438 U.S. at 604-05, 98 S. Ct. 2954.

*Simmons v. Epps,* 654 F.3d 526, 544 (5th Cir. 2011); *see also Alley v. Bell,* 392 F.3d 822, 831-32 (6th Cir. 2004) (holding that "since the trial court had allowed Alley to present the information in question to the jury in a slightly different format than the one he sought to employ, and it had not applied the relevant state evidentiary law in a 'mechanical, arbitrary, or disproportionate' manner, the Tennessee court's resolution of the issue was not unreasonable or contrary to *Lockett.*") (citing *Alley v. Bell,* 307 F.3d 380, 399 (6th Cir. 2002)).

In Halprin's case, the trial court did not rule that he could not present evidence of his character for leadership, even as it compared with his co-actors, but merely that the report itself was not admissible because it contained multiple levels of unreliable hearsay.

> THE COURT:    The issue is that the conclusions on the entire document are all from hearsay from unnamed sources. That's the problem with the document.
>
> [PROSECUTOR]:    We didn't know who made it, either.

THE COURT:    You don't know who the author is, you don't know where the conclusions came from, you can't go back and find out any of the source information that that ultimate opinion comes from.

So I have reviewed 39, I understand your objections. No question about its authenticity. It's simply not admissible because of hearsay.

53 RR at 15. In fact, the trial court allowed Halprin to develop this type of evidence, his lack of leadership character, through the witnesses who testified at trial. *See Halprin,* 170 S.W.3d at 116.

Because Halprin has not shown a violation of his constitutional rights in the exclusion of this evidence and the state court findings have not been shown to be unreasonable, Halprin has not established an entitlement to relief. Therefore, Halprin's second claim is also **denied**.

### D.    Ineffective Assistance of Counsel

In this third claim, Halprin asserts in the alternative that his trial counsel was ineffective in failing to discover the identity of the author of the Ranking Document and obtain its admission at trial. Because ineffective-assistance-of-counsel claims are more thoroughly addressed in section VI of this order, this claim is addressed there.

## V.    Culpability for Death Penalty

In his fourth claim, Halprin asserts that he was sentenced to death without a showing of his intent to kill in violation of the Fifth and Eighth Amendments. *See* Am. Pet. at 7; Am. Pet. Br. at 24-65. Respondent asserts that the claim is procedurally barred and lacks merit. *See* Ans. at 32-42.

### A.    State Court Proceedings

In his first and thirtieth claims on state habeas review, Halprin complained that the evidence did not support a finding that he either intended Officer Hawkins's death or exhibited a reckless disregard for human life and played a major role in the crime. *See* 2 SHCR at 673-703, 917-18; 6

SHCR at 2561. Relying on *Enmund v. Florida,* 458 U.S. 782 (1982), and *Tison v. Arizona,* 481 U.S. 137 (1987), Halprin contended that his death sentence was disproportionate to his crime and thus violates his Eighth Amendment right against cruel and unusual punishment because no reasonable juror could find he possessed a culpable mental state sufficient to render him death eligible. He also claimed that the finding by the jury on the second special issue that he anticipated a human life would be taken did not constitute a finding that he acted with a reckless disregard for human life. Therefore, Halprin contended that he was not eligible for the death penalty.

The state court found the claims procedurally barred because they had not been raised at trial or on direct appeal. After observing that Texas law required an objection at trial to preserve the error for collateral review, the state court found that Halprin's failure to raise the issue at trial prevented him from raising in on postconviction habeas review.

> (17)     The Court finds that at trial Applicant only facially challenged the constitutionality of the anti-parties special issue arguing that a finding that an accused anticipated the taking of a human life was not a mental state sufficient to warrant a death sentence. Applicant never raised the claim that the evidence is insufficient to show that he possessed the requisite mental state to render him death eligible under the Eighth Amendment. Likewise he never raised the claim that the anti-parties special issue was unconstitutional as applied to him. Applicant could have raised both of these claims in a motion for new trial but did not. CR 60.

> (18)     Because Applicant did not avail himself of the prior opportunity to present his claims to this Court, the Court concludes that collateral review of Applicants first and thirtieth grounds for relief are procedurally barred and should be dismissed.

6 SHCR at 2561. The state court also found that these were claims that could have been, but were not, raised on direct appeal. Therefore, they were also procedurally barred for that reason.

> (20)     Habeas corpus will not lie as a substitute for direct appeal. *Ex parte Townsend,* 137 S.W.3d 79, 81 (Tex. Crim. App. 2004). Even a constitutional

claim is forfeited if Applicant had the opportunity to raise it on appeal and did not. The writ of habeas corpus is an extraordinary remedy that is available only when there is no other adequate remedy at law. *Id.*

(21)     The Court finds that nothing prevented Applicant from raising these claims on direct appeal and that Applicant presents no evidence in support of these claims that was not already part of the appellate record.

(22)     The Court finds that Applicant[']s first and thirtieth grounds for relief are an improper attempt to use the writ as a substitute for appeal.

(23)     Therefore the Court concludes that Applicant[']s first and thirtieth grounds for relief are procedurally barred and should be dismissed. *Id.*

6 SHCR at 2562.

Alternatively, the state court found that these claims lacked merit.

(25)     The Court finds that Applicant's death sentence is not disproportionate to his crime. Thus, the Court concludes Applicant's sentence does not constitute cruel and unusual punishment.

