## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70026

United States Court of Appeals
Fifth Circuit
**FILED**
December 17, 2018
Lyle W. Cayce
Clerk

RANDY ETHAN HALPRIN,

　　　　Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

　　　　Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:

　　Randy Halprin, a state prisoner sentenced to death in 2003 in connection with the murder of police officer Aubrey Hawkins, seeks a certificate of appealability ("COA") with respect to five claims described below. Halprin also appeals the district court's denial of his request for an evidentiary hearing. For the reasons set forth below, we AFFIRM the district court's denial of Halprin's request for an evidentiary hearing and DENY the COA application.

### I. Background

　　Halprin was a member of a group known as the "Texas Seven" who escaped from the Texas Department of Criminal Justice ("TDCJ") John B. Connally Unit (the "Connally Unit"). During their escape, the Texas Seven

violently took hostages and stole guns and ammunition from the Connally Unit.

Several days after the escape, the Texas Seven set out to rob a Texas store. Halprin alleges that he did not accompany the others when they went to buy ammunition in preparation for the robbery and that another conspirator did most of the planning. Halprin further alleges that he "didn't want to take a gun in or participate in the robbery." Nonetheless, he did. Halprin helped evaluate the layout of the store before the robbery, carried a gun during the robbery, and exited the store with stolen clothing, a bag of money, and some rifles that had been gathered during the robbery.

During the robbery, an onlooker called the police. Officer Hawkins of the Irving Police Department then arrived on the scene. Officer Hawkins was shot at least eleven times almost immediately upon his arrival at the store. Halprin alleges other members of the Texas Seven shot at Officer Hawkins, but he did not. While fleeing the scene, the Texas Seven backed over Officer Hawkins's body in their vehicle, dragging it several feet. Officer Hawkins died from his gunshot wounds. A jury convicted Halprin of capital murder for his role in Officer Hawkins's killing and recommended the death penalty, and the trial court sentenced Halprin to death.

Many of Halprin's arguments for obtaining a COA concern the "Ranking Document," a TDCJ report that lists the Texas Seven in order of most to least likely to lead the group. The Ranking Document identifies Halprin as the weakest of the Texas Seven in terms of leadership abilities, concluding that Halprin:

> was quiet and never exhibited leadership qualities. Was consistently worried about whether his work was acceptable to the civilian workers. Very submissive characteristic. This worrisome attitude was seen to escalate a month before the escape. One civilian

> worker speculated whether [Halprin] was undergoing some type of depression.

The Ranking Document was a summary compilation based on interviews with a number of civilian workers, correctional officers, and inmates who worked closely with the Texas Seven before their escape. Halprin's writ counsel indicated that sixty-seven people contributed to the report. The Ranking Document was one piece of paper among the approximately twenty boxes of TDCJ records the State produced to the defense.

Halprin's counsel attempted to admit the Ranking Document at trial, but it was excluded as hearsay because of the lack of evidence about who created or otherwise contributed to the Ranking Document. The trial court noted that, while there was no question that the document was authentic, the conclusions in the document were all hearsay from unnamed sources, and Halprin's counsel had been unable to identify the author of the document.

Halprin's counsel was unsuccessful in attempting to identify the author of the Ranking Document during trial, despite hiring a former TDCJ custodian of records, S.O. Woods, to investigate the issue and asking counsel for the State. Later, during habeas proceedings, the same former TDCJ custodian of records whom the defense retained during trial reviewed the TDCJ records again and found records identifying the Ranking Document's author.

Although the Ranking Document itself was excluded, two witnesses testified to the same thing concluded in that document: that Halprin was weak, unintelligent, and likely a follower among the Texas Seven. Patrick Moczygemba, who worked at the Connally Unit at the time of the escape and was taken hostage during the escape, affirmed that following the escape he reported that Halprin was "dumb as a bag of rocks, [and] had to be told time after time how to complete a task." He agreed when asked that following orders was "about the best [Halprin] could do." Mark Burgess, also a Connally

3

Unit employee who was taken hostage during the escape, testified that Halprin was "not a leader type."

During the punishment phase of trial, the defense called Dr. Kelly Goodness, a forensic psychologist who had examined Halprin. Dr. Goodness primarily evaluates criminal defendants to help defense attorneys understand criminal defendants' behavior. Although Dr. Goodness was permitted to testify at length about factors contributing to Halprin's behavior, she was prevented on hearsay grounds from testifying to specific facts gathered from interviews and the specific contents of the records she reviewed.