(26)     Furthermore, the Court finds that, by their affirmative answer to the second special issue, the jury found that Applicant possessed a culpable mental state sufficient to render him death eligible.

(27)     Under the Eighth Amendment, a party to a felony during which a murder is committed is eligible for the death penalty if he himself killed, attempted to kill, intended to kill or intended that lethal force be used, or acted with a reckless indifference to human life and was a major participant in the underlying felony. *Tison,* 481 U.S. at 158; *Enmund,* 458 U.S. at 797.

(28)     Applicant contends a reasonable juror could only conclude from the evidence that he had no involvement in the shooting of Officer Hawkins, that he played a minor role in the Oshman's robbery, and that he justifiably believed no one would be hurt.

(29)     The Court finds the evidence shows that Applicant was a major participant in the robbery and the murder. The record is replete with evidence that reflects Applicant's intent to kill and his reckless indifference to Officer Hawkins's life. There is even evidence from which the jury could conclude that Applicant himself fired a lethal shot.

**Memorandum Opinion and Order - Page 19**

6 SHCR at 2562-63. The state court then proceeded to make more detailed findings regarding its conclusions that the evidence was sufficient to prove the requisite culpability, that the jury found Halprin acted with reckless indifference to Officer Hawkins's life, and that Halprin possessed the culpability required for imposition of the death penalty. *See* 6 SHCR at 2563-72.

**B.     Analysis**

The state court found this claim to be barred by both the lack of a contemporaneous objection and the failure to raise the claim in the direct appeal, even though it was a claim that could have, and should have, been brought in that appeal. Both of these bases for procedural bar have been recognized as regularly followed and consistently applied state procedural bars that are adequate to bar federal habeas review of the merits of the claim. The Texas contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review of a petitioner's claims. *See Turner v. Quarterman,* 481 F.3d 292, 301 (5th Cir. 2007); *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir. 1998) ("This Circuit has held that the Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar.") In *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005), the Fifth Circuit observed:

> In *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), the court found that claims which should have been raised on direct appeal are procedurally defaulted. Furthermore, in *Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. [2004]), this court established that "the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review."

This circuit has also observed that "[t]he procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground." *Matchett v. Dretke,* 380 F.3d 844, 848 (5th Cir. 2004) (citing *Ylst v.*

*Nunnemaker,* 501 U.S. 797, 801, 803 (1991)).  Because Halprin has not demonstrated causation and prejudice, or that a failure to address the claim will result in a fundamental miscarriage of justice, this claim is procedurally barred.  *See Coleman,* 501 U.S. at 750.  Accordingly, Halprin's fourth claim is **dismissed** as procedurally barred.

In the alternative, the state court's alternative findings that the claim lacks merit are entitled to deference under § 2254(d) & (e)(1).  *See Busby,* 359 F.3d at 721 n.14; *Bigby v. Thaler,* No. 4:08-CV-765-Y, 2013 WL 1386667, at *19-20 (N. D. Tex. Apr. 5, 2013) (affording deference to state court's "alternative analysis" of claim on the merits"), *COA denied sub nom Bigby v. Stephens,* 595 F. App'x 350 (5th Cir. 2014), *cert. denied,* 135 S. Ct. 2359 (2015); *Battaglia,* 2013 WL 5570216, at *24.  Since Halprin has not shown that the state court's findings were incorrect or that its alternative adjudication of the merits of this claim was unreasonable or contrary to clearly established federal law, he has not shown an entitlement to relief on this claim.  Accordingly, if Halprin's fourth claim were not procedurally barred, it would be **denied** for lack of merit.

## VI.    Effective Assistance of Counsel

In his third, fifth, sixth, seventh, and eighth claims, Halprin complains that he was denied the effective assistance of counsel at his trial.  In his ninth claim, Halprin complains that he was denied the effective assistance of his counsel in his direct appeal.  Respondent asserts that the state court reasonably rejected each of these claims.

### A.    Standard of Review

Claims of ineffective assistance of counsel are measured by the familiar two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient.  *Id.* at 687.  The second

prong of this test requires the defendant to show prejudice resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697.

In measuring whether counsel's representation was deficient, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffectively by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Richter,* 562 U.S. 106. In *Richter,* the Supreme Court noted the "wide latitude counsel must have in making tactical decisions" and the need to avoid judicial second-guessing. *Id.* (quoting *Strickland,* 466 U.S. at 689). "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id.* at 110.

To satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were so egregious "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The test to establish prejudice under this prong is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A reasonable probability under this test is "a probability sufficient to undermine confidence in the outcome." *Id.*

The deference required under the AEDPA must also be applied:

> Because this case arises under AEDPA, *Strickland* is not the only standard we must keep in mind. When a petitioner brings a *Strickland* claim under AEDPA, the "pivotal question" is not whether the petitioner was deprived of his right to counsel under the Sixth Amendment. *Harrington v. Richter,* [562 U.S. at 101]. Instead, "the question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* Both the *Strickland* standard and AEDPA standard are "highly deferential," and "when the two apply in tandem, review is doubly so." *Id.* at 788 (internal quotation marks omitted).

*Beatty v. Stephens,* 759 F.3d 455, 463 (5th Cir. 2014), *cert denied,* 135 S. Ct. 2312 (2015); *see also Pinholster,* 563 U.S. at 171-72 ("Review here is thus 'doubly deferential'" . . . requiring a 'highly deferential' look at counsel's performance . . . through § 2254(d)'s 'deferential lens.'"); *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (referencing "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard.").