On direct appeal, Halprin's appellate counsel argued that the trial court violated his constitutional rights by excluding the Ranking Document.[1] The Court of Criminal Appeals affirmed the trial court. *See Halprin v. State* (*Halprin I*), 170 S.W.3d 111, 113 (Tex. Crim. App. 2005). It found that Halprin presented a significant amount of mitigating evidence that was cumulative of the mitigating evidence contained in the Ranking Document. *Id.* at 116. Specifically, the Court of Criminal Appeals pointed to Moczygemba's and Burgess's testimony. *Id.* The Court also noted that Halprin "testified at length that he was a follower and not a leader and that his participation in the victim's murder was minimal." *Id.*

Halprin filed a state post-conviction writ on April 6, 2005. After two changes of presiding judge, the trial court adopted the State's proposed findings of fact and conclusions of law with minimal alterations. The Court of

---

[1] Halprin asserts that he intended to include more arguments in his appellate brief, but because of time constraints, had to turn in a brief that lacked some issues he wished to raise. Appellate counsel later moved to amend the brief to include additional points of error, correct errors included in the opening brief, and cite more case law. Appellate counsel then attempted to file an amended brief raising new claims. The Texas Court of Criminal Appeals denied leave to amend.

4

Case: 17-70026    Document: 00514763274    Page: 5    Date Filed: 12/17/2018
Case 3:13-cv-01535-L Document 57 Filed 12/17/18 Page 5 of 17 PageID 18559

No. 17-70026

Criminal Appeals adopted the trial court's findings (with a few alterations not pertinent here) and denied relief. *Ex Parte Halprin* (*Halprin II*), No. WR-77,175-01, 2013 WL 1150018, at *1 (Tex. Crim. App. Mar. 20, 2013) (per curiam).

Halprin filed his amended federal habeas petition on June 17, 2014, asserting nine grounds for relief. The federal district court denied each claim for lack of merit, denied one claim on the additional ground that it was procedurally barred, and denied Halprin's request for a COA. *Halprin v. Davis* (*Halprin III*), No. 3:13-CV-1535-L, 2017 WL 4286042, at *1, *22 (N.D. Tex. Sept. 27, 2017).

Halprin now seeks a COA on his claims that (1) the state trial court violated his constitutional rights by preventing him from offering the Ranking Document as mitigating evidence; (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the identity of the author of the Ranking Document; (3) Halprin's trial counsel were ineffective for failing to discover the author of the Ranking Document; (4) Halprin's death sentence is unconstitutional because he lacked intent to kill; and (5) Halprin's appellate counsel were ineffective for failing to argue on appeal that the trial court erroneously refused to admit certain portions of Dr. Goodness's testimony as mitigating evidence. In supplemental briefing, Halprin also argues that he is entitled to an evidentiary hearing. For the reasons set forth below, we AFFIRM the district court's denial of Halprin's request for an evidentiary hearing and DENY a COA.

## II.   Standard of Review

The standard for obtaining a COA is well settled. To obtain a COA, Halprin must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Halprin may satisfy this standard by showing that "jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

If a district court denies a habeas petition on procedural grounds without reaching the merits of a petitioner's underlying claim, we grant a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Segundo v. Davis*, 831 F.3d 345, 350 (5th Cir. 2016) (quoting *Slack*, 529 U.S. at 484). We are charged with reviewing the case only through these prisms. *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

Because the state court adjudicated each of Halprin's claims on the merits,[2] our review is constrained by the deferential standards of review found in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"). Under AEDPA, where the state court decided the issues on the merits, federal habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of

---

[2] The state habeas court concluded that Halprin had procedurally defaulted on his claim that under *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987), he lacked the minimum culpability to justify imposition of the death penalty. In the alternative, the state court also addressed the merits of Halprin's *Enmund/Tison* claim. As discussed in Section III(E), we deny Halprin's request for a COA because he has not made the showing required to overcome his procedural default. But even if Halprin could overcome his procedural default, we would still apply Antiterrorism and Effective Death Penalty Act ("AEDPA") review to the state court's adjudication on the merits. *See Busby v. Dretke*, 359 F.3d 708, 721 n.14 (5th Cir. 2004) ("That the state habeas court also invoked a procedural bar as an alternative basis to deny relief does not deprive the state of the benefit of AEDPA's deferential standard.").

the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

An unreasonable application of clearly established federal law means that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Put differently, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Richter*, 562 U.S. at 101). "This is 'meant to be' a difficult standard to meet." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (quoting *Richter,* 562 U.S. at 102).