## B. Claims

### 1. *Failure to Identify Author*

In this third claim, Halprin asserts in the alternative that his trial counsel was ineffective in failing to discover the identity of the author of the Ranking Document and obtain its admission at trial under the business records exception to the hearsay rule. *See* Am. Pet. at 3; Am. Pet. Br. at 22-23. Respondent asserts that the state court's merit determinations were not contrary to, or an unreasonable application of, the *Strickland* standard. *See* Ans. at 42, 45-47.

As set out on Section IV above, the state court found that knowledge of the identity of the author of the report would not have resulted in its admission under the state's evidentiary rules.

Therefore, even if counsel were somehow deficient in failing to discover Whitman's identity prior to trial, it was not the reason for the exclusion of the Ranking Document. Accordingly, knowledge of Whitman's identity would not have shown "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Further, the state court found that the mitigating information in the Ranking Document was admitted through other witnesses and that the jury was actually left with a more favorable impression of this evidence than would likely have been the case if it had been admitted. *See Halprin,* 170 S.W.3d at 116; 6 SHCR at 2581-83.

Halprin has not undermined confidence in the outcome of his trial that is necessary to show the prejudice required to sustain a claim of ineffective assistance of trial counsel for failing to discover Whitman's identity, much less that the state court unreasonably denied this claim. Because Halprin has clearly not satisfied the prejudice prong, it is unnecessary to determine whether trial counsel was deficient in failing to discover Whitman's identity prior to trial or whether Halprin has shown that the state court findings on this matter were incorrect. *See id.* at 697. Halprin's third claim is **denied** for lack of merit.

### 2. *Lesser-Included Felony Murder Charge*

In his fifth claim, Halprin complains that his trial counsel was ineffective in failing to request a jury instruction allowing conviction for the lesser-included offense of felony murder. *See* Am. Pet. at App.; Am. Pet. Br. at 71-80. Respondent asserts that the state court's denial of this claim was not unreasonable or contrary to *Strickland*. *See* Ans. at 42, 47-58.

### a.      State Court Proceedings

At the guilt/innocence stage of trial, Halprin was given an instruction on the lesser included offense of aggravated robbery but did not request and was not given a charge on a lesser included offense of murder.  *See* Vol. 1, State Clerk's Record ("CR") at 22-36.  Trial counsel argued to the jury that Halprin committed aggravated robbery but not murder because he never shot anyone and only intended to participate in a robbery.  *See* 50 RR at 43, 45, 51, 53-55.

During the state habeas proceedings, lead trial counsel testified that he did not want an instruction that said Halprin was guilty of murder, as his argument was that if Halprin was guilty of anything it was aggravated robbery.  *See* 2 SHRR at 145.  The state habeas court found that Halprin failed "to rebut the presumption that his counsel's decision not to request a lesser-included offense instruction on felony-murder constituted sound trial strategy." 6 SHCR at 2606.  The state court also found that the language of a felony murder instruction would have been disadvantageous to Halprin's defense and would have conflicted with the sound defensive strategy that they had adopted.  *See* 6 SHCR at 2607-10.

The state habeas court also found that Halprin would not have been entitled to an instruction on the lesser included offense of felony murder.  "Applicant was not entitled to a jury instruction on felony murder unless there was some evidence that he and the other escapees did not knowingly cause Officer Hawkins's death."  6 SHCR at 2611.  The state court also found that, because the State's evidence demonstrated an intent to kill the officer by any of the accomplices, Halprin was not entitled to an instruction on felony murder.  *See* 6 SHCR at 2612-13.  The state court concluded that Halprin's trial counsel could not be ineffective for failing to request an instruction that he was not entitled to receive.  *See* 6 SHCR at 2614.

**Memorandum Opinion and Order - Page 25**

The state habeas court also found that Halprin had failed to show prejudice because a lesser included alternative to capital murder was included in the charge that had the same range of punishment as felony murder. *See* 6 SHCR at 2614-16.

### b. <u>Analysis</u>

Halprin has not shown the state court's adjudication to be incorrect, much less unreasonable or contrary to federal law. The state court's finding that trial counsel had a reasonable trial strategy for deciding not to request the lesser included charge on felony murder was supported by trial counsel's testimony that was not shown to be false.

Further, the state court reasonably determined that Halprin was not entitled to a felony murder instruction under state law. There was no evidence upon which the jury could have concluded that none of the co-actors intended to kill Officer Hawkins. Therefore, there is no basis to question the state court's conclusion that Halprin was not entitled to a lesser instruction on murder, and that trial counsel could not be ineffective for failing to request a charge that Halprin was not entitled to obtain. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Paredes v. Quarterman,* 574 F.3d 281, 291 (5th Cir. 2009) (reasoning that the failure to make a meritless objection could not have prejudiced inmate.); *Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997) ("[F]ailure to assert a meritless objection cannot be grounds for a finding of deficient performance."); *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Further, as Respondent argues, the jury was given a logical alternative to capital murder in the aggravated robbery charge that was submitted; and the kind of prejudice set out in *Beck v. Alabama,* 447 U.S. 625, 635 (1980), did not exist in this case. *See* Ans. at 52, 57-58. Therefore, Halprin has not established prejudice or shown that the state court's rejection of his allegations of prejudice was unreasonable. Neither prong of *Strickland* is met.