Thus, to obtain a COA, Halprin must show that jurists of reason could disagree with the district court's conclusion that the state court's decision was not an unreasonable application of clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented. Because this is a death penalty case, we resolve any doubts about granting a COA in favor of a grant. *Escamilla v. Stephens*, 749 F.3d 380, 387 (5th Cir. 2014).

### III. Discussion

**A. Request for Hearing**

Halprin first asserts that the district court erroneously denied his request for an evidentiary hearing on his habeas petition.[3] The district court

---

[3] Because we conclude that the district court did not err in this regard, we do not address the State's argument that Halprin failed to properly and timely raise this argument.

concluded that "[o]n the allegations and record before this court, an evidentiary hearing would not enable Halprin to establish a right to federal habeas relief." *Halprin III*, 2017 WL 4286042, at *22. We review the district court's denial of an evidentiary hearing for abuse of discretion. *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998).

"If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Similarly, § 2254(d)(2) expressly limits review to the state court record. Against this backdrop of statutory and case law precedent, Halprin has not shown that the district court abused its discretion in denying a hearing.

### B. Exclusion of the Ranking Document

Halprin claims the state trial court violated his constitutional rights by preventing him from offering the Ranking Document as mitigating evidence. The district court rejected this claim, holding that Halprin had not shown that the state court violated his constitutional rights or that the state court's factual findings were unreasonable. *Halprin III*, 2017 WL 4286042, at *9. Jurists of reason could not disagree with the district court's conclusion. We thus deny a COA on Halprin's first claim.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

Halprin asserts that the trial court erroneously excluded the Ranking Document as hearsay. He relies on *Green v. Georgia*, a case in which the Supreme Court held that where evidence is "highly relevant to a critical issue

8

in the punishment phase of the trial" and "substantial reasons exist[] to assume its reliability . . . 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.'" 442 U.S. 95, 97 (1979) (per curiam) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).  Halprin argues that the Ranking Document was highly relevant to his character as a follower, not a leader, and that substantial reasons existed to assume the document's reliability such that the state court erred in excluding the document.  But we have recognized that *Green* was based on "unique and disturbing facts: the exclusion of evidence about another person confessing to the murder" that gave rise to the petitioner's sentence. *Simmons v. Epps*, 654 F.3d 526, 543 (5th Cir. 2011) (per curiam).  Halprin points to no such facts.  Additionally, here, the Court of Criminal Appeals concluded that the Ranking Document was cumulative of other testimony from TDCJ witnesses, and Halprin himself, indicating that Halprin lacked leadership capabilities.  *Green* is thus inapplicable to Halprin's claim.

Halprin argues that the sentencer should be allowed to consider all mitigating evidence under *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104, 113–14 (1982).  But we have interpreted the *Lockett* and *Eddings* line of cases to apply to "the exclusion of specific *types* of evidence rather than specific *items* in evidence." *Simmons*, 654 F.3d at 544 (emphasis added).  Here, the question focuses solely on an item of evidence, not a general type.  We conclude that reasonable jurists could not disagree with the district court's conclusion that the state trial court's ruling on Halprin's first claim was not unreasonable and did not violate Halprin's constitutional rights. *See Halprin III*, 2017 WL 4286042, at *9.

We thus deny a COA on Halprin's first claim.

**C. Suppression of Evidence**

Halprin next claims that the State violated *Brady* by withholding the identity of the Ranking Document's author. Under *Brady*, the prosecution violates the due process rights of the accused if, upon request for information, the prosecution keeps from the defense favorable, material evidence, regardless of good or bad faith. 373 U.S. at 87. A party asserting a *Brady* claim must show that: "(1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011). While "suppressed evidence need not be admissible to be material," it must "create a reasonable probability that the result of the proceeding would [have been] different" had the evidence been disclosed to the defense. *Id.* at 588. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Halprin asserts that the State violated *Brady* when it withheld the name of the Ranking Document's author, thus preventing Halprin from using the document as mitigating evidence at trial. It is undisputed that Halprin's expert, Woods, who reviewed the documents prior to trial discovered the identity of the author by reviewing documents during the post-conviction proceedings. Although Halprin argues this point, the state habeas court expressly found that the document from which Woods ultimately determined the Ranking Document's author was disclosed before trial. Halprin has not shown that jurists of reason would debate whether Halprin has shown by clear and convincing evidence that this factual finding was incorrect. 28 U.S.C. § 2254(e)(1).

Further, the state habeas court indicated that, even if Halprin had known before trial who created the Ranking Document, the document still would have been hearsay because its conclusions were based on hearsay

statements from unnamed sources. Thus, even if Halprin had known the identity of the author, the state court would have excluded the Ranking Document. The author's identity is thus not material. *See id.* Moreover, even if knowing the author's identity would have persuaded the state court to admit the Ranking Document, the author's identity is still immaterial given the cumulative nature of the evidence.