Because Halprin has not established that the state court unreasonably denied his fifth claim, it is **denied** for lack of merit.

### 3. *Cross-Examination*

In Halprin's sixth and seventh claims, he complains that trial counsel failed to object to the improper cross-examination of him during the trial. *See* Am. Pet. at App.; Am. Pet. Br. at 80-101. Halprin contends in his sixth claim that the state failed to give proper notice of its intent to use prior extraneous bad acts to impeach him, defense counsel failed to request a limiting instruction on the use of the acts of misconduct used to impeach him, and defense counsel failed to object to the prosecutor's jury arguments regarding these bad acts. *See* Am. Pet. at App.; Am. Pet. Br. at 80. Halprin contends with respect to his seventh claim that his trial counsel failed to "object to detailed questions concerning prior acts of misconduct that were not relevant to any issue in the case." Am. Pet. at App. Respondent asserts that the state court's denial of these claims was not unreasonable or contrary to *Strickland*. *See* Ans. at 42, 58-68.

### a. State Court Proceedings

At trial, defense counsel called Halprin to the stand after informing him of his rights and going over the risks and benefits of testifying. *See* 47 RR at 94-95, 97. On direct examination, Halprin testified regarding his background, adoption, trouble growing up, family relationships, prior

offense and conviction, life in prison, letters and communications during incarceration, circumstances regarding the escape and subsequent robberies, everyone's roles, events leading up to the death of Officer Hawkins, injury to his foot during the robbery and shooting, subsequent events, surrender, confessions, media coverage, the jury's role, and especially that he did not use his gun or shoot Officer Hawkins during the robbery of Oshman's or anticipate that anyone would get hurt. On cross-examination, the prosecutor attacked his credibility and addressed his future dangerousness by going through numerous letters that Halprin wrote containing lies, exploring the details of his offense of injury to a child and his subsequent statements, his theft in Kentucky, his fights and behavior in prison, interviews with the media with inconsistent statements, the circumstances of the robbery and murder of Officer Hawkins and subsequent events, the likelihood of a deadly result of the robbery and the reasonableness of Halprin's stated belief that he did not anticipate deadly violence. *See* 48 RR at 58-168; 49 RR at 3-24.

Halprin presented these claims in subpart F of the fourth claim in his application for a writ of habeas corpus filed in the state court. *See* 2 SHCR at 753-69. The state habeas court found that the prosecution provided notice of its intent to use this evidence, even though state law did not require such notice for evidence used in cross examination. *See* 6 SHCR at 2616. The state court also found that Halprin placed his general character and his character for truthfulness before the jury when he testified. In addition, the state court, found that trial counsel made a reasonable strategic decision to not object before the jury and to actually introduce much of the evidence in question, including Halprin's prison mail, to minimize its prejudicial impact and put it in the best light possible, and to further their defensive theory that Halprin was a harmless buffoon and braggart, a pathetic figure who overcompensated for his cowardice with stories and delusions of grandeur. *See*

6 SHCR at 2616-22.  This was also consistent with the defensive strategy to portray that Halprin was unintelligent, avoided confrontation and danger, was a follower rather than a leader, had a diminished role in the offense, and was completely incapable of shooting or intending to shoot a police officer.  *See* 6 SHCR at 2622-27.

The state habeas court also found that the state's arguments based on this evidence were proper and, therefore, trial counsel were not deficient for failing to object.  *See* 6 SHCR at 2627.  The state court additionally found that trial counsel decided against the limiting instruction to avoid calling attention to the evidence, particularly since they were dissimilar from the charged offense and not related to a pivotal issue at the trial.  *See* 6 SHCR at 2628.  The state court further found that defense counsel used this same evidence in support of their argument that Halprin was not guilty of capital murder.  *See* 6 SHCR at 2628.  The state court concluded that trial counsel had not acted deficiently, but "that defense counsel acted strategically in their handling of the letters and the impeachment evidence and that the strategy counsel employed was sound and within reasonable professional judgment."  6 SHCR at 2629.

### b.    Analysis

The state court's factual findings are supported by the record that was before the state court, and its interpretation of state law is generally binding on this court.  *See Paredes v. Quarterman,* 574 F.3d 281, 291 (5th Cir. 2009) ("[T]he Supreme Court has 'repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.'"); *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Halprin has not shown any of the state's conclusions to be incorrect or its denial

of this claim to be unreasonable or contrary to federal law. Therefore, Halprin's sixth and seventh claims are **denied**.

### 4. *Prosecutor Statements and Jury Argument*

In the first part of Halprin's eighth claim, he complains that trial counsel failed to object to allegedly improper statements made by the prosecutor during voir dire and jury argument at the guilt phase of the trial. *See* Am. Pet. at App.; Am. Pet. Br. at 101-13. Respondent asserts that the state court's denial of this claim was not unreasonable or contrary to *Strickland*. *See* Ans. at 42, 58-68.

### a. <u>Prosecutor's Jury Argument</u>

Halprin complains that his trial counsel failed to object to the prosecutor's argument to the jury that its verdict on guilt did not need to be unanimous concerning Halprin's role in the offense as either a principal, party or conspirator. *See* Am. Pet. Br. at 101-04. Specifically, during the guilt phase of the trial, a prosecutor argued:

> We went over the different theories. We can prove him as a principal, a party, or as a co-conspirator. And, in fact, under the law you don't have to agree, the twelve of you, on which theory to convict him of. Four of you might think we have proven him as a principal; four might think we may have proven it as party; and four of you might think, well, they have proven him as a coconspirator, and you can all find him guilty, a unanimous verdict.
>
> Or you might all think, you know what? They've proven him all three ways, because that's how strong the evidence is in this case. So you will never get to the lesser included, because this is an overwhelming case.