Halprin now claims that, had he known the author's identity, he would have been able to identify the witnesses on whom the document's author relied, and those witnesses would have independently corroborated Halprin's testimony. Even if we could consider this new argument and even if Halprin is correct that knowing the identity of the Ranking Document's author would have enabled him to identify the witnesses who contributed to the report, Halprin has not shown that jurists of reason would debate that the witnesses' testimony could have had a material impact on the outcome of his trial.

The district court held that the state court's findings (1) that the identity of the Ranking Document's author would not have made the evidence admissible, and (2) that the defense was able to admit the same mitigation evidence through other witnesses, buttressed its conclusion that the author's identity was not material for *Brady* purposes. *Halprin III*, 2017 WL 4286042, at *7. The district court thus held that the state court's determination was "not an unreasonable application of clearly established federal law." *Id.* Reasonable jurists could not debate the district court's determination that Halprin had not made the showing required under 28 U.S.C. § 2254(d) with respect to his *Brady* claim. We thus deny a COA on Halprin's second claim.

### D. Ineffective Assistance of Trial Counsel

Halprin next argues that his trial attorneys were ineffective. A successful ineffective assistance of counsel claim under *Strickland v. Washington* has two components. 466 U.S. 668, 687 (1984). First, a petitioner

must demonstrate "that counsel's performance was deficient." *Id.* In determining whether counsel's performance was deficient, courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, a petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Halprin asserts that his trial attorneys were ineffective for failing to discover the identity of the Ranking Document's author. The district court noted that, even if Halprin's trial counsel had been deficient in failing to discover the author's identity, that deficiency was not the reason for the Ranking Document's exclusion. *Halprin III*, 2017 WL 4286042, at *12. The district court thus held that Halprin had not shown "a reasonable probability that, but for [] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). The district court further noted the state court's findings that the defense was able to admit the mitigating information in the Ranking Document through other witnesses and that the jury was left with a more favorable view of the Ranking Document than likely would have been the case had the document been admitted. *Halprin III*, 2017 WL 4286042, at *12. The district court thus held that Halprin had not satisfied AEDPA's exacting standard with respect to his claim for ineffective assistance of trial counsel. *Id.*

Reasonable jurists could not debate the district court's conclusion that the state court's decision on Halprin's claim for ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of clearly established federal law. We thus deny a COA on Halprin's third claim.

### E. *Enmund/Tison* Culpability

Halprin next claims that he lacked the minimum culpability to justify imposition of the death penalty. The state court found that Halprin's claim was procedurally barred because Halprin did not raise it at trial or on direct appeal. It held in the alternative that Halprin's claim was meritless. The district court similarly dismissed Halprin's claim as procedurally barred. *Id.* at *11. In the alternative, the district court held that the alternate finding of the Court of Criminal Appeals that the claim lacked merit deserved deference. *Id.*

Where a district court denies a habeas petition on procedural grounds without reaching the merits of a petitioner's claim, we grant a COA "when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Segundo*, 831 F.3d at 350 (quoting *Slack*, 529 U.S. at 484).

Here, jurists of reason would not debate that Halprin's petition does not state a valid claim of the denial of a constitutional right or that the district court's procedural ruling was correct. *See Segundo*, 831 F.3d at 350. Although Halprin conceded in the district court that his claim was procedurally barred because he failed to raise it at trial or on direct appeal, he now argues that the contemporaneous objection rule does not apply, or alternatively that he complied with the rule. But regardless of whether the contemporaneous objection rule bars Halprin's claim, Halprin does not dispute that his claim is barred for failure to raise it on direct appeal. *See Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1996) (holding that an applicant procedurally defaulted on a claim by failing to raise the claim on direct appeal); *see also Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (recognizing that "the

Case: 17-70026 Document: 00514763274 Page: 14 Date Filed: 12/17/2018
Case 3:13-cv-01535-L Document 57 Filed 12/17/18 Page 14 of 17 PageID 18568

No. 17-70026

*Gardner* rule set forth an adequate state ground capable of barring federal habeas review"). Halprin has not shown cause for and prejudice attributable to the default or demonstrated that a failure to address his claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). We thus conclude that jurists of reason would not debate the district court's determination that Halprin's *Enmund/Tison* claim is procedurally barred.

Alternatively, even if Halprin had not procedurally defaulted on his *Enmund/Tison* claim, reasonable jurists could not debate that the district court appropriately deferred to the state court's alternative conclusion that Halprin's claim was meritless. *See Halprin III*, 2017 WL 4286042, at *11.