Am. Pet. Br. at 101-02 (quoting 50 RR at 57). Embedded in this claim is a complaint that trial counsel failed to object to the jury instructions that allowed a nonunanimous verdict. *See* Am. Pet. Br. at 104. Halprin argues that this allowed the jury to find him guilty with less than a unanimous verdict because he was charged under two different capital murder statutes (murder of a peace officer

under Texas Penal Code § 19.03(a)(l) and murder in the course of committing or attempting to commit robbery under § 19.03(a)(2)) that were submitted to the jury under the alternate theories of culpability as either a principal, a party or a conspirator. Respondent argues that the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard and, therefore, habeas relief is unavailable. *See* Ans. at 68-73.

### *i.*     *State Court Proceedings*

In subpart G to the fourth claim in his state application for a writ of habeas corpus, Halprin made the same complaint that trial counsel failed to object to the prosecutor's jury argument that he makes before this court and included his same embedded claim that counsel also failed to object to an improper court's charge to the jury in the guilt phase. *See* 2 SHCR at 769-71. The state habeas court found that the charge was appropriate, observing that a general verdict is appropriate in Texas criminal cases such as this one.

The state habeas court found that, under state law, "unanimity means that each and every juror agrees that the defendant committed the same single specific criminal act." 6 SHCR at 2632. The state court also found that Halprin had been charged with "only one criminal act—the capital murder of Aubrey Hawkins. The alternative paragraphs in the jury charge simply alleged different theories for the commission of that one capital murder." 6 SHCR at 2632. The state court also found that the two theories set forth in the charge simply alleged different, nonexclusive theories for the commission of that one capital murder and did not conflict with one another. Because the *actus reus* was the single murder of Officer Hawkins, the jury did not have to agree on the statutory aggravating element in order to return a general verdict of guilty. *See* 6 SHCR at 2629, 2632-33.

The state court also held that, under state law, "a jury charge that allows the jury to find a defendant guilty based on either his own actions or the actions of another (liability as a party) does not violate the law regarding jury unanimity." 6 SHCR at 2633. And that while jury unanimity is required on the "essential elements of the offense," it is generally not required on "alternate modes or means of commission," and that "the Supreme Court has expressly rejected Applicant's argument that a jury must agree unanimously on the means by which a defendant committed a particular crime." 6 SHCR at 2634 (citing *Schad v. Arizona,* 501 U.S. 624, 633 (1991)).

The state court concluded that the jury charge was not erroneous and that the prosecutor's jury argument in accordance with that charge was proper. *See* 6 SHCR at 2634. Accordingly, the state court determined that trial counsel was not ineffective for failing to lodge a meritless objection to the State's proper jury argument, and that Halprin failed to prove that the result of the proceeding would have been different if defense counsel had objected to the jury charge and the State's argument. *See* 6 SHCR at 2634.

### ii.        *Analysis*

Halprin has not shown the state court's adjudication of his claim to be incorrect, much less unreasonable. A prosecutor's jury argument may properly state the law given to the jury in the charge of the court. *See Taylor v. State,* 233 S.W.3d 356, 359 (Tex. Crim. App. 2007) (upholding jury argument where "the prosecutor did not convey any information beyond what was properly contained in the charge."); *Harris v. Stephens,* No. A-14-CA-841-SS, 2015 WL 4911207, at *6 (W.D. Tex. Aug. 17, 2015) (holding that prosecutor's attempt to state the law accurately for the jury as it was described in the indictment was not improper). Therefore, if the charge was correct, an argument based on it would not be objectionable.

**Memorandum Opinion and Order - Page 32**

The state court determined that Haprin's jury charge did not permit a nonunanimous verdict, but that Halprin was charged with and convicted of committing only one crime under state law—the capital murder of Aubrey Hawkins—even though different theories were provided for the jury regarding how that crime was committed. *See* 6 SCHR at 2632-34. The state court's findings that the jury instruction and prosecutor's argument did not violate state law are generally binding on this court. *See Paredes,* 574 F.3d at 291; *Bradshaw v. Richey,* 546 U.S. at 76. Halprin has not shown that the law at the time actually required or even supported the objection, and the failure to raise a meritless objection cannot support a claim of ineffective assistance of counsel. *See Clark,* 19 F.3d at 966.

The state court's adjudication of Halprin's claim has not been shown to be incorrect, much less unreasonable under § 2254(d). Therefore, this part of Halprin's eighth claim is **denied**.

### b. Jury Selection

Halprin complains that his trial counsel failed to object to the prosecutor's statements during the jury selection relating to the law of parties with accomplices and assessing the death penalty for a non-triggerman who participated in a robbery while carrying a gun. *See* Am. Pet. Br. at 105-13. Specifically, Halprin complains that throughout jury voir dire the prosecution continually suggested that a death penalty would be appropriate for a non-triggerman who was armed and helped plan a robbery. *See* Am. Pet. Br. at 105. Respondent argues that the state court reasonably rejected this claim and Halprin is entitled to no relief. *See* Ans. at 73-74.