The Supreme Court held in *Enmund* that the Eighth Amendment prohibits capital punishment for one who "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797. But the Court indicated that the result could be different if "the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony." *Id.* at 799. Later, in *Tison*, the Court held that "[1] major participation in the felony committed, combined with [2] reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158.

The state habeas court concluded that Halprin was a major participant in the robbery and that he demonstrated reckless indifference to human life, as shown by the jury's finding that Halprin "anticipated that a human life

would be taken."[4] *See Tison*, 481 U.S. at 158 (holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement"). Halprin has not shown that jurists of reason would debate that the state court's findings were incorrect or that the state court's decision was contrary to or an unreasonable application of clearly established federal law. Additionally, reasonable jurists could not debate the district court's application of AEDPA deference and denial of Halprin's fourth claim. We thus deny a COA on Halprin's fourth claim.

### F. Ineffective Assistance of Appellate Counsel

Finally, Halprin claims his counsel on direct appeal were ineffective for failing to argue that the trial court erroneously excluded as hearsay certain portions of Dr. Goodness's testimony.

The right to effective assistance of counsel extends to appellate counsel on the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). The familiar *Strickland* standard governs claims for ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In the appellate context, counsel is deficient if he or she "unreasonably fail[s] to discover nonfrivolous issues and to file a merits brief raising them." *Id.* If the petitioner succeeds in showing that counsel was deficient, "he then has the burden of demonstrating prejudice." *Id.* A petitioner may demonstrate prejudice by showing "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

---

[4] The Texas Court of Criminal Appeals has stated that, for someone who has been convicted of capital murder as a participant in an underlying felony, "[a]nticipating that a human life will be taken is a highly culpable mental state, at least as culpable as the one involved in *Tison v. Arizona*, and we hold that, according to contemporary social standards, the death penalty is not disproportionate for defendants with such a mental state." *Ladd v. State*, 3 S.W.3d 547, 573 (Tex. Crim. App. 1999) (emphasis omitted). Halprin's argument that AEDPA deference is not owed to a state court judgment made by a judge who did not witness the testimony is unsupported by post-AEDPA precedent.

Here, the state trial court excluded as hearsay Dr. Goodness's testimony regarding the sources, including documents and interviews with various third parties, underlying her opinions at trial. For example, the trial court prevented Dr. Goodness from testifying in depth about the basis for her conclusion that Halprin was predisposed to substance abuse or from explaining the events surrounding Halprin's expulsion from boarding school. Halprin asserts that his appellate counsel were ineffective for failing to appeal the trial court's exclusion of the evidence. The state habeas court rejected Halprin's claim, concluding that the underlying information was hearsay and that Halprin's counsel were not ineffective for failing to argue a meritless issue on appeal. The court noted that Halprin was not precluded from offering evidence of his troubled background; he was merely barred from offering it in the form of inadmissible hearsay through Dr. Goodness.

The district court similarly denied Halprin's claim, concluding that Halprin had not shown that the state court's conclusion was incorrect or unreasonable. *Halprin III*, 2017 WL 4286042, at *21. Reasonable jurists could not debate that the district court appropriately applied AEDPA deference to the state court's adjudication of Halprin's fifth claim. We thus deny a COA on Halprin's claim.

## IV.  Conclusion

For the reasons set forth above, we AFFIRM the district court's denial of Halprin's request for an evidentiary hearing. We DENY Halprin's request for a COA.

16



**Certified as a true copy and issued as the mandate on Dec 17, 2018**

Attest:
**Clerk, U.S. Court of Appeals, Fifth Circuit**

## *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

December 17, 2018

Ms. Karen S. Mitchell
Northern District of Texas, Dallas
United States District Court
1100 Commerce Street
Earle Cabell Federal Building
Room 1452
Dallas, TX 75242

      No. 17-70026   Randy Halprin v. Lorie Davis, Director
                            USDC No. 3:13-CV-1535

Dear Ms. Mitchell,

Enclosed is a certified copy of an opinion-order entered on December 17, 2018. We have closed the case in this court.

                                    Sincerely,

                                    LYLE W. CAYCE, Clerk

                                    By: _____
                                    Nancy F. Dolly, Deputy Clerk
                                    504-310-7683

Enclosure(s)

cc:  Mr. Timothy Gumkowski
     Ms. Tomee Morgan Heining
     Mr. Paul Edward Mansur
     Ms. Jennifer Wren Morris
     Mr. Tivon Schardl
     Ms. Gwendolyn Suzanne Vindell