### i. State Court Proceedings

In subpart C to the fifth claim in his state application for a writ of habeas corpus, Halprin made the same complaint that trial counsel failed to object to the prosecutor's statements during jury

selection that he makes before this court. *See* 2 SHCR at 780-87. The state habeas court found that Halprin's complaints lacked merit, that the asserted statements were either misinterpreted or misrepresented, and that large portions were omitted or presented out of their proper context, namely, the discussion of the law of parties.

> (448) Applicant cites the Court to portions of the voir dire examination of eleven of the twelve jurors. But the Court finds that Applicant either misinterprets or misrepresents the prosecutor's remarks.

> (449) The Court finds that all of the cited remarks generally relate to the concept of party conspiracy, but they do not all relate to a conspirator's eligibility for the death penalty. Some of the remarks relate only to the issue of a conspirator's guilt (i.e. should the defendant have anticipated someone would die). Indeed the excerpts from the examination of jurors nine and twelve relate entirely to the issue of guilt. *See* (RR9: 75-76, 87; RR 12: 22; RR22: 101; RR27: 126; RR30: 56; RR35: 194; RR38: 171). In this respect, the cited remarks provide no support for Applicant's contention.

> (450) Furthermore, to the extent the prosecutor's remarks did relate to a party conspirator's eligibility for the death penalty, the Court finds that Applicant misconstrues them.

> (451) The Court finds that in the excerpted remarks about the concept of "actual anticipation," the prosecutors were merely identifying examples of facts from which a juror might infer that a defendant actually anticipated that someone would die. These examples neither explicitly nor implicitly told the jurors that the evidence a conspirator was armed and helped plan the robbery was, by itself, sufficient to prove actual anticipation.

> (452) In fact the Court finds that throughout their examinations of the jurors on the matter, the prosecutors referred to several other factors from which the jurors might infer anticipation, such as how many others were armed, how detailed the plan was, how actively involved the defendant was in the robbery, whether he was present during murder or down the street in a getaway vehicle, whether he was prepared to use his weapon, and whether he committed the offense with others who had a criminal history.

6 SHCR at 2635-36. The state court found that the prosecutor's remarks were a proper explanation of the law and trial counsel was not ineffective for not objecting to them. *See* 6 SHCR at 2636-37.

### ii. Analysis

In his attempt to present the exhausted claim before this court, Halprin duplicates the errors made before the state court. Despite the detailed explanation by the state court regarding how Halprin had misconstrued and taken comments out of context in presenting this claim there, the same errors appear in the claim presented to this court. Several of the quotes set forth in the Amended Petition brief erroneously excluded large segments of the transcripts that explained and qualified the quoted language. Some omitted language also revealed shifts in the prosecutor's discussion from a punishment issue to the law of parties at the guilt stage. Explanatory contexts for the quoted language were also omitted and presented incorrectly before this court.

While this court understands the need to confine the claim to what was exhausted, Halprin has made no attempt to explain or correct those errors. Therefore, he has not shown that the state court's adjudication was incorrect, much less unreasonable under § 2254(d). Accordingly, Halprin has not shown an entitlement to relief on this claim.

In sum, the state habeas court found that both the jury charge and the State's arguments were proper under prevailing Texas law at the time of trial and, thus, counsel was not deficient for choosing not to object to either. *See* 6 SHCR at 2630-31. Halprin has not shown that this finding was incorrect or that the denial of his claim was unreasonable or in conflict with federal law. Therefore, this part of Halprin's eighth claim is also **denied**.

### 5. Anti-Parties Charge

In the last part of Halprin's eighth claim, he complains that trial counsel failed to request an anti-parties charge in the punishment phase of his trial. Specifically, Halprin argues that trial counsel should have requested an instruction that the jury "confine yourselves, in answering the [special

issues], to the conduct and acts of the defendant ***standing alone*** is appropriate (sic)." Am. Pet. Br. at 114-15. Respondent argues that the state court's rejection of this claim was reasonable. *See* Ans. at 75-77.

### a. State Court Proceedings

At the punishment stage of Halprin's trial, the jury charge included the following special issue:

### SPECIAL ISSUE NO. 2

> Do you find from the evidence beyond a reasonable doubt that the defendant, RANDY ETHAN HALPRIN, actually caused the death of the deceased, Aubrey Hawkins, or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken?

Vol. 1, CR at 43. The verdict of "yes" was signed by the foreman of the jury. *See* 1 CR at 43.

Halprin presented this in part H of the fifth claim in his state application for writ of habeas corpus. *See* 2 SHCR at 806-08. The state court found that Halprin failed to prove either prong of the *Strickland* test, that is, that counsel was deficient for not requesting the complained-of instruction or that the failure to make the request prejudiced Halprin's defense. *See* 6 SHCR at 2654. The state court determined that trial "counsel reasonably concluded that such a request was unnecessary." 6 SHCR at 2655 (citing 2 SHRR at 244). The state court further found that a proper "anti-parties" instruction was given in accordance with state law.

> (586) The Court finds that while trial counsel did not request an instruction such as the one Applicant now proposes, the Court did instruct the jury as mandated by article 37.071, section 2(b)(2) of the code of criminal procedure.

> (587) The Court of Criminal Appeals has held that the instruction mandated by section 2(b)(2) requires the jury to focus exclusively on the defendant's conduct and, thus, essentially is an "anti-parties" charge. *See Ladd v. State,* 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (citing *McFarland v. State,* 928

S.W.2d 482, 516-17 (Tex. Crim. App. 1996) (both holding second special issue is an "anti-parties" instruction); *see also Wood v. State,* 18 S.W.3d 642, 649 (Tex. Crim. App. 2000) (describing second special issue as an "anti-parties" issue and holding that it is constitutional because it specifically instructs the jury to consider the defendant's behavior alone).

(588) The Fifth Circuit Court of Appeals has held the same. *See Ramirez v. Dretke,* 398 F.3d 691, 696-97 (5th Cir. 2005) (holding that trial court's general punishment instruction to "consider all evidence submitted . . . in whole trial" did not permit jury to impose death on Ramirez based on other party's conduct because second special-issue instruction explicitly limited jury's consideration to Ramirez's individual liability).

(589) Because the Court's instruction already contained an anti-parties charge, the Court finds that trial counsel was not deficient and could not have prejudiced Applicant's defense by not requesting one. *See Ladd,* 3 S.W.3d at 570 (rejecting ineffectiveness claim based on decision not to request "anti-parties" charge in second special issue instructions).

6 SHCR at 2655. The state court concluded that trial counsel was not ineffective for not requesting another anti-parties instruction. *See* 6 SHCR at 2655.

### b. <u>Analysis</u>

Respondent relies upon *Ramirez v. Dretke,* 398 F.3d 691, 697 (5th Cir. 2005), in which the court rejected a claim that jury instructions similar to those in Halprin's trial violated *Enmund v. Florida*, 458 U.S. 782 (1982). The court found that the instructions included "the requirement of a jury finding of individual liability during the punishment phase," and reasonably indicated that the law of parties was not applicable during that phase. Therefore, another instruction as proposed by Halprin would not have been required or needed. The state court findings that trial counsel were not ineffective for not requesting such additional instruction are reasonable and supported by the record. Accordingly, Halprin has not overcome the presumption in § 2254(d) and is not entitled to relief on this claim. This part of the eighth claim for relief is also **denied**.

For the reasons previously stated, Halprin's entire eighth claim is **denied**.

### 6.    *Direct Appeal*

In Halprin's ninth claim, he complains that his counsel on direct appeal failed to present a complaint on direct appeal concerning the trial court's refusal to permit the introduction of certain mitigating evidence through his mitigation expert, Dr. Kelly Goodness. *See* Am. Pet. Br. at 117-23. Specifically, Halprin alleges that "[t]he trial court permitted Dr. Goodness to testify to her ultimate opinions, but did not let her discuss the information that formed the basis of the opinions . . . ." Am. Pet. Br. at 120 (citing Goodness Psych. Eval. at 17). "Absent knowledge of the data underlying Dr. Goodness's conclusions, the jurors were left without a way to judge her credibility any (sic) means in which they could weigh her conclusions." Am. Pet. Br. at 123. Respondent argues that the excluded material was inadmissible hearsay and that the state court reasonably concluded that "[a]ppellate counsel cannot be deemed ineffective for failing to raise a claim that has no merit." Ans. at 78 (quoting 6 SHCR at 2687).

### a.    State Court Proceedings

During the trial, the court conducted a hearing outside of the presence of the jury under Rule 705 of the Texas Rules of Evidence regarding the testimony of Dr. Goodness. *See* 52 RR at 89-143; 53 RR at 3-12. The State objected not to the expert's opinions but to the hearsay information that formed the basis for those opinions. *See* 52 RR at 140-41; 53 RR at 3-5. The trial court ruled that the expert could testify regarding her opinions from otherwise inadmissible information, and could identify the underlying data as the source of her opinions, but could not go into the details of such inadmissible hearsay information before the jury. *See* 53 RR at 5-7, 9-10. The court also explored

with counsel the type of limiting instruction that would be issued if it were to allow any of the underlying inadmissible information under that rule. *See* 53 RR at 10-12.

Halprin presented this claim in the postconviction habeas corpus proceedings, and the state court found that the Eighth Amendment required that Halprin be afforded the opportunity to present mitigating evidence, but it did not "relieve him of the obligation of presenting it in an admissible form." 6 SHCR at 2687. The state court also found that:

> (461) Dr. Goodness, a clinical and forensic psychologist, personally evaluated Applicant, reviewed a plethora of documents and interviewed some of Applicant's relatives and friends. (Applicant's Ex. D.) Based on this data, Dr. Goodness formulated an opinion on "how [Applicant] has come to be before the Court today." (RR53: 19.) The Court allowed Dr. Goodness to testify to that opinion but limited her testimony about the data underlying it. In particular, under evidence rule 705(d), which governs the admission of the facts or data underlying an expert's opinion, the Court prohibited Dr. Goodness from testifying to any inadmissible hearsay communications upon which her opinion was based. (RR53 3-12.)

6 SHCR at 2638.

> (466) The Court finds that Applicant was not precluded from offering testimony about abuse and neglect he suffered as a young child while in the care of his biological parents, his placement in foster care, his psychological problems, his learning disabilities, and child-rearing mistakes made by his adoptive parents. He was simply prohibited from offering it in the form of inadmissible hearsay.

> (467) Applicant does not dispute that the "data" about which the doctor planned to testify constituted inadmissible hearsay. The record reflects and Applicant acknowledges that Dr. Goodness would have testified to the substance of out-of-court oral and written communications, including statements made to the doctor by Applicant, his friends, and his family members, and statements contained in CPS records, academic records, adoption records, criminal records, and letters authored by Applicant.

> (468) Moreover, the Court finds that the doctor planned to offer these statements for the truth of the matters they asserted, i.e., that Applicant was abused, had psychological problems, etc. TEX. R. EVID. 801(d) (defining hearsay).

(469)   The Court finds that these communications constituted hearsay for which Applicant identifies no exception. TEX. R. EVID. 802 (general rule that hearsay is inadmissible absent an exception). Thus they were excludable under evidence rule 705(d) if the danger that they would be used for a purpose other than as explanation or support for Dr. Goodness's opinion outweighed their value as explanation or support or they were unfairly prejudicial. TEX. R. EVID. 705(d).

6 SHCR at 2639.

(476)   The Court also found that Applicant did not have a strong need to present any hearsay evidence to the jury.

(477)   As the doctor's trial testimony shows, she was allowed to testify with particularity that she formed her opinion in large part on information relayed to her by certain friends, family members, records, and letters. In particular, Dr. Goodness testified before the jury that her opinion was based on: (1) her conversations with Jason and Terri Goldberg (childhood family friends), Rabbi Stern (his childhood rabbi), Rhonda Halprin (his aunt), Mindi, Steven, and Shelly Sternblitz (childhood family friends), Anna Lester (Applicant's biological mother), Wesley Halprin (Applicant's biological brother), and Applicant, and (2) her review of three boxes of documents [that] included adoption records, CPS records, school records, a childhood psychological evaluation of Applicant, criminal records, and letters authored by Applicant. (RR53: 22-23, 29-31, 35, 37-40, 42-46.)

(478)   Thus, the Court finds that even without the excluded hearsay evidence, Dr. Goodness was able to demonstrate a basis for her opinion about Applicant.

(479)   Because the probative value of any hearsay was negligible while the risk that it would be improperly used as substantive evidence was substantial, the Court acted within its discretion in excluding otherwise inadmissible hearsay through Dr. Goodness.

6 SHCR at 2640.

(816)   Moreover, as this Court found on Applicant's related claim attacking trial counsel's performance, Applicant was not precluded from offering evidence of his abuse, psychological problems, etc. He was simply prohibited from offering it in the form of inadmissible hearsay through the doctor.

(817) Appellate counsel cannot be deemed ineffective for failing to raise a claim that has no merit.

6 SHCR at 2687.

## b. **Analysis**

In reviewing a claim alleging ineffective assistance of appellate counsel, the federal court applies the same *Strickland* standard. *See Blanton v. Quarterman,* 543 F.3d 230, 243 (5th Cir. 2008). While counsel need not raise every nonfrivolous ground available on appeal, "a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful . . . . Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Amador v. Quarterman,* 458 F.3d 397, 410-11 (5th Cir. 2006) (quoting *United States v. Williamson,* 183 F.3d 458, 462-63 (5th Cir. 1999)). In addition to showing deficient performance on appeal, a habeas petitioner must show prejudice in that the outcome of the appeal would have been different. *Id.* at 411. Just as with ineffective assistance of trial counsel claims that are denied by the state court, ineffective assistance of appellate counsel claims adjudicated by the state court are entitled to double deference. *See Beatty,* 759 F.3d at 463; *Pinholster,* 563 U.S. at 171-72.

In this case, the state court found that, as a matter of state law, the underlying information was inadmissible hearsay and that an appellate complaint regarding it would have had no merit. Accordingly, Halprin's appellate counsel could not have been ineffective in failing to present a meritless claim on appeal. *Williams v. Collins,* 16 F.3d 626, 635 (5th Cir. 1994). This conclusion has not been shown to be incorrect, much less unreasonable. Accordingly, Halprin's ninth claim is **denied**.

## VII.  Evidentiary Hearing

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court."  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Prior to the AEDPA, "[w]hen there is a factual dispute, [that,] if resolved in the petitioner's favor, would entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing."  *Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997) *abrogated on other grounds by Smith v. Robbins*, 528 U.S. 259 (2000).  In *Schriro*, the Supreme Court observed that while the basic rule has not changed, the standards for granting relief have:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Schriro*, 550 U.S. at 474 (footnote omitted) (internal citations omitted).  Regarding any claim adjudicated on the merits, the proper standard is set forth in 28 U.S.C. § 2254(d).  Federal habeas review under § 2254(d)(1) is, "limited to the record that was before the state court," *Pinholster,* 563 U.S. at 180-81, and review under § 2254 (d)(2) is limited to the "determination of the facts in light of the evidence presented in the State court proceeding."

On the allegations and record before this court, an evidentiary hearing would not enable Halprin to establish a right to federal habeas relief.  Even if facts were further developed in federal

court on any of the claims presented, they would not establish a right to federal habeas relief under the AEDPA. Accordingly, Halprin's request for an evidentiary hearing is **denied**.

## VIII.  Conclusion

For the reasons herein set forth, Halprin's fourth claim is **dismissed** as procedurally barred; alternatively, it is **denied** for lack of merit. Halprin's remaining claims are all **denied** for lack of merit. Halprin's request for an evidentiary hearing is **denied**. Habeas corpus relief is **denied**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the court **denies** a certificate of appealability. The court determines that Halprin has failed to show: (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If Halprin files a notice of appeal, he may proceed *in forma pauperis* on appeal.

**It is so ordered** this 27th day of September, 2017.

Sam A. Lindsay
United States District Judge